BAY AREA LEGAL AID
PHILLIP R. MORGAN (State Bar No. 99979)
NAOMI YOUNG (State Bar No. 105041)
LISA S. GREIF (State Bar No. 214537)
405 14th Street, 11th Floor
Oakland, California  94612
Telephone: 510-663-4744
Facsimile: 510-663-4740

THE CALIFORNIA AFFORDABLE HOUSING LAW
PROJECT OF THE PUBLIC INTEREST LAW PROJECT
DEBORAH COLLINS (State Bar No. 154532)
MICHAEL RAWSON (State Bar No. 95868)
CRAIG CASTELLANET (State Bar No. 176054)
449 15th Street, Suite 301
Oakland, California  94612
Telephone: 510-891-9794, ext. 156
Facsimile: 510-891-9727

Attorneys for Petitioners ARROYO VISTA TENANTS ASSOCIATION, et al.

**E-FILED**

UNITED STATES DISTRICT COURT,

NORTHERN DISTRICT OF CALIFORNIA

ARROYO VISTA TENANTS ASSOCIATION,
RHENAE KEYES, ANDRES ARROYO,
DARLENE BROWN, ELISE VEAL,

        Petitioners,

    vs.

CITY OF DUBLIN; DUBLIN HOUSING
AUTHORITY; HOUSING AUTHORITY OF
ALAMEDA COUNTY; and DOES 1 through
20, inclusive,

        Respondents.

SCS DEVELOPMENT COMPANY, dba
Citation Homes Central, a California
Corporation; EDEN HOUSING, INC., a
California Nonprofit, and DOES 21 through 50,

        Real Parties in Interest.

CASE NO. C 07-05794

NOTICE OF MOTION, MOTION AND
MEMORANDUM OF POINTS OF
AUTHORITIES IN SUPPORT OF
PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION

Hearing Date:  March 3, 2008
Time:  2:00 p.m.
Courtroom:  15, 18th Floor

# TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION FOR PRELIMINARY
INJUNCTION ..........................................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION.............................................................................2

INTRODUCTION .....................................................................................................2

FACTUAL BACKGROUND ....................................................................................3

PROCEDURAL BACKGROUND.............................................................................5

STANDARD OF REVIEW........................................................................................6

ARGUMENT .............................................................................................................6

I.   PLAINTIFFS DEMONSTRATE PROBABLE SUCCESS ON THE MERITS OF THEIR CLAIM
     THAT DEFENDANTS PREMATURELY ENTERED INTO AND ARE UNLAWFULLY
     IMPLEMENTING AN AGREEMENT TO DISPOSE OF ARROYO VISTA IN VIOLATION
     OF FEDERAL LAW .........................................................................................6

     A.  The United States Housing Act and HUD Regulations Require A PHA To Obtain Prior
         Approval from HUD to Dispose of Public Housing ............................................7

     B.  Defendants Have Undertaken Transactions to Dispose of the Property Without Prior HUD
         Approval.............................................................................................................8

         1.  DHA and HACA Unlawfully Entered Into A DDA to Dispose of Arroyo Vista Without
             HUD Approval ...........................................................................................9

         2.  DHA and HACA Have Unlawfully Displaced and Threaten to Continue Displacing
             Arroyo Vista Residents Without Prior HUD Approval......................................10

         3.  DHA and HACA Have Unlawfully Deprived Arroyo Vista Residents of Relocation
             Benefits ...................................................................................................14

         4.  DHA Has Unlawfully Removed Units From Its Public Housing Units
             and Failed to Adequately Maintain the Property Without Prior HUD Approval.      17

II.  PLAINTIFFS ARE SUBSTANTIALLY LIKELY TO SUCCEED ON THE MERITS OF THEIR
     CLAIMS THAT DEFENDANTS HAVE DEPRIVED PLAINTIFFS OF A RELOCATION
     PLAN, SERVICES AND BENEFITS IN VIOLATION OF THE CALIFORNIA RELOCATION
     ASSISTANCE ACT AND REGULATIONS ..............................................................18

A. Defendants Violated The CRA Act and Regulations By Implementing A Project That Will Result In Residential Displacement Without *First* Adopting A Relocation Assistance Plan Pursuant to the Requirements and Procedures of State Law ......................................................18

B. Defendants Violated The CRA Act and Regulations By Displacing Residents Without Requisite Notice, Services, and Relocation Benefits ...............................................................21

III.    PLAINTIFFS WILL CONTINUE TO SUFFER IRREPARABLE INJURY UNLESS DEFENDANTS ARE RESTRAINED BY THIS COURT, AND THE BALANCE OF HARDSHIP TIPS DECIDELY IN PLAINTIFFS FAVOR ...............................................................23

A. Plaintiffs Will Be Irreparably Harmed Unless Defendants Are Enjoined from Unlawfully Implementing the DDA, Displacing Residents and Depriving Them of Their Rights to Relocation .......................................................................................................... 23

B. The Balance of Hardship Tips Sharply in Plaintiffs' Favor ...............................................23

IV. THE COURT SHOULD ISSUE THE PRELIMINARY INJUNCTION WITHOUT BOND ......................................................................................................24

CONCLUSION ...........................................................................................................25

1

# TABLE OF AUTHORITIES

2

**CASES**                                                                                                    **Page**

3

4
*Associate Gen. Contractors of Cal. Coalition for Econ. Equity*
   950 F.2d 1401 (9th Cir. 1991                                                                                  6

5
*Brown v. Artery Organization*
6
   654 F.Supp. 1106 (D.D.C. 1987)                                                                              23

7
*California ex rel. Van de Kamp v. Tahoe Regional Planning Agency*
   766 F.2d 998 (9th Cir. 1985)                                                                                25

8
*Caribbean Marine Services Co. v. Baldridge*
9
   844 F.2d 668 (9th Cir. 1988)                                                                                 6

10
*Chalk v. US. District Court*
   840 F.2d 701 (9th Cir. 1988)                                                                                23

11
*Concerned Tenants Ass'n. of Father Panik Village v. Pierce*
12
   685 F.Supp. 316 (D. Conn. 1988)                                                                            17

13
*Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*
14
   321 F.3d 878 (9th Cir. 2003)                                                                                 6

15
*Garcia v. Anthony*
   211 Cal.App.3d 467 (1989)                                                                                  21

16
*Givens v. Butler Metropolitan Housing Authority*
17
   2006 U.S. Dist. LEXIS 91541 *11 (S.D. Ohio 2006)                                                       7, 17

18
*Henry Horner Mothers Guild v. Chicago Housing Auth.*
   780 F.Supp. 511 (N.D. Ill. 1991)                                                                           17

19

20
*Johnson v. United States Department of Agriculture*
   734 F.2d 774 (11th Cir. 1984)                                                                              23

21
*Miller v. Carlson*
22
   768 F.Supp. 1331 (N.D. Cal. 1991)                                                                          24

23
*Mitchell v. U.S. Dept. of Housing & Urban Development*
   569 F.Supp. 701 (N.D. Cal. 1983)                                                                           23

24
*Oakland Tribune, Inc. v. Chronicle Publishing Co.*
25
   762 F.2d 1374 (9th Cir. 1985)                                                                               6

26
*Peter Kiewit Sons' Co. v. Richmond Redevelopment Agency*
   178 Cal.App.3d 435 (1986)                                                                                  21

27
*Price v. City of Stockton*
28
390 F.3d 1105 (9th Cir. 2004)                                                                                 24

**CASES (Cont'd.)**

*Tinsley v. Kemp*
    750 F.Supp. 1001 (W.D. Mo. 1990)                                    17

*Velez v. Cisneros*
    850 F.Supp. 1257 (E.D. Pa. 1994)                                  7, 17

**STATUTES AND REGULATIONS**

Federal Statutes

42 U.S.C. § 1437p                                                    *passim*

42 U.S.C. § 5304                                                        15

Federal Regulations

24 C.F.R § 42.350                                                       14

24 C.F.R § 42.375                                                       14

24 C.F.R. Part 970                                                       7

    § 970.7                                                         *passim*

    § 970.17                                                            7

    § 970.21                                                        *passim*

    § 970.25                                                         8, 17

State Statutes

Cal. Govt. Code §7260

§ 7260.5                                                               18

§ 7261                                                                 19

§ 65580                                                                19

§ 65302                                                                19

State Regulations

25 Cal. Code Reg. § 6000                                             2,18

    § 6008                                                          21,22

    § 6010                                                          19,21

    § 6012                                                             20

State Regulations (Cont'd.)

