**DECLARATION OF LISA GREIF**
**IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

**EXHIBIT 3**

000121

Jennifer Cado, Senior Administrative Analyst
22941 Atherton Street
Hayward, CA 94541-6633
510-727-8514
510-727-8554 FAX



**HOUSING
AUTHORITY OF THE
COUNTY OF
ALAMEDA**



# Fax

| **To:** | Lisa Greif | **From:** | Jennifer Cado |
|---|---|---|---|
| **Fax:** | 510-663-4740 | **Pages:** | 41 including cover sheet |
| **Phone:** | 510-663-4744 x5211 | **Date:** | 10/04/2007 |
| **Re:** | Request for Documents | **CC:** | |

☑ **Urgent**    ☐ **For Review**    ☐ **Please Comment**    ☐ **Please Reply**    ☐ **Please Recycle**

● **Comments:**

Lisa,

Attached is the Application of Demolition Disposition you requested.

Thank you.

Jennifer

LOGOFF        HUD HOME        PIH HOME        Q &amp; A        SEARCH/INDEX        E-MAIL        WASS MAIN

Application        Remove from        Reports
List        Inventory

pic

**PIC Home**
**WASS Main**
**PIC Main**
**Logoff**
**Help**
**Guided Tour**

Select View:        FO HA DD Application

Field Office HA:        CA142 DUBLIN

**Application List**                                                            Create Application

Application Type:    | All                              |

Application Status:  | All                |

                         [ Retrieve ]

· Housing
  Authority

Development

Inventory
Removals

                                                                    Page: 1

Page No: 1 of 1

| Application Number | Received Date | Application Type | Processor | Status | Status Date ▼ |
|---|---|---|---|---|---|
| DDA0002636 | 08/15/2007 | Disposition | SAC-Chicago | Submitted | 06/06/2007 |

Page No: 1 of 1                                                    Page: 1

\* indicates an application with land only developments

Apr Oct. 4. 2007 12:10PM    HOUSING AUTHORITY OF



LOGOFF      HUD HOME      PIH HOME      Q & A      SEARCH/INDEX      E-MAIL      WASS MAIN

**PIC Home**
**WASS Main**
**PIC Main**
**Logoff**
**Help**
**Guided Tour**

Housing Authority
Development
Inventory Removals

Application | Remove from Inventory | Reports
List      Form HUD-52860  Supporting Documents  Quality Checklist   Submission

Field Office HA:      **CA142 DUBLIN**
Application:          **DDA0002636**

**Demolition / Disposition Application**

Application Type:     **Disposition**          Processor:     **SAC-Chicago**
Application Status:   **Submitted**            Status Date:   **06/06/2007**

| Section | Section Type | Status | Status Date |
|---|---|---|---|
| Section 1: General Information | Required | Modified | 08/14/2007 |
| Section 2: Long-Term Possible Impact of Proposed Action | Required | Modified | 08/14/2007 |
| Section 3: Board Resolution, 24 CFR Part 970.8, Environmental Review, 24 CFR Parts 50 and 58, and Local Government Consultation | Required | Modified | 08/14/2007 |
| Section 4: Description of Property 24 CFR Part 970.8<br>  CA142001   Arroyo Vista | Required | Modified | 08/15/2007 |
| Section 5: Description of Proposed Action by Project 24 CFR Parts 970.8 970.9<br>  CA142001   Arroyo Vista | Required | Modified | 08/14/2007 |
| Section 6: Justification for Demolition and/or Disposition 24 CFR Parts 970.6 and 970.7<br>  CA142001   Arroyo Vista | Required | Modified | 08/14/2007 |
| Section 7: Relocation 24 CFR Part 970.8<br>  CA142001   Arroyo Vista | Required | Modified | 08/14/2007 |
| Section 8: Resident Consultation 24 CFR Parts 970.4 and 970.8<br>  CA142001   Arroyo Vista | Required | Modified | 08/14/2007 |
| Section 9: Section 412 Offer of Sale 24 CFR Part 970.13<br>  CA142001   Arroyo Vista | Required | Modified | 08/14/2007 |



**DUBLIN HOUSING AUTHORITY**

Respond To:

Arroyo Vista Office ☐
6700 Dougherty Rd. #151
Dublin, CA 94568
(925) 828-3132

Administrative Office ☐
22941 Atherton St.
Hayward, CA 94541
(510) 538-8876

August 14, 2007

Ainars Rodins
Special Applications Center
Office of Public Housing
U.S. Department of Housing and Urban Development
77 West Jackson Boulevard, Room 2401
Chicago, IL 60604-6413

Subject:    **Disposition Application for Arroyo Vista, CA142001
Dublin, California**

Dear Mr. Rodins:

The Dublin Housing Authority (DHA) is pleased to submit its Disposition Application for the Arroyo Vista public housing complex. DHA will sell the project to a developer team composed of Eden Housing, a local nonprofit 501(c)(3) corporation and Citation Homes Central, a local for-profit developer. Both developers are extremely experienced and recognized as producing a high quality product. The developers will demolish the 150 public housing units that are located on the site and replace them with 378 units, 194 of which will be affordable and 184 of which will be market rate. We are submitting a "Disposition Only" application in accordance with your guidance, as the developers, not DHA, will undertake the demolition.

Neither the appraisal nor the NEPA environmental review are complete and so are not attached to this application. Both are in process; we expect the appraisal to be completed by the end of September/early October and the environmental review by mid-2008. We will forward each to SAC as soon as we have the final versions.

We have already begun the relocation of the residents using Section 8 Vouchers provided by the Alameda County Housing Authority. We have told residents that they are not *required* to move yet, as we are just submitting the Disposition Application. However, if a resident family *wants* to move, we will accommodate them. At the time of this application some 12 households have moved and more are planning to do so this month. We are *not* re-renting the vacated units.

The San Francisco Field Office is aware of our application; we will mail them a hard copy for their reference. They also are aware that residents have started to relocate.

**Basis for Redevelopment and Proposed New Project**
DHA is unable to adequately maintain the project with the declining operating subsidy and an annual Capital Fund grant of only $273,978. Poor initial construction and flaws in the original

000125

design have created problems that are not easily remedied and resulted in costs that cannot be funded within DHA's budget. DHA researched the financial feasibility of rehabilitating the existing project but found insufficient resources with which to do so. We contracted with engineers and estimators to develop a list of rehabilitation work items needed to bring the complex up to market standards. We reviewed the cost estimates for such work and analyzed potential funding sources. Unfortunately, possible funding provided for only about one-half the cost of the rehabilitation and the Board of Commissioners decided to proceed with disposition and redevelopment of the property instead.

At the same time we were researching rehabilitation we issued a Request for Qualifications for developers interested in redeveloping the property. We did this so as to be able to compare rehabilitation versus new development. We received eight responses; an evaluation panel scored them all, narrowed the field to the "top three," presented summaries of the top three to Arroyo Vista residents at community meetings, and finalized its scores based on resident input and references. The Board of Commissioners selected the winning team in a public meeting.

The proposed project will consist of 378 units (a de minimus number of units may be added or subtracted as a result of the planning and environmental review process) and amenities such as tot lots, landscaped open space, a child care facility and play area, and a community building with a computer lab. All 150 public housing units will be replaced with 130 Low Income Housing Tax Credit units for families plus 50 Section 202/mixed finance units for seniors, an increase of 30 affordable units over the present number of units. In addition, there will be 198 for-sale homes, 14 of which will be below market rate, thus creating a true mixed income community. First priority for all rental units and the 14 BMR for sale homes will be given to eligible returning Arroyo Vista public housing residents.

**Developer Qualifications**
Eden Housing is one of the premier non profit developers in California. Founded in 1968 by a group of community activists, it began operations with the rehabilitation of six homes in Oakland. Today Eden Housing has built more than 4,200 units and employs 130 staff. Its headquarters is approximately ten miles from the site, and Eden has built and now operates other affordable housing in Dublin. It has affiliates that provide professional property management and on-site support services. Eden Housing has direct experience with all the sources of affordable housing finance including HUD Section 202 and Section 811, CDBG, HOME, Low Income Housing Tax Credits (LIHTC), the State of California Multifamily Housing (MHP) Program and Supportive Housing Program (SHP), the Federal Home Loan Bank's AHP program and various local programs that provide low interest deferred payment loans.

Citation Homes Central and its predecessor companies have built more than 50,000 homes in California over the past 50 years. The company was founded after World War II. In 1987, Steve Schott, the president and owner of Citation Homes, separated his company from the original partnership and now operates it independently. The company builds roughly 700 homes per year. Mr. Schott is a former owner of the Oakland A's Baseball Team and supports numerous philanthropic endeavors.

2

**Public Private Partnership**
Citation Homes will pay $12 million for the portion of the site (about one-half the land) on which it will build the for-sale homes. Eden Housing will pay $1 for the portion on which it will build the affordable units. The Dublin Housing Authority will loan $8 million of the sales proceeds to Eden Housing as gap financing for the 180 affordable units. One million dollars of sales proceeds will be used to pay for relocation costs including relocation advisory services, moving expenses, security deposits, etc. The remaining $3 million will be paid to the Alameda County Housing Authority, which staffs the Dublin Housing Authority, to reimburse it for costs related to the disposition and redevelopment, including tenant relocation.

The City of Dublin has committed up to $3 million for the project--$1.5 million for relocation costs and another $1.5 million as additional gap financing for the affordable units.

All parties--DHA, City of Dublin, Alameda County Housing Authority, Eden Housing and Citation Homes--have entered into a Disposition and Development Agreement (DDA) which commits each party to its roles and responsibilities and contains a timeline for redeveloping the site.

Note that the Dublin Housing Authority owns only this project. It does not operate a Section 8 Housing Choice Voucher program; that program is administered by the Alameda County Housing Authority in the City, pursuant to a cooperation agreement. Once the Arroyo Vista public housing complex has been sold, DHA intends to consolidate with the Alameda County Housing Authority. The San Francisco Field Office is aware of this plan.

**Resident Involvement**
As Arroyo Vista consists of fewer than 250 units DHA has the option, pursuant to 24 CFR 964.18(b), of participating in the tenant participation programs in subparts B and C that contain the resident council provisions. There is no resident council currently-- at one time there was a resident council at the Arroyo Vista complex that DHA formally recognized, but that organization disbanded in mid-2006. Thus, there was no resident organization to make an offer of sale.

In the initial planning for the possible disposition of the project the Housing Authority met frequently with the resident council; however, for the past year, since the council went out of existence, has informed and consulted with the residents via monthly newsletters and community-wide meetings.

As required by HUD regulations, DHA also consulted with the Resident Advisory Board (RAB) on an amendment to the PHA Plan to include the disposition. The RAB met on September 25, 2006 and had questions about the type of relocation assistance to be provided. The RAB voiced no objection to the proposed disposition or to amendment of the Plans and submitted no written comments.

At its regular meeting of October 3, 2006, the Board of Commissioners, which includes two Arroyo Vista residents, reviewed the draft amendments and the RAB's oral comments. It opened the 45-day comment period on the amendments. The Commission held a special meeting on

3

000127

November 21ˢᵗ to conduct a public hearing on the amendments to the Housing Authority's Five-Year and Annual Plans to add the disposition and redevelopment of Arroyo Vista to the Plans. At the conclusion of the public hearing the Commission approved the amendment to the Plans.

Additional detail about DHA's resident involvement activities is contained in an attachment to the Disposition Application.

**Summary**
In summary, DHA and the residents are excited about the redevelopment of the site. The quality and amenities of the new housing will far exceed that of the current housing. The overall project will result in a community that is part of the city of Dublin rather than an isolated island on to itself as is now the case. Please call me with any questions; I can be reached at 510-727-8513 and at chrisg@haca.net.

Very truly yours,

Christine Gouig
Executive Director

4

OCR. 4. 2007 12:18PM    HOUSING AUTHORITY OF                          NO. 775

LOGOFF    HUD HOME    PIH HOME    Q & A    SEARCH / INDEX    E-MAIL    WASS MAIN

Application List | Remove from Inventory | Reports

Form HUD-52860 Supporting Documents Quality Checklist    Submission

**PIC Home**
**WASS Main**
**PIC Main**
**Logoff**
**Help**
**Guided Tour**

Housing Authority
Development
Inventory Removals

Field Office HA:    **CA142 DUBLIN**
Application:    **DDA0002636**
Application Status
Application Type:    **Disposition**    Processor:    **SAC-Chicago**
Application Status:    **Submitted**    Status Date:    **06/06/2007**
Section 1: General Information

OMB Approval No. 2577-0075 (exp. 07/31/2008)

Public reporting burden for this collection of information is estimated to average 16 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. This agency may not collect this information, and you are not required to complete this form, unless it displays a currently valid OMB control number.

This information is required to request permission to demolish or sell all or portion of a development (i.e., dwelling units, non-dwelling property or vacant land) owned and operated by a Housing Authority. The information requested in the application is based on requirements of Section 18 of the United States Housing Act of 1937, as amended and 24 CFR Part 970. HUD will use the information to determine whether, and under what circumstances, to permit HAs to demolish or sell all or a portion of a public housing development. Responses to the collection of information are statutory and regulatory to obtain a benefit. Approval of this application does not substitute approval for funding of the demolition or disposition action. The information requested does not lend itself to confidentiality.

1. Housing Authority:    **CA142 DUBLIN**    2. Date of Application:    **08/15/2007**

3. Address:
   City/Locality:
   State:    Zip Code: **0**
4. Phone No:    **(925) 828 - 3132**    Ext.    Fax No:    **(925) 828 - 5450**
   Email Address:    **info@haca.net**

5. Executive Director's Name:    **Christine Gouig**
   Phone No:    **(510) 727 - 8513**    Ext.    Fax No:    **(510) 727 - 8554**
   Email Address:    **chrisg@haca.net**

6. Primary Contact's Name:    **Christine Gouig**
   Phone No:    **(510) 727 - 8513**    Ext.    Fax No:    **(510) 727 - 8554**
   Email Address:    **chrisg@haca.net**

*    Designates a required field.

Return to Application Index

000129 8/15/200?

https://pic.hud.gov/PIC/demodispo/ddsection1.asp

LOGOFF      HUD HOME      PIH HOME      Q & A      SEARCH / INDEX      E-MAIL      WASS MAIN

Application | Remove from Inventory | Reports

Form HUD-52860 Supporting Documents Quality Checklist    Submission

PIC Home
WASS Main
PIC Main
Logoff
Help
Guided Tour

Housing Authority

Development

Inventory Removals

List

Field Office HA:    **CA142 DUBLIN**
Application:    **DDA0002636**
**Application Status**
Application Type:    **Disposition**          Processor:    **SAC-Chicago**
Application Status:    **Submitted**          Status Date:    **06/06/2007**

**Section 2: Long-Term Possible Impact of Proposed Action**

Enter the total number of units proposed to be demolished/disposed **151**

1. Performance Funding Subsidy (PFS)
In FY **2006** , this HA received $ **796.91** per unit in PFS funds.
The HA realizes that after this activity takes place, PFS will decrease by $ **120333.4** / year.
(number of demo/dispo units proposed X subsidy per unit)

2. Capital Fund Program
In FY **2006** , this HA received $ **1880.48** per unit in Capital funds.
The HA realizes that after this activity takes place, Capital funding will decrease by $ **283952.48** / year.
(number of demo/dispo units proposed X subsidy per unit)

Return to Application Index

000130    8/15/200?

Apr 04. 4. 2007 12:101M   HOUSING AUTHORITY OF

LOGOFF   HUD HOME   PIH HOME   Q & A   SEARCH/INDEX   E-MAIL   WASS MAIN

Application  Remove from Inventory  Reports

**PIC Home**
**WASS Main**
**PIC Main**
**Logoff**
**Help**
**Guided Tour**

List   Form HUD-52860 Supporting Documents Quality Checklist   Submission

Field Office HA:   **CA142 DUBLIN**
Application:   **DDA0002636**

**Application Status**

Application Type:   **Disposition**   Processor:   **SAC-Chicago**
Application Status:   **Submitted**   Status Date:   **06/06/2007**

**Section 3: Board Resolution, 24 CFR Part 970.8, Environmental Review, 24 CFR Parts 50 and 58, and Local Government Consultation**

Housing Authority

Development

Inventory Removals

1. Board Resolution Number   2. Date of Board Resolution
   **18-06**   **11/21/2006**

3. Who is conducting the environmental review?
   ○ Field Office under 24 CFR Part 50
   ◉ Responsible Entity under 24 CFR Part 58

4. Give the date the HA contacted the HUD Field Office to initiate the environmental review for all the developments in the application.

5. If the environmental review is to be performed by a responsible entity, name the entity.
   **City of Dublin, California**

6. Letter of Acknowledgement from Local Government Official is dated   **03/19/2007.**
   Attach a copy of the Letter of Acknowledgement and reference it as Section 3, line 6.

Return to Application Index

THE DUBLIN HOUSING AUTHORITY
RESOLUTION NO. 18-06

## APPROVAL OF DEMOLITION/DISPOSITION APPLICATION FOR ARROYO VISTA PUBLIC HOUSING PROJECT, HUD PROJECT NUMBER CA142001

**WHEREAS,** at its July 24, 2006 meeting, the Commission determined that the rehabilitation of the 150-unit Arroyo Vista public housing complex was not financially feasible and decided to redevelop the site; and

**WHEREAS,** the Commission has selected the development team of Eden Housing and Citation Homes to redevelop the Arroyo Vista complex; and

**WHEREAS,** in order to sell the site to the developers the Housing Authority must submit a Demolition/Disposition Application to the U.S. Department of Housing and Urban Development (HUD) Special Applications Center (SAC) ; and

**WHEREAS,** the Housing Authority has consulted with residents and the local government as required by HUD regulations;

**NOW, THEREFORE, BE IT RESOLVED,** that the Housing Commission hereby supports the demolition and disposition of the 150-unit Arroyo Vista public housing complex and the redevelopment of the site as a combination of for-sale market rate homes, for-sale below market rate homes, senior units and low-income housing tax credit units.

**BE IT FURTHER RESOLVED,** that the Executive Director is hereby authorized to submit a Demolition/Disposition Application and all required attachments to HUD, to execute documents and to provide certifications in connection with the Application and to submit all additional information that HUD may require in the Application process.

**PASSED, APPROVED AND ADOPTED** by the Commissioners of the Dublin Housing Authority on November 21, 2006, by the following vote:

**AYES:**    Cmrs. Frydendal, Hildenbrand, Lockhart, McCormick, Oravetz and Zika

**NAYS:**

**ABSTAIN:**

**ABSENT:**    Cmr. Behrens

Chairperson Lockhart

Christine Gouig
Executive Director
**Approved: November 21, 2006**

 CITY OF DUBLIN      *Celebrating 25 Years Of Cityhood 1982-2007*

100 Civic Plaza, Dublin, California 94568      Website: http://www.ci.dublin.ca.us

March 19, 2007

Ainars Rodins
Special Applications Center
Office of Public Housing
U.S. Department of Housing and Urban Development
77 West Jackson Boulevard, Room 2401
Chicago, IL 60604-6413

Subject:    Letter of Support for the Application of the Dublin Housing Authority to
Demolish and Dispose of the Arroyo Vista Public Housing Project located
in the City of Dublin, California

Dear Mr. Rodins,

The undersigned is the elected Mayor of the City of Dublin, California. This is a letter of
support, in accordance with 24 CFR 970.7(a)(14)(ii), for the Demolition and Disposition
Application submitted by the Dublin Housing Authority (DHA) for the Arroyo Vista
public housing project located in the City of Dublin, California.

The Board of Commissioners of the DHA is comprised of the five elected City Council
members of the City of Dublin plus two tenants of the housing authority. Thus, the DHA
has achieved consultation with the City of Dublin local officials on the proposed
demolition and disposition by virtue of the parties being the same.

The City of Dublin is in strong support of the demolition and disposition of the project.
DHA has long discussed the fact that there are insufficient Capital Funds to maintain the
project in a suitable manner. Over the last year, DHA spent a great deal of time
evaluating the feasibility of rehabilitating the project versus demolishing it and
redeveloping the property. The Authority contracted with engineers and estimators to
develop a list of rehabilitation work items needed to bring the complex up to market
standards and reviewed the cost estimates for such work and a report from staff that
described potential funding sources. Unfortunately, possible funding provided for only
about one-half the cost of the rehabilitation.

