211 Cal.App.3d 467, 259 Cal.Rptr. 393

**View National Reporter System version**

ANTONIA GARCIA et al., Plaintiffs and Appellants,
v.
W. J. ANTHONY, as Director, etc., et al., Defendants and Respondents
No. H004064.
Court of Appeal, Sixth District, California.
Jun 12, 1989.

SUMMARY

In actions for injunction and mandate by tenants under the Relocation Assistance Act (Gov. Code, § 7260 et seq.), the trial court ordered moving expenses and advisory assistance only (Gov. Code, §§ 7261, 7262), denied the tenants' claim to consideration for a money payment or last resort housing (Gov. Code, §§ 7264, 7264.5), and dissolved a stay of prosecution of unlawful detainer actions against the tenants by their sublessor. The sublessor held the property under a lease with the state, which had bought the tract of agricultural land for later development and use as a recreational park. The sublessor retained ownership of improvements on the property (i.e., six residential units), which he subleased to plaintiff tenants. State consent to the subleases, which were not permitted by the terms of the sublessor's lease with the state, was not obtained. After informing the state of the subleases, the sublessor entered negotiations for the state to purchase his interest in the residential improvements and his leasehold of the underlying land, but the negotiations led to no acquisition of property. The state informed the sublessor that, with respect to the tenants, he was in violation of his lease, and he thereafter brought unlawful detainer actions against the tenants in municipal court. The tenants sought but were denied all relocation assistance under the act and then sought administrative review before the Relocation Appeals Board. After the administrative hearing, but before the board issued its decision, the tenants filed an action to enjoin the unlawful detainer actions pending against them; the actions were consolidated by stipulation. The board found the tenants were displaced persons and ordered moving expenses. The tenants challenged this limitation of benefits by petitioning the superior court for a writ of mandate determining that their status as displaced persons qualified them for additional benefits, including last resort housing. (Superior Court of Santa Cruz County, Nos. 100990 and 102652, William M. Kelsay, Judge.)

On consolidated appeals, the Court of Appeal reversed and remanded. It held the tenants were entitled to be considered for last resort housing under Gov. Code, § 7264.5, since that provision of the act is not dependent on the 90-day prenegotiation residency requirement affecting Gov. Code, § 7264 (cash payments to certain lessees to help them obtain comparable replacement housing). However, the court rejected the tenants' contention that the subsequent negotiations as to a portion of the leasehold and the improvements thereon rendered them preacquisition tenants for purposes of cash payments under § 7264. (Opinion by Agliano, P. J., with Cottle and Elia, JJ., concurring.)

HEADNOTES

Classified to California Digest of Official Reports

(1) Eminent Domain § 17--Relocation Assistance Act.
The provisions of the Relocation Assistance Act (Gov. Code, § 7260 et seq.) are to be construed as a whole.
[See **Cal.Jur.3d (Rev),** Eminent Domain, § 82.]

(2a , 2b) Eminent Domain § 31--Persons Entitled to Compensation or Damages--Relocation Assistance Act--Postacquisition Lessees as Displaced Persons--Residency Requirement.
Application of Gov. Code, § 7264.5, requiring a public entity taking real property for public use to provide "last resort housing" to displaced residents where comparable replacement housing is unavailable, is not dependent on the 90-day prenegotiation residency requirement affecting Gov. Code, § 7264 (cash payments to certain lessees to help them obtain comparable replacement housing).

(3) Statutes § 40--Construction--Consequences--Avoiding Absurdity.

Creation of judicial exceptions to statutes is frowned on except as they may be necessary to avoid an absurd result.
[See **Am.Jur.2d,** Statutes, § 265.]

(4) Eminent Domain § 31--Persons Entitled to Compensation or Damages-- Relocation Assistance Act--Postacquisition Lessees as Displaced Persons--Effect of Subsequent Unconsummated Negotiation. Sublessees whose residential leasehold interests in certain real property commenced after that property had been acquired by the state were not rendered preacquisition tenants, for purposes of cash payments to displaced tenants under the Relocation Assistance Act (Gov. Code, § 7264), by subsequent negotiations between the state and the sublessor for the state's purchase of the sublessor's interest in the residential improvements and his leasehold of the underlying land. The negotiations did not lead to an acquisition or cause the sublessees' displacement, which resulted from their eviction by the sublessor because their tenancies were in breach of the terms of the sublessor's lease with the state.

COUNSEL

Gary R. McNeil and Julie K. Barreto for Plaintiffs and Appellants.

