# GOVERNMENT CODE
# SECTION 7260-7277

7260.  As used in this chapter:
   (a) "Public entity" includes the state, the Regents of the
University of California, a county, city, city and county, district,
public authority, public agency, and any other political subdivision
or public corporation in the state or any entity acting on behalf of
these agencies when acquiring real property, or any interest therein,
in any city or county for public use, and any person who has the
authority to acquire property by eminent domain under state law.
   (b) "Person" means any individual, partnership, corporation,
limited liability company, or association.
   (c) (1) "Displaced person" means both of the following:
   (A) Any person who moves from real property, or who moves his or
her personal property from real property, either:
   (i) As a direct result of a written notice of intent to acquire,
or the acquisition of, the real property, in whole or in part, for a
program or project undertaken by a public entity or by any person
having an agreement with, or acting on behalf of, a public entity.
   (ii) As a direct result of the rehabilitation, demolition, or
other displacing activity, as the public entity may prescribe under a
program or project undertaken by a public entity, of real property
on which the person is a residential tenant or conducts a business or
farm operation, if the public entity determines that the
displacement is permanent.  For purposes of this subparagraph,
"residential tenant" includes any occupant of a residential hotel
unit, as defined in subdivision (b) of Section 50669 of the Health
and Safety Code, and any occupant of employee housing, as defined in
Section 17008 of the Health and Safety Code, but does not include any
person who has been determined to be in unlawful occupancy of the
displacement dwelling.
   (B) Solely for the purposes of Sections 7261 and 7262, any person
who moves from real property, or moves his or her personal property
from real property, either:
   (i) As a direct result of a written notice of intent to acquire,
or the acquisition of, other real property, in whole or in part, on
which the person conducts a business or farm operation for a program
or project undertaken by a public entity.
   (ii) As a direct result of the rehabilitation, demolition, or
other displacing activity as the public entity may prescribe under a
program or project undertaken by a public entity, of other real
property on which the person conducts a business or farm operation,
in any case in which the public entity determines that the
displacement is permanent.
   (2) This subdivision shall be construed so that persons displaced
as a result of public action receive relocation benefits in cases
where they are displaced as a result of an owner participation
agreement or an acquisition carried out by a private person for, or
in connection with, a public use where the public entity is otherwise
empowered to acquire the property to carry out the public use.
   Except for persons or families of low and moderate income, as
defined in Section 50093 of the Health and Safety Code, who are
occupants of housing that was made available to them on a permanent
basis by a public agency and who are required to move from the
housing, a "displaced person" shall not include any of the following:

   (A) Any person who has been determined to be in unlawful occupancy
of the displacement dwellings.
   (B) Any person whose right of possession at the time of moving
arose after the date of the public entity's acquisition of the real
property.
   (C) Any person who has occupied the real property for the purpose

of obtaining assistance under this chapter.

   (D) In any case in which the public entity acquires property for a program or project (other than a person who was an occupant of the property at the time it was acquired), any person who occupies the property for a period subject to termination when the property is needed for the program or project.

   (d) "Business" means any lawful activity, except a farm operation, conducted for any of the following:

   (1) Primarily for the purchase, sale, lease, or rental of personal and real property, and for the manufacture, processing, or marketing of products, commodities, or any other personal property.

   (2) Primarily for the sale of services to the public.

   (3) Primarily by a nonprofit organization.

   (4) Solely for the purpose of Section 7262 for assisting in the purchase, sale, resale, manufacture, processing, or marketing of products, commodities, personal property, or services by the erection and maintenance of an outdoor advertising display, whether or not the display is located on the premises on which any of the above activities are conducted.

   (e) "Farm operation" means any activity conducted solely or primarily for the production of one or more agricultural products or commodities, including timber, for sale or home use, and customarily producing these products or commodities in sufficient quantity to be capable of contributing materially to the operator's support.

   (f) "Affected property" means any real property that actually declines in fair market value because of acquisition by a public entity for public use of other real property and a change in the use of the real property acquired by the public entity.

   (g) "Public use" means a use for which real property may be acquired by eminent domain.

   (h) "Mortgage" means classes of liens that are commonly given to secure advances on, or the unpaid purchase price of, real property, together with the credit instruments, if any, secured thereby.

   (i) "Comparable replacement dwelling" means any dwelling that is all of the following:

   (1) Decent, safe, and sanitary.

   (2) Adequate in size to accommodate the occupants.

   (3) In the case of a displaced person who is a renter, within the financial means of the displaced person.  A comparable replacement dwelling is within the financial means of a displaced person if the monthly rental cost of the dwelling, including estimated average monthly utility costs, minus any replacement housing payment available to the person, does not exceed 30 percent of the person's average monthly income, unless the displaced person meets one or more of the following conditions, in which case the payment of the monthly rental cost of the comparable replacement dwelling, including estimated average monthly utility costs, minus any replacement housing payment available to the person, shall not exceed 25 percent of the person's average monthly income:

   (A) Prior to January 1, 1998, the displaced person received a notice to vacate from a public entity, or from a person having an agreement with a public entity.

   (B) The displaced person resides on property that was acquired by a public entity, or by a person having an agreement with a public entity, prior to January 1, 1998.

   (C) Prior to January 1, 1998, a public entity, or a person having an agreement with a public entity, initiated negotiations to acquire the property on which the displaced person resides.

