1   LEE C. ROSENTHAL, State Bar #58778
    lrosenthal@goldfarblipman.com
2   ROBERT C. MILLS, State Bar #158097
    rmills@goldfarblipman.com
3   JULIET E. COX, State Bar #214401
    jcox@goldfarblipman.com
4   GOLDFARB & LIPMAN LLP
    1300 Clay Street, Ninth Floor
5   Oakland, California 94612
    Telephone: (510) 836-6336
6   Facsimile: (510) 836-1035

7   Attorneys for Respondents and Real Parties in
    Interest DUBLIN HOUSING AUTHORITY;
8   HOUSING AUTHORITY OF THE COUNTY OF
    ALAMEDA; SCS DEVELOPMENT COMPANY;
9   and EDEN HOUSING, INC.

10  JOSEPH M. QUINN, State Bar #171898
    jquinn@meyersnave.com
11  ARIANA MOHIT, State Bar #211407
    amohit@meyersnave.com
12  MEYERS, NAVE, RIBACK, SILVER & WILSON
    575 Market Street, Suite 2600
13  San Francisco, California 94105
    Telephone: (415) 421-3711
14  Facsimile: (415) 421-3767

15  Attorneys for Respondent CITY OF DUBLIN

16              UNITED STATES DISTRICT COURT

17          NORTHERN DISTRICT OF CALIFORNIA

18  ARROYO VISTA TENANTS ASS'N et al.,            Case No.: Case No.: 3:07-cv-05794-MHP

19              Petitioners,                      **MEMORANDUM OF POINTS AND
                                                  AUTHORITIES IN OPPOSITION TO
20          v.                                    MOTION BY PETITIONERS FOR
                                                  PRELIMINARY INJUNCTION**
21  CITY OF DUBLIN et al.,
                                                  Date:       March 3, 2008
22              Respondents,                      Time:       2:00 p.m.
                                                  Location:   Courtroom 15, United States
23  SCS DEVELOPMENT COMPANY et al.                District Court, Northern District of
                                                  California, 450 Golden Gate Avenue, San
24              Real Parties in Interest.         Francisco, California 94102

25

26

27

28

Goldfarb &
Lipman LLP
1300 Clay Street
Ninth Floor
Oakland
California
94612
510 836-6336
510 836-1035 FAX

# TABLE OF CONTENTS

**Page**

I.    Introduction and Summary of Argument .......................................................................... 1

II.   Factual Summary ......................................................................................................... 2

III.  Argument ...................................................................................................................... 6

    A.   Petitioners Have a Low Probability of Success on the Merits of Their Claims. ....................................................................................................... 6

        1.   Approval of the DDA Did Not Violate the United States Housing Act. .................................................................................................... 6

            a.   The DDA Recognizes the Necessity for HUD Approval. .............. 7

            b.   The Housing Act Permits Conditional Disposition Agreements. ............................................................................. 7

                i.   Conditional Agreements Like the DDA Enable Full Compliance With the Disposition Regulations. ................. 7

                ii.   Petitioners' Interpretation of the Law is Unreasonable. ........................................................... 8

        2.   Respondents Have Not Violated the Planning Requirements of the California Relocation Law. ........................................................... 9

            a.   The Relocation Law Does Not Require a Relocation Plan Before a Covered Agency May Form a DDA. ........................... 10

            b.   Any Duty to Prepare a Plan Arose No Earlier Than April 2007. ..................................................................................... 10

        3.   Respondents Have Not Unlawfully Displaced Any Tenant. ................... 11

            a.   Petitioners Present No Evidence That DHA Has Displaced Any Tenant to Make Way for Arroyo Vista's Redevelopment. ............................................................... 12

                i.   DHA Did Not Displace Gretta Evans. ........................... 12

                ii.   Petitioners Present No Evidence That DHA Has Displaced Any Other Former Arroyo Vista Tenant. ........ 13

            b.   Petitioners Present No Evidence That DHA Has Conducted A Campaign to Displace Tenants For Redevelopment. ............... 13

            c.   Petitioners Present No Evidence that DHA Intends to Violate the Housing Act by Evicting Tenants Who Cannot Relocate. ................................................................. 15

Goldfarb &
Lipman LLP
1300 Clay Street
Ninth Floor
Oakland
California
94612
510 836-6336
510 836-1035 FAX

# TABLE OF CONTENTS
## (continued)

|  |  |  |  | Page |
|---|---|---|---|---|
|  |  | d. | No Law Prohibits Provision of Moving Assistance While a Disposition Application is Pending Before HUD. | 16 |
|  |  |  | i. The Housing Act Does Not Forbid Offering Relocation Assistance While a Disposition Application is Pending. | 17 |
|  |  |  | ii. The Relocation Law Contemplates the Availability of Relocation Assistance Before a Plan is Complete. | 18 |
|  |  |  | iii. Petitioners' View of the Law Is Unreasonable. | 18 |
|  | 4. | Respondents Have Not Denied Any Tenant Relocation Benefits. | | 19 |
|  |  | a. | No Petitioner Has Yet Relocated. | 19 |
|  |  | b. | Respondents Have Given All Assistance Required to Date. | 20 |
|  |  |  | i. Respondents Have Given All Required Notices. | 20 |
|  |  |  | ii. Respondents Have Given All Required Compensation. | 22 |
|  |  |  | iii. The Relocation Law Did Not Require Relocation Assistance Between July 2006 and April 2007. | 22 |
|  |  |  | (1) DHA Did Not Commit in July 2006 to Sell Arroyo Vista. | 23 |
|  |  |  | (2) DHA Did Not Induce Any Tenant to Move Between July 2006 and August 2007. | 23 |
|  | 5. | DHA's Refusal to Re-Rent Units That Have Become Vacant Since August 2007 Does Not Violate the Housing Act. | | 24 |
|  | 6. | The Injunction Requested is Vague and Overbroad. | | 24 |
| B. | Petitioners Will Not Suffer Irreparable Injury if This Court Denies the Requested Injunction. | | | 25 |
| C. | The Balance of Hardships Does Not Favor Petitioners. | | | 25 |
| IV. | Conclusion | | | 25 |

Goldfarb &

Lipman LLP

1300 Clay Street

Ninth Floor

Oakland

California

94612

510 836-6336

510 836-1035 FAX

# TABLE OF AUTHORITIES

**Page**

CASES

*Reno Air Racing Ass'n v. McCord*, 452 F.3d 1126 (9th Cir. 2006) .............................................. 24

FEDERAL STATUTES

42 U.S.C. § 1437p.............................................................................................................. 6, 24

FEDERAL REGULATIONS

24 C.F.R. § 970.7................................................................................................................... 7, 8

24 C.F.R. § 970.13.................................................................................................................... 24

24 C.F.R. § 970.17...................................................................................................................... 7

24 C.F.R. § 970.19...................................................................................................................... 8

24 C.F.R. § 970.21.............................................................................................................. 17, 22

24 C.F.R. § 970.25.............................................................................................................. 17, 24

24 C.F.R. § 982.1........................................................................................................................5

24 C.F.R. §982.353....................................................................................................................5

Fed R. Civ. P. 65..................................................................................................................... 24

CALIFORNIA STATUTES

Cal. Govt. Code § 7260 .......................................................................................................... 18

Cal. Govt. Code § 7261 .......................................................................................................... 10

CALIFORNIA REGULATIONS

25 Cal. Code Regs. § 6008 ..................................................................................................... 11

25 Cal. Code Regs. § 6034 ................................................................................................ 18, 23

25 Cal. Code Regs. § 6038 ................................................................................................ 10, 18

25 Cal. Code Regs. § 6040 ......................................................................................... 11, 20, 22

Goldfarb &

Lipman LLP

1300 Clay Street

Ninth Floor

Oakland

California

94612

510 836-6336

510 836-1035 FAX

1

## TABLE OF AUTHORITIES
### (continued)

2
**Page**

3    25 Cal. Code Regs. § 6046 ................................................................. 20, 21

4    25 Cal. Code Regs. § 6048 ................................................................. 14

5    25 Cal. Code Regs. § 6086 ................................................................. 18

6    25 Cal. Code Regs. § 6090 ................................................................. 22

7    25 Cal. Code Regs. § 6104 ................................................................. 22

8

9

10

11

12

13

14

15

16

17

18

19

Goldfarb &    20

Lipman LLP    21

1300 Clay Street    22

Ninth Floor    23

Oakland    24

California    25

94612    26

510 836-6336    27

510 836-1035 FAX    28

# I.    INTRODUCTION AND SUMMARY OF ARGUMENT

This lawsuit attacks efforts by the Dublin Housing Authority ("DHA"), the City of Dublin, and the Housing Authority of the County of Alameda ("HACA") to improve both the quality and the quantity of affordable housing in Dublin. Facing insurmountable needs for rehabilitation at its Arroyo Vista public housing complex, as well as declining federal financial support, DHA elected to seek approval from the United States Department of Housing and Urban Development ("HUD") for a plan to redevelop Arroyo Vista in cooperation with the City and HACA. Petitioners—four of more than 400 Arroyo Vista tenants and a 31-member "tenants' association" formed just for this lawsuit (*see* Supp. Keyes Decl., at 2:8-17)—oppose this plan.

