1   LEE C. ROSENTHAL, State Bar #58778
    lrosenthal@goldfarblipman.com
2   ROBERT C. MILLS, State Bar #158097
    rmills@goldfarblipman.com
3   JULIET E. COX, State Bar #214401
    jcox@goldfarblipman.com
4   GOLDFARB & LIPMAN LLP
    1300 Clay Street, Ninth Floor
5   Oakland, California 94612
    Telephone:  (510) 836-6336
6   Facsimile:  (510) 836-1035

7   Attorneys for Respondents and Real Parties in
    Interest DUBLIN HOUSING AUTHORITY;
8   HOUSING AUTHORITY OF THE COUNTY OF
    ALAMEDA; SCS DEVELOPMENT COMPANY;
9   and EDEN HOUSING, INC.

10  JOSEPH M. QUINN, State Bar #171898
    jquinn@meyersnave.com
11  ARIANA MOHIT, State Bar #211407
    amohit@meyersnave.com
12  MEYERS, NAVE, RIBACK, SILVER & WILSON
    575 Market Street, Suite 2600
13  San Francisco, California 94105
    Telephone:  (415) 421-3711
14  Facsimile:  (415) 421-3767

15  Attorneys for Respondent CITY OF DUBLIN

16              UNITED STATES DISTRICT COURT

17            NORTHERN DISTRICT OF CALIFORNIA

18  ARROYO VISTA TENANTS ASS'N et al.,          Case No.: Case No.: 3:07-cv-05794-MHP

19              Petitioners,                    **NOTICE OF MOTION AND MOTION
                                                BY RESPONDENTS FOR SUMMARY
20          v.                                  JUDGMENT OR, IN THE
                                                ALTERNATIVE, FOR SUMMARY
21  CITY OF DUBLIN et al.,                      ADJUDICATION; MEMORANDUM OF
                                                POINTS AND AUTHORITIES**
22              Respondents,
                                                Date:       March 31, 2008
23  SCS DEVELOPMENT COMPANY et al.              Time:       2:00 p.m.
                                                Location:   Courtroom 15, United States
24          Real Parties in Interest.           District Court, Northern District of
                                                California, Courtroom 15, United States
25                                              District Court, Northern District of
                                                California, 450 Golden Gate Avenue, San
26                                              Francisco, California 94102

27

28

Goldfarb &
Lipman LLP
1300 Clay Street
Ninth Floor
Oakland
California
94612
510 836-6336
510 836-1035 FAX

# TABLE OF CONTENTS

**Page**

I.  Introduction and Summary of Argument ........................................................................ 1

II.  Factual Summary .......................................................................................................... 4

III.  Argument ..................................................................................................................... 4

    A.  Approval of the DDA Did Not Violate the United States Housing Act. ............... 4

        1.  The DDA Expressly Conditions Disposition of Arroyo Vista on Approval by HUD. .............................................................................. 5

        2.  The Housing Act Does Not Forbid Agreements to Dispose of Property if, But Only If, HUD Approves Those Agreements. ................. 5

            a.  Conditional Agreements Like the DDA Enable Full Compliance With the Housing Act's Disposition Regulations. ......................................................................... 6

            b.  Petitioners' Interpretation of the Housing Act and its Regulations is Unreasonable. .................................................. 7

        3.  This Court Lacks Jurisdiction to Consider Any Other Dispute Over Approval of DHA's Disposition Plan. ......................................... 8

            a.  Before This Court May Review and Approve or Disapprove DHA's Disposition Application, HUD Must Do So. ........................................................................................... 9

            b.  Petitioners' Allegations Regarding the DDA Relate to Matters Over Which the Housing Act Gives HUD Jurisdiction. .............................................................................. 9

    B.  Approval of the DDA Did Not Violate the California Relocation Law. .............. 10

        1.  The California Relocation Law Does Not Apply to Arroyo Vista's Redevelopment. ...................................................................... 10

        2.  Adoption of the DDA Did Not Violate Any Relocation Law Applicable to Arroyo Vista's Redevelopment. ........................................... 11

            a.  A Relocation Plan Is a Prerequisite to Forced Displacement, Not to Adoption of a DDA. ................................. 12

            b.  No Duty to Prepare a Plan Arose Before April 2007. ................. 13

            c.  The DDA Itself Commits Respondents to Preparing a Relocation Plan Before Demanding Any Tenant's Relocation. .......................................................................... 13

            d.  Respondents Gave All Notices That Could or Should Have Preceded Adoption of the DDA. .................................. 14

Goldfarb &
Lipman LLP

1300 Clay Street

Ninth Floor

Oakland

California

94612

510 836-6336

510 836-1035 FAX

# TABLE OF CONTENTS
## (continued)

**Page**

        i.     DHA Gave All General Notices Required Before Adoption of the DDA. ...................................... 14

        ii.    Individualized Eligibility Notices Were Not Required Before Adoption of the DDA. ........................... 15

    e.    The DDA Itself Commits Respondents to All Remaining Required Relocation Notices. ....................................... 15

C.    Respondents Have Not Displaced Any Arroyo Vista Tenant in Violation of the Housing Act or the California Relocation Law. ........................................ 16

    1.    DHA's Offers of Assistance Do Not Constitute a Premature Relocation Campaign. ................................................................ 16

        a.    DHA Has Not Required Any Arroyo Vista Household to Move Out. .................................................................. 17

        b.    DHA Has Not Pressured Any Arroyo Vista Household to Move Out. .................................................................. 17

        c.    Petitioners Present No Evidence that DHA Intends to Violate the Housing Act by Evicting Tenants Who Cannot Secure Replacement Housing. ........................................ 18

    2.    Neither the Housing Act Nor the Relocation Law Forbids Providing Relocation Assistance to Interested Tenants Before Giving Any Tenant a Relocation Deadline. ................................. 19

        a.    The Housing Act Does Not Forbid Offering Relocation Assistance While a Disposition Application is Pending. .............. 20

        b.    The Relocation Law Contemplates the Availability of Relocation Assistance Before a Relocation Plan is Complete. ........................................................... 21

        c.    Petitioners' View of the Law Is Unreasonable. ........................... 21

    3.    DHA Has Provided All Relocation Assistance Due. ............................... 22

        a.    No Petitioner Has Yet Relocated Without Required Assistance, Because No Petitioner Has Yet Relocated. ................. 22

        b.    Tenants Who Have Moved Since August 2007 Have Received Relocation Assistance In Excess of All Requirements. ....................................................... 23

            i.     Respondents Have Given All Required Information. ........ 23

            ii.    Respondents Have Given All Required Compensation. ............................................... 24

Goldfarb &
Lipman LLP
1300 Clay Street
Ninth Floor
Oakland
California
94612
510 836-6336
510 836-1035 FAX

RESPONDENTS' MOTION FOR SUMMARY JUDGMENT OR SUMMARY ADJUDICATION (3:07-cv-05794 MHP)
1460\03\501297.3

# TABLE OF CONTENTS
### (continued)

**Page**

c.  Relocation Assistance Was Not Necessary Between July 2006 and April 2007. .................................................. 24

    i.  DHA Did Not Commit in July 2006 to Sell Arroyo Vista. ...................................................................... 25

    ii. No Tenant Moved Between July 2006 and August 2007 Because of Arroyo Vista's Proposed Redevelopment. .............................................. 25

IV.  Conclusion ..................................................................... 25

Goldfarb &

Lipman LLP

1300 Clay Street

Ninth Floor

Oakland

California

94612

510 836-6336

510 836-1035 FAX

# TABLE OF AUTHORITIES

**Page**

## CASES

*Abbott Laboratories v. Gardner*, 387 U.S. 136 (1967)................................................................... 8

*City of San Diego v. Whitman*, 242 F.3d 1097 (9th Cir. 2001)...................................................... 8

*United Auto Workers Local 887 v. Department of Transportation*, 25 Cal.Rptr.2d 290

  (Cal. Ct. App. 1993) ................................................................................................................. 10

## FEDERAL STATUTES

42 U.S.C. § 1437p.................................................................................................... 3, 8, 9, 10

## FEDERAL REGULATIONS

24 C.F.R. § 970.7 ........................................................................................................... 3, 5

24 C.F.R. § 970.9 ............................................................................................................... 6

24 C.F.R. § 970.15 ......................................................................................................... 3, 10

24 C.F.R. § 970.17 .......................................................................................................... 3, 5

24 C.F.R. § 970.19 ............................................................................................................. 6

24 C.F.R. § 970.21 ..................................................................................................... 10, 19, 23

