1
2
3
4
5
6
7          **Exhibit A: DHA Resolution 11-06**
8
9
10
11
12
13
14
15
16
17
18
19

Goldfarb &     20

Lipman LLP     21

1300 Clay Street  22

Ninth Floor    23

Oakland        24

California     25

94612          26

510 836-6336   27

510 836-1035 FAX 28

THE DUBLIN HOUSING AUTHORITY
RESOLUTION NO. 11-06

REDEVELOPMENT OF ARROYO VISTA

**WHEREAS,** the Dublin Housing Authority Commission ("Commission") has been considering whether to rehabilitate the Arroyo Vista complex or to redevelop the site; and

**WHEREAS,** regarding rehabilitation, the Commission contracted with CM Pros to analyze and cost out the residential and community building repairs, PERMCO Engineering & Management for the pavement and streets and MCE Corporation for the project landscaping and used its staff to update the project landscaping and irrigation costs; and

**WHEREAS,** at its meeting of June 20, 2006, the Commission heard and discussed a Staff Report, which included the recommendations of the above-mentioned firms as well as an identification of potential funding sources prepared by staff; and

**WHEREAS,** said Staff Report estimated the cost of rehabilitation to be $20.3 million and identified about $10.4 million in sources, leaving a shortfall of approximately $9.9 million; and

**WHEREAS,** on a parallel track, the Commission had issued a Request for Qualifications (RFQ) to developers interested in possibly redeveloping the Arroyo Vista property and received eight responses; and

**WHEREAS,** the Commission appointed an evaluation panel to review and score the responses and said panel determined the "top three" respondents; and

**WHEREAS,** on July 24, 2006, at a special meeting, the Commission heard presentations from the two highest-ranked developer teams; and

**WHEREAS,** Commission staff had distributed notices to every household at Arroyo Vista informing them of the June 20 and July 24, 2006 meetings; and

**WHEREAS,** at its July 24, 2006 special meeting the Commission heard comments and questions from the public, including residents of Arroyo Vista, about the two developer presentations and about relocation assistance; and

**WHEREAS,** after considering all comments and questions, hearing presentations from the developer teams, hearing comments from the public, reviewing the developers' written submittals, and reviewing the Staff Reports of June 20 and July 24, 2006 the Commission discussed rehabilitation versus redevelopment of Arroyo Vista; and

**WHEREAS,** the Commission noted the large shortfall of resources to rehabilitate the property, the decreasing HUD funding, the inability to maintain the property in a manner acceptable to Arroyo Vista residents and the City of Dublin with the amount of HUD funding available, the feasibility of redevelopment as presented by the two developer teams, the desire to have a nicer, more updated living environment for Arroyo Vista residents and the City of Dublin's housing policies that encourage mixed income developments;

3

**NOW, THEREFORE, BE IT RESOLVED,** that the Housing Commission elects not to rehabilitate the project but to redevelop the property.

**PASSED, APPROVED AND ADOPTED,** by the Commissioners of the Dublin Housing Authority on July 24, 2006, by the following vote:

| | |
|---|---|
| **AYES:** | Cmrs. Frydendal, Hildenbrand, Lockhart, McCormick, Oravetz and Zika |
| **NAYS:** | Cmr. Behrens |
| **ABSENT:** | None |
| **ABSTAIN:** | None |

Chairperson Lockhart

Christine Gouig
Executive Director
**Approved:  July 24, 2006**

4

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19

**Exhibit B: DHA Resolution 12-06**

Goldfarb &

Lipman LLP

1300 Clay Street

Ninth Floor

Oakland

California

94612

510 836-6336

510 836-1035 FAX

20
21
22
23
24
25
26
27
28

THE DUBLIN HOUSING AUTHORITY
RESOLUTION NO. 12-06

SELECT THE DEVELOPER TEAM OF
EDEN HOUSING AND CITATION HOMES TO REDEVELOP THE ARROYO VISTA PROPERTY AND
AUTHORIZE STAFF TO NEGOTIATE APPROPRIATE DOCUMENTS WITH THE DEVELOPER TEAM

**WHEREAS,** the Dublin Housing Authority Commission ("Commission") issued a Request for Qualifications (RFQ) to developers interested in redeveloping the Arroyo Vista property; and

**WHEREAS,** the Commission appointed an Evaluation Panel to review and score the eight submittals received in response to the RFQ and create a list of the "top three;" and

**WHEREAS,** the Evaluation Panel scored the submittals, interviewed its top three and forwarded its final rankings to the Commission; and

**WHEREAS,** on July 24, 2006 the top two teams, 1. Eden Housing / Citation Homes and 2. Mid-Peninsula Housing Coalition / Sun Valley Land Development Company / R.W. Hertel) made presentations of their proposals to the Commission (the third team having dropped out); and

**WHEREAS,** after hearing the presentations, asking questions, and taking comments and questions from the public the Commission discussed the merits of each team and found the proposal from Eden Housing / Citation Homes to most closely meet the goals of the Commission;

**NOW, THEREFORE, BE IT RESOLVED,** that the Housing Commission hereby selects the developer team of Eden Housing and Citation Homes to redevelop the Arroyo Vista property and authorizes Staff to negotiate the appropriate documents with the team.

**PASSED, APPROVED AND ADOPTED** by the Commissioners of the Dublin Housing Authority on July 24, 2006, by the following vote:

AYES:        Cmrs. Behrens, Frydendal, Hildenbrand, Lockhart, McCormick, Oravetz and Zika

NAYS:        None

ABSENT:      None

ABSTAIN:     None

_Janet Lockhart_
Chairperson Lockhart

_Christine Gong_
Executive Director
**Approved:  July 24, 2006**

6

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Goldfarb &

Lipman LLP

1300 Clay Street

Ninth Floor

Oakland

California

94612

510 836-6336

510 836-1035 FAX

**Exhibit C: DHA Resolution 05-07**

RESPONDENTS' EXHIBITS (3:07-cv-05794 MHP)

1460\03\528384.1

THE DUBLIN HOUSING AUTHORITY

RESOLUTION NO. 05-07

### APPROVAL OF EXCLUSIVE NEGOTIATING RIGHTS AGREEMENT FOR ARROYO VISTA

**WHEREAS,** at its July 24, 2006 meeting, the Dublin Housing Authority Commission (Commission) determined that the rehabilitation of the 150-unit Arroyo Vista public housing complex was not financially feasible and decided to redevelop the site; and

**WHEREAS,** at said meeting the Commission selected the development team of Eden Housing and Citation Homes (Developers) to redevelop the Arroyo Vista property and directed staff to negotiate appropriate documents with the Developers and return to the Commission for approval; and

**WHEREAS,** the City of Dublin's legal counsel, Meyers Nave, drafted an Exclusive Negotiating Rights Agreement (ENRA) and staff, staff from the City of Dublin, and the Developers have met, discussed the terms of the ENRA and are in agreement on its provisions;

**NOW, THEREFORE, BE IT RESOLVED,** that the Commission hereby approves the ENRA and authorizes its Executive Director to execute it on behalf of the Dublin Housing Authority.

