1    BAY AREA LEGAL AID
     LISA S. GREIF (State Bar No. 214537)
2    NAOMI YOUNG (State Bar No. 105041)
     PHILLIP R. MORGAN (State Bar No. 99979)
3    405 14th Street, 11th Floor
     Oakland, California 94612
4    Telephone: 510-663-4744
     Facsimile: 510-663-4740
5    Email: lgreif@baylegal.org
            nyoung@baylegal.org
6            pmorgan@baylegal.org

7    THE CALIFORNIA AFFORDABLE HOUSING LAW
     PROJECT OF THE PUBLIC INTEREST LAW PROJECT
8    DEBORAH COLLINS (State Bar No. 154532)
     MICHAEL RAWSON (State Bar No. 95868)
9    CRAIG CASTELLANET (State Bar No. 176054)
     449 15th Street, Suite 301
10   Oakland, California 94612
     Telephone: 510-891-9794, ext. 156
11   Facsimile: 510-891-9727
     Email: dcollins@pilpca.org
12          mrawson@pilpca.org
            ccastellanet@pilpca.org
13
     Attorneys for Petitioners ARROYO VISTA TENANTS ASSOCIATION, et al.
14
                    UNITED STATES DISTRICT COURT
15
                   NORTHERN DISTRICT OF CALIFORNIA
16

17
     ARROYO VISTA TENANTS ASSOCIATION,          CASE NO. C 07-05794 MHP
18   RHENAE KEYES, ANDRES ARROYO,
     DARLENE BROWN, ELISE VEAL
19
                 Petitioner/Plaintiff,          DECLARATION OF DARLYN ANDERSON
20                                              IN SUPPORT OF PLAINTIFFS' MOTION
              vs.                                FOR PRELIMINARY INJUNCTION
21
     CITY OF DUBLIN; DUBLIN HOUSING             Hearing Date:  March 3, 2008
22   AUTHORITY; HOUSING AUTHORITY OF            Time:  2:00 p.m.
     ALAMEDA COUNTY; and DOES 1 through         Courtroom:  15, 18th Floor
23   20, inclusive,                             Judge:  Honorable Marilyn Hall Patel
24               Respondents.

25   SCS DEVELOPMENT COMPANY, dba
     Citation Homes Central, a California
26   Corporation; EDEN HOUSING, INC., a
     California Nonprofit, and DOES 21 through 50,
27
28               Real Parties in Interest.

I, Darlyn Anderson, hereby declare:

1.    If called as a witness in this matter, I could and would testify competently to the facts set forth herein.

2.    I had lived at Arroyo Vista in Dublin, California in Unit No. 8 for 7 years and I moved out on December 10, 2007.  While I lived at Arroyo Vista I developed significant disabilities that have impacted my health and made it difficult for me to get around.  I often use a scooter or walk with a cane if my energy is good enough for that.  I live on a fixed income of Social Security Disability.  I currently live in San Leandro, California.

3.    I first heard about Arroyo Vista being closed down in the spring of 2007when my neighbors starting talking about it and telling me that we would all have to move out. I also read the newsletters DHA sent all the tenants which told me that everyone would get a voucher to move out by November 2008.

4.    All the talk of moving made me nervous so I began calling the office and speaking to Margie and Carol. During the summer of 2007 I called the DHA office and spoke to Carol to ask what was happening.  Carol told me that the sale was approved and that they were tearing Arroyo Vista down.  I was told by either Carol or Margie that I should hurry up and apply at the Grove which is a subsidized apartment building in Dublin, because only so many apartments were available.  On this advice I went and looked at the Grove but I was told they were not accepting Section 8 at that time.

5.    I went to a meeting held at City Hall that I believe was in June 2007 where people from Overland, Pacific and Cutler (OPC) and HACA told us about the assistance they were offering with moving.  They said that tenants would get a rental truck paid for and moving expenses reimbursed according to the number of rooms we were moving.  They also mentioned that the security deposit and first or last month's rent would be paid and that we would be reimbursed for credit check fees.

6.    I met with Mary Rizzo-Shuman of HACA in August or September for a voucher briefing. I was told by Mary Rizzo-Shuman that I needed to put in a 30-day notice to move and that if I wanted more time to move I would have to ask for it.  I asked several times for extra time

Declaration of Darlyn Anderson
in Support of Plaintiffs' Motion for Preliminary Injunction

Case No. C-07-05794 MHP

because HACA rejected the first couple of apartments I tried to rent even though they were really nice.

7.    A friend of mine began driving me around as I looked for apartments.  I found a couple of apartments but HACA refused to approve them because they were too expensive.  I began to get really nervous because I thought I would never find a place to move to and other tenants around me were moving out.  This was all very frustrating because each time I found a place, HACA had a problem with it, and I had to start back at square one.  At one point I was even hospitalized because the stress of trying to find something in such a hurry gave me chest pains.  My doctor said I was under too much pressure and that it was affecting my heart.

8.    In the end I don't think I got all the money that was promised to me by OPC.   John Morris of OPC was the person I worked with. After HACA had rejected the first couple of apartments I found, I called John Morris because I could not continue to look and not find something that would be acceptable to both me and HACA because my health was suffering with all the uncertainty.  Mr. Morris gave me a list of referrals, and then he told me that he would tell HACA to approve the latest apartment I had found so that I could move.

9.    This whole process was difficult for me because I feel that I was told one thing in the beginning and then when I actually moved I was told and got something different. Specifically, I did not get reimbursement for the full security deposit I paid on my current apartment.  The landlord wanted $3000 because my credit score was low.  I asked John Morris if they would cover the entire deposit and he said no that was too much.  In the end OPC paid me $2000 and I borrowed the rest, $1000, from a friend. Also, even though I found several apartments and had to do credit checks for each one I only got a total of about $70 reimbursed for credit checks and had to pay the others out of my own pocket.  OPC did pay for the rental of the truck but I paid for the packing myself because I did not want anyone I did not know packing up my things.

10.    This was an extremely frustrating and stressful time since I thought that I had to move as soon as possible.  Margie in the office kept asking me when I was moving and if I had found a place.  Everywhere I looked people were moving and it felt like I had to get out immediately

Declaration of Darlyn Anderson
in Support of Plaintiffs' Motion for Preliminary Injunction

Case No. C-07-05794 MHP

1  because if I did not then the housing authority would kick me out or move me someplace that

2  would be awful.

3  11.    Even though my move to San Leandro is acceptable to me because I am now closer to

4  family, I feel I was forced to move in a hurry and under such stress.  The whole experience was

5  bad for my health and I hated feeling pressured to move out of Arroyo Vista especially since I

6  later learned we did not have to move right away.

7

8

9      I declare under penalty of perjury that the foregoing is true and correct and that this

10  declaration was executed at  _San Leandro_, California on  ___February 18, 2008___.

11

12                                    /s/ Darlyn Anderson
                                       Darlyn Anderson

13

14      I hereby attest that I have on file all holograph signatures for any signatures indicated by

15  a "conformed" signature (/s/) within this efiled document.

16

17  Dated: February 19, 2008        /s/ Lisa S. Greif

18                                  Lisa S. Greif

19                                  Attorney for Plaintiffs

20

21

22

23

24

25

26

27

28

3

Declaration of Darlyn Anderson
in Support of Plaintiffs' Motion for Preliminary Injunction

Case No. C-07-05794 MHP