BAY AREA LEGAL AID
LISA S. GREIF (State Bar No. 214537)
NAOMI YOUNG (State Bar No. 105041)
PHILLIP R. MORGAN (State Bar No. 99979)
405 14th Street, 11th Floor
Oakland, California 94612
Telephone: 510-663-4744
Facsimile: 510-663-4740
Email: lgreif@baylegal.org
       nyoung@baylegal.org
       pmorgan@baylegal.org

THE CALIFORNIA AFFORDABLE HOUSING LAW
PROJECT OF THE PUBLIC INTEREST LAW PROJECT
DEBORAH COLLINS (State Bar No. 154532)
MICHAEL RAWSON (State Bar No. 95868)
CRAIG CASTELLANET (State Bar No. 176054)
449 15th Street, Suite 301
Oakland, California 94612
Telephone: 510-891-9794, ext. 156
Facsimile: 510-891-9727
Email: dcollins@pilpca.org
       mrawson@pilpca.org
       ccastellanet@pilpca.org

Attorneys for Petitioners ARROYO VISTA TENANTS ASSOCIATION, et al.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARROYO VISTA TENANTS ASSOCIATION, RHENAE KEYES, ANDRES ARROYO, DARLENE BROWN, ELISE VEAL<br><br>Petitioner/Plaintiff,<br><br>vs.<br><br>CITY OF DUBLIN; DUBLIN HOUSING AUTHORITY; HOUSING AUTHORITY OF ALAMEDA COUNTY; and DOES 1 through 20, inclusive,<br>Respondents.<br><br>SCS DEVELOPMENT COMPANY, dba Citation Homes Central, a California Corporation; EDEN HOUSING, INC., a California Nonprofit, and DOES 21 through 50,<br><br>Real Parties in Interest. | CASE NO. C 07-05794 MHP<br><br>SUPPLEMENTAL DECLARATION OF GRETTA EVANS IN SUPPORT OF PLAINTIFFSø MOTION FOR PRELIMINARY INJUNCTION<br><br>Hearing Date: March 3, 2008<br>Time: 2:00 p.m.<br>Courtroom: 15, 18th Floor<br>Judge: Honorable Marilyn Hall Patel |

Supplemental Declaration of Gretta Evans in Support of
Plaintiffsø Motion for Preliminary Injunction,                    Case No. C-07-05794 MHP

I, Gretta Evans, hereby declare:

1. I submit this Supplemental Declaration in support of Plaintiffs' Motion for Preliminary Injunction, and if called as a witness in this matter, I could and would testify competently to the facts set forth herein.

2. I lived at Arroyo Vista in Dublin, California in Unit No. 22 from 2001 until April 12, 2008 with my sister, Shirley Portley, my daughter, Carolyn Evans, and her children.

3. When I moved out of Arroyo Vista, my rent was $1068 per month. Late last year, in November or December, I was notified by the Housing Authority that my rent was going to increase by approximately $300. I contacted Margie, who was then the manager of the office at Arroyo Vista. I told her that the Housing Authority had counted income that could not be counted in calculating my rent. It corrected its mistake and sent me a subsequent notice that my rent would not increase. As a result, my rent was still $1068 per month when I moved out. Had I stayed at Arroyo Vista, my rent would have decreased because my daughter's income had gone down since she was no longer working at one of her two jobs.

4. In August or September 2007, I saw a newspaper listing for a five or six bedroom house in Patterson, California that was renting for $1700. At the time, I believed that I could rent a place of up to about $2400 per month, because when we were told that Arroyo Vista was going to be demolished, we were told that we would get vouchers that could be used anywhere in the country that participated in the Section 8 program. Since I had not been successful in finding any homes in Dublin, I told Carol, who was the secretary at the Arroyo Vista management office at the time, that I wanted to apply for a Section 8 voucher. I intended to look for homes in other areas that had cheaper rents. I did not pursue this house in Patterson, however, because I did not have a Section 8 voucher at the time and by the time I received one, the house was no longer listed.

5. On October 4, 2007, I met with Marilyn Meade of the Housing Authority of Alameda County ("HACA") at the management office at Arroyo Vista. She issued me a Section 8 voucher. The paperwork said that the voucher would expire in 60 days.

