1  BAY AREA LEGAL AID
   LISA S. GREIF (State Bar No. 214537)
2  NAOMI YOUNG (State Bar No. 105041)
   PHILLIP R. MORGAN (State Bar No. 99979)
3  405 14th Street, 11th Floor
   Oakland, California 94612
4  Telephone: 510-663-4744
   Facsimile: 510-663-4740
5  Email: lgreif@baylegal.org
          nyoung@baylegal.org
6          pmorgan@baylegal.org

7  THE CALIFORNIA AFFORDABLE HOUSING LAW
   PROJECT OF THE PUBLIC INTEREST LAW PROJECT
8  DEBORAH COLLINS (State Bar No. 154532)
   MICHAEL RAWSON (State Bar No. 95868)
9  CRAIG CASTELLANET (State Bar No. 176054)
   449 15th Street, Suite 301
10 Oakland, California 94612
   Telephone: 510-891-9794, ext. 156
11 Facsimile: 510-891-9727
   Email: dcollins@pilpca.org
12         mrawson@pilpca.org
           ccastellanet@pilpca.org
13
   Attorneys for Petitioners ARROYO VISTA TENANTS ASSOCIATION, et al.
14

15                  UNITED STATES DISTRICT COURT

16                 NORTHERN DISTRICT OF CALIFORNIA

17
   ARROYO VISTA TENANTS ASSOCIATION,        CASE NO. C 07-05794 MHP
18 RHENAE KEYES, ANDRES ARROYO,
   DARLENE BROWN, ELISE VEAL
19
20            Petitioner/Plaintiff,          **SUPPLEMENTAL DECLARATION OF
                                             LISA S. GREIF IN SUPPORT OF
21       vs.                                 PLAINTIFFS' MOTION FOR
                                             PRELIMINARY INJUNCTION**
22 CITY OF DUBLIN; DUBLIN HOUSING
   AUTHORITY; HOUSING AUTHORITY OF          Hearing Date:  March 3, 2008
23 ALAMEDA COUNTY; and DOES 1 through        Time: 2:00 p.m.
   20, inclusive,                            Courtroom: 15, 18th Floor
24            Respondents.                    Judge: Honorable Marilyn Hall Patel

25 SCS DEVELOPMENT COMPANY, dba
26 Citation Homes Central, a California
   Corporation; EDEN HOUSING, INC., a
27 California Nonprofit, and DOES 21 through 50,

28            Real Parties in Interest.

   Supplemental Declaration of Lisa S. Greif
   In Support of Plaintiffs' Motion for Preliminary Injunction - 1

                                             Case No. C-07-05794 MHP

1  I, Lisa Greif, declare as follows:

2  1.    I am an attorney at law duly admitted to practice before this Court and one of the

3  attorneys of record herein for petitioners, Arroyo Vista Tenants Association, Rhenae Keyes,

4  Elise Veal, Andres Arroyo and Darlene Brown.

5  2.    A true and correct copy of chapters 1 and 12 of Housing Authority of the County of

6  Alameda's Section 8 Program Administrative Plan is attached as Exhibit 13 of this declaration.

7  The complete plan can be found on HACA's website at http://www.haca.net/agencypl.html.

8

9      I declare under penalty of perjury under the laws of the state of California that the

10  foregoing is true and correct and that this declaration was executed at Oakland, California on

11  February 19, 2008.

12                                      /s/ Lisa S. Greif

13                                      Lisa S. Greif
                                       BAY AREA LEGAL AID

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Supplemental Declaration of Lisa S. Greif
In Support of Plaintiffs' Motion for Preliminary Injunction - 2

                                        Case No. C-07-05794 MHP

SUPPLEMENTAL DECLARATION OF LISA S. GREIF
IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

EXHIBIT 13

000286

**Housing Authority of the County of Alameda**

**Section 8 Program Administrative Plan**

**December 12, 2007 (Corrected 1/10/08)**

000287

# TABLE OF CONTENTS

1.      INTRODUCTION...................................................................1-1
1.1.    USAGE NOTES .................................................................1-1
1.2.    DEFINITIONS ..................................................................1-1
1.3.    SCOPE OF THE PLAN .......................................................1-6
1.4.    MISSION STATEMENT .....................................................1-6
1.5.    JURISDICTION/SERVICE AREA .........................................1-6
2.      CODE OF CONDUCT .......................................................2-1
2.1.    GENERAL.......................................................................2-1
2.2.    CONFLICT OF INTEREST..................................................2-1
2.3.    GIFT POLICY ..................................................................2-1
3.      NONDISCRIMINATION, EQUAL OPPORTUNITY, AND EXPANSION OF
HOUSING OPPORTUNITY ..........................................................3-1
3.1.    POLICY..........................................................................3-1
3.2.    CIVIL RIGHTS LAWS........................................................3-1
3.3.    ACCESSIBILITY ..............................................................3-1
3.4.    LIMITED ENGLISH PROFICIENCY .....................................3-3
3.5.    EXPANDING HOUSING OPPORTUNITIES ............................3-4
4.      PRIVACY RIGHTS AND PUBLIC DOCUMENTS.......................4-1
4.1.    PRIVACY........................................................................4-1
4.2.    PUBLIC DOCUMENTS ......................................................4-2
5.      REASONABLE ACCOMODATIONS; LIVE-IN AIDES ...............5-1
5.1.    REASONABLE ACCOMODATIONS......................................5-1
5.2.    SUBMITTING AND PROCESSING A REQUEST FOR A REASONABLE
ACCOMODATION......................................................................5-2
5.3.    LIVE-IN AIDE .................................................................5-4
6.      HACA, OWNER AND FAMILY RESPONSIBILITIES ...............6-1
6.1.    INTRODUCTION ..............................................................6-1
6.2.    HACA'S RESPONSIBILITIES ............................................6-1
6.3.    OWNER RESPONSIBILITIES .............................................6-2
6.4.    FAMILY RESPONSIBILITIES .............................................6-2
7.      MONTHLY HACA PAYMENTS TO THE LANDLORD ...............7-1
7.1.    PAYMENT STANDARD .....................................................7-1
7.2.    MANUFACTURED HOME SPACE PAYMENT STANDARD.........7-2
8.      TOTAL TENANT PAYMENT AND TENANT RENT ..................8-1
8.1.    RESERVED.....................................................................8-1

