1  BAY AREA LEGAL AID
   LISA S. GREIF (State Bar No. 214537)
2  NAOMI YOUNG (State Bar No. 105041)
   PHILLIP R. MORGAN (State Bar No. 99979)
3  405 14th Street, 11th Floor
   Oakland, California 94612
4  Telephone: 510-663-4744
   Facsimile: 510-663-4740
5  Email: lgreif@baylegal.org
       nyoung@baylegal.org
6      pmorgan@baylegal.org

7  THE CALIFORNIA AFFORDABLE HOUSING LAW
   PROJECT OF THE PUBLIC INTEREST LAW PROJECT
8  DEBORAH COLLINS (State Bar No. 154532)
   MICHAEL RAWSON (State Bar No. 95868)
9  CRAIG CASTELLANET (State Bar No. 176054)
   449 15th Street, Suite 301
10 Oakland, California 94612
   Telephone: 510-891-9794, ext. 156
11 Facsimile: 510-891-9727
   Email: dcollins@pilpca.org
12     mrawson@pilpca.org
       ccastellanet@pilpca.org
13
   Attorneys for Plaintiffs ARROYO VISTA TENANTS ASSOCIATION, et al.
14
                    UNITED STATES DISTRICT COURT
15                  NORTHERN DISTRICT OF CALIFORNIA

16 ARROYO VISTA TENANTS                 CASE NO. C 07-05794 MHP
   ASSOCIATION, RHENAE KEYES,
17 ANDRES ARROYO, DARLENE BROWN,
   ELISE VEAL                           FIRST AMENDED COMPLAINT FOR
18                                       DECLARATORY AND INJUNCTIVE
              Petitioners/Plaintiffs,    RELIEF AND VERIFIED PETITION FOR
19                                       WRIT OF MANDATE
           vs.
20
   CITY OF DUBLIN; DUBLIN HOUSING
21 AUTHORITY; HOUSING AUTHORITY OF
   ALAMEDA COUNTY; and DOES 1 through
22 20, inclusive,
              Respondents/Defendants.
23
24 SCS DEVELOPMENT COMPANY, dba
   Citation Homes Central, a California
25 Corporation; EDEN HOUSING, INC., a
   California Nonprofit, and DOES 21 through
26 50,
27
              Real Parties in Interest.
28

First Amended Complaint for Declaratory and
Injunctive Relief and Verified Petition for Writ of Mandate          Case No. C-07-05794 MHP

## I.    **INTRODUCTORY STATEMENT**

1.      This is an action brought against the City of Dublin, California, the Dublin Housing Authority, and the Housing Authority of the County of Alameda   (collectively, Defendants), by Arroyo Vista Tenants Association, Rhenae Keyes, Darlene Brown, Andres Arroyo, and Elise Veal (collectively, Plaintiffs).   Plaintiffs are a residentsø association and individual low-income public housing tenants of a 150-unit public housing complex located at 6700 Dougherty Road in Dublin, California known as Arroyo Vista.

2.      Defendant Dublin Housing Authority (õDHAö) receives a federal subsidy to maintain and provide public housing for these low-income tenants.  Prior to entering into an agreement to dispose of or demolish public housing, DHA must secure written approval from the United States Department of Housing and Urban Development (õHUDö). Without HUD approval, Defendants entered into a Disposition and Development Agreement for the Redevelopment of Arroyo Vista (õDDAö) with private developers to dispose of the property, relocate Arroyo Vista residents, and demolish all 150 low-income public housing units in favor of a mixed-income development.  The new development will consist of 210 market-rate õfor-saleö homes, 16 ownership homes that will be affordable to families with incomes of over $100,000, and approximately 179 rental units that will not address the affordability needs of current residents or the need for housing for families with children, and will greatly diminish the housing available to extremely low and very low income families in Dublin.

3.      Without HUD approval of an application for disposition of Arroyo Vista, including approval of a relocation plan and timeline mandated by federal law and the adoption of a relocation plan mandated by state law, defendants have implemented the unauthorized DDA to relocate approximately 50 Arroyo Vista households and have pressured Plaintiffs and other residents to seek Section 8 housing vouchers and move out on a compressed time frame, so that defendants can forge ahead with the unauthorized DDA. By circumventing the HUD approval process and their relocation planning obligations, residents of Arroyo Vista, most of whom have extremely low incomes, have been displaced and/or are threatened with permanent displacement from their homes even though HUD may not approve the disposition, residents

First Amended Complaint for Declaratory and
Injunctive Relief and Petition for Writ of Mandate                Case No. C-07-05794 MHP

1   may never have to move, and are being urged and coerced to move without the requisite notice,

2   advisory services, and relocation benefits mandated by federal and state law that are necessary

3   for residents to make any informed decision as to when, where, and how to move.

4          4.     Without HUD approval of an application for disposition or demolition of

5   Arroyo Vista, defendants have refused to re-rent the vacated public housing units, have boarded

6   them up, and have subjected Plaintiffs and remaining residents to blight and hazardous

7   conditions caused by defendants' "de facto" demolition of Arroyo Vista.

8          5.     Racial and ethnic minorities and families with children are each significantly

9   over-represented in Arroyo Vista and DHA's public housing waiting list, but are significantly

10  under-represented in Dublin as a whole.  The relocation of Arroyo Vista residents without prior

11  HUD approval of a disposition application, including a relocation plan, timeline and the benefits

12  required under federal law, and without an adopted relocation plan, notice, advisory services

13  and relocation benefits mandated by state law has and will have a foreseeable disparate impact

14  on the minority population and families with children, and has and will force the minority

15  population and families with children of Arroyo Vista out of the city.

16         6.     Defendants' actions violate their statutory and regulatory duties, including

17  Section 18 of the United States Housing Act of 1937, 42 U.S.C. §1437p (Section 18) and its

18  implementing regulations (24 C.F.R. Part 970); the California Relocation Assistance Act (Govt.

19  C. §§7260 *et seq.*) and state regulations (25 C.C.R. §§ 6000 *et seq.*); the Housing and

20  Community Development Act of 1974, as amended (42 U.S.C. §5301 *et seq.*); Title VIII of the

21  Civil Rights Act of 1968 (42 U.S.C. §3601 et seq.) (the Fair Housing Act); and the California

22  Fair Employment and Housing Act (Cal. Govt. C. §12955 *et seq.*).

23         7.     Plaintiffs seek a writ of mandate to set aside the City Council's approval of the

24  DDA for failure to comply with federal laws that govern the disposition and demolition of

25  public housing, the removal of public housing units from the housing stock, and relocation of

26  public housing residents; and a writ of mandate ordering Defendants to comply with state

27  relocation assistance laws that prohibit a public entity's displacement of residents in the absence

28

2

First Amended Complaint for Declaratory and
Injunctive Relief and Petition for Writ of Mandate          Case No. C-07-05794 MHP

1  of a relocation assistance plan and the provision of required notices, advisory services and

2  relocation benefits as approved by the local legislative body.

3         8.    Plaintiffs seek a judgment declaring that Defendants have violated 42 U.S.C.

4  §1437p and implementing regulations, 42 U.S.C. §5304(d) and implementing regulations, Cal.

5  Govt. C. §7260 and Guidelines, the federal Fair Housing Act (42 U.S.C. §3601 et seq.) and

6  California Fair Employment and Housing Act (Cal. Govt. C. §12955 *et seq.*).

7         9.    Plaintiffs are faced with imminent threat of irreparable harm, are without a

8  plain, speedy, and adequate remedy at law, and seek a temporary restraining order and

9  preliminary and permanent injunctions as set forth in the Prayer for Relief.

## II.     JURISDICTION

11        10.    This Court has jurisdiction over Plaintiffsø claims under 28 U.S.C. §1331,

12  (federal question) and 42 U.S.C. §3613 (fair housing).

13        11.    This Court may issue declaratory and injunctive relief pursuant to 28 U.S.C.

14  §§2201 and 2202, 42 U.S.C. §3601 et seq. (fair housing) and Rules 57 and 65 of the Federal

15  Rules of Civil Procedure.

16        12.    This Court has supplemental jurisdiction over Plaintiffsø state law claims under

17  28 U.S.C. §1367(a) and 1441(c).

## III.     VENUE

19        13.    Venue is proper in this district under 28 U.S.C. §1391(b) because the claims

20  arose in Alameda County.

