BAY AREA LEGAL AID
LISA S. GREIF (State Bar No. 214537)
NAOMI YOUNG (State Bar No. 105041)
PHILLIP R. MORGAN (State Bar No. 99979)
405 14th Street, 11th Floor
Oakland, California 94612
Telephone: 510-663-4744
Facsimile: 510-663-4740
Email: lgreif@baylegal.org
     nyoung@baylegal.org
     pmorgan@baylegal.org

THE CALIFORNIA AFFORDABLE HOUSING LAW
PROJECT OF THE PUBLIC INTEREST LAW PROJECT
DEBORAH COLLINS (State Bar No. 154532)
MICHAEL RAWSON (State Bar No. 95868)
CRAIG CASTELLANET (State Bar No. 176054)
449 15th Street, Suite 301
Oakland, California 94612
Telephone: 510-891-9794, ext. 156
Facsimile: 510-891-9727
Email: dcollins@pilpca.org
     mrawson@pilpca.org
     ccastellanet@pilpca.org

**E-FILED**

Attorneys for Petitioners ARROYO VISTA TENANTS ASSOCIATION, et al.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARROYO VISTA TENANTS ASSOCIATION, RHENAE KEYES, ANDRES ARROYO, DARLENE BROWN, ELISE VEAL<br><br>          Petitioner/Plaintiff,<br><br>     vs.<br><br>CITY OF DUBLIN; DUBLIN HOUSING AUTHORITY; HOUSING AUTHORITY OF ALAMEDA COUNTY; and DOES 1 through 20, inclusive,<br>          Respondents.<br><br>SCS DEVELOPMENT COMPANY, dba Citation Homes Central, a California Corporation; EDEN HOUSING, INC., a California Nonprofit, and DOES 21 through 50,<br>          Real Parties in Interest | CASE NO. C 07-05794 MHP<br><br>**PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT**<br><br>Hearing Date: April 21, 2008<br>Time: 2:00 p.m.<br>Courtroom: 15, 18th Floor<br>Judge: Honorable Marilyn Hall Patel |

**TABLE OF CONTENTS**

**PAGE**

INTRODUCTION                                                                                    1

SUMMARY OF RELEVANT FACTS                                                   1

ARGUMENT                                                                                         2

I.    DEFENDANTS FAIL TO DEMONSTRATE THAT ANY GROUNDS EXIST
      TO DENY PLAINTIFFS' MOTION TO AMEND                               2

II.   NONE OF THE CLAIMS SET FORTH IN PLAINTIFFS' PROPOSED FIRST
      AMENDED COMPLAINT ARE "FUTILE"                                      4

      A. Plaintiffs' First, Fifth and Sixth Claims Alleging Violations of 42 U.S.C.
         § 1437p and Deprivation of Plaintiffs' "Rights" Are Not Futile        4

         1.   The First and Fifth Claims for Relief Are Not Redundant           4

         2.   Defendants' Mischaracterization of Plaintiffs' Claims And "Rights"
              Does Not Render The First, Fifth, or Sixth Claims for Relief Futile.    5

              a.   Plaintiffs' First Claim for Relief Does Not Require A "Private"
                   Right of Action" To Enforce A Federal Statute or Regulation    5

              b.   Plaintiffs' Fifth and Sixth Claims Seek to Enforce the "Rights"
                   Unambiguously Conferred on Plaintiffs by Congress             5

              c.   Plaintiffs' Assert Rights under the First, Fifth, and Sixth Claims
                   On Their Own Behalf                                           9

              d.   Plaintiffs' Can Enforce The Deprivation of Their Rights Under
                   42 U.S.C. §1437p Against All Defendants                       9

      B. Plaintiffs' Second and Third Claims for Relief Alleging Violations of the
         California Relocation Assistance Act Are Not Futile; Nor Are They Amended
         Claims                                                                  10

      C. Plaintiffs' Fourth and Sixth Claims for Relief Alleging Deprivation of Plaintiffs'
         Rights under the Housing and Community Development Act Pursuant to 42 U.S.C.
         §1983 Are Not Futile.                                                   11

**Table of Contents** (cont.)                                                              <u>**PAGE**</u>

1.    Plaintiffs Fourth Claim for Relief Is Not Futile Because Defendants Disagree
      As to Whether A Particular "Right" Exists Under That Claim                          11

2.    Plaintiffs Seek Enforcement of Their Own Rights Under the Housing and
      Community Development Act                                                           12

D.  Plaintiffs' Seventh and Eighth Claims for Relief Alleging Fair Housing
    Violations Are Not Futile                                                             13

CONCLUSION                                                                                15

# TABLE OF AUTHORITIES

**CASES**                                                                                   **PAGE**

*AmerisourceBergen Corp. v. Dialysist West, Inc.*
    465 F.3d 946 (9th Cir. 2006)                                          3

*Ball v. Rodgers*
    492 F.3d 1094 (9th Cir. 2007)                                         6, 8, 11

*Blessing v. Freestone*
    520 U.S. 329 (1997)                                                   7

*California Homeless and Housing Coalition v. Anderson*
    31 Cal.App.4th 450 (1995)                                             5

*Charleston Housing Authority v. USDA*
    419 F.3d 729 (8th Cir. 2005)                                          14

*Darst-Webbe Tenant Assn. Bd. V. St. Louis Housing Authority*
    299 F.Supp. 2d 952 (E.D. Mo. 2004)                                    15

*Doctor's Medical Laboratory, Inc. v. Connell*
    69 Cal.App.4th 891 (YEAR)                                             5

*Gamble v. City of Escondido*
    104 F.3d 300 (9th Cir. 1996)                                          14

