**United States District Court**
For the Northern District of California

1
2
3
4
5
6

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

7
8

9  | ARROYO VISTA TENANTS
10 | ASSOCIATION, RHENAE KEYES,
   | ANDRES ARROYO, DARLENE BROWN,
   | ELISE VEAL,
11

12 |          Plaintiffs,

13 |   v.

14 | CITY OF DUBLIN, DUBLIN HOUSING
   | AUTHORITY, HOUSING AUTHORITY OF
15 | ALAMEDA COUNTY, and DOES 1 through
   | 20, inclusive,

16 |          Defendants.

17 | SCS DEVELOPMENT COMPANY, dba
   | Citation Homes Central, a California
18 | Corporation; EDEN HOUSING, INC., a
   | California Nonprofit, and DOES 21 through
19 | 50,

20 |          Real Parties in Interest.

21 | _____/

No. C 07-05794 MHP

**MEMORANDUM & ORDER**

**Re: Defendant's Motion to Dismiss for Lack of a Private Right of Action to Enforce 42 U.S.C. § 1437p**

22       Plaintiffs, four lower income residents of the Arroyo Vista public housing development in

23  Dublin, California and the Arroyo Vista Tenants Association, bring this action against defendants

24  City of Dublin, Dublin Housing Authority, and Housing Authority of the County of Alameda.

25  Defendants have entered into an agreement with real parties in interest Eden Housing and Citation

26  Homes Central to sell, demolish and redevelop Arroyo Vista as a mixed income housing

27  development.  Plaintiffs allege that defendants have taken steps to displace and relocate current

28  residents of Arroyo Vista before a comprehensive relocation plan has been developed, before

1   defendants have received approval from the Department of Housing and Urban Development, and

2   before displaced residents have received notification of their rights to relocation assistance and

3   comparable housing.  Based on this conduct, plaintiffs allege causes of action for violation of the

4   United States Housing Act of 1937 and regulations (42 U.S.C. § 1437p, 24 C.F.R. §§ 970 *et seq.*)

5   and the California Relocation Assistance Act and regulations (Cal. Govt. Code §§ 7260 *et seq.*, 25

6   C.C.R. §§ 6000 *et seq.*).

7        Now before the court is defendant's motion to dismiss plaintiffs' first cause of action for

8   violation of the federal Housing Act of 1937, 42 U.S.C. section 1437p.  The basis for the motion is

9   that, according to defendants, 42 U.S.C. section 1437p does not create individually enforceable

10  rights and therefore, plaintiffs fail to state a cause of action upon which relief may be granted.

11  Having considered the arguments and submissions of the parties and for the reasons set forth below,

12  the court enters the following memorandum and order.

13

14  BACKGROUND

15       Arroyo Vista is a complex of 150 public housing units located in the city of Dublin,

16  California.  Notice of Removal, Exh. A, Complaint ¶ 18.  It consists of 94 one and two-bedroom

17  homes and 56 three and four-bedroom homes.  Id.  Arroyo Vista is the only public housing in

18  Dublin, with average rents of less than $500 per month, and some as low as $25 or $50 because of

19  federal subsidies.  Id.  By comparison, average market rents in Dublin range from $1350 for a one-

20  bedroom apartment to $2495 for a 4-bedroom home.  Id.

21       Plaintiffs Rhenae Keyes, Darlene Brown, Andres Arroyo, and Elise Veal are lower income

22  residents of the Arroyo Vista public housing complex.  Id. ¶¶ 9–12.  Plaintiff Arroyo Vista Tenants

23  Association is an unincorporated association of current and former residents of Arroyo Vista.  Id. ¶

24  8.  Its mission is to ensure that "Arroyo Vista residents both past and present are permitted a voice in

25  the demolition and replacement of their homes, that their housing needs are met, that they are treated

26  equitably and lawfully in the event of any displacement, and that they receive all the relocation

27  assistance to which they are entitled under the law."  Id.

28

United States District Court
For the Northern District of California

1      Defendant Dublin Housing Authority ("DHA") is a public housing agency ("PHA") within

2  the meaning of 42 U.S.C. section 1437. Id. ¶ 14. It owns Arroyo Vista and is subject to an annual

3  contributions contract with the federal Department of Housing and Urban Development ("HUD").

4  Id. Defendant Housing Authority of the County of Alameda ("HACA") is the managing agent for

5  DHA, and is also a public housing agency within the meaning of 42 U.S.C. section 1437. Id. ¶ 15.

6      On July 17, 2007, the City of Dublin ("City") approved by Resolution 136-07 a Development

7  Agreement between DHA, HACA, and real parties in interest Eden Housing and Citation Homes

8  Central. Id. ¶ 25. The Development Agreement was approved for the express purpose of

9  demolishing the existing public housing units at Arroyo Vista and replacing them with a

10 combination of market rate ownership and "affordable" rental units. Id. After the City approved the

11 Development Agreement, DHA submitted a Disposition Application to HUD on or about August 14,

12 2007. Id. ¶ 28. In the Disposition Application, DHA and HACA seek to sell Arroyo Vista to the

13 real parties in interest and to replace the 150 public housing units currently at Arroyo Vista with 378

14 "mixed-income" dwellings, 194 affordable and 184 market-rate ownership units. Id. ¶ 28. On

15 information and belief, plaintiffs assert that HUD had not yet approved the application for

16 disposition of Arroyo Vista. Id. ¶ 29.

17     Plaintiffs allege that despite having entered into an agreement with real parties in interest to

18 sell, demolish, and redevelop Arroyo Vista and despite having submitted an application to HUD for

19 demolition approval, defendants have not adequately advised plaintiffs of their relocation assistance

20 rights and have not provided them with direct informational notices, notices of eligibility, or a 90-

21 day notice. Id. ¶¶ 32–33. Instead, plaintiffs allege that defendants have pressured plaintiffs to apply

22 for Section 8 vouchers now or risk not receiving a voucher later, and have encouraged plaintiffs to

23 move out of Arroyo Vista. Id. ¶ 34. Defendants' conduct, plaintiffs assert, is a violation of both the

24 federal Housing Act of 1937, 42 U.S.C. § 1437p, and the California Relocation Assistance Act, Cal.