§ 6014 ........................................................ 19

§ 6034 ........................................................ 21

§ 6038 ..................................................... 19,20

§ 6040 ........................................................ 22

§ 6046 ........................................................ 22

§ 6086 ........................................................ 22

§ 6090 ........................................................ 22

§ 6092 ........................................................ 22

§ 6098 ........................................................ 22

§ 6154 ........................................................ 22

**NOTICE OF MOTION**
**AND MOTION FOR PRELIMINARY INJUNCTION**

**TO RESPONDENTS CITY OF DUBLIN, DUBLIN HOUSING AUTHORITY, AND HOUSING AUTHORITY OF ALAMEDA COUNTY AND THEIR ATTORNEYS OF RECORD**:

NOTICE IS HEREBY GIVEN that on March 3, 2008 at 2:00 p.m., or as soon thereafter as counsel may be heard by the above-entitled Court, located at 450 Golden Gate Avenue, Courtroom 15, 18th Floor, San Francisco, California, in the courtroom of Judge Marilyn Hall Patel, plaintiffs will and hereby move the Court pursuant to Fed. R. Civ. P. 65 for a Preliminary Injunction pending resolution of this action to order Respondents City of Dublin (City), Dublin Housing Authority ("DHA"), and Housing Authority of Alameda County ("HACA") (collectively "Defendants"), their agents, officers, servants and attorneys to: (1) refrain from implementing that Disposition and Development Agreement for the Arroyo Vista Redevelopment Project with DHA, HACA, Eden Housing, Inc. ("Eden"), and Citation Homes Central ("Citation"), approved by Dublin City Council Resolution 136-07 on July 17, 2007 ("DDA"); (2) refrain from displacing, relocating, or removing any lawful occupant of Arroyo Vista, including but not limited to (a) encouraging, pressuring, threatening or coercing any occupant to move or threatening to vacate any lawfully occupied unit for any reason related to or in connection with the DDA, and (b) boarding up any vacant unit(s); (3) restore the status quo *ante* at Arroyo Vista within 90 days of the date of this order by giving all former Arroyo Vista residents that moved from the property between July 26, 2006 ("displaced person") and the date of this Court's order: (a) at defendants' expense the right to return to their formerly assigned unit pursuant to the terms of their former lease if it is vacant, and if not vacant, the next available vacant unit pursuant to the terms of the displaced person's former lease; or (b) at the displaced person's option, all relocation benefits mandated by 42 U.S.C. §1437p, 24 C.F.R. §970.1 *et seq.*, Cal. Govt. C. §7260 *et seq.*; and 25 C.C.R. §6000 *et seq.*; and (4) re-open, re-rent, and make available for rent all Arroyo Vista units that are vacant as of the date of this order, in the following order: (a) to the displaced person that last resided in the unit or, if they decline to rent the unit; (b) to the next household on DHA's public housing waiting list.

The grounds for the motion are that defendants have adopted and are implementing an

unauthorized DDA to dispose of public housing (Arroyo Vista), displacing and threatening to displace all residents of that housing, and depriving the residents of the benefit of the relocation plans and relocation assistance required by the United States Housing Act and regulations (42 U.S.C. §1437p , 24 C.F.R. §970.1 *et seq.*) and the California Relocation Assistance Act and regulations (Cal. Govt. C. §7260 et seq.; 25  C.C.R. §6000 *et seq.*).

The motion is based on this Notice of Motion, Motion and Memorandum of Points and Authorities in Support of Plaintiffsø Motion for Preliminary Injunction; the supporting Declarations of Lisa S. Greif, Andres Arroyo, Darlene Brown, Shawn Costello, Carolyn Evans, Gretta Evans, Rhenae Keyes, Shirley Sanders, and Elise Veal; Supplemental Declaration of Rhenae Keyes; Other Authorities in Support of Plaintiffsø Motion for Preliminary Injunction, and on the papers and pleadings on file in this case, and such other memoranda, evidence, and argument as may be presented at the hearing on the motion.

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTON FOR PRELIMINARY INJUNCTION

### INTRODUCTION

Plaintiffs, four lower income residents of Arroyo Vista and the Arroyo Vista Tenants Association (õAVTAö), seek a preliminary injunction, as set forth in the Notice of Motion, to enjoin defendantsø from implementing a DDA that calls for the sale of Arroyo Vista, demolition of all 150 homes, the relocation of over 400 Arroyo Vista residents, and redevelopment as a õmixed-incomeö community.  Acting entirely outside of the law, defendants have already displaced at least 33 Arroyo Vista households, boarded up their homes, and threaten to step up the displacements to implement an unlawful DDA.  They have *no* approval from HUD to dispose of Arroyo Vista, and HUD approval is plainly a prerequisite to disposing of public housing and displacing the residents.  Displacement of residents without an approved relocation plan is flatly prohibited by state and federal law.  Defendants have no relocation plan approved by HUD, and have not even submitted one as required by federal law.  They have no relocation plan approved by local government.   Nor are they providing the relocation assistance and benefits required under state *or* federal law to the households they have

displaced.  Instead, defendants have employed a "back-door" door strategy to vacate the property, depriving all concerned – the residents, HUD, local government, and the community -- the benefit of HUD's review of an application for disposition, including a relocation plan; depriving all concerned of the benefit of local government review of a relocation plan; and depriving residents the benefit of relocation notices, assistance and benefits mandated by both federal and state law *before* Arroyo Vista residents can be displaced.

## **FACTUAL BACKGROUND**

Arroyo Vista is a single-family residential development of 150 public housing units located in Dublin, California.  Defendants' Answer to Petition for Writ of Mandate filed November 21, 2007 ("Answer") at ¶¶1, 18;[1] *see also* Declaration of Lisa Greif in Support of Plaintiffs' Motion for Preliminary Injunction filed herewith ("Greif Decl."), ¶2, Ex. 2 at 31.[2]  It is owned by DHA and managed by HACA, both public housing agencies within the meaning of 42 U.S.C. §1437 (2007).  Answer at ¶¶14, 15.  There are 94 one or two-bedroom homes, 110 three or four-bedroom homes and a day care center at Arroyo Vista.   Greif Decl. ¶4, Ex. 3 at 135.  As of August 2007, there were 437 individuals residing at Arroyo Vista. *Id*. at 148.

Plaintiffs Rhenae Keyes, Darlene Brown, Andres Arroyo, and Elise Veal are residents of Arroyo Vista, residing there for a period ranging from four to 21 years.  Verified Petition for Writ of Mandate, filed October 15, 2007 ("Petition") at ¶¶9, 10, 11, 12.  Three plaintiffs have disabilities (*Id.* ¶¶9, 10, 11); their household incomes range from extremely to very low income; and Arroyo Vista provides their families with deeply affordable homes.  *Id.* ¶¶9, 10, 11, 12.  Rents paid by tenants at Arroyo Vista average less than $500 per month. Answer ¶18.  Plaintiff AVTA is an unincorporated association of current and former Arroyo Vista residents whose mission includes protection of the

---

[1] For clarity, petitioners Keyes, Brown, Arroyo, Veal and AVTA are referred to collectively as "plaintiffs" or individually by name; respondents City, DHA, and HACA are referred to collectively as defendants or individually by name; and real parties in interest Eden and Citation are referred to by name.

[2] All declarations filed herewith are abbreviated as "[Name] Decl." All exhibits submitted in support of a declaration have been consecutively "batestamped," and page  references to an exhibit refer to the number in the lower right corner of a document.

disposition, displacement, and relocation rights of Arroyo Vista residents. Petition ¶8; Keyes Supp. Decl. ¶¶ 3-5.