DHA has proposed a complete redevelopment of the property. The property would be
sold to a local developer team that would redevelop it with rental units for families, rental
units for seniors and for-sale townhomes. The existing public housing units would be
replaced on a one-for-one basis with low-income housing tax credit units and Section 202
units and the remaining units would be a mix of market rate units and additional
affordable units. In addition, there will be a village center with a park, leasing offices,
child care center, computer lab and community space.

Area Code (925) • City Manager 833-6650 • City Council 833-6650 • Personnel 833-6605 • Economic Development 833-6650
Finance 833-6640 • Public Works/Engineering 833-6630 • Parks & Community Services 833-6645 • Police 833-6670
Planning/Code Enforcement 833-6610 • Building Inspection 833-6520 • Fire Prevention Bureau 833-6606

*Printed on Recycled Paper*

000133

The City of Dublin views the proposed project as an exciting opportunity to create a mixed income community from what is now an isolated public housing project and to provide the project's residents with the type of housing and range of services that market rate residents generally receive. In addition, the replacement units will be built to current standards and will replace the older existing units. The City Council of the City of Dublin urges HUD to give the Demolition and Disposition Application its most favorable consideration.

Very truly yours,

Janet Lockhart, Mayor
City of Dublin

Cc:     Dublin City Councilmembers
        Richard Ambrose, City Manager
        Joni Pattillo, Assistant City Manager
        Elisabeth Silver, City Attorney
        Christine Gouig, Alameda County Housing Authority

000134

LOGOFF        HUD HOME        PIH HOME        Q & A        SEARCH / INDEX        E-MAIL        WASS MAIN

**PIC Home**
**WASS Main**
**PIC Main**
**Logoff**
**Help**
**Guided Tour**

Housing
Authority

Development

Inventory
Removals

Application | Remove from Inventory | Reports
List        Form HUD-52860 Supporting Documents Quality Checklist        Submission

| | |
|---|---|
| Field Office HA: | CA142 DUBLIN |
| Application: | DDA0002636 |
| Development: | CA142001 Arroyo Vista |

**Application Status**

| | | | |
|---|---|---|---|
| Application Type: | Disposition | Processor: | SAC-Chicago |
| Application Status: | Submitted | Status Date: | 06/06/2007 |

**Section 4: Description of Property 24 CFR Part 970.8**

| | | | |
|---|---|---|---|
| 1. Development Name: | Arroyo Vista | 2. Development Number: | CA142001 |
| 3. Date of Full Availability: | 10/31/1983 | 4. No. of Residential Buildings: | 151 |
| 5. No. of Non-Residential Buildings: | 0 | 6. Date Constructed: | |
| 7. Scattered Site: | N | | |
| 8. Single Family Houses: | 150 | Duplexes: | 0 |
| 3-Plexes: | 0 | 4-Plexes: | 0 |
| Other: | 1 | | |
| 9. Row House: | 0 | Walk-Up: | 0 |
| High Rise: | 0 | | |
| 11. Total Acres of the Development: | 22.90 | | |

Return to Application Index

**Existing Unit Distribution**

| | Family Units | Elderly Units | Total Units Being Used for Non-Dwelling Purposes | Merged Units | Total Existing Units | Approved Units yet to be Removed | Total Adjusted Units |
|---|---|---|---|---|---|---|---|
| 0 Bdrm | 0 | 0 | 1 | 0 | 1 | 0 | 1 |
| 1 Bdrm | 16 | 0 | 0 | 0 | 16 | 0 | 16 |
| 2 Bdrms | 78 | 0 | 0 | 0 | 78 | 0 | 78 |
| 3 Bdrms | 32 | 0 | 0 | 0 | 32 | 0 | 32 |
| 4 or more Bdrms | 24 | 0 | 0 | 0 | 24 | 0 | 24 |
| Total | 150 | 0 | 1 | 0 | 151 | 0 | 151 |

AprOCt. 4. 2007/1012:19PM     HOUSING AUTHORITY OF

LOGOFF     HUD HOME     PIH HOME     Q & A     SEARCH/INDEX     E-MAIL     WASS MAIN

Application | Remove from Inventory | Reports
List     Form HUD-52860   Supporting Documents   Quality Checklist     Submission

PIC Home
WASS Main
PIC Main
Logoff
Help
Guided Tour

Housing Authority
Development
Inventory Removals

Field Office HA:        CA142 DUBLIN
Application:            DDA0002636
Development:            CA142001 Arroyo Vista

**Application Status**
Application Type:       Disposition          Processor:      SAC-Chicago
Application Status:     Submitted            Status Date:    06/06/2007

Section 5: Description of Proposed Action by Project 24 CFR Parts 970.8 970.9

1. Proposed Action By Building Type

Calendar Year:

Available Buildings :
(Building Number\Building Number Entrance\Address Line1 Text)

Proposed Buildings :
(Building Number\Building Number Entrance\Address Line1 Text)

000001\001\6700 DOUGHERTY RD. #1 / 2008
000002\001\6700 DOUGHERTY RD. #2 / 2008
000003\001\6700 DOUGHERTY RD. #3 / 2008
000004\001\6700 DOUGHERTY RD. #4 / 2008

# indicates Non Dwelling Building Structures

2. Proposed Action By Unit Designation

Select the building number(s): No Building Info
* - indicates the building has units that are assigned in this application.

**No Units Information Found**
Available Units :
(Unit Number\Unit Designation\Bedroom Count)

Proposed Units :
(Unit Number\Unit Designation\Bedroom Count)

3. Proposed Action for Non Residential Inventory
A. Acres included in Proposed Disposition
Calendar Year :                                    Number of Acres :      0.00
B. Buildings included in Proposed Disposition
Calendar Year :                                    Number of Buildings :

4. Site Map
                                                                          $0.00
5. If this is a Disposition Application, estimate of Project Debt

6. If application is a partial demolition/disposition of the development, provide the address, building number(s), or name of each building to be demolished or disposed of

7. In the case of disposition of vacant land, attach the legal description of each parcel of land

8. If disposition, what is the appraised value determined by an independent appraisal?

https://pic.hud.gov/PIC/demodispo/ddsection5.asp                    000136   8/15/2007

$

9. Which of the following describe the proposed disposition? (Check all the apply)

☐ A. Disposition at Fair Market Value via Public Sale

☑ B. Negotiated Sale

☑ C. Sale at Less than Fair Market Value

If B and/or C are checked, provide a justification and reference it as Section 5, line 10.

10. Calculation of Net Proceeds

Estimated Sales Price $12000000.00 - Debt $0.00 - Cost & Fees $1000000.00 = Estimated Net Proceeds **$11,000,000.00**

11. How will the Net Proceeds be used?

The HA requests a waiver for the requirement to repay project debt. ◯ Yes   ◉ No

12. What is the estimated cost of demolition?
(Include professional fees, hazardous waste removal, building and site improvement, demolition and seeding and sodding of land. Do not include relocation costs or site improvements such as landscaping, playground, retaining walls, streets, sidewalks, etc.)

(a) $    (b) Indicate the source of funds:    and Year:

13. General Timetable: The HA is to provide a brief timetable based on the number of days after approval of the application that the following major actions will occur:

A. Begin relocation of residents    0        B. Complete relocation of residents    90

C. Execution of demolition contract    90    D. Demolition or disposition of the property   130
or disposition sales contract

Return to Application Index



**Section 5, Line 8:  Appraisal**

A summary appraisal is currently being prepared by an MAI certified appraiser and will be submitted to SAC when complete.  We expect this to be in late September/early October 2007.

## Section 5, Line 9: Justification for Sale at Less Than Fair Market Value

The proposed disposition of Arroyo Vista will provide commensurate public benefits to the community and the Dublin Housing Authority. Each of the 150 existing public housing units will be replaced on the original site with a new rental housing unit that will be income- and rent-restricted to households earning no more than 60% of the area median income and the affordability restrictions will have a term of at least 55 years.

These new units will be part of a larger development that includes additional affordable units and market rate units, both rental and home ownership, to create a mixed-income community. The new development will also include a day care center with surrounding play area, tot lots, a community building with a computer lab and landscaped open space.

Arroyo Vista residents who are relocated as part of the disposition process will have first priority in the lease-up of the new affordable units provided they meet basic qualification criteria.

The projected* unit breakdown is as follows:

| | |
|---|---|
| Family LIHTC units | 130 |
| HUD Section 202 mixed finance units | 50 |
| Affordable for-sale units | 14 |
| Market rate for-sale units | 184 |
| Total units | 378 |

* Note: there may be minor variations to the above numbers as the project progresses through the city's land use entitlement process. However, the number of affordable units will be at least 150 to replace the existing public housing units that are now there.

The Dublin Housing Authority used a competitive process to select the development team to redevelop Arroyo Vista, in accordance with HUD procurement requirements. After receiving statements of qualifications from eight development teams, the Authority selected the joint venture team of Eden Housing and Citation Homes. Eden Housing is a 501(c)(3) nonprofit housing developer headquartered less than 15 miles away from the site. Eden has successfully developed over 4,500 units of affordable housing in Dublin and other California communities, and it currently manages over 2,500 affordable rental units. Citation Homes is a for-profit homebuilder also based in the San Francisco Bay Area, and it and its predecessor firms have successfully produced over 50,000 homes.

The Dublin Housing Authority plans to sell approximately one-half of the site to Citation Homes for $12 million. The market rate homes will be built on this portion, along with the 14 affordable for-sale units targeted to households earning 60-120% AMI. The other half of the site will be sold to Eden Housing for $1. Eden will build the 130 LIHTC family units and the 50 Section 202/ mixed finance units on this portion.

000140

## Section 5, Line 11: How Net Proceeds Will Be Used

Dublin Housing Authority is not aware of any project debt. We have attached a letter (named Section 5 Line 11, Debt Forgiveness) from Florante Manuel, Chief, Payments Branch, U.S. Department of Housing and Urban Development, dated May 27, 1997, which indicates that the project's outstanding principal and interest have been forgiven. If this understanding were incorrect, the Authority would like to seek a waiver of any required repayment.

Under the terms of a Disposition and Development Agreement (DDA) among the Authority, City of Dublin, Eden Housing, Citation Homes and the Housing Authority of the County of Alameda, Citation Homes will pay $12 million, in a series of payments, to purchase the property on which the market rate for-sale homes will be built. The Authority will use $1 million of this for relocation activities described in Section 7 of this Application. Three million dollars will be paid to the Alameda County Housing Authority, which staffs the Dublin Housing Authority, to reimburse it for costs related to the disposition and redevelopment, including tenant relocation. The Authority will loan the remaining $8 million to Eden Housing as a long-term deferred-payment loan to subsidize the development of the affordable family rental and senior housing on the site.

The Alameda County Housing Authority will use the $3 million it receives for costs consistent with 24 CFR 970.19, including the provision of low-income housing or other benefits for the residents of the Housing Authority of the County of Alameda, through such measures as modernization of lower-income and public housing, the acquisition, development, or rehabilitation of other properties to operate as lower-income or public housing or improvements to the systems and buildings of the Alameda County Housing Authority which would result in upgraded, more efficient service delivery to residents.

U. S. Department of Housing and Urban Development
Washington, D.C. 20410-0100

JUN - 2 1997

OFFICE OF THE CHIEF FINANCIAL OFFICER

MAY 27 1997

Dublin Housing Authority
22941 Atherton Street
Hayward, CA 94541-6613

Contract Number(s): SF-1877
Project Number(s): CA (39P)-142-1

Dear Sir/Madam:

This is in reference to Notice PIH 87-12, Public and Indian Housing Rental Development and Modernization - Forgiveness and Excess Financing. Provisions of the Housing and Community Development Reconciliation Amendment of 1985 (Public Law 99-272 enacted April 7, 1986) authorizes the Secretary to forgive outstanding principal and interest on loans (the repayment of which was to be made using Annual Contributions) made by the Secretary to Public Housing Agencies and Indian Housing Authorities.

Based on this legislation, the outstanding principal and interest for the above project(s) have been forgiven. Please refer to Notice PIH 87-12 for the correct accounting entries to remove the obligations from your books. Note that forgiveness does not apply to excess financing, bonds, or FFB notes.

If you have any questions concerning the above, please call me on (202) 708-1358.

Very sincerely yours,

Florante Manuel
Chief, Payments Branch

000142

## Section 5, Line 13: General Timetable

The Disposition Application form requires the PHA to provide a general timetable of certain major actions that will occur <u>after</u> the Disposition Application is approved.

**A. Begin relocation of residents.** We have inserted "0" days in *A. Begin relocation of residents*, because we have already begun to relocate residents, even though the Application is not approved. To date, about 12 households have moved and more plan to do so in the upcoming months. We are not *requiring* that anyone move now, however, if they *want* to do so we provide them with relocation counseling and moving expenses and a Section 8 Voucher.

**B. Complete relocation of residents.** We have inserted "90" days in *B. Complete relocation of residents*. Our schedule assumes that HUD will approve the Disposition Application by August of 2008 and all residents will have been relocated by November of 2008 (90 days later).

**C. Execution of demolition contract or disposition sales contract.** We have inserted "90" days in *C. Execution of demolition contract or disposition sales contract*. The Authority has already executed a Disposition and Development Agreement (DDA) with the developers. However, the Disposition Application form would not allow us to insert "0" in this field. The 90 days that we inserted represents the point from approval of the Disposition Application at which we anticipate HUD will release the Declaration of Trust on the property.

**D. Demolition or disposition of the property.** We have inserted "130" days in *D. Demolition or disposition of the property*. Our schedule anticipates that we will convey the property to the developers within 10 days of recording the final subdivision map; the final subdivision map will be recorded within 30 days of HUD's release of the Declaration of Trust.

LOGOFF     HUD HOME     PIH HOME     Q & A     SEARCH / INDEX     E-MAIL     WASS MAIN

| Application | Remove from Inventory | Reports |

List     Form HUD-52860 Supporting Documents Quality Checklist     Submission

**PIC Home**
**WASS Main**
**PIC Main**
**Logoff**
**Help**
**Guided Tour**

Housing Authority

Development

Inventory Removals

Field Office HA:     **CA142 DUBLIN**
Application:          **DDA0002636**
Development:       **CA142001 Arroyo Vista**

**Application Status**

Application Type:     **Disposition**        Processor:     **SAC-Chicago**
Application Status:   **Submitted**          Status Date:   **06/06/2007**

**Section 6: Justification for Demolition and/or Disposition 24 CFR Parts 970.6 and 970.7**

*Please complete Section 5 prior to Section 6 to ensure that proposed units information is captured for TDC calculation and occupancy information.*

## Demolition

### Two Part Obsolescence Test

☐ **A.** The project or portion of a public housing project, that-

> 1. the project or portion of the public housing project is obsolete as to physical condition, location, or other factors, making unsuitable for housing purposes; <u>and</u>

> 2. no reasonable program of modifications is cost-effective to return the public housing project or portion of the project to useful life;

### Density Reduction

☐ **B.** For an application proposing demolition of only a portion of a public housing development, that the demolition will help to ensure the viability of the remaining portion of the project. (This criterion may not be used for scattered sites or total demolition.)

## Disposition

In the case of an application proposing disposition by sale or other transfer ( e.g. a lease for a year or more) of a public housing project or other real property subject to this title the retention of the property is not in the best interests of the residents or the public housing agency because;

### Change In Neighborhood

☐ **C.** Conditions in the areas surrounding the public housing project adversely affect the health or safety of the residents or the feasible operation of the project by the PHA; or

### One-for-One Replacement

☐ **D.** Disposition allows the acquisition, development, or rehabilitation of other properties that will be more efficiently or effectively operating as low-income housing;

### Mixed Finance and Other Reason

☑ **E.** The public housing agency has otherwise determined the disposition to be appropriate for reasons that are-

> 1. in the best interests of the residents and the PHA;

000144     8/15/200⁷

2. consistent with the goals of the PHA and the PHA plan; and

3. otherwise consistent with this title; or

### Non-Dwelling Structures and Land

☐ **F.** For land and non-dwelling buildings, the property is (1) excess to the needs of a PHA project, or (2) the disposition is incidental to, or does not interface with, continued operation of the public housing project;

If Justification is based upon obsolesence of the units/buildings, complete the applicable calculation below for the units proposed for demolition. The application must demonstrate to HUD that the cost of rehabilitation compared with the cost guidelines for that development (i.e., 90 percent of TDC) is excessive or that it is unreasonable.

Based on HUD Notice 05-26    For Locality  **ANCHORAGE**

Estimated Cost of Rehabilitation   $

| Bedroom Count by Building Type | No. of Units | TDC per Unit | TDC | Percentage of Rehabilitation Cost |
|---|---|---|---|---|
| 0 -Bdrm  Elevator Structure | 0 | 0 | 0 | |
| 0 -Bdrm  Non Dwelling Structure | 0 | 0 | 0 | |
| 0 -Bdrm  Row or Townhouse (Sep. entrances) | 0 | 115210.35 | 0 | |
| 0 -Bdrm  Semi Detached (Sep. entrances) | 0 | 130884.95 | 0 | |
| 0 -Bdrm  Single Family/Detached | 0 | 0 | 0 | |
| 0 -Bdrm  Multifamily/Walkup Apts (Shared Entrance) | 0 | 0 | 0 | |
| 1 -Bdrm  Elevator Structure | 0 | 0 | 0 | |
| 1 -Bdrm  Non Dwelling Structure | 0 | 0 | 0 | |
| 1 -Bdrm  Row or Townhouse (Sep. entrances) | 0 | 151529.94 | 0 | |
| 1 -Bdrm  Semi Detached (Sep. entrances) | 0 | 173195.09 | 0 | |
| 1 -Bdrm  Single Family/Detached | 0 | 0 | 0 | |
| 1 -Bdrm  Multifamily/Walkup Apts (Shared Entrance) | 0 | 0 | 0 | |
| 2 -Bdrm  Elevator Structure | 0 | 0 | 0 | |
| 2 -Bdrm  Non Dwelling Structure | 0 | 0 | 0 | |
| 2 -Bdrm  Row or Townhouse (Sep. entrances) | 0 | 196532.06 | 0 | |
| 2 -Bdrm  Semi Detached (Sep. entrances) | 0 | 227336.42 | 0 | |
| 2 -Bdrm  Single Family/Detached | 0 | 0 | 0 | |
| 2 -Bdrm  Multifamily/Walkup Apts (Shared Entrance) | 0 | 0 | 0 | |
| 3 -Bdrm  Elevator Structure | | | | |

000145   8/15/2007

| | 0 | 0 | 0 | |
|---|---|---|---|---|
| 3 -Bdrm  Non Dwelling Structure | 0 | 0 | 0 | |
| 3 -Bdrm  Row or Townhouse (Sep. entrances) | 0 | 237025.01 | 0 | |
| 3 -Bdrm  Semi Detached (Sep. entrances) | 0 | 275312.52 | 0 | |
| 3 -Bdrm  Single Family/Detached | 0 | 0 | 0 | |
| 3 -Bdrm  Multifamily/Walkup Apts (Shared Entrance) | 0 | 0 | 0 | |
| 4 + Bdrm  Elevator Structure | 0 | 0 | 0 | |
| 4 + Bdrm  Non Dwelling Structure | 0 | 0 | 0 | |
| 4 + Bdrm  Row or Townhouse (Sep. entrances) | 0 | 279644.67 | 0 | |
| 4 + Bdrm  Semi Detached (Sep. entrances) | 0 | 325524.06 | 0 | |
| 4 + Bdrm  Single Family/Detached | 0 | 0 | 0 | |
| 4 + Bdrm  Multifamily/Walkup Apts (Shared Entrance) | 0 | 0 | 0 | |
| Total: | | | 0 | |

4. Units occupied at the time of application submission:

a. Of the 0 units proposed for **demolition** (based on Section 5, line 2), **0** are occupied.

b. Of the 151 units proposed for **disposition** (based on Section 5, line 2), 134 are occupied.

c. Units **remaining** after demolition/disposition: **-1**

d. Remaining **occupied units** after demolition/disposition: **13**

If any occupied units are listed in a or b, complete Section 7, line 1.