John K. Van de Kamp, Attorney General, N. Eugene Hill, Assistant Attorney General, Robert E. Murphy, Jeffrey Pierce and Eleanor Nisperos, Deputy Attorneys General, for Defendants and Respondents.

**AGLIANO, P. J.**

*Introduction*

By enacting the Relocation Assistance Act, the Legislature has provided that a public entity which acquires real property for public use must supply relocation assistance to any person, business, or farm operation displaced as a result of the acquisition. (Gov. Code, § 7260 et seq.)[FN1] A "displaced" person includes one whose right of possession to real property arose after the date of the public entity's acquisition of such property but who had no notice of the acquisition. (§ 7260, subd. (c)(1).) The act authorizes advisory assistance (§ 7261), moving expenses (§ 7262), cash payments to displaced dwelling owners (§ 7263), cash payments to certain lessees to assist them in obtaining comparable replacement housing (§ 7264), and "last resort housing" which the public entity is to itself provide where comparable replacement housing is otherwise unavailable (§ 7264.5).

> FN1 All further statutory references are to the Government Code unless otherwise indicated.

Plaintiffs[FN2] appeal to resolve which relocation benefits they are eligible for. Originally, they were denied all assistance; on review, the California Relocation *470 Appeals Board (Board) found plaintiffs were displaced persons and ordered moving expenses; on mandamus, the superior court ordered moving expenses and advisory assistance only. We will reverse, holding plaintiffs entitled to be considered for last resort housing as well.

> FN2 The plaintiffs are Antonia Garcia, Maria Velasquez, Gerardo Salazar, Guadalupe Ruiz, Ester Flores and Maria Ramirez.

We initially point out that this appeal by plaintiffs focuses primarily upon the benefits to which the plaintiffs, as displaced persons within the meaning of the statute, may be entitled. We, as did the trial court, have questions whether plaintiffs qualify as displaced persons in the first place. That issue, however, is precluded by the posture of the case before us and the findings and conclusions reached below from which no appeal has been taken.

*Facts*

On June 13, 1974, the state purchased Wilder Ranch, a tract of agricultural land north of Santa Cruz,

contemplating later development and use of the property as a recreational park. Pending development, the state leased the land to Pfyffer Brothers Ranch. On June 15, 1982, the lease was assigned to P. Bargiacchi and Son (Bargiacchi).

The lease provided: "8. Lessee agrees to use the leased premises for the production of vegetable crops and for no other purposes. … [¶] 12. Lessee shall not, without previous consent in writing of State, sublet the Premises in whole or in part, nor assign this lease or any interest herein … [¶] 28. It is understood and agreed that the improvements on the subject property belong to the Lessee and at termination of this lease, Lessee may remove the same within 60 days of said termination. If the improvements are not removed within said 60-day period, title thereto shall revert to the State." On January 1, 1985, a new lease was executed between the state and Bargiacchi containing similar provisions.

The improvements referred to in each lease were six residential units. Beginning in September 1982, plaintiffs leased these units from Bargiacchi under 30-day agreements. Plaintiffs were not employed to assist in "the production of vegetable crops" and Bargiacchi did not obtain prior written consent from the state to sublet.

Bargiacchi informed the state in October 1985 that nonagricultural workers were occupying the residential buildings. On March 3, 1986, the state informed Bargiacchi he was in violation of the lease. Thereafter, Bargiacchi brought unlawful detainer actions against plaintiffs. Meanwhile, as of November 20, 1985, the Office of Real Estate Services of the Department of General Services, on behalf of parks and recreation officials, began considering the purchase of the structures occupied by plaintiffs. During the negotiations *471 the parties to the January 1985 lease drafted a first amendment to lease, dated February 1, 1986. In this amendment, which would have taken effect on August 1, 1986, the three acres upon which the residential structures stood would have been deleted from the Bargiacchi leasehold in exchange for reduced rent. The Department of General Services, the state agency with final power of approval of state leases and their amendments, never executed the amendment.

Plaintiffs applied for and were denied all relocation assistance following their receipt of notices terminating their tenancies of buildings located on state-owned land. They then sought administrative review before the Board. Following the administrative hearing, but before the Board issued its decision, plaintiffs also filed an action to enjoin the unlawful detainer actions pending against them in municipal court. (Garcia et al. v. Anthony et al. (Super.Ct. Santa Cruz County, No. 100990).) Since the instant action encompassed essentially the same issues raised in the unlawful detainer action, the parties stipulated to consolidate the two actions and to maintain the status quo pending resolution of the mandamus action.