   (D) Prior to January 1, 1998, a public entity, or a person having an agreement with a public entity, entered into an agreement to acquire the property on which the displaced person resides.

   (E) Prior to January 1, 1998, a public entity, or a person having an agreement with a public entity, gave written notice of intent to acquire the property on which the displaced person resides.

   (F) The displaced person is covered by, or resides in an area or project covered by, a final relocation plan that was adopted by the legislative body prior to January 1, 1998, pursuant to this chapter and the regulations adopted pursuant to this chapter.

   (G) The displaced person is covered by, or resides in an area or project covered by, a proposed relocation plan that was required to have been submitted prior to January 1, 1998, to the Department of Housing and Community Development or to a local relocation committee, or for which notice was required to have been provided to occupants of the property prior to January 1, 1998, pursuant to this chapter and the regulations adopted pursuant to this chapter.

   (H) The displaced person is covered by, or resides in an area or project covered by, a proposed relocation plan that was submitted prior to January 1, 1998, to the Department of Housing and Community Development or to a local relocation committee, or for which notice was provided to the public or to occupants of the property prior to January 1, 1998, pursuant to this chapter and the regulations adopted pursuant to this chapter, and the person is eventually displaced by the project covered in the proposed relocation plan.

   (I) The displaced person resides on property for which a contract for acquisition, rehabilitation, demolition, construction, or other displacing activity was entered into by a public entity, or by a person having an agreement with a public entity, prior to January 1998.

   (J) The displaced person resides on property where an owner participation agreement, or other agreement between a public entity and a private party that will result in the acquisition, rehabilitation, demolition, or development of the property or other displacement, was entered into prior to January 1, 1998, and the displaced person resides in the property at the time of the agreement, provides information to the public entity, or person having an agreement with the public entity showing that he or she did reside in the property at the time of the agreement and is eventually displaced by the project covered in the agreement.

   (4) Comparable with respect to the number of rooms, habitable space, and type and quality of construction. Comparability under this paragraph shall not require strict adherence to a detailed, feature-by-feature comparison. While a comparable replacement dwelling need not possess every feature of the displacement dwelling, the principal features shall be present.

   (5) In an area not subject to unreasonable adverse environmental conditions.

   (6) In a location generally not less desirable than the location of the displaced person's dwelling with respect to public utilities, facilities, services, and the displaced person's place of employment.

   (j) "Displacing agency" means any public entity or person carrying out a program or project which causes a person to be a displaced person for a public project.

   (k) "Appraisal" means a written statement independently and impartially prepared by a qualified appraiser setting forth an opinion of defined value of an adequately described property as of a specific date, supported by the presentation and analysis of relevant market information.

   (l) "Small business" means a business as defined in Part 24 of Title 49 of the Code of Federal Regulations.

   (m) "Lead agency" means the Department of Housing and Community Development.


7260.5. (a) The Legislature finds and declares the following:
   (1) Displacement as a direct result of programs or projects undertaken by a public entity is caused by a number of activities, including rehabilitation, demolition, code enforcement, and acquisition.

   (2) Relocation assistance policies must provide for fair, uniform, and equitable treatment of all affected persons.

   (3) The displacement of businesses often results in their closure.

   (4) Minimizing the adverse impact of displacement is essential to maintaining the economic and social well-being of communities.

   (5) Implementation of this chapter has resulted in burdensome,

inefficient, and inconsistent compliance requirements and procedures which may be improved by establishing a lead agency.

(b) This chapter establishes a uniform policy for the fair and equitable treatment of persons displaced as a direct result of programs or projects undertaken by a public entity. The primary purpose of this chapter is to ensure that these persons shall not suffer disproportionate injuries as a result of programs and projects designed for the benefit of the public as a whole and to minimize the hardship of displacement on these persons.

(c) The Legislature intends all of the following:

(1) Public entities shall carry out this chapter in a manner which minimizes waste, fraud, and mismanagement and reduces unnecessary administrative costs.

(2) Uniform procedures for the administration of relocation assistance shall, to the maximum extent feasible, assure that the unique circumstances of any displaced person are taken into account and that persons in essentially similar circumstances are accorded equal treatment under this chapter.

(3) The improvement of housing conditions of economically disadvantaged persons under this chapter shall be undertaken, to the maximum extent feasible, in coordination with existing federal, state, and local government programs for accomplishing these goals.

(4) The policies and procedures of this chapter shall be administered in a manner which is consistent with fair housing requirements and which assures all persons their rights under Title VIII of that act of April 11, 1968 (Public Law 90-284), commonly known as the Civil Rights Act of 1968 and Title VI of the Civil Rights Act of 1964.


7260.7. Notwithstanding any other provision of law, in furtherance of the goal set forth in paragraph (3) of subdivision (c) of Section 7260.5, nonprofit facilities subsidized pursuant to any federal or state program for the benefit of low-income tenants that restrict rent increases based on operating cost increases, and that also receive state funds for renovation and rehabilitation involving the temporary relocation of those tenants, shall be exempt from any restrictions on rents imposed pursuant to this chapter.