Beginning in 2003, DHA, HACA, and the City undertook a lengthy, public process to develop this plan. With tenant input, DHA examined the complex's rehabilitation needs as well as the financial resources potentially available, and examined as well whether or not any developer could propose a redevelopment plan constituting an acceptable alternative. Eventually, in July 2007, Respondents DHA, HACA, and the City entered into a Disposition and Development Agreement (the "DDA") with non-profit developer Eden Housing and for-profit developer Citation Homes Central (together, "Real Parties"), describing a redevelopment project (the "Revitalization Plan") for Arroyo Vista.

Under the United States Housing Act of 1937, as amended (the "Housing Act"), HUD must give its approval before DHA can sell the Arroyo Vista property to Real Parties. For this reason, the DDA conditions Arroyo Vista's sale and subsequent redevelopment on HUD's approval of DHA's application to dispose of the property. If HUD disapproves DHA's proposal, the Revitalization Plan will not occur.

Despite this contingency, Petitioners assert that the Housing Act forbade DHA's even approving the DDA before HUD had approved Arroyo Vista's disposition. This assertion finds no support in the Housing Act or the Act's implementing regulations. (*See* Part III.A.1, below.) Petitioners' view of the law would not protect public housing tenants or the public, because it would require HUD to speculate about hypothetical dispositions that might or might not ever

Goldfarb &
Lipman LLP
1300 Clay Street
Ninth Floor
Oakland
California
94612
510 836-6336
510 836-1035 FAX

occur rather than deciding based on a clear, certain proposal whether or not disposition of a public housing complex satisfies the requirements of the Housing Act.

The Revitalization Plan, if approved, would require relocation of all Arroyo Vista tenants. Beginning in April 2007, DHA began fielding inquiries from Arroyo Vista residents who were interested in moving even though they did not yet have to. To assist those residents, DHA began in June 2007 offering advisory assistance, and in August 2007 providing financial assistance, to those Arroyo Vista families who wished to move out while DHA's application to HUD was pending. Since August 2007, approximately 50 households have moved away from Arroyo Vista. Petitioners themselves have chosen to remain Arroyo Vista residents for the time being, and DHA has respected that choice.

Incredibly, Petitioners attack this attempt by DHA to aid their neighbors. They assert that DHA has illegally "displaced" tenants, but cite as evidence only the fact that DHA has offered tenants the opportunity to obtain relocation assistance. Yet as long as DHA does not require or compel any tenant to move, no law prohibits DHA's providing relocation assistance to interested Arroyo Vista tenants before HUD approves DHA's pending disposition application. (*See* Part III.A.2, below.) The availability of relocation benefits may have played a role in the decisions of those families who have moved from Arroyo Vista in the last six months, but the availability of those benefits does not amount to illegal "pressure" or "encouragement" to move under the Housing Act or the California Relocation Law.

Finally, and in direct contradiction to their claim that DHA should not yet have offered relocation assistance to Arroyo Vista's tenants, Petitioners claim that DHA has failed to offer adequate assistance. This claim fails as well, because DHA has followed, and has committed to follow, all laws governing provision of relocation assistance to Arroyo Vista's households. (*See* Parts III.A.3, below.) Because Petitioners establish little chance of success in this action, Respondents ask this Court to deny Petitioners' motion seeking a preliminary injunction.

## II.    FACTUAL SUMMARY

Arroyo Vista is a 150-unit public housing complex located on Dougherty Road in Dublin, near the Army's Camp Parks. (Gouig Decl., at 2:26-3:1.) The complex is owned by DHA and

Goldfarb &
Lipman LLP
1300 Clay Street
Ninth Floor
Oakland
California
94612
510 836-6336
510 836-1035 FAX

administered on DHA's behalf by HACA. (*Id.*, at 2:21-27.) DHA pays for the cost of operating and maintaining Arroyo Vista using tenant rents and HUD contributions. (*Id.*, at 3:27-4:16.)

Since its construction in 1982, Arroyo Vista has developed several difficult and ongoing maintenance problems, many relating to the complex's original design and construction. (*Id.*, at 3:8-21; Rizzo-Shuman Decl., at 13:15-20.) DHA's Board of Commissioners decided in 2003 to evaluate whether rehabilitation of Arroyo Vista was physically possible or financially feasible, and at the same time to examine whether redevelopment of the site would yield better and more cost-effective results. (Gouig Decl., at 4:26-5:4.) After obtaining engineering estimates of the likely costs for necessary rehabilitation and proposals from redevelopment teams, DHA's Board concluded that rehabilitation would cost nearly $10 million more than was available, and that redevelopment could produce housing to serve DHA's clientele in the future. (*Id.*, at 5:5-6:20.)

On July 24, 2006, DHA's Board of Commissioners adopted resolutions directing DHA's staff members to pursue redevelopment of Arroyo Vista and to negotiate with a development team consisting of Real Parties in Interest Citation Homes and Eden Housing in an effort to produce a redevelopment plan. (*Id.*, at 6:16-7:2 & Exhs. A, B.) DHA's staff members negotiated over the next several months with Real Parties; and in April 2007, the DHA Board approved an Exclusive Negotiating Rights Agreement (the "ENRA") among Respondents and Real Parties, setting terms for continuing negotiations.[1] (*Id.*, at 7:3-22 & Exhs. C, D.) These negotiations produced a detailed Disposition and Development Agreement (the "DDA") setting forth a comprehensive Revitalization Plan for Arroyo Vista and making performance under the DDA contingent on HUD's approving the plan by giving DHA permission to "dispose of," or convey, Arroyo Vista to Real Parties. (*Id.*, at 7:23-27.) DHA approved the DDA on July 17, 2007, and Respondents and Real Parties executed it shortly thereafter. (*Id.*, at 7:3-7 & Exhs. E, F.)

DHA submitted an application to HUD for permission to dispose of Arroyo Vista in August 2007. (*Id.*, at 8:10-15.) On HUD's advice, DHA submitted that application before the appraisal and environmental impact review it required were complete, so that HUD could begin

---

[1] Petitioners did not challenge Respondents' approval of the ENRA. (Gouig Decl., at 7:15-17.)

Goldfarb &
Lipman LLP
1300 Clay Street
Ninth Floor
Oakland
California
94612
510 836-6336
510 836-1035 FAX

examining the application's other components while these last items were in progress.[2] (*Id.*, at 8:16-24.) In part due to comments to HUD from Petitioners (*see* Greif Decl., Exh. 13), HUD has asked DHA for additional information pertaining to the application, but has not yet acted to approve or disapprove it (Gouig Decl., at 8:26-9:2).

Beginning in 2006, DHA distributed regular tenant newsletters describing its progress in studying and then planning for redevelopment. (*Id.*, at 9:18-23; *see also* Greif Decl., Exhs. 7, 11.) In addition, DHA retained a relocation consultant in early 2007 (Overland, Pacific & Cutler, or "OPC") to aid DHA in planning for relocation of Arroyo Vista's tenants if HUD approved the Revitalization Plan. (Gouig Decl., at 9:3-9.) In April 2007, DHA distributed a "General Information Notice" to tenants about the redevelopment proposal, and in April and June DHA held tenant meetings to explain the redevelopment and relocation process. (Gouig Decl., at 9:24-10:25 & Exh. I; Rizzo-Shuman Decl., at 13:20-14:6; Richman Decl., at 19:27-20:5.)

DHA's communications with tenants have consistently included the following information about Arroyo Vista's proposed redevelopment:

- No Arroyo Vista tenant needs to move now. (Gouig Decl., at 10:9-11:4; Rizzo-Shuman Decl., at 14:21-15:2; *see also* July 2006 Newsl. [Greif Decl., Exh. 11, at 000261]; General Information Notice [Exh. I]; June 2007 Newsl. [Greif Decl., Exh. 11, at 000263]; July 2007 Newsl. [Greif Decl., Exh. 11, at 000265]; Sept. 2007 Newsl. [Greif Decl., Exh. 11, at 000270]; Nov. 2007 Newsl. [Greif Decl., Exh. 11, at 000273].)