24 C.F.R. § 970.25 ............................................................................................................ 20

24 C.F.R. § 970.29 ............................................................................................................. 3

## CALIFORNIA STATUTES

Cal. Govt. Code § 7260 ............................................................................................... 10, 14, 20

Cal. Govt. Code § 7261 ...................................................................................................... 11

Cal. Govt. Code § 7267.8 .................................................................................................... 10

Goldfarb &
Lipman LLP
1300 Clay Street
Ninth Floor
Oakland
California
94612
510 836-6336
510 836-1035 FAX

RESPONDENTS' MOTION FOR SUMMARY JUDGMENT OR SUMMARY ADJUDICATION (3:07-cv-05794 MHP)
1460\03\501297.3

1

**TABLE OF AUTHORITIES**
(continued)

2

**Page**

3

CALIFORNIA REGULATIONS

4  25 Cal. Code Regs. § 6008 ............................................................................... 12, 14

5  25 Cal. Code Regs. § 6034 ............................................................................... 14, 21, 25

6  25 Cal. Code Regs. § 6038 ............................................................................... 11, 21

7  25 Cal. Code Regs. § 6040 ............................................................................... 12, 14, 24

8  25 Cal. Code Regs. § 6042 ............................................................................... 15

9  25 Cal. Code Regs. § 6046 ............................................................................... 14, 15

10  25 Cal. Code Regs. § 6086 .............................................................................. 21

11  25 Cal. Code Regs. § 6090 .............................................................................. 23

12  25 Cal. Code Regs. § 6104 .............................................................................. 23

13

14

15

16

17

18

19

Goldfarb &

Lipman LLP

1300 Clay Street

Ninth Floor

Oakland

California

94612

510 836-6336

510 836-1035 FAX

20

21

22

23

24

25

26

27

28

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD IN THIS ACTION:**

PLEASE TAKE NOTICE that on March 31, 2008, at 2:00 p.m. or as soon thereafter as this matter may be heard before the Honorable Judge Marilyn Hall Patel in Courtroom 15 of this Court, located at 450 Golden Gate Avenue, 18th Floor, San Francisco, California 94102, Respondents Dublin Housing Authority, Housing Authority of the County of Alameda, and City of Dublin will and hereby do move under rule 56 of the Federal Rules of Civil Procedure for summary judgment in this matter or, in the alternative, for summary adjudication of issues.

This motion will be made on the ground that there is no genuine issue as to any material fact and that Respondents are entitled to judgment as a matter of law, because approval by Respondents of the Disposition and Development Agreement (the "DDA") for the Arroyo Vista public housing complex violated neither the United States Housing Act nor the California Relocation Law; because any other complaint about the merits or validity of the DDA is unripe for this Court's review; and because Respondents have violated neither state nor federal law by providing relocation assistance to tenants and former tenants at Arroyo Vista at the time and in the manner that they have provided such assistance.

This motion will be based on this Notice and Memorandum of Points and Authorities; on the Declarations and Exhibits submitted in support of and in opposition to Petitioners' Motion for Preliminary Injunction; and on such other and further evidence and argument as this Court may permit at or in advance of its hearing on this Motion.

## I.     INTRODUCTION AND SUMMARY OF ARGUMENT

This lawsuit attacks efforts by the Dublin Housing Authority ("DHA"), the City of Dublin, and the Housing Authority of the County of Alameda ("HACA") to improve both the quality and the quantity of affordable housing in Dublin. Facing insurmountable needs for rehabilitation at its Arroyo Vista public housing complex, as well as declining federal financial support, DHA elected to seek approval from the United States Department of Housing and Urban Development ("HUD") for a plan to redevelop Arroyo Vista in cooperation with the City and HACA. (Gouig Decl., at 3:8-8:15.) Petitioners—four of more than 400 Arroyo Vista tenants

Goldfarb &
Lipman LLP
1300 Clay Street
Ninth Floor
Oakland
California
94612
510 836-6336
510 836-1035 FAX

and a 31-member "tenants' association" formed just for this lawsuit (*see* Supp. Keyes Decl., at 2:8-17)—oppose this plan.

Beginning in 2003, the City, DHA, and HACA undertook a lengthy, public process to develop this plan. (Gouig Decl., at 4:26-8:7.) With tenant input, DHA examined the complex's rehabilitation needs as well as the financial resources potentially available to meet those needs, and examined as well whether or not any for-profit or non-profit developers could propose a redevelopment plan constituting an acceptable alternative. (*Id.*, at 6:1-15.) Eventually, in July 2007, Respondents DHA, HACA, and the City entered into a Disposition and Development Agreement (the "DDA") with non-profit developer Eden Housing and for-profit developer Citation Homes Central (together, "Real Parties"), describing a redevelopment project (the "Revitalization Plan") for Arroyo Vista. (*Id.*, at 7:24-8:7 & Exh. F.)

Under the United States Housing Act of 1937, as amended (the "Housing Act"), HUD must give its approval before DHA can sell the Arroyo Vista property to Real Parties. For this reason, the DDA conditions Arroyo Vista's sale and subsequent redevelopment on HUD's approval of DHA's application to dispose of the property. (Exh. F, at 65, 82.) If HUD disapproves DHA's proposal, the Revitalization Plan will not occur.

Despite this contingency, Petitioners assert that the Housing Act forbade DHA's even approving the DDA before HUD had approved Arroyo Vista's disposition. This assertion finds no support in the Housing Act or the Act's implementing regulations. (*See* Parts III.A & III.B, below.) Petitioners' view of the law would not protect public housing tenants or the public, because it would require HUD to speculate about hypothetical dispositions that might or might not ever occur rather than deciding based on a clear, certain proposal whether or not disposition of a public housing complex satisfies the requirements of the Housing Act. Moreover, Petitioners' disagreements with the Revitalization Plan itself are unripe for this Court's review, because HUD has not yet acted to approve or disapprove DHA's disposition application.

The Revitalization Plan, if approved, would require relocation of all Arroyo Vista tenants. Beginning in April 2007, DHA began fielding inquiries from Arroyo Vista residents who wished to move out even though they did not yet have to. (Rizzo-Shuman Decl., at 13:20-

Goldfarb &
Lipman LLP

1300 Clay Street

Ninth Floor

Oakland

California

94612

510 836-6336

510 836-1035 FAX

24; Richman Decl., at 20:6-9.) To assist those residents, DHA began in June 2007 offering advisory assistance, and in August 2007 providing financial assistance, to those Arroyo Vista families who wished to move out while DHA's application to HUD was pending. (Rizzo-Shuman Decl., at 14:10-13; Meade Decl., at 17:13-21; Richman Decl., at 20:18-26.) Since August 2007, approximately 50 households have moved away from Arroyo Vista. (Richman Decl., at 20:27.) Because HUD has not yet acted on DHA's application to dispose of Arroyo Vista, however, DHA has not required any tenant to move. (Gouig Decl., at 10:26-11:4.)

On the basis of nothing more than suspicion and hyperbole, Petitioners attack this attempt by DHA to aid their neighbors. They assert that DHA has illegally "displaced" tenants, but cite as evidence only the fact that DHA has offered tenants relocation assistance. Petitioners themselves have chosen to remain Arroyo Vista residents for the time being, and DHA has respected that choice. (Gouig Decl., at 10:26-11:4; Rizzo-Shuman Decl., at 14:10-15:12.)

As long as DHA does not require or compel any tenant to move, no law prohibits DHA's providing relocation assistance to interested Arroyo Vista tenants before HUD approves DHA's pending disposition application. (*See* Parts III.C.1 & 2, below.) The availability of relocation benefits may have played a role in the decisions of those families who have moved from Arroyo Vista in the last six months, but the availability of those benefits does not amount to illegal "pressure" or "encouragement" to move under the Housing Act or the California Relocation Law. Any other conclusion would cause substantial detriment not only to Petitioners' neighbors who wish to move at this time, but to Petitioners themselves.

Finally, and in direct contradiction to their contention that DHA should not yet have offered relocation assistance to Arroyo Vista's tenants, Petitioners contend that DHA has failed to offer adequate assistance. This claim fails as well, because DHA has followed, and has committed to follow, all laws governing provision of relocation assistance to Arroyo Vista's households. (*See* Part III.C.3, below.) Because Petitioners' allegations fail on the facts and the law, Respondents ask this Court to order entry of judgment in this action for Respondents.