**PASSED, APPROVED AND ADOPTED** by the Commissioners of the Dublin Housing Authority on April 3, 2007, by the following vote:

**AYES:**

**NAYS:**

**ABSTAIN:**

**ABSENT:**

Chairperson Lockhart

Christine Gouig,
Executive Director
Approved:  April 3, 2007

8

1
2
3
4
5
6
7          **Exhibit D: Exclusive Negotiating Rights Agreement**
8
9
10
11
12
13
14
15
16
17
18
19
Goldfarb &        20
Lipman LLP        21
1300 Clay Street  22
Ninth Floor       23
Oakland           24
California        25
94612            26
510 836-6336     27
510 836-1035 FAX 28

RESPONDENTS' EXHIBITS (3:07-cv-05794 MHP)

1460\03\528384.1

**EXCLUSIVE NEGOTIATING RIGHTS AGREEMENT**

**by and among**

**THE CITY OF DUBLIN,**

**THE HOUSING AUTHORITY OF THE CITY OF DUBLIN,**

**THE HOUSING AUTHORITY OF THE COUNTY OF ALAMEDA,**

**EDEN HOUSING, INC.**
**and**
**CITATION HOMES CENTRAL**

(Arroyo Vista Redevelopment)

THIS EXCLUSIVE NEGOTIATING RIGHTS AGREEMENT (this "**Agreement**") is entered into effective as of _April 11th_, 2007 ("**Effective Date**") by and among the City of Dublin, a municipal corporation ("**City**"), the Housing Authority of the City of Dublin, a public body, corporate and politic ("**Authority**"), the Housing Authority of the County of Alameda, a public body, corporate and politic ("**HACA**"), Eden Housing, Inc., a California nonprofit public benefit corporation ("**Eden**") and SCS Development Company, a California corporation, dba Citation Homes Central ("**Citation**"). Eden and Citation are hereinafter referred to collectively as "**Developer**." City, Authority, HACA, Eden and Citation are hereinafter referred to collectively as the "**Parties**."

## RECITALS

A.      The Authority seeks development of the Authority-owned property (the "**Property**") consisting of approximately 22.9 acres located near the intersection of Dougherty Road and directly across the Street from Camp Parks Military Reservation in the City of Dublin, known as Alameda County Assessor's Parcel Nos. 941-0007-001-07, and more particularly described in Exhibit A attached hereto and incorporated herein.

B.      The Property is currently developed with 150 public housing units and a children's day care center (collectively, the "**Existing Housing**"). The Authority has determined that in order to ensure that the Existing Housing meets current standards, substantial rehabilitation is necessary and that it is economically infeasible to undertake such rehabilitation given the limited revenue generated by tenant rents and subsidies provided to the Authority by the United States Department of Housing and Urban Development ("**HUD**"). Accordingly, the Authority issued a Request for Qualifications ("**RFQ**") inviting submissions from developers interested in redeveloping the site with single and multi-family housing affordable to households with a range of income levels.

C.      In response to the Authority's RFQ, Developer submitted a proposal to develop the Property as a mixed-income development consisting of single-family, multi-family and senior housing and community facilities and amenities (the "**Project**").

D.      The Authority's Commission (the "**Commission**") has directed staff to pursue negotiations with Developer regarding Developer's proposed development of the Project on the Property. The Commission has authorized the preparation of an agreement granting Developer exclusive rights to negotiate for the purpose of reaching agreement on a disposition and development agreement ("**DDA**") whose terms and conditions would govern the conveyance of the Property and the development of the Project.

E.      The City Council of the City of Dublin ("**City Council**") has authorized the use of Inclusionary Zoning In Lieu Fees to facilitate the Project because the Project will replace the Existing Housing and produce additional affordable units in excess of those required by the City's Inclusionary Zoning Ordinance, thus improving and extending the life of affordable housing in the City.

F.    Pursuant to an existing contractual arrangement, HACA provides staff and support services to the Authority.  HACA has agreed to make Section 8 Housing Choice Vouchers available to the Authority to assist the residents of the Existing Housing to relocate to other housing.

**NOW THEREFORE**, in consideration of the mutual covenants and agreements set forth herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows.

1.    <u>Disposition and Development Agreement.</u>  The Parties shall use their best efforts to successfully negotiate a DDA which shall describe the terms and conditions governing disposition of the Property and development of the Project. The Parties agree that the DDA shall include, without limitation, the following terms; provided however, nothing herein is intended to or shall limit the City's discretionary authority to approve, deny or condition specific land use entitlements for the Project:

1.1    <u>Financial Terms.</u>

1.1.1    <u>Purchase Price.</u>  The purchase price for the Property will be $12 million (**"Purchase Price"**).  This sum shall consist of the following three components:  (i) Citation will provide $8 million in equity contributions to be used as a subsidy for the replacement housing units to be developed by Eden; (ii) Citation will provide $3 million (the **"Transaction Allocation"**) to HACA to support the processing, on behalf of the Authority, of necessary HUD approvals and the conveyance of the Property; and (iii) Citation will pay $1 million (the **"Relocation Contribution"**) to Authority to cover costs associated with relocation of existing residents prior to disposition of the Property.   <u>Exhibit B</u> attached hereto sets forth preliminary Project milestones and Developer payments.