Supplemental Declaration of Gretta Evans in Support of
Plaintiffs' Motion for Preliminary Injunction,                     Case No. C-07-05794 MHP

1

6. A few weeks later, I located another house in Patterson. It was a 4-bedroom home renting for $1300 per month, and I contacted the owner who was located in San Jose. He said that he would consider participating in the Section 8 program. I contacted Marilyn Meade at HACA, and she said she would prepare transfer paper work for my voucher. I also contacted John Morris at Overland Pacific and Cutler ("OPC") and told him that the security deposit was $2000. I had my daughter, Carolyn, take the Section 8 paper work to the owner in San Jose, so that I could turn it in to the housing authority located in Modesto to get the home approved. In the declaration I previously made in this case, I referred to this housing authority as the Merced County Housing Authority, but I meant the Stanislaus County Housing Authority located in Modesto. John Morris brought me the security deposit for $2000 a few days later, and I put a deposit down on the 4-bedroom house.

7. About a month later, the Stanislaus County Housing Authority contacted me and told me that I could not rent the house in Patterson. They said that my household income was too high, and that I was not eligible for Section 8 in their county. As a result, I was not able to rent that house.

8. I talked with Marilyn Meade to find out why I was eligible for Section 8 in Alameda County but not in Stanislaus County. She told me that my family income was high enough to rent a house in Patterson without Section 8 assistance, and that I should just rent the house on my own without Section 8 assistance. I did not want to give up my home in Arroyo Vista and my Section 8 voucher, so I decided to continue looking. I told Ms. Meade that I was worried that my voucher was going to expire because Stanislaus County had taken so long to tell me that I was not eligible for a voucher. Ms. Meade said that she would send me another voucher, but she never did. As a result, I believed that my voucher expired on December 4, 2007.

9. I told Carolyn that I was going to have to move with other family members since I no longer had Section 8 assistance. I continued looking for a place and in mid-December, I located another four-bedroom home in Patterson. I contacted Marilyn Meade and told her that I wanted to rent this house in Patterson. I asked if my daughter Carolyn could get a Section 8 voucher since every household was entitled to one, and I was not eligible to use one in Patterson. She

said she would have to talk to her supervisor about it. She called me back and told me that the supervisor said okay, but that Carolyn would need to come in to apply for the voucher. I also gave a notice that I was going to move out to Margie at the Arroyo Vista management office.

10. I contacted Therese Laverde at OPC to get my moving expenses and security deposit. She said that the maximum security deposit I would get was $2400, but I would not get that until OPC was reimbursed the $2000 security deposit from the home that I did not get. She also said I would get only $75 of the $90 credit check fee, and an advance of one-half of the moving expenses before I moved. I borrowed money from friends to pay the security deposit and received only $825 from OPC as half of my security deposit. I also contacted the owner in San Jose of the first house and told him that he had to reimburse the $2000 security deposit to OPC since I had been unable to rent the house from him.

11. On January 12, 2008, I moved into the Patterson house. On January 18, 2008, I had a telephone conversation with Therese Laverde. She told me to come to the OPC office in Oakland that day to get a check for the remainder of my moving expenses. I had my son, Antone Tucker, drive me to Oakland. We got to the office at about noon. Antone went in to get the check, but Ms. Laverde told him she did not have it yet, and we should come back at about 3:00. We spent a few hours in Oakland and then returned. I went in with Antone this time, and Therese Laverde told me she still did not have the check. She also told me that I would have to sign some papers, and that Carolyn and Shirley would have to sign them, and then I would get the rest of my relocation assistance. I expected to get $3300 -- $2400 for the security deposit, $75 for the credit check fee, and $825 for the rest of my moving expenses, and I signed the papers. Ms. Laverde did not give me a copy of the papers at that time. Since it was late on a Friday afternoon and Monday was a holiday, Ms. Laverde told me to have Carolyn and Shirley come in on Tuesday to sign the papers, and then I would get my money.