000288

8.2. TOTAL TENANT PAYMENY (TTP) ........................................................ 8-1
8.3. MINIMUM TTP ........................................................................................ 8-1
8.4. MONTHLY FAMILY PAYMENT FOR MIXED PARTICIPANT FAMILIES 8-2
8.5. UTILITY ALLOWANCE ......................................................................... 8-3
8.6. RESERVED .............................................................................................. 8-5

**9. ELIGIBILITY FOR ADMISSION .................................................. 9-1**
9.1. GENERAL .................................................................................................. 9-1
9.2. HEAD OF HOUSEHOLD ......................................................................... 9-1
9.3. DISPOSITION OF APPLICANT STATUSUPON THE BREAK-UP OF AN APPLICANT FAMILY ........................................................................................ 9-1
9.4. ADDING AND DELETING FAMILY MEMBERS TO AN APPLICANT'S HOUSEHOLD ...................................................................................................... 9-2
9.5. INCOME ELIGIBILITY ........................................................................... 9-2
9.6. ELLIGIBLE ASSISTANCE  STATUS ...................................................... 9-3
9.7. RESERVED ............................................................................................... 9-4
9.8. RESERVED ............................................................................................... 9-4

**10. WHEN AND HOW APPLICANTS MAY APPLY .......................... 10-1**
10.1. INTRODUCTION .................................................................................... 10-1
10.2. WAIT LIST LOTTERY NOTICE AND ENTRY ...................................... 10-1
10.3. SELF-CERTIFICATION/VERIFICATION ............................................. 10-3
10.4. CONDUCT OF THE LOTTERY .............................................................. 10-3
10.5. NOTIFICATION OF LOTTERY STATUS ............................................... 10-4
10.6. SUBSEQUENT LOTTERIES CONDUCTED AMONG ACCEPTED BUT NOT SELECTED LOTTERY ENTRIES ....................................................................... 10-4

**11. TARGETED CLASSES OF FAMILIES AND FAMILIES IN TARGETED UNITS ................................................................................................ 11-1**
11.1. TARGETED CLASSES OF FAMILIES ................................................... 11-1
11.2. FAMILIES IN TARGETED UNITS ......................................................... 11-1

**12. ORGANIZATION AND MANAGEMENT OF THE WAIT LIST ............. 12-1**
12.1. RESERVED .............................................................................................. 12-1
12.2. RESERVED .............................................................................................. 12-1
12.3. APPLICANT SELECTION ORDER ........................................................ 12-1
12.4. QUALIFICATIONS REGARDING ASSIGNMENT OF PREFERENCE POINTS ................................................................................................................ 12-2
12.5. VERIFICATION OF PREFERENCE POINTS ......................................... 12-3
12.6. APPLICANT REPORTING AND RESPONDING REQUIREMENTS ......... 12-3
12.7. REMOVAL FROM THE WAIT LIST ...................................................... 12-3
12.8. PURGING THE WAIT LIST .................................................................... 12-4

000289

**13.    UNIT BEDROOM COUNT STANDARD**............................................**13-1**
13.1.    INTRODUCTION................................................................. 13-1
13.2.    APPLICATION OF THE STANDARD ........................................... 13-1
13.3.    EXCEPTIONS..................................................................... 13-2
13.4.    MAXIMUM RENT SUBSIDY .................................................... 13-2

**14.    DETERMINATION OF FAMILY INCOME**..............................**14-1**
14.1.    ANNUAL FAMILY INCOME .................................................... 14-1
14.2.    INCOME .......................................................................... 14-1
14.3.    EXCLUSIONS..................................................................... 14-3
14.4.    DEDUCTIONS..................................................................... 14-7
14.5.    LETTER OR NOTICE FROM HUD CONCERNING INCOME ................. 14-8
14.6.    COOPERATING WITH SOCIAL SERVICE AGENCIES............................ 14-9

**15.    VERIFICATION OF ELIGIBILITY** ........................................**15-1**
15.1.    INTRODUCTION................................................................. 15-1
15.2.    ACCEPTABLE METHODS OF VERIFICATION AND TIME ALLOWED 15-1
15.3.    RELEASE OF INFORMATION .................................................. 15-4
15.4.    VERIFICATION OF CITIZENSHIP OR ELIGIBLE NONCITIZEN STATUS 15-4
15.5.    VERIFICATION OF SOCIAL SECURITY NUMBERS ............................. 15-5
15.6.    DEBTS OWED TO ANY HOUSING AUTHORITY ..................................... 15-6
15.7.    TIMING OF VERIFICATION..................................................... 15-6
15.8.    FREQUENCY OF OBTAINING VERIFICATION ..................................... 15-6

**16.    RESERVED**............................................................................**16-1**
16.1.    RESERVED........................................................................ 16-1
16.2.    RESERVED........................................................................ 16-1
16.3.    RESERVED........................................................................ 16-1