## IV.     PARTIES

22  **Plaintiffs**

23        14.    Plaintiff ARROYO VISTA TENANTS ASSOCIATION is an unincorporated

24  association of Arroyo Vista tenants.  The Arroyo Vista Tenants Association is an

25  unincorporated association comprised of 31 current and former residents of Arroyo Vista, and is

26  located in Alameda County, California.  The mission of Arroyo Vista Tenants Association is to

27  preserve Arroyo Vista as affordable public housing in Dublin and to ensure that Arroyo Vista

28  residents both past and present are permitted a voice in the decisions affecting the potential

3

First Amended Complaint for Declaratory and
Injunctive Relief and Petition for Writ of Mandate       Case No. C-07-05794 MHP

1 demolition and replacement of their homes, that their housing needs are met, that they are

2 treated equitably and lawfully in the event of any displacement, and that they receive all the

3 relocation assistance to which they are entitled under the law.  Members of the association have

4 spent many hours advancing the mission of the organization through oral and written

5 communications with Defendants.

6        15.    Plaintiff RHENAE KEYES is a 48-year-old, disabled, African-American

7 woman who currently and at all times relevant herein has been a resident of Arroyo Vista in

8 Alameda County.  Ms. Keyes has been a resident of Arroyo Vista for 4 years, and currently

9 shares a four-bedroom unit with her minor daughter.  Due to the nature of her disabilities, Ms.

10 Keyes makes frequent visits to her medical providers located in Pleasanton.  Ms. Keyes would

11 face undue hardship if forced to move far from her physicians.  As a single mother, Ms. Keyes

12 has come to rely on the assistance of other tenants in caring for her daughter.  Arroyo Vista

13 provides her family with a safe neighborhood and close proximity to the public school system

14 where her daughter is in seventh grade.   Ms. Keyes' household income is very low as defined

15 by California Health and Safety Code §50105.  Her sole source of income is Supplemental

16 Security Income and child support, and she currently pays $549 in rent per month as an Arroyo

17 Vista tenant.  She is informed and believes that a comparable four-bedroom house in Dublin

18 rents for at least $2100-$2800 per month.  Ms. Keyes was informed verbally by DHA and the

19 Housing Authority of Alameda County ("HACA") that she will be required to move out of

20 Arroyo Vista by November 2008 because "HUD will approve the application."  However, in

21 April 2007, Ms. Keyes was urged to immediately apply for the Section 8 Rental Voucher

22 Program because she might "lose out" on the housing stock if she waits until November 2008.

23 Over 50 households have reportedly vacated, and the boarded up houses are visible to Ms.

24 Keyes and other tenants.  Ms. Keyes and other tenants were not included in the decision-making

25 process in a meaningful way, and were only informed after the fact of decisions made by DHA

26 regarding the redevelopment.  Ms. Keyes was never advised of her relocation rights and never

27 received a direct informational notice, notice of eligibility, or a 90-day notice.     Ms. Keyes

28 wishes to remain at Arroyo Vista because it affords her family stable, affordable and suitable

4

First Amended Complaint for Declaratory and
Injunctive Relief and Petition for Writ of Mandate             Case No. C-07-05794 MHP

1   housing.  Ms. Keyes particularly likes that the Arroyo Vista tenants are a cohesive, culturally

2   diverse community that she and her daughter consider as family.

3       16.    Plaintiff DARLENE BROWN is a 54-year-old, disabled, African-American

4   woman who currently and at all times relevant herein has been a resident of Arroyo Vista in

5   Alameda County.  Ms. Brown has been a resident of Arroyo Vista for 17 years.  Ms. Brown

6   wishes to remain at Arroyo Vista because it affords her with a stable, affordable and suitable

7   housing.  In addition, Arroyo Vista provides her family with a safe neighborhood and close

8   proximity to Livermore where she is a student.  Due to the nature of Ms. Brown's disability, she

9   makes frequent visits to her physicians.  She would face undue hardship if she was forced to

10  move far from her medical providers.  Plaintiff Brown's household income is extremely low as

11  defined by California Health and Safety Code §50106.   Her sole source of income is

12  Supplemental Security Income, and she currently pays $179 in rent per month as an Arroyo

13  Vista tenant.  She is informed and believes that a comparable two-bedroom house in the Dublin

14  area rents for approximately $1900-$2000 per month or more.  Ms. Brown was informed by

15  DHA and HACA that she will be required to move out of Arroyo Vista by November 2008.

16  However, Ms. Brown also was urged to immediately apply for the Section 8 Rental Voucher

17  Program because appropriate housing might not be available for her by November 2008.

18      17.    Plaintiff ANDRES ARROYO is a 66-year-old, disabled, Hispanic man who

19  currently and at all times relevant herein has been a resident of Arroyo Vista in Alameda

20  County.  Mr. Arroyo has been a resident of Arroyo Vista for 21 years, and currently shares a

21  two-bedroom unit with his 69-year-old wife.  Mr. Arroyo wishes to remain at Arroyo Vista with

22  his family because it affords his family stable, affordable and suitable housing.  Arroyo Vista

23  provides his family with a safe neighborhood and close proximity to his adult daughter and son

24  and their families who live in Dublin and San Ramon.  Due to the nature of Mr. Arroyo's

25  disability and mobility-impairment, Mr. Arroyo makes frequent visits to his medical providers

26  located in Pleasanton.  Mr. Arroyo would face undue hardship if he was forced to move far

27  from his physicians.  Mr. Arroyo's household income is very low as defined by California

28  Health and Safety Code §50105.  His sole source of income is Social Security and he currently

1    pays $168 in rent per month as an Arroyo Vista tenant.  He is informed and believes that a

2    comparable two-bedroom house in the Dublin area rents for approximately $1900-$2000 per

3    month or more.  Mr. Arroyo has been urged by DHA to move out of Arroyo Vista by November

4    2008 and to apply for the Section 8 Rental Voucher Program.

5         18.    Plaintiff ELISE VEAL is a 37-year-old African-American woman who

6    currently and at all times relevant herein has been a resident of Arroyo Vista in Alameda

7    County. Ms. Veal has been a resident of Arroyo Vista for 17 years, and currently shares a four-

8    bedroom unit with her husband, five minor children, and 18-year old daughter.  Ms. Veal

9    wishes to remain at Arroyo Vista with her family because it affords her family stable, affordable

10   and suitable housing.  In addition, Arroyo Vista provides her family with a safe neighborhood

11   and close proximity to the public school system and day care for her five minor children.  Ms.

12   Veal is employed in Pleasanton and participates in local business associations for her career

13   development.  She has developed personal and business contacts in the community and would

14   face undue hardship if she was forced to move far from her employment. Ms. Veal's household

15   income is very low as defined by California Health and Safety Code §50105.  Her source of

16   income is from employment and she currently pays $524 in rent per month as an Arroyo Vista

17   tenant.  She is informed and believes that a comparable four-bedroom house in Dublin rents for

18   approximately $2100-$2800 per month or more.  Ms. Veal has been urged by DHA to move

19   out of Arroyo Vista by November 2008 and to apply for the Section 8 Rental Voucher Program.

20   In response to her complaint about vandalism to her car, DHA suggested that she just apply for

21   Section 8 and move out of Arroyo Vista now.

22   **Defendants**

23        19.    Defendant CITY OF DUBLIN (the City) is a public governmental entity

24   formed and existing under the general laws of the State of California and is a political

25   subdivision thereof.

26        20.    Defendant DUBLIN HOUSING AUTHORITY (DHA) is a corporate and

27   politic public body, created and existing under the Housing Authorities Law (Health & Saf. C.

28   §§34200 et seq.) of the State of California.  The DHA is a Public Housing Agency (PHA)

6

First Amended Complaint for Declaratory and
Injunctive Relief and Petition for Writ of Mandate        Case No. C-07-05794 MHP

1    within the meaning of 42 U.S.C. §1437 (2007).  Arroyo Vista is owned by DHA and is subject

2    to an annual contributions contract with HUD.

3         21.    Defendant HOUSING AUTHORITY OF ALAMEDA COUNTY (HACA) is a

4    corporate and politic public body, created and existing under the Housing Authorities Law

5    (Health & Saf. C. §§34200 et seq.) of the State of California.  HACA is a PHA within the

6    meaning of 42 U.S.C. §1437 (2007).  HACA is the managing agent for the DHA, and is charged

7    with providing Section 8 vouchers to residents of Arroyo Vista that have been and will be

8    displaced as a result of the DDA.

9    **Real Parties in Interest**

10        22.    Real Party in Interest S.C.S. DEVELOPMENT COMPANY, doing business as

11   Citation Homes Central (Citation), is a California Corporation duly organized and existing

12   under and by virtue of the laws of the State of California, and is authorized to do business and is

13   doing business in Dublin, California.  Citation is a proposed owner and developer of the "for-

14   sale" units at Arroyo Vista, and a party to the DDA.