*Griggs v. Pace American Group, Inc.*
    170 F.3d 877 (9th Cir. 1999)                                          2

*Halet v. Wend Investment Co.*
    672 F.2d 1305 (9th Cir. 1982)                                         14

*Keith v. Volpe*
    858 F.2d 467 (9th Cir. 1988)                                          2, 10, 14

*Lockheed Martin Corp. v. Network Solutions, Inc.*
    175 F.R.D. 640 (C.D. Cal. 1997)                                       10

*Miller v. Rykoff-Sexton, Inc.*
    845 F.2d 209 (9th Cir. 1988)                                          3, 13

*Pfaff v. Department of Hous. & Urban Dev.*
    88 F.3d 739 (9th Cir. 1996)                                           14

**Table of Authorities** (cont.)         <u>PAGE</u>

*Price v. City of Stockton*
  390 F.3d 1105 (9th Cir. 2004)        9, 11, 12

*Roth v. Garcia Marquez*
  942 F.2d 617 (9th Cir. 1991)         2

*SAES Getters S.p.A. v. Aeronex, Inc.*
  219 F.Supp.2d 1081 (S.D. Cal. 2002)      3

*Saul v. United States of America*
  928 F.2d 829 (9th Cir. 1991)         3

*Schlacter-Jones v. Gen. Tel. of California*
  936 F.2d 435 (9th Cir. 1990)        10

*Zepeda v. INS*
  753 F.2d 719 (9th Cir. 1983)         9

<u>**STATUTES**</u>

Fed Rule of Civil Proc. Rule 15(d)        3

Government Code

42 U.S.C. §1396             6

42 U.S.C. §1437p           *passim*

42 U.S.C. §1983         4, 5, 7, 10

42 U.S.C. §3601           13

42 U.S.C. §5301           11

42 U.S.C. §5304          11, 12

24 C.F.R. §970.21           6

California Code of Civil Procedure §1085     5, 9

# INTRODUCTION

Plaintiffs' motion for leave to file their First Amended Complaint (FAC) should be granted. Defendants' sole ground for opposing the motion as to every claim is "futility." They do not (and cannot) argue delay, prejudice, or bad faith. They also fail to demonstrate that any of plaintiffs' proposed claims are futile.

## SUMMARY OF RELEVANT FACTS

This action was filed in Alameda Superior Court on October 15, 2007, and removed to this court on November 14, 2007. Notice of Removal filed November 15, 2007, Doc. No. 1. After defendants declined assignment to a magistrate judge on November 21, 2007 (Doc. No. 7), the action was reassigned to this Court on December 20, 2007. Reassignment Order, Doc. No. 9. Plaintiffs moved for a preliminary injunction on January 28, 2008. Plaintiffs' Motion for Preliminary Injunction, Doc. No. 11.

On February 5, 2008, defendants notified plaintiffs they intended to file a motion for summary judgment. Plaintiffs advised defendants in the same telephone call of their plan to amend the complaint pursuant to stipulation or motion. Declaration of Lisa Greif in Support of Plaintiffs' Motion to Amend filed herewith (Grief Decl.) ¶2. Plaintiffs confirmed in writing on February 11, 2008 that plaintiffs intended to amend. *Id*. ¶3, Ex. 1. Nonetheless, defendants filed their motion for summary judgment that day. Defendants' Motion for Summary Judgment, Doc. No. 27.[1]

It was not until February 28, 2008, that the Court vacated the hearing dates on plaintiffs' motion for preliminary injunction and defendants' motion for summary judgment, and requested cross-briefing on whether plaintiffs have enforceable rights under 42 U.S.C. §1437p. Order, Doc. No. 54.

On March 7, 2008, plaintiffs submitted a proposed First Amended Complaint and proposed Stipulation to defendants' counsel (Greif Decl. ¶5, Ex. 3), and on March 17, 2008, defendants

---

[1] Plaintiffs also submitted a draft Joint Case Management Conference Statement to defendants on February 14, 2008, again confirming plaintiffs' plan to amend. Greif Decl. ¶4, Ex 2.; *see also* Joint CMC Statement filed February 25, 2008 at 6, Doc. No. 49.

Plaintiffs' Reply Memorandum in Support of Motion
For Leave to File First Amended Complaint                    Case No. C 07-05794 MHP

1

responded that they would not stipulate to its filing. *Id*. ¶6, Ex. 4. Accordingly, plaintiffs filed their Motion for Leave to Amend on March 17, 2008.

On March 28, 2008, the Clerk notified the parties that the hearing regarding 42 U.S.C. §1437p was rescheduled to April 21, 2008, and that plaintiffs' preliminary injunction motion and defendants' summary judgment motion are "deemed withdrawn" subject to being re-noticed. Clerk's Notice filed March 28, 2008, Doc. No. 60; *see also* Clerk's Notice filed April 2, 2008, Doc. No. 64.

## ARGUMENT

### I.    DEFENDANTS FAIL TO DEMONSTRATE THAT ANY GROUNDS EXIST TO DENY PLAINTIFFS' MOTION TO AMEND.

Defendants' sole ground for opposing plaintiffs' motion for leave to file a First Amended Complaint – "futility" – fails. Def. Oppn. at 1:13-2:11. As defendants acknowledge, citing to *Roth v. Garcia Marquez*, 942 F.2d 617, 628 (9th Cir. 1991), the policy favoring amendment of pleadings should be applied with "extreme liberality." *Id*. at 2:3-4. The Ninth Circuit weighs four factors when considering a Rule 15(a) motion to amend: (1) bad faith in bringing the motion; (2) undue delay; (3) prejudice to the opposing party; and (4) futility of the proposed amendment. *Griggs v. Pace American Group, Inc.*, 170 F.3d 877, 880-81 (9th Cir 1999). Absent a clear showing of prejudice to opposing parties, leave to supplement a complaint pursuant to Rule 15(d) -- to allege facts occurring after the original pleading was filed -- is favored by the courts. *Keith v. Volpe*, 858 F.2d 467, 468 (9th Cir. 1988).