25 Govt. Code §§ 7260 et seq. Id. ¶¶ 32–33.

26     This action was initially filed in Alameda County Superior Court. Defendants removed the

27 action to this court on the basis of federal question jurisdiction, 28 U.S.C. § 1331. Docket Entry 1.

28 After defendants declined assignment to a magistrate judge the action was reassigned to this court.

3

1   Docket Entry 9.  Plaintiffs then moved for preliminary injunction and defendants moved for

2   summary judgment.  Docket Entry 11, 27.  The court, however, declined to rule on those motions

3   and requested, *sua sponte*, supplemental briefing on the issue of whether 42 U.S.C. section 1437p

4   creates enforceable rights.  Docket Entry 54.  The court has construed the parties' supplemental

5   briefing as a Rule 12(b)(6) motion to dismiss for failure to state a claim.

6

7   LEGAL STANDARD

8       Title 42 section 1983 of the United States Code imposes liability on anyone who, under color

9   of state law, deprives a person "of rights, privileges, or immunities secured by the Constitution and

10  laws."  42 U.S.C. § 1983.  Section 1983 by itself does not create rights, but instead, provides a

11  mechanism for enforcing individual rights "secured" elsewhere by the "Constitution and laws,"

12  including federal statutes.  Gonzaga Univ. v. Doe, 536 U.S. 273, 285 (2002); see also Maine v.

13  Thiboutot, 448 U.S. 1 (1980) (holding that the phrase "and laws" encompasses federal statutes).

14      In order to seek redress through section 1983 a plaintiff must assert the violation of a federal

15  *right*, not merely a violation of federal *law*.  Blessing v. Freestone, 520 U.S. 329, 340 (1997).  The

16  Supreme Court has traditionally looked at three factors when determining whether a particular

17  statutory provision gives rise to a federal right: (1) Congress must have intended that the provision

18  in question benefit the plaintiff; (2) the plaintiff must demonstrate that the right assertedly protected

19  by the statue is not so "vague and amorphous" that its enforcement would strain judicial

20  competence; and (3) the statute must unambiguously impose a binding obligation on the states, i.e.

21  the provision giving rise to the asserted right must be couched in mandatory, rather than precatory,

22  terms.  Id. at 340–41.

23      The Supreme Court in Gonzaga clarified the first part of the Blessing test, holding that it is

24  only unambiguously conferred rights, not the broader or vaguer benefits or interests, that may be

25  enforced under section 1983.  Gonzaga, 536 U.S. at 283; Price v. City of Stockton, 390 F.3d 1105,

26  1109 (9th Cir. 2004).  A court must examine the text and structure of the statute to determine

27  whether it contains the sort of rights-creating language critical to showing the requisite

28  congressional intent to create new rights.  Price, 390 F.3d at 1190–10.  Such language must confer

4

United States District Court

For the Northern District of California

1  an individual entitlement, demonstrated by an unmistakable focus on the benefitted class rather than

2  on the person or entity regulated. <u>Id.</u> at 1110. In addition to the text and structure of the statute,

3  agency regulations, legislative history, and relevant surrounding statutes may provide additional

4  context from which to determine congressional intent to create new rights and the scope of the rights

5  conferred. <u>Ball v. Rodgers</u>, 492 F.3d 1094, 1105–1106, 1112–15 (9th Cir. 2007).

6      A court's focus under <u>Blessing</u> and <u>Gonzaga</u> is specific as to both the rights asserted by the

7  plaintiff in the complaint and the statutory provisions purportedly creating those rights. A district

8  court must construe the complaint in the first instance in order to determine exactly what rights,

9  considered in their most concrete, specific form, plaintiffs are asserting. <u>Blessing</u>, 520 U.S. at 346.

10  Moreover, a court does not look at a statute in its entirety and ask at that level of generality whether

11  rights are created, but instead focuses its analysis on specific statutory provisions. <u>Id.</u> at 342. Some

12  paragraphs or sentences in a code section may confer individually enforceable rights even if others

13  do not. <u>See e.g.</u>, <u>Price</u>, 390 F.3d at 1114 (holding that roman numeral sections (iii) and (iv) of 42

14  U.S.C. § 5304(d)(2)(A) confer individually enforceable rights, but that roman numeral sections (I)

15  and (ii) do not).

16      Even if a plaintiff demonstrates that a federal statute creates an individual right, there is only

17  a rebuttable presumption that the right is enforceable under section 1983. <u>Gonzaga</u>, 536 U.S. at 284.

18  A defendant may rebut this presumption by showing that Congress specifically foreclosed a remedy

19  under section 1983. <u>Id.</u> at 284 n.4. The defendant's burden is to demonstrate that Congress shut the

20  door to private enforcement either expressly, through specific evidence from the statute itself, or

21  impliedly, by creating a comprehensive enforcement scheme that is incompatible with individual

22  enforcement under section 1983. <u>Id.</u> This is a "difficult" showing, and a plaintiff's ability to invoke

23  section 1983 cannot be defeated simply by the availability of administrative mechanisms to protect

24  the plaintiff's interests. <u>Blessing</u>, 520 U.S. at 346–47.

25      Dismissal of a section 1983 claim for lack of an enforceable right amounts to dismissal for

26  failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). <u>Day v. Apolonia</u>, 496

27  F.3d 1027, 1030 (9th Cir. 2007). A motion to dismiss under Rule 12(b)(6) "tests the legal

28  sufficiency of a claim." <u>Navarro v. Block</u>, 250 F.3d 729, 732 (9th Cir. 2001). Because Rule

1    12(b)(6) focuses on the "sufficiency" of a claim—and not the claim's substantive merits—"a court

2    may [typically] look only at the face of the complaint to decide a motion to dismiss."  Van Buskirk

3    v. Cable News Network, Inc., 284 F.3d 977, 980 (9th Cir. 2002).  A motion to dismiss should be

4    granted if plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its face."