Defendants admit that in or about July 2006, DHA commenced negotiations with Eden and Citation for sale and redevelopment of Arroyo Vista (Answer ¶24); in November 2006, DHA amended its Public Housing Authority Five-Year Plan (ôPHA Planö) to seek demolition and disposition of Arroyo Vista (Answer ¶24; *see also* Greif Decl. ¶5, Ex. 4 at 169); and in July 2007, the City, DHA, and HACA approved and authorized execution of a DDA for disposition and redevelopment of Arroyo Vista.  Answer ¶¶2, 25.

The DDA calls for DHAøs sale of Arroyo Vista to Eden and Citation for $12 million, demolition of all existing public housing units, and redevelopment of the site with 226 ôfor saleö dwellings (mostly market-rate) and 179 rental units (129 for families and 49 to be reserved for seniors).  Greif Decl. ¶3, Ex. 2 at 37-38 (§§2.1, 2.2); 39 (§2.5); 53 (§4.4).  Apartment rents in the new development are estimated to range from $471 for 62 one-bedroom units (49 of them for seniors) to over $1300 for five three bedroom units.  Greif Decl. ¶3, Ex. 2 at 95; *see also* Answer 26.¶  Those rent levels are dependent on available funding.  *Id*. at 38-39 (§§2.4, 2.5).  The DDA also calls for all Arroyo Vista residents to be relocated with Section 8 vouchers from HACA and financial contributions from Citation, DHA, and the City.  *Id*. at 51 (§4.2). [3]

Nearly a month *after* entering into the DDA, defendants sought HUDøs permission to dispose of Arroyo Vista, submitting an application for disposition to HUD (ôApplicationö) on August 14, 2007.  Answer ¶¶2, 28; Greif Decl. ¶4, Ex. 3 at 125.  The Application was incomplete.  It lacked an independent fair market appraisal, an approved environmental review, and relocation plan.  Greif Decl. ¶4, Ex. 3 at 125, 131, 136-137, 139, 149.  It still lacks an approved environmental review that is not anticipated before the middle of 2008.  *Id*. at 125, 131.  And, it still lacks the comprehensive relocation plan that the Application states would be prepared, distributed to residents for comment, and presented to the DHA Commission for approval. *Id*. at 149.  *See* Answer ¶¶30, 63, 74; *see also* Greif Decl., ¶6, Ex. 5 at 208; Keyes Decl. ¶¶9, 10.

---

[3] HACA is required to apply to HUD for and provide ôup toö 150 Section 8 vouchers for ôeligibleö displaced persons.  *Id*. at 50 (§3.4), 51 (§4.2).

Defendants admit that DHA had "already begun to relocate residents" before the Application was submitted to HUD. Answer ¶¶4, 49, 65. HACA began issuing Section 8 vouchers to residents in or about July 2007. Greif Decl. ¶12, Ex. 11 at 265; Answer ¶¶49, 65. When the Application was submitted, DHA had already relocated 12 households and expected to relocate more families that month. Greif Decl. Ex. 3 at 125, 143. DHA claims in its Application that those residents moved voluntarily, that it was not requiring any residents to move then, and that all remaining residents were expected to be relocated by November 2008. *Id*. at 125, 143. Since at least April 2007, DHA has pressured residents to "move now." Keyes Decl. ¶¶9-12; *see also* Sanders Decl. ¶¶6, 7, Ex. 1; Brown Decl. ¶9. By December 2007, DHA reported 33 households had been relocated. Greif Decl. ¶12, Exs. 7, 11 at 273. Without a relocation plan or HUD approval, defendants have displaced residents without providing all required relocation information, advisory services, and benefits. *See, e.g.*, Costello Decl., ¶¶8; Gretta Evans Decl. ¶¶11-15, 17-18; Carolyn Evans Decl. ¶¶4-8 15; Keyes Decl. ¶¶13-18, Ex. 1, 3; Veal Decl. ¶¶4-7, 14-19, Exs. 2, 3, 4, 6.

Since at least March 2007, DHA has refused to fill vacancies from its waiting list (Carolyn Evans Decl. ¶¶4-7), and as displacements have occurred, DHA has not re-rented vacant units. Answer ¶65; *see also* Greif Decl. ¶12, Ex. 11 at 270. Vacant units have been boarded up, and abandoned furniture, broken glass, and appliances litter the property. Costello Decl. ¶ 10; Gretta Evans Decl. ¶ 16; Sanders Dec. ¶¶13-16.

HUD confirmed on November 20, 2007 that DHA is prohibited from taking any action to dispose of Arroyo Vista without first obtaining HUD approval; relocations based on the proposed disposition cannot *begin* until *after* the Department approves the Application; and HUD will not approve an incomplete Application or one that does not support DHA's representations to HUD. Greif Decl., ¶¶7, 13, Exs. 6, 12. Plaintiffs have requested that defendants cease their unlawful activities. *Id*., ¶10, Ex. 9. They refuse to stop the displacement, deny having taken any actions that require them to prepare, present, and adopt a relocation plan, and promise that relocations will be stepped up early in 2008. Answer ¶¶30, 63, 74; *see also* Greif Decl. ¶¶6, 8, Exs. 5, 7.

## PROCEDURAL BACKGROUND

Plaintiffs filed a Petition for Writ of Mandate in the Alameda County Superior Court on October 15, 2007, seeking to set aside and enjoin defendants City, DHA, and HACA from implementing the DDA and displacing residents without HUD approval or compliance with state and federal relocation assistance obligations.  Petition for Writ of Mandate filed October 15, 2007.  The Petition also names developers Eden and Citation as real parties in interest.  On or about November 14, 2007, defendants removed the superior court action to this Court on federal question grounds, and answered on November 21, 2007 on behalf of all defendants and real parties in interest.  Notice of Removal filed November 14, 2007; Answer to Petition for Writ of Mandate filed November 21, 2007. This motion follows.

## STANDARD OF REVIEW

Petitioners meet the standard for issuance of a preliminary injunction.  The Ninth Circuit has adopted two tests for determining the propriety of a preliminary injunction.  The moving party must demonstrate either (1) a combination of probable success on the merits and the possibility of irreparable injury, or (2) that serious questions are raised and the balance of hardships tips sharply in favor of the moving party. *Associate Gen. Contractors of Cal. Coalition for Econ. Equity*, 950 F.2d 1401, 1410 (9th Cir. 1991); *Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills,* 321 F.3d 878, 881 (9th Cir. 2003).  These two formulations are not different tests but represent two points on a sliding scale in which the required probability of success decreases as the degree of irreparable harm increases. *Oakland Tribune, Inc. v. Chronicle Publishing Co.*, 762 F.2d 1374, 1376 (9th Cir. 1985).  In addition, a court in either formulation of the test must also take into account the public interests that are implicated by the relief sought when it is balancing the harms.  *Caribbean Marine Services Co. v. Baldridge*, 844 F.2d 668, 674 (9th Cir. 1988).  Petitioners make the requisite showing that they merit a preliminary injunction.

## ARGUMENT

**I.     PLAINTIFFS DEMONSTRATE PROBABLE SUCCESS ON THE MERITS OF THEIR CLAIM THAT DEFENDANTS PREMATURELY ENTERED INTO AND ARE UNLAWFLLY IMPLEMENTING AN AGREEMENT TO DISPOSE OF ARROYO VISTA IN VIOLATION OF FEDERAL LAW.**

Federal law requires that a public housing authority (öPHAö) *first* obtain HUD approval prior to undertaking any transaction to dispose of public housing property. DHA failed to secure HUD approval prior to (1) entering into a DDA for disposition of the property, (2) displacing Arroyo Vista residents, (3) depriving residents of relocation benefits in the process, and (4) boarding up vacant units and rendering them unavailable for occupancy. Each of these actions is contrary to law. Defendants must be enjoined from implementing the DDA to prevent unlawful displacement of plaintiffs, violation of their relocation rights, and removal of their homes from the only public housing stock in Dublin.

### A. The United States Housing Act And HUD Regulations Require A PHA To Obtain Prior Written Approval from HUD to Dispose of Public Housing.