5. Occupancy Information as of the date of the application.

| Unit Designation | Occupied Units | Units Vacant for less than 12 months | Units Vacant for more than 12 months | Total Vacant Units | Total Units Occupied and Vacant |
|---|---|---|---|---|---|
| 0 -Bdrm | 0 | | | 0 | 0 |
| 1 -Bdrm | 16 | | | 0 | 16 |
| 2 -Bdrm | 75 | | | 0 | 75 |
| 3 -Bdrm | 32 | | | 0 | 32 |
| 4 -Bdrm | 24 | | | 0 | 24 |
| 5 + Bdrm | 0 | | | 0 | 0 |
| Total: | 147 | | | 0 | 147 |

Return to Application Index

**Section 6, Line 1: Justification of Disposition**

Dublin Housing Authority has determined the disposition to be appropriate for reasons that are 1) in the best interests of the residents and the PHA; 2) consistent with the goals of the PHA and the PHA plan; and 3) otherwise consistent with the United States Housing Act of 1937.

As described in Section 5, Line 10, Dublin Housing Authority has the opportunity to have a highly experienced and successful development team redevelop the Arroyo Vista site in a way that 1) replaces each of the 150 existing units with a new rental housing unit that will be income- and rent-restricted to households earning no more than 60% of the area median income for a term of at least 55 years, 2) provides *additional* affordable housing units, 3) provides market rate units that will help create a mixed-income community, and 4) provides various public amenities such as a child care center and community building with a computer lab. This will be a tremendous improvement over the existing units, which we are not able to adequately maintain and which contain construction and design flaws not easily remedied. The units suffer significant deferred maintenance as a result of increasing operating and maintenance costs during a time of inadequate and decreasing HUD operating subsidies and Capital Fund grants.

All eligible Arroyo Vista residents displaced by the disposition process will receive Section 8 Housing Choice Vouchers and relocation benefits such as moving assistance, security deposits and necessary counseling. In addition, Arroyo Vista residents will have first priority in the lease-up of the new affordable units provided they meet basic qualification criteria.

The disposition of Arroyo Vista is reflected in the Authority's PHA plan.

000147

LOGOFF    HUD HOME    PIH HOME    Q & A    SEARCH / INDEX    E-MAIL    WASS MAIN

Application    Remove from Inventory    Reports

**List    Form HUD-52860 Supporting Documents Quality Checklist    Submission**

PIC Home
WASS Main
PIC Main
Logoff
Help
Guided Tour

Housing Authority

Development

Inventory Removals

| | |
|---|---|
| Field Office HA: | CA142 DUBLIN |
| Application: | DDA0002636 |
| Development: | CA142001 Arroyo Vista |

**Application Status**

| | | | |
|---|---|---|---|
| Application Type: | Disposition | Processor: | SAC-Chicago |
| Application Status: | Submitted | Status Date: | 06/06/2007 |

**Section 7: Relocation 24 CFR Part 970.3**

1. How many individuals will be affected by this action? **437**

2. How will counseling and advisory services be provided?
Provide an attachment explaining and referencing it as **Section 7, line 2.**

3. What housing resources are expected to be used for relocation?
☐ Other Public Housing    ☑ Section 8    ☐ Other
Provide an attachment explaining and referencing it as **Section 7, line 3.**

| | Per Unit Cost   x | No. of Units   = | Total |
|---|---|---|---|
| 4. Estimated cost of counseling and advisory services | $3,100.00 | 148 | $458,800.00 |
| 5. Estimated cost of moving expenses | $1,940.00 | 148 | $287,120.00 |
| 6. Total cost of relocation expenses | | | $745,920.00 |

7. What sources of funding will be used to pay for relocation activities?
☐ Operating Funds    ☐ Capital Fund    ☑ Other
Provide an attachment explaining and referencing it as **Section 7, line 7.**

Return to Application Index

## Section 7, Line 2: How Counseling and Advisory Services will be Provided

The Authority has retained the relocation consulting firm of Overland, Pacific & Cutler (OPC), a firm with an office in Oakland, California, with 25 years experience and that handles over 2,000 relocation cases per year. OPC has extensive experience with relocating very low and low income residents for housing authority, redevelopment agency and local government projects.

OPC will begin with the preparation of a comprehensive relocation plan. To develop the plan it will interview all potentially affected residents to determine their relocation needs, hold both community and inidividual meetings and research the market for replacement housing. The plan will be distributed to residents for comment and be presented for adoption by the Housing Authority Commission at a public meeting.

Relocation services for individual households include:

- ❖ Secure basic case information; maintain case documentation and contact diary

- ❖ Conduct in-depth field interview with resident; document rent, income, family composition, relocation needs and special requirements; explain process, rights and benefits

- ❖ Provide on-going advisory assistance including referrals to and coordination with community service resources

- ❖ Search for and document comparable units for each household; provide referrals; arrange for transportation to view replacement units, if needed

- ❖ Work with potential landlords, educating them as to the benefits of Section 8 Vouchers

- ❖ Prepare letter of eligibility for each household and obtain authorization of relocation assistance from Housing Authority

- ❖ Assist residents in completing rental applications

- ❖ Monitor the replacement site escrow and explain the relocation process to the escrow officer

- ❖ Review and discuss residents' moving plans and personal property inventory in advance of the move

- ❖ Verify vacation of the displacement site and secure a certificate of abandonment

- ❖ Determine amount of relocation benefits, including moving payments, rent differential payments, if any, and re-establishment payments

- ❖ Secure and process an advance claim to assist with the move and a final claim incorporating all costs

- ❖ Ensure that residents sign all forms and claims and provide appropriate back-up

000149

## Section 7, Line 3: Housing Resources Used for Relocation

Although the Dublin Housing Authority owns the Arroyo Vista public housing complex that is being disposed of, the Alameda County Housing Authority operates the Section 8 Housing Choice Voucher Program within the City of Dublin. The Alameda County Housing Authority serves all cities in the County of Alameda with the exception of Oakland, Livermore, Berkeley and Alameda, each of which has its own housing authority and its own Section 8 Program. The Alameda County Housing Authority serves nine cities and the unincorporated county; the Alameda County Housing Authority has a cooperation agreement with each of the cities in which it operates.

The Alameda County Housing Authority has agreed to provide up to 150 of its Section 8 Housing Choice Vouchers for relocation of the displaced residents of Arroyo Vista.

000150

## Section 7, Line 7: Sources of Funding for Relocation

The total relocation costs shown in the Disposition Application include advisory services and moving costs. They total $745,920. However, the Disposition Application form does not allow for input of other relocation costs.

In addition to the advisory services and moving costs the Dublin Housing Authority is paying the following relocation costs for up to 148 households (two units were vacant at the time the relocation budget was prepared):

| Type of Cost | Per Unit | Total |
|---|---|---|
| Security Deposits | 2,500 | 370,000 |
| Credit Check Fees | 75 | 11,100 |
| Rental Assistance Payment (if needed) | 13,300 | 1,968,400 |
| SubTotal | | $2,349,500 |
| Add Costs from HUD Dispo App | 5,040 | 745,920 |
| Total | $20,915 | $3,095,420 |

Security Deposits: it is typical in the San Francisco/Oakland Bay Area for landlords to charge security deposits to new tenants. California state law limits such deposits to two months' rent. The per unit cost of $2,500 shown above assumes an average rent of $1,250, which is equal to the HUD Fair Market Rent for the two-bedroom unit in the Oakland-Fremont PMSA.

Credit Check Fees: it is typical in the San Francisco/Oakland Bay Area for landlords to charge for credit checks for prospective tenants. The per unit cost of $75 shown above assumes a landlord will check all three of the national credit agencies at $25 each.

Rental Assistance Payment: California state relocation law requires that displaced tenants receive the monetary difference between their current rent and the rent on a comparable, decent, safe and sanitary unit for 42 months. The public housing that is being sold consists of small, single family detached homes. Thus, we have budgeted on a "worst case" basis for the fact that the Section 8 Housing Choice Vouchers being used for relocation will need to be augmented with rental assistance payments (although we don't expect this to be the case for very many households).

The Authority has identified and committed the following to fund all relocation activities:

| Source | Per Unit | Total |
|---|---|---|
| Developer Contribution | 6,757 | 1,000,000 |
| Authority non-HUD reserves | 4,054 | 600,000 |
| City of Dublin | 10,135 | 1,500,000 |
| Total | | $3,100,000 |

No HUD Operating Subsidy or Capital Funds will be used for relocation activities.

000151

LOGOFF        HUD HOME        PIH HOME        Q & A        SEARCH/INDEX        E-MAIL        WASS MAIN

| Application | Remove from Inventory | Reports |

List        Form HUD-52860 Supporting Documents Quality Checklist        Submission

**PIC Home**
**WASS Main**
**PIC Main**
**Logoff**
**Help**
**Guided Tour**

Housing Authority

Development

Inventory Removals

Field Office HA:        **CA142 DUBLIN**
Application:        **DDA0002636**
Development:        **CA142001 Arroyo Vista**

**Application Status**

Application Type:        **Disposition**        Processor:        **SAC-Chicago**
Application Status:        **Submitted**        Status Date:        **06/06/2007**

**Section 8: Resident Consultation 24 CFR Parts 970.4 and 970.8**

1. Describe how the residents of the development were informed and consulted about this activity. Refer to form HUD-52860 (04/15/2002).

2. If there is an organization representing the residents of the development in this application, identify the group, and describe how you informed and consulted with them by referencing Section 8, Line 2. If there is not a resident organization representing this development please select here:        ○ Yes    ◉ No

3. If there is an organization representing the residents of the whole HA, identify the group, and describe how you informed and consulted with them by referencing Section 8, Line 3. If there is not a resident organization representing the whole HA, please select here:        ○ Yes    ◉ No

4. Describe, and identify, how you informed the Resident Advisory Board (RAB), as defined by the 24 CFR Section 903.13, of the proposed activity be referencing Section 8, line 4.

5. Did you receive any written comments concerning this application?        ○ Yes    ◉ No

Return to Application Index

**Section 8, Line 1: How Residents were Informed and Consulted**

There is no Housing Authority-wide resident organization as the Authority owns only the 150-unit Arroyo Vista public housing project.

As Arroyo Vista consists of fewer than 250 units DHA has the option, pursuant to 24 CFR 964.18(b), of participating in the tenant participation programs in subparts B and C that contain the resident council provisions. There is no resident council currently-- at one time there was a resident council at the Arroyo Vista complex that DHA formally recognized, but that organization disbanded in mid-2006. In the initial planning for the possible disposition of the project the Housing Authority met frequently with the resident council; however, for the past year, since the council went out of existence, has informed and consulted with the residents via monthly newsletters and community meetings.

**Newsletters.** The Authority sends a regular newsletter to all residents. That newsletter provides updates on the proposed redevelopment. Newsletters with information on the proposed project began in April 2003 and continue to date. Examples of three recent newsletters are attached as Section 8, Line 1.

**Facilitated Meetings.** The Authority retained the consulting firm ENVIROCOM Communications Strategies in 2004 to carry out community relations and public outreach related to the possible redevelopment. During September, October and November of 2004 ENVIROCOM representatives attended board of commissioner meetings, met with the board's two tenant commissioners, facilitated meetings with the resident council, held two community-wide meetings and had telephone conversations or meetings with individual residents. ENVIROCOM prepared a report of its activities and recommendations and presented those to the Housing Commission at its December 14, 2004 meeting.

**Proposal Evaluation.** An evaluation panel reviewed the eight proposals submitted by developers interested in undertaking the redevelopment. After determining the "top three" in the competitive range, Housing Authority staff met with the remaining two resident council members to describe the proposals and obtain feedback. The two council members had no objection to the proposals and asked questions about relocation benefits and Section 8 vouchers. Staff then held two community meetings at Arroyo Vista to describe the proposals and answer questions. The purpose of these three meetings was to obtain resident input prior to the evaluation panel assigning a final score to the proposers. No comments in writing were submitted.

**Developer Presentation.** Since the selection of the developers the Authority has held three meetings with residents to 1) review the Authority's actions to date, 2) inform residents of upcoming actions, 3) introduce residents to the selected developers, 4) hear from the developers a description of the proposed project, 5) introduce residents to the relocation consultant, 6) hear from the relocation consultant a description of the relocation process and benefits, 7) present an overview of the Housing Choice Voucher program to be used for relocation and 8) present information on the Section 8 Homeownership Program. These meetings were held on April 24 (one in the daytime and one in the evening) and on June 6 in the evening.

**Small Group Meetings.** Housing Authority staff has begun to meet with residents in groups of 5 households to explain relocation benefits and the use of Section 8 vouchers for relocation as well as to answer general questions about Section 8. The meetings are held at the Arroyo Vista complex and

residents sign up at the office. At this time 12 resident households have taken advantage of their relocation benefits and moved out and more plan to do so this month.

# ARROYO VISTA NEWSLETTER
## October, 2006
### The Redevelopment Process

In previous newsletters and at meetings we've explained that the Dublin Housing Commission was looking at the costs of rehabilitating Arroyo Vista as well as the possibility of demolishing the project and redeveloping the property. At its meeting on July 24, the Commission decided to redevelop the property and chose a developer team, Eden Housing, a non-profit organization based in Hayward and Citation Homes, a for-profit developer with offices in Santa Clara.

### Project Description

The project proposed includes 216 for-sale townhomes, 15 of which will be affordable, and 179 affordable apartments, 50 of which will be for seniors. There will also be community facilities such as a child care center, computer lab and playgrounds. The project may change slightly as it is reviewed by the City of Dublin for compliance with its General Plan, building codes and environmental requirements. The developers will have a number of meetings with Arroyo Vista residents as well as residents from the surrounding area to discuss the project. *We will let you know when these meetings are scheduled.*

### Staff Meetings with the Developers

Housing Authority and City of Dublin staff have begun meeting with the developers. We have discussed the process for submitting applications to the U.S. Department of Housing and Urban Development (HUD) for

disposition of the property and for Section 8 vouchers for relocation.

**No resident should worry about having to move right away or wonder if they will be able to afford new housing.** The Housing Commission has stated that redevelopment is contingent on the Housing Authority obtaining Section 8 vouchers so that Arroyo Vista residents will have affordable housing when they have to move. Competition for such vouchers is keen and we do not know if the Authority will be successful in obtaining them. *For this reason in particular it is difficult to predict when redevelopment will occur—it could take a year or two.*



### New Resident Advisory Board Members

Four persons have been appointed to the Resident Advisory Board (RAB). They are: Loy Costello, Shawn Costello, Carolyn Evans and Sue Robinson. A RAB is not the same as a Resident Council. The primarily responsibility of a RAB is to review and comment on the Housing Authority's Annual Plan and Five-Year Plan and any amendments to these plans. The RAB held a meeting on September 25 and discussed the amendments to the Plans

000155

# ARROYO VISTA NEWSLETTER

**October, 2006**

**The Redevelopment Process**

that are required due to the redevelopment. The Housing Commission will review the draft amendments and the RAB's comments at its meeting of October 3. There is a 45-day comment period before the Commission can adopt the amendments in final form.

## Commission Meeting Date

The Housing Commission has changed its regular meeting date to the first Tuesday of every month instead of the third Tuesday. The time (6 PM) and place (City Council Chambers at Dublin City Hall) remain the same.

## New Tenant Commissioners

At its June meeting, the Dublin Housing Commission reappointed Ramona Frydendal as the Senior Tenant Commissioner and appointed Lauriann Behrens as the Tenant Commissioner. These Commissioners will serve for two years. Please let them know if you have any issues or questions you'd like them to bring up at Commission meetings.

**Arroyo Vista**
**6700 Dougherty Road, #151**
**Dublin, CA 94568**
**Phone (925) 828-3132**
**Eddie Ortiz, Manager**

# June 2007

## Arroyo Vista

6700 Dougherty Rd.
Dublin, CA 94568
Phone: (925) 828-3132



---

**Dublin Housing Authority
Arroyo Vista Staff**

*Margie Newman*
**Dublin Area Manager**

*Carol Alves*
**Administrative Services**

**Maintenance Staff**
*Lee Alejandro*
*Manny Gutierrez*
*Charles Hughes*

**Office Hours**
**Monday - Friday**
8:30am - 3:00pm

**Saturday & Sunday**
Closed

**Closed Every Other Friday**

**Important Numbers**

Office: (925) 828-3132
Fax: (925) 828-5450



---

# REDEVELOPMENT UPDATE

In April all of you received the General Information Notice about the redevelopment of Arroyo Vista and the relocation that will be required. The Notice announced two meetings for April 24 that would be held to discuss the project. Some of you were able to attend those meetings. Representatives of the developers, Eden Housing and Citation Homes were present and described their plans for the project. They presented a slide show and pictures of the proposed layout of the new units and community building. Representatives of the relocation consultant retained by the Housing Authority, Overland Pacific & Cutler, also were present. They described the relocation process and answered a number of questions about timing and relocation benefits. Staff from the Housing Authority were present to answer questions about Section 8 Housing Choice Vouchers

At the meeting Housing Authority staff said there would be a meeting on May 23 to discuss the Section 8 homeownership program. THIS MEETING HAS BEEN CHANGED TO JUNE 6. The meeting is called: Introduction to Family Stability and Section 8 Rental and Homeownership, and will include information on the Section 8 program (both rental and homeownership) and ways of improving your credit to prepare for homeownership or renting in the private market. The meeting will take place at Dublin City Hall. in the Regional Meeting Room from 6-8 PM. Watch for the flyer in the mail that announces this meeting.

Do not feel you have to move or begin looking for a new home now. Beginning next year, the relocation consultant will meet with each family individually to ascertain their relocation needs and explain the assistance that is available. In the meantime, if you have any questions about relocation, please call Overland Pacific & Cutler at 877-972-8908 (toll free) and ask for either Teresa Laverde or John Morris.



# July 2007

## Arroyo Vista

6700 Dougherty Rd.
Dublin, CA 94568
Phone: (925) 828-3132



### Dublin Housing Authority
### Arroyo Vista Staff

*Margie Newman*
**Dublin Area Manager**

*Carol Alves*
**Administrative Services**

**Maintenance Staff**
*Lee Alejandro*
*Manny Gutierrez*
*Charles Hughes*

### Office Hours
**Monday – Friday**
8:30am - 3:00pm

**Saturday & Sunday**
Closed

### Closed Every Other Friday

### Important Numbers

Office: (925) 828-3132
Fax: (925) 828-5450



# REDEVELOPMENT UPDATE

We had a great turn out at the meeting held at Dublin City Hall on June 6! Thank you to everyone who attended. A lot of information was covered at the meeting:

- The application to HUD to sell the property will be submitted in June. It will take about one year before it is approved.
- The property cannot be demolished until AFTER the application is approved.
- YOU DO NOT HAVE TO MOVE NOW. We anticipate starting relocation activities early next year.
- If you WANT to move before next year, you can.
- The Section 8 vouchers for all eligible households are available after July 25 (let's say, August 1).
- We have Section 8 vouchers for all eligible households—we will not "run out" if you decide to move next year instead of now.
- Housing Authority staff and the Housing Authority's relocation consultant will begin holding small group meetings (about 5 families at a time) at Arroyo Vista to more fully explain the Section 8 program and relocation benefits. We will contact you to schedule your meeting.

At the June 6th meeting a variety of benefits were described including payment of moving assistance, Section 8 voucher program rules, classes and counseling from the Tri Valley Housing Opportunities Center and inclusionary home ownership opportunities in the City of Dublin. You will hear more about all of these during the relocation process.
In the meantime, for questions please call the following:

| | |
|---|---|
| **Homeownership/Credit Counseling:** | Jorge Ramirez 925-373-3930 |
| **Relocation:** | John Morris/Teresa Laverde 877-972-8908 (toll free) |
| **Section 8 Voucher Rules:** | Mary Rizzo Shuman 510-727-8570 |
| **Section 8 Homeownership:** | Betsy Safine 510-727-8585 |

## Section 8, Line 4: How Resident Advisory Board was Informed

In accordance with HUD regulations, the Resident Advisory Board (RAB) met on September 25, 2006 to discuss proposed amendments to the PHA Plan which would allow for the disposition of Arroyo Vista. Housing Authority staff explained the purpose of and process for the revision of the Plans. The RAB had questions about the type of relocation assistance to be provided and staff addressed those questions as reflected in the Annual Plan. The RAB voiced no objection to the proposed disposition or to amendment of the Plans and submitted no written comments.

At its regular meeting of October 3, 2006, the Housing Authority Commission, which includes two tenants of Arroyo Vista, reviewed the draft amendments and the RAB's oral comments. It opened the 45-day comment period on the amendments.

The Commission held a special meeting on November 21st to conduct a public hearing on the amendment to the Housing Authority's Five-Year and Annual Plans to add the disposition and redevelopment of Arroyo Vista to the Plans. This public hearing was noticed in the *Tri-Valley Herald*, a newspaper of general circulation, as well as in the November 2006 Arroyo Vista newsletter.