The Board determined that plaintiffs were "post acquisition tenants who had no knowledge the land was state owned, as defined in Government Code Section 7260(c)(1)" and decided that they were entitled to moving expenses only. Plaintiffs challenged the limitation of benefits by petition for writ of mandate in the Santa Cruz Superior Court seeking a determination that their status as displaced persons qualified them to be considered for additional benefits including last resort housing. While expressing doubt as to the Board's conclusion that plaintiffs were displaced persons within the meaning of the statute, the court, noting defendants'[FN3] concession as to that question, and deeming it equitable to do so, agreed with the Board's conclusion as to plaintiffs' status. The court denied, however, plaintiffs' claim to consideration for a money payment or last resort housing, finding instead that plaintiffs' entitlements were limited to moving expenses and advisory assistance. The court also dissolved the stay of prosecution of the unlawful detainer actions, effective October 1, 1987. Plaintiffs vacated the property on October 31, 1987.

> FN3 The defendants are W. J. Anthony, Director of the Department of General Services, and William Briner, Director of the Department of Parks and Recreation. These state agencies administer the subject property.

*Discussion*

As noted above, the Relocation Assistance Act facilitates the resettlement of residents of property who are displaced by a public entity's acquisition of the property for public use. The Department of Housing and Community *472 Development has been authorized to adopt guidelines to implement the act.[FN4] "The [Relocation Assistance] Act and the Guidelines are intended for the benefit of *displaced persons*, to ensure

that such persons receive fair and equitable treatment and do not suffer disproportionate injuries as the result of programs designed for the benefit of the public as a whole. The Act, Guidelines and all applicable regulations on which determinations are based shall be construed to effect this intent.# (Cal. Code Regs., tit. 25, § 6002, subd. (e), italics added.) (1) Further, the provisions of the Relocation Assistance Act are to be construed as a whole. ( *McKeon v. Hastings College* (1986) 185 Cal.App.3d 877, 896 [ 230 Cal.Rptr. 176], and cases cited therein.)

> FN4 The guidelines are included in chapter 6 of title 25 of the California Code of Regulations, commencing with section 6000. The guidelines were mandated by former section 7268. Although section 7268 was repealed in 1980, it was essentially reenacted as section 7267.8 and Health and Safety Code section 50460. (See Stats. 1980, ch. 1182, §§ 1-3, pp. 3959-3960.)

　　Pursuant to the act, after a tenant is designated a displaced person, that tenant is entitled to advisory assistance (§ 7261)[FN5] and moving expenses (§ 7262).[FN6] Noteworthy is the provision that advisory assistance includes *473 "assuring" that prior to displacement there will be available reasonably adequate replacement housing for the displaced person who needs it. (§ 7261, subd. (c)(3).)

> FN5 Section 7261 states: "(a) A public entity shall provide relocation advisory assistance to any person, business, or farm operation displaced because of the acquisition of real property for public use.
>
> "(b) In giving such assistance, the public entity may establish local relocation advisory assistance offices to assist in obtaining replacement facilities for persons, businesses, and farm operations which find that it is necessary to relocate because of the acquisition of real property by the public entity.
>
> "(c) Such advisory assistance shall include: [¶] (1) Determining the need, if any, of displaced persons for relocation assistance. [¶] (2) Providing current and continuing information on the availability, prices, and rentals of comparable decent, safe, and sanitary housing for displaced persons, and of comparable commercial properties and locations for displaced businesses. [¶] (3) Assuring that, within a reasonable period of time, prior to displacement, to the extent that it can be reasonably accomplished, there will be available in areas not generally less desirable in regard to public utilities and public and commercial facilities, and at rents or prices within the financial means of the families and individuals displaced, decent, safe, and sanitary dwellings, equal in number to the number of, and available to, such displaced persons who require such dwellings and reasonably accessible to their places of employment, except that, in the case of a federally funded project, a waiver may be obtained from the federal government. [¶] (4) Assisting a displaced person displaced from his business or farm operation in obtaining and becoming established in a suitable replacement location. [¶] (5) Supplying information concerning federal and state housing programs, disaster loan programs, and other federal or state programs offering assistance to displaced persons. [¶] (6) Providing other advisory services to displaced persons in order to minimize hardships to such persons.
>
> "(d) The public entity shall coordinate its relocation assistance program with the project work necessitating the displacement and with other planned or proposed activities of other public entities in the community or nearby areas which may affect the implementation of its relocation assistance program."