7261. (a) Programs or projects undertaken by a public entity shall be planned in a manner that (1) recognizes, at an early stage in the planning of the programs or projects and before the commencement of any actions which will cause displacements, the problems associated with the displacement of individuals, families, businesses, and farm operations, and (2) provides for the resolution of these problems in order to minimize adverse impacts on displaced persons and to expedite program or project advancement and completion. The head of the displacing agency shall ensure the relocation assistance advisory services described in subdivision (c) are made available to all persons displaced by the public entity. If the agency determines that any person occupying property immediately adjacent to the property where the displacing activity occurs is caused substantial economic injury as a result thereof, the agency may make the advisory services available to the person.

(b) In giving this assistance, the public entity may establish local relocation advisory assistance offices to assist in obtaining replacement facilities for persons, businesses, and farm operations which find that it is necessary to relocate because of the acquisition of real property by the public entity.

(c) This advisory assistance shall include those measures, facilities, or services which are necessary or appropriate to do all of the following:

(1) Determine and make timely recommendations on the needs and preferences, if any, of displaced persons for relocation assistance.

   (2) Provide current and continuing information on the
availability, sales prices, and rentals of comparable replacement
dwellings for displaced homeowners and tenants, and suitable
locations for businesses and farm operations.
   (3) Assure that, within a reasonable time period prior to
displacement, to the extent that it can be reasonably accomplished,
there will be available in areas not generally less desirable in
regard to public utilities and public and commercial facilities, and
at rents or prices within the financial means of displaced families
and individuals, decent, safe, and sanitary dwellings, sufficient in
number to meet the needs of, and available to, those displaced
persons requiring those dwellings and reasonably accessible to their
places of employment, except that, in the case of a federally funded
project, a waiver may be obtained from the federal government.
   (4) Assure that a person shall not be required to move from a
dwelling unless the person has had a reasonable opportunity to
relocate to a comparable replacement dwelling, except in the case of
any of the following:
   (A) A major disaster as defined in Section 102(2) of the federal
Disaster Relief Act of 1974.
   (B) A state of emergency declared by the President or Governor.
   (C) Any other emergency which requires the person to move
immediately from the dwelling because continued occupancy of the
dwelling by the person constitutes a substantial danger to the health
or safety of the person.
   (5) Assist a person displaced from a business or farm operation in
obtaining and becoming established in a suitable replacement
location.
   (6) Supply information concerning other federal and state programs
which may be of assistance to those persons in applying for
assistance under the program.
   (7) Provide other advisory services to displaced persons in order
to minimize hardships to those persons.
   (d) The head of the displacing agency shall coordinate its
relocation assistance program with the project work necessitating the
displacement and with other planned or proposed activities of other
public entities in the community or nearby areas which may affect the
implementation of its relocation assistance program.
   (e) Notwithstanding subdivision (c) of Section 7260, in any case
in which a displacing agency acquires property for a program or
project, any person who occupies the property on a rental basis for a
short term or a period subject to termination when the property is
needed for the program or project, shall be eligible for advisory
services to the extent determined by the displacing agency.


7261.5.  In order to prevent unnecessary expenses and duplications
of functions, and to promote uniform and effective administration of
relocation assistance programs for displaced persons under this
chapter, a public entity may enter into a contract with any
individual, firm, association, or corporation for services in
connection with such program, or may carry out its functions under
this chapter through any federal, state, or local governmental agency
having an established organization for conducting relocation
assistance programs.  Any public entity may, in carrying out its
relocation assistance activities, utilize the services of state or
local housing agencies or other agencies having experience in the
administration or conduct of similar housing assistance activities.


7262.  (a) Whenever a program or project to be undertaken by a
public entity will result in the displacement of any person, the
displaced person is entitled to payment for actual moving and related
expenses as the public entity determines to be reasonable and
necessary, including expenses for all of the following:
   (1) Actual and reasonable expenses in moving himself or herself,

his or her family, business, or farm operation, or his or her, or his or her family's, personal property.

(2) Actual direct losses of tangible personal property as a result of moving or discontinuing a business or farm operation, but not to exceed an amount equal to the reasonable expenses that would have been required to relocate the property, as determined by the public entity.

(3) Actual and reasonable expenses in searching for a replacement business or farm, not to exceed one thousand dollars ($1,000).

(4) Actual and reasonable expenses necessary to reestablish a displaced farm, nonprofit organization, or small business at its new site, but not to exceed ten thousand dollars ($10,000).

(b) Any displaced person eligible for payments under subdivision (a) who is displaced from a dwelling and who elects to accept the payments authorized by this subdivision in lieu of the payments authorized by subdivision (a) shall receive a moving expense and dislocation allowance which shall be determined according to a schedule established by the head of the lead agency. The schedule shall be consistent with the Residential Moving Expense and Dislocation Allowance Payment Schedule established by Part 24 of Title 49 of the Code of Federal Regulations.