- Tenants will have at least 90 days' notice before any moving deadline. (*See* General Information Notice [Exh. I].)

- DHA has applied to HUD for approval of the redevelopment proposal, but HUD has not yet acted on that application. (Gouig Decl., at 10:9-11; Rizzo-Shuman Decl., at 14:7-9; *see also* July 2007 Newsl. [Greif Decl., Exh. 11, at 000265]; Sept. 2007 Newsl. [Greif Decl., Exh. 11, at 000269]; October 2007 Newsl. [Greif Decl., Exh. 11, at 000272].)

Goldfarb &
Lipman LLP
1300 Clay Street
Ninth Floor
Oakland
California
94612
510 836-6336
510 836-1035 FAX

---

[2] DHA has since submitted the appraisal. (Gouig Decl., at 8:25.)

POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION (3:07-cv-05794 MHP)
1460\03\525474.4

- If HUD approves DHA's proposal, DHA expects to give residents a November 2008 moving deadline. (Gouig Decl., at 11:1-4; Rizzo-Shuman Decl., at 14:7-9; *see also* Sept. 2007 Newsl. [Greif Decl., Exh. 11, at 000270]; Nov. 2007 Newsl. [Greif Decl., Exh. 11, at 000273]; Dec. 2007 Newsl. [Greif Decl., Exh. 7, at 000214].)

- A Housing Choice, or "Section 8," voucher will be available to every Arroyo Vista household to assist that household in affording a replacement housing unit.[3] (Rizzo-Shuman Decl., at 13:25-27, 15:10-12; *see also* May 2006 Newsl. [Greif Decl., Exh. 11, at 000259]; July 2006 Newsl. [Greif Decl., Exh. 11, at 000261-62]; July 2007 Newsl. [Greif Decl., Exh. 11, at 000265].)

- Additional relocation assistance will also be available to every Arroyo Vista household. (Gouig Decl., at 10:11-25; Rizzo-Shuman Decl., at 13:25-27; *see also* General Information Notice [Exh. I]; July 2007 Newsl. [Greif Decl., Exh. 11, at 000265].)

At the April 2007 informational meetings, several tenants expressed interest in moving as soon as possible, rather than in waiting until HUD had approved redevelopment. (Rizzo-Shuman Decl., at 13:22-23; Richman Decl., at 20:6-7.) DHA began in July 2007 providing relocation assistance to tenants who requested it. (Gouig Decl., at 11:13-14; Rizzo-Shuman Decl., at 14:10-13; Richman Decl., at 20:18-26.) This assistance has consisted of aid in searching for replacement residences; reimbursement for moving expenses, either by direct payment to a moving service provider or by a fixed "in-lieu" payment directly to the household; payment of security deposits for replacement units up to $2400 per unit; payment of credit check fees up to $75 per credit check; and Section 8 vouchers to ensure affordable rent at replacement units. (Gouig Decl., at 11:16-24; Richman Decl., at 20:27-21:6.) Approximately 50 Arroyo Vista households have used this assistance to move since August 1, 2007 (Gouig Decl., at 11:14-15; Richman Decl., at 20:27), and DHA has not re-rented those units (Gouig Decl., at 11:14-15; Rizzo-Shuman Decl., at 16:8-11).

---

[3] The Housing Choice Voucher program permits participating households to rent residences in the private market, subsidizing their rent with a "Section 8" voucher. 24 C.F.R. § 982.1. Section 8 vouchers are "portable," meaning that a participating household can use its voucher anywhere in the United States. *Id.* § 982.353.

Goldfarb &

Lipman LLP

1300 Clay Street

Ninth Floor

Oakland

California

94612

510 836-6336

510 836-1035 FAX

Petitioners Andres Arroyo, Darlene Brown, Rhenae Keyes, and Elise Veal are tenants at Arroyo Vista. (Arroyo Decl., at 2:5; Brown Decl., at 2:4-5; Keyes Decl., at 2:4-5; Veal Decl., at 2:2-4.) Some Petitioners have asked for, and received, information and assistance from DHA and OPC regarding relocation (*see, e.g.*, Keyes Decl., 4:9-11, 4:27-5-2; Veal Decl., 3:14-16, 4:16-25), but no Petitioner has moved. DHA and OPC have not instructed any tenant to move, or taken any adverse action against any household that has elected not to move. (Gouig Decl., at 10:26-11:4; Rizzo-Shuman Decl., at 15:7-12; Richman Decl., at 20:18-20.) In October 2007, Petitioners filed this action; and in January 2008, Petitioners moved this Court for a preliminary injunction. (Notice of Motion, Motion, and Memorandum of Points of Authorities in Support of Plaintiffs' Motion for Preliminary Injunction ["Motion"], filed January 28, 2008.)

## III.  ARGUMENT

Petitioners have not shown that Respondents have done anything wrong. Respondents did not violate either the United States Housing Act or the California Relocation Law by adopting a DDA for Arroyo Vista's redevelopment conditioned on HUD's approval. Nor did Respondents violate either law by providing relocation assistance to tenants who wanted to move. Furthermore, entry of the order Petitioners request would harm persons who are not before this Court, while providing little or no benefit to Petitioners. Consequently, no injunction can issue.

### A.    Petitioners Have a Low Probability of Success on the Merits of Their Claims.

Petitioners have little chance of obtaining any of the relief they request in their motion. The legal basis for Petitioners' claims is unsound, and the factual support is nonexistent. Furthermore, Petitioners' proposed injunction describes much of the relief Petitioners request in terms so general as to be incomprehensible.

#### 1.    Approval of the DDA Did Not Violate the United States Housing Act.

Petitioners contend that DHA has violated the Housing Act by entering into the DDA before obtaining HUD's permission to dispose of Arroyo Vista. The DDA, however, does not commit DHA to dispose of Arroyo Vista unless and until HUD approves the disposition. The sequence of events here, where the parties entered into a DDA contingent on HUD's approval and then applied to HUD for that approval, does not violate any part of the Housing Act.

Goldfarb &
Lipman LLP
1300 Clay Street
Ninth Floor
Oakland
California
94612
510 836-6336
510 836-1035 FAX

POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION (3:07-cv-05794 MHP)
1460\03\525474.4

### a.    The DDA Recognizes the Necessity for HUD Approval.

Approval from HUD is statutorily required before DHA can dispose of the Arroyo Vista property to Real Parties and before the Real Parties can carry out the redevelopment of the property contemplated by the DDA. 42 U.S.C. § 1437p. For this reason, the DDA *states explicitly* that DHA has no obligation to convey Arroyo Vista to the Real Parties unless HUD approves that conveyance. Section 12.1 of the DDA states:

> The parties hereto acknowledge that this Agreement and the conveyance of the Property are subject to HUD approval. Developer and the Authority agree to cooperate to obtain all necessary HUD approvals and acknowledge that HUD approvals must be obtained as a condition precedent to certain obligations contained herein. *Nothing herein shall be understood to authorize or obligate the Authority to act in the absence of required HUD approvals.*

(DDA, § 12.1 [Exh. F, at 82], emphasis added.) Likewise under Section 15.1(b) of the DDA, "receipt of all necessary government approvals and permits, including without limitation HUD's approval of the Revitalization Plan and this Agreement" is a "condition precedent to the Authority's, City's, and Developer's ability to proceed with the Development." (*Id.*, § 15.1 [Exh. F, at 85].) And under Section 6.1(a) of the DDA, "No portion of the Property shall be conveyed by the Authority until all disposition requirements identified herein and in the Revitalization Plan have been fully satisfied." (*Id.*, § 6.1(a) [Exh. F, at 65].) The DDA does not commit DHA to any course of action HUD does not approve.

### b.    The Housing Act Permits Conditional Disposition Agreements.

Because the DDA expressly conditions sale of Arroyo Vista on HUD's approval of the revitalization plan described in the DDA, approval of the DDA could violate the Housing Act only if the Housing Act prohibited such conditional agreements. The Housing Act imposes no such constraint. Instead, the Housing Act requires a housing authority seeking disposition approval to have a clear disposition plan *before* it applies to HUD for approval.