Goldfarb &

Lipman LLP

1300 Clay Street

Ninth Floor

Oakland

California

94612

510 836-6336

510 836-1035 FAX

## II.   FACTUAL SUMMARY

A full summary of the facts material to this action appeared in Respondents' Memorandum of Points and Authorities in Opposition to Motion by Petitioners for Preliminary Injunction. Because the Court is familiar with these facts from its recent review of that motion, Respondents have elected not to repeat that summary here.

## III.   ARGUMENT

Petitioners' claims rest on misinterpretation of both the law and the facts. Petitioners ask this Court to forbid activities that the Housing Act and the Relocation Law require, and to require activities that these laws forbid. In addition, the evidence shows not that Respondents have violated or are likely to violate any law but that Respondents have followed scrupulously all laws governing Arroyo Vista's redevelopment. Respondents ask this Court to grant summary judgment for Respondents.

### A.   Approval of the DDA Did Not Violate the United States Housing Act.

A housing authority whose governing board concludes that selling or demolishing authority-owned public housing will serve the public interest must apply to HUD for permission to sell or demolish the housing. 42 U.S.C. § 1437p; *see also* 24 C.F.R. § 970.7(a). The authority must certify in its application that the disposition or demolition plan it proposes satisfies the standards set forth in the Housing Act. 42 U.S.C. § 1437p(a); *see also* 24 C.F.R. §§ 970.7, 970.15, 970.17. HUD, in turn, must review that certification against "information and data available to the Secretary or information or data requested by the Secretary" to determine whether or not to approve the application. 42 U.S.C. § 1437p(b); *see also* 24 C.F.R. § 970.29. In short, Congress has set standards for disposition of authority-owned public housing and has given HUD primary authority to review DHA's disposition proposal for compliance with those standards.

Petitioners allege truthfully that DHA has applied to HUD for permission to dispose of Arroyo Vista. (Petition, 9:27-28; Answer, 7:12-13.) Petitioners also allege truthfully that HUD has not yet acted on that application. (Petition, 10:4-5; Answer, 7:16-18.) Because the DDA does not commit DHA to dispose of Arroyo Vista unless and until HUD approves the application,

Goldfarb &
Lipman LLP
1300 Clay Street
Ninth Floor
Oakland
California
94612
510 836-6336
510 836-1035 FAX

Respondents have not violated the Housing Act simply by approving the DDA. Furthermore, because HUD has yet to act on DHA's application, any other complaint by Petitioners about the Revitalization Plan is not yet ripe for this Court's review.

**1.    The DDA Expressly Conditions Disposition of Arroyo Vista on Approval by HUD.**

In direct contradiction to Petitioners' allegations, the DDA states explicitly that DHA has no obligation to convey Arroyo Vista to the Developers unless HUD approves that conveyance. According to Article 12, Section 12.1 of the DDA,

> The parties hereto acknowledge that this Agreement and the conveyance of the Property are subject to HUD approval. Developer and the Authority agree to cooperate to obtain all necessary HUD approvals and acknowledge that HUD approvals must be obtained as a condition precedent to certain obligations contained herein. *Nothing herein shall be understood to authorize or obligate the Authority to act in the absence of required HUD approvals.*

(DDA, § 12.1 [Exh. F, at 82], emphasis added.) Likewise under Article 15, Section 15.1(b), "receipt of all necessary government approvals and permits, including without limitation HUD's approval of the Revitalization Plan and this Agreement" is a "condition precedent to the Authority's, City's, and Developer's ability to proceed with the Development." (*Id.*, § 15.1 [Exh. F, at 85].) And under Article 6, Section 6.1(a), "No portion of the Property shall be conveyed by the Authority until all disposition requirements identified herein and in the Revitalization Plan have been fully satisfied." (*Id.*, § 6.1(a) [Exh. F, at 65].) The DDA simply does not commit DHA to conveying Arroyo Vista to the Real Parties without HUD's approval.

**2.    The Housing Act Does Not Forbid Agreements to Dispose of Property if, But Only If, HUD Approves Those Agreements.**

Because the DDA expressly conditions sale of Arroyo Vista on HUD's approval of the Revitalization Plan described by the DDA, approval of the DDA could violate the Housing Act only if the Housing Act prohibited such conditional agreements. The Housing Act imposes no such constraint, however. Instead, although the Housing Act requires HUD's approval before disposition or demolition occurs, the Housing Act not only permits pre-application planning activities but in fact requires a housing authority to have a comprehensive and certain plan for

Goldfarb &
Lipman LLP
1300 Clay Street
Ninth Floor
Oakland
California
94612
510 836-6336
510 836-1035 FAX

disposition or demolition before it makes its application to HUD for approval. The DDA represents such a plan, and its formation contingent on later approval by HUD is fully consistent with Respondents' obligations under the Housing Act.

### a. Conditional Agreements Like the DDA Enable Full Compliance With the Housing Act's Disposition Regulations.

Under both the Housing Act and its implementing regulations, HUD must review not just a housing authority's proposal to sell its property but the entire program or plan involving disposition. An application to HUD for permission to sell public housing property must describe the precise property the housing authority intends to sell; the method and timetable for the sale transaction; the expected gross and net profits from sale; and an "itemization of estimated costs to be paid out of gross proceeds and the proposed use of any net proceeds." 24 C.F.R. § 970.7(a). Moreover, the application must show why the disposition is in the best interests of residents or the housing authority. 24 C.F.R. §§ 970.7(a)(5), 970.17. To make this showing, a disposition plan must be clear and certain enough to permit a meaningful HUD review.

The plan must also be feasible. Otherwise, if the housing authority cannot implement the plan HUD has approved, any new plan requires a new application to HUD for approval. 24 C.F.R. § 970.7(b)(2). To avoid a spiral of plan approvals, modifications, and reapprovals, a housing authority needs assurance before seeking HUD approval for a disposition plan that it will be able to carry out that plan.

The DDA represents such a plan for the property. It includes a detailed description of the number, type, and affordability of the units to be developed (DDA, §§ 2.3–2.5 [Exh. F, at 48-51]); detailed financing provisions setting out what amounts the Real Parties will pay and how DHA will use those funds (DDA, §§ 2.8–2.11 [Exh. F, at 51-55]); and a detailed schedule of performance (DDA, Exh. E [Exh. F, at 110-13]). Sale and conveyance of the property to the Real Parties, however, and the subsequent demolition of the existing units and construction of new ones, is all contingent on HUD approval of the disposition application. If HUD agrees that the project described in the DDA satisfies DHA's duties under the Housing Act, HUD will approve it; if not, DHA will have no obligation to proceed. (DDA, § 15.1 [Exh. F, at 85].)

Goldfarb &
Lipman LLP
1300 Clay Street
Ninth Floor
Oakland
California
94612
510 836-6336
510 836-1035 FAX

In fact, HUD's regulations contemplate that housing authorities will develop detailed and feasible disposition plans by negotiating agreements with redevelopers before seeking HUD approval. HUD may authorize a "negotiated sale for reasons found to be in the best interests of the [housing authority] or the federal government," 24 C.F.R. § 970.19(a), which HUD could do only if it understood the sale terms. The HUD form for disposition applications asks specifically whether or not the proposed disposition is the result of a "negotiated sale" (Greif Decl., Exh. 3, at 000137), because HUD approves dispositions resulting from negotiated sales *if* HUD agrees that the sale terms satisfy the Housing Act. Respondents' and Real Parties decision to negotiate sale of Arroyo Vista contingent on HUD's approval does not violate the Housing Act.

### b.    Petitioners' Interpretation of the Law is Unreasonable.

The rule Petitioners advocate is not necessary to ensure that Petitioners have a meaningful opportunity to participate in shaping the Revitalization Plan, because Petitioners have already had such an opportunity. Respondents developed the Revitalization Plan in consultation with Arroyo Vista's tenants (Gouig Decl., at 6:1-15), and HUD will review this consultation as part of its review of DHA's disposition application. *See* 24 C.F.R. § 970.9(a). Nevertheless, Petitioners did not comment to the DHA Board of Commissioners in any way regarding the proposed ERNA before the Board approved it in April 2007; likewise, Petitioners did not comment to the Board in any way regarding the proposed DDA before the Board approved that agreement in July 2007. (Gouig Decl., at 7:13-17, 7:27-8:3.) Intervention by this Court is not necessary to give Petitioners a second chance to participate in this public process.