1.1.2    <u>Payment of Purchase of Price.</u>  Citation shall pay the Purchase Price in accordance with the following schedule:

(i)    Upon execution of this Agreement, Citation will make a nonrefundable deposit to City in the amount of Fifty Thousand Dollars ($50,000) (the **"Initial Deposit"**).  City shall place the Initial Deposit in a City-managed cost-recovery account to secure the payment of certain legal and consulting fees that have been or will be incurred by City and/or Authority in connection with the Project.   At close of escrow for conveyance of the Property, any remaining balance of the Initial Deposit will be credited toward the Purchase Price.

(ii)    Upon City's approval of a parcel map, a tentative map and/or a vesting tentative map for the Project (hereinafter, collectively, **"Tentative Map"**) Citation will pay:  (i) the sum of Two Hundred Fifty Thousand Dollars ($250,000) to Authority, and (ii) the sum of One Million Five Hundred Thousand Dollars ($1,500,000) to HACA. These sums shall be credited toward the Purchase Price, and shall be nonrefundable

unless Authority fails to secure HUD approval of the disposition of the Property, relocate all residents of the Existing Housing, and transfer title to the Property to Developer.

(iii)    Upon HUD approval of the disposition of the Property, Citation will pay: (i) Seven Hundred Thousand Dollars ($700,000) to Authority, and (ii) One Million Five Hundred Thousand ($1,500,000) to HACA.  These sums shall be credited toward the Purchase Price, and shall be nonrefundable unless Authority fails to relocate all residents of the Existing Housing and transfer title to the Property to Developer.

(iv)    Upon City's approval of Final Subdivision Map(s) for the Property, Citation will pay the sum of Eight Million Dollars ($8,000,000) to City or Authority, as appropriate.

1.2    City Loan.  The City will provide a deferred-payment, low-interest loan to Eden in the amount of $1.5 million to support development of the affordable rental units.

1.3    Project.  The proposed development concept for the Project includes the subdivision of the Property into three (3) separate legal parcels and the development of approximately 405 housing units consisting of:  (i) 150 affordable rental housing units (the "**Replacement Units**") that will replace the Existing Housing; (ii) 45 additional affordable units (the "**Additional Affordable Units**"); (iii) 210 market-rate for-sale units (the "**Market Rate Units**"); (iv) open space; and (v) community amenities including a community center and childcare facility.  The Replacement Units will include 100 multi-family rental units and 50 senior rental apartments.  The Additional Affordable Units will include 29 multi-family rental units and 16 for-sale units.   Citation will be responsible for development of the 226 for-sale units.  Eden will be responsible for development of the 179 multi-family and senior rental units. The Parties acknowledge that the development concept is preliminary and remains subject to change as more detailed plans are formulated during the formal planning process.

1.4    Affordability Requirements.   The Replacement Units and the Additional Affordable Units will be subject to recorded regulatory restrictions that will (i) require the rental units to be offered for rent and occupancy by extremely low-, very low-, and low-income households in accordance with the schedule set forth below for a term of at least fifty-five (55) years, and (ii) impose household income eligibility and resale price restrictions on the affordable for-sale units in accordance with the schedule set forth below for a term of at least fifty-five (55) years.  The affordability requirements for the Project shall, at minimum, meet the requirements of the City's Inclusionary Zoning Ordinance.   All of the Replacement Units will be affordable to households of extremely low-, very low-, or low-income, and shall be targeted to the income levels indicated below.

## SENIOR MULTI-FAMILY RENTAL HOUSING

Number of Units by Unit Size and Targeted Area Median Income (AMI) Levels

|  | 30% AMI | 40% AMI | 50% AMI | Sub-Total | Manager's Unit | Total |
|---|---|---|---|---|---|---|
| 1-Bedroom | 5* | 8* | 36 | 49 | 1 | 50 |

TOTAL:   50 Senior Housing Rental Units
* Targeting below 50% AMI shall be subject to HUD approval.

## MULTI-FAMILY RENTAL HOUSING

Number of Units by Unit Size and Targeted Area Median Income (AMI) Levels

|  | 30% AMI | 40% AMI | 50% AMI | 60% AMI | Sub-Total | Manager's Unit | Total |
|---|---|---|---|---|---|---|---|
| 1-Bedroom | 3 | 2 | 3 | 2 | 10 | N/A | 10 |
| 2-Bedroom | 3 | 27 | 33 | 6 | 69 | 1 | 70 |
| 3-Bedroom | 3 | 11 | 15 | 5 | 34 | N/A | 34 |
| 4-Bedroom | 4 | 6 | 5 | 0 | 15 | N/A | 15 |
| Total | 13 | 46 | 56 | 13 | 128 | 1 | 129 |

TOTAL:  129 Multi-Family Rental Units

SINGLE-FAMILY FOR-SALE TOWNHOMES

Number of Units by Unit Size and Targeted
Area Median Income (AMI) Levels

|  | 80-120% AMI | Market-Rate | Total |
|---|---|---|---|
| 3-Bedroom | 16 | N/A | 16 |
| 3 & 4-Bedroom | N/A | 210 | 210 |
| Total | 16 | 210 | 226 |

TOTAL:  226 Single-Family For-Sale Townhomes

    1.5    <u>Relocation.</u>  HACA and Authority shall develop and implement a relocation plan (the **"Relocation Plan"**) pursuant to which all eligible residents of the Existing Housing will be provided relocation assistance and benefits in compliance with all applicable state and federal laws and regulations.  The Parties shall cooperate to identify resources that may be available for this purpose.  HACA will apply to HUD for Section 8 Housing Choice Vouchers.  The proceeds of Developer's Relocation Contribution shall be used to defray the costs City, Authority or HACA incur in connection with the development and implementation of the Relocation Plan, including without limitation, costs incurred in connection with the application for and use of Section 8 Housing Choice Vouchers, up to a maximum amount equal to the Relocation Contribution.

    1.6    <u>City Approvals.</u>  Developer shall be responsible for obtaining all approvals required by City for the Project in accordance with City's standard application process for discretionary land use entitlements, including payment for all of City's costs of processing such approvals.  Nothing set forth herein shall be construed as a grant of any such approvals, or as an obligation on the part of City to grant such approvals.

    1.7    <u>AS-IS Conveyance.</u>  Neither the Authority nor the City will have responsibility for environmental remediation of any kind.  Neither the Authority nor the City make any representations or warranties regarding the physical condition of the Property or its suitability for the Project.