12. Carolyn and my sister were supposed to meet each other on Tuesday and go to Oakland to sign the papers, but Carolyn could not go. I called Therese Laverde to tell her that Shirley was coming in, but Carolyn could not make it. She told me that Carolyn had to sign the papers so that I could get my check. I also asked her about getting the $1200 security deposit back for my

3

Supplemental Declaration of Gretta Evans in Support of
Plaintiffs Motion for Preliminary Injunction,                    Case No. C-07-05794 MHP

Arroyo Vista home. She told me that I would not be able to get that refund until Carolyn moved out. I have a 3-way calling feature on my telephone. I called Carolyn while I still had Therese on the telephone. It took me a couple of tries, but it finally worked. Therese explained to Carolyn that she had to sign some papers in order for me to get the rest of my relocation benefits. I urged Carolyn to sign the papers because I needed to get reimbursed for these expenses so that I could pay back my friends. Therese arranged to take the papers to Carolyn at her home the next day. My sister, Shirley, went into the OPC office on Tuesday, as planned, and signed the papers.

13. Carolyn did not sign the papers on January 23, 2008. I later learned from her that Ms. Laverde also wanted her to go and apply for a Section 8 voucher right away and move out. Carolyn did not understand why there was such a rush for her to get a voucher and move out, and she refused to sign the papers. I suggested that she should apply for the voucher before the Housing Authority changed its mind. I also told her that I could not get my security deposit back until she moved out. And, I told her that she at least had to sign the papers that Shirley and I had signed, so that I could get the money back that I had borrowed from friends. Carolyn finally went to OPC's office on January 30, 2008, and signed the papers.

14. After Carolyn signed the papers, I called Therese to make arrangements to get my check. She told me that I was not going to get any money until Carolyn applied for a Section 8 voucher and moved out. I told her that was not fair, and that was not what she had agreed to do when I signed the papers. She told me then that the papers I had signed said that I would not get anything until Carolyn moved out. I was very angry that Ms. Laverde had tricked me into believing that OPC was going to reimburse me for $3300 of expenses I had incurred, and told her to send me a copy of the papers. I also asked to speak to her supervisor.

15. She put me through to her supervisor who may have been David Richman. I had never spoken to him before. I told him that Therese Laverde was giving me the run-around about getting reimbursed for my relocation expenses, and that I thought OPC were crooks and had not kept their promises to me. I do not recall talking with him about my daughter getting my Section 8 voucher, and do not believe that I would have talked with him about it. It was the Housing Authority that was responsible for the Section 8 vouchers, and I had talked with Marilyn Meade

about getting my voucher and then about having it transferred to Carolyn when I could not use it. The purpose of my conversation with Mr. Richman was to demand that OPC pay me the relocation expenses for my move, including the security deposit, credit check fee, and the other half of my moving expenses. I would not have knowingly agreed to wait to get paid for those expenses until Carolyn moved out of Arroyo Vista.

16. I still have not received the $3300 from OPC. I also was never told by OPC or the Housing Authority that since I was not eligible for Section 8 in Stanislaus County, I was eligible for rental assistance payments for 42 months. I never received any rental assistance. Aside from the $825 that OPC õadvancedö as my moving expenses, I have not received a dime in relocation assistance. The only help I got from OPC was some referrals to homes that were not available to me. John Morris sent me a referral list that was a month old, and by then, the units listed were not available. If he ever called the owner of a home in Dublin who refused to permit modifications to make the house accessible, that is news to me. Mr. Morris never told me he contacted that owner.

17. I am living in a home where my bedroom is on the second floor. I have to pull myself up and down the stairs which means that I have to spend most of my time in my bedroom. I have to pay an extra $300 in rent every month plus additional utilities that I did not have to pay at Arroyo Vista. OPC has caused a rift between me and my daughter that may never be repaired. As a result, I seldom see the grandchildren that had lived with me at Arroyo Vista. I also am at least 45 minutes away from Arroyo Vista. My son, Antone, was able to help me on a regular basis and run me on my errands when we lived in the same neighborhood. That is not possible when I live in Patterson.

18. If some families are happy to have moved away from Arroyo Vista, maybe it is because they were tired of being treated like they and their families simply do not matter. That is certainly how I feel.

1  I declare under penalty of perjury that the foregoing is true and correct and that this
2  declaration was executed at  Patterson         , California on   February 18, 2008    .

  /s/ Gretta Evans
  Gretta Evans

10  I hereby attest that I have on file all holograph signatures for any signatures indicated by
11  a "conformed" signature (/s/) within this efiled document.

13  Dated: February 19, 2008       /s/ Lisa S. Greif
                                   Lisa S. Greif
                                   Attorney for Plaintiffs