**17.    VOUCHER BRIEFINGS AND ISSUANCE** ...............................**17-1**
17.1.    INTRODUCTION................................................................. 17-1
17.2.    BRIEFING........................................................................ 17-1
17.3.    BRIEFING PACKET ............................................................. 17-1
17.4.    VOUCHER ISSUANCE AND PROCESSING ..................................... 17-2
17.5.    FAMILY INFORMATION PROVIDED TO OWNER................................. 17-3
17.6.    ASSISTANCE TO FAMILIES WHO CLAIM DISCRIMINATION ............ 17-4

**18.    PORTABILITY**.....................................................................**18-1**
18.1.    GENERAL POLICIES ............................................................ 18-1
18.2.    INCOME ELIGIBILITY.......................................................... 18-2
18.3.    RECEIVING HOUSING AUTHORITY ............................................. 18-2

000290

| | | |
|---|---|---|
| **19.** | **TENANCY APPROVAL AND REQUIREMENTS** | **19-1** |
| 19.1. | INTRODUCTION | 19-1 |
| 19.2. | APPROVAL TO LEASE A UNIT | 19-1 |
| 19.3. | ELIGIBLE TYPES OF HOUSING | 19-1 |
| 19.4. | INELIGIBLE TYPES OF HOUSING | 19-2 |
| 19.5. | DISAPPROVAL OF OWNER | 19-2 |
| 19.6. | SECURITY DEPOSIT | 19-3 |
| 19.7. | CHANGE OF OWNERSHIP | 19-4 |
| 19.8. | REQUIRED REPORTING OF CHANGES IN LEASE OR RENT | 19-4 |
| 19.9. | TERMINATION OF THE HOUSING ASSISTANCE PAYMENT (HAP) CONTRACT | 19-4 |
| 19.10. | HACA OWNED HOUSING | 19-5 |
| **20.** | **RESERVED** | **20-1** |
| 20.1. | RESERVED | 20-1 |
| 20.2. | RESERVED | 20-1 |
| 20.3. | RESERVED | 20-1 |
| 20.4. | RESERVED | 20-1 |
| 20.5. | RESERVED | 20-2 |
| 20.6. | RESERVED | 20-2 |
| 20.7. | RESERVED | 20-2 |
| **21.** | **RESERVED** | **21-1** |
| 21.1. | RESERVED | 21-1 |
| 21.2. | RESERVED | 21-1 |
| 21.3. | RESERVED | 21-1 |
| 21.4. | RESERVED | 21-1 |
| 21.5. | RESERVED | 21-1 |
| 21.6. | RESERVED | 21-1 |
| 21.7. | RESERVED | 21-1 |
| 21.8. | RESERVED | 21-1 |
| 21.9. | RESERVED | 21-1 |
| **22.** | **RESERVED** | **22-1** |
| 22.1. | RESERVED | 22-1 |
| 22.2. | RESERVED | 22-1 |
| 22.3. | RESERVED | 22-1 |
| 22.4. | RESERVED | 22-1 |
| 22.5. | RESERVED | 22-1 |
| 22.6. | RESERVED | 22-1 |
| 22.7. | RESERVED | 22-1 |

000291

22.8.   RESERVED................................................................................22-1
22.9.   RESERVED................................................................................22-2
22.10.  RESERVED................................................................................22-2
22.11.  RESERVED................................................................................22-2
**23.    RESERVED..............................................................................23-1**
23.1.   RESERVED................................................................................23-1
23.2.   RESERVED................................................................................23-1
23.3.   RESERVED................................................................................23-1
23.4.   RESERVED................................................................................23-1
**24.    INSPECTION POLICIES, HOUSING QUALITY STANDARDS, AND
DAMAGE CLAIMS ....................................................................24-1**
24.1.   INTRODUCTION........................................................................24-1
24.2.   INSPECTION TYPES..................................................................24-1
24.3.   SCHEDULING HQS INSPECTIONS ..........................................24-1
24.4.   OWNER AND FAMILY RESPONSIBILITY..................................24-2
24.5.   HOUSING QUALITY STANDARDS ...........................................24-2
24.6.   EMERGENCY FAIL ITEMS .......................................................24-11
24.7.   ABATEMENT ............................................................................24-11
24.8.   OWNER CLAIMSFOR DAMAGES, UNPAID RENT, AND VACANCY LOSS
        24-12
**25.    OCCUPANCY BY FAMILY AND FAMILY MEMBERS ..........................25-1**
25.1.   ABSENCE FROM THE UNIT ....................................................25-1
25.2.   IMPACT OF ABSENCE ON HOUSING ASSISTANCE..............................25-1
25.3.   ABSENCE OF A FAMILY MEMBER WHILE ATTENDING AN
INSTITUTION OF HIGHER EDUCATION..........................................25-2
25.4.   ABSENCE DUE TO MILITARY DUTY ......................................25-2
25.5.   GUESTS AND VISITORS ..........................................................25-3
25.6.   ADDING MEMBERS TO THE FAMILY ......................................25-3
**26.    REEXAMINATIONS ...............................................................26-1**
26.1.   ANNUAL REEXAMINATIONS....................................................26-1
26.2.   INTERIM REEXAMINATIONS...................................................26-1
26.3.   ANNUAL AND INTERIM REEXAMINATIONS ...........................26-2
26.4.   REQUIRED REPORTING OF CHANGES IN FAMILY CIRCUMSTANCES
        26-3
26.5.   FAMILY REQUEST FOR A REEXAMINATION.............................26-4
**27.    RESERVED..............................................................................27-1**
27.1.   RESERVED................................................................................27-1
27.2.   RESERVED................................................................................27-1