15        23.    Real Party in Interest EDEN HOUSING, INC. (Eden) is a California nonprofit

16   public benefit corporation duly organized and existing under and by virtue of the laws of the

17   State of California and is authorized to do business and is doing business in Dublin, California.

18   Eden is a proposed owner, developer, and manager of the "rental" units at Arroyo Vista, and a

19   party to the DDA.

20                     **V.    FACTUAL ALLEGATIONS**

21   **Demographics of Arroyo Vista and Dublin**

22        24.    Arroyo Vista is a complex of 150 public housing units located in Dublin.  It

23   consists of 94 one and two-bedroom homes and 56 three and four-bedroom homes.  Arroyo

24   Vista is the only public housing in all of Dublin, with average rents of less than $500 per month,

25   and some as low as $25 or $50 due to the federal subsidy.  By comparison, average market rents

26   in Dublin range from $1350 (1-bedroom apartment) to $2495 (4-bedroom home).  Thus, Arroyo

27   Vista provides an otherwise unattainable home to many of Dublin's poorest residents.

28

7

25.      In its Streamlined Five-Year PHA Plan for PHA fiscal years 2005-2009 ("Five-Year Plan"), DHA states that its mission is "to provide an affordable housing resource, free from discrimination, for extremely low income, very low income, and low income families in the Dublin community."

26.      Arroyo Vista constitutes a racially-diverse enclave within a far more homogenous city.  According to HACA's September 30, 2007 report to HUD on resident characteristics, the heads of household in Arroyo Vista are 52% White, 28% African American, 21% Latino/Hispanic, 15% Asian, 4% Native Hawaiian or Pacific Islander and 1% American Indian or Alaska Native.  The racial breakdown of Dublin as a whole is approximately 69.4% White, 10.3% Asian, 10% African American, 13.5% Latino/Hispanic, .7% American Indian or Alaska Native and 0.3% Native Hawaiian or Pacific Islander.  The displacement and relocation of residents pursuant to an unauthorized DDA and in the absence of HUD approval of a disposition application DDA, if allowed to go forward, will have a foreseeable disparate impact on racial and ethnic minorities, and will and has forced many of the low-income minority residents of Arroyo Vista out of the city entirely.

27.      As of October 2007, 63% of the households residing at Arroyo Vista were families with children, with 46% of the residents under age 18 and 57% of households composed of 3 or more members.  Census data shows that only 43% of households in Dublin are composed of three or more members, and that only 15% of the city's housing has four bedrooms.  The displacement and relocation of residents pursuant to an unauthorized DDA and in the absence of HUD approval of a disposition application, if allowed to go forward, will have a foreseeable disparate impact on Dublin families with children, and will and has forced many of the low-income families of Arroyo Vista out of the city entirely.

28.      Consistent with the DHA's mission statement and prior to the displacement of Arroyo Vista residents, approximately 65% of Arroyo Vista residents fell within the extremely low income category, and 24% had very low incomes.  As defined by HUD and the state, an extremely low income family of four in 2007 had an income of up to $25,150 (30% of the area

First Amended Complaint for Declaratory and
Injunctive Relief and Petition for Writ of Mandate                    Case No. C-07-05794 MHP

1    median income).   Approximately 44% or 66 of these õextremely low incomeö families had

2    annual incomes far below that -- $15,000 or less.

3          29.    According to DHAøs Five-Year Plan, there are 267 families on DHAøs waiting

4    list for public housing in Arroyo Vista.  Of these 267 families, 97.4% have very low incomes,

5    and 73.8% of those families (or 197 families) have extremely low incomes.  In addition, 89.1%

6    of the families on DHAøs waiting list (238 families) have children, while only 3.7% (10

7    households) are elderly.   In terms of race and ethnicity, the waiting list is 48.3% African

8    American, 30.7% White, 12.7% Asian, 6.8% Hispanic, and 1.5% Native American. The

9    removal and boarding up of public housing units from DHAøs only public housing stock

10    pursuant to an unauthorized DDA and in the absence of HUD approval of a disposition or

11    demolition application has a disparate impact on the ability of minorities and families with

12    children to reside in Dublin.

13    **Defendants' Adoption and Implementation of an Unauthorized DDA**

14          30.    Despite its mission and DHAøs awareness of these critical housing needs, on or

15    about July 26, 2006, DHA selected a õdevelopment teamö (Citation and Eden) to demolish all

16    of the truly affordable public housing at Arroyo Vista and õreplaceö it with over 200 market-

17    rate ownership units and 179 õtax-creditö rental units.

18          31.    On November 21, 2006, DHA amended its Five-Year and Annual PHA Plans

19    to provide for disposition or demolition of Arroyo Vista and development by Real Parties of

20    226 õfor-saleö units (15 of them affordable to moderate income households, and the remainder

21    to be sold at market rates) and 179 supposedly affordable rental units.

22          32.    On July 17, 2007, the City Council approved the DDA between DHA, HACA,

23    Eden and Citation by Resolution 136-07 for the express purpose of disposing of Arroyo Vista,

24    demolishing the existing public housing units, and replacing them with a combination of market

25    rate ownership and õaffordableö rental units.   On or about July 25, 2007, defendants and real

26    parties executed the DDA. The DDA provides for õredevelopmentö of 405 residential units ó

27    226 õfor-saleö dwellings, and 179 rental units, 49 of which are to be reserved for seniors.

28    Defendant Cityøs notice of this meeting did not include language pursuant to Govt. C.

9

First Amended Complaint for Declaratory and
Injunctive Relief and Petition for Writ of Mandate          Case No. C-07-05794 MHP

1   §65009(b) that would limit the issues raised in this cause of action.  Accordingly, Plaintiffs

2   were not required to raise the issues alleged herein at the July 17, 2007 public hearing.

3          33.     If the nonprofit developer secures "tax credit" funding, HOME funds, and

4   HUD §202 funding, the rent levels for the "new" rental units are estimated to range from $471

5   (for 62 "extremely low income" one-bedroom units, 49 of them restricted for seniors) to $1307

6   for five "low-income" three bedroom units.

7          34.     Arroyo Vista residents with incomes below $15,000 can ill afford rents starting

8   at $471 for one-bedroom units.  A family is rent-burdened if it spends more than 30% of its

9   monthly income for rent.  Families with incomes of $15,000 can spend no more than $375 for

10  rent and utilities.  Thus, the "new" development will not be affordable to at least 44% of Arroyo

11  Vista residents (or 66 families) with incomes at or below $15,000.

12         35.     After the City approved the DDA, DHA submitted a Disposition Application to

13  HUD on or about August 14, 2007.  In the disposition application, defendants DHA and HACA

14  seek to sell Arroyo Vista to Real Parties Citation and Eden and to replace the 150 public

15  housing units with 378 "mixed-income" dwellings, 194 affordable and 184 market-rate

16  ownership units.

17         36.     On information and belief, HUD has not approved the August 14, 2007

18  application for disposition of Arroyo Vista.

19  **Unlawful Displacement and Relocation of Residents**

20         37.     Without having submitted a complete disposition application to HUD,

21  including a complete relocation plan, and without awaiting HUD's review and approval or

22  disapproval of the application, defendants commenced the relocation of residents in or about

23  July 2007.

24         38.     Although the DDA provides for the demolition of Plaintiffs' homes, which will

25  result in the displacement of all Arroyo Vista residents, defendants relocated nearly 50

26  households by early February 2008, before even distributing a relocation assistance plan to

27  Plaintiffs for their input or comment as required by the California Relocation Assistance Act.

28  On or about February 12, 2008, DHA distributed notice to Plaintiffs that a proposed relocation

10

First Amended Complaint for Declaratory and
Injunctive Relief and Petition for Writ of Mandate            Case No. C-07-05794 MHP

1   plan was available for review and public comment, and that the plan will be adopted at DHA's

2   April 15, 2008 meeting.

3         39.    As of the filing of this First Amended Complaint and Petition, defendants have

4   not submitted a relocation plan that complies with the California Relocation Assistance Act to

5   the DHA Board of Commissioners, HACA Board of Commissioners, or the City Council for

6   approval, and no relocation plan has been adopted by a local legislative body as required by

7   state law.

8         40.    Defendants have not adequately advised any of the Plaintiffs of their relocation

9   assistance rights pursuant to 42 U.S.C. §1437p, 42 U.S.C. §5301 et seq. or the California

10  Relocation Assistance Act.

11        41.    Defendants have not provided Plaintiffs with adequate or authorized relocation

12  notices required by the California Relocation Assistance Act, 42 U.S.C. §5301 *et seq.* or a 90-

13  day notice as required by 42 U.S.C. §1437p.