Defendants suggest that plaintiffs' motion for leave to amend is "ill-timed" because it was filed after plaintiffs moved for a preliminary injunction, defendants filed a motion for summary judgment, and after the Court ordered supplemental briefing regarding 42 U.S.C. §1437p. Def. Oppn. at 1:1-10. To the extent defendants intend to imply that plaintiffs' motion was brought in bad faith, such grounds fail.[2] Defendants also offer no evidence of undue delay.[3] Thus, defendants fail to demonstrate that any bad faith or undue delay warrants denial of plaintiffs' motion.

_____

[2] As defendants know, the forum was changed by their removal. While not required to amend a "state complaint" when removed to federal court, such amendments are certainly permissible. Moreover, plaintiffs do not seek to amend to defeat federal jurisdiction which sometimes will support a finding

Defendants further imply, albeit disingenuously, that they will be prejudiced by allowing an amendment that "circumvents" their motion for summary judgment. *See* Def. Oppn. at 1:1:10; 5:8-18. Defendants' motion has not been fully briefed and is not even pending, having been deemed withdrawn by the Court. Moreover, defendants were informed *before* they filed a motion for summary judgment that plaintiffs intended to move to amend their complaint absent a stipulation from defendants. Thus, any "prejudice" to defendants in bringing a motion for summary judgment prematurely is of their own making. *See also* Argument II.B *infra* at 10.

Accordingly, defendants are left with "futility" as their only basis for opposing plaintiffs' motion to amend. The denial of a motion to amend on the grounds of "futility" requires more, however, than the adverse party's wishful thinking that all claims would be dismissed. A proposed amendment is futile only if "no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense." *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir.1988); *Saul v. United States of America*, 928 F.2d 829, 843 (9th Cir. 1991) [applying same Rule 12(b)(6) standard].[4] However, in early stages of litigation, such a claim is "more appropriately raised in a motion to dismiss," after the court permits amendment. *SAES Getters S.p.A. v. Aeronex, Inc.*, 219 F.Supp.2d 1081, 1086 (S.D. Cal. 2002). As plaintiffs will show, defendants fail to demonstrate that any of plaintiffs' claims are futile.

---

of "bad faith." To the contrary, plaintiffs seek to *add* federal claims and urged the Court to *retain* jurisdiction. *See* Plaintiffs' Supplemental Brief (Doc. 58) at 15-17. Finally, plaintiffs' counsel notified defendants of their intention to move to amend on February 5, 2008 – *before* defendants moved for summary judgment and weeks before the Court requested any supplemental briefing.

[3] No undue delay occurred here. The case was filed in October 2007, removed to federal court in November, "re-assigned" to this Court in December (at defendants' request), plaintiffs moved for a preliminary injunction in January 2008, and filed a motion to amend in March after defendants refused to stipulate. No discovery has commenced; no hearings on the merits have occurred; and no case management order has issued. *Compare AmerisourceBergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946 (9th Cir. 2006) [15-month unexplained delay in moving to amend affirmative defenses was undue and prejudiced adverse party's time to complete discovery on new claims].

[4] *But see,* Fed. Rules of Civ. Proc., Rule 15(d) [motion to supplement permitted in the absence of sufficient claim or defense].

Plaintiffs' Reply Memorandum in Support of Motion
For Leave to File First Amended Complaint          Case No. C 07-05794 MHP

3

**II.    NONE OF THE CLAIMS SET FORTH IN PLAINTIFFS' PROPOSED FIRST AMENDED COMPLAINT ARE "FUTILE".**

### A.    Plaintiffs' First, Fifth and Sixth Claims Alleging Violations of 42 U.S.C. §1437p and Deprivation of Plaintiffs' "Rights" Are Not Futile.

Defendants' arguments that plaintiffs' proposed First and Fifth Claims for Relief are futile (Def. Oppn. at 2-5; 7) are based on "redundancy" and mischaracterization of plaintiffs' claims and alleged "rights." *See* Def. Oppn. at 2:20-5:5.  Their objection to plaintiffs' Sixth Claim (alleging deprivation of plaintiffs' rights under §1437p pursuant to Section 1983) rests on an objection to the "form" of the pleading.  Def. Oppn. at 7:8:14.  Defendants' arguments are meritless.

### 1.    The First and Fifth Claims for Relief Are Not Redundant.

Defendants' confusion as to the differences between the First and Fifth Causes of Action (Def. Oppn. at 2:14-22) does not render them redundant.  *See* Argument I *supra 2:8-3:3.*  The First Claim seeks a writ of mandate pursuant to California Code of Civil Procedure §1085 to set aside and prevent defendants' implementation of a disposition and development agreement (DDA) that was unlawfully adopted and implemented in violation of 42 U.S.C. §1437p and HUD's implementing regulations.[5] FAC ¶¶47-66.  The Fifth Claim seeks declaratory and injunctive relief to protect plaintiffs' "rights" under 42 U.S.C. §1437p.[6]  Although both claims involve a "federal question" with respect to 42 U.S.C. §1437p, they are alternative not redundant theories to secure relief from the harm caused by defendants' ongoing and imminent threats to displace plaintiffs from their homes and demolition of their neighborhood – all without notice of HUD's approval of any demolition or disposition application or plaintiffs' rights to relocation assistance as required by 42 U.S.C. §1437p, and without providing plaintiffs with relocation assistance benefits, including necessary counseling, as required by

---

[5] Plaintiffs' First Claim is an original claim that plaintiffs propose to amend and supplement to allege facts discovered or that occurred after the filing of the Petition, including changes in plaintiffs' households (FAC ¶¶15, 16, 17); defendants' execution of the DDA (¶32); defendants' ongoing relocation activities (FAC ¶¶ 37, 38, 39, 61), and the ongoing harm to plaintiffs (FAC ¶¶44-46).