5    Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007).  Dismissal can be based on the lack of a

6    cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.

7    Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).

8

9    DISCUSSION

10        The United States Housing Act of 1937 (Pub. L. No. 75–412, 50 Stat. 888, codified as

11    amended at 42 U.S.C. §§ 1437 et seq.) is a fairly typical federal grant-in-aid program.  See Edwards

12    v. District of Columbia, 821 F.2d 651, 652 (D.C. Cir. 1987).  In exchange for various types of

13    federal funds, local public housing agencies ("PHAs") must comply with an assortment of

14    conditions.  Id.  Among other things, the Act regulates rent calculation (42 U.S.C. § 1437a), housing

15    quality standards and inspections (42 U.S.C. § 1437d(f)), lease provisions (42 U.S.C. § 1437d(l)),

16    and tenant grievance procedures (42 U.S.C. § 1437d(k)).

17        At issue in this case are the requirements for demolition and disposition of public housing

18    projects under 42 U.S.C. section 1437p.  Section 1437p governs conditions under which the

19    Secretary of Housing and Urban Development ("HUD") approves applications by a public housing

20    authority to demolish or dispose of public housing units.[1]  In addition to certifying that it will notify

21    and provide residents with relocation assistance, 42 U.S.C. § 1437p(a)(4), a PHA must also certify to

22    the Secretary why demolition or disposition is justified, for example, because the project is "obsolete

23    as to physical condition, location, or other factors, making it unsuitable for housing purposes," Id. §

24    1437p(a)(1)(A)(I).  Moreover, the Secretary "shall disapprove" an application if the Secretary

25    determines that "any certification made by the [PHA] . . . is clearly inconsistent with information

26    and data available to the Secretary," Id. § 1437p(b)(1), or "the application was not developed in

27    consultation with residents who will be affected by the proposed demolition or disposition," Id. §

28    1437p(b)(2)(A).  HUD has promulgated regulations, starting at 24 C.F.R. section 970, detailing the

United States District Court

For the Northern District of California

6

**United States District Court**
For the Northern District of California

1   administrative steps required for demolition and disposition in accordance with section 1437p. HUD

2   regulations require a PHA application to include, among other items, an environmental review and a

3   fair market appraisal of the housing units. 24 C.F.R. §§ 970.13, 970.19.

4   As directed in <u>Blessing</u> and <u>Gonzaga</u>, a district court must first construe the complaint to

5   identify exactly what rights plaintiffs assert and what specific statutory provisions plaintiffs claim

6   create those rights. Examining the complaint in this case, the court notes that plaintiffs' first cause

7   of action for violation of section 1437p is broad. The complaint can be reasonably construed as

8   asserting PHA obligations and corresponding tenant rights including: (1) the obligation of a PHA to

9   submit a complete application that includes an independent appraisal, an environmental review, and

10  a relocation plan, Complaint ¶¶ 41–43; (2) the obligation of a PHA to refrain from entering into an

11  agreement with third parties to demolish or dispose until HUD has approved the application, <u>Id.</u> ¶

12  47; (3) the obligation of a PHA to refrain from taking any action to displace or relocate current

13  residents until HUD has approved the application, <u>Id.</u> ¶¶ 48–49; (4) the right of residents to

14  "continue to live affordably at Arroyo Vista after redevelopment or in the City of Dublin after

15  displacement, <u>Id.</u> ¶ 50; and (5) the right of residents to be "offered relocation assistance on a non-

16  discriminatory basis," where assistance includes comparable replacement housing, counseling, and

17  the payment of actual and reasonable relocation expenses, <u>Id.</u> ¶ 44. Plaintiffs' complaint cites

18  generally to section 1437p as a whole and states broadly that "[plaintiffs] are directly and

19  beneficially interested in having the [defendants] comply with all applicable provisions of law and

20  their legal duties." <u>Id.</u> ¶ 52.

21  In contrast to the complaint which asserts several PHA obligations and corresponding tenant

22  rights, citing generally to section 1437p as a whole, plaintiffs' brief on the issue of whether section

23  1437p creates enforceable rights is narrowly directed to plaintiffs' right to receive notification and

24  relocation assistance rooted in section 1437p(a)(4). Section 1437p(a)(4) states, in relevant part,

25  (a) . . . upon receiving an application by a public housing agency for authorization,
    with or without financial assistance under this subchapter, to demolish or dispose of a
26  public housing project . . . , the Secretary shall approve the application, if the public
    housing agency certifies—
27  . . .
        (4) that the public housing agency—
28

7

**United States District Court**
For the Northern District of California

1  (A) will notify each family residing in a project subject to demolition
or disposition 90 days prior to the displacement date, except in cases

2  of imminent threat to health or safety, consistent with any guidelines
issued by the Secretary governing such notifications, that—

3
(I) the public housing project will be demolished or disposed of;

4  (ii) the demolition of the building in which the family resides
will not commence until each resident of the building is

5  relocated; and
(iii) each family displaced by such action will be offered

6  comparable housing—

7  (I) that meets housing quality standards;
(II) that is located in an area that is generally not less

8  desirable than the location of the displaced person's
housing; and

9  (III) which may include [(aa) tenant-based assistance;
(bb) project-based assistance; or (cc) occupancy in a

10  public housing unit at a comparable rental rate];

11  (B) will provide for the payment of the actual and reasonable
relocation expenses of each resident to be displaced;

12
(C) will ensure that each displaced resident is offered comparable

13  housing in accordance with the notice under subparagraph (A); and

14  (D) will provide any necessary counseling for residents who are
displaced; and

15
(E) will not commence demolition or complete disposition until all

16  residents residing in the building are relocated;

17  42 U.S.C. §§ 1437p(a)(4)(A)–(E).