The United States Housing Act of 1937, as amended, (the öHousing Actö) sets forth an application process that a PHA must follow to obtain authorization from HUD to demolish or dispose of public housing. 42 U.S.C. §1437p(a)(1)-(6) (2007); *Givens v. Butler Metropolitan Housing Authority*, 2006 U.S. Dist. LEXIS 91541, *11 (S.D. Ohio 2006). The purpose of the Housing Act is öto preserve the number of available public housing units.ö *Givens v. Butler Metropolitan Housing Authority*, *supra* at *11, citing *Velez v. Cisneros*, 850 F.Supp. 1257, 1270 (E.D. Pa. 1994). HUD has promulgated regulations at 24 C.F.R. Part 970 to implement and carry out the Housing Act, requiring a PHA to öobtain written approval from HUD before undertaking any transaction involving demolition or disposition.ö 42 U.S.C. §1437p(a)(1)-(6) (2008); 24 C.F.R. § 970.7(a) (2008). That application process is indicative of the critical importance of HUDøs review and approval as the guardian of federally-subsidized property.

Where, as here, the PHAøs ground for disposition is that it is in the best interests of the residents and the PHA (Greif Decl. ¶4, Ex. 3 at 144-145), the PHA must provide supporting information of that fact, including that disposition is consistent with the goals of the PHA, its public housing agency plan (öPHA Planö), and the Housing Act. 42 U.S.C. §1437p(a)(2); 24 C.F.R. §§970.7(a), 970.7(a)(5), 970.17.

In evaluating whether an application is in the best interests of all concerned, a number of factors and documentation are required. The factors relevant here include that the application must be

supported by at least one independent appraisal of the fair market value of the property, explain the proceeds and costs associated with the disposition, and include an approved environmental review of the proposed disposition. 24 C.F.R. §§970.7(a)(9), (a)(10), (a)(15), 970.19(c).

In addition, because public housing is occupied by extremely low income families, a plan and timetable for the relocation of tenants, including persons with disabilities that require reasonable accommodations, must be included with the application. 24 C.F.R. §§970.7(a)(6), 970.21(d). It must identify the number of residents to be displaced and describe the type of counseling and advisory services the PHA will provide, the housing resources available to provide housing for displaced residents, estimate the relocation costs, and identify the source of funding for payment of those costs. 24 C.F.R. §970.7(a)(11); 24 C.F.R. §970.21(c), 970.21(f).

To ameliorate the hardship associated with displacing extremely low income families from public housing, the Application must demonstrate that the PHA will notify each resident of HUDøs determination at least 90 days prior to displacement; that demolition will not commence or disposition be completed until each resident is relocated; and that each resident will be offered comparable housing. 42 U.S.C. §1437p(a)(4); 24 C.F.R. §970.21(e). The PHA also must provide and describe in the notice an array of relocation assistance services and benefits, discussed more fully in Arg. I.B.3 below. *See* 42 U.S.C. §42 U.S.C. §1437p(a)(4)(C); 24 C.F.R. 970.21(e). A PHA cannot relocate residents before HUD has approved an application to dispose of the property. 42 U.S.C. §1437p(a)(4); 24 C.F.R. §970.21(b), (e).

To ensure that public housing units remain available to families in need of affordable housing, a PHA also must õcontinue to meet its [annual contributions contract] obligations to maintain and operate the property as housing for low-income familiesö until a complete application is approved by HUD. 24 C.F.R. §970.25(a).

Thus, both the Housing Act and HUDøs regulations make it clear that DHA is required to *secure* HUD review and approval before undertaking transactions to dispose of Arroyo Vista; it must have a relocation plan approved by HUD in place before displacing residents and removing their homes from the public housing stock; and it must actually provide all required relocation assistance.

HUD lacks the discretion to approve an application that is incomplete, inaccurate or deficient for other reasons. 42 U.S.C. §1437p(a), (b); 24 C.F.R. §§970.7, 970.29.

**B. Defendants Have Undertaken Transactions to Dispose of the Property Without Prior HUD Approval.**

Defendants have proceeded with disposition of Arroyo Vista and displacement of its residents without benefit of HUDøs review and without HUD approval -- as if disposition of 150 public housing units were a *fait accompli*. The facts are undisputed that HUD has *not* approved DHAøs application for disposition, defendants have already relocated residents without a relocation plan, and removed public housing units from the public housing stock. They also have deprived residents of requisite notice, services, and relocation assistance in the process. Defendantsøactions violate the Housing Act and HUD regulationsô laws intended to ensure residents and the community that disposition and displacement will not occur without benefit of HUDøs review and authority.

**1. Defendants Unlawfully Entered Into and Implemented a DDA to Dispose of Arroyo Vista Without HUD Approval.**

Defendants violated the Housing Act and regulations by entering into and implementing the DDA. This transaction is squarely prohibited by the Housing Act and regulations. A PHA is prohibited from õundertaking any transactionö involving disposition of the property *without* prior HUD approval. 24 C.F.R. §970.7(a).

The DDA is unquestionably a transaction involving disposition of public housing. Defendants do not dispute that fact. Answer ¶¶3, 25, 28. They also admit they had no HUD approval of a disposition application in July 2007 when the DDA was approved, and had not even submitted an *application* for disposition to HUD. Answer ¶¶25, 28, 29. That did not occur until nearly a month later. Answer ¶28. For that matter, DHA still has not submitted a *complete* application for disposition to HUD. Among other deficiencies, the Application lacks an õapproved environmental reviewö and a relocation plan -- both required elements of a disposition application. 24 C.F.R. §§ 970.7(6), (9), (15).

Completion of an environmental review is not even anticipated until mid-2008, and DHA has yet to disseminate the "promised" relocation plan.[4]

Acting without benefit of HUD review or authority, defendants have *implemented* an *unauthorized* DDA. They have already begun and are stepping up the relocation of Arroyo Vista residents as called for by the unauthorized DDA, and pursuant to a relocation timetable proposed in the *unapproved* Application. By August 2007, they had displaced 12 families. By November, HACA had issued vouchers to 24 families, and by December, 33 households were reported moved. Greif Decl. ¶12, Exs. 7, 11 at 273. More were anticipated early in 2008 "so that everyone can be moved by November 2008". *Id.* ¶8, Ex. 7. Also without authority, HACA has issued Section 8 vouchers to residents that are not in need of one; they already reside in deeply affordable public housing. Finally, defendants admit having removed public housing units from the housing stock without HUD review or approval. *See* Answer ¶65.

Claiming that the DDA is "conditioned" on HUD approval and may, therefore, never go forward, defendants appear to believe "no harm, no foul". *See* Answer ¶¶3, 25; Greif Decl. ¶6, Ex. 5. Yet, their actions in adopting and implementing an unauthorized DDA plainly violate the law which prohibits "entering into" a disposition transaction, conditional or otherwise, without HUD authorization. Their unlawful activity causes and has caused significant harm. Defendants have deprived all concerned – the PHA's, the City, the County, residents, and their community – of the benefit of HUD's evaluation of a *proposed* disposition. That places HUD in the untenable position of reviewing a done deal, completely undermining the purpose of the legislation. Displacing Arroyo Vista residents without HUD review or approval causes irreparable harm – the loss of their deeply affordable homes and a community in which many of them have lived for decades – all when they may *never* have to move if HUD disapproves the Application. Greif Decl. ¶7, Ex. 6. Defendants' rationale for violating the law is simply wrong – both legally and as to the harm it causes.

**2. DHA and HACA Have Unlawfully Displaced and Threaten to Continue Displacing Arroyo Vista Residents Without Prior HUD Approval.**

---

[4] In fact, defendants only recently approved a predevelopment loan to Eden to *begin* an environmental review process. *See* Greif Decl. ¶11, Ex. 10.

Defendants' relocation of residents *in advance* of HUD approval of an application for disposition constitutes unlawful displacement in violation of the Housing Act and regulations. HUD's review and approval of the Application, including the relocation plan that should have accompanied it, is a fundamental prerequisite to relocating residents. In addition, a 90-day notice of displacement must *precede* relocation of public housing residents. Yet, defendants began relocating residents *before* submitting the Application, long before the timeline for issuing 90-day notices can lawfully occur, and continue to relocate residents without authorization or the benefit of HUD's review as to whether the proposed disposition can go forward *at all*—violating laws that are designed to prevent unlawful displacement of public housing residents.