After closing the public hearing the Commission approved the amendment to the Plans and authorized staff to submit the Disposition Application to HUD.

LOGOFF     HUD HOME     PIH HOME     Q & A     SEARCH / INDEX     E-MAIL     WASS MAIN

Application | Remove from Inventory | Return List     Form HUD-52860   Supporting Documents   Quality Checklist   Submission

**PIC Home**
**WASS Main**
**PIC Main**
**Logoff**
**Help**
**Guided Tour**

Housing Authority

Development

Inventory Removals

Field Office HA:     **CA142 DUBLIN**
Application:          **DDA0002636**
Development:          **CA142001 Arroyo Vista**

**Application Status**

Application Type:     **Disposition**          Processor:     **SAC-Chicago**
Application Status:   **Submitted**            Status Date:   **06/06/2007**

**Section 9: Section 412 Offer of Sale 24 CFR Part 970.13**

1. Did the HA provide an offer of sale to the resident organization(s) at the development?     ○ Yes     ◉ No

2. If no organization existed, provide an explanation and reference it as Section 9, line 2.

3. Is the HA exercising any of the exceptions to the offer of sale requirements permitted by 24 CFR 970.13(a)(2)? If "yes", which of the following exceptions apply. Check the one that applies and referece it as Section 9, Line 3.     ◉ Yes     ○ No

○ 970.13(a)(2)(v)     A public body has requested to acquire vacant land that is less than two acres in order to build or expand its services (e.g., a local government wishes to use the land to build or establish a police substation).

◉ 970.13(a)(2)(vi)     PHA seeks disposition outside the public housing program to privately finance or otherwise develop a facility to benefit low-income families (e.g., day care center, administrative building, other types of low-income housing).

Return to Application Index

https://pic.hud.gov/PIC/demodispo/ddsection9.asp

## Section 9, Line 2: No Resident Organization in Existence

The Housing Authority did not provide an offer of sale to a resident organization because no resident organization exists. As stated in the discussion in Section 8, Line 1, a resident council existed at one point but disbanded in mid-2006. The last meeting held with the council was in May 2006 to discuss the developer proposals and only two members were left on the council to attend the meeting. Those two members had no comments on the proposals; their questions were about relocation benefits and the availability of Section 8 vouchers.

000161

## Section 9, Line 3:  Exception to Offer of Sale Requirements

As described in Section 9, Line 2, the Housing Authority did not provide an offer of sale to a resident organization because no resident organization exists.  As stated in the discussion in Section 8, Line 1, a resident council existed at one point but disbanded in mid-2006.

The Housing Authority also claims an exception to the offer of sale requirement under 970.9(b)(3)(ii):  "A PHA seeks disposition outside the public housing program to privately finance or otherwise develop …other types of low-income housing."  The new project will consist of 180 units of low-income housing:  130 units of family LIHTC units and 50 units of Section 202/mixed finance units.

**DECLARATION OF LISA GREIF**
**IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

**EXHIBIT 4**

# PHA Plans

**Streamlined 5-Year/Annual Version**

**U.S. Department of Housing and Urban Development**
Office of Public and Indian Housing

OMB No. 2577-0226
(exp 08/31/2009)

This information collection is authorized by Section 511 of the Quality Housing and Work Responsibility Act, which added a new section 5A to the U.S. Housing Act of 1937 that introduced 5-year and annual PHA Plans. The full PHA plan provides a ready source for interested parties to locate basic PHA policies, rules, and requirements concerning the PHA's operations, programs, and services, and informs HUD, families served by the PHA, and members of the public of the PHA's mission and strategies for serving the needs of low-income and very low-income families. This form allows eligible PHAs to make a streamlined annual Plan submission to HUD consistent with HUD's efforts to provide regulatory relief to certain PHAs. Public reporting burden for this information collection is estimated to average 11.7 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. HUD may not collect this information and respondents are not required to complete this form, unless it displays a currently valid OMB Control Number.

**Privacy Act Notice.** The United States Department of Housing and Urban Development, Federal Housing Administration, is authorized to solicit the information requested in this form by virtue of Title 12, U.S. Code, Section 1701 et seq., and regulations promulgated thereunder at Title 12, Code of Federal Regulations. Information in PHA plans is publicly available.

# Streamlined 5-Year Plan for Fiscal Years 2005 - 2009
# Streamlined Annual Plan for Fiscal Year 2007

**NOTE:  This PHA Plan template (HUD-50075-SA) is to be completed in accordance with instructions contained in previous Notices PIH 99-33 (HA), 99-51 (HA), 2000-22 (HA), 2000-36 (HA), 2000-43 (HA), 2001-4 (HA), 2001-26 (HA), 2003-7 (HA), and any related notices HUD may subsequently issue. Full reporting for each component listed in the streamlined Annual Plan submitted with the 5-year plan is required.**

000164

# Streamlined Five-Year PHA Plan
## Agency Identification

**PHA Name:** Dublin Housing Authority                **PHA Number:** CA142

## PHA Fiscal Year Beginning: (mm/yyyy) 07/2007

## PHA Programs Administered:
☐ **Public Housing and Section 8**   ☐ **Section 8 Only**   ☒ **Public Housing Only**
Number of public housing units:        Number of S8 units:        Number of public housing units:
Number of S8 units:

☐ **PHA Consortia: (check box if submitting a joint PHA Plan and complete table)**

| Participating PHAs | PHA Code | Program(s) Included in the Consortium | Programs Not in the Consortium | # of Units Each Program |
|---|---|---|---|---|
| Participating PHA 1: | | | | |
| Participating PHA 2: | | | | |
| Participating PHA 3: | | | | |

## Public Access to Information
**Information regarding any activities outlined in this plan can be obtained by contacting: (select all that apply)**
☐     Main administrative office of the PHA
☒     PHA development management offices
☐     PHA local offices

## Display Locations For PHA Plans and Supporting Documents
The PHA Plans and attachments (if any) are available for public inspection at: (select all that apply)
☐     Main administrative office of the PHA
☒     PHA development management offices
☐     PHA local offices
☐     Main administrative office of the local government
☐     Main administrative office of the County government
☐     Main administrative office of the State government
☐     Public library
☐     PHA website
☐     Other (list below)

PHA Plan Supporting Documents are available for inspection at: (select all that apply)
☐     Main business office of the PHA
☒     PHA development management offices

☐      Other (list below)

# Streamlined Five-Year PHA Plan
## PHA FISCAL YEARS 2005 - 2009
[24 CFR Part 903.12]

## A.  Mission

State the PHA's mission for serving the needs of low-income, very low income, and extremely low-income families in the PHA's jurisdiction. (select one of the choices below)

☐      The mission of the PHA is the same as that of the Department of Housing and Urban Development:  To promote adequate and affordable housing, economic opportunity and a suitable living environment free from discrimination.

☒      The PHA's mission is: (state mission here)
The mission of the Dublin Housing Authority is to provide an affordable housing resource, free from discrimination, for extremely low income, very low income, and low income families in the Dublin community.  This housing, in combination with other resources, should create economic opportunity and encourage self-sufficiency.

## B.  Goals

The goals and objectives listed below are derived from HUD's strategic Goals and Objectives and those emphasized in recent legislation.  PHAs may select any of these goals and objectives as their own, or identify other goals and/or objectives.  Whether selecting the HUD-suggested objectives or their own, **PHAs ARE STRONGLY ENCOURAGED TO IDENTIFY QUANTIFIABLE MEASURES OF SUCCESS IN REACHING THEIR OBJECTIVES OVER THE COURSE OF THE 5 YEARS.**  (Quantifiable measures would include targets such as: numbers of families served or PHAS scores achieved.)  PHAs should identify these measures in the spaces to the right of or below the stated objectives.

**HUD Strategic Goal:  Increase the availability of decent, safe, and affordable housing.**

☒      PHA Goal:  Expand the supply of assisted housing
        Objectives:
        ☐      Apply for additional rental vouchers:
        ☐      Reduce public housing vacancies:
        ☒      Leverage private or other public funds to create additional housing opportunities:
        ☒      Acquire or build units or developments
        ☐      Other (list below)

☒      PHA Goal:  Improve the quality of assisted housing
        Objectives:
        ☒      Improve public housing management: (PHAS score) Achieve a score of 90 or
higher.
        ☐      Improve voucher management: (SEMAP score)
        ☐      Increase customer satisfaction:
        ☐      Concentrate on efforts to improve specific management functions:
               (list; e.g., public housing finance; voucher unit inspections)
        ☐      Renovate or modernize public housing units:

☒ Demolish or dispose of obsolete public housing:
☐ Provide replacement public housing:
☐ Provide replacement vouchers:
☐ Other: (list below)

☐ PHA Goal: Increase assisted housing choices
Objectives:
☐ Provide voucher mobility counseling:
☐ Conduct outreach efforts to potential voucher landlords
☐ Increase voucher payment standards
☐ Implement voucher homeownership program:
☐ Implement public housing or other homeownership programs:
☐ Implement public housing site-based waiting lists:
☐ Convert public housing to vouchers:
☐ Other: (list below)

**HUD Strategic Goal: Improve community quality of life and economic vitality**

☒ PHA Goal: Provide an improved living environment
Objectives:
☐ Implement measures to deconcentrate poverty by bringing higher income public housing households into lower income developments: Continue use of rent ranges in tenant selection.
☒ Implement measures to promote income mixing in public housing by assuring access for lower income families into higher income developments:
☒ Implement public housing security improvements: Continue working with Dublin Police Department and tenants on crime reduction activities.
☐ Designate developments or buildings for particular resident groups (elderly, persons with disabilities):
☐ Other: (list below)

**HUD Strategic Goal: Promote self-sufficiency and asset development of families and individuals**

☒ PHA Goal: Promote self-sufficiency and asset development of assisted households
Objectives:
☒ Increase the number and percentage of employed persons in assisted families: Continue admission preference for working families.
☒ Provide or attract supportive services to improve assistance recipients' employability: Encourage tenant use of on-site child care resource.
☐ Provide or attract supportive services to increase independence for the elderly or families with disabilities.
☐ Other: (list below)

## HUD Strategic Goal: Ensure Equal Opportunity in Housing for all Americans

☒  PHA Goal: Ensure equal opportunity and affirmatively further fair housing
Objectives:

☒  Undertake affirmative measures to ensure access to assisted housing regardless of race, color, religion national origin, sex, familial status, and disability: Review wait list procedures and outreach.

☒  Undertake affirmative measures to provide a suitable living environment for families living in assisted housing, regardless of race, color, religion national origin, sex, familial status, and disability: Analyze wait list statistics and tenant demographics to identify any targeted marketing needs.

☐  Undertake affirmative measures to ensure accessible housing to persons with all varieties of disabilities regardless of unit size required:

☐  Other: (list below)

## Other PHA Goals and Objectives: (list below)

DHA has incorporated the applicable provisions of the Violence Against Women and Department of Justice Reauthorization Act of 2005 (Pub. L. 109-162) (VAWA) into its Admissions and Continued Occupancy Policy (ACOP). DHA's goals, objectives and policies to enable DHA to serve the needs of child and adult victims of domestic violence, dating violence and stalking, as defined in VAWA, are stated in the applicable sections of its ACOP

# Streamlined Annual PHA Plan
## PHA Fiscal Year 2007
### [24 CFR Part 903.12(b)]

## Table of Contents

Provide the following table of contents for the streamlined Annual Plan submitted with the Five-Year Plan, including all streamlined plan components, and additional requirements, together with the list of supporting documents available for public inspection.

### A.    ANNUAL STREAMLINED PHA PLAN COMPONENTS

☒  1.  Housing Needs
☒  2.  Financial Resources
☒  3.  Policies on Eligibility, Selection and Admissions
☒  4.  Rent Determination Policies
☒  5.  Capital Improvements Needs
☒  6.  Demolition and Disposition
☐  7.  Homeownership
☒  8.  Civil Rights Certifications (included with PHA Certifications of Compliance)
☒  9.  Additional Information
    a.  PHA Progress on Meeting 5-Year Mission and Goals
    b.  Criteria for Substantial Deviations and Significant Amendments
    c.  Other Information Requested by HUD
        i.  Resident Advisory Board Membership and Consultation Process
        ii.  Resident Membership on the PHA Governing Board
        iii.  PHA Statement of Consistency with Consolidated Plan
        iv.  (Reserved)
☐  10.  Project-Based Voucher Program
☒  11.  Supporting Documents Available for Review
☒  12.  FY 20__ Capital Fund Program and Capital Fund Program Replacement Housing Factor, Annual Statement/Performance and Evaluation Report
☒  13.  Capital Fund Program 5-Year Action Plan
☐  14.  Other (List below, providing name for each item)

### B.    SEPARATE HARD COPY SUBMISSIONS TO LOCAL HUD FIELD OFFICE

**Form HUD-50077,** *PHA Certifications of Compliance with the PHA Plans and Related Regulations: Board Resolution to Accompany the Standard Annual, Standard Five-Year, and Streamlined Five-Year/Annual Plans;*
*Certification by State or Local Official of PHA Plan Consistency with Consolidated Plan.*
For PHAs APPLYING FOR CAPITAL FUND PROGRAM (CFP) GRANTS:
**Form HUD-50070,** *Certification for a Drug-Free Workplace;*
**Form HUD-50071,** *Certification of Payments to Influence Federal Transactions;*
**Form SF-LLL & SF-LLLa,** *Disclosure of Lobbying Activities.*

PHA Name: Dublin Housing Authority    5-Year Plan for Fiscal Years: 2005 - 2009    Annual Plan for FY 2006
HA Code: CA142

## Executive Summary (optional)
[903.7(r)]. If desired, provide a brief overview of the contents of the streamlined 5-Year/Annual Plan.

## 1. Statement of Housing Needs [24 CFR Part 903.12 (b), 903.7(a)]

### A. Housing Needs of Families on the Public Housing and Section 8 Tenant- Based Assistance Waiting Lists

State the housing needs of the families on the PHA's waiting list/s. Complete one table for each type of PHA-wide waiting list administered by the PHA. PHAs may provide separate tables for site-based or sub-jurisdictional public housing waiting lists at their option.

| Housing Needs of Families on the PHA's Waiting Lists | | | |
|---|---|---|---|
| Waiting list type: (select one) | | | |
| ☐ Section 8 tenant-based assistance | | | |
| ☒ Public Housing | | | |
| ☐ Combined Section 8 and Public Housing | | | |
| ☐ Public Housing Site-Based or sub-jurisdictional waiting list (optional) | | | |
|     If used, identify which development/subjurisdiction: | | | |
| | # of families | % of total families | Annual Turnover |
| Waiting list total | 267 | | |
| Extremely low income <=30% AMI | 197 | 73.8 | |
| Very low income (>30% but <=50% AMI) | 63 | 23.6 | |
| Low income (>50% but <80% AMI) | 7 | 2.6 | |
| Families with children | 238 | 89.1 | |
| Elderly families | 10 | 3.7 | |
| Families with Disabilities | 42 | 15.7 | |
| Race/ethnicity - White | 82 | 30.7 | |
| Race/ethnicity - Black | 129 | 48.3 | |
| Race/ethnicity – Native American | 4 | 1.5 | |
| Race/ethnicity - Asian | 34 | 12.7 | |
| Race/ethnicity - Hispanic | 18 | 6.8 | |
| | | | |
| Characteristics by Bedroom Size (Public Housing Only) | | | |
| 1BR | 25 | 9.4 | |
| 2 BR | 119 | 44.6 | |
| 3 BR | 25 | 9.4 | |
| 4 BR | 98 | 36.6 | |
| 5 BR | N/A | | |
| 5+ BR | N/A | | |

form HUD-50075-SF (04/30/2003)

000170

PHA Name: Dublin Housing Authority          5-Year Plan for Fiscal Years: 2005 - 2009          Annual Plan for FY 2006
HA Code: CA142

| Housing Needs of Families on the PHA's Waiting Lists |
|---|
| Is the waiting list closed (select one)?  ☐ No  ☒ Yes |
| If yes: |
| How long has it been closed (# of months)? 11 |
| Does the PHA expect to reopen the list in the PHA Plan year? ☒ No  ☐ Yes |
| Does the PHA permit specific categories of families onto the waiting list, even if generally closed?  ☐ No  ☒ Yes |

## B. Strategy for Addressing Needs

Provide a brief description of the PHA's strategy for addressing the housing needs of families on the PHA's public housing and Section 8 waiting lists IN THE UPCOMING YEAR, and the Agency's reasons for choosing this strategy.

## (1) Strategies

**Need:  Shortage of affordable housing for all eligible populations**

**Strategy 1. Maximize the number of affordable units available to the PHA within its current resources by:**

Select all that apply

☒ Employ effective maintenance and management policies to minimize the number of public housing units off-line

☒ Reduce turnover time for vacated public housing units

☒ Reduce time to renovate public housing units

☐ Seek replacement of public housing units lost to the inventory through mixed finance development

☐ Seek replacement of public housing units lost to the inventory through section 8 replacement housing resources

☐ Maintain or increase section 8 lease-up rates by establishing payment standards that will enable families to rent throughout the jurisdiction

☐ Undertake measures to ensure access to affordable housing among families assisted by the PHA, regardless of unit size required

☐ Maintain or increase section 8 lease-up rates by marketing the program to owners, particularly those outside of areas of minority and poverty concentration

☐ Maintain or increase section 8 lease-up rates by effectively screening Section 8 applicants to increase owner acceptance of program

☒ Participate in the Consolidated Plan development process to ensure coordination with broader community strategies

☐ Other (list below)

**Strategy 2:  Increase the number of affordable housing units by:**

Select all that apply

☐ Apply for additional section 8 units should they become available

☐ Leverage affordable housing resources in the community through the creation of mixed - finance housing

☒ Pursue housing resources other than public housing or Section 8 tenant-based assistance.

000171

☒     Other: (list below)

Begin the process to replace 150 public housing units with 26 ownership units and 179 affordable tax-credit rental units, 50 of which are to be designated for the elderly. The developer will apply to HUD for Section 202 funding in order to target the 50 elderly units to extremely low-income seniors. Fifteen of the 26 ownership units are to be affordable. This is an increase of 44 affordable units.