> FN6 Section 7262 states in relevant part: "(a) As a part of the cost of acquisition of real property for a public use, a public entity shall compensate a displaced person for his: [¶] (1) Actual and reasonable expense in moving himself, family, business, or farm operation, including moving personal property. …
>
> "(b) Any displaced person who moves from a dwelling who elects to accept payments authorized by this subdivision in lieu of the payments authorized by subdivision (a) shall receive a moving expense allowance, determined according to a schedule established by the public entity, not to exceed three hundred dollars ($300), and in addition a dislocation allowance of two hundred dollars ($200)."

In addition to advisory assistance and moving expenses, a displaced person may also be eligible to receive a money payment to enable the tenant to lease or rent or make a down payment on a comparable dwelling. (§ 7264.)[FN7] However, to be eligible for the latter benefit, a person must have occupied the property from which he or she is displaced at least 90 days prior to the initiation of negotiations for its acquisition. (*Ibid.*) Plaintiffs who are post-acquisition tenants without notice do not meet that residency requirement.

> FN7 Section 7264 provides as follows: "(a) In addition to the payments required by Section 7262 [moving expenses], as a part of the cost of acquisition, the public entity shall make a payment to any displaced person displaced from any dwelling not eligible to receive a payment under Section 7263 [payments to owners] which was actually and lawfully occupied by such person as a permanent or customary and usual place of abode for not less than 90 days prior to the initiation of negotiation by the public entity for the acquisition of such property. If a displaced person satisfies all but the 90-day requirement, and if in the judgment of the public entity the circumstances warrant it, the public entity may reduce the requirement as necessary. [¶] (b) Such payment, not to exceed four thousand dollars ($4,000), shall be the additional amount which is necessary to enable such person to lease or rent for a period not to exceed four years, or to make the down-payment on the purchase of, a decent, safe, and sanitary dwelling of standards adequate to accommodate such person in areas not generally less desirable in regard to public utilities and public and commercial facilities. [¶] (c) If the payment is to be used as a downpayment for the acquisition of a decent, safe, and sanitary dwelling of such standards, the payment shall not exceed two thousand dollars ($2,000), unless the amount in excess thereof is equally matched by such person."

In issue here is the provision that where comparable replacement housing is not and cannot be made available, the public entity itself shall provide such housing for any displaced person. Section 7264.5 provides in relevant part: "(a) If comparable replacement housing is not available and the public entity determines that comparable replacement housing cannot otherwise be made available, the public entity shall use funds authorized for the project for which the real property, or interest thereof, is being acquired to provide that housing. [¶] (b) No person shall be required to move from his dwelling because of its acquisition by a public entity, unless there is replacement housing, as described in paragraph (3) of subdivision (c) of Section 7261, available to him." ***474***

(2a) Defendants contend that section 7264.5 must be read as part of section 7264 and it is therefore limited by the same 90-day residency requirement. We disagree.[FN8]

> FN8 While no California court has expressly considered the eligibility of postacquisition tenants for section 7264.5 benefits, we note that, in *McKeon v. Hastings College, supra,* 185 Cal.App.3d 877, the court decided the eligibility of displaced persons regardless of their status as pre- or postacquisition tenants. In *McKeon*, the court reversed the judgment, holding the plaintiffs had not met their burden of proof regarding their need for replacement housing. (*Id.* at pp. 896-899.)

Sections 7264 and 7264.5 have different legislative histories, suggesting their treatment as interdependent provisions is not warranted. In 1971, the Legislature amended the relocation assistance law "to implement the 1970 federal enactment *and* to extend comparable benefits, statewide and payable by the state and its political subdivisions, to persons disaffected by any acquisition of land under the eminent domain law after July 1, 1972." (*City of Mountain View v. Superior Court* (1975) 54 Cal.App.3d 72, 78, italics in original.) This legislation included sections 7264.5 and 7261, subdivision (c)(3). (Stats. 1971, ch. 1574, § 6, p. 3159; § 2, p. 3155.)[FN9] In contrast, section 7264 was first added to the Government Code by Statutes 1969, chapter 1489, section 1, page 3043. In 1971, it received only minor revisions. (Stats. 1971, ch. 1574, § 5, p. 3158.) Section 7264 was also amended in 1977. (Stats. 1977, ch. 395, § 2, p. 1391.)

> FN9 42 United States Code section 4626 was nearly identical to section 7264.5, providing: "(a) If a Federal project cannot proceed to actual construction because comparable replacement sale or rental housing is not available, and the head of the Federal agency determines that such housing

cannot otherwise be made available he may take such action as is necessary or appropriate to provide such housing by use of funds authorized for such project. [¶] (b) No person shall be required to move from his dwelling on or after January 2, 1971, on account of any Federal project, unless the Federal agency head is satisfied that replacement housing, in accordance with section 4625(c)(3) of this title, is available to such person."