(c) Any displaced person who moves or discontinues his or her business or farm operation and elects to accept the payment authorized by this subdivision in lieu of the payment authorized by subdivision (a), shall receive a fixed relocation payment in an amount equal to the average annual net earnings of the business or farm operation, except that the payment shall not be less than one thousand dollars ($1,000) nor more than twenty thousand dollars ($20,000). In the case of a business, no payment shall be made under this subdivision, unless the public entity is satisfied that the business cannot be relocated without substantial loss of patronage and is not part of a commercial enterprise having at least one other establishment not being acquired, engaged in the same or similar business. For purposes of this subdivision, the term "average annual net earnings" means one-half of any net earnings of the business or farm operation before federal, state, and local income taxes during the two taxable years immediately preceding the taxable year in which the business or farm operation moves from the real property being acquired, or during any other period as the public entity determines to be more equitable for establishing earnings, and includes any compensation paid by the business or farm operation to the owner, his or her spouse, or his or her dependents during the two-year or other period. To be eligible for the payment authorized by this subdivision, the business or farm operation shall make available its state income tax records, financial statements, and accounting records, for confidential use pursuant to an audit to determine the payment pursuant to this subdivision. In regard to an outdoor advertising display, payment pursuant to this subdivision shall be limited to the amount necessary to physically move, or replace that display. Any displaced person eligible for payments under subdivision (a) who is displaced from the person's place of business or farm operation and who is eligible under criteria established by the public entity, may elect to accept a fixed payment in lieu of the payment authorized by subdivision (a). The fixed payment shall not be less than one thousand dollars ($1,000) nor more than twenty thousand dollars ($20,000). A person whose sole business at the displacement dwelling is the rental of the property to others shall not qualify for a payment under this subdivision.

(d) Whenever the acquisition of real property used for a business or farm operation causes the person conducting the business or farm operation to move from other real property, or to move his or her personal property from other real property, the person shall receive payments for moving and related expenses under subdivision (a) or (b) and relocation advisory assistance under Section 7261 for moving from the other property.

(e) Whenever a public entity must pay the cost of moving a displaced person under paragraph (1) of subdivision (a), or subdivision (d):

　　(1) The costs of the move shall be exempt from regulation by the
Public Utilities Commission.
　　(2) The public entity may solicit competitive bids from qualified
bidders for performance of the work.  Bids submitted in response to
the solicitations shall be exempt from regulation by the Public
Utilities Commission.
　　(f) No provision of this chapter shall be construed to require a
public entity to provide any relocation assistance to a lessee if the
property acquired for a program or project is subject to a lease for
purposes of conducting farm operations and the public entity agrees
to assume all of the terms of that lease.


7262.5.  Notwithstanding Section 7265.3 or any other provision of
law, tenants residing in any rental project who are displaced from
the project for a period of one year or less as part of a
rehabilitation of that project, that is funded in whole or in part by
a public entity, shall not be eligible for permanent housing
assistance benefits pursuant to Sections 7264 and 7264.5 if all of
the following criteria are satisfied:
　　(a) The project is a "qualified affordable housing preservation
project," which means any complex of two or more units whose owners
enter into a recorded regulatory agreement, having a term for the
useful life of the project, with any entity for the provision of
project rehabilitation financing.  For this purpose, the regulatory
agreement shall require of the owner and all successors and assigns
of the owner, as long as the regulatory agreement is in effect, that
at least 49 percent of the tenants in the project have, at the time
of the recordation of the regulatory agreement, incomes not in excess
of 60 percent of the area median income, adjusted by household size,
as determined by the appropriate agency of the state.  In addition,
a project is a qualified affordable housing preservation project only
if the beneficiary of the regulatory agreement elects this
designation by so indicating on the regulatory agreement.
　　(b) The resident is offered the right to return to his or her
original unit, or a comparable unit in the same complex if his or her
original unit is not otherwise available due to the rehabilitation,
with rent for the first 12 months subsequent to that return being the
lower of the following: up to 5 percent higher than the rent at the
time of displacement; or up to 30 percent of household income.
　　(c) The estimated time of displacement is reasonable, and the
temporary unit is not unreasonably impacted by the effects of the
construction, taking into consideration the ages and physical
conditions of the members of the displaced household.
　　(d) All other financial benefits and services otherwise required
under this chapter are provided to the residents temporarily
displaced from their units, including relocation to a comparable
replacement unit.  Residents shall be temporarily relocated to a unit
within the same complex, or to a unit located reasonably near the
complex if that unit is in a location generally not less desirable
than the location of the displaced person's dwelling with respect to
public utilities, services, and the displaced person's place of
employment.


7263.  (a) In addition to the payments required by Section 7262, the
public entity, as a part of the cost of acquisition, shall make a
payment to the owner of real property acquired for public use which
is improved with a dwelling actually owned and occupied by the owner
as a permanent or customary and usual place of abode for not less
than 180 days prior to the initiation of negotiation for the
acquisition of that property.
　　(b) The payment, not to exceed twenty-two thousand five hundred
dollars ($22,500), shall be based on the following factors:
　　(1) The amount, if any, which, when added to the acquisition  cost
of the dwelling acquired by the public entity equals the reasonable

cost of a comparable replacement dwelling.

   (2) The amount, if any, which will compensate the displaced owner for any increased interest costs which the owner is required to pay for financing the acquisition of a comparable replacement dwelling. The amount shall be paid only if the dwelling acquired by the displacing agency was encumbered by a bona fide mortgage which was a valid lien on the dwelling for not less than 180 days immediately prior to the initiation of negotiations for the acquisition of the dwelling. All of the mortgages on the acquired dwelling shall be used to compute the payment. The amount shall be computed using the lesser of the principal balance of the mortgage on the replacement dwelling or the outstanding principal balance of the mortgage on the acquired dwelling and the lesser of the remaining term on the acquired dwelling or the actual term of the new mortgage. The present value of the increased interest costs shall be computed based on the lesser of the prevailing interest rate or the actual interest rate on the replacement property. The amount shall also include other reasonable debt service costs incurred by the displaced owner.