### i.    Conditional Agreements Like the DDA Enable Full Compliance With the Disposition Regulations.

Under both the Housing Act and its implementing regulations, HUD must review not just a housing authority's proposal to sell its property but the entire program or plan involving

Goldfarb &
Lipman LLP
1300 Clay Street
Ninth Floor
Oakland
California
94612
510 836-6336
510 836-1035 FAX

7

disposition. 24 C.F.R. § 970.7(a), 970.17. An application to HUD for permission to sell public housing property must thus be clear and certain enough to permit a meaningful HUD review. The plan must also be feasible, because if the housing authority cannot implement the approved plan, any new plan requires a application to HUD for reapproval. 24 C.F.R. § 970.7(b)(2).

The DDA represents such a plan for Arroyo Vista. It includes a detailed description of the number, type, and affordability of the units to be developed (DDA, §§ 2.3–2.5 [Exh. F, at 48-51); detailed financing provisions setting out the amounts the Real Parties will pay and how DHA will use those funds (DDA, §§ 2.8–2.11 [Exh. F, at 51-55]); and a detailed schedule of performance (DDA, Exh. E [Exh. F, at 110-13]). Conveyance of the property to the Real Parties, however, and subsequent demolition of the existing units and construction of new ones, is all contingent on HUD approval of the disposition application. If HUD agrees that the project described in the DDA satisfies DHA's duties under the Housing Act, HUD will approve it; if not, DHA will have no obligation to proceed.[4] (DDA, § 12.1 [Exh. F, at 82].)

In fact, HUD's regulations and process contemplate that housing authorities will develop detailed and feasible disposition plans by negotiating agreements with redevelopers before seeking HUD approval. HUD may authorize a "negotiated sale for reasons found to be in the best interests of the [housing authority] or the federal government," 24 C.F.R. § 970.19(a), which HUD could do only if it understood the sale terms. The disposition application form asks specifically whether or not the proposed disposition is the result of a "negotiated sale" (Greif Decl., Exh. 3, at 000137), because HUD approves dispositions resulting from negotiated sales *if* HUD finds that the sale terms satisfy the Housing Act. Respondents' and Real Parties decision to negotiate sale of Arroyo Vista contingent on HUD's approval does not violate the Housing Act.

ii.    Petitioners' Interpretation of the Law is Unreasonable.

If Petitioners were correct that the Housing Act prohibited conditional agreements like the DDA, a public housing authority desiring to redevelop its property could never secure any

Goldfarb &
Lipman LLP
1300 Clay Street
Ninth Floor
Oakland
California
94612
510 836-6336
510 836-1035 FAX

---

[4] As Petitioners acknowledge, HUD has not yet acted to approve or disapprove Respondents' disposition application. Yet Petitioners ask this Court to enjoin implementation of the DDA regardless of what HUD decides. (Motion, at 1:10-27.) For this reason, Petitioners' challenge to the DDA is unripe. *See City of San Diego v. Whitman*, 242 F.3d 1097, 1101-02 (9th Cir. 2001).

commitment from any redeveloper before applying to HUD for permission to dispose of public housing units for redevelopment. Instead, a public housing authority concluding that rehabilitation or continued operation of its public housing units was not feasible would have to apply for HUD permission to dispose of those units without any assurance that a redeveloper would be available upon HUD's approval. Further, to minimize the risk that HUD approval would turn out to be moot, such applications would necessarily be as nonspecific as possible.

Rather than denying HUD or Petitioners the opportunity for meaningful review of Arroyo Vista's proposed disposition, Respondents' and Real Parties' choice to document the Revitalization Plan in a DDA contingent upon HUD's approval provides the most meaningful opportunity possible, because it means that the entire Revitalization Plan is available for review. Petitioners suggest no method *other* than a DDA conditioned on HUD's approval by which Respondents might have extracted commitments from a developer that would give them assurance that the redevelopment contemplated in the disposition application could and would go forward, if and when HUD approved it. Respondents and Real Parties urge this Court to rule that that Housing Act permits approval of a conditional DDA before submission to HUD of a disposition application.

### 2. Respondents Have Not Violated the Planning Requirements of the California Relocation Law.

Petitioners are also incorrect in alleging that Respondents have violated the California Relocation Law by proceeding with planning for Arroyo Vista's redevelopment, including with approval of the DDA, before completing a detailed tenant relocation plan.[5] Such a plan may be necessary before DHA may demand that any tenant move, but it is not necessary before DHA may make a conditional agreement that, if approved, will result in the future in a demand that tenants move. Respondents have not violated the Relocation Law by approving the DDA.

---

[5] Although Respondents contend that they have exceeded the Relocation Law's requirements, Respondents do not concede that the Relocation Law applies at all to Arroyo Vista's redevelopment. Cal. Govt. Code § 7267.8(b); 25 Cal. Code Regs. § 6018.

Goldfarb &
Lipman LLP
1300 Clay Street
Ninth Floor
Oakland
California
94612
510 836-6336
510 836-1035 FAX

### a.    The Relocation Law Does Not Require a Relocation Plan Before a Covered Agency May Form a DDA.

The Relocation Law requires a public agency with relocation obligations to prepare a relocation plan describing how the agency will fulfill those obligations. Cal. Govt. Code § 7261(a); 25 Cal. Code Regs. § 6038. This plan must be complete "prior to proceeding with any phase of a project or other activity that will result in displacement." 25 Cal. Code Regs. § 6038(a). Petitioners misread this phrase, suggesting to this Court that preparation of a relocation plan must be the very first step in any project that may cause displacement, so that such a plan is complete before "any phase" of such a project proceeds.

The regulation does not support this unreasonable interpretation. Rather, the regulation states that preparation of a plan must begin "[a]s soon as possible following the initiation of negotiations," *id.*, meaning that plan preparation may occur at the same time as negotiations and other planning activities for a project. Furthermore, preparation of a relocation plan that includes the detail required by the Relocation Law, *see* 25 Cal. Code Regs. § 6038(b), would be impossible until negotiations had produced an agreement on a project's scope and timing.

Without such agreement, the plan could not include projected dates of displacement, analysis of relocation needs for *all* potentially displaced persons, or identification of funding sources for relocation payments. The relocation plan would be just a shot in the dark. For these reasons, the proper interpretation of the Relocation Law requires completion of a relocation plan before any displacing phase of a project, but not before any earlier planning or negotiation phase that does not require displacement.

### b.    Any Duty to Prepare a Plan Arose No Earlier Than April 2007.

Petitioners' position also rests on an overall misreading of the Relocation Law's regulations.[6] These regulations define "initiation of negotiations" for most projects as "[t]he initial written offer made by the acquiring entity to the owner of real property to be purchased, or

Goldfarb &
Lipman LLP
1300 Clay Street
Ninth Floor
Oakland
California
94612
510 836-6336
510 836-1035 FAX

---

[6] Their position rests as well on a misreading of Respondents' Answer. Respondents admitted that DHA had adopted a resolution in July 2006 authorizing DHA staff members to negotiate with Real Parties (Answer, at 6:14-16), but did not concede that this resolution constituted the "initiation of negotiations" within the meaning of the Relocation Law.

the owner's representative." 25 Cal. Code Regs. § 6008(n). In this case, however, rather than acquiring property, the public entity is selling it: The acquiring entities are Real Parties, and the real property's present owner is DHA. (DDA, § 2.2 [Exh. F, at 47].)

The regulations address this circumstance directly:

For projects by private parties with an agreement with a public entity, the "initiation of negotiations" shall be the *later* of the date of acquisition or the date of the written agreement between the private entity and the public entity for purposes of acquiring or developing the property for the project.

25 Cal. Code Regs. § 6040(a)(1) (emphasis added). Contrary to Petitioners' implication, then, the Relocation Law contemplates specifically that a public agency will enter into a redevelopment agreement such as the DDA before having prepared its relocation plan, because it bases the obligation to prepare a plan on the prior existence of such an agreement.

DHA contracted for services from a relocation consultant before approving the DDA establishing the Revitalization Plan, and began preparation of a detailed relocation plan promptly thereafter. (Gouig Decl., at 9:3-9.) A draft plan is complete, and DHA will soon circulate that draft for public comment. (*Id.*, 11:25-12:2.) Moreover, the DDA itself recognizes that DHA must arrange in accordance with all applicable state and federal relocation requirements to relocate all Arroyo Vista residents before redevelopment may proceed. (DDA, § 4.2(a) [Exh. F at 61].) The DDA commits Respondents to satisfying the Relocation Law's requirements relating to preparation of a relocation plan.