Now that Respondents and Real Parties have approved the DDA, if HUD approves of Arroyo Vista's disposition the DDA will serve to bind not only Respondents but also Real Parties to carrying out the Revitalization Plan as set forth in the DDA. If Petitioners were correct that the Housing Act prohibited conditional agreements like the DDA, however, a public housing authority desiring to redevelop its property could never secure any commitment from any redeveloper before applying to HUD for permission to dispose of public housing units for redevelopment. Instead, a public housing authority concluding that rehabilitation or continued operation of its public housing units was not financially feasible would have to apply for HUD

Goldfarb &
Lipman LLP
1300 Clay Street
Ninth Floor
Oakland
California
94612
510 836-6336
510 836-1035 FAX

7

permission to dispose of those units without any assurance that a redeveloper would be available upon HUD's approval.

Further, to minimize the risk that HUD approval would turn out to be moot, such applications would necessarily be as nonspecific as possible. A rule prohibiting agreements for disposition of a public housing complex even if those agreements were expressly conditioned on HUD's approval would encourage public housing authorities to submit applications covering a variety of possible disposition scenarios, in hopes that at least one would prove feasible following HUD approval. In this case, by contrast, because Respondents and Real Parties approved a DDA before DHA submitted its disposition application to HUD, Petitioners and other interested persons know *exactly* what Respondents and Real Parties will do, and when they will do it, *if* HUD says that they may.

Rather than denying HUD or Petitioners the opportunity for meaningful review of Arroyo Vista's proposed disposition, Respondents' and Real Parties' choice to document the Revitalization Plan in a DDA contingent upon HUD's approval provides the most meaningful opportunity possible, because it means that the entire Revitalization Plan is available for review.[1] Petitioners suggest no method *other* than a DDA conditioned on HUD's approval by which Respondents might have extracted commitments from a developer that would give them assurance that the redevelopment contemplated in the disposition application could and would go forward, if and when HUD approved it. Respondents and Real Parties urge this Court to rule that that Housing Act permits approval of a conditional DDA before submission to HUD of a disposition application.

### 3. This Court Lacks Jurisdiction to Consider Any Other Dispute Over Approval of DHA's Disposition Plan.

Petitioners devote the majority of their Petition to issues that the Housing Act assigns to HUD for review. Yet Petitioners allege truthfully that HUD has not yet completed its review of

Goldfarb &
Lipman LLP

1300 Clay Street

Ninth Floor

Oakland

California

94612

510 836-6336

510 836-1035 FAX

---

[1] Ironically, Petitioners' comments both to Respondents and to HUD regarding the DDA's alleged deficiencies suggest that Petitioners believe that the DDA does not go far enough in binding Real Parties if HUD approves disposition. (*See*, *e.g.*, Greif Decl., Exh. 9, at 000221 [critiquing the "bedroom mix" for the proposed development]; *id.*, Exh. 12, at 000278-79.)

DHA's disposition application. To the extent that the Petition may state any claim under the Housing Act except a claim that formation of the DDA itself violates the Housing Act, Respondents and Real Parties ask this Court to dismiss the Petition as unripe.

### a.    Before This Court May Review and Approve or Disapprove DHA's Disposition Application, HUD Must Do So.

As Petitioners acknowledge (Petition, 12:19-22), the Housing Act gives HUD responsibility for determining whether or not DHA's application to dispose of Arroyo Vista satisfies the Housing Act's standards. DHA must apply to HUD for permission to dispose of Arroyo Vista, and the Secretary of HUD must apply the statutory criteria to DHA's application in deciding whether or not to approve it. 42 U.S.C. § 1437p. Although this Court may have authority to review HUD's decision on DHA's application *after* HUD makes it, this Court may not—and need not—review DHA's disposition application *before* HUD has had an opportunity to carry out its review responsibility.

The "basic rationale" for the ripeness doctrine is "to protect [administrative] agencies from judicial interference until an administrative decision has been formalized." *Abbott Laboratories v. Gardner*, 387 U.S. 136, 148-49 (1967); *see also City of San Diego v. Whitman*, 242 F.3d 1097, 1101-02 (9th Cir. 2001) (holding that a city's lawsuit seeking review of an issue raised in its pending application before a federal administrative agency was "premature" until the agency had made a final decision on the application). In this matter, Petitioners acknowledge HUD's review authority and acknowledge as well that this HUD review is incomplete. On this basis, Respondents and Real Parties ask this Court to refuse Petitioners' invitation to intervene in this unripe dispute.

### b.    Petitioners' Allegations Regarding the DDA Relate to Matters Over Which the Housing Act Gives HUD Jurisdiction.

Petitioner's allegations regarding the DDA's compliance with the Housing Act and its implementing regulations all relate to issues that are presently before HUD. Petitioners allege that disposition and redevelopment of Arroyo Vista may cause extreme hardship for some Arroyo Vista tenants; but if these allegations were true, that potential hardship might affect

Goldfarb &
Lipman LLP
1300 Clay Street
Ninth Floor
Oakland
California
94612
510 836-6336
510 836-1035 FAX

9

whether or not disposition of Arroyo Vista would serve the best interest of Arroyo Vista residents or of DHA. *See* 42 U.S.C. § 1437p(a)(2)(B)(i). Petitioners allege as well that disposition and redevelopment of Arroyo Vista may exacerbate racial segregation in Dublin; but again, even if Petitioners' speculation proved true, that potential segregation might affect whether or not disposition of Arroyo Vista would produce results inconsistent with other provisions of the Housing Act. *See* 42 U.S.C. § 1437p(a)(2)(B)(iii). Finally, Petitioners allege that DHA did not consult them in developing its disposition plan; but even if this false allegation were true, that consultation is a factor HUD must evaluate in reviewing DHA's application. *See* 42 U.S.C. § 1437p(a)(6), (b)(2).

HUD will address all these issues when it decides whether or not DHA may carry out the DDA. In the meantime, Petitioners' challenge in this Court to the DDA on these bases is unripe. For this reason, Respondents and Real Parties ask this Court to dismiss all purported claims under the Housing Act that the Court does not simply adjudicate in Respondents' favor.

**B.    Approval of the DDA Did Not Violate the California Relocation Law.**

Petitioners' demand that this Court set aside the DDA because it violates the California Relocation Law fares no better than their demand based on the Housing Act. In the first place, the Relocation Law does not apply to redevelopment of Arroyo Vista. In the second place, even if the Relocation Law did apply, neither formation nor implementation to date of the DDA would have violated the Relocation Law.

**1.    The California Relocation Law Does Not Apply to Arroyo Vista's Redevelopment.**

The California Relocation Law and its implementing regulations apply generally to projects in which a California public agency sells real property subject to an agreement that the buyer will use the property in a specific manner. Cal. Govt. Code § 7260(c)(1)(A)(i). Under the Relocation Law, however, "with respect to a federally funded project, a public entity shall make relocation assistance payments and provide relocation advisory assistance as required under federal law." *Id.* § 7267.8(b); *see also* 25 Cal. Code Regs. § 6018 ("If a public entity undertakes a project with federal financial assistance and consequently must provide relocation assistance

Goldfarb &

Lipman LLP

1300 Clay Street

Ninth Floor

Oakland

California

94612

510 836-6336

510 836-1035 FAX

and benefits as required by federal law, the provisions of the Act and Guidelines shall not apply."). Because DHA presently operates Arroyo Vista with federal financial assistance (Petition, 6:14-7:3; Answer, 4:23), the United States Housing Act and its implementing regulations describe the relocation assistance DHA must provide if it disposes of or demolishes Arroyo Vista. 42 U.S.C. § 1437p(a)(4); 24 C.F.R. § 970.21. Petitioners' assumption that the California Relocation Law governs Respondents' and Real Parties' activities to redevelop Arroyo Vista is incorrect.

Respondents and Real Parties acknowledge that one division of the California Court of Appeal has interpreted the California Relocation Law to require a California public entity using federal financial assistance to comply with *both* state and federal law. *United Auto Workers Local 887 v. Department of Transportation*, 25 Cal.Rptr.2d 290, 293, 295 (Cal. Ct. App. 1993). This interpretation of the Relocation Law contradicts its plain language, however, and would impose mandatory duties on DHA in connection with its application to dispose of Arroyo Vista that extend far beyond the duties Congress and HUD have chosen to impose. Respondents and Real Parties urge this Court to evaluate Respondents' relocation activities with reference only to the Housing Act and its implementing regulations.