    2.    <u>Developer's Exclusive Right to Negotiate With Authority.</u>  Authority agrees that it will not, during the term of this Agreement, directly or indirectly, through any officer, employee, agent, or otherwise, solicit, initiate or encourage the submission of bids, offers or proposals by any person or entity with respect to the acquisition of any interest in the Property or the development of the Property, and Authority shall not engage any broker, financial adviser or consultant to initiate or encourage proposals or offers from other parties with respect to the disposition or development of the Property or any portion thereof.  Furthermore, Authority shall

not, directly or indirectly, through any officer, employee, agent or otherwise, engage in negotiations concerning any such transaction with, or provide information to, any person other than Developer and its representatives with a view to engaging, or preparing to engage, that person with respect to the disposition or development of the Property or any portion thereof.

3.    Term.  The term of this Agreement (the "**Term**") shall commence on the Effective Date, and shall terminate two hundred and seventy (270) days thereafter, unless extended or earlier terminated as provided herein.  The Authority's Executive Director, the City Manager, and the Executive Director of HACA are authorized to extend the Term by an additional one hundred and eighty (180) days upon the written agreement of the Parties without further approval of their respective governing boards.

4.    Development Costs; Design Review.  Except as otherwise expressly stated herein, Developer will be responsible for all Project development costs, including without limitation all design, development, demolition and construction costs, the cost of all permits, impact and processing fees, and the cost of all on-site and off-site public improvements required in connection with the Project.  The DDA will specify the schedule for Developer's submission and City and Authority review of design and construction drawings and plans.

5.    Planning and Entitlement Costs; Environmental Review.  Except as otherwise expressly stated herein, Developer shall be responsible for payment of all costs incurred by Authority, HACA and City in connection with the environmental review requirements associated with the disposition of the Property and development of the Project pursuant to the California Environmental Quality Act ("**CEQA**") and National Environmental Policy Act ("**NEPA**"). Exhibit C attached hereto includes a listing of anticipated planning entitlements required for the Project.

Citation and Eden will establish and fund a standard cost recovery account with the City's Planning Department to ensure prompt payment of all City costs associated with processing CEQA and NEPA clearance documents, Tentative Maps, General Plan Amendment, and zoning amendments for the project.  Citation and Eden acknowledge that they will be required to place a deposit into the cost recovery account (in an amount to be determined by the Planning Director) prior to initiating formal planning activities for the project.  Citation and Eden will be jointly responsible for payment of all planning and entitlement costs and fees as they are incurred.

6.    Expenses.  Citation and Eden will be responsible for paying up to Five Hundred Thousand Dollars ($500,000) (the "**Transactional Expense Payment**") to cover City and Authority legal, consulting and other costs and expenses incurred commencing on August 1, 2006 in connection with the negotiation and preparation of this Agreement and the DDA and other transactional activities associated with the disposition and development of the Property ("**Transactional Costs**").  The Transactional Expense Payment shall be in addition to the Purchase Price and the sums payable pursuant to Sections 4 and 5.  The Transactional Expense Payment shall be paid as follows:

(i)    Cost Recovery Account.  The City shall establish a separate cost-recovery account (the **"Transactional Cost Account"**) to manage payment of all Transactional Costs up to a maximum of $250,000.  If the total Transactional Costs incurred by the City and Authority exceed $250,000, the City will pay for such costs with funds from the City's Inclusionary Zoning In Lieu Fee Fund; provided however, upon transfer of property to Eden and/or Citation, Citation and Eden jointly and severally agree to reimburse the City for such additional costs up to the amount of $250,000 so that the aggregate amount of Transactional Costs paid by Citation and Eden does not exceed $500,000.

(ii)    Payment of Transactional Costs.  As Transactional Costs are incurred, City and Authority shall submit invoices to Eden.  Eden and Citation shall be jointly responsible for payment of such invoices, and shall ensure payment in full within 30 days after receipt.

(iii)    Use of Funds in Cost Recovery Account.  The Initial Deposit described in Section 1.1.2(i) above will be deposited into the Transactional Cost Account to serve as security to ensure prompt payment of City and Authority Transactional Costs.  If any invoice for Transactional Costs remains unpaid 30 days following transmittal to Eden, then City or Authority, as applicable, may draw funds from the Transactional Cost Account, and Citation and Eden shall be required to replenish the Transactional Cost Account up to the amount of $50,000 within 30 days.  At close of escrow for conveyance of the Property, any remaining balance of the Initial Deposit shall be credited toward the Purchase Price.

7.    Good Faith Efforts to Negotiate DDA.    The Parties shall diligently and in good faith pursue negotiation of a DDA.  Developer expressly acknowledges that a DDA resulting from negotiations contemplated hereby shall become effective only if the DDA is approved by the Commission following notice and hearing as required by applicable law and compliance with all other requirements of law, including without limitation CEQA.  Developer further acknowledges that disposition of the Property is subject to the approval of HUD and compliance with NEPA.  Without limiting the generality of the foregoing, this Agreement does not impose a binding obligation on Authority to convey the Property to Developer, nor does it obligate the Authority or the City to grant any approvals or authorizations required for the Project.

The Parties agree that they shall use good faith efforts to seek Commission approval of a DDA that includes the terms set forth in this Agreement by July 3, 2007.  The Parties acknowledge that approval and execution of the DDA will precede formal approval and adoption of environmental clearance and entitlements necessary for the development of the Project, and the Parties agree that the DDA will provide that conveyance of the Property will be expressly contingent upon (i) the certification by the City Council and, if necessary, the Commission, of an Environmental Impact Report and any other environmental documents required for the Project pursuant to CEQA and NEPA, and (ii) City Council and Commission approval, as applicable, of all discretionary

entitlements for the Project, including but not limited to Tentative Maps, PD Zoning permits, and a General Plan Amendment.

8.     Developer's Studies; Right of Entry.  During the Term, Developer shall use its best efforts to prepare, at Developer's expense, any studies, surveys, plans, specifications and reports ("**Developer's Studies**") Developer deems necessary or desirable in Developer's sole discretion, to determine the suitability of the Property for the Project. Such studies may include, without limitation, title investigation, relocation plans, marketing, feasibility, soils, seismic and environmental studies, financial feasibility analyses and design studies.  Developer shall be responsible for obtaining Authority's advance written permission from Authority's Executive Director for access to the Property as may be necessary to prepare the Developer's Studies.  In connection with entry onto the Property, Developer shall and hereby agrees to indemnify, defend (with counsel approved by Authority and City) and hold harmless the Indemnitees (defined in Section 16) from and against all Claims (defined in Section 16) resulting from or arising in connection with entry upon the Property by Developer or Developer's agents, employees, consultants, contractors or subcontractors.