000292

27.3.    RESERVED.................................................................................27-1
27.4.    RESERVED.................................................................................27-2
27.5.    RESERVED.................................................................................27-2
28.    MOVES WITH CONTINUED ASSISTANCE ...........................28-1
28.1.    WHEN A FAMILY MAY MOVE ..................................................28-1
28.2.    RESTRICTIONS ON MOVES .....................................................28-1
28.3.    EFFECTIVE DATE OF NEW VOUCHER ISSUANCE ................28-1
29.    ALLOCATION OF SECTION 8 ASSISTANCE BY A COURT OF LAW OR UPON A CHANGE IN FAMILY CIRCUMSTANCES ...........................................29-1
29.1.    ALLOCATION OF ASSISTANCE BY A COURT OF LAW ......................29-1
29.2.    ALLOCATION OF ASSISTANCE UPON THE ABSENCE OF THE VOUCHER HOLDER ............................................................................29-1
29.3.    ALLOCATIONOF ASSISTANCE WHEN AN ASSISTED FAMILY LACKS, AT LEAST, ONE MEMBER OF MAJORITY AGE..................................................29-2
30.    ESTABLISHING AND REVISING VOUCHER PAYMENT STANDARDS 30-1
30.1.    SETTING THE PAYMENT STANDARD......................................30-1
30.2.    DECREASED PAYMENT STANDARDS .....................................30-1
30.3.    INCREASED PAYMENT STANDARDS ......................................30-1
31.    REASONABLE RENTS TO OWNERS .......................................31-1
31.1.    INTRODUCTION ........................................................................31-1
31.2.    WHEN RENT REASONABLENESS IS CALCULATED .............31-1
31.3.    METHODOLOGY USED TO DETERMINE RENT REASONABLENESS.31-1
32.    APPOINTMENT POLICY .........................................................32-1
32.1.    INTRODUCTION ........................................................................32-1
32.2.    LATE ARRIVAL ..........................................................................32-1
32.3.    MISSED AND RESCHEDULED APPOINTMENTS.....................32-1
33.    GROUNDS FOR DENIAL OR TERMINATION OF ASSISTANCE ........33-1
33.1.    INTRODUCTION ........................................................................33-1
33.2.    FORM OF DENIAL AND TERMINATION .................................33-1
33.3.    VIOLENCE AGAINST WOMEN ACT (VAWA) PROVISIONS RE: DENIAL OR TERMINATION OF ASSISTANCE................................................33-1
33.4.    GROUNDS FOR DENIAL OF ASSISTANCE..............................33-3
33.5.    GROUNDS FOR TERMINATION OF ASSISTANCE ..................33-5
33.6.    CONSIDERATION OF CIRCUMSTANCES ...............................33-8
33.7.    EVIDENCE OF CRIMINAL ACTIVITY .....................................33-9
33.8.    USE OF A CRIMINAL RECORD.................................................33-9
33.9.    REPAYMENT AGREEMENTS....................................................33-9

000293

**34.**   **INFORMAL REVIEW OF DENIAL OF HOUSING ASSISTANCE** ......... 34-1
34.1.   INTRODUCTION .................................................................................. 34-1
34.2.   PROCEDURE ....................................................................................... 34-1

**35.**   **INFORMAL HEARINGS** .............................................................................. 35-1
35.1.   WHEN AN INFORMAL HEARING WILL BE PROVIDED ........................ 35-1
35.2.   WHEN AN INFORMAL HEARING WILL NOT BE PROVIDED .............. 35-1
35.3.   PROCEDURE ....................................................................................... 35-1
35.4.   APPEAL OF HEARING OFFICER'S DECISION ......................................... 35-3

**36.**   **FAMILY SELF SUFFICIENCY** ................................................................... 36-1
36.1.   INTRODUCTION .................................................................................. 36-1
36.2.   PROGRAM COORDINATION ................................................................. 36-1
36.3.   ELIGIBILITY FOR PARTICIPATION ...................................................... 36-1
36.4.   OUTREACH EFFORTS .......................................................................... 36-1
36.5.   PRIORITIZATION OF APPLICANTS ....................................................... 36-2
36.6.   DEVELOPMENT OF ACTION PLANS ..................................................... 36-2
36.7.   PORTABILITY ..................................................................................... 36-2
36.8.   PROGRAM MONITORING ..................................................................... 36-3
36.9.   GRADUATION ..................................................................................... 36-3
36.10.  PROGRAM TERMINATION ................................................................... 36-3

**37.**   **PROJECT-BASED VOUCHERS** .................................................................. 37-1
37.1.   INTRODUCTION .................................................................................. 37-1
37.2.   NUMBER OF HOUSING CHOICE VOUCHER UNITS TO BE PROJECT
BASED 37-1
37.3.   NUMBER OF PROJECT UNITS TO BE ASSISTED ................................... 37-1
37.4.   PROJECT SELECTION PREFERENCES ................................................... 37-1
37.5.   LOCATION AND PROJECT DESIGN ....................................................... 37-2
37.6.   FINANCIAL FEASIBILITY .................................................................... 37-2
37.7.   OWNER EXPERIENCE .......................................................................... 37-2
37.8.   PROGRAM ADMINISTRATION .............................................................. 37-2

**38.**   **MODERATE REHABILITATION** ................................................................ 38-1
38.1.   INTRODUCTION .................................................................................. 38-1
38.2.   FAMILY PARTICIPATION ..................................................................... 38-1
38.3.   VACANCIES ........................................................................................ 38-1
38.4.   MODERATE REHABILITATION PROGRAM BRIEFING .......................... 38-2
38.5.   RENT ADJUSTMENTS .......................................................................... 38-2
38.6.   FAMILY SIZE CHANGES ...................................................................... 38-2

**39.**   **SECTION 8 HOME OWNERSHIP PROGRAM** ............................................. 39-1
39.1.   GENERAL PROVISIONS ....................................................................... 39-1