14        42.    Defendants have not offered or provided Plaintiffs or other residents of Arroyo

15  Vista the relocation benefits required by the California Relocation Assistance Act, 42 U.S.C.

16  §5301 et seq. or the counseling services, comparable housing, or actual and reasonable

17  relocation expenses required by 42 U.S.C. §1437p.

18        43.    Instead, defendants have pressured Plaintiffs to apply for Section 8 vouchers

19  now or risk not receiving a voucher or a Section 8 unit later, and have encouraged Plaintiffs to

20  move out of Arroyo Vista.

21  **Harm to Plaintiffs**

22        44.    Defendants' actions threaten Plaintiffs with imminent and irreparable injury,

23  including the involuntary displacement from their homes without benefit of careful analyses by

24  HUD and local government of defendants' disposition application and relocation plans, the loss

25  of a public housing subsidy and deprivation of relocation assistance required by state and

26  federal law and the risk of homelessness as a result, the permanent loss of 150 units of public

27  housing, the severing of personal, family and community ties, the lack of access to public

28

11

1  services and transportation, access to their employment and education opportunities, and

2  discrimination in violation of fair housing laws.

3      45.    Defendants' actions threaten plaintiff Arroyo Vista Tenants Association with

4  imminent and irreparable injury by depriving it and its members of the benefit of careful

5  analyses by HUD and local government of defendants' disposition application and relocation

6  plans, and frustrates its mission to protect its members against the above harms.   Defendants'

7  actions also frustrate the Association's mission to preserve Arroyo Vista as public housing and

8  cause the Association to expend time and resources to counter Defendants' illegal actions.

9      46.    Defendants' actions threaten to deprive individual Plaintiffs and members of

10 the Arroyo Vista Tenants Association of opportunities to reside in affordable housing in Dublin

11 and threaten to make affordable housing unavailable to individual Plaintiffs and members of the

12 Association.   Defendants' actions also have deprived and threaten to deprive individual

13 Plaintiffs and members of the Association of their right to live and associate in a community

14 which is free of illegal discrimination and to enjoy the economic, social, psychological and

15 other benefits of residing in a racially and ethnically diverse community.

## IV.    FIRST CLAIM FOR RELIEF

### (By All Plaintiffs Against All Defendants)
### For A Writ of Mandate To Set Aside The
### DDA For Failure To Comply With
### Demolition and Disposition Provisions Of The United States Housing Act
### (42 U.S.C. §1437p; 24 C.F.R. §970 et seq.)

21      47.    Plaintiffs incorporate by reference herein each and every allegation of

22 paragraphs 1 through 46 as though fully set forth herein and allege:

23      48.    The United States Housing Act of 1937 declares that it is "the policy of the

24 United States to promote the general welfare of the Nation by employing its funds and credit . . .

25 to remedy the unsafe housing conditions and the acute shortage of decent and safe dwellings for

26 low-income families. . . ." 42 U.S.C. §1437(a)(1)(A).

27      49.    The national housing goal is the realization as soon as feasible of "a decent

28 home and a suitable living environment for every American family." 42 U.S.C. §1441.

12

1    50.    The demolition and disposition of public housing is authorized under Section

2    18 of the United States Housing Act of 1937 (Section 18), as amended in its entirety by the

3    Quality Housing and Work Responsibility Act (QHWRA) of 1998.  42 U.S.C. §1437p.

4    51.    HUD has promulgated regulations, starting at 24 C.F.R. §970, detailing the

5    administrative steps required to perform demolition and disposition activity in accordance with

6    Section 18.  24 C.F.R. §970 *et seq*.

7    52.    Before beginning demolition or disposition activities, a PHA must submit and

8    receive written approval from HUD of an application for disposition.  24 C.F.R. §970.7(a); 24

9    C.F.R. §970.25.

10    53.    Among other things, Section 1437p(a)(2) requires the PHA to certify in its

11    disposition application that retention of the property is not in the best interests of the residents

12    of the PHA for at least one of three specific reasons (24 C.F.R. §970.17); that its demolition or

13    disposition plan is described in its Annual Plan (24 C.F.R. §970.7(a)(1)); that it has consulted

14    with residents affected by the disposition, the resident advisory board, and appropriate

15    government officials, and that it offered the property for sale to resident organizations (24

16    C.F.R. §970.9(a), (b)).  The PHA also must submit a board resolution supporting the application

17    and authorizing the PHA to act in furtherance of that request.

18    54.    A PHA also must submit an independent appraisal demonstrating that the

19    proposed sale is for fair market value (24 C.F.R. §970.19(c)), and demonstrate that it will use

20    the net proceeds of the sale for specific approved purposes, including for low-income housing

21    or to benefit residents of the PHA.  24 C.F.R. §970.19.

22    55.    The PHA also must complete an environmental review pursuant to the National

23    Environmental Protection Act.  24 C.F.R. §970.13.

24    56.    The PHA must certify compliance with the Section 18 and 24 C.F.R. §970

25    relocation requirements, including that residents will be provided specific notice of disposition

26    or demolition of their homes, notified of relocation assistance to be provided, and offered

27    relocation assistance on a non-discriminatory basis that includes comparable replacement

28    housing located in an area not generally less desirable than the location of the displaced

13

1    person&s home, necessary housing counseling for displaced residents, and the payment of actual

2    and reasonable relocation expenses.  The PHA must submit a relocation assistance plan with its

3    application that identifies the number of individual residents affected, the type of counseling

4    and advisory services that will be provided, housing resources that will be available to provide

5    housing for the displaced residents, and an estimate of the costs of relocation assistance and the

6    source for payment of those funds.  42 U.S.C. §§1437p(a)(4); 24 C.F.R. §970.21.

7            57.    The HUD Special Applications Center (SAC) in Chicago, and the affected

8    HUD local field office, are vested with the responsibility of evaluating the applicant&s

9    compliance with Section 18 and other relevant federal laws.  Based on that review, SAC and the

10   local field office approve or deny the disposition application.

11           58.    Defendants collaborated with one another for the purpose of disposing of,

12   vacating and demolishing Arroyo Vista and converting the property to a õmixed incomeö

13   development in the absence of HUD approval.   In doing so, defendants have failed to comply

14   with their mandatory duties under the demolition and disposition statute and regulations.

15           59.    Defendants DHA and HACA entered into the DDA with Real Parties, and

16   Defendant City approved the DDA without approval from HUD that DHA may dispose of

17   Arroyo Vista.

18           60.    The DDA acknowledges that state and federal laws require Defendants to

19   provide for relocation of the residents of Arroyo Vista.  However, defendants DHA and HACA

20   entered into the DDA with Real Parties, and the City approved the DDA, including the amount

21   of funds set aside for relocation assistance without a relocation assistance plan approved by

22   HUD.

23           61.    Despite the fact that HUD has not approved the disposition application, and

24   that the application itself fails to provide a necessary month-by-month relocation plan for

25   Arroyo Vista residents, defendants DHA and HACA have begun providing Section 8 vouchers

26   and relocating Arroyo Vista residents.  Representatives of defendants have suggested to

27   Plaintiffs and other tenants that approval of the disposition application is inevitable (to the point

28   of specifically informing Plaintiffs that they will be forced to move out by or before November

14

First Amended Complaint for Declaratory and
Injunctive Relief and Petition for Writ of Mandate          Case No. C-07-05794 MHP

2008), and that Plaintiffs and other residents of Arroyo Vista should accept vouchers and move now to avoid missing out.

62. Neither the planned redevelopment of Arroyo Vista permitted by the DDA, nor the provision of Section 8 vouchers, will enable Plaintiffs and other Arroyo Vista residents to continue to live affordably at Arroyo Vista after redevelopment or in the City of Dublin after displacement.

63. At all times relevant to this action, defendants have had clear, mandatory duties and prohibitions imposed by the demolition and disposition statute and regulations, and have violated those duties and legal prohibitions as alleged herein.

64. Plaintiffs are directly and beneficially interested in having the defendants comply with all applicable provisions of law and their legal duties, as set forth herein.

65. Unless compelled by this Court to refrain from acts as required by law, defendants will continue to refuse to perform said duties and continue to violate the law, and Plaintiffs will be injured as a result.

66. Plaintiffs seek a writ of mandate ordering the City Council to set aside the City's Resolution 136-07 approving the DDA and enjoining Defendants from implementing the DDA and from violating their statutory duties as alleged herein.