[6] Plaintiffs' proposed Fifth Claim adds a cause of action, alleging violations of plaintiffs' "rights" under 42 U.S.C. §1437p (FAC ¶¶111-119).

Plaintiffs' Reply Memorandum in Support of Motion
For Leave to File First Amended Complaint                Case No. C 07-05794 MHP

42 U.S.C. §1437p.  Pleading alternative legal theories does not render them "futile."  And, defendants' "redundancy" theory is not grounds to deny plaintiffs' motion.

## 2. Defendants' Mischaracterization of Plaintiffs' Claims And "Rights" Does Not Render The First, Fifth, or Sixth Claims for Relief Futile.

### a. Plaintiffs' First Claim for Relief Does Not Require A "Private Right of Action" To Enforce A Federal Statute or Regulation.

As discussed in Plaintiffs' Supplemental Brief, a "private right of action" is not required under state law to enforce federal statutes or regulations through a petition for writ of mandate. *See* Doc No. 58.  A writ of mandate pursuant to Code of Civil Procedure §1085 "may be issued by any court to any inferior . . . . board, or person, to compel the performance of an act which the law specially enjoins. . . ."  Cal. Code Civ. Proc. §1085.  Such relief "is available not only to those who have enforceable private rights, but to those who are 'beneficially interested' parties. . . ."  *California Homeless and Housing Coalition v. Anderson*, 31 Cal.App.4th 450, 458 (1995).   A writ of mandate is available to enforce federal statutes that are not enforceable through 42 U.S.C. §1983.  *Id.*; *see also Doctor's Medical Laboratory, Inc. v. Connell*, 69 Cal.App.4th 891, 896 [writ available to Medi-Cal provider that lacked standing to pursue federal action under Section 1983].   Thus, even if plaintiffs had *no* private right of action – Section 1085 gives plaintiffs enforceable "rights" to enforce federal law that would not render plaintiffs' First Claim futile.

### b. Plaintiffs' Fifth and Sixth Claims Seek to Enforce the "Rights" Unambiguously Conferred on Plaintiffs by Congress.

Plaintiffs did not suggest in their Supplemental Brief, as defendants selectively quote, that their *only* private "right" is to "receive specific notice and relocation assistance before displacement . . . can occur and before disposition is complete."  *See* Def. Oppn. at 2:27-3:3.  Rather, *plaintiffs* contend that Congress unambiguously conferred on them the following *rights:* (1) the right "to receive specific notice and relocation assistance before displacement *or demolition* can occur, and

before disposition is complete" (Doc. No. 58 at 1:7-8)[7]; (2) the right *to HUD approval* of *any application* prior to issuance of notices of displacement, including approval of the relocation plan that must be included as part of the application (*Id*. at 1:8-9; *see also* 8:23-25; 9:13-23; 24 C.F.R. §970.21(f); (3) the right to receive *notice of HUD approval* of any application for disposition or demolition and relocation assistance prior to displacement, demolition, or completion of disposition (*Id*. at 3:4-5); (4) the right to payment of plaintiffs' actual and reasonable relocation expenses (*Id*. at 7:21-22); (5) the right to an offer of comparable housing that complies in all respects with the notice required by 42 U.S.C. §1437p(a)(4)(A)(iii) (*Id*. at 7:23-24); (6) the right to *any* necessary counseling (*Id*. at 8:2); and (7) the right to *not* have demolition commenced or disposition completed before plaintiffs are relocated (*Id*. at 8:3-4).

Plaintiffs also did not concede, as defendants argue (without any reference to plaintiffs' Supplemental Brief) that §1437p gives them *no* right to challenge DHA's noncompliance with the procedural requirements governing applications for permission to dispose of public housing. *See* Def. Oppn. at 3:11-12.

Defendants unsupported characterization of the "rights" conferred on plaintiffs is indicative that defendants' misapprehend the "private right" doctrine and/or application of it to 42 U.S.C. §1437p. As plaintiffs explained in their Supplemental Brief, the above-delineated "rights" stem from the text and structure of §1437p(a)(4)(A)-(E) which has an "unmistakable focus on the benefited class" – the residents of public housing. *See* Doc. No. 58 at 7:3-8:4. The Ninth Circuit's analysis of two "free choice" provisions of the Medicaid Act in *Ball v. Rodgers*, 492 F.3d 1094 (9th Cir. 2007) provides additional support that plaintiffs here have "rights" enforceable under Section 1983.

First, the "free choice" provisions, 42 U.S.C. §§1396n(c)(2)(C) and (d)(2), specified not only the class of individuals benefited (seniors in need of long-term care and persons with mental impairments in need of long term care), but "explicitly identified rights" (to be informed of alternatives to institutional care and to choose from those options). Like the "free choice" provisions,

---

[7] Such notice also must be consistent with any guidelines issued by HUD (42 U.S.C. §1437p(a)(4)(A)), and therefore, must include information regarding reasonable accommodations for plaintiffs with disabilities. *See* 24 C.F.R. 970.21(e).

§1437p(a)(4)(A)-(E) identifies the residents of public housing as the class of individuals benefited and explicitly identifies rights to notice and relocation assistance as outlined above.  Statutes so constructed "indicate a concern with whether the needs of any particular person have been satisfied not solely with an aggregate institutional policy and practice."  *Id*. at 1107, quoting *Blessing v. Freestone*, 520 U.S. 329, 343 (1997) [internal quotations omitted].