18      At the hearing on this motion, plaintiffs confirmed that despite the broad language in the

19  complaint, the rights at issue are rights to notification and relocation assistance rooted in subsection

20  (a)(4) of section 1437p.  To be clear, plaintiffs do not assert and the court need not decide whether

21  other subsections of 1437p—such as the requirement that a PHA make certifications regarding the

22  physical condition of the housing units (42 U.S.C. §§ 1437p(a)(1)–(2)) or the requirement that a

23  PHA develop an application in consultation with affected residents (42 U.S.C. §

24  1437p(b)(2)(A))—also create individually enforceable rights.  Moreover, the only defendants in this

25  action are the City of Dublin and its public housing agencies.  HUD is not a defendant, and plaintiffs

26  have not alleged that HUD has violated section 1437p, for example, by approving an application that

27  does not meet the necessary requirements.  Whether plaintiffs can state a cause of action against

28  HUD under the Administrative Procedures Act, 5 U.S.C. §§ 704, 706, or alternatively, under 42

8

United States District Court

For the Northern District of California

1  U.S.C. § 1404a ("The Secretary of [HUD] may sue and be sued only with respect to its functions

2  under the United States Housing Act of 1937"), is a separate issue not currently before this court.

3  Accordingly, the issue presented is whether subsection (a)(4) of 42 U.S.C. section 1437p creates

4  individual rights to receive, from a public housing authority, notice and relocation assistance before

5  displacement, demolition, or disposition can occur, with such rights enforceable through 42 U.S.C.

6  section 1983.

7      Whether 42 U.S.C. section 1437p creates enforceable rights is not necessarily an issue of

8  first impression.  Section 1437p has been amended several times and federal courts have had

9  occasion to rule on whether various permutations of the statute give rise to enforceable rights.  The

10  section was first enacted in 1983, and in 1987 when the District of Columbia Circuit decided

11  Edwards v. District of Columbia, 821 F.2d 651 (D.C. Cir. 1987), section 1437p read in relevant part

12  as follows,

13

14      (b) . . . The Secretary may not approve an application or furnish assistance under this
       section . . . unless—

15          (2) all tenants to be displaced as a result of the demolition or disposition will
           be given assistance by the public housing agency and are relocated to other
16          decent, safe, sanitary, and affordable housing, which is, to the maximum
           extent practicable, housing of their choice . . .

17
18  Housing and Urban-Rural Recovery Act of 1983, Pub. L. No. 98-181, § 214, 97 Stat. 1153,

   1184-85 (1983).
19
20      In Edwards, the District of Columbia had received modernization funds for public housing

21  projects, but no rehabilitation work had been performed.  Id. at 652–63.  Several years later,

22  escalating costs led the District to apply for HUD permission to demolish the housing units.  Id.

23  Although HUD had not yet approved the application and the housing units were still intact, plaintiffs

24  alleged a claim for "de facto" or "constructive" demolition.  Id.  Plaintiffs alleged that section 1437p

25  imposed independent duties on the District of Columbia, and that section 1437p secured to plaintiffs

26  correlative rights to the performance of those duties.  Id. at 652.  These duties and rights, plaintiffs

27  argued, were enforceable through 42 U.S.C. section 1983, regardless of whether or not the Secretary

28  had approved an application for demolition and regardless of whether demolition was about to or

   was actually occurring.  Id.  Plaintiffs alleged that in violation of section 1437p, the District had

9

1   relocated residents without providing assistance, had failed to consult with the residents, and had

2   failed to rerent or otherwise keep the vacant units in a state of good repair.  Id. at 662 n.16.

3       In considering whether section 1437p created an individually enforceable right against

4   constructive demolition, the three-judge panel in Edwards issued a fractured opinion.  Writing for

5   the court, Chief Judge Wald concluded that "neither the language nor the legislative history of §

6   1437p creates rights in public housing tenants against the constructive demolition of their units.

7   Although an actual demolition may not occur without the Secretary's approval, which in turn

8   requires a physical condition determination, tenant consultation, and provision for appropriate

9   relocation, nothing in the statute prevents the District from seeking such demolition in the allegedly

10  insensitive way it has chosen."  Id. at 662–663.

11      Agreeing with Chief Judge Wald that section 1437p did not create rights in residents against

12  constructive demolition, the concurring judge went one step further to argue that section 1437p did

13  not create tenant rights against actual demolition.  Id. at 664.  The concurring judge argued that the

14  conditions precedent set forth in section 1437p imposed a PHA obligation in favor of HUD, but not

15  a corresponding PHA obligation in favor of tenants.  Id. at 665.  Accordingly, the remedy for a

16  PHA's violations of section 1437p was not through individual suits brought by tenants, but by

17  disapproval or enforcement action by HUD.  Id.

18      Like the concurring judge, the dissenting judge also went one step further than Chief Judge

19  Wald, but in the opposite direction.  The dissenting judge argued that section 1437p, "if it is to be

20  meaningful and effective, also prohibits a PHA, acting without prior HUD authorization, from

21  condemning a project to death as effectively as if it were physically demolished by abandoning and

22  neglecting it."  Id. at 666.  The dissenting judge stated,

23          [i]t is undisputed that the District PHA's actions in vacating more and more units and
            refusing to maintain the remainder is resulting in the slow death of the . . . project
24          without HUD approval.  Chief Judge Wald concludes that nothing can be done about
            it until physical demolition actually commences.  [The concurring judge] apparently
25          believes that even then no one but HUD could do anything about it.  I, on the other
            hand, believe § 1437p creates rights enforceable through 42 U.S.C. § 1983, and that
26          the scope of the rights created necessarily extends to de facto demolitions.