The law is clear that HUD's review and approval of a disposition application – including the required relocation plan and timetable – must *precede* the relocation of residents. 24 C.F.R. §§970.7(a), (a)(6), (a)(11); 970.21(c), (d), (f). It is HUD's review of that plan that determines whether alternative housing resources are available to house all of the displaced residents, the cost of relocating those residents, whether sufficient resources are available to meet those costs, and the adequacy of proposed relocation procedures, services, and benefits. *See* 24 C.F.R. §§970.7(a)(6), (a)(11), 970.21. The obligation to *submit* a relocation plan to HUD rests with DHA, but the authority to review and *approve* it rests with HUD. It is undisputed that HUD has not approved the Application, and that defendants have no approved relocation plan. *See* Answer ¶¶29, 30. It also is without question that defendants *have* relocated and continue to relocate Arroyo Vista residents, and HACA has issued Section 8 vouchers to assist in those relocations. Greif Decl. ¶4, Ex. 3 at 143; *see also* Answer ¶¶30, 40, 63. Defendants allege they "have not taken any action for which HUD approval of a relocation plan is a prerequisite." Defendants are wrong. They *relocated* public housing residents, using Alameda County's Section 8 vouchers, to carry out a *proposed* disposition that HUD has not approved. That violates the law, depriving all concerned of the benefit of HUD's review and determination as to whether the proposed disposition may even proceed, including whether residents *can* be displaced at all.

Relocation of residents also may not *precede* the 90-day notice of displacement required by the Housing Act and HUD's regulations. 42 U.S.C. §1437p(a)(4); 24 C.F.R. §970.21(e). In the event of

approval of a disposition application, it is this notice that informs the residents of HUD's determination that their displacement has, in fact, been *authorized* by HUD. The notice also must apprise the residents of the relocation procedures, assistance, and benefits HUD has *approved*. *Id.* Thus, by definition, the notice cannot issue *before* HUD makes a determination as to whether or not the disposition may proceed. Again defendants allege that they have taken "no action for which any law makes provision of a 90-day notice a prerequisite." Answer ¶33. Defendants miss the point. Relocating residents *before* HUD reviews and approves a disposition application, including the Application's timetable for relocating residents, completely undermines the 90-day notice requirement. By circumventing the law, defendants have deprived residents of fundamental notice – *i.e.*, whether defendants' relocation actions have, in fact, been *authorized* by HUD and, if so, the consequential relocation rights available to the residents. Their unlawful actions effectively strip HUD of *its* authority to approve *or* disapprove the Application. Under defendants' notion of what the law requires, no residents would remain to receive the required 90-day notice. And, that violates the law.

Defendants cannot escape their unlawful displacement activities by characterizing the relocation of at least 33 lower income families from public housing as "voluntary." *See, e.g.*, Greif Decl. ¶4, Ex. 3 at 25; Greif Decl. ¶8, Ex. 7. The law does not recognize any exception for "voluntary" relocation. Without HUD authority or *any* lawfully approved relocation plan to guide the relocation process, defendants commenced an unlawful strategy in April 2007 to vacate the property by urging, pressuring, and frightening residents to move "now."[5] The results have been anything but voluntary. These tactics, summarized below, have unlawfully displaced 33 households from Arroyo Vista.

Defendants represented the purportedly "conditional" disposition of Arroyo Vista to the residents as a *fait accompli*. As early as April 2007, before the DDA had even been adopted and well before the Application was even submitted, defendants told residents that Arroyo Vista would definitely be shut down by November 2008. Keyes Decl. ¶¶9, 10. When plaintiff Keyes inquired at an August 2007 meeting as to whether HUD had approved the Application, she was told by HACA's

---

[5] Plaintiffs do not dispute that defendants published newletters and informational notices stating that no one was "required" to move until they were issued a "90-day notice." *See, e.g.*, Greif Decl. ¶12, Ex. 11. However, residents were not informed *when* they would receive a 90-day notice, or that defendants have no *authority* to issue such notices. *See, e.g.*, Brown Decl. ¶7.

representative that Arroyo Vista "would be" shut down in November 2008, and HUD "will approve" the application.  Keyes Decl. ¶¶11, 12.  Another resident at the meeting who objected to moving was told that he "would see the bulldozers coming through."  Keyes Decl. ¶12; *see also* Brown Decl. ¶5.

Defendants threatened, cajoled, and unilaterally instructed residents to move.  In October 2007, Mr. Costello was threatened by representatives of DHA's relocation consultant, Overland Pacific and Cutler ("OPC"), that he would "have to move" in 2008, and "we will vacate you if we have to."  Costello Decl. ¶8.  Plaintiff Arroyo was told he was being "offer[ed] a good deal to move."  Arroyo Decl. ¶5.  He did not think so, and declined.  *Id.*  Without an authorized relocation plan or any information as to his rights, he had nothing against which to measure a purportedly "good deal," and OPC had no authority to make one.  At the April 2007 meeting, and again, without *any* authority or approved relocation plan establishing the ground rules, residents were told they had to terminate their own tenancies to *apply* for a Section 8 voucher.  Keyes Decl. ¶10.  In September 2007 HACA's representative told residents they need to "move now."  Sanders Dec. ¶¶6-7.  Unfortunately, judging from the numbers (12 households gone in August and 33 gone by December), several residents believed HACA and moved.  *Id.* ¶7.

Defendants informed residents that sufficient Section 8 vouchers and Section 8 units may *not* be available if they wait for HUD approval to move.  Contrary to representations in the DDA and Application that Section 8 assistance will be available to relocate residents, defendants have urged residents to move now, because if they wait until HUD approves disposition, there may be a shortage of Section 8 vouchers and/or Section 8 rental units to go around.  Brown Decl. ¶ 9; Sanders Decl. ¶6, 7; *see also* Carolyn Evans Decl. ¶15 [offered a "use it or lose it" voucher].  Moreover, though DHA told HUD that residents have and will be offered Section 8 vouchers for comparable housing (Greif Decl. ¶4, Ex. 3 at 28), HACA is obligated under the DDA to apply for 150 "replacement" vouchers, defendants now admit that because the demand for those "vouchers nationwide is keen," HUD may provide none at all or may only provide them for units that are "actually occupied" at the time HUD approves the disposition application.  Greif Decl. Ex. 5 at 207.  Given defendants' unlawful strategy to vacate the property before HUD approval, there is every indication that there may *not* be sufficient Section 8 vouchers to go around.  And, as defendants apparently predicted, there *is* a scarcity of units

to accompany the vouchers. *See* Gretta Evans Decl. ¶4-15; Veal Decl. ¶¶ 4-13.[6] Faced with insecurity as to the availability of Section 8 vouchers and units, some residents rushed to apply for one and move (or try to move) -- for fear of losing *any* housing subsidy at all. *See, e.g.*, Gretta Evans Decl. ¶¶4-7, 10, 19; Keyes Decl. ¶13; Veal Decl. ¶¶ 3, 7, 13-18. Others have not -- for fear they will be unable to find a home at which to use the voucher and be left with nowhere to live when the voucher expires. *See* Sanders Decl. ¶8. It is precisely this type of uncertainty that the relocation planning requirements defendants violated are designed to avoid.

Residents that moved out under these circumstances cannot lawfully be characterized as "voluntary" relocations. They were unlawfully displaced – without authority from HUD to proceed with disposition and without *any* relocation plan authorizing their displacement and protecting their relocation rights.

### 3. DHA and HACA Have Unlawfully Deprived Arroyo Vista Residents of Relocation Benefits.

By displacing residents without authority from HUD or *any* relocation plan *authorizing* the relocation process and the relocation services and benefits to be provided, defendants have necessarily acted outside of the law -- violating the Housing Act and HUD regulations. And, in the process, they did not provide the relocation assistance and benefits mandated by federal law. Indeed, by circumventing the "90-day notice" requirement altogether, defendants have not even disclosed to residents what relocation assistance and benefits must be provided under federal law, depriving them of fundamental due process. As a result, rather than mitigating the harm caused by displacement, defendants unlawfully exacerbated it.

In addition to a relocation plan and the notice requirements previously discussed, the Housing Act and HUD regulations require a PHA to actually provide necessary counseling, comparable housing, including reasonable accommodation costs and services for persons with disabilities, and payment of actual and reasonable *relocation* expenses. 42 U.S.C. §1437p(a)(4); 24 C.F.R. §970.21.