**Need:  Specific Family Types:  Families at or below 30% of median**

**Strategy 1:  Target available assistance to families at or below 30 % of AMI**
Select all that apply

☐     Exceed HUD federal targeting requirements for families at or below 30% of AMI in public housing
☐     Exceed HUD federal targeting requirements for families at or below 30% of AMI in tenant-based section 8 assistance
☐     Employ admissions preferences aimed at families with economic hardships
☒     Adopt rent policies to support and encourage work
☐     Other: (list below)

**Need:  Specific Family Types:  Families at or below 50% of median**

**Strategy 1: Target available assistance to families at or below 50% of AMI**
Select all that apply

☒     Employ admissions preferences aimed at families who are working
☒     Adopt rent policies to support and encourage work
☐     Other: (list below)

**Need:  Specific Family Types: The Elderly**

**Strategy 1:  Target available assistance to the elderly:**
Select all that apply

☐     Seek designation of public housing for the elderly
☐     Apply for special-purpose vouchers targeted to the elderly, should they become available
☐     Other: (list below)

**Need:  Specific Family Types:  Families with Disabilities**

**Strategy 1:  Target available assistance to Families with Disabilities:**
Select all that apply

☐     Seek designation of public housing for families with disabilities
☐     Carry out the modifications needed in public housing based on the section 504 Needs Assessment for Public Housing
☐     Apply for special-purpose vouchers targeted to families with disabilities, should they

000172

    become available
☐   Affirmatively market to local non-profit agencies that assist families with disabilities
☐   Other: (list below)

**Need:  Specific Family Types:  Races or ethnicities with disproportionate housing needs**

**Strategy 1:  Increase awareness of PHA resources among families of races and ethnicities
with disproportionate needs:**
Select if applicable

☐   Affirmatively market to races/ethnicities shown to have disproportionate housing needs
☐   Other: (list below)

**Strategy 2:  Conduct activities to affirmatively further fair housing**
Select all that apply

☐   Counsel section 8 tenants as to location of units outside of areas of poverty or minority
    concentration and assist them to locate those units
☐   Market the section 8 program to owners outside of areas of poverty /minority
    concentrations
☐   Other: (list below)

**Other Housing Needs & Strategies: (list needs and strategies below)**

**(2)  Reasons for Selecting Strategies**
Of the factors listed below, select all that influenced the PHA's selection of the strategies it will
pursue:

☒   Funding constraints
☒   Staffing constraints
☒   Limited availability of sites for assisted housing
☒   Extent to which particular housing needs are met by other organizations in the
    community
☒   Evidence of housing needs as demonstrated in the Consolidated Plan and other
    information available to the PHA
☒   Influence of the housing market on PHA programs
☐   Community priorities regarding housing assistance
☐   Results of consultation with local or state government
☒   Results of consultation with residents and the Resident Advisory Board
☐   Results of consultation with advocacy groups
☐   Other:  (list below)

## 2.  Statement of Financial Resources
[24 CFR Part 903.12 (b), 903.7 (c)]
List on the following table the financial resources that are anticipated to be available to the PHA for the support of
Federal public housing and tenant-based Section 8 assistance programs administered by the PHA during the Plan
year.  Note: the table assumes that Federal public housing or tenant based Section 8 assistance grant funds are

PHA Name: Dublin Housing Authority     5-Year Plan for Fiscal Years: 2005 - 2009          Annual Plan for FY 2006
HA Code: CA142

expended on eligible purposes; therefore, uses of these funds need not be stated.  For other funds, indicate the use
for those funds as one of the following categories: public housing operations, public housing capital improvements,
public housing safety/security, public housing supportive services, Section 8 tenant-based assistance, Section 8
supportive services or other.

| Financial Resources: Planned Sources and Uses | | |
|---|---|---|
| Sources | Planned $ | Planned Uses |
| 1.  Federal Grants (FY 2007 grants) | | |
| a)   Public Housing Operating Fund | 212,244 | PHA Operations |
| b)   Public Housing Capital Fund | 255,000 | PHA Capital Improvements |
| c)   HOPE VI Revitalization | | |
| d)   HOPE VI Demolition | | |
| e)   Annual Contributions for Section 8 Tenant-Based Assistance | | |
| f)   Resident Opportunity and Self-Sufficiency Grants | | |
| g)   Community Development Block Grant | | |
| h)   HOME | | |
| Other Federal Grants (list below) | | |
| | | |
| 2.  Prior Year Federal Grants (unobligated funds only) (list below) | | |
| | | |
| | | |
| | | |
| 3.  Public Housing Dwelling Rental Income | 693,792 | PHA Operations |
| | | |
| | | |
| 4.  Other income (list below) | | |
| Investment: | 45,525 | PHA Operations |
| Miscellaneous: | 20,000 | PHA Operations |
| 4.  Non-federal sources (list below) | | |
| | | |
| | | |
| | | |
| Total resources | 1,226,561 | |
| | | |

# 3.  PHA Policies Governing Eligibility, Selection, and Admissions
[24 CFR Part 903.12 (b), 903.7 (b)]

## A.  Public Housing
Exemptions:  PHAs that do not administer public housing are not required to complete subcomponent 3A.

### (1) Eligibility

a. When does the PHA verify eligibility for admission to public housing? (select all that apply)

☒      When families are within a certain number of being offered a unit: (5)

☒ When families are within a certain time of being offered a unit: (1 month)
☐ Other: (describe)

b. Which non-income (screening) factors does the PHA use to establish eligibility for admission to public housing (select all that apply)?
☒ Criminal or Drug-related activity
☒ Rental history
☒ Housekeeping
☐ Other (describe)

c. ☒ Yes ☐ No:  Does the PHA request criminal records from local law enforcement agencies for screening purposes?

d. ☒ Yes ☐ No:  Does the PHA request criminal records from State law enforcement agencies for screening purposes?

e. ☐ Yes ☒ No:  Does the PHA access FBI criminal records from the FBI for screening purposes? (either directly or through an NCIC-authorized source)

## (2) Waiting List Organization

a. Which methods does the PHA plan to use to organize its public housing waiting list (select all that apply)
☒ Community-wide list
☐ Sub-jurisdictional lists
☐ Site-based waiting lists
☐ Other (describe)

b. Where may interested persons apply for admission to public housing?
☐ PHA main administrative office
☒ PHA development site management office
☒ Other (list below)
May also be mailed to a post-office box.

c. Site-Based Waiting Lists-Previous Year

　　1. Has the PHA operated one or more site-based waiting lists in the previous year? If yes, complete the following table; if not skip to d.

| Site-Based Waiting Lists |
|---|
| |

| Development Information: (Name, number, location) | Date Initiated | Initial mix of Racial, Ethnic or Disability Demographics | Current mix of Racial, Ethnic or Disability Demographics since Initiation of SBWL | Percent change between initial and current mix of Racial, Ethnic, or Disability demographics |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |

2.  What is the number of site based waiting list developments to which families may apply at one time? ___

3.  How many unit offers may an applicant turn down before being removed from the site-based waiting list? ___

4.  ☐ Yes ☐ No: Is the PHA the subject of any pending fair housing complaint by HUD or any court order or settlement agreement?  If yes, describe the order, agreement or complaint and describe how use of a site-based waiting list will not violate or be inconsistent with the order, agreement or complaint below:

d.  Site-Based Waiting Lists – Coming Year

If the PHA plans to operate one or more site-based waiting lists in the coming year, answer each of the following questions; if not, skip to subsection **(3) Assignment**

1.  How many site-based waiting lists will the PHA operate in the coming year?

2.  ☐ Yes ☐ No: Are any or all of the PHA's site-based waiting lists new for the upcoming year (that is, they are not part of a previously-HUD-approved site based waiting list plan)?
    If yes, how many lists?

3.  ☐ Yes ☐ No: May families be on more than one list simultaneously
    If yes, how many lists?

4. Where can interested persons obtain more information about and sign up to be on the site-based waiting lists (select all that apply)?
    ☐   PHA main administrative office
    ☐   All PHA development management offices
    ☐   Management offices at developments with site-based waiting lists
    ☐   At the development to which they would like to apply
    ☐   Other (list below)

**(3) Assignment**

a. How many vacant unit choices are applicants ordinarily given before they fall to the bottom of or are removed from the waiting list? (select one)

- ☐ One
- ☒ Two
- ☐ Three or More

b. ☒ Yes ☐ No: Is this policy consistent across all waiting list types?

c. If answer to b is no, list variations for any other than the primary public housing waiting list/s for the PHA:

### (4) Admissions Preferences

a. Income targeting:
☐ Yes ☒ No: Does the PHA plan to exceed the federal targeting requirements by targeting more than 40% of all new admissions to public housing to families at or below 30% of median area income?

b. Transfer policies:
In what circumstances will transfers take precedence over new admissions? (list below)

- ☒ Emergencies
- ☒ Over-housed
- ☒ Under-housed
- ☒ Medical justification
- ☒ Administrative reasons determined by the PHA (e.g., to permit modernization work)
- ☐ Resident choice: (state circumstances below)
- ☐ Other: (list below)

c.  Preferences
1. ☒ Yes ☐ No:   Has the PHA established preferences for admission to public housing (other than date and time of application)? (If "no" is selected, skip to subsection **(5) Occupancy**)

2.  Which of the following admission preferences does the PHA plan to employ in the coming year? (select all that apply from either former Federal preferences or other preferences)

Former Federal preferences:

- ☒ Involuntary Displacement (Disaster, Government Action, Action of Housing Owner, Inaccessibility, Property Disposition)
- ☐ Victims of domestic violence
- ☐ Substandard housing
- ☐ Homelessness
- ☐ High rent burden (rent is > 50 percent of income)

Other preferences: (select below)

- ☒ Working families and those unable to work because of age or disability

☒ Veterans and veterans' families
☒ Residents who live and/or work in the jurisdiction
☒ Those enrolled currently in educational, training, or upward mobility programs
☐ Households that contribute to meeting income goals (broad range of incomes)
☐ Households that contribute to meeting income requirements (targeting)
☐ Those previously enrolled in educational, training, or upward mobility programs
☐ Victims of reprisals or hate crimes
☒ Other preference(s) (list below)

   1.  Section 8 voucher holders displaced from federally-declared disaster areas and not currently living in standard, permanent replacement housing, or public housing residents displaced from federally-declared disaster areas and not currently living in standard, permanent replacement housing;
   2.  Other Displaced Families;
   3.  Families.

3. If the PHA will employ admissions preferences, please prioritize by placing a "1" in the space that represents your first priority, a "2" in the box representing your second priority, and so on. If you give equal weight to one or more of these choices (either through an absolute hierarchy or through a point system), place the same number next to each. That means you can use "1" more than once, "2" more than once, etc.

☐ Date and Time

Former Federal preferences:
☐ Involuntary Displacement (Disaster, Government Action, Action of Housing Owner, Inaccessibility, Property Disposition)
☐ Victims of domestic violence
☐ Substandard housing
☐ Homelessness
☐ High rent burden

Other preferences (select all that apply)
☐ Working families and those unable to work because of age or disability
☐ Veterans and veterans' families
☐ Residents who live and/or work in the jurisdiction
☐ Those enrolled currently in educational, training, or upward mobility programs
☐ Households that contribute to meeting income goals (broad range of incomes)
☐ Households that contribute to meeting income requirements (targeting)
☐ Those previously enrolled in educational, training, or upward mobility programs
☐ Victims of reprisals or hate crimes
☒ Other preference(s) (list below)

   1.  Applicants are assigned preference points as follows:
      a.  Section 8 voucher holders displaced from federally-declared disaster areas and not currently living in standard, permanent replacement housing, or public housing residents displaced from federally-declared disaster areas and not currently living in standard, permanent replacement housing = 60 points
      b.  Other Displaced Families = 40 points;

     c.  Family, Elderly and/or Disabled Preference = 8 points (applied once only);
     d.  Residency Preference = 4 points;
     e.  Veteran's Preference = 2 points; and
     f.  Working or Educational Preference = 1 point;
2. Applicants are ranked from those with the highest number of preference points to those with the lowest number of preference points (0 min.).
3. Applicants with a higher number of preference points are offered assistance before those with fewer preference points.
4. Ties among applicants who have the same number of preference points are broken using their "tiebreaker" lottery number.
5. An applicant with the same number of preference points and a lower lottery "tiebreaker" number will be offered assistance before an applicant with a higher tiebreaker number.

4. Relationship of preferences to income targeting requirements:
☐ The PHA applies preferences within income tiers
☒ Not applicable:  the pool of applicant families ensures that the PHA will meet income targeting requirements

## (5) Occupancy

a. What reference materials can applicants and residents use to obtain information about the rules of occupancy of public housing (select all that apply)
☒ The PHA-resident lease
☒ The PHA's Admissions and (Continued) Occupancy Policy
☐ PHA briefing seminars or written materials
☐ Other source (list)

b. How often must residents notify the PHA of changes in family composition? (select all that apply)
☐ At an annual reexamination and lease renewal
☒ Any time family composition changes
☐ At family request for revision
☐ Other (list)

## (6) Deconcentration and Income Mixing

a. ☐ Yes ☒ No:  Does the PHA have any general occupancy (family) public housing developments covered by the deconcentration rule?  If no, this section is complete.  If yes, continue to the next question.

b. ☐ Yes ☐ No:  Do any of these covered developments have average incomes above or below 85% to 115% of the average incomes of all such developments?  If no, this section is complete.  If yes, list these developments on the following table:

**Deconcentration Policy for Covered Developments**

PHA Name: Dublin Housing Authority    5-Year Plan for Fiscal Years: 2005 - 2009    Annual Plan for FY 2006
HA Code: CA142

| Development Name | Number of Units | Explanation (if any) [see step 4 at §903.2(c)(1)(iv)] | Deconcentration policy (if no explanation) [see step 5 at §903.2(c)(1)(v)] |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

## B. Section 8

Exemptions: PHAs that do not administer section 8 are not required to complete sub-component 3B.
Unless otherwise specified, all questions in this section apply only to the tenant-based section 8 assistance
program (vouchers, and until completely merged into the voucher program, certificates).

### (1) Eligibility

a. What is the extent of screening conducted by the PHA? (select all that apply)
- ☐ Criminal or drug-related activity only to the extent required by law or regulation
- ☐ Criminal and drug-related activity, more extensively than required by law or regulation
- ☐ More general screening than criminal and drug-related activity (list factors):
- ☐ Other (list below)

b. ☐ Yes ☐ No: Does the PHA request criminal records from local law enforcement agencies
for screening purposes?

c. ☐ Yes ☐ No: Does the PHA request criminal records from State law enforcement agencies
for screening purposes?

d. ☐ Yes ☐ No: Does the PHA access FBI criminal records from the FBI for screening
purposes? (either directly or through an NCIC-authorized source)

e. Indicate what kinds of information you share with prospective landlords? (select all that
apply)
- ☐ Criminal or drug-related activity
- ☐ Other (describe below)

### (2) Waiting List Organization

a. With which of the following program waiting lists is the section 8 tenant-based assistance
waiting list merged? (select all that apply)
- ☐ None
- ☐ Federal public housing
- ☐ Federal moderate rehabilitation
- ☐ Federal project-based certificate program
- ☐ Other federal or local program (list below)

b. Where may interested persons apply for admission to section 8 tenant-based assistance?
(select all that apply)
- ☐ PHA main administrative office

☐     Other (list below)

### (3) Search Time

a. ☐ Yes ☐ No: Does the PHA give extensions on standard 60-day period to search for a unit?
If yes, state circumstances below:

### (4) Admissions Preferences

a. Income targeting

☐ Yes ☐ No:  Does the PHA plan to exceed the federal targeting requirements by targeting more than 75% of all new admissions to the section 8 program to families at or below 30% of median area income?

b. Preferences

1. ☐ Yes ☐ No:  Has the PHA established preferences for admission to section 8 tenant-based assistance? (other than date and time of application) (if no, skip to subcomponent **(5) Special purpose section 8 assistance programs**)

2. Which of the following admission preferences does the PHA plan to employ in the coming year? (select all that apply from either former Federal preferences or other preferences)

Former Federal preferences

☐    Involuntary Displacement (Disaster, Government Action, Action of Housing Owner, Inaccessibility, Property Disposition)
☐    Victims of domestic violence
☐    Substandard housing
☐    Homelessness
☐    High rent burden (rent is > 50 percent of income)

Other preferences (select all that apply)

☐    Working families and those unable to work because of age or disability
☐    Veterans and veterans' families
☐    Residents who live and/or work in your jurisdiction
☐    Those enrolled currently in educational, training, or upward mobility programs
☐    Households that contribute to meeting income goals (broad range of incomes)
☐    Households that contribute to meeting income requirements (targeting)
☐    Those previously enrolled in educational, training, or upward mobility programs
☐    Victims of reprisals or hate crimes
☐    Other preference(s) (list below)

3. If the PHA will employ admissions preferences, please prioritize by placing a "1" in the space that represents your first priority, a "2" in the box representing your second priority, and so on. If you give equal weight to one or more of these choices (either through an absolute hierarchy or through a point system), place the same number next to each. That means you can use "1" more

than once, "2" more than once, etc.

☐    Date and Time

Former Federal preferences:
☐    Involuntary Displacement (Disaster, Government Action, Action of Housing Owner,
       Inaccessibility, Property Disposition)
☐    Victims of domestic violence
☐    Substandard housing
☐    Homelessness
☐    High rent burden

Other preferences (select all that apply)
☐    Working families and those unable to work because of age or disability
☐    Veterans and veterans' families
☐    Residents who live and/or work in your jurisdiction
☐    Those enrolled currently in educational, training, or upward mobility programs
☐    Households that contribute to meeting income goals (broad range of incomes)
☐    Households that contribute to meeting income requirements (targeting)
☐    Those previously enrolled in educational, training, or upward mobility programs
☐    Victims of reprisals or hate crimes
☐    Other preference(s) (list below)

4. Among applicants on the waiting list with equal preference status, how are applicants
selected? (select one)
☐    Date and time of application
☐    Drawing (lottery) or other random choice technique

5. If the PHA plans to employ preferences for "residents who live and/or work in the
   jurisdiction" (select one)
☐    This preference has previously been reviewed and approved by HUD
☐    The PHA requests approval for this preference through this PHA Plan

6. Relationship of preferences to income targeting requirements: (select one)
☐    The PHA applies preferences within income tiers
☐    Not applicable: the pool of applicant families ensures that the PHA will meet income
       targeting requirements

## (5)  Special Purpose Section 8 Assistance Programs

a. In which documents or other reference materials are the policies governing eligibility,
   selection, and admissions to any special-purpose section 8 program administered by the PHA
   contained? (select all that apply)
☐    The Section 8 Administrative Plan
☐    Briefing sessions and written materials
☐    Other (list below)

b.  How does the PHA announce the availability of any special-purpose section 8  programs to the public?
- ☐  Through published notices
- ☐  Other (list below)

## 4.  PHA Rent Determination Policies
[24 CFR Part 903.12(b), 903.7(d)]

## A.  Public Housing
Exemptions:  PHAs that do not administer public housing are not required to complete sub-component 4A.

### (1)  Income Based Rent Policies
Describe the PHA's income-based rent setting policy/ies for public housing using, including discretionary (that is, not required by statute or regulation) income disregards and exclusions, in the appropriate spaces below.

a.  Use of discretionary policies: (select one of the following two)

☒  The PHA will not employ any discretionary rent-setting policies for income-based rent in public housing.  Income-based rents are set at the higher of 30% of adjusted monthly income, 10% of unadjusted monthly income, the welfare rent, or minimum rent (less HUD mandatory deductions and exclusions).  (If selected, skip to sub-component (2))
☐  The PHA employs discretionary policies for determining income-based rent (If selected, continue to question b.)

b.  Minimum Rent

1. What amount best reflects the PHA's minimum rent? (select one)
- ☐  $0
- ☐  $1-$25
- ☒  $26-$50

2. ☐ Yes ☒ No: Has the PHA adopted any discretionary minimum rent hardship exemption policies?

3. If yes to question 2, list these policies below:

c.  Rents set at less than 30% of adjusted income

1. ☐ Yes ☒ No:  Does the PHA plan to charge rents at a fixed amount or percentage less than 30% of adjusted income?

2. If yes to above, list the amounts or percentages charged and the circumstances under which these will be used below:

d. Which of the discretionary (optional) deductions and/or exclusions policies does the PHA
   plan to employ (select all that apply)

☐ For the earned income of a previously unemployed household member
☐ For increases in earned income
☐ Fixed amount (other than general rent-setting policy)
       If yes, state amount/s and circumstances below:

☐ Fixed percentage (other than general rent-setting policy)
       If yes, state percentage/s and circumstances below:

☐ For household heads
☐ For other family members
☐ For transportation expenses
☐ For the non-reimbursed medical expenses of non-disabled or non-elderly families
☐ Other (describe below)

e. Ceiling rents

1. Do you have ceiling rents? (rents set at a level lower than 30% of adjusted income) (select
   one)

☐ Yes for all developments
☐ Yes but only for some developments
☒ No

2. For which kinds of developments are ceiling rents in place? (select all that apply)

☐ For all developments
☐ For all general occupancy developments (not elderly or disabled or elderly only)
☐ For specified general occupancy developments
☐ For certain parts of developments; e.g., the high-rise portion
☐ For certain size units; e.g., larger bedroom sizes
☐ Other (list below)

3. Select the space or spaces that best describe how you arrive at ceiling rents (select all that
   apply)

☐ Market comparability study
☐ Fair market rents (FMR)
☐ 95th percentile rents
☐ 75 percent of operating costs
☐ 100 percent of operating costs for general occupancy (family) developments
☐ Operating costs plus debt service
☐ The "rental value" of the unit

☐       Other (list below)

f.  Rent re-determinations:

1.  Between income reexaminations, how often must tenants report changes in income or family composition to the PHA such that the changes result in an adjustment to rent? (select all that apply)

☐       Never
☐       At family option
☐       Any time the family experiences an income increase
☐       Any time a family experiences an income increase above a threshold amount or percentage: (if selected, specify threshold)_____
☒       Other (list below)
        Any time that there is a change in family composition or an increase in income following an interim reexamination that has decreased rent.

g. ☒ Yes ☐ No:  Does the PHA plan to implement individual savings accounts for residents (ISAs) as an alternative to the required 12 month disallowance of earned income and phasing in of rent increases in the next year?