42 United States Code section 4625(c)(3) was nearly identical to section 7261, providing: "[The relocation assistance advisory program shall] assure that, within a reasonable period of time, prior to displacement there will be available in areas not generally less desirable in regard to public utilities and public and commercial facilities and at rents or prices within the financial means of the families and individuals displaced, decent, safe, and sanitary dwellings, as defined by such Federal agency head, equal in number to the number of and available to such displaced persons who require such dwellings and reasonably accessible to their places of employment, except that the head of that Federal agency may prescribe by regulation situations when such assurances may be waived."

Further, the guidelines implementing section 7260 et seq. do not purport to condition eligibility for last resort housing on a displaced person's residence prior to the government's acquisition of the property. California Code of Regulations, title 25, section 6054, subdivision (a) provides that "No eligible person shall be required to move from his dwelling because of the action of a public entity unless comparable replacement housing is available to him." Subdivision (b) of that same section requires that comparable *475 replacement housing "be available as required" before the project can proceed. While section 6104, subdivision (b), outlines eligibility requirements for *payments* for replacement housing, no such requirements are mentioned in connection with last resort housing. (Cal. Code Regs., tit. 25, §§ 6120-6138.) Thus, administrative construction of section 7264.5 also supports plaintiffs' position on their eligibility for benefits. ( *Industrial Indemnity Co.* v. *Workers' Comp. Appeals Bd.* (1985) 165 Cal.App.3d 633, 638 [211 Cal.Rptr. 683].)

Defendants contend interpretation of section 7264.5 independently from section 7264 renders the latter a nullity. They reason that if section 7264.5 is available to all displaced persons whether or not they satisfy the residency requirement, then one could simply ignore the residency requirement of section 7264 in order to receive maximum assistance. Defendants, however, misconceive the legislative scheme and the purpose of each section. By its express terms section 7264.5 applies only where no comparable replacement housing is available. Under those circumstances, all classes of displaced persons are entitled to last resort housing. Where comparable replacement housing is available, those who meet the residency requirement are also eligible for section 7264 payments.

Section 7264.5 implements the additional but basic legislative concern that the state shall not, through its exercise of eminent domain, render any person homeless. It is the Legislature's province to make such determinations. ( *Cavanaugh v. State of California* (1978) 85 Cal.App.3d 354, 358 [149 Cal.Rptr. 453].) (3) "Creation of judicial exceptions to statutes is frowned upon except as they may be necessary to avoid an absurd result." ( *Ibid.*) (2b) We thus interpret section 7264.5 literally to not include a residency requirement.

Our interpretation of section 7264.5 is further supported by that section's reference to the public entity's obligation under section 7261, subdivision (c)(3). "No person shall be required to move from his dwelling because of its acquisition by a public entity, unless there is replacement housing ...." (§ 7264.5, subd. (b).)

(4) Plaintiffs also contend the 1985-1986 negotiation between defendants and Bargiacchi for purchase of a three-acre portion of the leasehold and the improvements thereon constituted a new acquisition resulting in their displacement. Under this theory, plaintiffs contend they became preacquisition tenants and thus entitled to full benefits under the act, including payments to displaced tenants under section 7264. We find no merit to this contention. *476

As the court stated in *Stephens v. Perry* (1982) 134 Cal.App.3d 748, 755 [184 Cal.Rptr. 701], "Under the Guidelines, the plaintiffs are not displaced persons unless their displacement occurred as a *result* of the acquisition of the real property by a public entity for a public use or upon a written order to vacate the real property for public use. The Act is applicable to public entities such as the District only when there are persons displaced by the acquisition. It is the causal connection between the acquisition and the displacement which brings into play the provisions of the Act and the Guidelines." Here there was no acquisition of property by defendants as a result of the negotiations in question. The evidence establishes plaintiffs were evicted by Bargiacchi because their tenancies were in breach of the terms of the lease between defendants and

Bargiacchi.

The judgment is reversed and the matter remanded to the superior court for further proceedings consistent with the views expressed herein.

Cottle, J., and Elia, J., concurred.

Respondents' petition for review by the Supreme Court was denied August 30, 1989. *477

Cal.App.6.Dist.
Garcia v. Anthony
211 Cal.App.3d 467, 259 Cal.Rptr. 393

END OF DOCUMENT

(C) 2008 Thomson/West. No Claim to Orig. US Gov. Works.