   For the purposes of this subdivision, if the replacement dwelling is a mobilehome, the term "mortgage," as defined in subdivision (h) of Section 7260, shall include those liens as are commonly given to secure advances on, or the unpaid purchase price of, mobilehomes, together with the credit instruments, if any, secured thereby.

   (3) Reasonable expenses incurred by the displaced owner for evidence of title, recording fees, and other closing costs incident to the purchase of the replacement dwelling, but not including prepaid expenses.

   (c) The additional payment authorized by this section shall be made only to a displaced owner who purchases and occupies a decent, safe, and sanitary replacement dwelling within one year from the later of the following:

   (1) The date the displaced person receives final payment for the displacement dwelling, or in the case of condemnation, the date the full amount of estimated just compensation is deposited in court.

   (2) The date the displacing agency fulfulls its obligation to make available at least one comparable replacement dwelling to the displaced person.

   However, the displacing agency may extend the period for good cause. Also, the displaced owner and the public entity may agree in writing that the displaced owner may remain in occupancy of the acquired dwelling as a tenant of the public entity on the conditions that the displaced owner shall only be entitled to the payment authorized by this section on the date on which the owner moves from the acquired dwelling and that the payment shall be in an amount equal to that to which the owner would have been entitled if the owner had purchased and occupied a replacement dwelling one year subsequent to the date on which final payment was received for the acquired dwelling from the public entity.

   (d) In implementing this chapter, it is the intent of the Legislature that special consideration be given to the financing and location of a comparable replacement dwelling for displaced persons 62 years of age or older.


7263.5. For purposes of Section 7263, the leasing of a condominium for a 99-year period, or for a term which exceeds the life expectancy of the displaced person as determined from the most recent life tables in Vital Statistics of the United States, as published by the Public Health Service of the Department of Health, Education, and Welfare, shall be deemed a purchase of the condominium.


7264. (a) In addition to the payments required by Section 7262, as a part of the cost of acquisition, the public entity shall make a payment to any displaced person displaced from any dwelling not

eligible to receive a payment under Section 7263 which was actually and lawfully occupied by the person as a permanent or customary and usual place of abode for not less than 90 days prior to the initiation of negotiation by the public entity for the acquisition of the dwelling, or in any case in which displacement is not a direct result of acquisition, or any other event which the public entity shall prescribe.

  (b) The payment, not to exceed five thousand two hundred fifty dollars ($5,250), shall be the additional amount which is necessary to enable the person to lease or rent a comparable replacement dwelling for a period not to exceed 42 months, unless the displaced person meets one or more of the conditions set forth in paragraph (3) of subdivision (i) of Section 7260, in which case the payment, which shall not exceed five thousand two hundred fifty dollars ($5,250), shall be the additional amount which is necessary to enable the person to lease or rent a comparable replacement dwelling for a period not to exceed 48 months.  However, publicly funded transportation projects shall make payments enabling the person to lease or rent a comparable replacement dwelling for a period not to exceed 42 months, including compensation for utilities, as provided in subdivision (b) of Section 24.402 of Part 24 of Title 49 of the Code of Federal Regulations.  Payments up to the maximum of five thousand two hundred fifty dollars ($5,250) shall be made in a lump sum.  Should an agency pay pursuant to Section 7264.5 an amount exceeding the maximum amount, payment may be made periodically. Computation of a payment under this subdivision to a low-income displaced person for a comparable replacement dwelling shall take into account the person's income.

  (c) Any person eligible for a payment under subdivision (a) may elect to apply the payment to a downpayment on, and other incidental expenses pursuant to, the purchase of a decent, safe, and sanitary replacement dwelling.  The person may, at the discretion of the public entity, be eligible under this subdivision for the maximum payment allowed under subdivision (b), except that, in the case of a displaced homeowner who has owned and occupied the displacement dwelling for at least 90 days but not more than 180 days immediately prior to the initiation of negotiations for the acquisition of the dwelling, the payment shall not exceed the payment which the person would otherwise have received under subdivision (b) of Section 7263 had the person owned and occupied the displacement dwelling 180 days immediately prior to the initiation of the negotiations.

  (d) In implementing this chapter, it is the intent of the Legislature that special consideration shall be given to assisting any displaced person 62 years of age or older to locate or lease or rent a comparable replacement dwelling.


7264.5.  (a) If a program or project undertaken by the public entity cannot proceed on a timely basis because comparable replacement housing is not available and the public entity determines that comparable replacement housing cannot otherwise be made available, the public entity shall take any action necessary or appropriate to provide the dwellings by use of funds authorized for the project. This section shall be construed to authorize the public entity to exceed the maximum amounts which may be paid under Sections 7263 and 7264 on a case-by-case basis for good cause as determined in accordance with rules and regulations adopted by the public entity. Where a displacing agency is undertaking a project with funds administered by a state agency or board, and where the displacing agency has adopted rules and regulations in accordance with Section 7267.8 for the implementation of this chapter, the determination of payments to be made pursuant to this subdivision shall be pursuant to those rules and regulations.

  (b) No person shall be required to move from his or her dwelling because of its acquisition by a public entity, unless comparable replacement housing is available to the person.