### 3. Respondents Have Not Unlawfully Displaced Any Tenant.

In their relocation activities, the Respondents have not violated the Housing Act or the Relocation Law and do not intend to do so. DHA has provided relocation assistance to households who have requested it. But contrary to Petitioners' assertion, this activity does not violate federal law or state law. By enjoining DHA's continuing provision of relocation assistance to those Arroyo Vista tenants who want to move, this Court would harm other Arroyo Vista tenants—who are not before this Court but who are far more numerous than Petitioners— and would potentially direct DHA to violate California law.

Goldfarb &
Lipman LLP
1300 Clay Street
Ninth Floor
Oakland
California
94612
510 836-6336
510 836-1035 FAX

POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION (3:07-cv-05794 MHP)
1460\03\525474.4

a.    **Petitioners Present No Evidence That DHA Has Displaced Any Tenant to Make Way for Arroyo Vista's Redevelopment.**

Petitioners suggest boldly that Respondents have "unlawfully displaced 33 households from Arroyo Vista."[7] (Motion, at 12:20.) Yet the "evidence" they present in support of this assertion includes no testimony from even one of those allegedly "unlawfully displaced" households. Instead, Petitioners' "evidence" consists, with one exception, of declarations by persons who state that they have *not* moved away from Arroyo Vista. (*See* Arroyo Decl., at 2:5; Brown Decl., at 2:4-5; Costello Decl., at 2:4-6; C. Evans Decl, at 3:12; Keyes Decl., at 2:4-5; Sanders Decl., at 2:4-5; Veal Decl., at 2:2-4.) None of this evidence shows that DHA has required or compelled any household's displacement.

i.    **DHA Did Not Displace Gretta Evans.**

Petitioners identify only one person—Gretta Evans, who is not a party to this action—who states that she has moved.[8] (G. Evans Decl., at 6:15.) Ms. Evans states further, however, that her entire household has not moved: Her daughter Carolyn Evans and her grandchildren, with whom she lived at Arroyo Vista, remain Arroyo Vista residents. (*Id.*, at 6:2-5.) Moreover, Ms. Evans acknowledges that HACA offered her household a Section 8 voucher that would have permitted the entire Evans household to relocate to another four-bedroom residence in Alameda County if and when they found a suitable one. (*Id.* at 4:5-7; *see also* Meade Decl., at 18:6-10.)

Instead of remaining at Arroyo Vista until she secured such a residence, Gretta Evans decided to move to the city of Patterson with different family members. (G. Evans Decl., at 6:1-5.) She decided as well to relinquish her Arroyo Vista household's Section 8 voucher to her daughter, so that the daughter and her children could relocate within Dublin. (Richman Decl., at 21:7-22 & Exh. K; G. Evans Decl., at 6:5-7, 16-22; *see also* C. Evans Decl., at 3:16-18.) DHA is not responsible for Gretta Evans's decision to move away from Arroyo Vista.

[7] At the time Respondents submitted this Memorandum, nearly 50 families had accepted Section 8 vouchers provided by HACA; advice and rental listings from OPC; and reimbursement from DHA for moving expenses, credit checks, and security deposits. (Richman Decl., at 20:27-21:6.)

[8] This declaration was Ms. Evans's first notice to DHA that she had terminated her Arroyo Vista tenancy. (Rizzo-Shuman Decl., at 15:22-24.)

Goldfarb &
Lipman LLP
1300 Clay Street
Ninth Floor
Oakland
California
94612
510 836-6336
510 836-1035 FAX

**ii.** **Petitioners Present No Evidence That DHA Has Displaced Any Other Former Arroyo Vista Tenant.**

Without evidence that DHA has forced any Arroyo Vista household to move, Petitioners are left only with their characterization of those households' decisions to move as "unfortunate." (Motion, at 13:13.) Petitioners state that *they* do not want to move at this time, but present no evidence that the 50 *other* Arroyo Vista households who have moved shared Petitioners' view.[9] Indeed, the conclusion is at least equally plausible that those households viewed the Section 8 voucher and other moving assistance as an opportunity to improve their housing circumstances. Petitioners have presented no evidence supporting their conclusion that DHA has acted unlawfully to relocate any former Arroyo Vista tenant.

**b.** **Petitioners Present No Evidence That DHA Has Conducted A Campaign to Displace Tenants For Redevelopment.**

Petitioners *admit* that DHA's written communications with Arroyo Vista tenants have stressed the fact that no tenant need move at this time. (Motion, at 12 n.5.) And although Petitioners and their supporters' declarations suggest that they felt pressure to move, not one declarant states that he or she has ever received any written or even oral communication from DHA setting any deadline to do so. To the contrary, several declarants confirm that they do not wish to move now and have not done so, and they describe no repercussions from that decision. (*See*, *e.g.*, Arroyo Decl., at 2:16-20; Costello Decl., at 3:19-21; Keyes Decl., at 4:25-26; *see also* Meade Decl, at 18:14-20.)

Moreover the evidence demonstrates that DHA and OPC have worked carefully to give residents accurate information, and assistance to meet their needs, without pressuring them to move. (Rizzo-Shuman Decl., at 14:10-12; Richman Decl., at 20:18-20.) Tenants who have asked DHA or OPC for aid have received what they asked for. (*See*, *e.g.*, G. Evans Decl., at 4:3-9; Keyes Decl., 4:9-11, 4:27-5:2; Veal Decl., 3:14-16, 4:16-25; *see also* Morris Decl., at 23:21-

Goldfarb &
Lipman LLP
1300 Clay Street
Ninth Floor
Oakland
California
94612
510 836-6336
510 836-1035 FAX

---

[9] Even Ms. Evans, while stating repeatedly that she would have liked to remain in Dublin, does not state that she is dissatisfied by having moved to Patterson; instead, she states that she sought out housing in Patterson even after learning that she could not use a Section 8 voucher to rent it. (G. Evans Decl., at 4:12-16, 5:17-18, 5:28-6:1.)

26:6.) Tenants who have not asked for aid have not received it, although they have received assurances that aid will be available if and when they want it. (*See*, *e.g.*, Brown Decl., at 2:15-16, 26-27; Keyes Decl., at 3:8-10, 16-17; Veal Decl., at 2:8-11.) Andres Arroyo *believes* that OPC employees came to his home to offer him a "good deal" to move, but he does not actually *know* why they came because he has rebuffed all efforts by OPC to contact him in person. (Arroyo Decl., at 2:16-28; Morris Decl., at 23:9-13; Laverde Decl., at 28:19-29:7.) And although Carolyn Evans appears to believe that OPC encouraged her to accept a Section 8 voucher, Gretta Evans reveals that *she* encouraged her daughter to accept the voucher, so that their household could receive the relocation assistance with which Gretta Evans intends to pay back a loan from friends. (*Compare* G. Evans Decl., at 6:16-22, *with* C. Evans Decl., at 5:11-15; *see also* Laverde Decl., at 28:7-8 [denying having ever participated in a "three-way" call with Gretta and Carolyn Evans].)

Several tenants describe visits to their homes by OPC employees in September and October 2007. (*See*, *e.g.*, Arroyo Decl., at 2:16-18; Brown Decl., at 2:10-12; Costello Decl., at 3:2-4.) As Elise Veal correctly reports (*see* Veal Decl., at 3:1-2), these employees conducted these visits to survey Arroyo Vista's tenants regarding their relocation needs. (Laverde Decl., at 27:6-14, 28:19-29:9.) Rather than violating any law, this survey was necessary to the relocation plan Petitioners themselves demand. *See* 25 Cal. Code Regs. § 6048(b), (c) (requiring a survey "by direct, personal interview, except where repeated efforts indicate that is not possible," to ascertain each household's housing needs and resources).

Petitioners' declarations show that some declarants may have misunderstood some information that they received orally from DHA and OPC regarding when they may have to move and what will happen when they do. Yet all written and oral information has been consistent with the commitments made by DHA's Board of Commissioners, and consistent with the law: It has assured residents that relocation assistance will be available when they want it, but that they need not move at this time. (*See* July 2006 Newsl. [Greif Decl., Exh. 11, at 000261]; General Information Notice [Exh. I]; June 2007 Newsl. [Greif Decl., Exh. 11, at 000263]; July 2007 Newsl. [Greif Decl., Exh. 11, at 000265]; Sept. 2007 Newsl. [Greif Decl.,

Goldfarb &

Lipman LLP

1300 Clay Street

Ninth Floor

Oakland

California

94612

510 836-6336

510 836-1035 FAX

POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION (3:07-cv-05794 MHP)
1460\03\525474.4

Exh. 11, at 000270]; Nov. 2007 Newsl. [Greif Decl., Exh. 11, at 000273]; Dec. 2007 Newsl. [Greif Decl., Exh. 7, at 000214]; see also Rizzo-Shuman Decl., at 14:7-15:12; Meade Decl., at 18:6-20; Laverde Decl., at 29:13-15.) Under these circumstances, Petitioners establish little chance of success on their claim that DHA has "pressured" or "encouraged" residents to move.