### 2. Adoption of the DDA Did Not Violate Any Relocation Law Applicable to Arroyo Vista's Redevelopment.

Resolution of this conflict is not strictly necessary to resolution of this case, however, because Respondents and Real Parties have crafted the DDA to meet or exceed the requirements of both state and federal law. Contrary to Petitioners' allegations, even if the Relocation Law applied it would not have prohibited Respondents' and Real Parties' approving the DDA before they had prepared a relocation plan or before they had given Arroyo Vista's tenants firm notice that they would need to relocate. Rather, the Relocation Law requires a relocation plan and written relocation deadlines before DHA can demand that any tenant relocate. Because the DDA calls for full compliance with all relocation obligations, and because it confirms that DHA will not demand any tenant's relocation unless and until HUD states that DHA may do so, adoption of the DDA did not violate the law.

Goldfarb &
Lipman LLP
1300 Clay Street
Ninth Floor
Oakland
California
94612
510 836-6336
510 836-1035 FAX

RESPONDENTS' MOTION FOR SUMMARY JUDGMENT OR SUMMARY ADJUDICATION (3:07-cv-05794 MHP)
1460\03\501297.3

**a.    A Relocation Plan Is a Prerequisite to Forced Displacement, Not to Adoption of a DDA.**

The Relocation Law requires a public agency with relocation obligations to prepare a relocation plan describing how the agency will fulfill those obligations. Cal. Govt. Code § 7261(a); 25 Cal. Code Regs. § 6038. This plan must be complete "prior to proceeding with any phase of a project or other activity that will result in displacement." 25 Cal. Code Regs. § 6038(a). Petitioners misread this phrase, suggesting to this Court that preparation of a relocation plan must be the very first step in any project that may cause displacement, so that such a plan is complete before "any phase" of such a project proceeds.

The regulation does not support this unreasonable interpretation. Rather, the regulation states that preparation of a plan must begin "[a]s soon as possible following the initiation of negotiations," *id.*, meaning that plan preparation may occur at the same time as negotiations and other planning activities for a project. Furthermore, preparation of a relocation plan that includes the detail required by the Relocation Law, *see* 25 Cal. Code Regs. § 6038(b), would be impossible until negotiations had produced an agreement on a project's scope and timing. Without such agreement, the plan could not include projected dates of displacement, analysis of relocation needs for *all* potentially displaced persons, or identification of funding sources for relocation payments. The relocation plan would be just a shot in the dark.

For these reasons, the proper interpretation of the Relocation Law requires completion of a relocation plan before any displacing phase of a project, but not before any earlier planning or negotiation phase that does not require displacement of anyone. DHA began preparation of a detailed relocation plan promptly after approving the DDA establishing the Revitalization Plan, and will soon circulate that plan for public comment. (Gouig Decl., 9:3-9, 11-25-12:2.) Moreover, the DDA itself recognizes that DHA must arrange in accordance with all applicable state and federal relocation requirements to relocate all Arroyo Vista residents before redevelopment may proceed. (DDA, § 4.2(a) [Exh. F at 61].) The DDA commits Respondents to satisfying the Relocation Law's requirements relating to preparation of a relocation plan.

Goldfarb &

Lipman LLP

1300 Clay Street

Ninth Floor

Oakland

California

94612

510 836-6336

510 836-1035 FAX

**b.    No Duty to Prepare a Plan Arose Before April 2007.**

Petitioners' position also rests on an overall misreading of the Relocation Law's regulations.[2] These regulations define "initiation of negotiations" for most projects as "[t]he initial written offer made by the acquiring entity to the owner of real property to be purchased, or the owner's representative." 25 Cal. Code Regs. § 6008(n). In this case, however, rather than acquiring property, the public entity is selling it: The acquiring entities are Real Parties, and the real property's present owner is DHA. (DDA, § 2.2 [Exh. F, at 47].)

The regulations address this circumstance directly:

> For projects by private parties with an agreement with a public entity, the "initiation of negotiations" shall be the *later* of the date of acquisition or the date of the written agreement between the private entity and the public entity for purposes of acquiring or developing the property for the project.

25 Cal. Code Regs. § 6040(a)(1) (emphasis added). Contrary to Petitioners' implication, then, the Relocation Law contemplates specifically that a public agency will enter into a redevelopment agreement such as the DDA before having prepared its relocation plan, because it bases the obligation to prepare a plan on the prior existence of such an agreement. Respondents did not violate the Relocation Law by agreeing to the DDA.

**c.    The DDA Itself Commits Respondents to Preparing a Relocation Plan Before Demanding Any Tenant's Relocation.**

Together, the DDA and DHA's disposition application to HUD ensure satisfaction of the Relocation Law to the extent that it applies to Arroyo Vista's redevelopment. DHA committed in the DDA to "relocate all residents of [Arroyo Vista] to relocation housing, in accordance with the Revitalization Plan and in compliance with all Applicable Requirements[3], including HUD" and to pay "all federal and state relocation benefits, costs incurred in moving residents to their

---

[2] Their position rests as well on a misreading of Respondents' Answer. Respondents admitted that DHA had adopted a resolution in July 2006 authorizing DHA staff members to negotiate with Real Parties (Answer, at 6:14-16), but did not concede that this resolution constituted the "initiation of negotiations" within the meaning of the Relocation Assistance Law.

[3] The DDA defines "Applicable Requirements" as "applicable Federal, State, and local laws, rules and regulations." (DDA, § 1.1(i) [Exh. F, at 43].)

Goldfarb &
Lipman LLP
1300 Clay Street
Ninth Floor
Oakland
California
94612
510 836-6336
510 836-1035 FAX

new homes, and any other cost or expense arising from or related to all relocation matters in connection with the Revitalization Plan." (DDA, § 4.2 [Exh. F, at 61].) Moreover, DHA committed in its application to HUD for permission to dispose of Arroyo Vista to prepare "a comprehensive relocation plan," to distribute that plan "to residents for comment," and to present the plan "for adoption by the Housing Authority Commission at a public meeting." (Disposition Application, § 7 [Greif Decl., Exh. 3, at 000149].)

Respondents and Real Parties have agreed in the DDA that conveyance and demolition of Arroyo Vista will occur, if at all, only after HUD approves disposition of Arroyo Vista. (DDA, § 12.1 [Exh. F, at 82].) Until such time, the Arroyo Vista redevelopment will not have reached any "phase . . . that will result in displacement"; and by that time, in accordance with the DDA, the relocation plan will be ready. This order of events satisfies all relocation laws applicable to disposition and redevelopment of Arroyo Vista.

### d. Respondents Gave All Notices That Could or Should Have Preceded Adoption of the DDA.

Petitioners are also wrong in alleging that DHA violated the law by approving the DDA before issuing "an informational notice or notice of eligibility for relocation assistance." (Petition, 16:14-15.) In the first place, DHA did give Arroyo Vista's tenants informational notices about the proposed redevelopment long before DHA approved the DDA. In the second place, notices establishing individual tenants' eligibility for relocation assistance are not required by the Relocation Law in advance of DDA approval. DHA violated no law by approving the DDA before giving such notices.

### i. DHA Gave All General Notices Required Before Adoption of the DDA.

DHA has provided information regularly to Arroyo Vista tenants regarding Arroyo Vista's potential redevelopment. (*See* July 2006 Newsletter [Greif Decl., Exh. 11, at 000261]; June 2007 Newsletter [Greif Decl., Exh. 11, at 000263]; July 2007 Newsletter [Greif Decl., Exh. 11, at 000265]; Sept. 2007 Newsletter [Greif Decl., Exh. 11, at 000270]; Nov. 2007 Newsletter [Greif Decl., Exh. 11, at 000273]; Dec. 2007 Newsletter [Greif Decl., Exh. 7, at 000214].) In

Goldfarb &
Lipman LLP
1300 Clay Street
Ninth Floor
Oakland
California
94612
510 836-6336
510 836-1035 FAX

addition, in April 2007, DHA notified each household in writing that relocation assistance would be available, and explained how to seek that assistance. (General Information Notice [Exh. I].) *See* 25 Cal. Code Regs. § 6040(a)(1) (requiring a general notice regarding "the availability of relocation benefits and assistance and the eligibility requirements therefor"). Petitioners' allegation that Respondents have failed to give this notice is false.