Authority may require Developer to execute a right of entry agreement satisfactory to Authority prior to entry onto the Property.  The Authority's Executive Director shall have authority to sign such agreement without further approval of the Commission. Developer's inspection, examination, survey and review of the Property shall be at Developer's sole expense.  Developer shall provide Authority with copies of all reports and test results within ten (10) days following completion of such reports and testing, whether or not such reports and test results are completed prior to or after the expiration or earlier termination of this Agreement.

Developer shall repair, restore and return the Property to its condition immediately preceding Developer's entry thereon at Developer's sole expense.  Developer shall at all times keep the Property free and clear of all liens and encumbrances affecting title to the Property.  Developer's indemnification obligations, obligations to provide reports and studies, and obligations to discharge liens that attach to the Property as set forth in this Section 8 shall survive the expiration or earlier termination of this Agreement.

9.     Authority's Reports and Studies.  Within 15 days following the Effective Date, Authority and City shall make available to Developer for review or copying at Developer's expense all nonprivileged studies, nonconfidential surveys, plans, specifications, reports, and other documents concerning the physical condition of the  Property that Authority or City has in its possession or control.  Studies or documents prepared by Authority or City and their respective agents solely for the purpose of negotiating the terms of a DDA are excluded from this requirement.

10.    Relationship of Parties.  The Parties agree that nothing in this Agreement is intended to or shall be deemed or interpreted to create among them the relationship of lessor and lessee, of buyer and seller, or of partners or joint venturers.

868941-12
3-26-07

9

11.    <u>Confidentiality; Dissemination of Information.</u>  During the Term, each Party shall obtain the consent of the other Parties prior to issuing or permitting any of its officers, employees or agents to issue any press release or other information to the press with respect to this Agreement; provided however, no Party shall be prohibited from supplying any information to its representatives, agents, attorneys, advisors, financing sources and others to the extent necessary to accomplish the activities contemplated hereby so long as such representatives, agents, attorneys, advisors, financing sources and others are made aware of the terms of this Section. Nothing contained in this Agreement shall prevent any Party at any time from furnishing any required information to any governmental entity or authority pursuant to a legal requirement or from complying with its legal or contractual obligations.

12.    <u>Termination.</u>  This Agreement may be terminated at any time by mutual consent of the Parties.  Authority shall have the right to terminate this Agreement upon its good faith determination that Developer is not proceeding diligently and in good faith to carry out its obligations pursuant to this Agreement.  Authority shall exercise such right by providing at least thirty (30) days' advance written notice to Developer which notice shall describe the nature of Developer's default hereunder.  Notwithstanding the foregoing, if Developer commences to cure such default within such 30-day period and diligently prosecutes such cure to completion within the earliest feasible time but not later than thirty (30) days following the date of the notice, this Agreement shall remain in effect.  Developer shall have the right to terminate this Agreement, effective upon 30 days' written notice to Authority that Developer is unable to obtain necessary approvals, rights or interests or has determined the Project to be financially or physically infeasible and City and Authority have reviewed and agreed with Developer's determination. Notwithstanding the foregoing, during the 30-day period following Developer's notice, City and Authority shall have the right to revise the proposed Project to address the Developer's determination of infeasibility.

13.    <u>Liquidated Damages</u>. THE PARTIES AGREE THAT IF CITY OR AUTHORITY TERMINATE THIS AGREEMENT DUE TO A DEVELOPER DEFAULT, OR IF DEVELOPER TERMINATES THIS AGREEMENT FOR ANY REASON OTHER THAN (i) CITY'S, AUTHORITY'S OR HACA'S DEFAULT HEREUNDER, OR (ii) FACTS OR CIRCUMSTANCES THAT ARE BEYOND DEVELOPER'S CONTROL RENDER DEVELOPMENT OF THE PROJECT INFEASIBLE, INCLUDING BUT NOT LIMITED TO THE FOLLOWING:  (A) THE FAILURE OR REFUSAL OF ANY PUBLIC AGENCY TO APPROVE ENTITLEMENTS ALLOWING DEVELOPMENT OF THE PROPERTY AS DESCRIBED IN <u>SECTION 1.2</u>; (B) THE FAILURE OR REFUSAL OF THE CITY OR AUTHORITY, AS APPLICABLE, TO APPROVE AND EXECUTE A DDA FOR THE PROJECT; (C) THE FAILURE OR REFUSAL OF HUD TO APPROVE THE DISPOSITION OF THE PROPERTY; (D) LEGAL ACTION INSTITUTED BY EXISTING RESIDENTS OR OTHER THIRD PARTIES; (E) THE DISCOVERY OF HAZARDOUS MATERIALS ON THE PROPERTY; AND (F) THE DISCOVERY OF ENDANGERED SPECIES OR OTHER ENVIRONMENTAL CONSTRAINTS ON THE PROPERTY, CITY/AUTHORITY SHALL RECOVER FROM DEVELOPER AN AMOUNT EQUAL TO ONE HUNDRED FIFTY THOUSAND DOLLARS ($150,000) WITHOUT DEDUCTION OR OFFSET, AS

LIQUIDATED DAMAGES.  THE PARTIES AGREE THAT THE FOREGOING IS A
REASONABLE SUM CONSIDERING ALL CIRCUMSTANCES EXISTING ON THE
EFFECTIVE DATE, INCLUDING THE DIFFICULTY OR IMPRACTICALITY OF
DETERMINING THE CITY'S AND THE AUTHORITY'S ACTUAL DAMAGES.
SUCH DAMAGES WOULD INCLUDE, WITHOUT LIMITATION,   THE EXPENSE
OF CONTINUING THE OWNERSHIP OF THE PROPERTY, THE COST OF
SOLICITING AND NEGOTIATING WITH A NEW DEVELOPER, AND THE
POSTPONEMENT OF RECEIPT OF TAX REVENUES.  SUCH LIQUIDATED
DAMAGES SHALL BE CITY'S AND AUTHORITY'S EXCLUSIVE REMEDY, AND
CITY AND AUTHORITY SHALL ACCEPT SUCH LIQUIDATED DAMAGES IN
PLACE OF ANY OTHER RIGHTS OR REMEDIES EITHER MAY HAVE AGAINST
DEVELOPER, INCLUDING, BUT NOT LIMITED TO, ANY RIGHT TO SPECIFIC
PERFORMANCE OR OTHER DAMAGES, EXCEPT FOR ANY INDEMNITIES
DEVELOPER HAS PROVIDED UNDER THE TERMS OF THIS AGREEMENT.