000294

39.2.    FAMILY ELIGIBILITY REQUIREMENTS ...................................................39-1

39.3.    FAMILY PARTICIPATION REQUIREMENTS.............................................39-3

39.4.    AMOUNT OF ASSISTANCE ........................................................................39-6

39.5.    GROUNDS FOR TERMINATION OF SECTION 8 HOME OWNERSHIP
ASSISTANCE ...........................................................................................................39-8

39.6.    CONTINUED PARTICIPATION IN SECTION 8 HOUSING CHOICE
VOUCHER PROGRAM ...........................................................................................39-9

39.7.    HACA ADMINISTRATIVE FEE ..................................................................39-9

39.8.    WAIVER OR MODIFICATION OF HOME OWNERSHIP POLICIES........39-9

**40.    CHARGES AGAINST THE SECTION 8 ADMINISTRATIVE FEE
RESERVE....................................................................................................................40-1**

**41.    INTELLECTUAL PROPERTY RIGHTS ....................................................41-1**

**42.    GLOSSARY....................................................................................................42-1**

000295

# 1. INTRODUCTION

## 1.1. USAGE NOTES

1.1.1.  The following conventions are used throughout the Administrative Plan *(The Plan)*:

1.1.2.  The most commonly used *definitions* in this Administrative Plan follow in Section 1.2, ***DEFINITIONS***.  Other definitions are in Section 42, ***GLOSSARY***.

1.1.3.  *Family share* and *Total tenant payment* are used interchangeably.

    1.1.3.1.*HACA or the Housing Authority* is The Housing Authority of the County of Alameda.

    1.1.3.2.*HUD* is The federal Department of Housing and Urban Development.

    1.1.3.3.*Landlord* and *owner* are used interchangeably

## 1.2. DEFINITIONS

1.2.1.  ***Admission*** is the date on which the family becomes a participant, that is, the effective date of the first HAP Contract for a family (first day of initial lease term).

1.2.2.  ***Applicant (applicant family)*** is a family that has applied for admission but is not yet a participant. Applicant (applicant family):

    1.2.2.1. includes all family members:

        1.2.2.1.1.   on the original application for housing assistance; or

        1.2.2.1.2.   added to the application for housing assistance as a member of the family by a Family Notice of Change as set forth in Section 12.6.2 below.

    1.2.2.2.does not include any family member removed from the application for housing assistance as a member of the family by a Family Notice of Change as set forth in Section 12.6.2 below.

1.2.3.  ***Break-Up of an applicant family*** is the separation of an applicant family into two or more successor families.

1.2.4.  ***Dating Violence*** has the same meaning given the term in section 40002 of the Violence Against Women Act of 1994.

1.2.5.  ***Domestic Violence*** has the same meaning given the term in section 40002 of the Violence Against Women Act of 1994.

1.2.6.  ***Displaced from a federally-declared disaster area*** is a public housing resident from an area where a federally-declared disaster (e.g., fire, flood, earthquake, etc.) has made the applicant's dwelling unit uninhabitable.

1.2.7.  ***Displaced person*** is one whose dwelling unit:

    1.2.7.1.has been rendered uninhabitable by a disaster (e.g., fire, flood, earthquake, etc.), declared or otherwise formally recognized pursuant to Federal disaster relief laws; or

    1.2.7.2.within six months from the date of verification will become uninhabitable due to federal, state or local government action related to code enforcement, public improvement, or development.

1.2.8.  ***Fair market rent (FMR)*** is the rent, including the cost of utilities, as established by HUD for units per number of bedrooms that must be paid in

000296

HACA's jurisdiction to rent privately owned, existing, decent, safe, and sanitary modest (non-luxury) rental housing with suitable amenities.

1.2.9.   A *Family:*

1.2.9.1. Is:

1.2.9.1.1.  a sole citizen, eligible emigrant, or VAWA self-petitioner, other than one set forth in Section 1.2.9.3 below; or

1.2.9.1.2.  more than one person, as determined by HACA, at least one of which is a citizen, eligible emigrant, or VAWA self-petitioner;

1.2.9.1.3.  approved to reside in a unit with assistance under the program.

1.2.9.2. Includes:

1.2.9.2.1.  Children:

1.2.9.2.1.1. temporarily absent from the home due to placement in foster care;

1.2.9.2.1.2. subject to a joint custody agreement but who live with one parent at least 183 days of the year (51%), whether consecutively or not.

1.2.9.2.1.3. as solely determined by HACA if both parents are separate applicants, and both claim the same school-age child.  In such an instance:

1.2.9.2.1.3.1.  the parent whose address is listed in the school records will be allowed to claim the child as a dependent.

1.2.9.2.1.3.2.  If school records are inconclusive, or if the child is not school-age, other pertinent records, such as doctor, hospital, criminal, and court records will be utilized.

1.2.9.2.2.  The fetus of a pregnant woman who has:

1.2.9.2.2.1. no other family members;

1.2.9.2.2.2. other family members in the household and is in her documented third trimester.

1.2.9.3. Family does not include:

1.2.9.3.1.  a student at an institution of higher education, as defined under section 102 of the Higher Education Act of 1965 (20 U.S.C. 1002) who is:

1.2.9.3.1.1. seeking assistance in his or her individual capacity (that is, separately from his or her parent(s)); and

1.2.9.3.1.2. under 24 years of age;

1.2.9.3.1.3. unless he or she is:

1.2.9.3.1.3.1.  either:

1.2.9.3.1.3.1.1. a veteran of the United States military; or

1.2.9.3.1.3.1.2. married; or

1.2.9.3.1.3.1.3. has a dependent child.