## VII.    SECOND CLAIM FOR RELIEF

**(By All Plaintiffs Against All Defendants)**
**For A Writ of Mandate To Set Aside DDA For**
**Failure to Comply with State Relocation Assistance Requirements**
**(Govt. C. §7260 et seq. and 25 C.C.R. §6000 et seq.)**

67. Plaintiffs incorporate by reference herein each and every allegation of paragraphs 1 through 46 as though fully set forth herein and allege:

68. The California Relocation Assistance Act (Govt. C. §7260 *et seq.*) (CRAA) establishes the procedures that public entities must follow when displacement is or will be caused by acquisition, rehabilitation, demolition, or other displacing activity by or on behalf of the public entity, and requires that public entities adopt relocation assistance programs and

First Amended Complaint for Declaratory and
Injunctive Relief and Petition for Writ of Mandate          Case No. C-07-05794 MHP

1   plans and provide certain relocation assistance and benefits to persons prior to displacement of

2   any resident.

3           69.     The State Department of Housing and Community Development (HCD) has

4   promulgated Guidelines (25 C.C.R. §6000 et seq.), pursuant to its authority under Cal. Health &

5   Saf. C. §41135, to implement, interpret and make specific the provisions of the Relocation

6   Assistance Act.

7           70.     The California Legislature has declared that ö[d]isplacement as a direct result

8   of programs or projects undertaken by a public entity is caused by a number of activitiesö and

9   that ö[r]elocation assistance policies must provide fair, uniform, and equitable treatment of all

10  affected persons.ö  Govt. C. §7260.5(a)(1) and (a)(2).   öMinimizing the adverse impact of

11  displacement is essential to maintaining the economic and social well-being of communities.ö

12  Govt. C. §7260.5(a)(4).   The primary purpose of the CRAA is öto ensure that [displaced]

13  persons shall not suffer disproportionate injuries as a result of programs and projects designed

14  for the benefit of the public as a whole and to minimize the hardship of displacement on these

15  persons.ö  Govt. C. §7260.5(a)(5)(b).    The CRAA and Guidelines öshall be construed to effect

16  this intent.ö  25 C.C.R. §6002.

17          71.     Cal. Govt. C. §7260 and 25 C.C.R. §6014 provide that no person shall be

18  displaced and no phase of any project that will result in displacement of any person may

19  proceed until the public entity has fulfilled all of the obligations of the CRAA.

20          72.     The CRAA and Guidelines (Govt. C. §7260 *et seq*. and 25 C.C.R. §§ 6010,

21  6038) require a public entity to prepare a relocation plan that complies with 25 C.C.R. §6038 as

22  soon as possible following the initiation of negotiations and prior to proceeding with any phase

23  of a project or other activity which will result in the displacement of any person.  All persons to

24  be displaced, neighborhood groups, and any relocation committee must be given an opportunity

25  to fully and meaningfully participate in reviewing the relocation plan and monitoring the

26  relocation assistance program.  25 C.C.R. §6012.  The Plan also must be submitted to and

27  approved by the legislative body of the public entity.  At least 30 days prior to submission of the

28

First Amended Complaint for Declaratory and
Injunctive Relief and Petition for Writ of Mandate                    Case No. C-07-05794 MHP

1  relocation plan to the legislative body, it must be submitted to the relocation committee and

2  occupants of the property for review.  25 C.C.R. §6038.

3      73.    Among other things, the relocation plan required by the CRAA must include

4  projected dates of displacement; a written analysis of the aggregate relocation needs of all

5  persons to be displaced and a detailed explanation as to how these needs are to be met; a written

6  analysis of relocation housing resources as required by 25 C.C.R. §6052; a detailed description

7  of the relocation advisory services program, including specific procedures for locating and

8  referring eligible persons to comparable replacement housing; a detailed plan by which any last

9  resort housing as described in §6054 is to be provided; a description of relocation office

10  operation procedures; an enumeration of the coordination activities undertaken as required by

11  25 C.C.R. §6052; and a written determination by the public entity that the necessary resources

12  will be available as required.  The Plan also must be consistent with the housing element of the

13  local general plan.  25 C.C.R. §6038.

14      74.    Defendants also are required to provide a series of "relocation assistance"

15  notices to each Arroyo Vista resident that will be displaced as a result of the disposition and

16  demolition of Arroyo Vista.  Those notices include an informational notice early in the process

17  advising residents of defendants' anticipated project or activity; a determination and notice of

18  the resident's eligibility for relocation assistance; and a minimum 90-day notice to relocate from

19  the premises.  25 C.C.R. §§6038, 6042, 6046.

20      75.    Defendants selected Real Parties to acquire, demolish and redevelop Arroyo

21  Vista in or about July 2006.

22      76.    On or about November 21, 2006, Defendant DHA amended its PHA Plan to

23  provide for disposition or demolition of Arroyo Vista.

24      77.    One year later, Defendants DHA and HACA entered into a DDA with the Real

25  Parties that calls for the demolition of all Arroyo Vista homes and the displacement of all

26  residents.  The City Council approved the DDA on July 17, 2007.

27      78.    Defendants did not prepare or make available for review and comment by

28  residents or a relocation committee a relocation plan until on or about February 12, 2008.

First Amended Complaint for Declaratory and
Injunctive Relief and Petition for Writ of Mandate          Case No. C-07-05794 MHP

79. To date, Defendants have not submitted a relocation plan to the legislative body for review.

80. Although Defendants determined that over 400 Arroyo Vista residents would be displaced as a result of its DDA, Defendants have failed to provide an informational notice or notice of eligibility for relocation assistance to Plaintiffs and other residents of Arroyo Vista as required by state law. Defendantsø application for disposition provides that residents will receive no more than a 90-day notice prior to their relocation.

81. Despite their failure to adopt a relocation plan or to provide the relocation notices or advisory services mandated by state law, Defendants began issuing Section 8 vouchers to Arroyo Vista residents in July 2007, have urged Plaintiffs and other residents to seek Section 8 vouchers and move out, and have, in fact, already displaced and relocated approximately 50 households, and boarded up the vacated homes at Arroyo Vista.

82. At all times relevant to this action, Defendants have had clear, mandatory duties and prohibitions imposed by CRAA and Guidelines, and have violated those duties and legal prohibitions as alleged herein.

83. Plaintiffs are directly and beneficially interested in having the Defendants comply with all applicable provisions of law and their legal duties, as set forth herein.

84. Unless compelled by this Court to refrain from acts as required by law, Defendants will continue to refuse to perform said duties and continue to violate the law, and Plaintiffs will be injured as a result.

85. Plaintiffs request a writ of mandate ordering the City Council to set aside its Resolution 136-07 approving the DDA for failure to comply with the CRAA and Guidelines, and enjoining Defendants from implementing the DDA.

### VII.     THIRD CAUSE OF ACTION

**(By All Plaintiffs Against All Defendants)**
**For A Writ of Mandate Commanding Defendants To**
**Comply With The CRAA and HCD Guidelines**

First Amended Complaint for Declaratory and
Injunctive Relief and Petition for Writ of Mandate          Case No. C-07-05794 MHP

1   86.   Plaintiffs incorporate by reference herein each and every allegation of

2   paragraphs 1 through 46 and 68 through 81, as though fully set forth herein and allege:

3   87.   The relocation Guidelines provide that when a public entity has not fulfilled or

4   is not substantially fulfilling its relocation responsibilities, it shall cease displacement until such

5   time as its responsibilities are fulfilled, and that it shall provide assistance, payments, and, when

6   appropriate, compensation for additional costs incurred by eligible persons who moved without

7   the requisite relocation assistance and benefits . 25 C.C.R. §6016.

8   88.   The DDA entered into by DHA and HACA with Real Parties Eden and

9   Citation, and approved by the City Council on July 17, 2007, acknowledges that Defendants had

10   not yet prepared a Relocation Plan, or even completed necessary surveys of residents to

11   determine their individual housing needs and the resources available to meet those needs.

12   89.   Defendants DHA and HACA acknowledge in the application for disposition

13   submitted to HUD in August 2007 that they had already begun to issue Section 8 vouchers to

14   residents, and that at least 12 households had already been displaced.  As of February 2008,

15   defendants have displaced 50 households.  Thus, Defendants have displaced residents from

16   Arroyo Vista without HUD's approval of the disposition application, and without a relocation

17   plan mandated by the CRAA.

18   90.   Defendants have failed to provide an opportunity or encouraged full and

19   meaningful participation by Plaintiffs, or encouraged Plaintiffs and community organizations to

20   form a relocation committee to participate in reviewing any relocation plan or monitoring any

21   relocation assistance program in violation of 25 C.C.R. §6012.

22   91.   At the same time, Defendants urged Plaintiffs and other residents of Arroyo

23   Vista to apply for and use Section 8 vouchers to move before Defendants even completed a

24   survey of comparable replacement housing that is available to Plaintiffs in Dublin, analyzed the

25   suitability and affordability of replacement housing, or provided the advisory services required

26   by state law.