Second, the overarching structure of Section 1396n is closely akin to the structure of §1437p. The Medicaid "waiver" program allows states to be reimbursed for providing non-institutional care to beneficiaries (depending on cost) rather than traditional long-term institutional care.  *Id*.  To obtain a waiver, the state must provide "assurances" – like the certifications public housing authorities must provide under §1437p-- to the Secretary of Health and Human Services or a waiver shall not be granted.  *Id*.  For example, the state must certify that the "individuals" on whom the "rights" are conferred must be informed of feasible alternatives to institutional care and a choice among those options.  The Ninth Circuit held that both "free choice" provisions met the first "rights-creating" prong of *Blessing*.  *Id*. at 1108.

Likewise, the *Ball* court found the individual rights to be easily enforceable by the courts, noting that a state's Medicaid plan (like a relocation plan here), agency records and documents (like notices and documents here), and testimony of the benefited individuals (like the residents here) would enable the courts to easily enforce the "free choice" provisions.  *Id*. at 1116.  The Court also rejected the state's argument that the state's assurances were merely "precatory" because it was not required to seek a waiver, holding that "once a state . . . elects a . . . waiver, it is *bound* to provide its . . . patient population with specific rights and services, among them [the free choice] provisions."  *Id*. [emphasis added].  Accordingly, the Court held the "free choice" rights presumptively enforceable under Section 1983 and the state obligated to provide such rights.  *Id*. at 1117.

Plaintiffs' "rights" too are presumptively enforceable under Section 1983, and as plaintiffs allege in the Sixth Claim, defendants have deprived them of those rights.[8]   FAC ¶¶120-123.

---

[8] The headings for the Sixth, Seventh, and Eighth causes of action contain a typographical error. Each claim is against all defendants as the incorporating paragraphs and allegations of the claims indicate. Plaintiffs request leave to correct these headings if their motion is granted.

Plaintiffs' Reply Memorandum in Support of Motion
For Leave to File First Amended Complaint                    Case No. C 07-05794 MHP

Defendants' sole objection to this claim is that Section 1983 only provides a "remedy". Def. Oppn. at 7:8-14. It is a distinction without a difference. "Section 1983 'actions' may be brought against state actors to enforce rights created by federal statutes." *See Ball*, 492 F.3d 1094, 1105. Moreover, plaintiffs incorporate the requisite factual allegations and the First and Fifth causes of action to state their claim that defendants have deprived them of the rights guaranteed by 42 U.S.C. §1437p. *See* FAC ¶120.[9] Defendants' "form" objection does not render the claim "futile".

Finally, plaintiffs' 'Fifth and Sixth claims are not futile for failure to allege defendants' *violations* of their "rights" under 42 U.S.C. §1437p. Contrary to defendants' argument, plaintiffs allege that defendants have: pressured plaintiffs to seek Section 8 vouchers and move out on a compressed time frame and threatened them with permanent displacement from their homes (FAC ¶¶3, 15, 16, 17, 18, 43); boarded up vacant units, subjecting plaintiffs to blight and hazardous conditions (FAC ¶4, 15); violated their statutory and regulatory duties under §1437p (FAC ¶6, 58, 59); failed to advise plaintiffs of their relocation rights and deprived them of notice of those rights (FAC ¶15, 40, 41, 56); adopted and implemented an unlawful disposition and development agreement without HUD approval (FAC ¶32, 35); commenced relocation activities without HUD approval and without having provided notice of approval by HUD to plaintiffs (FAC ¶38); have not provided plaintiffs with the notice required by §1437p though de facto demolitions and displacement has already occurred (FAC ¶41); have not offered or provided relocation benefits, counseling services, comparable housing, or actual and reasonable relocation expenses required by §1437p (FAC ¶42). Plaintiffs also have alleged the harm defendants' deprivation of their rights has caused, including: that plaintiffs are threatened with imminent and irreparable injury including involuntary displacement from their homes without benefit of HUD review of the application and relocation plan, loss of a public housing subsidy, deprivation of relocation assistance, the risk of homelessness, loss of their personal, family and community ties, lack of access to public transportation, services, their jobs, and education opportunities. (FAC ¶44; *see also* ¶¶45, 46, 48-66; 112-119, 120-123.) Plaintiffs' claims

---

[9] The Sixth Claim also alleges deprivation of plaintiffs' rights under the HCD Act by all defendants.

Plaintiffs' Reply Memorandum in Support of Motion
For Leave to File First Amended Complaint          Case No. C 07-05794 MHP

8

certainly are not "futile" simply because they remain "residents" of the property. Their rights have already been violated, and they need not wait until the bulldozers arrive to enforce them.