27  Id.  Otherwise, the dissenting judge argued, the statutory scheme established by Congress requiring

28  prior HUD approval and setting conditions for such approval can easily be avoided.  Id.  Indeed, the

dissenting judge characterized plaintiffs' complaint as alleging that the District had "deliberately engaged in a systematic practice of vacating units and refusing to maintain [units] so as to create a *fait accompli* and thereafter to obtain HUD's approval to demolish an abandoned and uninhabitable project." Id. at 665.

In the wake of <u>Edwards</u>, Congress acted swiftly to amend section 1437p to include the following subsection:

> (d) . . . A public housing agency shall not take any action to demolish or dispose of a public housing project or a portion of a public housing project without obtaining the approval of the Secretary and satisfying the conditions specified in subsections (a) and (b) of this section.

Housing and Community Development Act of 1987, Pub. L. No. 100-242, § 121(d), 101 Stat. 1815, 1838-39 (1988). Congress stated that the purpose of the amendment was to clarify that "no [PHA] shall take any steps towards demolition and disposition without having satisfied the statutory criteria. This provision is intended to correct an *erroneous* interpretation of the *existing* statue by the United States Court of Appeals for the D.C. Circuit in <u>Edwards v. District of Columbia</u> and shall be fully enforceable by tenants of and applicants for the housing that is threatened." H.R. Conf. Rep. 100-426, 1987 U.S.C.C.A.N. 3458 at 3469 (emphases added).

Following the 1988 amendment of section 1437p and the addition of subsection (d), various district courts recognized clear Congressional intent that section 1437p created federal rights enforceable through 42 U.S.C. section 1983 by tenants against a local public housing authority. These courts interpreted the scope of the rights conferred to include both actual and constructive demolition claims, construing Congress' use of the phrase "any action" in the statute and "any steps" in the conference report to encompass "conduct, including an omission or failure to act, by a public housing agency that would result in the destruction of all or part of a housing project in the sense that the housing units would no longer be habitable. As reflected in the amendment, Congress intended to ensure that tenants could fully enforce compliance with the physical condition, consultation, and relocation requirements of § 1437p." <u>Concerned Tenants Association of Father Panik Village v. Pierce</u>, 685 F. Supp. 316, 21 (D. Conn. 1988); <u>see also</u> <u>Tinsley v. Kemp</u>, 750 F. Supp. 1001, 1008-09 (W.D. Mo. 1990); <u>Henry Horner Mothers Guild v. Chicago Housing Authority</u>, 780 F. Supp. 511, 513–15 (N.D. Ill. 1991); <u>Gomez v. Housing Authority of the City of El Paso</u>, 805

United States District Court

For the Northern District of California

F. Supp. 1363, 1374–1375 (W.D. Texas 1992); Velez v. Cisneros, 850 F. Supp. 1257, 1269–1271 (E.D. Pa. 1994).

A decade after Congress *added* section 1437p(d) to correct what it believed to be the D.C. Circuit's erroneous interpretation in Edwards, Congress *removed* that same provision.  Quality Housing and Work Responsibility Act of 1998, Pub. L. No. 105-276, § 531, 112 Stat. 2461, 2570-73 (1998).  In addition to removing section 1437p(d), Congress also streamlined the entire Housing Act and substantially re-wrote section 1437p.  The statute as it was amended in 1998 is the statute as it reads today.  Like the version analyzed by the Edwards court, and unlike the version at issue in Concerned Tenants Association, Tinsley, Henry Horner, Gomez, and Velez, the current version of section 1437p does not contain the language of former subsection (d) forbidding a PHA from "tak[ing] any action to demolish or dispose of a public housing project . . . without obtaining approval of the Secretary."  The parties have represented to the court, and the court is persuaded by its own review, that the legislative history of the 1998 amendment contains no elaboration of Congressional intent regarding the question of whether section 1437p creates enforceable rights.

Since the 1998 amendment, several district courts have revisited the question of whether section 1437p creates individually enforceable rights.  An Ohio district court has ruled on two occasions that tenants may proceed with lawsuits against PHAs under section 1437p.  English Woods Civic Association v. Cincinnati Metropolitan Housing Authority, 2004 WL 3019505 (Black, J.) (S.D. Ohio 2004); Givens v. Butler Metropolitan Housing Authority, 2006 WL 3759702 (Spiegel, J.) (S.D. Ohio 2006).  In English Woods, the court cited to Concerned Tenants, Tinsley, Henry Horner, Gomez, and Velez—all cases decided after the Edwards case and the 1988 amendment, but before the 1998 amendment—for the proposition that "the law is clear that Plaintiff can pursue a cause of action for violation of 42 U.S.C. § 1437p."  English Woods, 2004 WL 3019505 at *8.  The court recognized that former section 1437p(d) had been deleted in the 1998 amendment, but did not engage in further analysis under Blessing and Gonzaga to determine whether the statute still gave rise to enforceable rights.  Id. at *10, 11.  The court ultimately reached the merits of the case and concluded after a bench trial that the activities of the public housing authority constituted lawful

12

1    "consolidation" under section 1437p(e) and not "de facto demolition" in violation of sections

2    1437p(a) and (b). Id. at *11.

3         Similarly in Givens, the court cited Velez for the proposition that plaintiffs could state a

4    cause of action for a PHA's violation of section 1437p. Givens, 2006 WL 3759702 *4. Like the

5    court in English Woods, the court in Givens did not consider whether section 1437p still gave rise to

6    individual rights in light of the 1998 amendment. Proceeding to the merits of the claim in the

7    context of cross-motions for summary judgment, the court in Givens ultimately found that genuine

8    issues of material fact remained as to whether the activities of the public housing authority

9    constituted lawful "consolidation" or "de facto demolition" and whether the displaced residents were

10   provided "comparable housing." Id. at *10, 11.