---

[6]  The experiences of these residents in attempting to locate Section 8 units underscores the necessity of HUD review and *prior* approval of a disposition application, including the relocation plan component of that application. Disposition and demolition *cannot* occur unless all residents are able to be relocated. 42 U.S.C. §1437p(a)(4)(E); 24 C.F.R. §970.21(b).

In addition, if CDBG or HOME funds will be used in connection with a disposition project, a PHA must comply with all of the relocation and anti-displacement provisions of 42 U.S.C. §5304(d).  24 C.F.R. §970.21(c)(2).[7]  Yet, defendants did not provide these services and benefits.

A detailed picture of the benefits denied and the harm caused by defendants' unlawful activities is contained in the declarations of plaintiffs and displaced persons submitted herewith.  The following brief summary simply illustrates the scope of the problem:

Failure to provide õnecessaryö counseling.  HUD's regulations call for the PHA to provide õany necessary counselingö to residents that are displaced. When residents that have resided in public housing for years are unilaterally thrust into another, complicated federal housing program with very different rules, õnecessaryö counseling would surely include *accurate* information regarding not just *HACA's* policies and payment standards, but those of PHA's to whom it refers the residents it displaced.  *See* Keyes Decl. ¶¶14-18, Exs. 1-3.  Defendants' failure to provide such basic counseling caused plaintiff Veal and Gretta Evans to conduct exhaustive searches to locate rental homes that would accept their Section 8 voucher, only to discover at the eleventh hour that either the ±homeø or the ±tenantøwere *ineligible* for Section 8 assistance in the jurisdiction where they finally found a home. *See* Gretta Evans Decl. ¶¶8-15, 17-19; Veal Decl. ¶¶4-18, 20, Exs. 1-6.

Failure to Provide Comparable Housing.  Comparable housing must meet federal housing quality standards, be located in an area generally not less desirable than the location of the displaced person's home, and may include other housing subsidies such as Section 8 vouchers.  42 U.S.C. §1437p(a)(4)(A); *see also* 24 C.F.R. §§970.21.  The comparable housing must be offered on a nondiscriminatory basis, and a comparable unit with reasonable accommodations must be provided for persons with disabilities who are displaced from a home with reasonable accommodations.  24 C.F.R. §970.21(a).  Comparable housing is *the most critical* relocation benefit for anyone displaced, and particularly for extremely low income tenants in California and persons with disabilities -- if

---

[7] The DDA calls for Eden to apply for CDBG and/or HOME funds.  Greif Decl. ¶3, Ex. 2 at 90. Arroyo Vista residents may, therefore, also be eligible for relocation assistance pursuant to 42 U.S.C. §5304(d), but they have not received notice of that fact.    It provides for different benefit levels, and permits displaced persons to elect between different relocation programs. *See e.g.*, 42 U.S.C. §5304(d); 24 C.F.R. §§ 42.350, 42.375(1).

1   homelessness is to be avoided.  By circumventing federal law, defendants did not even adequately

2   *inform* residents of their rights to comparable housing, much less provide it.  Many residents expressed

3   strong desires and/or *need* -- based on long-term community ties, disabilities, jobs, child care, and the

4   like -- to remain in Dublin or neighboring jurisdictions such as Pleasanton.  Arroyo Decl. ¶6; Brown

5   ¶4; Costello ¶4-7; Carolyn Evans ¶¶9-14; Gretta Evans ¶10; Keyes ¶¶6-8; Sanders ¶3-8; Veal Decl. ¶3,

6   19.  No efforts were made to meet those needs. Brown Decl. ¶¶6-7; Costello ¶8; Keyes ¶14; Veal Decl.

7   ¶¶4-18, 20, Ex. 1.  At best, residents were offered or given a voucher and a referral list with minimal

8   referrals to Dublin-Pleasanton despite displacement of an Arroyo Vista population of 437 individuals

9   in a tight rental market.  *See, e.g.* Veal Decl. ¶¶9, Ex. 1; *see also* Keyes Decl. ¶14, Exs. 1, 2.[8]  When

10  plaintiff Veal asked for help from OPC after experiencing discrimination during her search, she was

11  told OPC would only make referrals.  *See* Veal Decl. ¶7.

12       Finally, the law is clear that providing a voucher alone does not constitute comparable

13  replacement housing.  Defendants' lack of a relocation plan and failure to provide "necessary"

14  counseling and a replacement housing payment, Gretta Evans is left with no public housing unit, no

15  Section 8 assistance, a $300 per month rent increase, and had to break up her family and move to

16  Patterson, California, to get that.  She was clearly and unlawfully denied comparable housing.

17       <u>Reasonable Accommodations</u>.  Despite Mr. Costello's enhanced need for assistance in locating

18  an affordable and accessible home to replace the fully accessible home he has now, and his need to

19  remain in Dublin due to those disabilities, he was not offered help in locating a replacement home.

20  Instead he was told he would be "vacated" next year if he did not move.  Costello Decl. 2-9, 11.  When

21  Ms. Keyes was told that her family would be down-sized from four to two bedrooms, she requested a

22  3-bedroom voucher and a reasonable accommodation based on the disabilities of her two children; she

23  also offered a letter from her doctor's daughter supporting the request.  HACA refused even to accept

24

25

26  [8] The referral list given to Ms. Veal includes two listings in Dublin, one of which does not accept
    Section 8.  *Id*.  The referral list (Ex. 1) given to Ms. Keyes lists 8 "Section 8" units in Dublin-
27  Pleasanton in October 2007.  She was not successful in locating a home in Dublin and expanded
    her search to Alameda County; OPC provided a list of three referrals, none in Dublin-Pleasanton
28  area.  None of the declarants were successful in locating a home in Dublin.

the medical documentation, or to send its own form to her daughter's doctor.  Keyes Decl. ¶¶2-7, 14-17.  She was denied both reasonable accommodations and comparable housing.

Reasonable Relocation Expenses.  Defendants provided some relocation expenses, but held some hostage, such as portions of moving expenses, until the tenant's unit was vacated.  Gretta Evans Decl. ¶¶17-19; Veal Decl. ¶¶10-18, Exs. 2, 3, 6.  They also imposed unauthorized "caps" on the amount of reasonable expenses to be provided, and then did not even provide those.  *See, e.g.* Veal Decl. ¶.  That unreasonably caused Gretta Evans to incur debt herself for her move.

Defendants have not only deprived residents of relocation benefits.  By circumventing the "90-day notice" requirement, they also deprived them notice of what the law actually requires.  The harm caused when residents are displaced without a relocation plan, accurate notice, and requisite benefits is irreparable.  For some, like Gretta Evans, homelessness may be around the next corner.

### 4. DHA Has Unlawfully Removed Public Housing Units And Failed to Adequately Maintain the Property Without Prior HUD Approval.

DHA also violated HUD regulations by failing to make vacant units at Arroyo Vista available for occupancy and failing to maintain the homes it boarded up and the surrounding development.  These actions are plainly contrary to DHA's obligations to "continue to . . . maintain and operate the property as housing for low-income families" unless and until it receives HUD approval of an application for disposition.  24 C.F.R. §970.25(a).  DHA has yet to even submit a complete Application to HUD for disposition, as described above.

DHA has not filled vacancies at Arroyo Vista since at least March 2007, and they admit removing units from the market as residents are displaced.  Carolyn Evans Decl. ¶¶4-6; Answer ¶65.  The units have been boarded up, creating blight and exposing existing residents to hazardous conditions and the risk of increased crime.  *See* Sanders Decl. ¶¶ 4, 5, 13, 14; Costello Decl. ¶10; Greif Decl. ¶9, 12, Exs. 8, 11 at 270.