## (2)  Flat Rents

a.  In setting the market-based flat rents, what sources of information did the PHA use to establish comparability? (select all that apply.)
☒       The section 8 rent reasonableness study of comparable housing
☒       Survey of rents listed in local newspaper
☒       Survey of similar unassisted units in the neighborhood
☐       Other (list/describe below)

## B. Section 8 Tenant-Based Assistance

Exemptions: PHAs that do not administer Section 8 tenant-based assistance are not required to complete sub-component 4B. Unless otherwise specified, all questions in this section apply only to the tenant-based section 8 assistance program (vouchers, and until completely merged into the voucher program, certificates).

## (1) Payment Standards

Describe the voucher payment standards and policies.

a.  What is the PHA's payment standard? (select the category that best describes your standard)
☐       At or above 90% but below100% of FMR
☐       100% of FMR
☐       Above 100% but at or below 110% of FMR
☐       Above 110% of FMR (if HUD approved; describe circumstances below)

b.  If the payment standard is lower than FMR, why has the PHA selected this standard? (select all that apply)

☐    FMRs are adequate to ensure success among assisted families in the PHA's segment of the FMR area
☐    The PHA has chosen to serve additional families by lowering the payment standard
☐    Reflects market or submarket
☐    Other (list below)

c. If the payment standard is higher than FMR, why has the PHA chosen this level? (select all that apply)
☐    FMRs are not adequate to ensure success among assisted families in the PHA's segment of the FMR area
☐    Reflects market or submarket
☐    To increase housing options for families
☐    Other (list below)

d. How often are payment standards reevaluated for adequacy? (select one)
☐    Annually
☐    Other (list below)

e. What factors will the PHA consider in its assessment of the adequacy of its payment standard?  (select all that apply)
☐    Success rates of assisted families
☐    Rent burdens of assisted families
☐    Other (list below)

## (2) Minimum Rent

a. What amount best reflects the PHA's minimum rent? (select one)
☐    $0
☐    $1-$25
☐    $26-$50

b. ☐ Yes ☐ No: Has the PHA adopted any discretionary minimum rent hardship exemption policies? (if yes, list below)

## 5.  Capital Improvement Needs
[24 CFR Part 903.12(b), 903.7 (g)]
Exemptions from Component 5; Section 8 only PHAs are not required to complete this component and may skip to Component 6.

## A.  Capital Fund Activities
Exemptions from sub-component 5A:  PHAs that will not participate in the Capital Fund Program may skip to component 5B.  All other PHAs must complete 5A as instructed.

## (1) Capital Fund Program

a.  ☒ Yes ☐ No   Does the PHA plan to participate in the Capital Fund Program in the upcoming year? If yes, complete items 12 and 13 of this template (Capital Fund Program tables).  If no, skip to B.

b.  ☐ Yes ☒ No:  Does the PHA propose to use any portion of its CFP funds to repay debt incurred to finance capital improvements?  If so, the PHA must identify in its annual and 5-year capital plans the development(s) where such improvements will be made and show both how the proceeds of the financing will be used and the amount of the annual payments required to service the debt.  (Note that separate HUD approval is required for such financing activities.).

## B. HOPE VI and Public Housing Development and Replacement Activities (Non-Capital Fund)

Applicability of sub-component 5B:  All PHAs administering public housing.  Identify any approved HOPE VI and/or public housing development or replacement activities not described in the Capital Fund Program Annual Statement.

### (1) Hope VI Revitalization

a. ☐ Yes ☒ No:   Has the PHA received a HOPE VI revitalization grant? (if no, skip to next component; if yes, provide responses to questions on chart below for each grant, copying and completing as many times as necessary)

b.                    Status of HOPE VI revitalization grant (complete one set of questions for each grant)
Development name:
Development (project) number:
Status of grant: (select the statement that best describes the current status)
☐    Revitalization Plan under development
☐    Revitalization Plan submitted, pending approval
☐    Revitalization Plan approved
☐    Activities pursuant to an approved Revitalization Plan underway

c. ☐ Yes ☒ No:   Does the PHA plan to apply for a HOPE VI Revitalization grant in the Plan year?  If yes, list development name/s below:

d. ☐ Yes ☒ No:   Will the PHA be engaging in any mixed-finance development activities for public housing in the Plan year?   If yes, list developments or activities below:

e. ☒ Yes ☐ No:   Will the PHA be conducting any other public housing development or replacement activities not discussed in the Capital Fund Program Annual Statement?  If yes, list developments or activities below:

PHA Name: Dublin Housing Authority    5-Year Plan for Fiscal Years: 2005 - 2009    Annual Plan for FY 2006
HA Code: CA142

## 6. Demolition and Disposition

[24 CFR Part 903.12(b), 903.7 (h)]

Applicability of component 6: Section 8 only PHAs are not required to complete this section.

a. ☒ Yes ☐ No:    Does the PHA plan to conduct any demolition or disposition activities (pursuant to section 18 or 24 (Hope VI)of the U.S. Housing Act of 1937 (42 U.S.C. 1437p) or Section 202/Section 33 (Mandatory Conversion) in the plan Fiscal Year?  (If "No", skip to component 7; if "yes", complete one activity description for each development on the following chart.)

| Demolition/Disposition Activity Description |
|---|
| 1a. Development name: Arroyo Vista |
| 1b. Development (project) number: CA39-P142-001 |
| 2. Activity type:  Demolition ☐<br>                Disposition ☒ |
| 3. Application status (select one)<br>        Approved ☐<br>        Submitted, pending approval ☐<br>        Planned application ☒ |
| 4. Date application approved, submitted, or planned for submission:  (04/01/07) |
| 5. Number of units affected: 150 |
| 6. Coverage of action (select one)<br>☐ Part of the development<br>☒ Total development |
| 7. Timeline for activity:<br>        a. Actual or projected start date of activity: (04/01/07)<br>        b. Projected end date of activity: (11/30/08) |

## 7.  Section 8 Tenant Based Assistance--Section 8(y) Homeownership Program

[24 CFR Part 903.12(b), 903.7(k)(1)(i)]

(1) ☐ Yes ☐ No:    Does the PHA plan to administer a Section 8 Homeownership program pursuant to Section 8(y) of the U.S.H.A. of 1937, as implemented by 24 CFR part 982 ? (If "No", skip to the next component; if "yes", complete each program description below (copy and complete questions for each program identified.)

### (2) Program Description

a.  Size of Program

☐ Yes ☐ No:    Will the PHA limit the number of families participating in the Section 8 homeownership option?

                If the answer to the question above was yes, what is the maximum number

of participants this fiscal year?___

b.  PHA-established eligibility criteria
☐ Yes ☐ No:    Will the PHA's program have eligibility criteria for participation in its Section 8 Homeownership Option program in addition to HUD criteria? If yes, list criteria below:

c.  What actions will the PHA undertake to implement the program this year (list)?

### (3)  Capacity of the PHA to Administer a Section 8 Homeownership Program

The PHA has demonstrated its capacity to administer the program by (select all that apply):
a. ☐ Establishing a minimum homeowner down payment requirement of at least 3 percent of purchase price and requiring that at least 1 percent of the purchase price comes from the family's resources.
b. ☐ Requiring that financing for purchase of a home under its Section 8 homeownership will be provided, insured or guaranteed by the state or Federal government; comply with secondary mortgage market underwriting requirements; or comply with generally accepted private sector underwriting standards.
c. ☐ Partnering with a qualified agency or agencies to administer the program (list name(s) and years of experience below).
d. ☐ Demonstrating that it has other relevant experience (list experience below).

## 8.  Civil Rights Certifications
[24 CFR Part 903.12 (b), 903.7 (o)]

Civil rights certifications are included in the *PHA Plan Certifications of Compliance with the PHA Plans and Related Regulations: Board Resolution to Accompany the Standard Annual, Standard Five-Year, and Streamlined Five-Year/Annual Plans*, which is submitted to the Field Office in hard copy—see Table of Contents.

## 9.  Additional Information
[24 CFR Part 903.12 (b), 903.7 (r)]

### A.  PHA Progress in Meeting the Mission and Goals Described in the 5-Year Plan
*(Provide a statement of the PHA's progress against the goals and objectives established in the previous 5-Year Plan for the period FY 2000 - 2004*

**HUD Strategic Goal: Increase the availability of decent, safe and affordable housing.**

**PHA Goal: Expand the supply of assisted housing.**
Objective: Leverage private or other public funds to create additional housing.
Because of a new financing authority created by California State Association of Counties,

developers have generally turned to this financing authority rather than cities or other public entities. Therefore, there were no opportunities to issue tax exempt bonds during this time period.

**PHA Goal: Improve the quality of assisted housing.**
Objective: Improve public housing management by maintaining a total PHAS score above 90.
The Housing Authority's PHAS scores during the time period are shown below.

2000-83.1%
2001-88%
2002-88%
2003-85%
2004-85%

The primary point loss in the PHAS scoring resulted from vacant unit turnover and problems resulting from the third party inspections. While the goal was not met, the scores meet a level of standard.

Objective: Increase customer satisfaction by conducting a biannual random customer survey.
During this time period, HUD implemented a resident satisfaction component as a part of the PHAS system and conducted random mailings to the Housing Authority's public housing tenants which provided feedback on customer satisfaction.

Objective: Renovate or modernize public housing units by efforts to replace 20 roofs and renovate bathrooms in 50 units. During the time period, the Housing Authority completed the re-roofing, nine bathroom remodels and individual unit renovations and miscellaneous additional repairs.

**HUD Strategic Goal:  Improve community quality of life and economic vitality.**

**PHA Goal: Provide an improved living environment.**
Objective: Implement measures to deconcentrate poverty by bringing higher income public housing households into lower income developments;
The Housing Authority used rent ranges as one of the criteria in selecting tenants for occupancy.

Objective: Implement public housing security improvements. The Housing Authority completed replacement of the exterior project lighting with higher intensity and lower energy lighting.

Objective: Designate developments or buildings for particular resident groups (elderly, persons with disabilities): After reviewing the regulatory requirements to designate units as elderly or for persons with disabilities, staff determined that it was not feasible to meet the threshold requirement that there be a showing of sufficient housing for disabled families in the community. Practically speaking, the units are generally occupied by elderly and disabled persons.

**PHA Goal: Promote self-sufficiency and asset development of families and individuals.**

Objective: Provide or attract services to improve assistance recipient's employability. The Housing Authority worked with Kidango to encourage the use of the child care center by Arroyo Vista residents through marketing and recruitment.

**PHA Goal: Ensure Equal Opportunity in Housing for all Americans**
Objective: Undertake affirmative measures to ensure access to assisted housing regardless of race, color, religion, national origin, sex, familial status and disability by reviewing all marketing materials and wait list procedures to ensure no adverse impact on any particular groups. The Housing Authority routinely reviews the demographics of applicants and program participants to determine if they are represented in the numbers expected based on the demographics of the City of Dublin's population and the program eligibility requirements.  Wait list openings, in particular, were carefully planned to ensure that all groups were informed of the opening and community based organizations were solicited to provide services to groups least likely to apply. In addition, the Housing Authority expanded its non-English language services both in the languages clients were most likely to use and through the use of outside resources for the less common non-English languages.

Objective: Undertake affirmative measures to provide a suitable living environment for families living in assisted housing, regardless of race, color, religion, national origin, sex, familial status and disability by developing plans to address any problems/issues uncovered in the review of marketing materials assist clients in addressing discrimination complaints through referrals to fair housing organizations.
Housing Authority staff ensures that all clients are aware of their fair housing rights by posting materials in the lobby and including fair housing information in Housing Authority documents and in the Housing Authority calendar.  The Housing Authority also works closely with fair housing organizations to investigate and address any discrimination complaints.

Objective: Undertake affirmative measures to ensure accessible housing to persons with all varieties of disabilities regardless of unit size required by completing accessible renovations of at least 5% of the public housing units.
The Housing Authority completed accessible renovations of 5% of the public housing units as planned and modified policies to ensure that all program clients were aware of their right to request a reasonable accommodation to access the Authority's programs.

## B.  Criteria for Substantial Deviations and Significant Amendments

### (1) Amendment and Deviation Definitions
24 CFR Part 903.7(r)
PHAs are required to define and adopt their own standards of substantial deviation from the 5-year Plan and Significant Amendment to the Annual Plan.  The definition of significant amendment is important because it defines when the PHA will subject a change to the policies or activities described in the Annual Plan to full public hearing and HUD review before implementation.

a. Substantial Deviation from the 5-Year Plan:
   • Changes to eligibility for admission policies;

form HUD-50075-SF (04/30/2003)   000191

- Any change with regard to demolition or disposition, designation, homeownership programs, or conversion activities.

b. Significant Amendment or Modification to the Annual Plan:
  - Changes to eligibility for admission policies;
  - Any change with regard to demolition or disposition, designation, homeownership programs, or conversion activities.

## C.  Other Information
[24 CFR Part 903.13, 903.15]

### (1) Resident Advisory Board Recommendations

a. ☒ Yes ☐ No: Did the PHA receive any comments on the PHA Plan from the Resident Advisory Board/s?

If yes, provide the comments below:

## Dublin Housing Authority
## Resident Advisory Board Meeting
## March 26, 2007, 1:00 P.M.
## Summary

| Resident Advisory Board Members Present: | Staff Present: |
|---|---|
| Suzanne Robinson | Ron Dion, Deputy Director for Programs |
| Loy Costello | Mary Rizzo-Shuman, Leasing & Property Services Mgnr |
|  | Margie Newman, Arroyo Vista Manager |
| Resident Advisory Board Members Absent: |  |
| Shawn Costello |  |
| Carolyn Evans |  |

Mr. Dion began the meeting by stating that the DHA PHA Plan describes the basic policies, and rules and requirements concerning DHA operations, programs, and services.. The 5-Yr. and Annual Plans must be updated and submitted to HUD each year.  Mr. Dion stated that the purpose of today's meeting was to seek the Resident Advisory Board's (RAB's) input.

Copies of the updated Plans had been distributed to the RAB last week along with a summary of changes from last year's amended Plans entitled "PHA Plan Substantive Changes".  Mr. Dion highlighted the main changes to the Plans set forth in the PHA Plan Substantive Changes document.  These include:
- Adding that DHA has incorporated the applicable provision of the Violence Against Women Act into its Admission and Continued Occupancy Policy (ACOP);
- Adding "Changes to eligibility for admission policies"; and "Any change with regard to demolition or disposition, designation, homeownership programs, or conversion activities" as substantial deviations from the 5-Yr. Plan; and
- Adding that the PHA will be conducting other public housing development or replacement activities not discussed in the Capital Fund Program Annual Statement, namely, submission of a Disposition Application to dispose of the site to a developer team that will demolish the public housing and rebuild affordable and market-rate housing.

The RAB had various questions concerning the timing of, and process for, the disposition and redevelopment of

Arroyo Vista, and when Section 8 Vouchers would be made available to them.  Staff provided the requested information to the RAB's satisfaction.  The RAB provided no input regarding the 5-Yr. and Annual Plans.

The meeting adjourned at 1:45 P.M..

**b. In what manner did the PHA address those comments? (select all that apply)**
☒ Considered comments, and determined that no changes to the PHA Plan were necessary.
☐ The PHA changed portions of the PHA Plan in response to comments
List changes below:

☐ Other: (list below)

### (2) Resident Membership on PHA Governing Board
The governing board of each PHA is required to have at least one member who is directly assisted by the PHA, unless the PHA meets certain exemption criteria.  Regulations governing the resident board member are found in 24 CFR Part 964, Subpart E.

a. Does the PHA governing board include at least one member who is directly assisted by the PHA this year?

☒ Yes ☐ No:

If yes, complete the following:

Name of Resident Member of the PHA Governing Board:
- Laurianne Behrens, Tenant Commissioner
- Ramona Frydendal, Sr. Tenant Commissioner

Method of Selection:
☒ Appointment
**The term of appointment is (include the date term expires): Two-year term expiring 5/31/08**

☐ Election by Residents (if checked, complete next section--Description of Resident Election Process)

**Description of Resident Election Process**
Nomination of candidates for place on the ballot: (select all that apply)
☐ Candidates were nominated by resident and assisted family organizations
☐ Candidates could be nominated by any adult recipient of PHA assistance
☐ Self-nomination:  Candidates registered with the PHA and requested a place on ballot
☐ Other: (describe)

Eligible candidates: (select one)
☐ Any recipient of PHA assistance

☐     Any head of household receiving PHA assistance
☐     Any adult recipient of PHA assistance
☐     Any adult member of a resident or assisted family organization
☐     Other (list)

Eligible voters: (select all that apply)
☐     All adult recipients of PHA assistance (public housing and section 8 tenant-based assistance)
☐     Representatives of all PHA resident and assisted family organizations
☐     Other (list)

b. If the PHA governing board does not have at least one member who is directly assisted by the PHA, why not?

☐     The PHA is located in a State that requires the members of a governing board to be salaried and serve on a full time basis
☐     The PHA has less than 300 public housing units, has provided reasonable notice to the resident advisory board of the opportunity to serve on the governing board, and has not been notified by any resident of their interest to participate in the Board.
☐     Other (explain):

Date of next term expiration of a governing board member:

Name and title of appointing official(s) for governing board (indicate appointing official for the next available position):   City Council of the City of Dublin

### (3) PHA Statement of Consistency with the Consolidated Plan
[24 CFR Part 903.15]
For each applicable Consolidated Plan, make the following statement (copy questions as many times as necessary).

### Consolidated Plan jurisdiction: (Alameda County HOME Consortium)

a. The PHA has taken the following steps to ensure consistency of this PHA Plan with the Consolidated Plan for the jurisdiction: (select all that apply):

☒     The PHA has based its statement of needs of families on its waiting list on the needs expressed in the Consolidated Plan/s.
☒     The PHA has participated in any consultation process organized and offered by the Consolidated Plan agency in the development of the Consolidated Plan.
☒     The PHA has consulted with the Consolidated Plan agency during the development of this PHA Plan.
☒     Activities to be undertaken by the PHA in the coming year are consistent with the initiatives contained in the Consolidated Plan. (list below)
☒     Other: (list below)

**Other:** The PHA plans to submit an application to HUD, by April1, 2007, to dispose of the entire 150 unit Arroyo Vista Project, Development Number CA39-P142-001, pursuant to Section 18 of the U.S. Housing Act of 1937.

At its July 24, 2006 meeting, the Dublin Housing Authority Board of Commissioners selected Eden Housing and Citation Homes, non-profit and for-profit developers, respectively, to redevelop Arroyo Vista as 216 ownership units (since increased to 226) and 179 affordable tax-credit rental units.  Fifteen of the 26 ownership units are to be affordable; 50 of the 179 affordable tax-credit rental units are to be designated for the elderly.  Eden Housing will apply to HUD for Section 202 funding in order to be able to target the 50 elderly units to extremely low-income seniors.  The development is to include a computer learning center, a child-care center, tot lots, and a playground.

**b. The Consolidated Plan of the jurisdiction supports the PHA Plan with the following actions and commitments: (describe below)**

**Part I, Priority Housing Needs, of the Alameda County HOME Consortium Consolidated Plan Strategic Plan for FY 2005 – FY 2009**, lists the following priorities: **Priority:** Increase the availability of affordable rental housing for extremely low income, low income, and moderate income households.  The objectives and goals to be pursued under the priority include the following:

**Five-Year Objectives: Promote the production of affordable rental housing by supporting the acquisition, rehabilitation, and new construction of units by non-profit developers.  A combination of funds will be used, including federal, state, and local housing program funds.**

Priority: Assist low and moderate income first-time homebuyers.  The objectives and goals to be pursued under the priority include the following:

**Five-Year Objectives: Provide** homeownership assistance through new construction of housing and down payment assistance programs.

**(4)  (Reserved)**

Use this section to provide any additional information requested by HUD.

# 10.  Project-Based Voucher Program

a.    ☐ Yes ☐ No: Does the PHA plan to "project-base" any tenant-based Section 8 vouchers in the coming year?  If yes, answer the following questions.

b.    ☐ Yes ☐ No: Are there circumstances indicating that the project basing of the units, rather than tenant-basing of the same amount of assistance is an appropriate option?