  (c) For purposes of determining the applicability of subdivision

(a), the public entity is hereby designated as a duly authorized
administrative body of the state for the purposes of subdivision (c)
of Section 408 of the Revenue and Taxation Code.
   (d) Subdivision (b) shall not apply to a displaced owner who
agrees in writing with the public entity to remain in occupancy of
the acquired dwelling as provided in subdivision (c) of Section 7263.


7265.  (a) In addition to the payments required by Section 7262, as
a cost of acquisition, the public entity shall make a payment to any
affected property owner meeting the requirements of this section.
   (b) The affected property shall be immediately contiguous to
property acquired for airport purposes and the owner shall have owned
the property affected by acquisition by the public entity not less
than 180 days prior to the initiation of negotiation for acquisition
of the acquired property.
   (c) The payment, not to exceed twenty-two thousand five hundred
dollars ($22,500), shall be the amount, if any, which equals the
actual decline in the fair market value of the property of the
affected property owner caused by the acquisition by the public
entity for airport purposes of other real property and a change in
the use of the property.
   (d) The amount, if any, of actual decline in fair market value of
affected property shall be determined according to rules and
regulations adopted by the public entity pursuant to this chapter.
The rules and regulations shall limit payment under this section only
to those circumstances in which the decline in fair market value of
affected property is reasonably related to objective physical change
in the use of acquired property.


7265.3.  (a) A public entity may make payments in the amounts it
deems appropriate, and may provide advisory assistance under this
chapter, to a person who moves from a dwelling, or who moves or
discontinues his business, as a result of impending rehabilitation or
demolition of a residential or commercial structure, or enforcement
of building, housing, or health codes by a public entity, or because
of systematic enforcement pursuant to Section 37924.5 of the Health
and Safety Code, or who moves from a dwelling or who moves or
discontinues a business as a result of a rehabilitation or demolition
program or enforcement of building codes by the public entity, or
because of increased rents to result from such rehabilitation or code
enforcement.  Payments prescribed by subdivision (b) of Section 7264
may also be made to persons who remain in a dwelling during
rehabilitation.  Payments authorized by this section and made
pursuant to subdivision (b) of Section 7264 may, at the option of the
public entity, be computed and reviewed annually based on actual
rental increases, and may be paid monthly or annually.  A public
entity may also give priority to a person who moves from a dwelling,
or who remains in a dwelling during rehabilitation, in utilization of
local, state, or federal rental assistance programs, either to
enable the person to pay increased rents or to move to other suitable
housing.
   A public entity assisting in the financing of rehabilitation may
provide some or all of the payments authorized by this section as
part of the loan for rehabilitation costs, provided that the public
entity makes payments directly to the person who moves or who remains
in the dwelling during rehabilitation.
   (b) A public entity shall make payments in the amounts prescribed
by this chapter, and shall provide advisory assistance under this
chapter, to persons and families of low or moderate income, as
defined in Section 50093 of the Health and Safety Code, whose rent,
within one year after the rehabilitation of their dwelling is
completed, is increased to an amount exceeding 25 percent of their
gross income, or who move from their dwelling, as the result of a
rehabilitation program in which the rehabilitation work is wholly or

partially financed or assisted with public funds provided by or through the public entity.

(c) A public entity shall provide temporary housing for up to 90 days to persons displaced by rehabilitation work which is wholly or partially financed or assisted with public funds provided by or through the public entity.

(d) A person displaced by rehabilitation work which is wholly or partially financed or assisted with public funds provided by or through the public entity shall, as a condition of the financing or assistance, be given the option of relocating, after rehabilitation, in the dwelling from which the person was displaced.

(e) A public entity may limit the amounts of payments made pursuant to subdivision (b), otherwise calculated pursuant to subdivision (b) of Section 7264, to the lesser of: (i) the difference between the increased rent and 25 percent of gross income; or (ii) the difference between the increased rent and the rent immediately before the rehabilitation which was greater than 25 percent of gross income.

(f) The payments and advisory assistance as required in this section shall be mandatory only if federal or state funds are available. However, nothing shall preclude the public entity from using local funds.


7265.4. In addition to the payments required by Section 7262, as a cost of acquisition, the public entity, as soon as practicable after the date of payment of the purchase price or the date of deposit in court of funds to satisfy the award of compensation in a condemnation proceeding to acquire real property, whichever is the earlier, shall reimburse the owner, to the extent the public entity deems fair and reasonable, for expenses the owner necessarily incurred for recording fees, transfer taxes, and similar expenses incidental to conveying such real property to the public entity.


7266. (a) If a relocation appeals board has been established pursuant to Section 33417.5 of the Health and Safety Code, a city by ordinance may designate the board to hear appeals from all public entities, except those state agencies which have an appeal process, on the eligibility for, or the amount of, a payment authorized by this chapter.

(b) Any person aggrieved by a determination as to eligibility for, or the amount of, a payment authorized by this chapter may have the application reviewed by the public entity or by the relocation appeals board if authorized under subdivision (a). The review of a determination by a community redevelopment agency may only be made by a relocation appeals board established pursuant to Section 33417.5 of the Health and Safety Code.


7267. In order to encourage and expedite the acquisition of real property by agreements with owners, to avoid litigation and relieve congestion in the courts, to assure consistent treatment for owners in the public programs, and to promote public confidence in public land acquisition practices, public entities shall, to the greatest extent practicable, be guided by the provisions of Sections 7267.1 to 7267.7, inclusive, except that the provisions of subdivision (b) of Section 7267.1 and Section 7267.2 shall not apply to the acquisition of any easement, right-of-way, covenant, or other nonpossessory interest in real property to be acquired for the construction, reconstruction, alteration, enlargement, maintenance, renewal, repair, or replacement of subsurface sewers, waterlines or appurtenances, drains, septic tanks, or storm water drains.