**c.    Petitioners Present No Evidence that DHA Intends to Violate the Housing Act by Evicting Tenants Who Cannot Relocate.**

The DDA commits HACA to providing Section 8 vouchers for every Arroyo Vista household that is both eligible for the Section 8 program and eligible for assistance in relocating from Arroyo Vista.[10] (DDA, § 3.4(b) [Exh. F, at 60.) To allay tenant concerns about voucher availability, DHA has informed tenants of HACA's commitment repeatedly and in writing. (*See* May 2006 Newsl. [Greif Decl., Exh. 11, at 000259]; July 2006 Newsl. [Greif Decl., Exh. 11, at 000261-62]; July 2007 Newsl. [Greif Decl., Exh. 11, at 000265].) DHA has also held, and continues to hold as requested, regular tenant information meetings to assist interested tenants in obtaining and using Section 8 vouchers.[11] (Rizzo-Shuman Decl., at 14:10-13; Meade Decl., at 17:13-21.)

Petitioners' evidence shows only that DHA employees and agents have reminded Arroyo Vista's tenants that finding Section 8 *housing* may take time. (Brown Decl., 3:3-5; Sanders Decl., 3:1-2; Rizzo-Shuman Decl., at 14:26-15:2.) But Petitioners present no evidence that DHA or any of its agents have ever told any tenant that HACA or DHA may experience a "shortage" of Section 8 *vouchers*. To the contrary, according to Petitioners' own evidence, DHA has expressly promised that it has "Section 8 vouchers for all eligible households—we will not 'run out' if you decide to move next year instead of now." (July 2007 Newsl. [Greif Decl., Exh. 11, at 000265].)

---

[10] Petitioners suggest no basis for their assertion that HACA lacks authority to issue such vouchers. Furthermore, the Petition raises no issue as to HACA's authority. Finally, Petitioners misstate HACA's commitment (Motion, at 4 n.3, 13:23-28): the DDA commits HACA to providing the vouchers *whether or not* HUD approves HACA's application for additional vouchers. (DDA, § 3.4(b) [Exh. F, at 60.)

[11] No tenant has requested such a meeting since October 2007, however. (Rizzo-Shuman Decl., at 14:12-13.)

Goldfarb &
Lipman LLP
1300 Clay Street
Ninth Floor
Oakland
California
94612
510 836-6336
510 836-1035 FAX

15

Moreover, even if finding suitable replacement housing does take time, the DDA expressly commits DHA to satisfying all relocation laws. Under the DDA, if HUD approves DHA's disposition application, DHA will "relocate all residents of [Arroyo Vista] to relocation housing, in accordance with the Revitalization Plan and in compliance with all Applicable Requirements[12], including HUD" and will pay "all federal and state relocation benefits, costs incurred in moving residents to their new homes, and any other cost or expense arising from or related to all relocation matters in connection with the Revitalization Plan." (DDA, § 4.2 [Exh. F, at 61].) Respondents have explicitly committed to follow the law, not to break it.

### d.    No Law Prohibits Provision of Moving Assistance While a Disposition Application is Pending Before HUD.

Stripped of embellishment, Petitioners' allegations amount to a contention that DHA has violated the law simply by providing relocation assistance to those Arroyo Vista tenants who have asked for it, before HUD has approved DHA's disposition application and before DHA has required those tenants to move or given them a deadline to move. This contention is incorrect. The Housing Act does not prohibit DHA from providing information and practical and financial relocation assistance to tenants who decide based on that information that they prefer to move now, even though they do not have to. Furthermore, the Housing Act does not give tenants who oppose Arroyo Vista's redevelopment, or who prefer not to move, the right to prohibit their neighbors' taking advantage of such assistance. And finally—as Petitioners themselves contend—the Relocation Law, if it applied here, might *require* DHA to provide such assistance. Respondents ask this Court to reject Petitioners' self-contradictory interpretation of the Housing Act and to rule that Respondents' relocation-related actions to date have not violated any law.

---

[12] The DDA defines "Applicable Requirements" as "applicable Federal, State, and local laws, rules and regulations." (DDA, § 1.1(i) [Exh. F, at 43].)

POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION (3:07-cv-05794 MHP)
1460\03\525474.4

Goldfarb &
Lipman LLP
1300 Clay Street
Ninth Floor
Oakland
California
94612
510 836-6336
510 836-1035 FAX

i.     **The Housing Act Does Not Forbid Offering Relocation Assistance While a Disposition Application is Pending.**

The Housing Act regulations plainly require public housing authorities to provide relocation assistance to their tenants, consisting of aid in locating replacement housing as well as reimbursement for moving-related expenses, after approval of a disposition or demolition application for those tenants' homes.[13] 24 C.F.R. § 970.21(e)(2). The regulations require further that the applying agency develop a plan for providing that assistance; describe that plan in its application; and, if HUD approves the application, implement the plan before carrying out the approved disposition or demolition. *Id.* §§ 970.21(d), (f). DHA's disposition application included a summary of its relocation plan, which HUD will approve or disapprove as part of its decision on the application.[14] (Disposition Application, § 7 [Greif Decl., Exh. 3, at 000148-50].)

The HUD regulations do not state specifically how a public housing authority should treat tenants who would like to move after the housing authority determines that it will submit an application but before HUD acts on that application. They do, however, state that a public housing authority "should not re-rent these units at turnover while HUD is considering its application for demolition or disposition." 24 C.F.R. § 970.25(a). For these reasons, DHA has offered relocation assistance to all households who wish to move now.

According to Petitioners, however, housing authorities must refrain from offering relocation assistance to such tenants, lest those tenants accept it. Rather, Petitioners believe that housing authorities must wait until HUD approves their disposition or demolition applications, with associated relocation plans, and until they have issued firm notices to tenants to vacate their homes, before providing assistance even to tenants who demand it. Petitioners' strained interpretation of the Housing Act and HUD regulations finds no support in the statute or regulations themselves.

---

[13] The regulations also specifically permit a housing authority to use Section 8 vouchers to replace public housing units, as long as relocating households actually succeed in securing otherwise comparable rental housing with those vouchers. 24 C.F.R. § 970.21(a)(1).

[14] In addition, DHA committed in its application to HUD to prepare "a comprehensive relocation plan." (Disposition Application, § 7 [Greif Decl., Exh. 3, at 000149].)

17

Goldfarb &
Lipman LLP
1300 Clay Street
Ninth Floor
Oakland
California
94612
510 836-6336
510 836-1035 FAX

### ii.    The Relocation Law Contemplates the Availability of Relocation Assistance Before a Plan is Complete.

The Relocation Law defines a "displaced person" eligible for relocation assistance as one who moves as "a *direct result*" of a public agency's conversion of the displaced person's former home to public use. Cal. Govt. Code § 7260(c) (emphasis added). The regulations implementing this definition require that relocation benefits be available to "[a]ny person who occupies property from which he will be displaced," as well as to "any person who, following the initiation of negotiations by a public entity, moves as the result of the pending acquisition." 25 Cal. Code Regs. § 6034(a)(1), (4). And the regulations likewise base the obligation to prepare a relocation plan on the date of "initiation of negotiations." *Id.* § 6038(a).

Petitioners interpret these regulations to forbid provision of relocation assistance before completion of a relocation plan, but the regulations do not support this interpretation. Rather, because the "initiation of negotiations" marks the beginning *both* of the obligation to provide assistance and of the obligation to prepare a plan "as soon as possible" thereafter, *id.*, the regulations necessarily permit both processes to occur at the same time. Also, the Relocation Law entitles persons to relocation assistance if they move "following receipt of a Notice of Intent to Displace," *id.* § 6034(a)(5), which notice may issue "*at any time* after forming a reasonable expectation of acquiring real property," *id.* § 6086 (emphasis added). The Relocation Law does not forbid the course of action Respondents have chosen.