### ii.    Individualized Eligibility Notices Were Not Required Before Adoption of the DDA.

The Relocation Law's regulations require "individual, written notification" to all persons whose eligibility for relocation benefits "has been established." 25 Cal. Code Regs. § 6046(d). Eligibility under the Relocation Law for assistance depends not only on a covered agency's intent to displace people to accommodate a public project, but also on individual characteristics of the displaced person, such as whether or not the person was even a lawful tenant at the site. *Id.* § 6008(f)(3). Moreover, until an agency has announced a commitment to a project that may result in displacement, persons who move cannot logically be deemed to have moved as a "direct result" of that project. Cal. Govt. Code § 7260(c); 25 Cal Code Regs. §§ 6034, 6040(a). For these reasons, a blanket notice to all tenants of eligibility is neither required nor possible before adoption of a DDA.[4]

### e.    The DDA Itself Commits Respondents to All Remaining Required Relocation Notices.

Under the Relocation Law's implementing regulations, covered agencies must give residents at least 90 days' advance notice of relocation deadlines. 25 Cal. Code Regs. §§ 6042, (d), 6046. As noted above, the DDA commits Respondents to full compliance with all applicable relocation requirements. (DDA, § 4.2 [Exh. F, at 61].) In addition, DHA's application to HUD for permission to dispose of Arroyo Vista represents that DHA will give at least 90 days' notice to tenants that they must relocate if and when HUD approves the application (Disposition

---

[4] Since adoption of the DDA, every household who has contacted OPC to arrange for aid in relocating has received an individualized eligibility notice explaining in detail the advisory services and financial compensation available to that household. (Richman Decl., at 20:18-26; Veal Decl., Exhs. 2, 3.)

Goldfarb &
Lipman LLP
1300 Clay Street
Ninth Floor
Oakland
California
94612
510 836-6336
510 836-1035 FAX

Application, § 7 [Greif Decl., Exh. 3, at 000137); and DHA's draft relocation plan proposes 150 days' notice (Gouig Decl., at 11:26-27.) In short, Respondents have stated repeatedly their intent to comply with the law. Because formation of the DDA did not violate any relocation law applicable to redevelopment of Arroyo Vista, and because the DDA does not call for violation of any such law, Respondents and Real Parties ask this Court to refuse to set the DDA aside.

**C.      Respondents Have Not Displaced Any Arroyo Vista Tenant in Violation of the Housing Act or the California Relocation Law.**

As Petitioners note, some Arroyo Vista tenants have elected already to move, and have received assistance from Respondents in doing so. (Petition, 17:23-26; Richman Decl., at 20:27.) Petitioners' allegations with respect to these former tenants' moves are fundamentally inconsistent, however. On the one hand, Petitioners allege that Respondents have violated the Relocation Law by providing relocation assistance to Arroyo Vista residents before completing a relocation plan or giving those tenants notices that included a deadline for moving. (Petition, 17:20-22, 18:10-11.) Yet on the other hand, Petitioners allege that Respondents have violated the Relocation Law by failing to provide relocation assistance to Arroyo Vista residents who moved away from Arroyo Vista in 2006, long before DHA had committed itself to the redevelopment project described in the DDA. (Petition, 18:22-25.) Neither of these contentions is correct.

**1.      DHA's Offers of Assistance Do Not Constitute a Premature Relocation Campaign.**

Although Petitioners allege that DHA has "displaced" some former Arroyo Vista tenants (Petition, 17:24-26), DHA's actions do not bear this characterization. The "evidence" in support of this assertion includes no testimony from even one of those allegedly "unlawfully displaced" households; instead, Petitioners' "evidence" consists with only one exception of declarations by persons who state that they have *not* moved away from Arroyo Vista. (*See* Arroyo Decl., at 2:5; Brown Decl., at 2:4-5; Costello Decl., at 2:4-6; C. Evans Decl, at 3:12; Keyes Decl., at 2:4-5; Sanders Decl., at 2:4-5; Veal Decl., at 2:2-4.) None of this evidence shows that DHA is responsible for displacing any household.

Goldfarb &
Lipman LLP
1300 Clay Street
Ninth Floor
Oakland
California
94612
510 836-6336
510 836-1035 FAX

### a.    DHA Has Not Required Any Arroyo Vista Household to Move.

Since entering into the ENRA, DHA has not given any Arroyo Vista tenant written notice demanding possession of that tenant's residence. (Gouig Decl., at 10:10-11:4.) Petitioners present no evidence to the contrary; instead, Petitioners present only evidence that *they* remain residents at Arroyo Vista. (*See* Arroyo Decl., at 2:5; Brown Decl., at 2:4-5; Keyes Decl., at 2:4-5; Veal Decl., at 2:2-4.) This Court need look no further to conclude that Respondents have not compelled any tenant to move.

### b.    DHA Has Not Urged Any Arroyo Vista Household to Move.

Without any evidence, Petitioners are left to speculate that their neighbors have moved due to fear or misinformation. (*See, e.g.*, Sanders Decl., at 3:3-5.) Yet although Petitioners state that *they* do not want to move at this time, Petitioners present no evidence that the 50 *other* Arroyo Vista households who have moved shared Petitioners' view. Indeed, the conclusion is at least equally plausible that those households wanted to move, because moving now was convenient or because they viewed available relocation assistance as an opportunity to improve their housing circumstances.

Petitioners' supporter Gretta Evans, for example, sought out housing in the city of Patterson even after learning that she could not use a Section 8 voucher to rent it. (G. Evans Decl., at 4:12-16, 5:17-18, 5:28-6:1.) Furthermore, Ms. Evans knew that she could keep her Arroyo Vista household together either by remaining at Arroyo Vista or by using a Section 8 voucher to rent a four bedroom residence in or around Dublin (*id.*, at 4:17-5:13; *see also* Richman Decl., at 21:7-22; Morris Decl., at 25:11-14; Meade Decl., at 18:6-10); but she elected instead to move in with different family members and give her daughter Carolyn an opportunity to live independently (G. Evans Decl., at 6:1-20). Rather than illustrating how Respondents have violated the law, Ms. Evans's story illustrates how Respondents have followed it.

Petitioners *admit* that DHA's written communications with Arroyo Vista tenants have stressed the fact that no tenant need move at this time. (Greif Decl., Exhs. 7, 11.) Moreover the evidence demonstrates that DHA and OPC have worked carefully to give residents accurate information, and assistance to meet their needs, without pressuring them to move. (Rizzo-

Goldfarb &

Lipman LLP

1300 Clay Street

Ninth Floor

Oakland

California

94612

510 836-6336

510 836-1035 FAX

Shuman Decl., at 14:7-15:12; Richman Decl., at 20:6-20.) Tenants who have asked DHA or OPC for aid have received what they asked for. (*See, e.g.*, G. Evans Decl., at 4:3-9; Keyes Decl., 4:9-11, 4:27-5-2; Veal Decl., 3:14-16, 4:16-25; *see also* Morris Decl., at 23:21-24:17, 25:25-26:6.) Tenants who have not asked for aid have not received it, although they have received assurances that aid will be available if and when they want it. (*See, e.g.*, Brown Decl., at 2:15-16, 26-27; Keyes Decl., at 3:8-10, 16-17; Veal Decl., at 2:8-11.)

Petitioners may dispute the details of their conversations with DHA's employees and agents, but the most generous interpretation of the *undisputed* evidence is that some declarants have misunderstood some information regarding when they may have to move and what will happen if they do. All written information has been consistent with the commitments made by DHA's Board of Commissioners, and consistent with the law: It has assured residents that relocation assistance will be available when they want it, but that they need not move at this time. (*See* July 2006 Newsletter [Greif Decl., Exh. 11, at 000261]; General Information Notice [Exh. I]; June 2007 Newsletter [Greif Decl., Exh. 11, at 000263]; July 2007 Newsletter [Greif Decl., Exh. 11, at 000265]; Sept. 2007 Newsletter [Greif Decl., Exh. 11, at 000270]; Nov. 2007 Newsletter [Greif Decl., Exh. 11, at 000273]; Dec. 2007 Newsletter [Greif Decl., Exh. 7, at 000214]; see also Rizzo-Shuman Decl., at 14:7-15:12; Meade Decl., at 18:6-20; Morris Decl., at 23:21-24:17, 25:25-26:6; Laverde Decl., at 29:8-16.) Under these circumstances, Petitioners cannot succeed on their claim that DHA has "pressured" or "encouraged" residents to move in a manner violating either the Housing Act or the Relocation Law.

c.    **Petitioners Present No Evidence that DHA Intends to Violate the Housing Act by Evicting Tenants Who Cannot Secure Replacement Housing.**

The DDA commits HACA to providing Section 8 vouchers for every Arroyo Vista household that is both eligible for the Section 8 program and eligible for assistance in relocating from Arroyo Vista. (DDA, § 3.4(b) [Exh. F, at 60.) To allay tenant concerns about voucher availability, DHA has informed tenants of HACA's commitment repeatedly and in writing. (*See* May 2006 Newsletter [Greif Decl., Exh. 11, at 000259]; July 2006 Newsletter [Greif Decl., Exh. 11, at 000261-62]; July 2007 Newsletter [Greif Decl., Exh. 11, at 000265].) DHA has also held,

Goldfarb &
Lipman LLP
1300 Clay Street
Ninth Floor
Oakland
California
94612
510 836-6336
510 836-1035 FAX

and continues to hold as requested, regular tenant information meetings to assist interested tenants in obtaining and using Section 8 vouchers.[5] (Rizzo-Shuman Decl., at 14:10-15; Meade Decl., at 17:13-21.)