THE PARTIES ACKNOWLEDGE THIS LIQUIDATED DAMAGES PROVISION BY
THEIR SIGNATURES BELOW:

Eden Initials: _____    City Initials: _____    HACA Initials: _____

Citation Initials: _____    Authority Initials: _____

14.    Effect of Termination.  Upon termination as provided herein, or upon the expiration of
the Term and any extensions thereof without the Parties having successfully negotiated a DDA,
this Agreement shall forthwith be void, and there shall be no further liability or obligation on the
part of any of the Parties or their respective officers, employees, agents or other representatives;
provided however, Developer's obligation to pay costs incurred through the date of termination
for planning activities pursuant to Section 5 and Transactional Costs pursuant to Section 6, and
the provisions of Section 11 (Confidentiality), and Section 16 (Indemnification) shall survive
such termination. Provided further, that upon termination or expiration of this Agreement (i)
Developer shall deliver to Authority, within 15 days of termination or expiration, all of the
Developer's Studies not previously provided to Authority and (ii) within 30 days of termination
or expiration, City shall deliver to Developer the balance (if any) of any funds owed to Developer
pursuant to this Agreement.

15.    Notices.  Except as otherwise specified in this Agreement, all notices to be sent
pursuant to this Agreement shall be made in writing, and sent to the Parties at their
respective addresses specified below or to such other address as a Party may designate by
written notice delivered to the other parties in accordance with this Section.  All such
notices shall be sent by:

        (i)  personal delivery, in which case notice is effective upon delivery;

(ii) certified or registered mail, return receipt requested, in which case notice shall be deemed delivered on receipt if delivery is confirmed by a return receipt;

(iii) nationally recognized overnight courier, with charges prepaid or charged to the sender's account, in which case notice is effective on delivery if delivery is confirmed by the delivery service; or

(iv) facsimile transmission, in which case notice shall be deemed delivered upon transmittal, provided that (a) a duplicate copy of the notice is promptly delivered by first-class or certified mail or by overnight delivery, or (b) a transmission report is generated reflecting the accurate transmission thereof.   Any notice given by facsimile shall be considered to have been received on the next business day if it is received after 5:00 p.m. recipient's time or on a nonbusiness day.

| | |
|---|---|
| **Authority:** | Housing Authority of the City of Dublin<br>c/o Housing Authority of the County of Alameda<br>22941 Atherton Street<br>Hayward, CA 94541<br>Facsimile:  510-727-8554<br>Attn:   Dublin Housing Authority Executive Director |
| **City:** | City of Dublin<br>100 Civic Plaza.<br>Dublin, CA  94568<br>Facsimile:  (925) 833-6651<br>Attn:   City Manager |
| **HACA:** | Housing Authority of the County of Alameda<br>22941 Atherton Street<br>Hayward, CA 94541<br>Facsimile:  510-727-8554<br>Attn:   Executive Director |
| **Developer:** | Eden Housing, Inc.<br>409 Jackson Street<br>Hayward, CA 94544<br>Facsimile:  510-582-6523<br>Attn:   Executive Director |
| | Citation Homes Central<br>404 Saratoga Avenue, Suite 100<br>Santa Clara, CA  95050<br>Facsimile:  (408) 985-6071<br>Attn:   Charles G. McKeag, Vice President<br>          Land Acquisition and Development |

868941-12
3-26-07

12

16.    <u>Indemnification.</u>  Developer hereby covenants to indemnify, hold harmless and defend the Authority, the City, and HACA, and their respective elected and appointed officials, officers, agents, representatives and employees (all of the foregoing, "**Indemnitees**") from and against all liability, loss, cost, claim, demand, action, suit, legal or administrative proceeding, penalty, deficiency, fine, damage and expense (including, without limitation, reasonable attorney's fees and costs of litigation) (all of the foregoing, collectively hereinafter "**Claims**") arising out of any act of negligence, misfeasance or willful misconduct of Developer in connection with this Agreement or the activities contemplated hereby.  Developer shall have no indemnification obligation with respect to the negligence, misfeasance or willful misconduct of City, HACA or Authority. Developer's indemnification obligations set forth in this <u>Section 16</u> shall survive the expiration or earlier termination of this Agreement.

17.    <u>Severability.</u>  If any term or provision of this Agreement or the application thereof shall, to any extent, be held to be invalid or unenforceable, such term or provision shall be ineffective to the extent of such invalidity or unenforceability without invalidating or rendering unenforceable the remaining terms and provisions of this Agreement or the application of such terms and provisions to circumstances other than those as to which it is held invalid or unenforceable unless an essential purpose of this Agreement would be defeated by loss of the invalid or unenforceable provision.

18.    <u>Entire Agreement; Amendments In Writing; Counterparts.</u>  This Agreement contains the entire understanding of the Parties with respect to the subject matter hereof and supersedes all prior and contemporaneous agreements and understandings, oral and written, among the Parties with respect to such subject matter.  This Agreement may be amended only by a written instrument executed by the Parties or their successors in interest.  This Agreement may be executed in multiple counterparts, each of which shall be an original and all of which together shall constitute one agreement.

19.    <u>Successors and Assigns; No Third-Party Beneficiaries.</u>  This Agreement shall be binding upon and inure to the benefit of the Parties and their respective successors and assigns; provided however, that neither Eden nor Citation shall transfer or assign any of such Party's rights hereunder by operation of law or otherwise without the prior written consent of the City and Authority, and any such transfer or assignment without such consent shall be void.  Subject to the immediately preceding sentence, this Agreement is not intended to benefit, and shall not run to the benefit of or be enforceable by, any other person or entity other than the Parties and their permitted successors and assigns. Without limiting the generality of the foregoing, the Parties acknowledge that in the event that the Authority and HACA consolidate, all references herein to the Authority shall be construed as references to HACA.