1.2.9.3.1.3.2.  and either:

1.2.9.3.1.3.2.1. a dependent of (an) income-eligible parent(s)/guardian(s); or

1.2.9.3.1.3.2.2. independent of his or her parent(s)/guardian(s) (financially independent and either hasn't resided

000297

with the parent(s)/guardian(s) for a year or more, or meets the U.S. Department of Education definition for 'independent student').

1.2.9.3.2. an individual who:

1.2.9.3.2.1. is an alcoholic or drug abuser; or

1.2.9.3.2.2. whose current use of alcohol or drugs:

1.2.9.3.2.2.1. prevents the individual from participating in the Program; or

1.2.9.3.2.2.2. whose participation, by reason of such current alcohol or drug abuse, would constitute a direct threat to property or the safety of others.

1.2.9.4. whose head, spouse, or sole member is:

1.2.9.4.1. a *person with disabilities* as set forth in Section 1.2.22, is a *disabled family*;

1.2.9.4.2. a *displaced person* as set forth in Section 1.2.7, is a *displaced family*;

1.2.9.4.3. at least 62 years of age, is an *elderly family*;

1.2.9.4.4. at least 50 years of age but below the age of 62, is a *near-elderly family.*

1.2.9.5. that includes members without citizenship or eligible immigration status, is a *mixed participant family.*

1.2.10. *Family rent to owner* is the portion of rent to owner paid by the family.

1.2.11. *Guest* is a person temporarily staying in the unit with the consent of a tenant or other member of the household who has express or implied authority to so consent on behalf of the tenant.

1.2.12. *Gross rent* is the sum of the rent to owner plus any utility allowance.

1.2.13. *Head of household* is the person:

1.2.13.1. of majority age;

1.2.13.2. with the legal capacity to enter into a lease under state law;

1.2.13.3. who:

1.2.13.3.1. so self-identifies on the family's *Wait-List Lottery Entry* as set forth in Section 10.2.7; and

1.2.13.3.2. is held responsible by HACA for:

1.2.13.3.2.1. paying the Total Tenant Payment (TTP); and

1.2.13.3.2.2. ensuring that all family members follow the program obligations.

1.2.14. *Household* is:

1.2.14.1. A family as set forth in Section 1.2.9 above; and

1.2.14.2. if approved in writing by HACA, a live-in aide as set forth in Section 1.2.17. above, including family members of the live-in aide approved in writing by HACA.

1.2.15. *Housing assistance payment* is HACA's monthly assistance payment, which includes:

1.2.15.1. A payment to the owner for rent to the owner under the family's lease; and

000298

1.2.15.2.   An additional payment to the family if the total assistance payment exceeds the rent to owner.

1.2.16. *Immediate Family Member* is, with respect to a person

1.2.16.1.   a spouse, parent, brother or sister, or child of that person, or an individual to whom that person stands in loco parentis; or

1.2.16.2.   any other person living in the household of that person and related to that person by blood and marriage.

1.2.17. *Individual with Handicaps* is as defined in 24 CFR Section 8.3.

1.2.18. *Live-In Aide* is a person who:

1.2.18.1.   has been approved in writing by HACA to reside in a family's unit only because he or she has been determined by a qualified care-provider to be essential to the care and well-being of a family member who:

1.2.18.1.1. is elderly; or

1.2.18.1.2. is near-elderly; or

1.2.18.1.3. has a verifiable disability;

1.2.18.1.4. and:

1.2.18.1.4.1.    who would not be equally well served by:

1.2.18.1.4.1.1. a home health care service; or

1.2.18.1.4.1.2. a care provider who does not live in the unit.

1.2.18.2.   has no ownership or other interest in the subsidized unit;

1.2.18.3.   is subject to the criteria set forth in:

1.2.18.3.1. Sections 33.4.1, 33.4.2, and 33.4.3 regarding denial or possible denial of assistance; and

1.2.18.3.2. Sections 33.4.1., 33.4.2., and 33.4.3 regarding termination or possible termination of assistance.

1.2.18.3.3. RESERVED

1.2.18.4.   is not subject to the citizen/eligible immigrant requirements set forth in Section 9.9 below;

1.2.18.5.   does not contribute financial support to the family.

1.2.18.6.   does not qualify for continued occupancy as a remaining member of the tenant family, even if he or she is related by blood, marriage or operation of law.

1.2.18.7.   if the family receives payments from Social Services through the In-Home Supportive Services (IHSS) program, is the person on record as the live-in aide with IHSS.

1.2.19. *Mixed Family* is a family that includes citizens or eligible immigrants, and noncitizens, that is, members without citizenship or eligible immigration status.

1.2.20. *Owner* is any person or entity with the legal right to lease or sublease a unit to a participant

1.2.21. *Participant* is a *family* that has been admitted to the Section 8 program administered by HACA and is currently assisted in the program.

1.2.22. *Payment Standard* is HACA's maximum monthly assistance payment for an assisted family before deducting the total tenant payment by the family.

1.2.23. *Person with disabilities* is, as defined in 24 CFR Section 5.403.

000299

1.2.24. *Premises* is the building or complex in which the dwelling unit is located, including common areas and grounds.

1.2.25. *Reasonable rent* is a rent to the owner that is not more than rent charged:
    1.2.25.1.   for comparable units in the private unassisted market; and
    1.2.25.2.   for comparable unassisted units in the premises.

1.2.26. *Standard permanent replacement housing:*
    1.2.26.1.   is:
        1.2.26.1.1. decent, safe and sanitary;
        1.2.26.1.2. adequate for the family's size; and
        1.2.26.1.3. occupied by the family pursuant to a written or oral lease or occupancy agreement.
    1.2.26.2.   includes shared housing with family or friends.
    1.2.26.3.   does not include transient facilities, hotels, motels or temporary shelters.