27   92.   Defendants have failed to provide Plaintiffs and other residents of Arroyo Vista

28   with the required informational notices, eligibility notices, or notices to vacate.

19

First Amended Complaint for Declaratory and
Injunctive Relief and Petition for Writ of Mandate          Case No. C-07-05794 MHP

93.    At all times relevant to this action, Defendants have had clear, mandatory duties and prohibitions imposed by CRAA and Guidelines, and have violated those duties and legal prohibitions as alleged herein.

94.    Plaintiffs are directly and beneficially interested in having the Defendants comply with all applicable provisions of law and their legal duties, as set forth herein.

95.    Unless compelled by this Court to refrain from acts as required by law, Defendants will continue to refuse to perform said duties and continue to violate the law, and Plaintiffs will be injured as a result.

96.    Plaintiffs request a writ of mandate enjoining Defendants from displacing or threatening to displace any residents of Arroyo Vista until such time as Defendants have fully complied with the CRAA and Guidelines, and ordering Defendants to provide assistance, payments, and compensation for additional costs incurred by all eligible persons who moved from Arroyo Vista after July 2006 without the relocation assistance and benefits mandated by the CRAA and Guidelines.

## VIII.    FOURTH CLAIM FOR RELIEF

### (By All Plaintiffs Against All Defendants)
### Failure to Comply with Anti-Displacement and Relocation Requirements
### of the Housing and Community Development Act (42 U.S.C. §5301 et seq.)

97.    Plaintiffs incorporate by reference herein each and every allegation of paragraphs 1 through 46 and 1 through 46, as though fully set forth herein and allege:

98.    If federal financial assistance under the HOME program (42 U.S.C. §12701 *et seq.*) is used in connection with the demolition or disposition of public housing, the project also is subject to the relocation payment and anti-displacement provisions of Section 104(d) of the Housing and Community Development Act of 1974 (42 U.S.C. §5304(d)) ("Section 104(d)"). 42 U.S.C. §12748(d); 12705(b)(16); 42 U.S.C. §5304(d).

99.    The DDA provides for the use of HOME funds in connection with the family-size apartments that are a component of the Arroyo Vista redevelopment project.

First Amended Complaint for Declaratory and
Injunctive Relief and Petition for Writ of Mandate                Case No. C-07-05794 MHP

100.    Section 104(d) requires Defendants to take all reasonable steps to minimize the displacement of lower-income persons as a result of activities undertaken with HOME funds. 42 U.S.C. §5304(d); 24 C.F.R. §42.325.

101.    Section 104(d) requires Defendants to adopt a relocation assistance plan that provides for relocation assistance in accordance with 24 C.F.R. §42.350.    42 U.S.C. §5304(d)(2)(A)(iii); 24 C.F.R. §42.325.

102.    Section 104(d) requires Defendants to make available comparable replacement housing into which any lower-income displaced tenant can move prior to undertaking any activity which would result in the displacement of a lower-income person from his or her residence due to a project assisted with HOME funds.  42 U.S.C. §5304(d)(2)(A)(iv); 42 U.S.C. §42.350.

103.    The regulations implementing Section 104(d) define comparable replacement units as dwelling units which meet the definition of comparable housing set forth at 49 C.F.R. §24.2(d).  24 C.F.R. §42.305.  This definition states, among other things, that the units must be decent, safe and sanitary, functionally equivalent to the displaced dwelling, in a location not less desirable than the location of the displaced person's dwelling with respect to public utilities and commercial and public facilities, and reasonably accessible to the person's place of employment. 49 C.F.R. §24.2.

104.    Section 104(d) provides that tenants may elect to receive relocation benefits pursuant to Section 104(d), 42 U.S.C. §5304(d)(2)(A), 24 C.F.R. §42 or pursuant to 42 U.S.C. §4622, 49 C.F.R. §§24 et seq.  42 U.S.C. §5304(d)(2)(B); 24 C.F.R. §42.350.

105.    Defendants have failed to take all reasonable steps to minimize the displacement of Plaintiffs and lower-income residents of Arroyo Vista as a result of activities to be undertaken with HOME funds.

106.    Defendants have not adopted a relocation plan that meets the minimum requirements of Section 104(d), including a plan that: a) correctly determines the rental assistance payments to which tenants are entitled; b) states that each displaced person shall be provided a security deposit if necessary for a new home; c) states that each displaced person

21

shall be provided with the cost of credit checks if necessary for a new home; d) identifies comparable replacement housing which is in standard condition; e) identifies comparable replacement housing which, to the extent feasible, shall be located in the same neighborhood as the units to be replaced.  24 C.F.R. §§42.305, 42.350, 42.375.

107.    On information and belief, defendants have failed to assure that comparable housing is available to the persons displaced and to be displaced from Arroyo Vista pursuant to the DDA.

108.    Defendants have not given Plaintiffs or Arroyo Vista residents they have displaced the option to receive relocation assistance benefits pursuant to Section 104(d), and have not notified Plaintiffs of their rights under Section 104(d).

109.    On information and belief, defendants have not lawfully computed or provided relocation assistance benefits to persons displaced from Arroyo Vista pursuant to Section 104(d).

110.    Defendants' actions and omissions as alleged herein have caused and continue to cause harm to Plaintiffs.  Plaintiffs are without a plain, speedy and adequate remedy at law and are entitled appropriate declaratory and injunctive relief.

## VIII.    FIFTH CLAIM FOR RELIEF

### (By All Plaintiffs Against Defendants DHA and HACA)
### Failure to Comply with The United States Housing Act of 1937
### (42 U.S.C. §1437p) and 24 C.F.R. §970 et seq.

111.    Plaintiffs incorporate by reference herein each and every allegation of paragraphs 1 through 46 and 48 through 62, as though fully set forth herein and allege:

112.    By adopting and executing a DDA for the disposition and redevelopment of Arroyo Vista without prior written approval from HUD, defendant DHA violated its duty not to enter into any transaction for the disposition or demolition of public housing without prior written approval from HUD of a disposition application in violation of 42 U.S.C. §1437p and 24 C.F.R. §§ 970.7 and 970.25.

First Amended Complaint for Declaratory and
Injunctive Relief and Petition for Writ of Mandate         Case No. C-07-05794 MHP

113.    By relocating residents of Arroyo Vista and encouraging residents to vacate their homes in advance of any approval from HUD of a disposition application, including approval of a relocation plan and timeline for relocation, DHA violated its duty not to dispose of public housing or to relocate residents without HUD approval of a disposition application in violation of 42 U.S.C. §1437p, 24 U.S.C. §§970.7, 970.21 and 970.25.

114.    By relocating Arroyo Vista residents in advance of any approval from HUD of a disposition application, including approval of a relocation plan, proposed relocation benefits, and a relocation timeline, DHA violated its duty to offer relocation assistance and benefits and to relocate residents, if at all, pursuant to an approved relocation plan, timeline, and with the relocation assistance and benefits mandated by 42 U.S.C. §1437p and 24 U.S.C. §§970.7, 970.21.

115.    By informing residents that HUD will approve the disposition, relocating residents in advance of HUD approval, and encouraging residents to vacate their homes in advance of any approval of a disposition application by HUD, DHA violated its duty to provide written notice to residents of disposition of Arroyo Vista and the relocation assistance and benefits to be provided to residents in the event of disposition in violation of 42 U.S.C. §1437p and 24 C.F.R. §970.21.

116.    By providing Section 8 vouchers to residents Defendants relocated in advance of HUD approval of a disposition application, DHA and HACA violated their duty to comply with the disposition and demolition provisions of 42 U.S.C. §1437p and 24 C.F.R. §970.7, 970.21, and 970.25.

117.    By relocating residents in advance of HUD approval of a disposition application, DHA and HACA violated 42 U.S.C. §1437p and 24 C.F.R. §970 *et seq.*by depriving Plaintiffs and Arroyo Vista residents of the relocation assistance and benefits, including necessary counseling, comparable housing, reasonable accommodations, and actual and reasonable relocation expenses mandated by 42 U.S.C. §1437p and 24 C.F.R. §970.21.

First Amended Complaint for Declaratory and
Injunctive Relief and Petition for Writ of Mandate                    Case No. C-07-05794 MHP

118.    By submitting an incomplete disposition application to HUD and refusing to re-rent vacant units and boarding up units, DHA violated its duty to comply with the disposition and demolition requirements of 42 U.S.C. §1437p, 24 C.F.R. §970.7 and 970.25.

119.    Defendants' actions and omissions have caused and continue to cause harm to Plaintiffs.  Plaintiffs are without a plain, speedy and adequate remedy at law and are entitled appropriate declaratory and injunctive relief.