### c. Plaintiffs Assert Rights under the First, Fifth, and Sixth Claims on Their Own Behalf.

Plaintiffs have alleged "rights" on behalf of *themselves* – albeit different rights than defendants "select". *See* Argument II.A.2.b, *supra; see also* FAC ¶¶1-9, 14-18, 24-46, 47-66 (First), 111-119 (Fifth), 120-123 (Sixth). Defendants confuse the assertion of "rights" on behalf of plaintiffs with relief from the harm plaintiffs have suffered. Def. Oppn. at 4:7-23. Plaintiffs seek a writ of mandate pursuant to Code of Civil Procedure §1085 to set aside and enjoin implementation of an DDA for violation of federal statutes and regulations. They seek declaratory and injunctive relief against defendants for deprivation of plaintiffs' rights under 42 U.S.C. §1437p pursuant to 42 U.S.C. §1983. "A federal court may issue an injunction if it has personal jurisdiction over the parties and subject matter jurisdiction over the claim." *Price v. City of Stockton*, 390 F.3d 1105, 1117 (9th Cir. 2004). Though an injunction must be tailored to remedy the plaintiffs' harm, it may benefit more people than those that are party to the action. *Id*.; *see also Zepeda v. INS*, 753 F.2d 719, 727 (9th Cir. 1983). Thus, in *Price*, the Ninth Circuit affirmed the district court's preliminary injunction ordering the City of Stockton to provide relocation benefits to all persons it had displaced from Stockton's residential hotels. *Price* was brought on behalf of six individual residents that had been displaced from the hotels and an organization that served Stockton's homeless and low-income population. *Price*, 390 F.3d at 1107, 1117. It was not brought as a class action. The Ninth Circuit held that the relief ordered was "necessary to preserve the status quo for all plaintiffs, and the district court did not abuse its discretion." *Id*. at 1117. Thus, plaintiffs First, Fifth, and Sixth claims are not rendered "futile" because they have not alleged a class action. They need not.

### d. Plaintiffs' Can Enforce The Deprivation of Their Rights Under 42 U.S.C. §1437p Against All Defendants.

Plaintiffs can allege claims for deprivation of their rights under 42 U.S.C. §1437p against all defendants, not just their "landlord." Def. Oppn. at 4:24-5:5. This case is not a landlord-tenant

Plaintiffs' Reply Memorandum in Support of Motion
For Leave to File First Amended Complaint                    Case No. C 07-05794 MHP

9

dispute.  Among other violations of the law, defendants have deprived plaintiffs of their rights under

42 U.S.C. §1437p.  Liability for the deprivation of those rights extends to:

> "Every person who, under color of any statute, ordinance, regulation, custom, or usage
> . . . subjects, or causes to be subjected, any citizen of the United States or other person
> within the jurisdiction thereof to the deprivation of *any* rights, privileges, or
> immunities secured by the Constitution and laws, shall be liable to the party injured in
> an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. §1983.  Defendants are all liable for the violation of plaintiffs' rights pursuant to Section

1983.  They need not have a 'special' duty; it is enough that they acted under color of law to deprive

plaintiffs of their rights.  The claims are not futile.

### B. Plaintiffs' Second and Third Claims for Relief Alleging Violations of the California Relocation Assistance Act Are Not Futile; Nor Are They Amended Claims.

As defendants acknowledge, plaintiffs' state relocation claims remain substantially

unchanged from the original Petition.  Def. Oppn. 5:6-18.   In their proposed First Amended

Complaint, plaintiffs propose to supplement, rather than amend, their Second and Third Claims for

Relief by updating the facts to allege that since the filing of the original Petition, defendants prepared

a draft relocation plan on February 12, 2008 (FAC ¶ 78), and have displaced 50 households as of

February 2008 (FAC ¶ 89).  Absent a showing of prejudice to defendants, supplementing these claims

is favored.  *Keith v. Volpe*, 858 F.2d 467, 473 (9th Cir. 1988).

Nevertheless, defendants oppose plaintiffs' motion as to these claims on the grounds that a

motion to amend cannot circumvent a motion for summary judgment, citing *Schlacter-Jones v. Gen.

Tel. of California*, 936 F.2d 435, 443 (9th Cir. 1990), *Lockheed Martin Corp. v. Network Solutions,

Inc.*, 175 F.R.D. 640, 645-46 (C.D. Cal. 1997).  Def. Oppn. 5:14-18.  In both cases, a year or more

had passed since the filing of the complaint, discovery had been conducted, and a fully briefed

motion for summary judgment was pending.  *Schlacter-Jones,* 936 F.2d at 443; *Lockheed Martin,* 175

F.R.D. at 644. Here, there is no such delay and no discovery has been conducted.  Furthermore,

defendants have no motion for summary judgment pending.  It was "deemed withdrawn" by the

Court.  Thus, defendants' labeling of the claims as "futile" fails.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**C.    Plaintiffs' Fourth and Sixth Claims for Relief Alleging Deprivation of Plaintiffs' Rights under the Housing and Community Development Act Pursuant to 42 U.S.C. §1983 Are Not Futile.**

**1.    Plaintiffs Fourth Claim for Relief Is Not Futile Because Defendants Disagree As To Whether A Particular "Right" Exists Under That Claim.**

Defendants overreach in arguing that plaintiffs fail to state *a claim* because defendants deny that a "private right" exists to enforce the "relocation plan" provision of 42 U.S.C. §5304(d)(2)(A). Whether such "right" exists was *expressly* not decided by the Ninth Circuit in *Price*:

> "*We need not decide* the difficult question whether the obligations set forth in Section 104(d)(2)(A) [of the HCD Act] are insufficient to establish individual rights because they are presented as requirements of a plan on which federal funding is conditioned. *We can avoid the question* because Section 104(k) of the Act clearly mandates – quite aside from any plan or certification requirement – that '[e]ach grantee shall provide for reasonable benefits to any person involuntarily and permanently displaced as a result of the use of assistance received under this chapter to acquire or substantially rehabilitate property . . . Read together with Section 104(k), [Sections 104(d)(2)(A)(iii) and 104(d)(2)(A)(iv)] confirm Congress' intent not only to impose a plan certification requirement on grantees, *but also to confer upon persons displaced by redevelopment activities an enforceable entitlement to the specific benefits of such plans*."