11        The court and the parties are aware of only one other post-1998 case considering whether

12   section 1437p creates enforceable rights. In Anderson v. Jackson, 2007 WL 458232, *4–7 (Lemelle,

13   J.) (E.D. La. 2007), the Eastern District of Louisiana held—as Chief Judge Wald held in

14   Edwards—that section 1437p creates rights against "actual demolition," but does not create rights

15   against "constructive demolition." Like the plaintiffs in Edwards, the plaintiffs in Anderson asserted

16   a "constructive demolition" claim that the local housing authority, by failing to conduct repairs and

17   maintenance, was causing the housing units to become uninhabitable thereby constructively

18   demolishing the units. Id. at *1. Applying the Blessing and Gonzaga tests, the Anderson court held

19   that section 1437p did not create rights against this type of constructive demolition. Id. at *4–6.

20   Plaintiffs also asserted claims for "actual demolition" against both HUD and the local housing

21   authority for failure to follow the section 1437p application procedures requiring certifications and

22   consultation. Id. at *6–7. Without analysis, the Anderson court assumed that plaintiffs could state a

23   cause of action for this type of "actual demolition" claim, and ultimately found the claim to be

24   unripe because the local housing authority had not yet submitted an application to HUD and

25   necessarily, no application had been approved. Id. In reaching its conclusion that the actual

26   demolition claim was unripe as to both HUD and the PHA, the Anderson court relied on the district

27   court's opinion in the Edwards case in which that court dismissed plaintiffs' Administrative

28

13

United States District Court

For the Northern District of California

1    Procedure Act claim against HUD as unripe for lack of "final agency action." Id. at *7 (citing

2    Edwards v. District of Columbia, 628 F. Supp. 333, 338–339 (D.D.C. 1985)).

3        The line of cases beginning with Edwards, continuing with Concerned Tenants Association,

4    Tinsley, Henry Horner, Gomez, and Velez, and ending most recently with English Woods, Givens,

5    and Anderson, is not determinative of the question before this court.  First, insofar as the previous

6    cases addressed a "constructive demolition" claim involving a failure by the PHA to repair and

7    maintain the housing units, the precise question addressed in those cases is not the same question

8    addressed here, namely, the right to notification and relocation assistance.  Second, Edwards is not

9    determinative because Congress explicitly disapproved of the result in Edwards.  Third, the group of

10   cases decided after Edwards, but before the 1998 amendment would be persuasive authority, but for

11   their reliance on former subsection (d) which no longer exists.  And lastly, the most recently decided

12   cases are not entirely persuasive because they relied on cases decided before the 1998 amendment,

13   or they did not engage in a thorough analysis under Blessing and Gonzaga.

14       Having reviewed the history of section 1437p and the cases interpreting various permutations

15   of the statute, this court now returns to the question presented—does subsection (a)(4) of 42 U.S.C.

16   section 1437p create individual rights to receive notice and relocation assistance before

17   displacement, demolition, or disposition can occur, with such rights enforceable against a public

18   housing authority through 42 U.S.C. section 1983?  As explained more fully below, the answer to

19   this question is in the affirmative.  Applying the Supreme Court's Blessing and Gonzaga

20   frameworks, section 1437p(a)(4) contains language that is sufficiently "rights-creating;" the rights

21   conferred are neither vague nor amorphous; the section is couched in mandatory, not precatory

22   terms; and 42 U.S.C. section 1983 provides the proper vehicle to remedy violations of section

23   1437p(a)(4) because defendants have failed to show that Congress foreclosed that option by creating

24   another, more comprehensive enforcement scheme.

25       Under the Supreme Court's Blessing test, as modified by Gonzaga, the first prong this court

26   must consider is whether Congress has unambiguously conferred a right, as opposed to a broad or

27   vague benefit or interest.  Examining the text of the statute as it was enacted in 1998, one year after

28   the Supreme Court issued its opinion in Blessing, the court finds that subsection (a)(4) of section

1437p contains rights-creating language unmistakably focused on the benefitted class, i.e. the residents of the public housing project who will be displaced if an application for disposition or demolition is approved. Section 1437p(a)(4) contains five sub-provisions labeled (A) through (E), all five of which contain individually-focused terminology. See 42 U.S.C. § 1437p(a)(4)(A) ("each family residing in a project subject to demolition"); Id. § 1437p(a)(4)(B) ("each resident to be displaced"); 42 U.S.C. § 1437(a)(4)(C) ("each displaced resident"); Id. § 1437p(a)(4)(D) ("residents who are displaced"); Id. § 1437p(a)(4)(E) ("residents residing in the building").

In addition to consistent and repeated identification of the benefitted class, the five sub-provisions of section 1437p(a)(4) articulate specific and detailed entitlements. Notably, the pre-1998 statute, including the statute at issue in the Edwards case, contained only one subparagraph related to relocation assistance (former 42 U.S.C. § 1437p(b)(2)). As a result of the 1998 amendment, the conditions for relocation assistance were removed from paragraph (b) and placed into paragraph (a), and at the same time, the conditions were substantially expanded. Former section 1437p(b)(2) concerning relocation assistance stated generally that displaced residents "will be given assistance" by the public housing agency. The current statute now specifies that assistance includes an offer of comparable housing, the payment of actual and reasonable relocation expenses, and any necessary counseling. 42 U.S.C. §§ 1437p(a)(4)(B)–(D).

Similarly, former section 1437p(b)(2) stated generally that displaced residents must be "relocated to other decent, safe, sanitary, and affordable housing, which is, to the maximum extent practicable, housing of their choice." The current statute now specifies that displaced residents will be "offered comparable housing that meets housing quality standards that is located in an area that is generally not less desirable than the location of the displaced person's housing," and which may include tenant-based assistance, project-based assistance, or occupancy in a public housing unit at a comparable rental rate. 42 U.S.C. §§ 1437p(a)(4)(A)(iii)(I)–(III).