DHA's conduct constitutes "de facto" demolition in violation of the "demolition" provisions of the Housing Act and regulations.  "[I]t is evident that a public housing authority cannot demolish public housing units . . . without first obtaining the approval of the HUD Secretary."  *Givens v. Butler Metropolitan Housing Authority*, *supra* at *15.  Allowing public housing units to become

uninhabitable and unsafe constitutes "de facto" demolition which is no less prohibited by the Housing Act than razing the units.  *Givens*, *supra* at 19, citing *Velez v. Cisneros*, *supra*, 850 F.Supp. 1257; *Henry Horner Mothers Guild v. Chicago Hous. Auth.*, 780 F.Supp. 511 (N.D. Ill. 1991); *Tinsley v. Kemp*, 750 F.Supp. 1001 (W.D. Mo. 1990); *Concerned Tenants Ass'n. of Father Panik Village v. Pierce*, 685 F.Supp. 316 (D. Conn. 1988). , 1270 (E.D. Pa. 1994).

Boarding up vacant homes deprives residents of a safe and secure neighborhood. Unlawfully removing those homes from the public housing stock deprives nearly 300 families on DHA's waiting list of an affordable home and deprives HUD of the benefit of its subsidy to DHA.

For the above reasons, plaintiffs are likely to succeed on their claims that defendants have violated the Housing Act and HUD regulations, and a preliminary injunction should issue.

## II.    PLAINTIFFS ARE SUBSTANTIALLY LIKELY TO SUCCEED ON THE MERITS OF THEIR CLAIMS THAT DEFENDANTS HAVE DEPRIVED PLAINTIFFS OF A RELOCATION PLAN, SERVICES AND BENEFITS IN VIOLATION OF THE CALIFORNIA RELOCATION ASSISTANCE ACT AND REGULATIONS.

There is no question that the proposed Arroyo Vista disposition subjects the City, DHA, HACA, and anyone acting on their behalf, to the strict relocation requirements imposed by California law.   Defendants admit that the DDA requires them to comply with all relocation assistance laws. Answer ¶72.  Though DHA also informed HUD that it would comply with California law, it plainly has not.

### A.    Defendants Violated State Law By Implementing A Project That Will Result In Residential Displacement Without *First* Lawfully Adopting A Relocation Assistance Plan.

Defendants unlawfully displaced residents without the relocation assistance plan, requisite notice, services, or relocation benefits imposed by state law.  The California Relocation Assistance Act ("CRA Act") and the California Department of Housing and Community Development's ("HCD") regulations impose a relocation assistance planning process which a public entity must follow when displacement is or will be caused by the displacing activities of, or on behalf of, a public entity.  Govt. C. §§ 7260 *et seq.*; 25 Cal. Code Reg. ("C.C.R.") §§6000 *et seq*.

The purposes of the CRA Act are to provide fair, uniform, and equitable treatment of all affected persons; minimize the adverse impact of displacement in order to maintain the economic and social well-being of communities, and ensure that displaced persons shall not suffer disproportionate injuries and the hardship of displacement as a result of programs and projects designed for the benefit of the public as a whole. See Govt. C. §§7260.5. In keeping with those purposes, California law provides that no person shall be displaced and no phase of *any* project that will result in displacement of any person *may proceed until* the public entity has fulfilled *all* of the obligations of the CRA Act. Govt. C. §7260; 25 C.C.R. §6014. While the CRA Act and regulations are similar in concept to the Housing Act and HUD regulations, California imposes stringent obligations for õadvanceö planning, services, and benefits ó all of which must occur well before *any* displacement can occur *or any phase* of a project can even begin.

Chief among its planning obligation is the relocation plan. Under California law, the relocation plan is a comprehensive planning tool to assist the local legislative body in deciding whether the project that will result in displacement ó here disposition of Arroyo Vista -- may go forward at all. Thus, a public entity whose project will result in the displacement of residential tenants must prepare a relocation plan at the earliest stage of a project, and well before the commencement of *any* actions which will cause displacement. Govt. C. §7261(a). HCDøs corresponding regulation requires preparation of the plan õ[a]s soon as possible following the initiation of negotiations and prior to proceeding with any phase of a project or other activity that will result in displacement . . .ö 25 C.C.R. § 6038; *see also* 25 C.C.R. §6010.

The relocation plan defendants should have adopted long ago was required to contain sufficient information to enable the legislative bodies of the displacing public entities (City, HACA, and DHA), to decide, based on the human and monetary costs of relocation, whether disposition of Arroyo Vista *should go forward at all*. Key elements of the plan that are critical to making that decision include projected dates of displacement; an analysis of the relocation *needs* of all persons to be displaced; a detailed explanation as to how those needs will be met, including an analyses of the *housing resources* available to meet them. It also must detail the advisory services, procedures, and relocation payments to be made, including specific procedures for locating comparable replacement

housing, evaluate those costs and identify the resources that will pay them. A standard information notice to be sent to all residents also must be included in the plan, as well as a plan for citizen participation. The displacing public entities also must make a written determination that necessary resources *will* be available as required. 25 C.C.R. §6038. Finally, the relocation plan is subordinate to and must be consistent with the local jurisdiction's housing element – the community's "constitution" for housing development. *See* Cal. Govt. C. §§65302, 65580-65589.8.

The procedures required by California's relocation planning requirements ensure that all persons who will be displaced and the community will be given an opportunity and encouraged to "fully and meaningfully" participate in reviewing the plan and monitoring the relocation program. *See* 25 C.C.R. §6012. Accordingly, a proposed plan must first be made available for comment to residents and others, and then submitted to the local legislative body for public review. If approved, a copy of the final plan also must be provided to HCD. 25 C.C.R. §6012, 6038.[9]

Defendants violated the CRA Act and regulations by failing to prepare a plan at all, thus depriving the residents and community of any opportunity to participate in and review the plan, and their own legislative bodies of the *authority* to decide whether displacement of Arroyo Vista residents may proceed at all, and if so, pursuant to what terms and conditions.

A relocation plan should have been prepared long ago under state law. Defendants admit that DHA commenced negotiations with Eden and Citation for sale and redevelopment of Arroyo Vista in or about July 2006. Answer ¶24. In November 2006, DHA amended its PHA Plan to seek demolition and disposition of Arroyo Vista (Answer ¶24), and in July 2007, the City, DHA, and HACA approved and authorized execution of the DDA. Answer ¶¶2, 25. The project clearly would and did result in displacement. Thirty-three households have already been displaced. Thus, defendants were required to adopt a relocation plan as soon as possible after they commenced negotiations with Eden and Citation in July 26, 2006 – nearly a year and a half ago. Because disposition and demolition of 150 public housing units would necessarily displace hundreds of residents, the relocation of the residents

---

[9] Here, because the City, DHA, and HACA are the public entities whose project will cause displacement, the community participation and local government approval must include Dublin and the County of Alameda.

clearly should have been a fundamental component of those decisions.  Yet, in the absence of any plan, the DHA amended its PHA Plan, negotiated for sale of the property, culminating in an adopted DDA and an application for disposition to HUD – all without any consideration by the local legislative body as to whether or not disposition could proceed *at all*.  And, defendants *still* have failed to prepare, make available for review and comment, or present a plan to Dublin or the County of Alameda for approval.

Defendants are plainly prohibited from proceeding with *any phase of a project or other activity* which will result in the displacement of any person *until* "[a] relocation plan meeting the requirements of section 6038 has been prepared." 25 C.C.R. § 6010 (emphasis added).  They flatly ignored this prohibition by amending the PHA Plan, entering into an unlawful DDA, submitting an application for disposition to HUD, and *displacing* at least 33 Arroyo Vista households -- without *any* relocation plan having *first* been approved by local government – completely undermining the fundamental purposes of the CRA Act.

**B.    Defendants Violated The CRA Act and Regulations By Displacing Residents Without Requisite Notice, Services, and Relocation Benefits.**

Not only have defendants proceeded to dispose of the property by entering into and implementing the DDA without a plan, they displaced Arroyo Vista residents without the relocation benefits mandated by federal *or* state law.  Under the CRA Act, a "displaced person" is entitled to an array of relocation services.  *See Garcia v. Anthony*, 211 Cal.App.3d 467, 474 (1989).  Government Code § 7260(c)(1)(A)(ii) of the CRA Act defines a displaced person as:

> Any person who moves from real property, or who moves his or her personal property from real property . . . [a]s a direct result of the . . . the displacing activity as the public entity may prescribe under a program or project undertaken by a public entity, of real property on which the person is a residential tenant . . . if the public entity determines that the displacement is permanent.  (Emphasis added.)