If yes, check which circumstances apply:

☐ Low utilization rate for vouchers due to lack of suitable rental units
☐ Access to neighborhoods outside of high poverty areas
☐ Other (describe below:)

c.  Indicate the number of units and general location of units (e.g. eligible census tracts or smaller areas within eligible census tracts):

## 11. List of Supporting Documents Available for Review for Streamlined Five-Year/ Annual PHA Plans

PHAs are to indicate which documents are available for public review by placing a mark in the "Applicable & On Display" column in the appropriate rows. All listed documents must be on display if applicable to the program activities conducted by the PHA.

| List of Supporting Documents Available for Review | | |
|---|---|---|
| Applicable & On Display | Supporting Document | Related Plan Component |
| X | *PHA Certifications of Compliance with the PHA Plans and Related Regulations and Board Resolution to Accompany the Standard Annual, Standard Five-Year, and Streamlined Five-Year/Annual Plans.* | Standard 5 Year and Annual Plans; streamlined 5 Year Plans |
| X | State/Local Government Certification of Consistency with the Consolidated Plan. | 5 Year Plans |
| X | Fair Housing Documentation Supporting Fair Housing Certifications: Records reflecting that the PHA has examined its programs or proposed programs, identified any impediments to fair housing choice in those programs, addressed or is addressing those impediments in a reasonable fashion in view of the resources available, and worked or is working with local jurisdictions to implement any of the jurisdictions' initiatives to affirmatively further fair housing that require the PHA's involvement. | 5 Year and Annual Plans |
| X | Housing Needs Statement of the Consolidated Plan for the jurisdiction(s) in which the PHA is located and any additional backup data to support statement of housing needs for families on the PHA's public housing and Section 8 tenant-based waiting lists. | Annual Plan: Housing Needs |
| X | Most recent board-approved operating budget for the public housing program | Annual Plan: Financial Resources |
| X | Public Housing Admissions and (Continued) Occupancy Policy (A&O/ACOP), which includes the Tenant Selection and Assignment Plan [TSAP] and the Site-Based Waiting List Procedure. | Annual Plan: Eligibility, Selection, and Admissions Policies |

PHA Name: Dublin Housing Authority     5-Year Plan for Fiscal Years: 2005 - 2009     Annual Plan for FY 2006
HA Code: CA142

| List of Supporting Documents Available for Review | | |
|---|---|---|
| Applicable & On Display | Supporting Document | Related Plan Component |
|  | Any policy governing occupancy of Police Officers and Over-Income Tenants in Public Housing. ☐ Check here if included in the public housing A&O Policy. | Annual Plan: Eligibility, Selection, and Admissions Policies |
|  | Section 8 Administrative Plan | Annual Plan: Eligibility, Selection, and Admissions Policies |
| X | Public housing rent determination policies, including the method for setting public housing flat rents. ☐ Check here if included in the public housing A & O Policy. | Annual Plan: Rent Determination |
|  | Schedule of flat rents offered at each public housing development. ☐ Check here if included in the public housing A & O Policy. | Annual Plan: Rent Determination |
|  | Section 8 rent determination (payment standard) policies (if included in plan, not necessary as a supporting document) and written analysis of Section 8 payment standard policies. ☐ Check here if included in Section 8 Administrative Plan. | Annual Plan: Rent Determination |
| X | Public housing management and maintenance policy documents, including policies for the prevention or eradication of pest infestation (including cockroach infestation). | Annual Plan: Operations and Maintenance |
| X | Results of latest Public Housing Assessment System (PHAS) Assessment (or other applicable assessment). | Annual Plan: Management and Operations |
|  | Follow-up Plan to Results of the PHAS Resident Satisfaction Survey (if necessary) | Annual Plan: Operations and Maintenance and Community Service & Self-Sufficiency |
|  | Results of latest Section 8 Management Assessment System (SEMAP) | Annual Plan: Management and Operations |
|  | Any policies governing any Section 8 special housing types ☐ check here if included in Section 8 Administrative Plan | Annual Plan: Operations and Maintenance |
|  | Consortium agreement(s). | Annual Plan: Agency Identification and Operations/ Management |
| X | Public housing grievance procedures ☐ Check here if included in the public housing A & O Policy. | Annual Plan: Grievance Procedures |
|  | Section 8 informal review and hearing procedures. ☐ Check here if included in Section 8 Administrative Plan. | Annual Plan: Grievance Procedures |
|  | The Capital Fund/Comprehensive Grant Program Annual Statement /Performance and Evaluation Report for any active grant year. | Annual Plan: Capital Needs |
|  | Most recent CIAP Budget/Progress Report (HUD 52825) for any active CIAP grants. | Annual Plan: Capital Needs |
|  | Approved HOPE VI applications or, if more recent, approved or submitted HOPE VI Revitalization Plans, or any other approved proposal for development of public housing. | Annual Plan: Capital Needs |
|  | Self-evaluation, Needs Assessment and Transition Plan required by regulations implementing Section 504 of the Rehabilitation Act and the Americans with Disabilities Act. See PIH Notice 99-52 (HA). | Annual Plan: Capital Needs |
| X | Approved or submitted applications for demolition and/or disposition of public housing. | Annual Plan: Demolition and Disposition |
|  | Approved or submitted applications for designation of public housing (Designated Housing Plans). | Annual Plan: Designation of Public Housing |
|  | Approved or submitted assessments of reasonable revitalization of public housing and approved or submitted conversion plans prepared pursuant to section 202 of the 1996 HUD Appropriations Act, Section 22 of the US Housing Act of 1937, or Section 33 of the US Housing Act of 1937. | Annual Plan: Conversion of Public Housing |
|  | Documentation for required Initial Assessment and any additional information required by HUD for Voluntary Conversion. | Annual Plan: Voluntary Conversion of Public |

form HUD-50075-SF (04/30/2003)     000197

| List of Supporting Documents Available for Review | | |
|---|---|---|
| Applicable & On Display | Supporting Document | Related Plan Component |
| | | Housing |
| | Approved or submitted public housing homeownership programs/plans. | Annual Plan: Homeownership |
| | Policies governing any Section 8 Homeownership program (Section ___ of the Section 8 Administrative Plan) | Annual Plan: Homeownership |
| X | Public Housing Community Service Policy/Programs ☐ Check here if included in Public Housing A & O Policy | Annual Plan: Community Service & Self-Sufficiency |
| | Cooperative agreement between the PHA and the TANF agency and between the PHA and local employment and training service agencies. | Annual Plan: Community Service & Self-Sufficiency |
| | FSS Action Plan(s) for public housing and/or Section 8. | Annual Plan: Community Service & Self-Sufficiency |
| | Section 3 documentation required by 24 CFR Part 135, Subpart E for public housing. | Annual Plan: Community Service & Self-Sufficiency |
| | Most recent self-sufficiency (ED/SS, TOP or ROSS or other resident services grant) grant program reports for public housing. | Annual Plan: Community Service & Self-Sufficiency |
| X | Policy on Ownership of Pets in Public Housing Family Developments (as required by regulation at 24 CFR Part 960, Subpart G). ☐ Check here if included in the public housing A & O Policy. | Pet Policy |
| X | The results of the most recent fiscal year audit of the PHA conducted under the Single Audit Act as implemented by OMB Circular A-133, the results of that audit and the PHA's response to any findings. | Annual Plan: Annual Audit |
| | Consortium agreement(s), if a consortium administers PHA programs. | Joint PHA Plan for Consortia |
| | Consortia Joint PHA Plans ONLY: Certification that consortium agreement is in compliance with 24 CFR Part 943 pursuant to an opinion of counsel on file and available for inspection | Joint PHA Plan for Consortia |
| | Other supporting documents (optional). List individually. | (Specify as needed) |

000198

## 12. Capital Fund Program and Capital Fund Program Replacement Housing Factor Annual Statement/Performance and Evaluation Report

**Annual Statement/Performance and Evaluation Report**
**Capital Fund Program and Capital Fund Program Replacement Housing Factor (CFP/CFPRHF) Part I: Summary**

PHA Name: Dublin Housing Authority

Grant Type and Number
Capital Fund Program Grant No: CA39P142006
Replacement Housing Factor Grant No:

Federal FY of Grant: 2006

☐ Original Annual Statement  ☐ Reserve for Disasters/ Emergencies  ☒ Revised Annual Statement (revision no: 1 )
☐ Performance and Evaluation Report for Period Ending:  ☐ Final Performance and Evaluation Report

| Line | Summary by Development Account | Total Estimated Cost | | Total Actual Cost | |
|---|---|---|---|---|---|
| | | Original | Revised | Obligated | Expended |
| 1 | Total non-CFP Funds | | | | |
| 2 | 1406 Operations | $273,978 | | $273,978 | |
| 3 | 1408 Management Improvements | | | | |
| 4 | 1410 Administration | | | | |
| 5 | 1411 Audit | | | | |
| 6 | 1415 Liquidated Damages | | | | |
| 7 | 1430 Fees and Costs | | | | |
| 8 | 1440 Site Acquisition | | | | |
| 9 | 1450 Site Improvement | | | | |
| 10 | 1460 Dwelling Structures | | | | |
| 11 | 1465.1 Dwelling Equipment—Nonexpendable | | | | |
| 12 | 1470 Nondwelling Structures | | | | |
| 13 | 1475 Nondwelling Equipment | | | | |
| 14 | 1485 Demolition | | | | |
| 15 | 1490 Replacement Reserve | | | | |
| 16 | 1492 Moving to Work Demonstration | | | | |
| 17 | 1495.1 Relocation Costs | | | | |
| 18 | 1499 Development Activities | | | | |
| 19 | 1501 Collateralization or Debt Service | | | | |
| 20 | 1502 Contingency | | | | |
| 21 | Amount of Annual Grant: (sum of lines 2 – 20) | $273,978 | | $273,978 | |
| 22 | Amount of line 21 Related to LBP Activities | | | | |
| 23 | Amount of line 21 Related to Section 504 compliance | | | | |
| 24 | Amount of line 21 Related to Security – Soft Costs | | | | |
| 25 | Amount of Line 21 Related to Security – Hard Costs | | | | |
| 26 | Amount of line 21 Related to Energy Conservation Measures | | | | |

form HUD-50075-SF (04/30/2003)

000199

**12. Capital Fund Program and Capital Fund Program Replacement Housing Factor Annual Statement/Performance and Evaluation Report**

| Annual Statement/Performance and Evaluation Report | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Capital Fund Program and Capital Fund Program Replacement Housing Factor (CFP/CFPRHF) | | | | | | | | |
| Part II: Supporting Pages | | | | | | | | |
| PHA Name: Dublin Housing Authority | | Grant Type and Number Capital Fund Program Grant No: CA39P142006 Replacement Housing Factor Grant No: | | | | Federal FY of Grant: 2006 | | |
| Development Number Name/HA-Wide Activities | General Description of Major Work Categories | Dev. Acct No. | Quantity | Total Estimated Cost | | Total Actual Cost | | Status of Work |
| | | | | Original | Revised | Funds Obligated | Funds Expended | |
| HA-Wide | Operations | 14 | 06 | $273,978 | | $273,978 | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |

form HUD-50075-SF (04/30/2003)

000200

13. Capital Fund Program Five-Year Action Plan

## Annual Statement/Performance and Evaluation Report
## Capital Fund Program and Capital Fund Program Replacement Housing Factor (CFP/CFPRHF)
### Part III: Implementation Schedule

PHA Name: **Dublin Housing Authority**

Grant Type and Number
Capital Fund Program No: CA39P142006
Replacement Housing Factor No:

Federal FY of Grant: 2006

| Development Number Name/HA-Wide Activities | All Fund Obligated (Quarter Ending Date) | | | All Funds Expended (Quarter Ending Date) | | | Reasons for Revised Target Dates |
|---|---|---|---|---|---|---|---|
| | Original | Revised | Actual | Original | Revised | Actual | |
| HA-Wide | 9/07 | | | 9/09 | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

form HUD-50075-SF (04/30/2003)

000201

# 13. Capital Fund Program Five-Year Action Plan

## Capital Fund Program Five-Year Action Plan
### Part I: Summary

PHA Name: Dublin Housing Authority

| Development Number/Name/HA-Wide | Year 1 2005 | Work Statement for Year 2 FFY Grant: PHA FY: 2006 | Work Statement for Year 3 FFY Grant: PHA FY: 2007 | Work Statement for Year 4 FFY Grant: PHA FY: 2008 | Original 5-Year Plan Revision No: Work Statement for Year 5 FFY Grant: PHA FY: 2009 |
|---|---|---|---|---|---|
| | Annual Statement | | | | |
| HA-Wide | | $273,978 | $255,000 | $237,000 | $221,000 |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| CFP Funds Listed for 5-year planning | | | | | |
| Replacement Housing Factor Funds | | | | | |

form HUD-50075-SF (04/30/2003)

000202

## 13. Capital Fund Program Five-Year Action Plan

**Capital Fund Program Five-Year Action Plan**
**Part II: Supporting Pages— Work Activities**

| Activities for Year 1 | Activities for Year :2 FFY Grant: 2006 PHA FY: 06-07 | | | Activities for Year: 3 FFY Grant: 2007 PHA FY: 07-08 | | |
|---|---|---|---|---|---|---|
| 2005 | Development Name/Number | Major Work Categories | Estimated Cost | Development Name/Number | Major Work Categories | Estimated Cost |
| See Annual Statement | HA-Wide | Operations/Admin | $273,978 | HA-Wide | Operations/Admin | $255,000 |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | Total CFP Estimated Cost | | $273,978 | | | $255,000 |

form HUD-50075-SF (04/30/2003)

000203

# 13. Capital Fund Program Five-Year Action Plan

## Capital Fund Program Five-Year Action Plan
### Part II: Supporting Pages—Work Activities

| Activities for Year: 4 FFY Grant: 2008 PHA FY: 08-09 | | | Activities for Year: 5 FFY Grant: 2009 PHA FY: 09-10 | | |
|---|---|---|---|---|---|
| Development Name/Number | Major Work Categories | Estimated Cost | Development Name/Number | Major Work Categories | Estimated Cost |
| HA-Wide | Operations/Admin | $237,000 | HA-Wide | Operations/Admin | $221,000 |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| Total CFP Estimated Cost | | $237,000 | | | $221,000 |

form HUD-50075-SF (04/30/2003)

Page 41 of 41

000204

**DECLARATION OF LISA GREIF**
**IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

**EXHIBIT 5**

**goldfarb**
**lipman**
**attorneys**

1300 Clay Street, Ninth Floor
Oakland, California 94612
510 836-6336

M David Kroot
Lee C. Rosenthal
John T. Nagle
Polly V. Marshall
Lynn Hutchins
Karen M. Tiedemann
Thomas H. Webber
John T. Haygood
Dianne Jackson McLean
Michelle D. Brewer
Jennifer K. Bell
Robert C. Mills
Isabel L. Brown
James T. Diamond, Jr.
William F. DiComilio
Margaret F. Jung
Heather J. Gould
Juliet E. Cox
Erica Kyle Williams
Amy DeVaudreuil
Barbara E. Kautz
Luis A. Rodriguez

December 13, 2007

Ms. Lisa Greif
Bay Area Legal Aid
405 14th Street, 11th Floor
Oakland, California 94612

Re:  *Arroyo Vista Tenants Association et al. v. City of Dublin et al.*,
     United States District Court Case No. 3:07-cv-05794

Dear Ms. Greif:

Thank you for your letter of November 21 setting out in detail your clients' concerns about the proposed redevelopment of the Dublin Housing Authority's Arroyo Vista complex. At this point, however, our clients believe that the plan they have developed for redevelopment of Arroyo Vista is in the best interests of DHA, its current tenants, and its potential tenants. Having submitted that plan to HUD for approval, our clients do not intend to rescind or revise the DDA memorializing it unless HUD requires revision of the plan or finally disapproves DHA's application to dispose of Arroyo Vista.

As you are surely aware, DHA does not receive enough in annual contributions from HUD and from rents to cover the full cost of operating and maintaining Arroyo Vista, let alone the cost of making necessary improvements. Because the condition of the housing units and infrastructure (including pavement, irrigation, and wastewater systems) continues to deteriorate as a result of the limited funds available for maintenance, DHA undertook in 2006 to determine whether or not rehabilitation of the complex was feasible. At the same time, DHA investigated whether or not it could sell the complex to a developer or team of developers who could redevelop the site with higher-density housing including affordable units. Based on the results of its investigations, DHA concluded that rehabilitation was not financially feasible, and that redeveloping the complex soon would serve DHA and its tenants better than would continuing to operate the complex until it became uninhabitable.

You should already have received minutes from the meetings in 2006 at which DHA's Board of Commissioners discussed these issues. For your review, a copy of the June 20, 2006, staff report to the DHA Board regarding potential rehabilitation of the Arroyo Vista complex accompanies this letter. As you have requested, DHA's Executive Director expects to be able early next week to send copies to you of the engineering reports referenced in this staff report. As you have also requested, DHA has agreed to send a copy of its property appraisal to you at the same time that DHA sends that appraisal to HUD.

Facsimile
510 836-1035
San Francisco
415 788-6336
Los Angeles
213 627-6336
San Diego
619 239-6336
Goldfarb & Lipman LLP

1460\03\513249.1

000206

December 13, 2007
Page 2

You understand correctly that the Section 8 vouchers that some former Arroyo Vista tenants have accepted have come from the Housing Authority of the County of Alameda's overall voucher allocation. If HUD approves DHA's disposition application, HACA will apply to HUD for a special allocation of vouchers to replace those HACA provides to displaced Arroyo Vista tenants. HACA is aware that the demand for replacement vouchers nationwide is keen; that HUD may not provide any replacement vouchers at all; and that even if HUD does provide replacement vouchers it may provide vouchers only for those Arroyo Vista units that are actually occupied at the time HUD approves the disposition application. This possibility does not mean, however, that the disposition is not in the best interest of DHA's tenants.

Your understanding that the DDA does not require construction of the affordable component of the project is incorrect. The DDA provides that DHA will not convey the Arroyo Vista property to either Citation or Eden unless HUD has approved the Revitalization Plan described in DHA's application and set forth more fully in the DDA. (DDA, §§ 6.1, 12.1, 15.1.) The DDA provides further that DHA will convey Eden's portion to Eden subject to a regulatory agreement ensuring that Eden uses the property in accordance with the Revitalization Plan. (DDA, §§ 2.5, 6.1(b).) And because the DDA acknowledges that DHA can dispose of Arroyo Vista (and that Eden can use the property it receives) only in accordance with the application that HUD approves (DDA, §§ 1.1(uu), 3.1(c), 3.2(a), 6.1, 12.1), this regulatory agreement will carry forward Eden's obligation to construct the affordable housing even after conveyance of the Arroyo Vista property to Eden. In fact, HUD will condition any approval of DHA's disposition application upon inclusion in the regulatory agreement of a reversion clause requiring Eden to return the property to DHA if Eden cannot complete the affordable project.

The DDA commits all parties to a timetable under which construction of the affordable housing will proceed in parallel with construction of the market-rate housing, subject to financial and regulatory requirements. (DDA, §§ 2.6, 2.7, 8.1, 8.2, 8.19.) If the funding upon which Eden intends to draw for its project proves unavailable, Eden may be unable to proceed. In that case, DHA will have to go back to the drawing board, and may need to seek HUD's approval for a revised project. Although this possibility could delay construction of the affordable housing, it would not eliminate the affordable component of the project.

In fact, our clients have considered all the issues and risks you raise in your letter, and have concluded on balance that the project described in the DDA is in the best interests of DHA, its current tenants, and its potential tenants. If HUD agrees, our clients will proceed with their project; if HUD disagrees, our clients will revisit the issue. In any event, until HUD has made its decision approving, conditionally approving, or disapproving the disposition, your lawsuit challenging the project will not be ripe. We urge you again to consider dismissing it without prejudice while DHA's disposition application remains pending before HUD.

000207

December 13, 2007
Page 3

Your concerns about DHA's relocation activities are similarly unripe. Through HACA, DHA has made Section 8 vouchers available to tenants; and some tenants—including some of your clients—have taken advantage of this opportunity. DHA has also provided those tenants with advisory assistance and with moving expense reimbursement, all in accordance with state and federal law, and with security deposit and credit check fees which are above and beyond what these laws require. Because DHA has not yet required any Arroyo Vista resident to move, however, DHA has not yet taken any action for which a relocation plan is a prerequisite. Preparation of a plan is in process so that DHA will be prepared to comply with all laws if and when any Arroyo Vista tenant must move.

Our clients did solicit your clients' participation in planning for Arroyo Vista's future, but few of them elected to participate. Several open issues will require DHA to consult again with all its tenants—including, but not limited to, your clients—in the near future. As you have noted, for example, development, review, and approval of DHA's tenant relocation plan will require input from tenants. In addition, and as you have also noted, the DDA requires DHA and Eden to agree on rules that Eden may apply to former Arroyo Vista tenants who wish to reside in the redeveloped complex; in negotiating those rules, our clients would be happy to consider your and your clients' views.