7267.1.  (a) The public entity shall make every reasonable effort to acquire expeditiously real property by negotiation.
   (b) Real property shall be appraised before the initiation of negotiations, and the owner, or the owner's designated representative, shall be given an opportunity to accompany the appraiser during his or her inspection of the property.  However, the public entity may prescribe a procedure to waive the appraisal in cases involving the acquisition by sale or donation of property with a low fair market value.


7267.2.  (a) (1) Prior to adopting a resolution of necessity pursuant to Section 1245.230 of the Code of Civil Procedure and initiating negotiations for the acquisition of real property, the public entity shall establish an amount which it believes to be just compensation therefor, and shall make an offer to the owner or owners of record to acquire the property for the full amount so established, unless the owner cannot be located with reasonable diligence. The offer may be conditioned upon the legislative body's ratification of the offer by execution of a contract of acquisition or adoption of a resolution of necessity or both. In no event shall the amount be less than the public entity's approved appraisal of the fair market value of the property. Any decrease or increase in the fair market value of real property to be acquired prior to the date of valuation caused by the public improvement for which the property is acquired, or by the likelihood that the property would be acquired for the improvement, other than that due to physical deterioration within the reasonable control of the owner or occupant, shall be disregarded in determining the compensation for the property.
   (2) At the time of making the offer described in paragraph (1), the public entity shall provide the property owner with an informational pamphlet detailing the process of eminent domain and the property owner's rights under the Eminent Domain Law.
   (b) The public entity shall provide the owner of real property to be acquired with a written statement of, and summary of the basis for, the amount it established as just compensation. The written statement and summary shall contain detail sufficient to indicate clearly the basis for the offer, including, but not limited to, all of the following information:
   (1) The date of valuation, highest and best use, and applicable zoning of property.
   (2) The principal transactions, reproduction or replacement cost analysis, or capitalization analysis, supporting the determination of value.
   (3) Where appropriate, the just compensation for the real property acquired and for damages to remaining real property shall be separately stated and shall include the calculations and narrative explanation supporting the compensation, including any offsetting benefits.
   (c) Where the property involved is owner occupied residential property and contains no more than four residential units, the homeowner shall, upon request, be allowed to review a copy of the appraisal upon which the offer is based. The public entity may, but is not required to, satisfy the written statement, summary, and review requirements of this section by providing the owner a copy of the appraisal on which the offer is based.
   (d) Notwithstanding subdivision (a), a public entity may make an offer to the owner or owners of record to acquire real property for less than an amount which it believes to be just compensation therefor if (1) the real property is offered for sale by the owner at a specified price less than the amount the public entity believes to be just compensation therefor, (2) the public entity offers a price which is equal to the specified price for which the property is being offered by the landowner, and (3) no federal funds are involved in the acquisition, construction, or project development.
   (e) As used in subdivision (d), "offered for sale" means any of the following:
   (1) Directly offered by the landowner to the public entity for a

specified price in advance of negotiations by the public entity.
   (2) Offered for sale to the general public at an advertised or published, specified price set no more than six months prior to and still available at the time the public entity initiates contact with the landowner regarding the public entity's possible acquisition of the property.


7267.3. The construction or development of a public improvement shall be so scheduled that, to the greatest extent practicable, no person lawfully occupying real property shall be required to move from a dwelling, assuming a replacement dwelling will be available, or to move his business or farm operation, without at least 90 days' written notice from the public entity of the date by which such move is required.


7267.4. If the public entity permits an owner or tenant to occupy the real property acquired on a rental basis for a short term, or for a period subject to termination by the public entity on short notice, the amount of rent required shall not exceed the fair rental value of the property to a short-term occupier.


7267.5. In no event shall the public entity either advance the time of condemnation, or defer negotiations or condemnation and the deposit of funds in court for the use of the owner, or take any other action coercive in nature, in order to compel an agreement on the price to be paid for the property.


7267.6. If any interest in real property is to be acquired by exercise of the power of eminent domain, the public entity shall institute formal condemnation proceedings. No public entity shall intentionally make it necessary for an owner to institute legal proceedings to prove the fact of the taking of his real property.


7267.7. (a) If the acquisition of only a portion of a property would leave the remaining portion in such a shape or condition as to constitute an uneconomic remnant, the public entity shall offer to acquire the entire property if the owner so desires.
   (b) A person whose real property is being acquired in accordance with this chapter may, after the person has been fully informed of his or her right to receive just compensation for the property, donate the property, any part thereof, any interest therein, or any compensation paid therefor to a public entity determined by the person.


7267.8. (a) All public entities shall adopt rules and regulations to implement payments and to administer relocation assistance under this chapter. These rules and regulations shall be in accordance with the rules and regulations adopted by the Department of Housing and Community Development.
   (b) Notwithstanding subdivision (a), with respect to a federally funded project, a public entity shall make relocation assistance payments and provide relocation advisory assistance as required under federal law.