### iii.    Petitioners' View of the Law Is Unreasonable.

Petitioners' interpretation of the Housing Act and the Relocation Law is not only unsupported by the statutory and regulatory text, but also impractical and unfair. Petitioners suggest that DHA must wait to offer replacement housing until HUD determines whether or not "comparable" replacement housing is available (Motion, at 11), even though nearly 50 Arroyo Vista households have already determined for themselves that their new homes are acceptable (Richman Decl., at 20:27). Moreover, Petitioners offer no rationale—and none exists—for a rule that would require all 150 Arroyo Vista households to compete at the same time in Dublin's

Goldfarb &
Lipman LLP
1300 Clay Street
Ninth Floor
Oakland
California
94612
510 836-6336
510 836-1035 FAX

POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION (3:07-cv-05794 MHP)
1460\03\525474.4

rental housing market, and that would require households for whom moving is most convenient now nevertheless to wait for moving aid until HUD has acted on DHA's disposition application.

Petitioners do not want to move unless they have to, and DHA has not asked any Petitioner to move. But Petitioners' suit amounts to a demand that this Court order DHA to cease assisting Petitioners' neighbors, thus forcing those neighbors to join Petitioners in waiting until Arroyo Vista's redevelopment is a certainty before planning to move. Because Petitioners' interpretation of the Housing Act and the Relocation Law would elevate Petitioners' desires over their neighbors' and would hamper Petitioners' neighbors in planning their own families' responses to Arroyo Vista's proposed redevelopment, Respondents ask this Court to reject it.

### 4.    Respondents Have Not Denied Any Tenant Relocation Benefits.

Ironically, given their contention that DHA's current provision of relocation assistance violates the law, Petitioners also contend that DHA has broken the law by failing to provide adequate relocation assistance. Yet on closer inspection, this contention that DHA has provided too little in relocation assistance suffers from the same flaws as Petitioners' contention that DHA has provided too much. Petitioners present no evidence that any party to this action, or indeed any former Arroyo Vista resident, has received benefits falling short in any way of the benefits the Housing Act and the Relocation Law require.

### a.    No Petitioner Has Yet Relocated.

Petitioners' suggestion that DHA has displaced them without offering adequate relocation assistance is nonsense: *Every Petitioner remains an Arroyo Vista resident*. And there is no evidence that DHA will refuse to provide the Petitioners the benefits to which they are entitled if and when they choose to move or DHA requires them to move. To the contrary, the record shows that DHA continues to offer assistance to Petitioners and has not demanded that any Petitioner move. (Rizzo-Shuman Decl., at 15:7-12; Meade Decl., at 17:17-21, 18:11-20.)

Respondents are well aware that some Arroyo Vista tenants will have special and difficult relocation needs, as Petitioners' declarations illustrate. If HUD approves disposition of Arroyo Vista, however, DHA has committed itself to providing relocation assistance to every

Goldfarb &
Lipman LLP

1300 Clay Street

Ninth Floor

Oakland

California

94612

510 836-6336

510 836-1035 FAX

POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION (3:07-cv-05794 MHP)
1460\03\525474.4

tenant in a manner exceeding all legal requirements. (DDA, § 4.2 [Exh. F, at 61].) Because Respondents are already complying with the law, no injunction is warranted.

### b.    Respondents Have Given All Assistance Required to Date.

Both the Housing Act and the Relocation Law require covered agencies to give informational as well as financial relocation assistance to displaced and potentially displaced tenants. DHA has offered all such required assistance, and has actually provided it to all Arroyo Vista households who have requested it. Petitioners' complaints to the contrary are incorrect.

### i.    Respondents Have Given All Required Notices.

DHA has provided information regularly to Arroyo Vista tenants regarding Arroyo Vista's potential redevelopment. (*See* July 2006 Newsl. [Greif Decl., Exh. 11, at 000261]; June 2007 Newsl. [Greif Decl., Exh. 11, at 000263]; July 2007 Newsl. [Greif Decl., Exh. 11, at 000265]; Sept. 2007 Newsl. [Greif Decl., Exh. 11, at 000270]; Nov. 2007 Newsl. [Greif Decl., Exh. 11, at 000273]; Dec. 2007 Newsl. [Greif Decl., Exh. 7, at 000214].) In addition, DHA has provided information specifically satisfying the Relocation Law:

- In April 2007, DHA notified each household in writing that relocation assistance would be available and explained how to seek it. (General Information Notice [Exh. I].) *See* 25 Cal. Code Regs. § 6040(a)(1) (requiring a general notice of "the availability of relocation benefits and assistance and the eligibility requirements therefor").

- Every household who has contacted OPC to arrange for aid in relocating has received an individualized eligibility notice explaining in detail the advisory services and financial compensation available to that household. (Richman Decl., at 20:20-22; Veal Decl., Exhs. 2, 3.) *See* 25 Cal. Code Regs. § 6046(d) (requiring "individual, written notification" to all persons whose eligibility for relocation benefits "has been established").

- Every household who has asked for information on the Section 8 program has received that information, including a handbook describing the program in detail. (Meade Decl., at 17:17-21; Keyes Decl., Exh. 2.) *See* 25 Cal. Code Regs. § 6046(a)(9) (requiring "information concerning federal and state housing programs" that may aid in relocation).

Goldfarb &
Lipman LLP
1300 Clay Street
Ninth Floor
Oakland
California
94612
510 836-6336
510 836-1035 FAX

- Every household that has requested aid in searching for a replacement residence has received it. (G. Evans Decl., at 4:3-9; Keyes Decl., 4:9-11, 4:27-5-2; Veal Decl., 3:14-16, 4:16-25; Richman Decl., at 20:18-20; Morris Decl., at 23:21-26:6.) *See* 25 Cal. Code Regs. § 6046(a)(8) (requiring "current, continuing information on the availability, prices, and rentals of comparable sales and rental housing").

Petitioners' complaint that they have not received and do not know when they will receive "90-day notices," however (*see* Motion, at 12 n.5), is absurd. If DHA had issued any such notice predicated on Arroyo Vista's redevelopment, DHA would have violated the Housing Act, because HUD has not yet acted on DHA's disposition application. On the other hand, if and when HUD does approve DHA's application, DHA proposes to give tenants *more* than 90 days' notice that they must move. (Gouig Decl., at 11:26-27.) In the meantime, DHA has given Arroyo Vista's tenants as much truthful and accurate information as is currently available.

Petitioners' suggestion that DHA or its agents have provided inaccurate information to tenants contemplating moves is simply false. DHA did not, for example, suggest that Elise Veal or Gretta Evans seek housing in counties where they were ineligible for Section 8 assistance. Rather, Elise Veal asked for information regarding housing in Antioch, Mountain House, Tracy, and Elk Grove (Veal Decl., 3:12-13, 3:28-4:4, 4:14-15; Morris Decl., 25:25-26:6), but has missed at least three appointments with the DHA staff member responsible for orienting her to the Section 8 program (Meade Decl., at 18:11-13). Gretta Evans found housing in Patterson using "craigslist." (G. Evans Decl., at 3:28-4:2.) HACA did address Rhenae Keyes's request for a three-bedroom rather than a two-bedroom Section 8 voucher as a "reasonable accommodation" for her daughter's and son's alleged disabilities, but was unable to confirm with the service provider Ms. Keyes designated that the accommodation was reasonable.[15] (Rizzo-Shuman Decl., at 16:1-5.) Petitioners' evidence establishes no probability that they will prove that DHA misinformed any tenant about that tenant's housing or relocation rights.

---

[15] Ms. Keyes admits that her household now consists of only two persons. (Keyes Decl., 2:6-7.)

Goldfarb &
Lipman LLP
1300 Clay Street
Ninth Floor
Oakland
California
94612
510 836-6336
510 836-1035 FAX

ii.     **Respondents Have Given All Required Compensation.**

Some Arroyo Vista households have located suitable replacement housing and moved. Those households have received Section 8 vouchers guaranteeing that their new residences will be as affordable to their households as their Arroyo Vista residences were. (Gouig Decl., 11:16; Richman Decl., 20:28-21:2.) 24 C.F.R. § 970.21(a)(1); 25 Cal. Code Regs. § 6104(a)(1). At their election, they have received either payment of their actual moving expenses or a fixed reimbursement of up to $1650 per household for estimated moving costs. (Gouig Decl., at 11:17; Richman Decl., at 21:4-6.) 24 C.F.R. § 970.21(e)(2); 25 Cal. Code Regs. § 6090(a), (e). DHA has also advanced up to $2400 to each household for a security deposit, and up to $75 for credit check fees. (Gouig Decl., at 11:18-21; Richman Decl., at 21:2-4.) 24 C.F.R. § 970.21(e)(2); 25 Cal. Code Regs. § 6090(a), (e). Petitioners' evidence demonstrates no probability that Respondents have provided inadequate relocation assistance to those Arroyo Vista households who have moved since April 2007.

iii.    **The Relocation Law Did Not Require Relocation Assistance Between July 2006 and April 2007.**

Despite complaining that Respondents *should not* have provided relocation assistance to Arroyo Vista tenants who have moved out recently, Petitioners also complain that Respondents *should* have provided relocation assistance to Arroyo Vista tenants who moved as long ago as July 2006. Petitioners err, however, in assuming that the "initiation of negotiations" occurred then (*see* Motion, at 20:17-19), because, as noted above, the "initiation of negotiations" for a redevelopment project does not occur until the public and private parties have entered into a written agreement for the project, 25 Cal. Code Regs. § 6040(a)(1). Moreover, as a closer review of Respondents' actions makes clear, Petitioners can point to no event preceding the April 2007 ENRA—and none occurred—that might have made Arroyo Vista's tenants eligible under California law for relocation assistance.