Moreover, even if Section 8 assistance proved unavailable or inadequate for any household, the DDA expressly commits DHA to satisfying the all relocation regulations. Under the DDA, if HUD approves DHA's disposition application, DHA will "relocate all residents of [Arroyo Vista] to relocation housing, in accordance with the Revitalization Plan and in compliance with all Applicable Requirements, including HUD" and will pay "all federal and state relocation benefits, costs incurred in moving residents to their new homes, and any other cost or expense arising from or related to all relocation matters in connection with the Revitalization Plan." (DDA, § 4.2 [Exh. F, at 61].) In sum, Respondents have explicitly committed to follow the law, not to break it.

### 2. Neither the Housing Act Nor the Relocation Law Forbids Providing Relocation Assistance to Interested Tenants Before Giving Any Tenant a Relocation Deadline.

Although both the Relocation Law and the Housing Act regulations impose certain conditions on agencies' power to relocate tenants by evicting them, they do not require tenants to stand firm until eviction in order to qualify for relocation assistance. Neither law forbids DHA's providing information and practical and financial relocation assistance to tenants who decide that they prefer to move now, even though they do not have to. Furthermore, neither law gives tenants who oppose Arroyo Vista's redevelopment, or who prefer not to move, the right to prohibit their neighbors' taking advantage of such assistance. And finally—as Petitioners themselves contend—the Relocation Law, if it applied here, might *require* DHA to provide such assistance. Respondents ask this Court to reject Petitioners' self-contradictory interpretation of the Housing Act and the Relocation Law and to rule that Respondents' relocation-related actions to date have not violated any law.

Goldfarb &
Lipman LLP
1300 Clay Street
Ninth Floor
Oakland
California
94612
510 836-6336
510 836-1035 FAX

---

[5] No tenant has requested such a meeting since October 2007, however. (Rizzo-Shuman Decl., at 14:12-13.)

RESPONDENTS' MOTION FOR SUMMARY JUDGMENT OR SUMMARY ADJUDICATION (3:07-cv-05794 MHP)
1460\03\501297.3

a.    **The Housing Act Does Not Forbid Offering Relocation Assistance While a Disposition Application is Pending.**

The Housing Act regulations plainly require public housing authorities to provide relocation assistance to their tenants, consisting of aid in locating replacement housing as well as reimbursement for moving-related expenses, after approval of a disposition or demolition application for those tenants' homes.[6] 24 C.F.R. § 970.21(e)(2). The regulations require further that the applying agency develop a plan for providing that assistance; describe that plan in its application; and, if HUD approves the application, implement the plan before carrying out the approved disposition or demolition. *Id.* §§ 970.21(d), (f). DHA's disposition application included a summary of its relocation plan, which HUD will approve or disapprove as part of its decision on the application. (Disposition Application, § 7 [Greif Decl., Exh. 3, at 000148-50].)

The HUD regulations do not state specifically how a public housing authority should treat tenants who would like to move after the housing authority determines that it will submit an application but before HUD acts on that application. They do, however, state that a public housing authority "should not re-rent these units at turnover while HUD is considering its application for demolition or disposition." 24 C.F.R. § 970.25(a). The regulations certainly do not prohibit DHA from providing relocation assistance to those tenants who, after assessing their own personal situations and the future prospects for Arroyo Vista, have decided it is better to move now rather than waiting for HUD to make a decision on the application.

For these reasons, DHA has offered relocation assistance to all households who wish to move now, and has in fact assisted nearly 50 households to date. According to Petitioners, however, housing authorities must refrain from offering relocation assistance to such tenants, lest those tenants accept it. Rather, Petitioners believe that housing authorities must wait until HUD approves their disposition or demolition applications, with associated relocation plans, and until they have issued firm notices to tenants to vacate their homes, before providing assistance even

Goldfarb &
Lipman LLP
1300 Clay Street
Ninth Floor
Oakland
California
94612
510 836-6336
510 836-1035 FAX

---

[6] The regulations also specifically permit a housing authority to use Section 8 vouchers to replace public housing units, as long as relocating households actually succeed in securing otherwise comparable rental housing with those vouchers. 24 C.F.R. § 970.21(a)(1).

RESPONDENTS' MOTION FOR SUMMARY JUDGMENT OR SUMMARY ADJUDICATION (3:07-cv-05794 MHP)
1460\03\501297.3

to tenants who demand it. Petitioners' strained interpretation of the Housing Act and HUD regulations finds no support in the statute or regulations themselves.

### b. The Relocation Law Contemplates the Availability of Relocation Assistance Before a Relocation Plan is Complete.

The Relocation Law defines a "displaced person" eligible for relocation assistance as one who moves as "a *direct result*" of a public agency's conversion of the displaced person's former home to public use. Cal. Govt. Code § 7260(c) (emphasis added). The regulations implementing this definition require that relocation benefits be available to "[a]ny person who occupies property from which he will be displaced," as well as to "any person who, following the initiation of negotiations by a public entity, moves as the result of the pending acquisition."[7] 25 Cal. Code Regs. § 6034(a)(1), (4). And the regulations likewise base the obligation to prepare a relocation plan on the date of "initiation of negotiations." *Id.* § 6038(a).

Petitioners interpret these regulations to forbid provision of relocation assistance before completion of a relocation plan, but the regulations do not support this interpretation. Rather, because the "initiation of negotiations" marks the beginning *both* of the obligation to provide assistance and of the obligation to prepare a plan "as soon as possible" thereafter, *id.*, the regulations necessarily permit both processes to occur at the same time. Also, the Relocation Law entitles persons to relocation assistance if they move "following receipt of a Notice of Intent to Displace," *id.* § 6034(a)(5), which notice may issue "*at any time* after forming a reasonable expectation of acquiring real property," *id.* § 6086 (emphasis added). The Relocation Law does not forbid the course of action Respondents have chosen.

### c. Petitioners' View of the Law Is Unreasonable.

Petitioners' interpretation of the Housing Act and the Relocation Law is not only unsupported by the statutory and regulatory text, but also impractical and unfair. Petitioners suggest that DHA must wait to offer replacement housing until HUD determines whether or not

---

[7] Were Petitioners correct that Relocation Law applied in this case, and that the "initiation of negotiations" under the Relocation Law occurred in July 2006, DHA would already be *obliged*, rather than simply permitted, to offer relocation assistance to Arroyo Vista's tenants.

Goldfarb & Lipman LLP

1300 Clay Street

Ninth Floor

Oakland

California

94612

510 836-6336

510 836-1035 FAX

"comparable" replacement housing is available, even though nearly 50 Arroyo Vista households have already determined for themselves that their new homes are acceptable (Richman Decl., at 20:27). Moreover, Petitioners offer no rationale—and none exists—for a rule that would require all 150 Arroyo Vista households to compete at the same time in Dublin's rental housing market, and that would require households for whom moving is most convenient now (or for whom moving becomes most convenient during the summer, such as families with children) nevertheless to wait for moving aid until HUD has acted on DHA's disposition application.

Petitioners do not want to move unless they have to, and DHA has not asked any Petitioner to move. But Petitioners' suit amounts to a demand that this Court order DHA to cease assisting Petitioners' neighbors, thus forcing those neighbors to join Petitioners in waiting until Arroyo Vista's redevelopment is a certainty before planning to move. Because Petitioners' interpretation of the Housing Act and the Relocation Law would elevate Petitioners' desires over their neighbors' and would hamper Petitioners' neighbors in planning their own families' responses to Arroyo Vista's proposed redevelopment, Respondents ask this Court to reject it.

**3.    DHA Has Provided All Relocation Assistance Due.**

Ironically, given their contention that DHA's current provision of relocation assistance violates the law, Petitioners also contend that DHA has broken the law by failing to provide adequate relocation assistance. Yet on closer inspection, this contention that DHA has provided too little in relocation assistance suffers from the same flaws as Petitioners' contention that DHA has provided too much. Petitioners present no evidence that any former Arroyo Vista resident received benefits falling short in any way of the benefits the Housing Act and the Relocation Law require.