20.    <u>No Brokers.</u>  Each Party warrants and represents to the other Parties that no brokers have been retained or consulted in connection with this transaction other than as disclosed in writing to the other Parties.

21.     Captions.  The captions of the sections and articles of this Agreement are for convenience only and are not intended to affect the interpretation or construction of the provisions hereof.

22.     Governing Law.  This Agreement shall be governed by and construed in accordance with the laws of the State of California without regard to principles of conflicts of law.


### SIGNATURES ON FOLLOWING PAGE.

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the date first written above.

**CITY OF DUBLIN**

By: _____
    Janet Lockhart, Mayor

ATTEST:

By: _____
    City Clerk

APPROVED AS TO FORM:

By: _____
    City Attorney

**HOUSING AUTHORITY OF
THE CITY OF DUBLIN**

By: _____
    Christine Gouig, Executive Director

**HOUSING AUTHORITY OF
THE COUNTY OF ALAMEDA**

By: _____
    Christine Gouig, Executive Director

**EDEN HOUSING, INC.,
a California nonprofit public benefit corporation**

By: _____

Name: Linda Mandolini

Its: Executive Director

**SCS DEVELOPMENT COMPANY,
a California corporation**

By: _____

Name: CHARLES MCKEAG

Its: VICE PRESIDENT, LAND ACQUISITION

868941-12
3-26-07

15

24

Exhibit A

**PROPERTY**

(Attach legal description of Property.)

Title No. 05-**59100025**-JK
Locate No. CACTI7701-7701-5591-0059100025

### LEGAL DESCRIPTION

### EXHIBIT "A"

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF DUBLIN, COUNTY OF ALAMEDA, STATE OF CALIFORNIA AND IS DESCRIBED AS FOLLOWS:

Commencing at the point of intersection of the center line of Dougherty Road (also known as County Road No. 4038) and the Northeasterly line of the Southern Pacific Railroad Company right-of-way (300 feet wide), said point of commencement also being at the Southwesterly corner of Camp Parks, a 3636.1212 acre parcel of land acquired by the United States of America; thence running north 01° 13' 02" East, along the center line of Dougherty Road 69.47 feet to the True Point of Beginning of the parcel of land to be described; thence from said True Point of Beginning, Northwesterly along the arc of an 11,259.19 foot radius curve, concave northerly (radially distant 50 feet Northeasterly from the Northeasterly curved right-of-way line of said Southern Pacific Railroad Company), whose center bears north 45° 18' 12.2" east through a central angle of 8° 11' 34.6" an arc distance of 1609.99 feet to a point on the Northerly bank of Alamo Creek; thence along said northerly, westerly and easterly banks of Alamo Creek, the following courses and distances: north 64° 32' 46" east, 41.20 feet; south 88° 57' 14" east, 198.00 feet; north 81° 32' 46" east, 174.90 feet; north 19° 57' 14" west 66.00 feet; north 57° 57' 14" west, 122.10 feet; north 17° 02' 46" east, crossing said Alamo Creek, a distance of 455.40 feet to a point on the easterly bank of said Alamo Creek thence south 88° 27' 14" east, 33.00 feet; thence North 45° 02' 46" east, along the easterly bank of Alamo Creek, 112.20 feet; thence north 22° 32' 46" east 158.40 feet; thence north 8° 47' 46" east, 244.20 feet; thence north 49° 27' 14" west 155.10 feet; thence north 19° 27' 14" west, 56.89 feet; thence south 89° 16' 58" east, 609.36 feet to a point in the center line of said Dougherty Road; thence from said point south 01° 13' 02" west, along the said center line 2436.80 feet to the True Point of Beginning.

Excepting therefrom that portion deeded to the County of Alameda by deed dated March 12, 1981 and recorded April 15, 1981, Series No. 81-60663, Alameda County Records.

Also excepting therefrom that portion deeded to the City of Dublin by deed dated October 24, 1982 and recorded December 19, 1983, Series No. 83-237916, Alameda County Records.

Also excepting therefrom all uranium, thorium, and all other materials determined pursuant to Section 5(b)(1) of the Atomic Energy Act of 1946 (60 Stat. 761) to be peculiarly essential to the production of fissionable material, contained, in whatever concentration, in deposits in the lands as reserved in the deed by United States of America recorded April 28, 1954, Series No. AJ 35346, Book 7307 OR, Page 437, Alameda County Records.

Also excepting therefrom, that portion deeded to Park Sierra LLC, a California limited liability company, by Deed dated June 15, 1998 and recorded June 16, 1998, Instrument No. 98202956, Alameda County Records.

Also excepting therefrom, that portion deeded to Alameda County Flood Control and Water Conservation District, by Deed dated October 24, 2003 and recorded November 26, 2003, Series No. 2003698997, Alameda County Records.

APN: 941-0007-001-007

<u>Exhibit B</u>

**PROJECT MILESTONES AND DEVELOPER PAYMENT SCHEDULE**

(All dates set forth below are preliminary and are subject to change as the planning, entitlement, and relocation process moves forward)

| Project Milestone | Date | Developer Payments |
|---|---|---|
| Dublin Housing Authority (DHA) Approves Contract for Relocation Consultant | March 6, 2007 | NA |
| DHA and Dublin City Council Approve ENRA<br><br>Dublin City Council Approves Contract for Environmental Consultant<br><br>DHA Authorizes Developer to Commence Planning Applications and Access the Site for Planning and Feasibility Studies | April 3, 2007 | NA |
| Housing Authority of the County of Alameda Approves ENRA | April 11, 2007 | NA |
| Execution of ENRA by all Parties | April 12, 2007 | *City to establish cost recovery account using $50,000 Initial Deposit from Developer to cover ongoing legal and consulting costs of City and DHA ("Transactional Costs").*<br><br>*Developers to establish separate cost recovery account with Planning Department to cover ongoing costs associated with planning, entitlement, and environmental review for the project ("Planning Costs).* |