1.2.27. *Stalking* is:
    1.2.27.1.   to follow, pursue, or repeatedly commit acts with the intent to kill, injure, harass, or intimidate; or
    1.2.27.2.   to place under surveillance with the intent to kill, injure, harass, or intimidate another person;
    1.2.27.3.   and, in the course of, or as a result of, such following, pursuit, surveillance, or repeatedly committed acts, to place a person in reasonable fear of the death of, or serious bodily injury to, or to cause substantial emotional harm to:
        1.2.27.3.1. that person; or
        1.2.27.3.2. a member of the immediate family of that person; or
        1.2.27.3.3. the spouse or intimate partner of that person.

1.2.28. *Successor Family/Families*:
    1.2.28.1.   A member of an applicant family, as set forth in Section 1.2.2 above, who, prior to the break-up:
        1.2.28.1.1. moved from the same unit as her or his applicant family abuser in order to protect the health and safety of an individual who:
            1.2.28.1.1.1.   is, or has been, the victim of domestic violence, dating violence, or stalking; and
            1.2.28.1.1.2.   reasonably believed that she or he was imminently threatened by harm from further violence if she or he remained in the assisted dwelling unit.
    1.2.28.2.   Each of the two or more families:
        1.2.28.2.1. created by the break-up of the applicant family; and
        1.2.28.2.2. containing, at least, one member who meets the requirements of, and is willing and capable of being designated the Head of Household as set forth above in Section 1.2.13.

1.2.29. *Tenant(s)* is/are the participant(s) who execute(s) the lease as lessee of the dwelling unit.

1.2.30. *Total tenant payment (TTP)* is the portion of rent and utilities paid by the family.

000300

1.2.31. *Utility Reimbursement* is the portion of the housing assistance payment which exceed the amount of the rent to owner.

1.2.32. *Veteran or Serviceperson* is an applicant whose Head of Household or spouse/significant other is a current member of the military, an honorably discharged veteran, or the surviving spouse of an honorably discharged veteran.

## 1.3. SCOPE OF THE PLAN

1.3.1. *The Plan* defines HACA's policies for operating its Section 8 Housing Choice Voucher Program, and:

1.3.1.1. except as set forth in 24 CFR 983.2(b) and (c), its Section 8 Project-Based Voucher Program; and

1.3.1.2. except as set forth in 24 CFR 882, its Section 8 Moderate Rehabilitation Program.

1.3.2. The parameters for these policies are established by Federal laws and regulations. Issues related to the Section 8 Housing Choice Voucher Programs that are not addressed in this document may be governed by Federal, State and local regulations and HUD Notices, Memos and guidelines.

1.3.3. If there is any conflict between this policy and laws or regulations, the Federal program laws and regulations will prevail.

## 1.4. MISSION STATEMENT

1.4.1. Deliver housing, housing assistance and related services:

1.4.1.1. To low-income elderly persons and persons with verifiable disabilities, in order to enable them to live as independently as possible within their economic resources, and

1.4.1.2. To low-income persons who are not elderly or do not have verifiable disabilities, for as limited a time as necessary in order to enable them to become self-sufficient and economically independent.

1.4.1.2.1. During the period of their assistance by HACA, these participants are expected to avail themselves, as necessary, of those supportive family services, education, training, and job development activities needed for them to achieve self-sufficiency and economic independence.

## 1.5. JURISDICTION/SERVICE AREA

1.5.1. Incorporated Cities:

1.5.1.1. Albany

1.5.1.2. Dublin

1.5.1.3. Emeryville

1.5.1.4. Fremont

1.5.1.5. Hayward

1.5.1.6. Newark

1.5.1.7. Pleasanton

1.5.1.8. San Leandro

000301

1.5.1.9.Union City
1.5.2.  Unincorporated Areas:
1.5.2.1.Castro Valley
1.5.2.2.San Lorenzo

000302

# 12.   ORGANIZATION AND MANAGEMENT OF THE WAIT LIST

## 12.1.   *RESERVED*

12.1.1. RESERVED

12.1.2. RESERVED

12.1.3. RESERVED

    12.1.3.1.   RESERVED

        12.1.3.1.1. RESERVED

## 12.2.   *RESERVED*

12.2.1. RESERVED

    12.2.1.1.   RESERVED

    12.2.1.2.   RESERVED

        12.2.1.2.1. RESERVED

        12.2.1.2.2. RESERVED

            12.2.1.2.2.1.   RESERVED

            12.2.1.2.2.2.   RESERVED

        12.2.1.2.3. RESERVED

            12.2.1.2.3.1.   RESERVED

            12.2.1.2.3.2.   RESERVED

## 12.3.   *APPLICANT SELECTION ORDER*

12.3.1. Applicants are selected within:

    12.3.1.1.   Each unit bedroom count category as set forth in Section 13 below.

    12.3.1.2.   RESERVED

    12.3.1.3.   RESERVED

12.3.2. Except for applicants set forth in Sections 10.1.2.2. and 11.2 above, applicants:

    12.3.2.1.   Are assigned preference points as follows:

        12.3.2.1.1. **60 Points**: public housing residents who, as set forth in Section 1.2.6 above, are displaced from a federally-declared disaster area and not currently living in standard, permanent replacement housing.

        12.3.2.1.2. **40 Points**: other displaced families as set forth in Section 1.2.9.4.2 above who are not currently living in standard, permanent replacement housing as set forth in Section 1.2.25 above.

        12.3.2.1.3. **20 Points:** Public Housing tenants currently residing in HACA's jurisdiction:

            12.3.2.1.3.1.   whose unit size is inappropriate for the size and composition of the family; and

            12.3.2.1.3.2.   who have been on the transfer wait list for a period of four or more months because the tenant could not be offered a transfer to another unit due to unit unavailability.