## VIII.    SIXTH CLAIM FOR RELIEF

### (By All Plaintiffs Against Defendants DHA and HACA)
### Deprivation of Plaintiffs' Rights Protected
### under 42 U.S.C. §1983 (42 U.S.C. §1983)

120.    Plaintiffs reallege paragraphs 1 through 46, 48-62, 98-110, and 112-119 above, and incorporate them by reference as though fully set forth herein and allege:

121.    At all relevant times, Defendants DHA, HACA, and the City are "persons" within the meaning of 42 U.S.C. §1983 and their actions described herein were taken under color of state law.

122.    As described herein, by failing to comply with their duties under 42 U.S.C. §1437p and 42 U.S.C. §5304(d) and implementing regulations, Defendants acted to deprive the individual Plaintiffs of their federal rights to relocation assistance and the due process of law which are rights protected under 42 U.S.C. §1983.

123.    Defendants' actions and omissions have caused and continue to cause harm to Plaintiffs.  Plaintiffs are without a plain, speedy and adequate remedy at law and are entitled appropriate declaratory and injunctive relief.

## IX.    SEVENTH CLAIM FOR RELIEF

### (By All Plaintiffs Against Defendants DHA and HACA
### (Federal Fair Housing Act: 42 U.S.C. §3601 et seq.)

124.    Plaintiffs reallege paragraphs 1 through 46 above, and incorporate them by reference as though fully set forth herein.

24

First Amended Complaint for Declaratory and
Injunctive Relief and Petition for Writ of Mandate          Case No. C-07-05794 MHP

125.    Under the federal Fair Housing Act (FHA), 42 U.S.C. §3601 et seq., it is unlawful for Defendants to discriminate because of race, color, national origin or familial status, among other classifications, by making housing unavailable to persons because of membership in those groups.

126.    All individual Plaintiffs are either African American or Hispanic.  Plaintiffs KEYES, BROWN and VEAL are African American, and plaintiff ARROYO is Hispanic. Plaintiffs KEYES and VEAL have minor children residing with them.  The members of the ARROYO VISTA TENANTS ASSOCIATION are predominantly racial and ethnic minorities and predominantly comprised of families with children.

127.    African Americans and persons of Hispanic descent are a minority of the population of Dublin, yet the current and past residents of Arroyo Vista a predominantly African Americans and families of Hispanic descent.  Compared to Dublin's Caucasian households, a statistically significant greater proportion of both African American and Hispanic households in Dublin are very low income and in need of affordable housing.  Both African American and Hispanic households also comprise a statistically significant disproportionate share of the households on the DHA waiting list for residence in Arroyo Vista.

128.    Compared to Dublin's households without minor children, a statistically significant greater proportion of households with minor children in Dublin are very low income and in need of affordable housing.

129.    The mission of Plaintiff ARROYO VISTA TENANTS ASSOCIATION is to preserve the Arroyo Vista public housing complex on behalf of its membership, the residents and other lower income families in need of affordable housing in Dublin, and to ensure that

First Amended Complaint for Declaratory and
Injunctive Relief and Petition for Writ of Mandate                    Case No. C-07-05794 MHP

current and past residents are not illegally displaced and denied any rights to any relocation assistance or planning or to any replacement housing benefits.

130.    Defendantsø acts discriminate against individual Plaintiffs based on their race, color or national origin because the actions as alleged have a discriminatory effect on African Americans and persons of Hispanic descent by making and threatening to make housing opportunities unavailable to households in these groups, including to Plaintiffs, to a statistically significant greater degree than to non-minority households generally.  Defendantsø acts also discriminate against Plaintiffs KEYES and VEAL based on their familial status because the alleged actions have a discriminatory effect on families with minor children by making and threatening to make housing opportunities unavailable to households with children, including these Plaintiffs, to a statistically significant greater degree than to households without minor children.

131.    Plaintiff ARROYO VISTA TENANTS ASSOCIATION has been damaged and continues to be damaged by the conduct of Defendants as herein alleged.  Its mission has been frustrated and its financial, organizational and human resources have been expended as a result of Defendantsø conduct. Because of Defendantsø unlawful activities, including their attempts to displace all of the Associationøs members and dispose its membersø housing, the Association has expended a substantial amount of their limited volunteer resources in providing educational, counseling, and advocacy services both to the tenants who have moved out in response to defendantsø actions, and to current tenants who remain.  This õdrainö on the Associationøs existing resources constitutes a continuing hardship to the organization.

132.    The acts and omissions of Defendants constitute unlawful discrimination on the basis of race, color, national origin, and familial status in violation of the FHA.

133.    Defendantsø discriminatory actions also have deprived and will deprive individual Plaintiffs of their rights under the FHA to live and associate in a community which is free of illegal discrimination and to enjoy the economic, social, psychological and other benefits of residing in a racially and ethnically diverse community with families with children.

26

134.    Plaintiffs and other Arroyo Vista residents who are threatened with or have been displaced through Defendants' actions have suffered, and will continue to suffer, irreparable injury unless and until this court enjoins Defendants from their ongoing discriminatory practices and conduct.

## X.    EIGHTH CLAIM FOR RELIEF

**(By All Plaintiffs Against Defendants DHA and HACA**
**(California Fair Employment and Housing Act: Cal. Gov't Code §12955 et seq.)**

135.    Plaintiffs reallege paragraphs 1 through 46 above, and incorporate them by reference as though fully set forth herein and allege:

136.    Under California's Fair Employment and Housing Act (FEHA), Cal. Government Code §12955 *et seq.*, it is unlawful for Defendants to discriminate because of race, color, national origin, ancestry or familial status, among other classifications, by denying housing opportunities or otherwise making housing unavailable to persons because of membership in those groups.   A violation is shown if an act or failure to act has the effect, regardless of intent, of unlawfully discriminating on the basis of any of those classifications.

137.    All individual Plaintiffs are either African American or Hispanic.  Plaintiffs KEYES, BROWN and VEAL are African American, and plaintiff ARROYO is Hispanic. Plaintiffs KEYES and VEAL have minor children residing with them.  The members of the ARROYO VISTA TENANTS ASSOCIATION are predominantly racial and ethnic minorities and predominantly comprised of families with children.

138.    African Americans and persons of Hispanic descent are a minority of the population of Dublin, yet the current and past residents of Arroyo Vista a predominantly African Americans and families of Hispanic descent.  Compared to Dublin's Caucasian households, a statistically significant greater proportion of both African American and Hispanic

First Amended Complaint for Declaratory and
Injunctive Relief and Petition for Writ of Mandate                    Case No. C-07-05794 MHP

households in Dublin are very low income and in need of affordable housing.  Both African American and Hispanic households also comprise a statistically significant disproportionate share of the households on the DHA waiting list for residence in Arroyo Vista.

139.    Compared to Dublin's households without minor children, a statistically significant greater proportion of households with minor children in Dublin are very low income and have a need for affordable housing.

140.    The mission of Plaintiff ARROYO VISTA TENANTS ASSOCIATION is to preserve the Arroyo Vista public housing complex on behalf of its membership, the residents and other families in need of affordable housing in Dublin, and to ensure that current and past residents are not illegally displaced and denied any rights to any relocation assistance or planning or to any replacement housing benefits.

141.    Defendants' acts discriminate against individual Plaintiffs based on their race, color or national origin because the actions as alleged have a discriminatory effect on African Americans and persons of Hispanic descent by making and threatening to make housing opportunities unavailable to households in these groups, including to Plaintiffs, to a statistically significant greater degree than to non-minority households generally.  Defendants' acts also discriminate against Plaintiffs KEYES and VEAL based on their familial status because the alleged actions have a discriminatory effect on families with minor children by making and threatening to make housing opportunities unavailable to households with children, including these Plaintiffs, to a statistically significant greater degree than to households without minor children.

142.    Plaintiff ARROYO VISTA TENANTS ASSOCIATION has been damaged and continues to be damaged by the conduct of Defendants as herein alleged.  Its mission has been frustrated and its financial, organizational and human resources have been expended as a result of Defendants' conduct. Because of Defendants' unlawful activities, including their

28

attempts to displace all of the Association's members and dispose its members' housing, the Association has expended a substantial amount of their limited volunteer resources in providing educational, counseling, and advocacy services both to the tenants who have moved out in response to defendants' actions, and to current tenants who remain.  This "drain" on the Association's existing resources constitutes a continuing hardship to the organization.

143.    The acts and omissions of Defendants constitute unlawful discrimination on the basis of race, color, national origin, and familial status in violation of FEHA.