*Price v. Stockton*, 390 F.3d 1105, 1111 (9th Cir. 2004) [emphasis added]. Thus, there is no question that plaintiffs have a "private right of action" through 42 U.S.C. §5304(k) to the relocation benefits and comparable housing provisions of 42 U.S.C. §5304(d)(2)(A)(iii) and (iv). *Id*. Plaintiffs do not contend or allege that they have enforceable rights under the "one-for-one unit replacement" provisions of 42 U.S.C. §5304(d)(2)(A)(i), (ii), as the Ninth Circuit determined that those provisions do not confer rights. It is not the law, however, that plaintiffs cannot enforce the anti-displacement and relocation plan provisions of the HCD Act when that question has not been decided. Alleging "rights" that *may* exist, particularly in light of an evolving private right doctrine, does not render plaintiffs' claim futile. *See, e.g.*, *Ball*, 492 F.3d 1094, 1107 [enforcing rights under the Medicaid Act that, like Section 104(d) and 42 U.S.C. §1437p, arise in the context of agency "certifications"]. Defendants' objection that plaintiff must allege their rights pursuant to 42 U.S.C. §5304(k) is equally unavailing. *See* FAC ¶¶6,40,41,42 [alleging 42 U.S.C. §5301 *et seq*. and incorporated into the Fourth Claim]. Section 5301 *et seq*. encompasses §5304(k).

1
2

**2.    Plaintiffs Seek Enforcement of Their Own Rights Under the Housing and Community Development Act.**

3        Again, defendants erroneously argue that plaintiffs "themselves" do not claim to have
4   suffered any violation of their rights under the Housing and Community Development Act (HCD
5   Act), cannot have suffered harm because they have not moved, and cannot enforce any rights their
6   neighbors may have under the HCD Act. Def. Oppn. at 6:24-7:7. Defendants are wrong.

7        Contrary to defendants' selective reading of the proposed First Amended Complaint,
8   plaintiffs allege that they themselves were never advised of *their* relocation rights under 42 U.S.C.
9   §5301 *et seq*. FAC ¶¶15, 40. Specifically, they were not provided with relocation notices pursuant to
10  42 U.S.C. §5301 *et seq*. (FAC ¶¶41, 108); were not offered or provided relocation benefits required
11  under 42 U.S.C. §5301 *et seq*. (FAC ¶42), including the option to receive benefits pursuant to Section
12  104(d) (42 U.S.C. §5304(d)) (FAC ¶108) and assurances that comparable housing is available to
13  persons "to be displaced" which includes plaintiffs (FAC ¶107). As discussed in Argument II.C.1,
14  *supra,* the Ninth Circuit has already determined that all of these rights are enforceable. *Price v. City*
15  *of Stockton*, 390 F.3d 1105, 1113. Rather than providing them, plaintiffs allege that defendants have
16  encouraged them to simply apply for Section 8 vouchers and move out of Arroyo Vista. FAC ¶¶15,
17  16, 17, 18, 43.

18       Second, as the Ninth Circuit recognized in *Price,* the deprivation of these relocation rights
19  causes harm whether plaintiffs have already been displaced or are threatened with imminent
20  displacement. "Despite the hardships the City may face in delaying . . . its redevelopment plans and
21  providing relocation benefits . . . it is a far more severe hardship for someone *to be* displaced from his
22  or her home *without assistance* and *without the certainty of knowing where to move*." *Price v. City*
23  *of Stockton*, 390 F.3d at 1117 (emphasis added). This is precisely the type of harm plaintiffs have
24  already experienced, as alleged in the proposed First Amended Complaint. Defendants' deprivation
25  of plaintiffs' rights under the HCD Act threatens *plaintiffs* with imminent and irreparable harm
26  including involuntary displacement from their homes without relocation assistance, loss of a public
27  housing subsidy, the associated risk of homelessness, severing of their personal, family and
28  community ties, the lack of access to public services and transportation, and access to their

Plaintiffs' Reply Memorandum in Support of Motion
For Leave to File First Amended Complaint                Case No. C 07-05794 MHP

employment and education opportunities. FAC ¶44. Plaintiffs *now* face great uncertainty, and a lack of basic information as to where or how they will move or with what relocation assistance. Thus, to argue that plaintiffs must wait until they are homeless to assert their rights is indicative of the need for a preliminary injunction, not "dismissal" of their proposed claim before it is even brought.

Finally, because defendants are engaging in relocation activity in violation of the HCD Act, 50 households have now been displaced, also without benefit of these rights. In the process, their vacated homes have been boarded up, subjecting *plaintiffs* to the destruction of their community and the resulting blight and security risks. FAC ¶¶ 4, 15. They seek declaratory and injunctive relief (FAC ¶109) to stem that harm. And, as discussed in Argument II.A.2.c, *supra* at 9, plaintiffs have standing to seek relief, including restoring the status quo, that is tailored to remedy their harm.

For the same reasons discussed in Argument II.A.2.b at 7-8., plaintiffs Sixth Claim for relief, alleging defendants' deprivation of their rights under the HCD Act is not futile.

### D. Plaintiffs' Seventh and Eighth Claims for Relief Alleging Fair Housing Violations Are Not Futile.

Defendants' contention that plaintiffs' fair housing claims are futile also fails because defendants make no allegation that "no set of facts can be proved" that would establish a valid and sufficient claim. They argue instead that the Seventh Claim and Eighth Claims (alleging violations of the Federal Fair Housing Act and the California Fair Employment and Housing Act respectively) do not "identify precisely" which of Defendants' acts constitute discrimination. Defendants' "objection" can be addressed through discovery. It does not demonstrate futility.