Finally, former subsection 1437p(b)(2) and former section 1437p as a whole did not contain a requirement that a PHA notify displaced residents. The 1998 amendment added a new provision specifying not only that notification must be provided, but also specifying the content and timing of the notice. The current statute states that a PHA must certify that it "will notify each family residing

15

**United States District Court**
For the Northern District of California

1  in a project subject to demolition or disposition 90 days prior to the displacement date . . . that the

2  public housing *will* be demolished or disposed of; the demolition of the building in which the family

3  resides will not commence until each resident of the building is relocated; and each family displaced

4  by such action will be offered comparable housing." 42 U.S.C. §§ 1437p(a)(4)(A)(i)–(iii) (emphasis

5  added). Under the notification provisions, the scope of plaintiffs' rights includes a right to be told

6  that the demolition or disposition *will* go forward, and necessarily, a right to also be told that HUD

7  has approved a PHA's application for demolition or disposition. Displacement or relocation that

8  occurs without the benefit of this notification violates section 1437p.

9       In Ball v. Rodgers, 492 F.3d 1094 (9th Cir. 2007), the Ninth Circuit addressed the issue of

10  whether "free choice" provisions of the Medicaid Act created individually enforceable rights. In

11  that case, the Ninth Circuit found that the provision's "'repeated use' of the word 'individuals' and

12  [its] specific articulation of the entitlements guaranteed"—in that case the right to be informed of

13  alternatives to traditional, institutional care and the right to choose from among those

14  options—satisfied the "'rights-creating' standard set forth in Gonzaga, and thus clear[ed] the first

15  hurdle of the Blessing framework." Id. at 1109. The text of the statutory provision in Ball was

16  "concerned with whether the needs of any particular person have been satisfied, not solely with an

17  aggregate institutional policy and practice." Id. at 1107. Likewise, in this case, repeated use of

18  variations of the phrase "family" or "resident displaced" throughout section 1437p(a)(4), as well as

19  the articulation of specific and detailed entitlements regarding rights to notification and relocation

20  assistance, demonstrates that the provision clears the first hurdle of the Blessing framework. Section

21  1437p(a)(4) is not merely concerned with aggregate institutional policy, but is concerned with rights

22  conferred on individuals who are displaced as a result of demolition or disposition.

23       Given that the text of subsection 1437p(a)(4) contains unambiguous rights-creating language

24  critical to showing the requisite congressional intent to create new rights, this court is not persuaded

25  that the amendment history of section 1437p changes this conclusion. First, that Congress deleted

26  former subsection (d)—stating that a PHA shall not take any action to demolish or dispose of public

27  housing without obtaining HUD approval—is not dispositive of Congressional intent to foreclose

28  individually enforceable rights. As already discussed, at the same time Congress deleted former

United States District Court

For the Northern District of California

1   subsection (d), Congress also expanded the requirements for notification and relocation assistance in

2   section 1437p(a)(4).

3          Second, even *without* the presence of former subsection (d), and even *without* the expanded

4   language that exists today in section 1437p(a)(4), the court is persuaded that Congress intended

5   section 1437p to create individually enforceable rights. Section 1437p as it existed at the time the

6   D.C. Circuit decided the Edwards case in 1987, like the statute as it exists today, did not contain

7   former subsection (d) prohibiting a PHA from taking any action prior to HUD approval. Moreover,

8   compared to the statute as it exists today, the language of section 1437p requiring relocation

9   assistance was more perfunctory and less specific. Nevertheless, even under that early permutation

10  of the statute, Congress believed that section 1437p was "fully enforceable by tenants of and

11  applicants for the housing that is threatened." H.R. Conf. Rep. 100-426, 1987 U.S.C.C.A.N. 3458 at

12  3469. Congress unambiguously stated this intention when it rebuked the D.C. Circuit in the

13  Edwards case for its "*erroneous* interpretation of the *[then]-existing* statute." Defendants, by

14  inviting the court to interpret the current statute as not creating rights enforceable by individual

15  tenants, essentially invite the court to commit the same error the D.C. Circuit committed in the

16  Edwards case. In sum, Congress intended the statute today, like the statute at the time of the

17  Edwards decision, to give rise to individual rights, and the creation of those rights does not hinge on

18  the presence or absence of former subsection (d).

19         Regarding the deletion of former subsection (d) during the 1998 amendment, there is an

20  additional issue regarding HUD regulations that warrants discussion. Following the 1998

21  amendment, HUD revised its regulations implementing section 1437p. See 71 Fed. Reg. 62354

22  (October 24, 2006). Despite Congress' deletion of former subsection (d) from the statute, HUD

23  regulations retained language mirroring that subsection. Id.; see also 24 C.F.R. § 970.7(a) ("A PHA

24  must obtain written approval from HUD before undertaking any transaction involving demolition or

25  disposition of PHA-owned property"); 24 C.F.R. § 970.25(a) ("A PHA may not take any action to

26  demolish or dispose of a public housing development . . . without obtaining HUD approval"). HUD

27  explained that these provisions were retained in the regulations "to make certain that HUD can track

28  units being phased out for funding purposes, . . . [and were] not intended to create any private right

17

United States District Court

For the Northern District of California

1  of action." 71 Fed. Reg. 62354.  These comments made by HUD do not change the court's

2  conclusion that section 1437p creates rights.  Agency regulations cannot nullify rights legitimately

3  conferred by Congress any more than regulations alone can give rise to rights.  Price, 390 F.3d at

4  1112 n.6 (although regulations "may be relevant in determining the scope of the right conferred by

5  Congress," it is "well settled that regulations *alone* cannot create rights").

6          Having concluded that plaintiffs have met the first prong of the Blessing and Gonzaga tests,

7  and that Congress intended section 1437p to confer individual rights to notification and relocation

8  assistance, the court must turn to the second and third prongs.  Under the second prong of the

9  Blessing framework, a plaintiff must demonstrate that the right conferred is "not so 'vague and

10 amorphous' that its enforcement would strain judicial competence."  Blessing, 520 U.S. at 340–41.