*See also* 25 C.C.R. §6008(f).  The "actual exercise of the power of eminent domain is not prerequisite to eligibility for relocation benefits."  *See Peter Kiewit Sons' Co. v. Richmond Redevelopment Agency* 178 Cal.App.3d 435, 444 (1986).  Rather, in determining eligibility for relocation benefits, the "crucial issue" is the "causal connection" between the displacing activity and the displacement which will result

therefrom.  *Id.* at 444.  Without question, the displacing activity here is disposition of Arroyo Vista, pursuant to an unlawful DDA entered into by public entities, which called for and has resulted in residents moving and being pressured to move to make way for a mixed-income development.

Accordingly, all residents that occupied Arroyo Vista at least as far back as July 2006 are õdisplaced personsö within the meaning of the CRA Act, including any person who moved as the result of inducement or encouragement by the public entity.  *See* 25 C.C.R. § 6034(a).  As such, they were and are entitled to a host of *pre*-displacement advisory services.  They also must receive a series of notices containing specified information.  25 C.C.R. §§6038, 6040, 6046, 6086, 6154.  No õdisplaced personö can be displaced, as they have been here, without the full measure of relocation benefits provided for under the CRA Act, including: comparable replacement housing as defined in 25 C.C.R. §6008(c);  õlast resortö housing where comparable housing is unavailable; reasonable moving expenses, including direct and other costs such as utility charges (25 C.C.R. §§6090, 6098); and losses of tangible personal property (25 C.C.R. §6092).

Plaintiffs and other residents have been and continue to be deprived of these benefits, in addition to benefits required under federal law.  As discussed in Argument I.B.3, residents have not been offered adequate advisory services or assistance in locating a new home; comparable replacement housing as defined by state law, including a replacement housing payment of up to 42 months to ensure affordability of a replacement home. Gretta Evans was denied a replacement housing payment altogether, and thus, was denied a comparable replacement unit.  Gretta Evans Decl. ¶¶8-15, 17-19. The replacement housing payment formula applied to plaintiff Veal was not based on the differential between her existing and replacement rent as required by state law, also resulting in denial of a comparable replacement unit. Veal Decl. ¶¶4-18, 20, Exs. 1-6.  And no one was informed of all the moving expenses required by state law, or all of the relocation benefits required by federal law. .  *See* Veal Decl. Ex. 2.

Plaintiffs were effectively deprived of any notice at all.  Any notices that were issued are entirely invalid because they were never authorized by an approved relocation plan from which they would flow.  Thus, in the absence of an approved relocation plan, any notices and õoffersö are simply unauthorized.  The tail cannot wag the dog.  Because the residents cannot measure any notices against

an approved relocation plan, they cannot rely on the validity of the information contained in any notices, or make informed decisions about whether, when, or where to move. Nor should they be required, coerced, or pressured to do so.

Plaintiffs have demonstrated a probability of success on the merits of their claims that defendants also have violated the CRA Act and HCD regulations, and a preliminary injunction should issue.

**III.    PLAINTIFFS WILL CONTINUE TO SUFFER IRREPARABLE INJURY UNLESS DEFENDANTS ARE RESTRAINED BY THIS COURT, AND THE BALANCE OF HARDSHIP TIPS DECIDEDLY IN PLAINTIFFS' FAVOR.**

**A.    Plaintiffs Will Be Irreparably Harmed Unless Defendants are Enjoined from Unlawfully Implementing the DDA, Displacing Residents and Depriving Them of Their Rights to Relocation.**

By failing to get prior HUD approval of the proposed disposition and failing to adopt a relocation plan, defendants are denying plaintiffs the opportunity to effectively participate in either process. The proposed disposition and demolition of plaintiffs' homes, and displacement without a plan or adequate relocation assistance causes substantial harm. The loss of one's home is unquestionably irreparable injury. *See e.g.*, *Brown v. Artery Organization*, 654 F.Supp. 1106, 1118-1119 (D.D.C. 1987); *Johnson v. United States Department of Agriculture*, 734 F.2d 774 (11th Cir. 1984). The loss of housing poses even greater harm in communities which do not have a significant amount of low-income housing. *Mitchell v. U.S. Dept of Housing & Urban Development*, 569 F.Supp. 701, 704-705 (N.D.Cal. 1983). Disposition and demolition of Arroyo Vista will destroy the *only* public housing in Dublin. The loss of a public housing subsidy and deprivation of relocation benefits poses a serious risk of homelessness. Finally, the attendant psychological injury of being forced from their homes, and the community where many have lived for decades is irreparable. *See e.g.*, *Chalk v. US. District Court*, 840 F.2d 701, 709 (9th Cir. 1988) and cases cited therein.

AVTA's mission to protect Arroyo Vista residents against these harms has been frustrated by defendants' unlawful activities. Supp. Keyes Decl. ¶¶5-9. Without a preliminary injunction, plaintiffs, AVTA, and the community are deprived of the benefit of careful analyses by HUD and local government. Money cannot repair this damage. And the impact will only increase in light of

DHA's threats to step up the displacements.  Plaintiffs have and will continue to suffer irreparable injury unless defendants are enjoined from implementing the DDA, boarding up vacant units and displacing residents without any relocation plan or adequate benefits.

### B.    The Balance of Hardships Tips Sharply in Plaintiffs' Favor

The above hardship to plaintiffs outweighs any hardship to defendants from the order requested in plaintiffs' motion for preliminary injunction.  Delay in disposing of Arroyo Vista is required by law since defendants have no authority to dispose of it; the cost of relocation assistance is also already required by the laws defendants circumvented.  "[I]t is a far more severe hardship for someone to be displaced from his or her home without assistance and without the certainty of knowing where to move."  *Price v. City of Stockton*, 390 F.3d at 1105, 1116 (9th Cir. 2004) [affirming preliminary injunction requiring City to provide relocation assistance to all persons previously displaced].

Plaintiffs have demonstrated a likelihood of success that defendants violated federal law by implementing an unauthorized DDA without HUD approval, displacing residents without an approved relocation assistance plan under federal and state law; depriving residents of relocation assistance and benefits under federal and state law; and removing public housing units from the housing stock without prior HUD approval. The public interest will be served by ensuring the community at large that no displacement will occur and no housing will be lost without benefit of statutorily mandated review and evaluation by both HUD and local government.

### IV.    THE COURT SHOULD ISSUE THE PRELIMINARY INJUNCTION WITHOUT BOND.

Should this Court grant the preliminary relief plaintiffs request, bond should be waived, as was done in *Miller v. Carlson*, 768 F.Supp. 1331, 1340-41 (N.D. Cal. 1991) [court enjoins state welfare agency from limiting child care assistance to recipients in workfare program; bond waived where plaintiffs are "indigent persons who rely upon AFDC for the necessities of life"].  The individual plaintiffs are all public housing residents, many of whom receive public assistance.  By definition, plaintiffs are indigent and unable to post even nominal security.  ATVA is an unincorporated association of Arroyo Vista residents or former residents without resources and cannot afford to post a

bond.  *See* Supp. Keyes Decl. ¶3.  It is like the environmental organization in *California ex rel. Van de Kamp v. Tahoe Regional Planning Agency*, 766 F.2d 998 (9th Cir. 1985), and like that organization should not be required to post bond in order to obtain a preliminary injunction.  Alternatively, only a nominal bond should be imposed as in *Price v. City of Stockton*, 390 F.3d at 1118 [nominal bond of $1 imposed in action granting preliminary injunction to prevent displacement and denial of relocation assistance].

**CONCLUSION**

For all of the foregoing reasons, plaintiffs respectfully request that the Court issue a preliminary injunction ordering the relief requested in the accompanying notice of motion.

Dated: January 28, 2008                     Respectfully Submitted:


By:   /s/ Lisa S. Greif
        BAY AREA LEGAL AID
        Lisa S. Greif
        Phillip R. Morgan
        Naomi Young

        CALIFORNIA AFFORDABLE HOUSING
        LAW PROJECT OF THE PUBLIC INTEREST
        LAW PROJECT
        Deborah Collins
        Michael Rawson
        Craig Castellanet