If you believe that any additional conversation about these issues will be productive, Lee and I would be happy to talk further with you and Mr. Castellanet on Friday, December 14, at 3:00 p.m., or at another mutually agreeable time. In addition, please let us know if additional information would assist you in evaluating your clients' claims. In the meantime, our clients will proceed with preparation of the remaining materials necessary to complete DHA's disposition application to HUD, and we will proceed with defense of the lawsuit.

Very truly yours,

JULIET E. COX
jcox@goldfarblipman.com

JEC:jec
Enclosure

Agenda Statement: Potential Rehabilitation of Arroyo Vista (June 20, 2006)
cc:        Christine Gouig, Executive Director, Dublin Housing Authority

**DECLARATION OF LISA GREIF**
**IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

**EXHIBIT 6**

000209



**U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT**
WASHINGTON, DC 20410-5000

ASSISTANT SECRETARY FOR
PUBLIC AND INDIAN HOUSING

NOV 2 0 2007

Ms. Lisa Greif
Bay Area Legal Aid
405 14th Street, 11th Floor
Oakland, CA 94612

Dear Ms. Greif:

On behalf of Secretary Alphonso Jackson, thank you for your letter of November 2, 2007, addressed to Assistant Secretary Kim Kendrick and Ainars Rodins Director of Special Application Center regarding the disposition application from the Dublin Housing Authority (DHA) for the Arroyo Vista development (CA142001).

The Special Application Center (SAC) received this disposition application from DHA on August 15, 2007, via the PIH Information Center (PIC) as DDA0002636, and is in the process of reviewing the application pursuant to Section 18 of the United States Housing Act of 1937 (the "Act") and the implementing regulations at 24 CFR 970.

The Department has carefully reviewed your letter and the concerns you have raised, on behalf of four residents of Arroyo Vista, to DHA's disposition application. The SAC will consider these comments as additional resident comments under 24 CFR 970.9(a) and will request that the DHA respond to these concerns in its supplemental application submissions. On behalf of Secretary Jackson and Assistant Secretary Kendrick, the SAC is also providing you with the following initial responses to the concerns raised in your letter:

(1) DHA entered into a binding Development Agreement for Arroyo Vista prior to obtaining HUD approval for the disposition.

The SAC will request that DHA provide information about any Development Agreement and/or sales agreement for Arroyo Vista that DHA may have already entered into. Pursuant to 24 CFR 970.25, DHA is prohibited from taking any action to dispose of Arroyo Vista without first obtaining prior HUD approval.

(2) DHA has relocated 15-20 families at Arroyo Vista prior to obtaining HUD approval of the disposition and has not created a relocation plan for the residents of Arroyo Vista

The SAC has requested that DHA certify that it will comply with all applicable requirements of 24 CFR 970.21 in connection with the relocation of residents of Arroyo Vista due to this disposition action. Pursuant to 24 CFR 970.29, the Department will disapprove an application if it determines, in part, that any certification made by a Public Housing Agency (PHA) in a demolition/disposition application is inconsistent with any information and data available to the Department.

000210

Pursuant to 24 CFR 970.25, if DHA is relocating residents based on the disposition of Arroyo Vista, the relocation of the residents cannot begin until after the Department approves the application. However, pursuant to 24 CFR 970.25(b), DHA can engage in occupancy consolidation at any time (e.g. before or after submitting a disposition application to the Department) so long as it meets the statutory requirements for occupancy consolidation under Section 18 of the Act and 24 CFR 970.25(b).

(3) DHA claims that the Housing Authority of the County of Alameda (HACA) has set aside 150 Section 8 vouchers for relocating the residents of Arroyo Vista who will be displaced as a result of the proposed disposition

The SAC will require that the DHA provide evidence in its application that it will relocate residents of Arroyo Vista into comparable housing in compliance with 24 CFR 970.21. This section provides, in part, that DHA must relocate residents in housing that is located in an area that is generally not less desirable than their current location. This section also provides that residents must be "actually relocated" into housing with tenant-based assistance for the Department to consider such housing as comparable housing.

(4) DHA did not comply with the resident consultation requirements of 24 CFR 970.9

24 CFR 970.9 requires that all disposition applications be developed in consultation with the residents. However, it does not indicate the method of consultation. Your letter claims that although the residents of Arroyo Vista may have been informed of the proposed disposition, they were not "consolidated" or requested to provide their input. The SAC will request clarification from DHA of its consultation with the residents. Pursuant to 24 CFR 970.29, the Department will disapprove an application if it determines that the application was not developed in consultation with the residents, as well as the resident advisory board and resident council, if any, of the development, as required by 24 CFR 970.9.

(5) DHA failed to offer the development for sale to the resident organization or other eligible organizations

Because DHA seeks this disposition to develop a facility to benefit low-income families, DHA may claim an exemption form the offer of sale requirements pursuant to 24 CFR 970.9(b)(3)(ii). The Department will carefully review DHA's application to determine if it is choosing to exercise this exemption from the offer of sale requirements of Section 18 of the Act and 24 CFR 970.

(6)  The disposition of Arroyo Vista is not in the best interests of the residents and DHA

The Department will consider the concerns raised in your letter in reviewing DHA's disposition application.

(7)  DHA failed to submit a complete disposition application pursuant to 24 CFR 970.9

The Department will investigate the concerns raised in your letter and will request additional information from DHA about these concerns, if necessary.  The SAC has requested a certification from the Department's San Francisco Regional Office that the proposed disposition action was included in DHA's Annual Plan.  Also, the SAC will not approve DHA's disposition application without ensuring that all necessary appraisals and environmental reviews are complete in accordance with Section 18 of the Act and 24 CFR 970.

(8)  DHA's proposed disposition action of Arroyo Vista will have a discriminatory effect and shows a failure of DHA to affirmatively further fair housing

The SAC has requested that DHA certify that it will carry out the proposed disposition action in conformity with all applicable civil rights and fair housing laws, and that it will also affirmatively further fair housing.  In addition, the SAC has requested a certification from the Department's San Francisco Regional Office that the action proposed in the disposition application is not contrary to any fair housing or civil rights laws.

The Department appreciates your concerns and will take them into consideration as it reviews DHA's disposition application for Arroyo Vista.  Based on your comments, the Department has requested additional information and/or clarification from DHA.  The Department will approve DHA's disposition application for Arroyo Vista only if it determines that the criteria of 24 CFR 970.7 has been satisfied.

The Department thanks you for your letter and will consider it in our review process.  If you have any question please call Sunny Grover, Public Housing Revitalization specialist at (312) 886-9754 extension 2329.

Sincerely,

Dominique Blom
Deputy Assistant Secretary
Office of Public Housing Investments

cc: San Francisco Regional Office

**DECLARATION OF LISA GREIF**
**IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

**EXHIBIT 7**

000213

# HAPPY HOLIDAYS
## DECEMBER 2007



# Arroyo Vista



6700 Dougherty Rd.
Dublin, CA 94568
Phone: (925) 828-3132



---

**Dublin Housing Authority**
**Arroyo Vista Staff**

*Margie Newman*
**Dublin Area Manager**

*Carol Alves*
**Administrative Services**

**Maintenance Staff**
*Lee Alejandro*
*Manny Gutierrez*

**Office Hours**
**Monday - Friday**
8:30am - 3:00pm

**Saturday & Sunday**
Closed

**Closed Every Other Friday**

**Important Numbers**

Office: (925) 828-3132
Fax: (925) 828-5450



---

# REDEVELOPMENT UPDATE

The Dublin Housing Commission held its regular meeting on November 6 and authorized a contract with the Alameda County Sheriff's Department for security services at Arroyo Vista. The Commission and staff were concerned that as residents move out the vacant units may become targets for vandalism, theft and squatters. It is very important that residents at Arroyo Vista feel safe as other residents move out. The Commission allocated sufficient funds to pay a full time deputy sheriff. The deputy will initially cover the evening hours, after the Housing Authority's office has closed. The coverage time may be adjusted as needed. Police Chief Thuman is preparing the contract we hope to have the contract executed and a deputy in place by the end of the year.
In addition, the Commission approved a contract with Bryan Pullman Construction to board up the vacant units. The contract calls for completion of each board up within 48 hours of notice.

Back in September, Overland Pacific & Cutler, our relocation consultant, began work on the Relocation Plan. We anticipate that a Draft Plan will be ready for review in December or January.
Residents continue to move voluntarily from Arroyo Vista. To date, 33 households have moved. As we have from the beginning of this process, we remind residents that you are not required to move now but if you want to move we will assist you. We anticipate starting relocation activities early next year so that everyone can be moved by November 2008.

Housing Authority staff has been holding small group meetings at Arroyo Vista to more fully explain the Section 8 program. IF YOU WOULD LIKE TO ATTEND ONE OF THESE MEETINGS PLEASE SIGN UP AT THE OFFICE. In addition, Overland Pacific & Cutler is conducting interviews with each household to determine relocation needs. You have already received a letter informing you of the interviews. If you haven't already done so, please contact Overland at the phone number below to schedule an interview.

## For questions, please call:

Homeownership/Credit Counseling: Jorge Ramirez
925-373-3930

Relocation: John Morris/Teresa Laverde
877-972-8908

Section 8 Voucher Rules: Mary Rizzo-Shuman
510-727-8570

Section 8 Homeownership: Betsy Safine
510-727-8585

000214

## Helmets Save Lives Don't Pedal Without Them

Bicycling is now enjoyed by over 100 million people in this country. For some bicycles are a primary mode of transportation, and for others they provide a great source of recreation for family activity.

The increased popularity of bicycling has brought a dramatic increase in bicycle associated injuries and deaths. In the U.S., children account for approximately 70% of the bicycle injuries needing treatment in hospital emergency rooms.

They account for more than half the deaths. Head injury is the most common cause of serious disability and death from bicycle injuries. Every year, nearly 1,000,000 children (under age 14) have bicycle-related injuries. The challenge is to protect against head injuries. When purchasing bicycles for Christmas this year, include a helmet and make sure it has a sticker indicating that it has passed crash testing criteria determined by the Snell Foundation or ANSI.

## Gingerbread Man

•1 (3.5 ounce) package non-instant butterscotch pudding mix •½ cup of butter •½ cup of packed brown sugar •1 egg •1½ cups of all-purpose flour •½ teaspoon of baking soda •1½ teaspoons of ginger •1½ teaspoons of ground cinnamon

Cream pudding and pie filling mix, butter and sugar. Add egg and blend well. In a separate bowl, combine flour, soda, ginger and cinnamon; blend with pudding mixture. Chill dough until firm. (Can be frozen at this stage until ready for use.) Roll on floured board to about 1/8 inch thickness and cut with cookie cutter. Place on greased cookie sheets. Bake at 350°F (175°C) for 10-12 minutes. Decorate as desired.



## To Our Residents

With the holidays approaching fast, we would like to wish everyone a safe and joyful season!

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | | | | | 1<br>Rent Is Due | |
| 2 | 3 | 4<br>Commission Meeting 6:00 | 5<br>Hanukkah | 6<br>Late Fees Posted | 7<br>Pearl Harbor | 8 |
| 9 | 10 | 11 | 12 | 13 | 14<br>Office Closed | 15 |
| 16 | 17 | 18 | 19 | 20 | 21 | 22<br>Winter Begins |
| 23 | 24 | 25<br>Merry Christmas! | 26<br>Kwanzaa Begins | 27 | 28<br>Office Closed | 29 |
| 30 | 31<br>New Year's Eve | | | | | |

## December
*Season's Greetings*

000215

**DECLARATION OF LISA GREIF**
**IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

**EXHIBIT 8**

000216

# CONTRA COSTA TIMES
### ContraCostaTimes.com

## Panel to decide if Arroyo Vista patrols needed

**DUBLIN: When residents move out, housing authority concerned neighborhood's crime could jump**

By Sophia Kazmi

STAFF WRITER

Article Launched: 11/06/2007 03:04:21 AM PST

The Dublin Housing Authority will decide tonight whether to pay for special police patrols after dark in the Arroyo Vista neighborhood.

As the first wave of Arroyo Vista's residents move out of the public housing -- which has been approved by the city and county housing authority for redevelopment -- housing authority staff members have become concerned the neighborhood may become a target for squatters and thieves.

Formal relocation has not yet begun, but about 34 households from the 150-unit development have left. Residents are receiving Section 8 vouchers and relocation assistance.

Vacant units are being boarded up, but the housing authority staff fears that may not be enough to prevent people from breaking in to the empty homes, or worse.

"Such persons may feel they can more easily burglarize occupied units, thinking no one is watching," according to the report. "In addition, graffiti can become a problem, which, if

left in place, can be considered an invitation to crime."

One proposal is adding an Alameda County sheriff's deputy to patrol the area full time at night. Dublin contracts its police services with the sheriff's office.

The patrol -- which would cost about $260,000 -- would begin when the Arroyo Vista office closes for the day and would continue until morning.

"It's just a proposal," said Dublin police Chief Gary Thuman. "We're just looking at the viability."

Adding an additional deputy is one of several options that came up during a meeting between the housing authority staff and Thuman's department.

The estimated $260,000 cost would pay for an officer's salary and benefits, and contingency for additional hours or personnel if needed. Thuman, who had not seen the quoted price, said the price for the additional patrol officer would depend on the scope of services needed.

Thuman said there have been no crime-related problems in the vacant units. Arroyo Vista's crime rate is essentially no different than the rest of the city.

The Department of Housing and Urban Development has no money available to pay for the extra night security. But the HUD staff suggests that money from the subsidy reserve being used to board up the vacant units could be used to fund the patrols.

If the Dublin Housing Authority Commission -- made up of the five Dublin City Council members plus two Arroyo Vista tenants -- approves the idea,

Advertisement



# ContraCostaTimes
### .com

# (800) 598-4637

# Subscribe today!
www.contracostatimes.com/subscriberservices



Print Powered By [F] FormatDynamics

000217

# CONTRA COSTA TIMES

**ContraCostaTimes.com**

the item would be placed on the Alameda County
Board of Supervisors agenda in late November. If the
supervisors approve it, patrols could start Dec. 1.

Sophia Kazmi covers Dublin. Reach her at
skazmi@bayareanewsgroup.com or 925-847-2122.

If you go

The Dublin Housing Authority meets at 6 tonight at
the Dublin City Council chamber, 100 Civic Plaza

Advertisement



**(800) 598-4637**



## Subscribe today!

*www.contracostatimes.com/subscriberservices*

Print Powered By [■ FormatDynamics"]

**DECLARATION OF LISA GREIF**
**IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

**EXHIBIT 9**

000219

Ramón P. Arias
Executive Director

 **BAY AREA LEGAL AID**

**WORKING TOGETHER FOR JUSTICE**

November 21, 2007

Lee Rosenthal
Juliet Cox
Goldfarb & Lipman
1300 Clay Street, 9th Floor
Oakland, CA 94612

      RE: *Arroyo Vista Tenants Association v. City of Dublin et al.*
         Alameda County Superior Court, Case No. RG07351015

Dear Mr. Rosenthal and Ms. Cox:

On behalf of our clients, the Arroyo Vista Tenants Association and individual residents (Petitioners), Craig Castellanet and I have discussed the above referenced case with you in telephone calls on November 9 and 16, 2007. This letter is to confirm those conversations. In addition, this letter is to request that Respondents rescind the Disposition and Development Agreement (DDA) as premature for the reasons discussed below, and that the Dublin and Alameda County Housing Authorities immediately cease relocation of residents.

First, with respect to HACA's issuance of vouchers to Arroyo Vista residents that have already been relocated, we want to confirm our understanding that:

1. The Section 8 vouchers provided by HACA to existing residents of Arroyo Vista have been from its overall voucher allocation of some 7,000.

2. The Housing Authority of the County of Alameda (HACA) has not yet applied to the U.S. Department of Housing and Urban Development (HUD) for replacement Section 8 vouchers for Arroyo Vista.

3. HACA expects to apply for replacement vouchers in the event HUD approves its disposition application, but such application will be made only after such approval. You also agreed to explain why HACA anticipates that HUD will provide vouchers for all 150 units, regardless of prior relocation activity.

Second, we requested information regarding the rehabilitation estimates for Arroyo Vista such as minutes of board meetings, staff reports, engineering reports, and rehabilitation proposals received as a result of the RFQ/RFP process which you agreed to provide. Please advise when we can expect receipt of this information. You also advised us that you believe the property appraisal has been prepared. If so, please provide us with a copy.

Alameda County Regional Office
405 14th Street, 11th Floor
Oakland, CA 94612

Phone: 510.663.4744
Toll Free: 800.551.5554
Fax: 510.663.4740

www.baylegal.org

000220

≡LSC

Serving the counties of Alameda, Contra Costa, Marin, Napa, San Francisco, San Mateo, and Santa Clara

It also is our understanding that a relocation plan is not yet available, and we request that you provide us with a draft plan for review and comment when it becomes available.

Third, Petitioners ask that Respondents rescind the Arroyo Vista DDA as premature. Respondents' agreement to dispose of the property was adopted improperly without prior HUD approval or adequate resident consultation, and contains terms that are contrary to the residents' interest. Moreover, the DDA calls for the demolition of all public housing units, the displacement of all residents, and acknowledges that state relocation assistance obligations apply to the project. Nonetheless, DHA and HACA have issued Section 8 vouchers and relocated residents without any relocation plan in place. We request that Respondents immediately stop relocating residents and issuing further Section 8 vouchers. No further relocation should occur until the disposition application has been approved and a relocation plan that complies with state law has been adopted and implemented.

As we have discussed, the DDA does not protect the interests of our clients. The following is a summary of our discussions with respect to particular deficiencies:

1. The DDA provides that Section 8 vouchers will be used to relocate the Arroyo Vista residents. However, some residents may be ineligible for the Section 8 voucher program. You have indicated that it is in HACA's interest to qualify residents for Section 8 vouchers to avoid costly relocation, and that it will therefore only apply mandatory Section 8 screening criteria. Further, you advised that HACA will provide rental assistance for all residents, regardless of their qualification for the Section 8 voucher program. However, the DDA does not so provide, and there is no relocation plan against which to measure such assurances.

2. The replacement units called for by the DDA will not be affordable to a majority of Arroyo Vista residents. You have stated that the units will be affordable with the use of Section 8 vouchers. However, there is no explicit obligation in the DDA for Eden Housing (Eden) to accept Section 8 vouchers of either returning residents or other applicants. Further, as discussed above, Section 8 vouchers may not be available to all residents.

3. The proposed bedroom mix for the replacement units does not meet the needs of existing residents. For example, the proposed replacement housing project reduces the number of 4 bedroom units by 60%. You told us that smaller unit sizes are adequate for existing families, and that you will provide us with information demonstrating why. Please also consider that DHA has augmented the bedroom size for some residents as a reasonable accommodation of their disabilities and/or pursuant to such considerations as the age and sex of children. Such accommodations also will be necessary in relocating residents to comparable replacement units and to ensure their right to return to a replacement unit.

4. The number of senior restricted units provided for in the DDA exceeds the needs of current residents and those on the waiting list. Replacing units that house families with children with one-bedroom senior restricted units further impedes the right to return for families with children.

000221

Page 3                                                          November 21, 2007

5. The DDA does not assure Arroyo Vista residents of a firm right to return to the replacement housing. In addition to the deficiencies with respect to affordability, unit size, and senior restrictions described above, the DDA permits Eden to impose undefined tenant selection and behavioral standards.

6. The DDA does not require phasing of the development to ensure that Eden's affordable component is produced prior to or concurrently with Citation's market-rate development. In fact, the DDA contains no assurance that the affordable housing component will actually be built. Further, it does not include any contingencies for reservation of the site or the sale proceeds for the production of replacement housing in the event the Eden component is not completed.

Finally, after our phone discussions, our clients informed us that there are serious problems with maintenance in the common areas that are required to be maintained by DHA since relocation has begun, including for example inadequate grass cutting, trimming of trees and bushes, and clean up of leaves and debris. We request that DHA comply with its obligation to maintain the property and that it implement a reasonable maintenance schedule.

We look forward to your clients' prompt response. We have tentatively scheduled another conference call for November 30, 2007 at 1:00 p.m., however I can be reached at 510-663-4744, ext. 5211 if you have any questions before then.

Sincerely,

Lisa Greif
Attorney for Petitioners