7267.9.  (a) Prior to the initiation of negotiations for acquisition by a public entity or public utility of nonprofit, special use property, as defined by Section 1235.155 of the Code of Civil Procedure, the acquiring public entity or public utility shall make every reasonable effort to seek alternative property which is other than nonprofit, special use property.  However, this requirement shall not apply to properties acquired by public entities for transportation purposes, including, but not limited to, the construction, expansion, or improvement of streets, highways, or railways.
   (b) This section does not apply to actions or proceedings commenced by a public entity or public utility to acquire real property or any interest in real property for the use of water, sewer, electricity, telephone, natural gas, or flood control facilities or rights-of-way where those acquisitions neither require removal or destruction of existing improvements, nor render the property unfit for the owner's present or proposed use.


7269.  (a) No payment received by any person under this chapter or as tenant relocation assistance required by any state statute or local ordinance shall be considered as income for the purposes of the Personal Income Tax Law, Part 10 (commencing with Section 17001) of Division 2 of the Revenue and Taxation Code, or the Bank and Corporation Tax Law, Part 11 (commencing with Section 23001) of Division 2 of the Revenue and Taxation Code.
   (b) No payment received by any person under this chapter shall be considered as income or resources to any recipient of public assistance and such payments shall not be deducted from the amount of aid to which the recipient would otherwise be entitled under any other provisions of law.


7269.1.  Where a recipient of relocation benefits payments under federal or state law is also a general assistance recipient under Part 5 (commencing with Section 17000) of Division 9 of the Welfare and Institutions Code and two or more rent schedules apply to the recipient, the highest shall prevail and any excess amount over lower rent schedule shall not be counted as income or resources for general assistance purposes under Part 5 (commencing with Section 17000) of Division 9 of the Welfare and Institutions Code.


7270.  Nothing contained in this chapter shall be construed as creating in any condemnation proceedings brought under the power of eminent domain any element of damages not in existence on the date of enactment of this chapter.


7271.  If any provision of this chapter or the application thereof to any person or circumstances is held invalid, such invalidity shall not affect other provisions or applications of this chapter which can be given effect without the invalid provision or application, and to this end the provisions of this chapter are severable.


7272.  If under any other provision of law of this state the owner or occupant of real property acquired by a public entity for public use is given greater protection than is provided by Sections 7265.3 to 7267.8, inclusive, the public entity shall also comply with such other provision of law.

7272.3.  It is the intent of the Legislature, by this chapter, to establish minimum requirements for relocation assistance payments by public entities.  This chapter shall not be construed to limit any other authority which a public entity may have to make other relocation assistance payments, or to make any relocation assistance payment in an amount which exceeds the maximum amount for such payment authorized by this chapter.
   Any public entity may, also, make any other relocation assistance payment, or may make any relocation assistance payment in an amount which exceeds the maximum amount for such payment authorized by this chapter, if the making of such payment, or the payment in such amount, is required under federal law to secure federal funds.


7272.5.  Nothing contained in this article shall be construed as creating in any condemnation proceeding brought under the power of eminent domain, any element of damages not in existence on the date the public entity commences to make payments under the provisions of this article as amended by the act which enacted this section at the 1971 Regular Session of the Legislature.


7273.  Funds received pursuant to Sections 2106 and 2107 of the Streets and Highways Code may be expended by any city to provide relocation advisory assistance, and to make relocation assistance payments, to displaced persons displaced because of the construction of city highways or streets.


7274.  Sections 7267 to 7267.7, inclusive, create no rights or liabilities and shall not affect the validity of any property acquisitions by purchase or condemnation.


7275.  Whenever any public entity acquires real property by eminent domain, purchase, or exchange, the purchase price and other consideration paid by such entity is public information and shall be made available upon request from the entity concerned.


7276.  (a) If a resolution is adopted under Section 1245.330 of the Code of Civil Procedure consenting to the acquisition of property by eminent domain and the person authorized by the resolution to acquire the property by eminent domain acquires the property by purchase, eminent domain, or otherwise, that person shall provide relocation advisory assistance and shall make any of the payments required to be made by public entities pursuant to the provisions of this chapter in conformity with this chapter and the guidelines adopted by the Commission of Housing and Community Development pursuant to Section 7268.
   (b) This section does not apply to public utilities which are subject to the provisions of Article 6 (commencing with Section 600) of Chapter 3 of Part 1 of Division 1 of the Public Utilities Code or to public entities which are subject to this chapter.


7277.  (a) The requirement to provide relocation assistance and benefits imposed by this chapter shall not apply to a purchase of property which is offered for sale by the owner, property being sold at execution or foreclosure sale, or property being sold pursuant to court order or under court supervision if the property in any of the

foregoing situations is either occupied by the owner or is unoccupied, and if the offer for sale is not induced by public entity disposition, planned condemnation, or redevelopment of surrounding lands, and if the sales price is fair market value or less, as determined by a qualified appraiser, and if no federal funds are involved in the acquisition, construction, or project development. "Offered for sale" means either advertised for sale in a publication of general circulation published at least once a week or listed with a licensed real estate broker and published in a multiple listing, pursuant to Section 1087 of the Civil Code.

   (b) At the time of making an offer to acquire property under subdivision (a), public entities shall notify the property owner in writing, of the following:
   (1) The public entity's plans for developing the property to be acquired or the surrounding property.
   (2) Any relocation assistance and benefits provided pursuant to state law which the property owner may be forgoing.