Goldfarb &
Lipman LLP
1300 Clay Street
Ninth Floor
Oakland
California
94612
510 836-6336
510 836-1035 FAX

22
POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION (3:07-cv-05794 MHP)
1460\03\525474.4

(1)    **DHA Did Not Commit in July 2006 to Sell Arroyo Vista.**

The resolutions adopted by the DHA Board of Commissioners in July 2006 did not commit DHA to redevelop Arroyo Vista in any specific manner or on any specific timetable. (Exhs. A, B.) Following adoption of Resolutions 11-06 and 12-06, negotiations occurred between Respondents' and Real Parties' staff members. (Gouig Decl., at 7:3-27.) But between July 24, 2006, and April 3, 2007, the DHA Board of Commissioners adopted no resolutions and took no actions committing DHA to any particular terms for sale of Arroyo Vista to Real Parties. (*Id.*, at 7:3-13.) Moreover, during that period DHA's only communications to tenants about redevelopment stated that no agreement had yet been reached, and that no tenant needed to move. (*See* July 2006 Newsl. [Greif Decl., Exh. 11, at 000261].) Until April 2007, DHA had no obligation to provide even informational relocation assistance to any Arroyo Vista tenant.

(2)    **DHA Did Not Induce Any Tenant to Move Between July 2006 and August 2007.**

Petitioners also imply falsely that DHA may have given tenants "inducement" or "encouragement" between July 2006 and August 2007 to move (Motion, at 22:5-6), rendering those tenants eligible for relocation assistance. *See* 25 Cal. Code Regs. § 6034(a)(5) (making eligible any person who moves "as the result of pending acquisition" and "as a result of inducement or encouragement by the public entity"). Petitioners present no evidence whatsoever to support this speculation. The only evidence of "inducement" or "encouragement" before this Court is that DHA has offered tenants relocation assistance, including Section 8 vouchers from HACA. But that assistance was made available only beginning in August 2007 and so could not have possibly induced anyone to move in the period between July 2006 and August 2007.

Finally, even after the "initiation of negotiations," a person is eligible for relocation assistance only if he or she moves "as the result of the pending acquisition." 25 Cal. Code Regs. § 6034(a)(4). Petitioners present no evidence, however, that any tenant moved away from Arroyo Vista between July 2006 and August 2007 for reasons relating in any way to Arroyo Vista's potential redevelopment. For this reason as well, Respondents ask this Court to rule that

Goldfarb &
Lipman LLP
1300 Clay Street
Ninth Floor
Oakland
California
94612
510 836-6336
510 836-1035 FAX

Petitioners have a low probability of succeeding on any claim demanding relocation compensation for tenants who moved out of Arroyo Vista between July 2006 and August 2007.

### 5.    DHA's Refusal to Re-Rent Units That Have Become Vacant Since August 2007 Does Not Violate the Housing Act.

Petitioners' allegation that DHA has violated the Housing Act by refusing to re-rent vacant housing units at Arroyo Vista ignores the Housing Act regulations. As noted above, the regulations state plainly that if tenants move away from a public housing complex while an application for disposition or demolition of that complex is pending before HUD, the public housing authority "should not re-rent these units at turnover while HUD is considering its application for demolition or disposition." 24 C.F.R. § 970.25(a). Having submitted its disposition application in August 2007, DHA is in compliance with, rather than in violation of, the law by refusing to re-rent Arroyo Vista units as those units become vacant.

### 6.    The Injunction Requested is Vague and Overbroad.

Petitioners also have a low probability of obtaining as permanent relief in this action the relief their motion demands for the interim, because the relief they demand is unclear. Fed R. Civ. P. 65(d)(1); *Reno Air Racing Ass'n v. McCord*, 452 F.3d 1126, 1132 (9th Cir. 2006). Aside from their specific allegations regarding Respondents' relocation efforts, Petitioners do not identify any activities that this Court could enjoin under the guise of enjoining "implementation" of the DDA. Yet "implementation" of the DDA could encompass many lawful activities, including responding to questions from HUD regarding the disposition application, *see* 42 U.S.C. § 1437p(b)(1) (authorizing the Secretary of HUD to request additional information regarding disposition applications), and proceeding with preparation of an environmental impact analysis for the proposed redevelopment, *see* 24 C.F.R. § 970.13. Even if Petitioners were correct that the Housing Act precluded approval of any DDA before approval of a disposition application, Petitioners proffer no reason for this Court to enjoin these activities.

Likewise, Petitioners' proposed injunction fails to distinguish between offering relocation assistance to those tenants who request it and "encouraging, pressuring, threatening, or coercing any occupant to move." If Petitioners' view of the law were correct, Respondents would be under

Goldfarb &

Lipman LLP

1300 Clay Street

Ninth Floor

Oakland

California

94612

510 836-6336

510 836-1035 FAX

an obligation, and would have been since July 2006, to offer relocation assistance to departing tenants. Yet under the terms proposed by Petitioners, Respondents could not know how much assistance to offer, or how assertively to advise tenants, without violating this Court's order. This Court, therefore, should to decline to enter the order proposed by Petitioners.

**B.      Petitioners Will Not Suffer Irreparable Injury if This Court Denies the Requested Injunction.**

If this Court denies the injunction Petitioners request, no Petitioner will suffer any irreparable harm. No one will be required to move unless and until HUD approves the disposition application and the revitalization project goes forward. At the same time, any tenant who chooses to move now will receive the full panoply of relocation benefits required under the Housing Act and the Relocation Law. As required by the HUD regulations, DHA will hold units vacant but cannot demolish them without HUD approval. Thus, if HUD ultimately rejects the application, those units will again be available for rent to eligible families.

**C.      The Balance of Hardships Does Not Favor Petitioners.**

On the other hand, if this Court grants the injunction Petitioners request, DHA will cease providing relocation assistance to Petitioners or to any other current Arroyo Vista tenant. This outcome would cause significant hardship to Petitioners' neighbors, many of whom may prefer that relocation assistance remain available to them. Moreover, the injunction Petitioners request would not allay their anxiety over Arroyo Vista's proposed redevelopment, because it would not cause DHA to withdraw its disposition application or to repudiate its commitment to redevelopment. And if HUD were then to approve DHA's application to dispose of Arroyo Vista, Petitioners as well as their neighbors will have less time to secure new housing, and more competition for that housing, than they would have if Respondents continued offering early relocation assistance to those households who desire it. On balance Petitioners' request would harm the Arroyo Vista community rather than serving it.

## IV.      CONCLUSION

Petitioners have a low probability of success in this action, but a high probability of harming their neighbors. Respondents urge this Court to deny Petitioners' motion.

Goldfarb &
Lipman LLP
1300 Clay Street
Ninth Floor
Oakland
California
94612
510 836-6336
510 836-1035 FAX

1

DATED:  February 11, 2008                    GOLDFARB & LIPMAN LLP

2

3                                            By:    /s/ Juliet E. Cox
                                                    JULIET E. COX
4                                                   Attorneys for Respondents and Real Parties in
                                                    Interest DUBLIN HOUSING AUTHORITY;
5                                                   HOUSING AUTHORITY OF THE COUNTY
                                                    OF ALAMEDA; SCS DEVELOPMENT
6                                                   COMPANY; and EDEN HOUSING, INC.

7

8

9

10

11

12

13

14

15

16

17

18

19

Goldfarb &       20

Lipman LLP       21

1300 Clay Street 22

Ninth Floor      23

Oakland          24

California        25

94612            26

510 836-6336     27

510 836-1035 FAX 28

POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION (3:07-cv-05794 MHP)
1460\03\525474.4