**a.    No Petitioner Has Yet Relocated Without Required Assistance, Because No Petitioner Has Yet Relocated.**

Even if Petitioners had standing to complain for themselves about DHA's relocation assistance, their suggestion that DHA has displaced them without offering adequate relocation assistance is nonsense: *Every Petitioner remains an Arroyo Vista resident*. And there is no evidence that DHA will refuse to provide the Petitioners the benefits to which they are entitled if

Goldfarb & Lipman LLP
1300 Clay Street
Ninth Floor
Oakland
California
94612
510 836-6336
510 836-1035 FAX

RESPONDENTS' MOTION FOR SUMMARY JUDGMENT OR SUMMARY ADJUDICATION (3:07-cv-05794 MHP)
1460\03\501297.3

and when they choose to move or DHA requires them to move. To the contrary, the record shows that DHA continues to offer assistance to Petitioners and has not demanded that any Petitioner move. (Rizzo-Shuman Decl., at 14:21-15:12; Meade Decl., at 18:6-20.)

Respondents are well aware that some Arroyo Vista tenants will have special and difficult relocation needs, as Petitioners' declarations illustrate. If HUD approves disposition of Arroyo Vista, however, DHA has committed itself to providing relocation assistance to every tenant in a manner meeting or exceeding all legal requirements. (DDA, § 4.2 [Exh. F, at 61].) No order from this Court is necessary to ensure that Respondents follow the law.

### b.    Tenants Who Have Moved Since August 2007 Have Received Relocation Assistance In Excess of All Requirements.

Moreover, although Petitioners make vague and unsupported allegations that other Arroyo Vista tenants have not received all assistance or compensation to which the Relocation Law might entitle them, Petitioners fail completely to identify those former tenants or to specify the compensation they allegedly deserve. The evidence shows that DHA has offered all required assistance, and has actually provided it to all Arroyo Vista households who have requested it. Petitioners' complaints to the contrary are incorrect.

### i.    Respondents Have Given All Required Information.

As noted above, DHA has provided regular updates, a General Information Notice regarding Arroyo Vista's potential redevelopment, and individualized eligibility notices (*See* July 2006 Newsletter [Greif Decl., Exh. 11, at 000261]; June 2007 Newsletter [Greif Decl., Exh. 11, at 000263]; July 2007 Newsletter [Greif Decl., Exh. 11, at 000265]; Sept. 2007 Newsletter [Greif Decl., Exh. 11, at 000270]; Nov. 2007 Newsletter [Greif Decl., Exh. 11, at 000273]; Dec. 2007 Newsletter [Greif Decl., Exh. 7, at 000214]; General Information Notice [Exh. I]; Richman Decl., at 20:20-22; Veal Decl., Exhs. 2, 3.) In addition, every household who has asked for information on the Section 8 program has received that information, including a handbook describing the program in detail. (Meade Decl., at 17:17-21; Keyes Decl., Exh. 2.) And every household that has requested aid in searching for a replacement residence has received it. (G.

Goldfarb &
Lipman LLP
1300 Clay Street
Ninth Floor
Oakland
California
94612
510 836-6336
510 836-1035 FAX

Evans Decl., at 4:3-9; Keyes Decl., 4:9-11, 4:27-5-2; Veal Decl., 3:14-16, 4:16-25; Morris Decl., at 23:21-24:17, 25:25-26:6.)

### ii. Respondents Have Given All Required Compensation.

Some Arroyo Vista households have located suitable replacement housing and moved. Those households have received Section 8 vouchers guaranteeing that their new residences will be as affordable to their households as their Arroyo Vista residences were. (Gouig Decl., at 11:16; Richman Decl., at 20:28-21:2.) 24 C.F.R. § 970.21(a)(1); 25 Cal. Code Regs. § 6104(a)(1). At their election, they have received either payment of their actual moving expenses or a fixed reimbursement of up to $1650 per household for estimated moving costs. (Gouig Decl., at 11:17; Richman Decl., at 21:4-6.) 24 C.F.R. § 970.21(e)(2); 25 Cal. Code Regs. § 6090(a), (e). DHA has also advanced up to $2400 to each household for a security deposit, and up to $75 for credit check fees. (Gouig Decl., at 11:18-21; Richman Decl., at 21:2-4.) 24 C.F.R. § 970.21(e)(2); 25 Cal. Code Regs. § 6090(a), (e). All evidence demonstrates that Respondents have provided adequate relocation assistance to those Arroyo Vista households who have moved since April 2007.

### c. Relocation Assistance Was Not Necessary Between July 2006 and April 2007.

Despite complaining that Respondents *should not* have provided relocation assistance to Arroyo Vista tenants who have moved out recently, Petitioners also complain that Respondents *should* have provided relocation assistance to Arroyo Vista tenants who moved as long ago as July 2006. Petitioners err, however, in assuming that the "initiation of negotiations" occurred then, because, as noted above, the "initiation of negotiations" for a redevelopment project does not occur until the public and private parties have entered into a written agreement for the project, 25 Cal. Code Regs. § 6040(a)(1). Moreover, as a closer review of Respondents' actions makes clear, Petitioners can point to no event preceding the April 2007 ENRA—and none occurred—that might have made Arroyo Vista's tenants eligible under California law for relocation assistance.

Goldfarb &

Lipman LLP

1300 Clay Street

Ninth Floor

Oakland

California

94612

510 836-6336

510 836-1035 FAX

RESPONDENTS' MOTION FOR SUMMARY JUDGMENT OR SUMMARY ADJUDICATION (3:07-cv-05794 MHP)
1460\03\501297.3

### i.    DHA Did Not Commit in July 2006 to Sell Arroyo Vista.

The resolutions adopted by the DHA Board of Commissioners in July 2006 did not commit DHA to redevelop Arroyo Vista in any specific manner or on any specific timetable. (Exhs. A, B.) Following adoption of Resolutions 11-06 and 12-06, negotiations occurred between Respondents' and Real Parties' staff members. (Gouig Decl., at 7:3-23.) But between July 24, 2006, and April 3, 2007, the DHA Board of Commissioners adopted no resolutions and took no actions committing DHA to any particular terms for sale of Arroyo Vista to Real Parties. (*Id.*, at 7:3-13.) Moreover, during that period DHA's only communications to tenants about redevelopment stated that no agreement had yet been reached, and that no tenant needed to move. (*See* July 2006 Newsletter [Greif Decl., Exh. 11, at 000261].) Before April 2007, DHA had no obligation to provide even informational relocation assistance to any Arroyo Vista tenant.

### ii.    No Tenant Moved Between July 2006 and August 2007 Because of Arroyo Vista's Proposed Redevelopment.

Even after the "initiation of negotiations," a person is eligible for relocation assistance only if he or she moves "as the result of the pending acquisition." 25 Cal. Code Regs. § 6034(a)(4), (a)(5). Petitioners have no evidence, however, showing or even suggesting that any tenant moved away from Arroyo Vista between July 2006 and August 2007 for reasons relating in any way to Arroyo Vista's potential redevelopment. For this reason as well, Respondents ask this Court to rule that Respondents have not violated any law by failing to provide relocation compensation to tenants who moved out of Arroyo Vista between July 2006 and August 2007.

## IV.    CONCLUSION

Petitioners' lawsuit is largely unripe. Yet to the extent that Petitioners' claims are ripe, they are wrong. Respondents ask this Court to enter judgment in this action for Respondents.

Goldfarb &
Lipman LLP
1300 Clay Street
Ninth Floor
Oakland
California
94612
510 836-6336
510 836-1035 FAX

1    DATED:  February 11, 2008                    GOLDFARB & LIPMAN LLP

2

3                                          By:    /s/ Juliet E. Cox
                                                  JULIET E. COX
4                                                 Attorneys for Respondents and Real Parties in
                                                  Interest DUBLIN HOUSING AUTHORITY;
5                                                 HOUSING AUTHORITY OF THE COUNTY
                                                  OF ALAMEDA; SCS DEVELOPMENT
6                                                 COMPANY; and EDEN HOUSING, INC.

7

8

9

10

11

12

13

14

15

16

17

18

19

Goldfarb &    20

Lipman LLP    21

1300 Clay Street    22

Ninth Floor    23

Oakland    24

California    25

94612    26

510 836-6336    27

510 836-1035 FAX    28

RESPONDENTS' MOTION FOR SUMMARY JUDGMENT OR SUMMARY ADJUDICATION (3:07-cv-05794 MHP)
1460\03\501297.3