868941-12
3-26-07

17

| | | |
|---|---|---|
| Issuance of Notice to Proceed for preparation of CEQA & NEPA Clearance Documents (anticipate 6-8 months for completion of environmental review process) | April 12, 2007 | *City/Authority to bill Eden as costs are incurred.* |
| Begin Arroyo Vista Resident and Neighbor Information Meetings | May 1, 2007 | |
| DHA Submits of Disposition Application to HUD | May 3, 2007 | *City/Authority to bill Eden as costs are incurred.* |
| Approval and Execution of Disposition and Development Agreement (or other binding agreement setting forth all transaction terms for the project) | July 3, 2007 | *City/Authority to bill Eden as costs are incurred.* |
| City of Dublin Approval of Tentative Maps, PD zoning, General Plan Amendment, & other entitlements for the project | February 1, 2008 | *Citation to pay Second Purchase Deposit of $1.75 million (to be credited against purchase price at COE)* |
| HUD Approval of Disposition Application | April 2008 | *Citation to pay Third Purchase Deposit of $2.2 million (to be credited against purchase price at COE)* |
| Developers to Submit Improvement Plans/Final Map to City | May 2008 | *Developers to pay all required Plan Check Fees & other costs associated w/processing Final Maps & Improvement Plans* |
| DHA/HACA to Commence Resident Relocation (anticipate 6-9 months to complete relocation) | May 2008 | NA |
| Eden to Submit HUD 202 Application | May 2008 | NA |
| DHA/HACA Complete Resident Relocation | November 2008 | NA |

| | | |
|---|---|---|
| Closing: HUD Approval of all Disposition Documents; Release of Declaration of Trust; Property Transfer to Eden and Citation | November 2008 | *Citation to deliver Final Payment of $8 million into escrow (to be released upon closing of Eden's Construction Loans).*<br><br>*Developer to reimburse City/DHA for balance of Transactional Costs above initial $250,000 (if any) up to aggregate $500,000 maximum.* |
| Consolidate DHA and HACA (after HUD Closing and Transfer of Property) | November 2008 | NA |
| City to Approve Improvement Plans & Final Maps | October/November 2008 | *Developers to post improvement bonds; pay all regular plan check fees and other costs associated w/final map approval & recordation* |
| Developers Start Site Demolition & Grading | November 2008 | NA |
| Developers Complete Preliminary Site Improvements | May/June 2009 | NA |
| Citation to Begin Model Home Construction (Market Units) | May/June 2009 | *Developers to pay all regular City planning & plan check fees* |
| Eden to Submit Tax Exempt Bond and/or Tax Credit Application(s) | Summer/Fall 2009 | NA |
| Eden to Close on Construction Loan(s) for Affordable Housing | Fall 2009 | *Citation's $8 million equity contribution to be released to Eden* |

Exhibit C

**ANTICIPATED PLANNING ENTITLEMENTS**

1. Environmental Impact Report
2. Environmental Impact Statement (or other applicable NEPA document)
3. General Plan Amendment
4. Rezoning
5. Parcel Map
6. Subdivision Map
7. Site Development Review
8. Annexation into Dublin San Ramon Services District

1

2

3

4

5

6

7                    **Exhibit E: DHA Resolution 10-07**

8

9

10

11

12

13

14

15

16

17

18

19

Goldfarb &        20

Lipman LLP        21

1300 Clay Street  22

Ninth Floor       23

Oakland           24

California        25

94612             26

510 836-6336      27

510 836-1035 FAX  28

RESPONDENTS' EXHIBITS (3:07-cv-05794 MHP)

1460\03\528384.1

### THE DUBLIN HOUSING AUTHORITY
### RESOLUTION NO. 10-07

**APPROVAL OF DISPOSITION AND DEVELOPMENT AGREEMENT FOR THE ARROYO VISTA REDEVELOPMENT; AUTHORIZATION FOR THE EXECUTIVE DIRECTOR TO NEGOTIATE A LOAN AGREEMENT AND RELATED DOCUMENTS TO PROVIDE FINANCING TO EDEN HOUSING OR ITS AFFILIATE IN AN AMOUNT NOT TO EXCEED $8,000,000; AND AUTHORIZATION TO EXPEND UP TO $1,100,000 IN RESERVES TO ASSIST WITH RELOCATION OF EXISTING RESIDENTS AND PROPERTY SECURITY**

**WHEREAS**, at its meeting of July 24, 2006, the Dublin Housing Authority Commission (Commission) determined that the rehabilitation of the Arroyo Vista public housing complex was not financially feasible and decided to redevelop the site; and

**WHEREAS**, the Commission selected Eden Housing (Eden) and Citation Homes Central (Citation), a non-profit and for-profit developer, respectively, as the development team and authorized staff to negotiate appropriate documentation with the developers for subsequent Commission approval; and

**WHEREAS**, on April 3, 2007 the Commission approved an Exclusive Negotiating Rights Agreement (ENRA) with the City of Dublin, Eden, Citation and the Alameda County Housing Authority (HACA); and

**WHEREAS**, the ENRA granted Eden and Citation exclusive rights to negotiate a Disposition and Development Agreement (DDA) with the Dublin Housing Authority (DHA), the City of Dublin and HACA, which would govern the disposition and development of Arroyo Vista; and

**WHEREAS**, the DDA that is presented to this Commission represents the result of those negotiations and has been agreed to by Eden and Citation; and

**WHEREAS**, said DDA contains a provision that $8 million of the purchase price paid by Citation be loaned/granted to Eden to assist in financing the affordable senior and family rental units; and

**WHEREAS**, said DDA contains a provision that DHA expend up to $600,000 of its reserves to offset the cost of relocating the existing Arroyo Vista residents; and

**WHEREAS**, as residents move it will be necessary to secure the vacant units and the property;

**NOW, THEREFORE, BE IT RESOLVED**, that the Commission hereby authorizes its Executive Director 1) to execute a DDA in substantially the form presented with the City of Dublin, Eden Housing, Citation Homes, and the Alameda County Housing Authority for the redevelopment of Arroyo Vista; 2) to negotiate a loan agreement and related documents to provide financing to Eden Housing or its affiliate in an amount not to exceed $8,000,000 to assist in financing the construction of the affordable rental units; and 3) to expend up to $1,100,000 in reserves to assist with relocation of existing residents and property security.

**PASSED, APPROVED AND ADOPTED** by the Commissioners of the Dublin Housing Authority on July 17, 2007, by the following vote:

**AYES:**

**NAYS:**

**ABSTAIN:**

**ABSENT:**

Chairperson Lockhart

Christine Gouig
Executive Director
Approved:  July 17, 2007

33