000303

      12.3.2.1.4. **8 Points:**

         12.3.2.1.4.1.     A family as set forth in Section 1.2.9.1.2 above; or

         12.3.2.1.4.2.     A sole person:

            12.3.2.1.4.2.1. 62 years of age or older; or

            12.3.2.1.4.2.2. with disabilities as set forth in Section 1.2.22 above.

      12.3.2.1.5. **4 Points:** Residents; and

      12.3.2.1.6. **1 Point:** Working or Educational Preference.

12.3.3. Applicants are selected in **declining order** of total preference points (that is, applicants with more points are selected before applicants with fewer points).

12.3.4. Ties among applicants who have the same number of preference points are resolved:

      12.3.4.1.   first, in favor of veterans or servicepersons as set forth in Section 1.2.31 above; and then

12.3.5. in **increasing order** of lottery "tiebreaker" number as set forth in Sections 10.4 and 10.6 above (that is, applicants with a lower lottery "tiebreaker" number are selected before applicants with a higher one).

## 12.4.   *QUALIFICATIONS REGARDING ASSIGNMENT OF PREFERENCE POINTS*

12.4.1. The preference points set forth in Section 12.3.2.1.4.1 above, are not given to a pregnant woman who has no other person in her household.

12.4.2. Based on the information supplied on the applicant's lottery entry form, the resident preference set forth in Section 12.3.2.1.5 above is:

      12.4.2.1.   given to applicants whose Head of Household or spouse/significant other lives, works or has been hired to work in HACA's jurisdiction;

      12.4.2.2.   not subject to update or change;

      12.4.2.3.   verified at the time of application interview; and

      12.4.2.4.   not dependent upon how long the applicant has lived or worked in HACA's jurisdiction.

12.4.3. The resident preference set forth in Section 12.3.2.1.5 above will not have the purpose or effect of delaying or otherwise denying admission to the program based on the race, color, ethnic origin, gender, religion, disability or age of any member of an applicant family.

12.4.4. HACA will not deny a local preference, nor otherwise exclude or penalize a family in admission to the program, solely because the family resides in a public housing project.

12.4.5. The working or educational preference set forth in Section 12.3.2.1.6 above is given to an applicant whose Head of Household, spouse/significant other or sole member is any of the following:

      12.4.5.1.   employed;

      12.4.5.2.   62 years of age or older;

      12.4.5.3.   a person with disabilities as set forth in Section 1.2.22 above; or

      12.4.5.4.   currently enrolled in, or a graduate in the last six months of, a school or training program designed to prepare enrollees for the job market.

000304

*12.5.* **VERIFICATION OF PREFERENCE POINTS**

12.5.1. Applicants will self-certify their eligibility for preference points on their lottery entry forms.

12.5.2. HACA will verify an applicant's preference status when the applicant appears to be within three (3) months of being offered housing assistance.

12.5.3. Applicants who are determined not to be eligible for a local preference will be notified in writing of HACA's determination of ineligibility.

    12.5.3.1. Such applicants will be provided with a brief statement of the reasons for their ineligibility and will be advised of their right to an informal review.

    12.5.3.2. Once the time for a review has expired, or if the applicant is unsuccessful in the review process, the applicant will be returned to the wait list with his or her points corrected.

    12.5.3.3. If the applicant successfully challenges HACA's decision, he or she will proceed to the next phase of the income and family composition verification process.

*12.6.* **APPLICANT REPORTING AND RESPONDING REQUIREMENTS**

12.6.1. Changes in an applicant's circumstances while on the wait list may affect the applicant's entitlement to a preference and thus, ranking on the wait list.

12.6.2. Applicants must take the following actions in a timely manner:

    12.6.2.1. Submit a HACA Family Notice of Change form to report any change in:

        12.6.2.1.1. mailing address; or

        12.6.2.1.2. family composition.

    12.6.2.2. Respond to any requests from HACA to:

        12.6.2.2.1. update the information on the family's application; or

        12.6.2.2.2. confirm the family's continued interest in assistance.

    12.6.2.3. Applicants who do not comply with these reporting and responding requirements may be denied assistance.

*12.7.* **REMOVAL FROM THE WAIT LIST**

12.7.1. If a mailing from HACA is returned by the Post Office:

    12.7.1.1. without a forwarding address, the applicant will be removed without further notice and the returned mailing will be maintained in the file.

    12.7.1.2. with a forwarding address, it will be re-mailed to the address indicated.

12.7.2. If an applicant fails to respond to any of HACA's mailings, the applicant will:

    12.7.2.1. either be sent written notification that s/he is being removed from the wait list and given 14 days to request an informal review; or

    12.7.2.2. given a 14-day grace period in which to supply requested information or be removed from the wait list.

    12.7.2.3. The applicant will be removed from the waiting list if s/he fails to respond within 14 days.

000305

12.7.3. If an applicant is removed from the wait list for failure to respond, with two possible exceptions, s/he will not be reinstated to the wait list:

    12.7.3.1.   Consideration will be given to the disabled to determine if an accommodation is warranted; and

    12.7.3.2.   Consideration will also be given to families who failed to respond due to an emergency situation such as hospitalization or disaster (fire, etc.).

    12.7.3.3.   An applicant will be required to prove his/her claim conclusively to get such consideration.

## 12.8.  *PURGING THE WAIT LIST*

12.8.1. HACA will update and purge its waiting list at least annually to ensure that the pool of applicants reasonably represents the interested families for whom HACA has current information, i.e. applicant's address, family composition, income category, and preferences.

**000306**