144.    Defendants' discriminatory actions also have deprived and will deprive individual Plaintiffs of their rights under the FEHA to live and associate in a community which is free of illegal discrimination and to enjoy the economic, social, psychological and other benefits of residing in a racially and ethnically diverse community with families with children.

145.    Plaintiffs and other Arroyo Vista residents who are threatened with or have been displaced through Defendants' actions have suffered, and will continue to suffer, irreparable injury unless and until this court enjoins Defendants from their ongoing discriminatory practices and conduct.

## VI.    PRAYER FOR RELIEF

Wherefore, Plaintiffs pray that the Court grant the relief set forth below:

1.    Issue an alternative or peremptory writ of mandate commanding Defendant City to rescind or set aside Resolution No. 136-07 approving the DDA between Defendants DHA and HACA and Real Parties;

2.    Issue an alternative or peremptory writ of mandate enjoining Defendants and each of them from implementing the DDA between DHA and HACA and Real Parties;

3.    Issue an alternative or peremptory writ of mandate commanding Defendants to cease any displacement of Arroyo Vista residents before Defendants have fully complied with the CRAA and Guidelines, and ordering Defendants to locate and provide relocation assistance payments, and compensation for additional costs incurred by all eligible persons who moved

First Amended Complaint for Declaratory and
Injunctive Relief and Petition for Writ of Mandate          Case No. C-07-05794 MHP

from Arroyo Vista after July 2006 without the requisite relocation assistance and benefits
mandated by the CRAA and Guidelines.

    4.    Declare that the acts and omissions of Defendants as set forth above, violate
Section 18 of the United States Housing Act of 1937, 42 U.S.C. §1437p and its implementing
regulations.

    5.    Declare that the acts and omissions of Defendants as set forth above, violate
Section 104(d) of the Housing and Community Development Act of 1968, as amended, 42
U.S.C. §5304(d) and its implementing regulations.

    6.    Declare that the acts and omissions of Defendants, as set forth above, violate
the California Relocation Assistance Act, Govt. C. §7260 et seq. and Guidelines.

    7.    Declare that the acts and omissions of Defendants, as set forth above, violate
the Fair Housing Act, 42 U.S.C. §3601 *et seq.*

    8.    Declare that the acts and omissions of Defendants, as set forth above, violate
the California Fair Employment and Housing Act, Cal. Govt. C. 12955 *et seq.*

    9.    Enter a temporary restraining order, preliminary and permanent injunction,
without bond or upon a nominal bond:

    ▪    Enjoining Defendants from implementing the DDA, with the exception of
planning activities necessary to Defendants' disposition application;

    ▪    Commanding defendants to cease displacement and relocation of Arroyo Vista
residents without prior HUD approval of the disposition application, without a
relocation plan that conforms with 42 U.S.C. §1437p and implementing
regulations, 42 U.S.C. §5304(d) and implementing regulations, Cal. Govt. C.
§7260 and Guidelines and adopted pursuant to such federal and state laws, and
without providing all of the relocation assistance notices, advisory services,
and relocation benefits mandated by such federal and state laws;

    ▪    Ordering Defendants to locate persons already displaced since July 2006 and
permit them to return to their homes, or at their option, to receive all relocation
assistance and compensation required by 42 U.S.C. §1437p and implementing
regulations, 42 U.S.C. §5304(d) and implementing regulations, and Cal. Govt.
C. §7260 and Guidelines;

    ▪    Ordering Defendants to restore and re-rent vacant public housing units unless
and until HUD approves a disposition or demolition application pursuant to 42
U.S.C. §1437p and implementing regulations;

First Amended Complaint for Declaratory and
Injunctive Relief and Petition for Writ of Mandate    Case No. C-07-05794 MHP

1

2       ▪   Enjoining Defendants from displacing and relocating residents and removing residential units from the public housing stock in violation of federal and state fair housing laws.

3

4       10.   Award Plaintiffs' their costs incurred herein;

5       11.   Award attorneys' fees to Plaintiffs' counsel, The Public Interest Law Project;

6 and

7       12.   Grant such other and further relief as the Court deems just and proper.

8

9

Dated:   March 17, 2008       BAY AREA LEGAL AID

10       Phillip R. Morgan

11       Naomi Young
Lisa S. Greif

12

13       CALIFORNIA AFFORDABLE HOUSING LAW PROJECT OF THE PUBLIC INTEREST LAW PROJECT

14

15       Deborah Collins
Michael Rawson
Craig Castellanet

16

17

18       By:   /s/ Lisa S. Greif       
       Lisa S. Greif
       BAY AREA LEGAL AID

19

20       Attorneys for Plaintiffs

21

22       <u>DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS</u>

23       Pursuant to Civil L.R. 3-16, the undersigned certifies that as of this date, other than the named parties, there is no such interest to report.

24

25

26 Dated:   March 17, 2008       /s/ Lisa S. Greif     

27       Lisa S. Greif
Attorney for Plaintiffs

28

First Amended Complaint for Declaratory and
Injunctive Relief and Petition for Writ of Mandate       Case No. C-07-05794 MHP

**<u>VERIFICATION</u>**

I, __Rhenae Keyes____, am Chair of the Arroyo Vista Tenants Association (AVTA), one of the Plaintiffs in the above-titled action, pursuant to a resolution of AVTA. I have read the First, Second, and Third Claims for Relief of the First Amended Complaint and Verified Petition for Writ of Mandate. The same is true, except as to those matters that are alleged on information and belief, and as to those matters, I believe them to be true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed ____March 17, 2008_____ at __Dublin_____, California.


_/s/ Rhenae Keyes_____
Rhenae Keyes
Chair, Arroyo Vista Tenants Association

First Amended Complaint for Declaratory and
Injunctive Relief and Petition for Writ of Mandate          Case No. C-07-05794 MHP

1

## **VERIFICATION**

2

I, _____Rhenae Keyes_____, am one of the Plaintiffs in the above-entitled action.  I have

3

4

read the First, Second and Third Claims for Relief of the foregoing First Amended Complaint

5

and Verified Petition for Writ of Mandate.  The same is true, except as to those matters that are

6

alleged on information and belief, and as to those matters, I believe them to be true.

7

I declare under penalty of perjury under the laws of the State of California that the

8

foregoing is true and correct.

9

Executed _____March 17, 2008_____ at ___Dublin_____, California.

10

11

12

 /s/ Rhenae Keyes_____
Rhenae Keyes

13

Chair, Arroyo Vista Tenants Association

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

33

**VERIFICATION**

I,    Andres Arroyo, am one of the Plaintiffs in the above-entitled action.  I have read the foregoing First, Second, and Third Claims for Relief of the First Amended Complaint and Verified Petition for Writ of Mandate.  The same is true, except as to those matters that are alleged on information and belief, and as to those matters, I believe them to be true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed    March 17, 2008     at   Dublin         , California.


  /s/ Andres Arroyo
Andres Arroyo

First Amended Complaint for Declaratory and
Injunctive Relief and Petition for Writ of Mandate             Case No. C-07-05794 MHP

**VERIFICATION**

I, ___Darlene Brown_____, am one of the Plaintiffs in the above-entitled action. I have read the foregoing First, Second, and Third Claims for Relief of the First Amended Complaint and Verified Petition for Writ of Mandate. The same is true, except as to those matters that are alleged on information and belief, and as to those matters, I believe them to be true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed _____March 17, 2008_____ at ___Dublin_____, California.


_/s/ Darlene Brown_____
Darlene Brown

First Amended Complaint for Declaratory and
Injunctive Relief and Petition for Writ of Mandate                    Case No. C-07-05794 MHP

1

### **VERIFICATION**

2

I, _____Elise Veal_____, am one of the Plaintiffs in the above-entitled action.  I have

3

read the foregoing First, Second, and Third Claims for Relief of the First Amended Complaint

4

and Verified Petition for Writ of Mandate.  The same is true, except as to those matters that are

5

alleged on information and belief, and as to those matters, I believe them to be true.

6

7

I declare under penalty of perjury under the laws of the State of California that the

8

foregoing is true and correct.

9

Executed _____March 17, 2008___ at ___Dublin____, California.

10

11

12

 _/s/ Elise Veal_____
Elise Veal

13

14

15

16

17

18

19

20

I hereby attest that I have on file all holograph signatures for any signatures indicated

21

by a "conformed" signature (/s/) within this efiled document.

22

23

Dated:    March 17, 2008         /s/ Lisa S. Greif_____

24

25

Lisa S. Greif
Attorney for Plaintiffs

26

27

28

First Amended Complaint for Declaratory and
Injunctive Relief and Petition for Writ of Mandate          Case No. C-07-05794 MHP