Defendants next argue, incorrectly, that some "imprecise acts" do not constitute discrimination. Def. Oppn. at 7:27-28. A *prima facie* case of violation of the federal Fair Housing Act of 1968, 42 U.S.C. §3601 *et seq.* (hereinafter "TitleVIII") is established if a defendant's actions, policies or practices have a discriminatory effect on a class protected under Title VIII. *Pfaff v. Department of Hous. & Urban Dev.*, 88 F.3d 739, 745-46 (9th Cir. 1996); *Keith v. Volpe*, 858 F.2d 467, 482 (9th Cir. 1988), *cert. denied*, 493 U.S. 813 (1989); *Halet v. Wend Investment Co.*, 672 F.2d 1305, 1311 (9th Cir. 1982). Discriminatory effect is shown when an outwardly neutral policy or

1  action produces a significantly adverse *or* disproportionate impact on a group of persons protected by

2  the fair housing laws. *Gamble v. City of Escondido*, 104 F.3d. 300, 306-07 (9th Cir. 1996).

3        Here, plaintiffs allege that defendants' specific actions have the effect of "making and

4  threatening to make housing opportunities unavailable" to protected classes, including racial and

5  ethnic minorities, and families with children. FAC ¶ 130.   For example, plaintiffs allege: the current

6  and displaced Arroyo Vista residents are disproportionately racial and ethnic minorities and families

7  with children, as compared with the City of Dublin (FAC ¶ 130) and the likely residents of the

8  replacement units (FAC ¶ 34); racial and ethnic minorities, and families with children in Dublin have

9  disproportionately very low incomes and are in need of affordable housing (FAC ¶¶ 127-28); and that

10  racial and ethnic minorities are significantly over-represented on DHA's waiting list, but under-

11  represented in Dublin as a whole (FAC ¶¶ 5, 127).  Plaintiffs also allege that the displacement and

12  relocation of residents without HUD approval, including an adequate relocation plan, and advance

13  notice of benefits and advisory services under federal and state law will have a foreseeable and

14  disparate impact on minorities and families with children by forcing them out of the City of Dublin.

15  FAC ¶¶5, 26, 27.  Plaintiffs further allege that defendants' removal and boarding up of Dublin's only

16  public housing will have a disparate impact on these protected classes, particularly for those currently

17  on the waiting list and in need of housing now.  FAC ¶ 5, 29.  Further, plaintiffs allege that after

18  disposition of Arroyo Vista, the replacement housing will be far less affordable and consequently

19  occupied by a disproportionately fewer number of minority families and families with children.

20  FAC, ¶ 34, 130.   As a result, plaintiffs allege they have been harmed by the deprivation of their right

21  to live and associate in a community free from illegal discrimination and to enjoy the economic,

22  social and psychological benefits of residing in a diverse community.  FAC ¶ 46, 133.

23        This case is not unlike *Charleston Housing Authority v. USDA*, 419 F.3d 729, 741 (8th Cir.

24  2005).  There, the court upheld a finding of disparate impact on minorities where the housing

25  authority proposed to demolish 50 units of public housing and plaintiffs established that the current

26  residents, the waiting list, and those eligible to live in the units were predominantly African American

27  as compared with the city, which was predominantly non-minority.  Defendants here make no claim

28  that such a showing cannot be made on the facts alleged.

Plaintiffs' Reply Memorandum in Support of Motion
For Leave to File First Amended Complaint          Case No. C 07-05794 MHP

1    Contrary to defendants' argument, this case is not like *Darst-Webbe Tenant Assn. Bd. v. St.*

2  *Louis Housing Authority*, 299 F.Supp. 2d 952 (E.D. Mo. 2004), another Eighth Circuit case.  There,

3  on appeal after a full *trial,* the Court of Appeals remanded the case for findings on the sufficiency of

4  plaintiffs' evidence of disparate impact.[10]   On remand, the district court found that plaintiffs had

5  failed to produce evidence necessary to determine disparate impact.   Specifically, it found no

6  evidence of the racial composition or familial status of tenants to be displaced from a revitalization

7  plan area; the households eligible to reside in the housing slated for demolition; and the households

8  eligible to reside in the proposed replacement housing.  *Id.* at 956-958.  The plaintiffs' expert simply

9  found that in St. Louis it was more likely that low income households would be minority households

10 and extrapolated from that.   The court also found that "had [plaintiffs' expert] . . . researched and

11 concluded that the revitalization plan would necessarily displace *more* persons who are African-

12 American than persons who are white, he might have demonstrated some discrimination."  *Id.* at 957-

13 958.

14    Finally, defendants offer no authority or analysis to support that plaintiffs' state fair housing

15 claim is "futile".  Thus, there is effectively no opposition to plaintiffs' proposed amendment to add

16 the Eighth Claim.

17                    **<u>CONCLUSION</u>**

18    For all of the above reasons, plaintiffs respectfully request that the Court grant leave to file

19 their First Amended Complaint.

20 *//*

21 *//*

22 *//*

23 *//*

24 *//*

25 *//*

26

27 ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

28 [10] After granting the motion for summary judgment in favor of HUD on one count, the district court held a six-day bench trial on the remaining claims, including the discrimination claims.  *Darst-Webbe Tenant Ass'n Bd. v. St. Louis Hous. Auth.*, 339 F.3d 702, 712 (8th Cir. 2003).

Plaintiffs' Reply Memorandum in Support of Motion
For Leave to File First Amended Complaint                    Case No. C 07-05794 MHP

15

Dated: April 7, 2008                    Respectfully Submitted:


                                        By:   /s/ Lisa S. Greif_____
                                              BAY AREA LEGAL AID
                                              Lisa S. Greif
                                              Naomi Young

                                              CALIFORNIA AFFORDABLE HOUSING
                                              LAW PROJECT OF THE PUBLIC INTEREST
                                              LAW PROJECT
                                              Deborah Collins
                                              Michael Rawson
                                              Craig Castellanet

Plaintiffs' Reply Memorandum in Support of Motion
For Leave to File First Amended Complaint                    Case No. C 07-05794 MHP

16