11 Under the third prong, the statute must be couched in mandatory, not precatory terms.  Id. at 340.

12         Here, both prongs are met.  Under the second prong, the services and benefits that displaced

13 residents are entitled to receive—notification that the public housing will be demolished (and

14 necessarily, notification that the PHA has received HUD approval), an offer of comparable housing,

15 payment of actual and reasonable relocation expenses, and necessary counseling—are specific and

16 judicially enforceable.  See e.g., Price, 390 F.3d at 1112 (finding that under 42 U.S.C. §

17 5304(d)(2)(A)(iii) and (iv), rights to "reimbursement for actual and reasonable moving expenses,

18 security deposits, credit checks, and other moving-related expenses, including interim living costs,"

19 as well as rights to "comparable replacement housing" were specific and judicially enforceable).

20         Under the third prong, section 1437p provides that HUD shall approve an application for

21 demolition or disposition if the PHA certifies that it "*will* notify" displaced residents, "*will* provide"

22 for the payment of relocation expenses, "*will* ensure" that displaced residents are offered comparable

23 housing, "*will* provide" any necessary counseling, and "*will* not commence" demolition until all

24 residents are relocated.  42 U.S.C. § 1437p(a)(4)(A)–(E).  The repeated and consistent use of the

25 term "will" indicates that the tenant rights and corresponding PHA obligations are mandatory, not

26 precatory.

27         That subsection (a)(4) is embedded within the larger section (a) focused on the Secretary's

28 criteria for approval and the certifications a PHA must make in order to obtain approval does not

United States District Court

For the Northern District of California

1    change the court's conclusion with respect to the third and final prong of the <u>Blessing</u> test.  The

2    Ninth Circuit has found enforceable rights in a Medicare Act provision requiring a state to make

3    certain "assurances" before the Department of Health and Human Services ("DHHS") grants a

4    waiver for reimbursement of alternative care.  <u>Ball</u>, 492 F.3d at 1116 (language of 42 U.S.C. §

5    1396n(c)(2) and (d)(2), stating that "[a] waiver shall not be granted . . . unless the State provides

6    assurances satisfactory to the Secretary" of DHHS, satisfied the third prong of the <u>Blessing</u> test).

7    Similarly, this court finds enforceable rights in a Housing Act provision requiring a local housing

8    authority to make certain "certifications" before the Department of Housing and Urban Development

9    grants approval for demolition and disposition of public housing.

10        Having satisfied all three prongs of the <u>Blessing</u> framework, the right to notification and

11   relocation assistance conferred by section 1437p is presumptively enforceable by section 1983, and

12   the burden falls on defendants to show that Congress intended to foreclose a section 1983 remedy.

13   <u>Gonzaga</u>, 536 U.S. at 284 n.4.  Defendants cannot meet this "difficult" burden.  <u>Blessing</u>, 520 U.S.

14   at 346–47.  Section 1437p contains no express intention to foreclose a section 1983 remedy.  Nor

15   does section 1437p create a comprehensive enforcement scheme that impliedly forecloses a section

16   1983 remedy.  The fact that HUD may disapprove a PHA application for demolition or disposition

17   (42 U.S.C. § 1437p), may exercise general oversight and auditing functions to enforce a PHA's

18   compliance with standards governing PHA funding (42 U.S.C. § 1437d(g) and (j)), and may be

19   subject to private actions under the Administrative Procedures Act (5 U.S.C. §§ 704, 706), is not

20   inconsistent with and does not foreclose private section 1983 actions against a PHA.  <u>See</u> <u>Wright v.</u>

21   <u>City of Roanoke</u>, 479 U.S. 418, 428–429 (1987) (rejecting the argument that HUD's "generalized

22   powers" to audit local public housing authorities, to enforce annual contributions contracts, and to

23   cut off federal funding demonstrated a congressional intent to prevent public housing tenants from

24   using § 1983 to enforce their rights to reasonable payment of rent and utilities under 42 U.S.C. §

25   1437a).

26        In sum, the court concludes that 42 U.S.C. section 1437p(a)(4) gives rise to rights

27   enforceable by individual tenants under 42 U.S.C. section 1983.  These rights include the right to

28   receive notification that the public housing project will be demolished, and necessarily, the right to

be told that HUD has approved the PHA's application.  Additionally, the scope of rights conferred by section 1437p(a)(4) includes the right to receive an offer of comparable housing, payment of actual and reasonable relocation expenses, and necessary counseling.

CONCLUSION

Defendants' Rule 12(b)(6) motion to dismiss plaintiffs' first cause of action for violation of 42 U.S.C. section 1437p, on the basis that section 1437p does not give rise to a private right of action, is DENIED.

IT IS SO ORDERED.

Dated: May 22, 2008

_____

MARILYN HALL PATEL
United States District Court Judge
Northern District of California

United States District Court

For the Northern District of California

20

ENDNOTE

1.  There are two exceptions to the requirements of 42 U.S.C. section 1437p.  One exception is for lawful consolidation.  42 U.S.C. § 1437p(e) ("[n]othing in this section may be construed to prevent a public housing agency from consolidating occupancy within or among buildings of a public housing project, . . . for the purpose of improving living conditions of, or providing more efficient services to, residents").    The   other   exception   is   for   de   minimis   demolition.    42   U.S.C.   §   1437p(f) ("[n]otwithstanding any other provision of this section, in any 5-year period a public housing agency may demolish not more than the less of 5 dwelling units or 5 percent of the total dwelling units owned by the public housing agency, but only if the space occupied by the demolished unit is used for meeting the service or other needs of public housing residents or the demolished unit was beyond repair").

United States District Court
For the Northern District of California