BAY AREA LEGAL AID
LISA S. GREIF (State Bar No. 214537)
NAOMI YOUNG (State Bar No. 105041)
PHILLIP R. MORGAN (State Bar No. 99979)
405 14th Street, 11th Floor
Oakland, California 94612
Telephone: 510-663-4744
Facsimile: 510-663-4740
Email: lgreif@baylegal.org
        nyoung@baylegal.org
        pmorgan@baylegal.org

THE CALIFORNIA AFFORDABLE HOUSING LAW
PROJECT OF THE PUBLIC INTEREST LAW PROJECT
DEBORAH COLLINS (State Bar No. 154532)
MICHAEL RAWSON (State Bar No. 95868)
CRAIG CASTELLANET (State Bar No. 176054)
449 15th Street, Suite 301
Oakland, California 94612
Telephone: 510-891-9794, ext. 156
Facsimile: 510-891-9727
Email: dcollins@pilpca.org
        mrawson@pilpca.org
        ccastellanet@pilpca.org

Attorneys for Petitioners ARROYO VISTA TENANTS ASSOCIATION, et al.        **E-FILED**

## UNITED STATES DISTRICT COURT, NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARROYO VISTA TENANTS ASSOCIATION, RHENAE KEYES, ANDRES ARROYO, DARLENE BROWN, ELISE VEAL, <br><br> Plaintiffs, <br> vs. <br><br><br> CITY OF DUBLIN; DUBLIN HOUSING AUTHORITY; HOUSING AUTHORITY OF ALAMEDA COUNTY; and DOES 1 through 20, inclusive, <br><br> Defendants. <br><br><br> SCS DEVELOPMENT COMPANY, dba Citation Homes Central, a California Corporation; et al., <br><br> Real Parties in Interest. | CASE NO. C 07-05794 <br><br> NOTICE OF MOTION AND MEMORANDUM OF POINTS OF AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION <br><br> Temporary Restraining Order <br> Hearing Date: <br> Time: <br><br> Preliminary Injunction <br> Hearing Date: <br> Time: <br><br> Courtroom: 15, 18th Floor <br> Judge: Honorable Marilyn Hall Patel |

Notice Of Motion And Memorandum Of Points Of Authorities In Support Of
Plaintiffs' Motion For Temporary Restraining Order And Order To Show Cause Re Preliminary Injunction

Case No. C-07-05794MHP

# **TABLE OF CONTENTS**

NOTICE OF MOTION FOR TEMPORARY RESTRAINING ORDER
AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION……………………………1

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION………………3

INTRODUCTION  .................................................................................................................  3

FACTUAL BACKGROUND…………………………………………………………………... 4

PROCEDURAL BACKGROUND……………………………………………….....................7

STANDARD OF REVIEW……………………………………………………………………...7

ARGUMENT…………………………………………………………………………………8

I.   PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS OF THEIR FIFTH AND SIXTH
     CLAIMS THAT DEFENDANTS HAVE DEPRIVED PLAINTIFFS OF THEIR RIGHTS TO
     NOTICE AND RELOCATION ASSISTANCE GUARANTEED BY THE UNITED STATES
     HOUSING ACT…………………………………………………………………………..8

     A. Defendants Have Deprived Plaintiffs and Arroyo Vista Residents of Their Right to Notice That
         HUD Has Authorized Disposition of Arroyo Vista and That Residents Will Be Offered
         Comparable Housing ……………………………………………………………………..8

     B. Defendants Have Deprived Plaintiffs and Arroyo Vista Residents of Their Right to Relocation
         Assistance As Required under the Housing Act……………………………………………10

          1.  Defendants refuse to provide actual and reasonable relocation expenses……………11

          2.  Defendants have failed to offer or provide comparable housing………………………13

          3.  Defendants have failed to provide necessary counseling………………………………14

II.  PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS OF THEIR SECOND AND
     THIRD CLAIMS THAT DEFENDANTS HAVE DEPRIVED PLAINTIFFS OF A
     RELOCATION PLAN, RELOCATION NOTICES, SERVICES AND BENEFITS IN
     VIOLATION OF THE CRA ACT ...................................................................................... 15

     A. Defendants Have Violated State Law By Implementing A Project That Will
         Result in Residential Displacement Without First Lawfully Adopting A
         Relocation Assistance Plan………………………………………………………………..16

Notice Of Motion And Memorandum Of Points Of Authorities In Support Of
Plaintiffs' Motion For Temporary Restraining Order And Order To Show Cause Re Preliminary Injunction

-i-

Case No. C-07-05794MHP

B. Defendants Have Violated The CRA Act and Guidelines By Displacing Residents
   Without Requisite Notice, Services, and Relocation Benefits……… …………………..18

III.    PLAINTIFFS ARE LIKELY TO PREVAIL ON THEIR FEDERAL AND STATE FAIR
        HOUSING CLAIMS…………………………………………………………………19

   A. Defendants' Unlawful Actions Have A Discriminatory Impact on Persons of Color and
      Families With Children in Violation of the Federal Fair Housing Act………………..20

      1. Defendants' Actions Have an Adverse and Disproportionate Impact……………..20

      2. Defendants' Actions Perpetuate Discrimination……………………………………..22

      3. No Governmental Interest Can Justify Defendants' Illegal Conduct………………..22

   B. Defendants' Unlawful Actions Have a Discriminatory Impact on Persons of Color and
      Families with Children in Violation of California's Fair Employment and Housing
      Act…………………………………………………………………………………22

IV.     PLAINTIFFS WILL CONTINUE TO SUFFER IRREPARABLE INJURY UNLESS
        DEFENDANTS ARE RESTRAINED BY THIS COURT, AND THE BALANCE OF
        HARDSHIP TIPS DECIDELY IN PLAINTIFFS' FAVOR………………………….23

   A. Plaintiffs Will Be Irreparably Harmed Unless Defendants Are Enjoined from
      Displacing Residents and Depriving Them of Their Rights to Notice, Services, and
      Relocation Assistance and From Unlawfully Implementing the DDA…………………  23

   B. The Balance of Hardship Tips Sharply in Plaintiffs' Favor                          24

V.      THE COURT SHOULD ISSUE THE PRELIMINARY INJUNCTION
        WITHOUT BOND……………………………………………………………………25

CONCLUSION…………………………………………………………………………..25

Notice Of Motion And Memorandum Of Points Of Authorities In Support Of
Plaintiffs' Motion For Temporary Restraining Order And Order To Show Cause Re Preliminary Injunction

-ii-

Case No. C-07-05794MHP

1

## TABLE OF AUTHORITIES

2

__CASES__                                                                    __Page__

3

4    *Associate Gen. Contractors of Cal. Coalition*
     *For Economic Equity,* 950 F.2d 1401 (9th Cir. 1991)                         8

5
     *Brown v. Artery Organization*
6        654 F.Supp. 1106 (D.D.C. 1987)                                            23

7    *Budnick v. Town of Carefree,*
     518 F.3d 119 (9th Cir. 2008)                                                22

8
     *California ex rel. Van de Kamp v. Tahoe Regional Planning Agency*
9        766 F.2d 998 (9th Cir. 1985)                                            25

10   *Caribbean Marine Services Co. v. Baldridge,*
     844 F.2d 668, 674 (9th Cir. 1988)                                            8

11
     *Chalk v. US. District Court*
12       840 F.2d 701 (9th Cir. 1988)                                            24

13   *Charleston Housing Authority v. USDA,*
     419 F.3d 729 (8th Cir. 2005)                                             21,23

14
     *Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*
15       321 F.3d 878 (9th Cir. 2003)                                            8

16   *Department of Parks & Rec. for the State of California*
     *v. Bazaar Del Mundo, Inc.,* 448 F.3d 1118 (9th Cir. 2006)               23,24

17
     *Gamble v. City of Escondido*
18   104 F.3d 300 (9th Cir. 1996)                                                20

19   *Garcia v. Anthony*
     211 Cal.App.3d 467 (1989)                                                     18

20
     *Johnson v. United States Department of Agriculture*
21   734 F.2d 774 (11th Cir. 1984)                                                 23

22   *Keith v. Volpe,* 858 F.2d 467 (9th Cir. 1988)
     cert. denied, 493 U.S. 813 (1989)                                          20,21

23
     *Keith v. Volpe,*
24   618 F.Supp. 1132 (C.D. Cal. 1985)                                          20,21

25   *Konig v. Fair Employment & Housing Com.,*
     28 Cal.4[th] 743                                                              22

26

27

28

Notice Of Motion And Memorandum Of Points Of Authorities In Support Of
Plaintiffs' Motion For Temporary Restraining Order And Order To Show Cause Re Preliminary Injunction

-i-

Case No. C-07-05794MHP

*Metropolitan Hous. Dev. Corp. v. Village of Arlington Heights*
558 F.2d 1283 (7th Cir. 1977)                                     20,22

*Mitchell v. U.S. Dept. of Housing & Urban Development*
  569 F.Supp. 701 (N.D. Cal. 1983)                                     24

*Oakland Tribune, Inc. v. Chronicle Publishing Co.*
  762 F.2d 1374 (9th Cir. 1985)                                       8

*Orantes-Hernandez v. Smith,*
541 F.Spp. 351 (C.D. Cal. 1982)                                       25

*Peter Kiewit Sons' Co. v. Richmond Redevelopment Agency*
  178 Cal.App.3d 435 (1986)                                           18

*Pfaff v. Department of Hous. & Urban Dev.,*
88 F.3d 739 (9th Cir. 1996)                                        20

*Price v. City of Stockton*
390 F.3d 1105 (9th Cir. 2004)                                    24,25

*Ressler v. Pirece,*
692 F.2d 1212 (9th Cir. 1982)                                      17

*Silver Sage Partners, Ltd. v. City of Desert Hot Springs,*
251 F.3d 814 (9th Cir. 2001)                                       24

*Sisemore v. Master Financial, Inc.*
151 Cal.App. 4th 1386 (2007)                                       23

*Smith v. Anchor Bldg. Corp.,*
536 F.2d 231 (8th Cir. 1976)                                       25

*U.S.A. Express Club, LLC v. City of San Jose,*
2007 U.S. Dist. LEXIS 95692 *14-*15 (N.D. Cal. 2007)                  7

*Woodrow F. Morgan, Inc. v. United States,*
670 F.Supp. 289 (E.D. Cal. 1987)                                      7

## STATUTES AND REGULATIONS

Federal Statutes

42 U.S.C. § 1437p                                                *passim*

42 U.S.C. §3601                                                     2,20

Notice Of Motion And Memorandum Of Points Of Authorities In Support Of
Plaintiffs' Motion For Temporary Restraining Order And Order To Show Cause Re Preliminary Injunction

-ii-

Case No. C-07-05794MHP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

<u>Federal Regulations</u>

24 C.F.R. Part 970                                    8

    § 970.13                                    9
    § 970.21                               *passim*

<u>State Statutes</u>

Cal. Govt. Code §7260                          2,16,18

§ 7260.5                                            16

§ 7261                                              16

Cal. Govt. C. §12955                           2,20,22

<u>State Regulations</u>

25 Cal. Code Reg. § 6000                         2,16

    § 6008                                 18,19

    § 6010                                 16,18

    § 6012                                    17

    § 6014                                    16

    § 6034                                    18

    § 6038                                    16

    § 6040                                    27

    § 6046                                    19

    § 6086                                    19

    § 6090                                    19

    § 6092                                    19

    § 6098                                    19

Notice Of Motion And Memorandum Of Points Of Authorities In Support Of
Plaintiffs' Motion For Temporary Restraining Order And Order To Show Cause Re Preliminary Injunction

-iii-

Case No. C-07-05794MHP

**NOTICE OF MOTION AND MOTION FOR TEMPORARY RESTRAINING ORDER
AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION**

**TO RESPONDENTS CITY OF DUBLIN, DUBLIN HOUSING AUTHORITY, AND
HOUSING AUTHORITY OF ALAMEDA COUNTY AND THEIR ATTORNEYS OF
RECORD**:

NOTICE IS HEREBY GIVEN that on _____ at _____ p.m., or as soon thereafter as counsel may be heard by the above-entitled Court, located at 450 Golden Gate Avenue, Courtroom 15, 18th Floor, San Francisco, California, in the courtroom of Judge Marilyn Hall Patel, plaintiffs will move the Court pursuant to Fed. R. Civ. P. 65 for a Temporary Restraining Order and Order to Show Cause re Preliminary Injunction enjoining defendants City of Dublin (City), Dublin Housing Authority ("DHA"), and Housing Authority of Alameda County ("HACA") (collectively "Defendants"), their agents, officers, servants and attorneys as follows:

**Temporary Restraining Order**

Plaintiffs seek a temporary restraining order and an order to show cause re preliminary injunction restraining defendants City, DHA, and HACA, and their successors in office, agents, servants, employees, attorneys, and all persons in active concert therewith from:

(1) displacing, relocating, or removing any lawful occupant of Arroyo Vista, including but not limited to encouraging, pressuring or coercing any occupant to move, and threatening to vacate any lawfully occupied unit for any reason related to or in connection with the proposed disposition of Arroyo Vista.

(2) implementing the Disposition and Development Agreement for the Arroyo Vista Redevelopment Project between DHA, HACA, Eden Housing, Inc. ("Eden"), and Citation Homes Central ("Citation"), approved by Dublin City Council Resolution 136-07 on July 17, 2007 ("DDA");

**Preliminary Injunction**

Plaintiffs seek a preliminary injunction to maintain the status quo at Arroyo Vista until such time as defendants (1) receive written approval from the U.S. Department of Housing and Urban Development (HUD) of an application for disposition of Arroyo Vista; (2) provide a minimum 90-day notice to all residents that fully complies with 42 U.S.C. §1437p(a)(4)(A); (3) provide all residents

Notice Of Motion And Memorandum Of Points Of Authorities In Support Of
Plaintiffs' Motion For Temporary Restraining Order And Order To Show Cause Re Preliminary Injunction

-1-

Case No. C-07-05794MHP

1   with comparable housing and relocation assistance required by 42 U.S.C. §1437p(a)(4)(B)-(E); (4)

2   fully comply with the California Relocation Assistance Act (CRA Act), Govt. C. §7260 *et seq.* and

3   implementing Guidelines, including providing all persons to be displaced with all notices, comparable

4   housing, and relocation assistance and benefits and a lawfully adopted relocation plan; and (5) fully

5   comply with the federal Fair Housing Act and California Fair Employment and Housing Act.

6          The grounds for the motion are:

7          (1) Defendants' continuing actions to displace and/or threatening to displace plaintiffs and

8   encouraging the relocation of all residents of that housing without required notice and relocation

9   assistance deprive plaintiffs of their rights under 42 U.S.C. §1437p(a)(4) and 24 C.F.R. §970.21 in

10  violation of 42 U.S.C. §1983.

11          (2) Defendants' continuing actions to implement their DDA to sell, vacate, demolish and

12  redevelop Arroyo Vista, including the displacement of approximately 60 Arroyo Vista households and

13  threatening to displace plaintiffs and encouraging the relocation of all residents of that housing without

14  the required notices, advisory services, relocation benefits and a lawfully adopted relocation plan

15  mandated by state law violates the CRA Act and California Department of Housing and Community

16  Development's (HCD's) Guidelines ("Guidelines") (Cal. Govt. C. §7260 et seq.; 25 C.C.R. §6000 *et*

17  *seq.*);

18          (3) Defendants' unlawful actions to dispose of Arroyo Vista discriminate against African

19  Americans, Latinos and families with children in violation of the federal Fair Housing Act (42

20  U.S.C. § 3601 *et seq.*) and California's Fair Employment and Housing Act (FEHA) (Calif. Gov't

21  Code § 12955 *et seq.*), because the disposition has a pronounced disproportionate effect on

22  members of those protected groups; and

23          (4) Individual plaintiffs, the Arroyo Vista Tenants Association and its members, other residents

24  and the community at large will suffer irreparable injury if defendants are not restrained.  At the time

25  of filing of plaintiffs' Motion for Preliminary Injunction on January 28, 2008, defendants had

26  displaced and/or relocated approximately 33 households from Arroyo Vista.  To date approximately

27  60 households have already been relocated.  After this Court's May 23, 2008 Order denying

28

Notice Of Motion And Memorandum Of Points Of Authorities In Support Of
Plaintiffs' Motion For Temporary Restraining Order And Order To Show Cause Re Preliminary Injunction

-2-

Case No. C-07-05794MHP

defendants' motion to dismiss, plaintiffs requested that defendants cease the displacement and relocation of Arroyo Vista residents, but defendants refused.  On June 3, 2008, defendant DHA approved a relocation plan that authorizes DHA to continue relocating residents prior to HUD approval of an application for disposition.  Some residents are taking steps to move because of defendants' actions even though HUD may well disapprove the proposed disposition.

The motion is based on this Notice of Motion and Order to Show Cause re Preliminary Injunction and supporting Memorandum of Points and Authorities, supporting Declarations of Craig Castellanet, Lisa Greif, Jaqueline Amador, Darlyn Anderson, Celia Arroyo, Melisa Callender, Carata DeRamous, Gretta Evans, Maria Garcia, Kimberly Hill, Rhenae Keyes, Joyce McQuarters, Liz Rigney, Glynis Smith, Antone Tucker, and Elise Veal; the Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Preliminary Injunction and supporting documents filed on January 28, 2008 (Docket Entry ("DE") 11 – 22); Defendants' Opposition to Motion for Preliminary Injunction and supporting documents filed February 11, 2008 (DE 26, 28, 29.1-29.6);  Plaintiffs' Reply Memorandum in Support of Plaintiffs' Motion for Preliminary Injunction and supporting documents, filed February 19, 2008 (DE 33 – 43); Plaintiffs' First Amended and Supplemental Complaint (DE 55.2); Memorandum and Order filed May 23, 2008 denying defendants' Motion to Dismiss (DE 68); Memorandum and Order granting Plaintiffs' Motion to File First Amended Complaint (DE 69) and such other memoranda, evidence, and argument as may be presented at the hearing on the motion.

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

## INTRODUCTION

Plaintiffs, four lower income residents of Arroyo Vista and the Arroyo Vista Tenants Association ("AVTA"), seek a temporary restraining order and order to show cause re preliminary injunction as set forth in the Notice of Motion, to enjoin defendants' from displacing or relocating Arroyo Vista residents in violation of Section 18 the United States Housing Act and the California Relocation Assistance Act (the CRA Act) and Guidelines, and from taking any further action to sell,

Notice Of Motion And Memorandum Of Points Of Authorities In Support Of
Plaintiffs' Motion For Temporary Restraining Order And Order To Show Cause Re Preliminary Injunction

-3-

Case No. C-07-05794MHP

vacate, demolish or redevelop Arroyo Vista in violation of the CRA Act and Guidelines, the federal Fair Housing Act and the California Fair Employment and Housing Act (FEHA).

Without HUD approval, defendants have already displaced approximately 60 Arroyo Vista households without the benefit of notice and relocation assistance required by federal and state law. They continue to implement a DDA to sell, vacate, demolish and redevelop Arroyo Vista in violation of state and federal law. Moreover, by resolution of June 3, 2008 DHA approved a relocation plan that does not comply with state law yet authorizes "mandatory" displacement should HUD approve an application for disposition and expressly permits DHA to continue "voluntary" relocation of residents in the interim. Defendants' continued conduct threatens imminent displacement—irreparable harm that far outweighs any burden placed on defendants by the restraint of their illegal actions.

## FACTUAL BACKGROUND

Arroyo Vista is a single-family residential development of 150 public housing units located in Dublin, California that is owned by DHA and administered by HACA. Greif PI Decl. DE 12, ¶2, Ex. 2 at 31; Gouig Opp. Decl. DE 28, ¶¶5, 6.[1] As of August 2007, there were 437 individuals residing at Arroyo Vista. Greif PI Decl., DE 12, ¶4, Ex. 3 at 148. Since that time defendants have relocated more than one-third of Arroyo Vista households. Greif TRO Decl. ¶ 16, Ex. 10 at 323.

Plaintiffs Rhenae Keyes, Darlene Brown, and Elise Veal, are long time African-American residents and Andres Arroyo is a long-time Hispanic resident of Arroyo Vista, and all of them have very low or extremely low incomes. First Amended Complaint, etc. ("FAC") DE 55-2 at ¶¶15-18. Ms. Keyes, Brown, and Mr. Arroyo also have disabilities. *Id.* Rents paid by tenants at Arroyo Vista average less than $500 per month. *Id.* ¶24. Plaintiff AVTA is an unincorporated association of current and former Arroyo Vista residents. *Id.* ¶14; Keyes Supp. PI Decl., DE 21, ¶ 3-5.

---

[1] Declarations are abbreviated as "[Name] TRO Decl."; declarations in support of plaintiffs' motion for preliminary injunction and reply memorandum filed on January 28, 2008 and February 19, 2008, respectively, are abbreviated as "[Name] PI Decl. Docket Entry No. ("DE") No." or "[Name] Supp. PI Decl. DE No.". Defendants' declarations in opposition to plaintiffs' motion for preliminary injunction, filed on February 11, 2008 are abbreviated as "[Name] Opp. Decl. DE No.".

Defendants have taken a number of actions to dispose of Arroyo Vista. DHA initiated negotiations with Eden and Citation to redevelop Arroyo Vista in July 2006. Gouig Opp. Decl., DE 28, 29-2 ¶¶21, Ex. B. In November 2006, it amended its Public Housing Authority Five-Year Plan ("PHA Plan") to seek demolition and disposition of Arroyo Vista (Greif PI Decl. DE 12, ¶5, Ex. 4 at 169), and in March 2007, it retained a relocation consultant, Overland Pacific & Cutler ("OPC") in preparation for redevelopment. Richman Opp. Decl. DE 28, ¶3. In April 2007, DHA entered into an exclusive negotiating agreement with Eden and Citation (Gouig Opp. Decl., DE 28, 29-2, ¶¶23, 24, Exs. C and D), culminating in the DDA executed by defendants in July 2007. Greif PI Decl. DE 12, *Id*. at ¶¶ 2, 3, Exs. 1, 2.[2]

The DDA calls for sale of Arroyo Vista to Eden and Citation for $12 million, demolition of all existing homes, redevelopment of the site with 226 "for sale" dwellings (mostly market-rate) and 179 rental units (129 for families and 49 reserved for seniors), and displacement of all residents. *Id*.¶3, Ex. 2 at 21-23, 28-29, 30, 44. Depending on available funding, apartment rents in the new development would range from $471 for 62 1-bedroom units (49 senior-restricted) to over $1300 for five 3-bedroom units. *Id*. at 29-30, 83, 86.

After entering into the DDA, defendants submitted an incomplete application for disposition to HUD ("Application") on August 14, 2007. Greif PI Decl. DE 12, ¶4, Ex. 3 (DE 12-4); Gouig Opp. Decl. DE 28, ¶26.[3] The Application remains incomplete. It still lacks an approved environmental review, and defendant City Council will not even consider an action related to environmental review (Finding Of No Significant Impact) until July 15, 2008. "Greif TRO Decl.", ¶¶15,18,19, Exs. 7,9, 13.

Defendants had "already begun to relocate residents" before the Application was submitted to HUD. Greif PI Decl. DE 12, ¶12, Ex. 11 (DE 12-5) at 43. By August 14, 2007, DHA had relocated 12 households. Greif PI Decl., DE 12, ¶4, Ex. 3 (DE 12-4) at 5, 23. DHA claims in its Application

---

[2] In December 2007, the Dublin City Council committed funds, by way of a forgivable loan, to developer Eden in connection with environmental review costs. *See* Greif TRO Decl. ¶7, Ex. 1; Greif PI Decl., DE 12, ¶11, Ex. 10.

[3] It lacked an independent fair market appraisal, an approved environmental review, and relocation plan. *Id*.; Greif PI Decl. DE 12, ¶4, Ex. 3 (DE 12-4) at 5, 11, 16-17, 19, 29.

Notice Of Motion And Memorandum Of Points Of Authorities In Support Of
Plaintiffs' Motion For Temporary Restraining Order And Order To Show Cause Re Preliminary Injunction

-5-

Case No. C-07-05794MHP

that those residents moved voluntarily, but that all remaining residents are expected to be relocated by November 2008. *Id.* Since at least April 2007, DHA has pressured and encouraged residents to "move now." Keyes PI Decl., DE 22 ¶¶9-12; *see also* Sanders PI Decl., DE 18, ¶¶6, 7, Ex. 1; Brown PI Decl., DE 14, ¶9. As of June 3, 2008, defendants reported to the DHA Commission that nearly 60 households have now been relocated – all without HUD approval and *before* the adoption of a relocation plan. Greif TRO Decl. ¶16, Ex. 10 at 323. In the process, defendants deprived plaintiffs and residents of Arroyo Vista of requisite notice, comparable housing, advisory services, and relocation assistance required by state and federal law.[4]

By letter dated November 20, 2007 to plaintiffs' counsel, HUD confirmed that DHA is prohibited from taking any action to relocate residents and dispose of Arroyo Vista without first obtaining HUD approval, and that HUD will not approve an incomplete Application or one that does not support DHA's representations to HUD. Greif PI Decl. DE 12, ¶¶7, 13, Exs. 6, 12 (DE 12-4, 12-5).

Prior to filing this motion, plaintiffs requested that defendants cease their unlawful activities, particularly in light of this Court's order of 5/23/08 determining that "[d]isplacement or relocation that occurs without the benefit of [the notification provisions of §1437p(a)(4)(A)] violates section 1437p." Castellanet TRO Decl. ¶4; *see also* 5/23 Order, DE 68 at 16. Defendants refused. Castellanet TRO Decl. ¶5. Over the objections of Arroyo Vista residents and plaintiffs' counsel (Greif TRO Decl. ¶¶17, 18, Exs. 11, 12), the DHA Commission adopted a resolution on June 3, 2008, unlawfully approving a deficient relocation plan; its resolution authorizes DHA staff to commence "mandatory" relocation should HUD approve disposition and *to continue* "voluntary" relocation of residents *prior* to HUD approval. *See* Greif TRO Decl. ¶16, Exs. 10 at 330-331. Arroyo Vista residents continue to be pressured to move and several are endeavoring to move. Amador TRO Decl. ¶13; Keyes TRO Decl.

---

[4] *See, e.g.*, Costello PI Decl., DE 16, ¶8; Gretta Evans PI Decl., DE 19, ¶¶11-15, 17-18; Carolyn Evans PI Decl., DE 15, ¶¶4-8 15; Keyes PI Decl., DE 20, ¶¶13-18, Ex. 1, 3; Veal PI Decl., DE 17, ¶¶4-7, 14-19, Exs. 2, 3, 4, 6; *see also* Amador Decl. ¶¶3,5,6,8,10,12; Anderson TRO Decl. ¶9, 11, 12; Callender TRO Decl. ¶¶5, 7, 9; DeRamous TRO Decl. ¶¶4, 5, 8; Gretta Evans TRO Decl. ¶¶4, 5, 6, 7; Hill TRO Decl. ¶¶8, 10; Keyes TRO Decl. ¶3, 4; McQuarters TRO Decl. ¶5, 6, 10; Rigney TRO Decl. ¶6, 7; Smith TRO Decl. ¶11; Tucker TRO Decl. ¶4, 5, 6; Veal TRO Decl. ¶7, 9, 10, 16, 22, 34.

Notice Of Motion And Memorandum Of Points Of Authorities In Support Of
Plaintiffs' Motion For Temporary Restraining Order And Order To Show Cause Re Preliminary Injunction

-6-

Case No. C-07-05794MHP

¶9; McQuarters TRO Decl. ¶¶3,8,9,10,13; Rigney TRO Decl. ¶¶4, 5; Smith TRO Decl. ¶¶7, 8, 10, 11. Tucker TRO Decl. ¶¶6; Veal TRO Decl. ¶¶24, 25.

**PROCEDURAL BACKGROUND**

Plaintiffs filed a Petition for Writ of Mandate in the Alameda County Superior Court on October 15, 2007, seeking to set aside the DDA and to enjoin defendants from implementing the DDA and displacing residents without HUD approval or compliance with state and federal relocation assistance laws. Petition for Writ of Mandate filed October 15, 2007. Defendants removed the action to this Court (DE 1), and answered on November 21, 2007 on behalf of all defendants and real parties in interest. DE 4. Plaintiffs moved for preliminary injunction in January 2008 and defendants moved for summary judgment in February 2008. DE 11, 27. The Court ordered further briefing on the question of whether 42 U.S.C. §1437p creates enforceable rights. DE 54. Construing the briefing as a Rule 12(b)(6) motion to dismiss plaintiffs' first cause of action, the Court denied the motion, finding that plaintiffs have the right to enforce the notice and relocation assistance provisions of 42 U.S.C. §1437p(a)(4). 5/23 Order, DE 68 at 20. The Court also granted plaintiffs' motion to amend on May 23, 2008. DE 69. Plaintiffs now move for a temporary restraining order and order to show cause re preliminary injunction on their second, third, fifth, sixth, seventh and eighth claims for relief. *See* DE 55-2.[5]

**STANDARD OF REVIEW**

Where opposing party receives notice of the application for a restraining order, a temporary restraining order may issue if the conditions for a preliminary injunction are met. *Woodrow F. Morgan, Inc. v. United States,* 670 F.Supp. 289, 290 (E.D. Ca. 1987); *U.S.A. Express Cab, LLC v. City of San Jose,* 2007 U.S. Dist. LEXIS 95692, *14-*15 (N.D. Ca. 2007). The Ninth Circuit has adopted two tests for determining the propriety of a preliminary injunction. The moving party must demonstrate either (1) a combination of probable success on the merits and the possibility of irreparable injury, or (2) that serious questions are raised and the balance of hardships tips sharply in

---

[5] Plaintiffs gave telephone notice to defendants of the filing of this motion on June 13 and June 16, 2008, and defendants were served electronically with all moving papers. Collins TRO Decl. ¶ 2.

Notice Of Motion And Memorandum Of Points Of Authorities In Support Of
Plaintiffs' Motion For Temporary Restraining Order And Order To Show Cause Re Preliminary Injunction

-7-

Case No. C-07-05794MHP

favor of the moving party. *Associate Gen. Contractors of Cal. Coalition for Econ. Equity*, 950 F.2d 1401, 1410 (9th Cir. 1991); *Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills,* 321 F.3d 878, 881 (9th Cir. 2003). These two formulations are not different tests but represent two points on a sliding scale in which the required probability of success decreases as the degree of irreparable harm increases. *Oakland Tribune, Inc. v. Chronicle Publishing Co.*, 762 F.2d 1374, 1376 (9th Cir. 1985). In addition, a court in either formulation of the test must also take into account the public interests that are implicated by the relief sought when it is balancing the harms. *Caribbean Marine Services Co. v. Baldridge*, 844 F.2d 668, 674 (9th Cir. 1988). Plaintiffs make the requisite showing.

## ARGUMENT

I.    **PLAINTIFFS ARE LIKELY TO SUCCEED ON THEIR FIFTH AND SIXTH CLAIMS THAT DEFENDANTS HAVE DEPRIVED PLAINTIFFS OF THEIR RIGHTS TO NOTICE AND RELOCATION ASSISTANCE GUARANTEED BY THE UNITED STATES HOUSING ACT (42 U.S.C. §1437p(a)(4)).**

As this Court explained in its 5/23 Order, the United States Housing Act prohibits DHA from displacing or relocating public housing residents before providing the notice and relocation assistance required under 42 U.S.C. §1437p(a)(4). 5/23 Order DE 68 at 16, 19-20. Despite that order and a request from plaintiffs' attorneys to desist, defendants continue to relocate and threaten displacement of Arroyo Vista residents, depriving plaintiffs of their notice and relocation assistance rights in violation of 42 U.S.C. §1983. These unlawful and continuing actions must be enjoined.

A.    **Defendants Have Deprived Plaintiffs and Arroyo Vista Residents of Their Right to Notice That HUD Has Authorized Disposition of Arroyo Vista and That Residents Will Be Offered Comparable Housing.**

Section 18 of the United States Housing Act of 1937, as amended, governs the procedure and requirements for demolition or disposition of public housing by a PHA. 42 U.S.C. §1437p. Section 1437p(a) sets forth the conditions under which HUD may approve PHA applications for disposition or demolition (*see* 5/23 Order at 6), and HUD has promulgated regulations at 24 C.F.R. Part 970 (2008) delineating the steps a PHA must take to obtain approval.[6] Among other requirements, the PHA must

---

[6] HUD's regulations regarding relocation of residents are at 24 C.F.R. §970.21.

Notice Of Motion And Memorandum Of Points Of Authorities In Support Of
Plaintiffs' Motion For Temporary Restraining Order And Order To Show Cause Re Preliminary Injunction

-8-

Case No. C-07-05794MHP

certify to HUD that it will *notify* the public housing residents at least 90 days prior to displacement that the project "will be" demolished or disposed of, that demolition will not commence *until* each resident is relocated, and that each family displaced will be offered comparable housing. 42 U.S.C. §1437p(a)(4)(A)(i)-(iii); *see also* 24 C.F.R. §970.21(e). Where the housing is occupied, a PHA also may not complete disposition until all residents have been relocated. 24 C.F.R. §970.21(b), (e).

Thus, as the Court indicated in its order, a 90-day notice of displacement advising residents that HUD has authorized the disposition and offering comparable housing to each resident must *precede* relocation of Arroyo Vista residents. 5/23 Order at 18-20; *see also* 42 U.S.C. §1437p(a)(4); 24 C.F.R. §970.21(e). In the event of approval of a disposition application, it is this notice that informs the residents that their displacement has been *authorized* by HUD. It is undisputed that HUD has not approved the Application. Indeed, the Application is not even complete, still lacking the required environmental review.[7] Greif PI Decl. DE 12, ¶7, Ex. 6. The soonest DHA could complete its Application is July 16, 2008, the day after the City has indicated by public notice that it will adopt an environmental "Finding of No Significant Impact" and authorize DHA to formally request HUD approval of the proposed disposition. Greif TRO Decl. ¶15, Ex. 9 at 313.[8]

Nonetheless, as explained above, without any authority to dispose of Arroyo Vista, defendants began relocating residents long before the timeline for issuing the 90-day notices can lawfully occur -- even *before* submitting an incomplete Application to HUD. Instead, the DHA Commission has authorized "voluntary" displacement of Arroyo Vista residents to *continue* without HUD approval. Greif TRO Decl. ¶16, Ex. 10 at 330-31.

---

[7] HUD regulations require the Application to include an environmental review. 24 C.F.R. §§970.13.

[8] This notice acknowledges the uncertainty of HUD's approval, pointing out that HUD will consider objections to the approval including whether *"the grant recipient or other participants in the development process have committed funds, incurred costs or undertaken activities not authorized by 24 CFR Part 58 before approval by HUD." Id.* (emphasis added). Given all defendants have done without HUD approval, it is far from a foregone conclusion that HUD will approve the Application.

Notice Of Motion And Memorandum Of Points Of Authorities In Support Of
Plaintiffs' Motion For Temporary Restraining Order And Order To Show Cause Re Preliminary Injunction

-9-

Case No. C-07-05794MHP

Section 1437p does not recognize any exception to notification for so-called "voluntary" relocation. The *only* exception to providing the 90-day notice is "in cases of imminent threat to health or safety" as expressly set forth in the statute. 42 U.S.C. §1437p(a)(4)(A); *see also* 24 C.F.R. §970.21(e)(1). Moreover, defendants' myth that 60 lower income families "voluntarily" abandoned their deeply affordable homes and a community in which many resided for decades simply lacks credibility. Rather, Arroyo Vista residents have been pressured and frightened into moving early since at least April 2007, being told that the market is tight, that there might not be enough section 8 vouchers or units if they wait, and if they stay, they will see bulldozers raze their homes. *See* Pltfs. Open. Memo, DE 11 at 12-14; Reply Memorandum, DE 33 at 3-4.[9] Residents continue to be pressured to relocate and several are continuing their efforts to move – all when they may not have to move at all. *See, e.g.*, Amador TRO Decl. ¶13; Keyes TRO Decl. ¶9; McQuarters TRO Decl. ¶¶3, 8, 9, 10, 13; Rigney TRO Decl. ¶¶4, 5; Smith TRO Decl. ¶¶7, 8, 10, 11. Tucker TRO Decl. ¶¶6; Veal TRO Decl. ¶¶24, 25; *see also* Greif Decl. ¶12, Ex. 6 at 228-257.

**B.**     **Defendants Have Deprived Plaintiffs and Arroyo Vista Residents of Their Right to Relocation Assistance As Required under the Housing Act.**

As this Court ruled in its 5/23 Order, §1437p(a)(4) also requires a PHA to *provide* actual and reasonable relocation expenses, comparable housing in accordance with the notice required under 42 U.S.C. §1437p(a)(4)(A)(iii), and necessary counseling to each resident to be displaced -- *before* displacement, demolition or disposition can occur. 5/23 Order at 14; *see also* 42 U.S.C. §1437p(a)(4)(B)-(E); 24 C.F.R. §970.21(e)(2)-(4). Though defendants provided *some* relocation

---

[9] What defendants have not told the residents is that (1) the application is not a "done deal," and if it is not approved, no one will have to move. *See, e.g.*, Gouig Decl. in Support of Defs. Oppn. ¶¶26, 35 [acknowledging application is incomplete and telling tenants that approval of application is likely]; (2) if defendants do not provide adequate comparable replacement housing and relocation assistance, disposition and demolition of Arroyo Vista cannot proceed; and (3) that even if HUD approves the application, the property may not be sold or the residents relocated without a minimum 90-day notice of HUD's decision and an offer of comparable housing that *includes* relocation to an actual Section 8 unit, plus all relocation assistance required under Section 18. *See* Pltfs. Open. Memo., DE 11, at 8:4-19, 11-13:15.

Notice Of Motion And Memorandum Of Points Of Authorities In Support Of
Plaintiffs' Motion For Temporary Restraining Order And Order To Show Cause Re Preliminary Injunction

-10-

Case No. C-07-05794MHP

assistance to *some* of the residents they prematurely displaced, defendants deprived and threaten to continue depriving plaintiffs and other displaced residents of the relocation assistance required under §1437p(a)(4)(B)-(E).

### 1. Defendants refuse to provide actual and reasonable relocation expenses.

DHA acknowledges in its Application that reasonable relocation expenses include moving expenses, security deposits, credit check fees, and rental assistance payments. Greif PI Decl., DE 12, ¶4, Ex. 3 at 148, 151. The amounts defendants *propose* to budget, however, are inadequate to cover the "actual and reasonable" cost to displaced residents. Moreover, defendants have largely reneged on providing even those amounts. Thus, defendants have exacerbated the hardship associated with displacement by denying or withholding "actual and reasonable" relocation expenses.

DHA budgeted $1940 per unit for "moving expenses" in its Application. *Id.* at 148. In its recently adopted relocation plan, it provides for "fixed" moving expenses *or* at the displaced person's option, some costs associated with "actual reasonable moving expense payments," including for example, the cost of transferring utilities. Greif TRO Decl., ¶12, Ex. 6 at 201. However, for some residents, defendants have held half of the "promised" moving expense hostage until the residents vacate their homes. *See* Gretta Evans PI Decl., DE 19, ¶¶18-19; Gretta Evans Supp. PI Decl., DE 36, ¶16 [DHA continues to withhold $825 in moving expense]; Veal PI Decl., DE 17, ¶¶10-18, Exs. 2, 3, 6 [withheld $825 moving expense preventing plaintiff from moving]; *see also* Veal TRO Decl. ¶25.[10]   Others have been offered a smaller fixed moving expense than is provided for by the relocation plan. Tucker TRO Decl. ¶¶3, 4, 9, Ex. 3. [offered fixed moving expense for fewer rooms]; *see also* Callender TRO Decl. ¶7 [no option to get utilities transferred.]

---

[10] A PHA may not discriminate in providing relocation assistance. *See* 24 C.F.R. §970.21(a). Yet, unlike Gretta Evans and Elise Veal, the moving expense of at least one displaced resident who moved out early was fully advanced. Callender TRO Decl. ¶7. Similarly, prior to approval of a $2400 "cap" on security deposits, plaintiff Veal was offered a deposit that exceeded the "cap." Thus, residents that moved early or sought to move early were treated differently than residents that have awaited notice of HUD's decision on the Application.

Notice Of Motion And Memorandum Of Points Of Authorities In Support Of
Plaintiffs' Motion For Temporary Restraining Order And Order To Show Cause Re Preliminary Injunction

-11-

Case No. C-07-05794MHP

As to security deposits, DHA acknowledges in its Application that "it is typical for landlords to charge" and state law permits security deposits of up to "two months' rent." *Id*. at 151. Based on *two times* the average fair market rent for a 1-bedroom unit in the Oakland-Fremont area, DHA budgeted $2500 per unit for security deposits –*in its Application*. *Id*.[11] In its relocation plan, it limits security deposits to only *one month's rent,* "caps" them at $2400 (Greif TRO Decl. ¶12, Ex. 6 at 166),[12] and has refused to pay even that. *See* Gretta Evans PI Decl., DE 19, ¶18 [offered only $2400 of $2500 security deposit]; Gretta Evans Supp. PI Decl., DE ¶¶10, 11, 16 [no reimbursement of deposit]; Anderson TRO Decl., ¶9 [only $2000 of $3000 deposit paid]; *see also* Smith TRO Decl. ¶11 [advanced security deposit not yet reimbursed].

With respect to credit check fees, DHA certified to HUD that landlords may charge credit check fees of up to $75 *per unit*. Greif PI Decl., DE 12, ¶4, Ex. 3 at 151. Apparently assuming that displaced residents would be fortunate enough to secure the first unit for which they apply, defendants "capped" these fees at $75 *per displaced household*. *Id*.; *see also* Greif TRO Decl., ¶12, Ex. 6 at 166. In a tight rental market, residents have not been so fortunate. Ms. Anderson is out-of-pocket approximately $350 in credit check fees for a series of prospective homes that HACA refused to approve. Anderson TRO Decl. ¶¶7, 9; *see also* Gretta Evans PI Decl., DE 19, ¶18; Evans Supp. PI Decl., DE 36, ¶¶10, 16 [OPC has not reimbursed even $75 of $90 credit check fee]; Veal TRO Decl., ¶¶25, 26 [$100 unreimbursed credit check fee for unit she did not secure]; *see also* McQuarters TRO Decl., ¶¶10, 12.

Finally, DHA certified to HUD that it would provide rental assistance payments as necessary to augment Section 8 vouchers. Greif PI Decl. DE 12, ¶4, Ex. 3 at 151. Its relocation plan also provides for rental assistance payments for "over-income" households that are ineligible

---

[11] HAD DHA based its budget on HACA's jurisdiction and fair market rents, security deposits for 2-bedroom homes in plaintiffs' preferred locational areas would likely be closer to $3000. *See* Greif TRO Decl. ¶12, Ex. 6 at 168 [HACA fair market rents].

[12] Arroyo Vista consists of 32 3-bedroom units and 24 4-bedroom units. Greif PI Decl., DE 12, ¶4, Ex. 3 at 135. HACA's fair market rent levels for 3 and 4-bedroom units in Dublin/Pleasanton are $2016 and $2496, respectively. Greif TRO Decl. ¶12, Ex. 6 at 168. Thus, security deposits for larger units would likely run between $4000 and $5000.

Notice Of Motion And Memorandum Of Points Of Authorities In Support Of
Plaintiffs' Motion For Temporary Restraining Order And Order To Show Cause Re Preliminary Injunction

-12-

Case No. C-07-05794MHP

for Section 8 assistance.   Greif TRO Decl. ¶12, Ex. 6 at 169-170.  Contrary to its certification and plan, and unlike other displaced persons who received both Section 8 and rental assistance payments (Anderson TRO Decl. ¶10), Gretta Evans who was "over-income" for Section 8 assistance in Stanislaus County, was never even offered a rental assistance payment.  Gretta Evans Supp. Decl., DE 36, ¶16.  As a result, she is paying a $300 per month rent increase without any relocation assistance.  *Id*.

### 2.  Defendants have failed to offer or provide comparable housing.

Comparable housing is *the most critical* relocation benefit for persons that have been or will be displaced, and particularly for extremely low income tenants and persons with disabilities if homelessness is to be avoided.  By circumventing the notice and relocation assistance provisions, defendants have not even *informed* most residents of their right to comparable housing as required by 42 U.S.C. §1437p(a)(4)(A)(iii), much less provided it.

Comparable housing is housing that meets housing quality standards, is located in an area that is generally not less desirable than the location of the displaced person's housing, and may include tenant-based assistance (Section 8 vouchers) or other subsidized housing. 42 U.S.C. §1437p(a)(4)(A)(iii)(I)-(III); *see also* 24 C.F.R. §970.21(e).  Many residents have expressed strong desires and needs -- based on long-term community ties, disabilities, jobs, child care, and the like -- to remain in Dublin or neighboring jurisdictions such as Pleasanton.[13]  Little to no effort has been made to meet those needs.[14]  At best, residents have been given referral lists -- with minimal referrals to Dublin-Pleasanton despite displacement of an Arroyo Vista population of 437 individuals in a tight

---

[13] *See* David Arroyo  PI Decl., DE 13, ¶6; Brown PI Decl., DE 14, ¶4; Costello PI Decl., DE 16, ¶4-7; Carolyn Evans PI Decl., DE 15, ¶¶9-14; Gretta Evans PI Decl., DE 19, ¶10; Keyes PI Decl., DE 20, ¶¶6-8; Sanders PI Decl., DE 18, ¶3-8; Veal PI Decl., DE 17,  ¶3, 19; *see also* Amador TRO Decl. ¶¶3, 5; Callender TRO Decl. ¶¶4, 5; DeRamous TRO Decl. ¶4; Hill TRO Decl. ¶9; McQuarters TRO Decl. ¶¶10, 13; Rigney TRO Decl., ¶¶3; Smith TRO Decl. ¶11;  Tucker TRO Decl. ¶5.

[14] Brown PI Decl., DE 14, ¶¶6-7; Costello PI Decl., DE 16, ¶8; Keyes PI Decl., DE 20, ¶14; Veal PI Decl., DE 17,  ¶¶4-18, 20, Ex. 1; *see also* Amador TRO Decl.*,* ¶¶5, 6, 18, 13*;* Callender TRO Decl. ¶¶5; De Ramous TRO Decl. ¶¶5, 6; Tucker TRO Decl. ¶¶6; Veal TRO Decl. ¶¶22-25, 34.

Notice Of Motion And Memorandum Of Points Of Authorities In Support Of
Plaintiffs' Motion For Temporary Restraining Order And Order To Show Cause Re Preliminary Injunction

-13-

Case No. C-07-05794MHP

rental market.  *See, e.g.* Veal PI Decl., DE 17, ¶9, Ex. 1; *see also* Keyes Decl. ¶14, Exs. 1, 2.[15]  Where, as here, Section 8 vouchers are used to provide comparable housing, an "offer of comparable housing" is only fulfilled upon relocation of the family *into* such housing.  42 U.S.C. §1437p(a)(4)(A)(iii)(III)(aa).  Referrals alone utterly fail to comply with §1437p(a)(4).

Comparable housing also must be offered to residents on a nondiscriminatory basis in compliance with federal and state laws, and for persons with disabilities that are displaced from an accessible unit, the comparable housing should be accessible.  24 C.F.R. §970.21(a).  When plaintiff Veal asked for help from OPC after experiencing discrimination during her search, she was told OPC would only make referrals.  *See* Veal PI Decl., DE 17, ¶7.  Despite Mr. Costello's enhanced need to locate an affordable and accessible home to replace his fully accessible home of over 20 years, he was offered no help in locating a replacement home.  Instead he was told he would be "vacated" if he did not move in 2008.  Costello PI Decl., DE 16, 2-9, 11.  When Ms. Keyes was told that her family would be down-sized from four to two bedrooms, her request for a reasonable accommodation for a 3-bedroom based on the disabilities of her two children was disregarded.  Keyes PI Decl., DE 20, ¶¶2-7, 14-17.[16]  And, as discussed above, Gretta Evans was displaced from Arroyo Vista without Section 8 assistance or even an offer of rental assistance, and suffers a $300 per month rent increase for a non-accessible home.  All have been unlawfully deprived of their right to comparable housing.

### 3. Defendants have failed to provide "necessary counseling".

A PHA also must provide "any necessary counseling" to residents that are to be displaced.  42 U.S.C. § 1437p(a)(4)(D).  DHA certified to HUD that it would provide 13 types of counseling services.  Greif PI Decl., DE 12, ¶4, Ex. 3 at 149.  Defendants have failed to provide a vast majority of those services.  They did not conduct in-depth interviews to determine resident needs, explain the

---

[15] The referral list given to Ms. Veal includes two listings in Dublin, one of which does not accept Section 8.  *Id*.  The referral list (Ex. 1) given to Ms. Keyes lists 8 "Section 8" units in Dublin-Pleasanton in October 2007.  She was not successful in locating a home in Dublin and expanded her search to Alameda County; OPC provided a list of three referrals, none in Dublin-Pleasanton area.  None of the declarants were successful in locating a home in Dublin.

[16] Yet, at least one resident that "left early" was permitted to use a 3-bedroom voucher to rent a 4-bedroom home in Pleasanton at a reduced rent.  Callender Decl. ¶ 8.

Notice Of Motion And Memorandum Of Points Of Authorities In Support Of
Plaintiffs' Motion For Temporary Restraining Order And Order To Show Cause Re Preliminary Injunction

-14-

Case No. C-07-05794MHP

relocation process or residents' rights. *See* fn. 14, *supra* at 14. They have not searched for and documented comparable units for each household or provided appropriate referrals to those units. Rather, residents have largely been given inadequate referral lists and left to locate their own comparable housing. *See* fn. 15, *supra* at 15. Defendants have not worked with potential landlords to encourage participation in the Section 8 program. *See, e.g.*, Veal PI Decl., DE 17, ¶7. Defendants have not prepared letters of eligibility for all households, determined the amount of assistance for which they are eligible, including moving payments, rent differential payment, or re-establishment payments. *See e.g.*, Brown PI Decl. ¶5-6; Costello PI Decl ¶8; *see also* Garcia TRO Decl. ¶5. And, defendants have not secured or processed – or in many cases even provided residents with – relocation claim forms (advance or final) to assist with their moves. Gretta Evans TRO Decl. ¶4; Anderson TRO Decl. ¶¶9, 11. Defendants' failure to provide such basic counseling services has caused many residents to conduct exhaustive, fruitless, and/or costly searches, and deprived them of benefits. *See* Gretta Evans Decl., DE 19, ¶¶8-15, 17-19; Veal Decl., DE 17, ¶¶4-18, 20, Exs. 1-6.

## II. PLAINTIFFS ARE LIKELY TO SUCCEED ON THEIR SECOND AND THIRD CLAIMS THAT DEFENDANTS HAVE DEPRIVED PLAINTIFFS OF A RELOCATION PLAN, RELOCATION NOTICES, SERVICES, AND BENEFITS IN VIOLATION OF THE CRA.

State law also prohibits the displacement of Arroyo Vista residents prior to the lawful adoption of a relocation plan, the issuance of a series of notices, and the provision of advisory services and relocation benefits that comply with the CRA Act. DHA adopted a deficient relocation plan on June 3, 2008, but defendants City and HACA have yet to approve or adopt that or any other plan.[17] Defendants also have failed to provide the notices, advisory services and relocation benefits required by state law. The CRA Act expressly provides that a project that will result in displacement must cease where the public entity causing the displacement fails to fully comply with the CRA Act and Guidelines.

---

[17] DHA's adopted plan fails to comply with the CRA Act, and plaintiffs will seek by separate motion to amend the complaint to challenge the validity of DHA's plan.

Notice Of Motion And Memorandum Of Points Of Authorities In Support Of
Plaintiffs' Motion For Temporary Restraining Order And Order To Show Cause Re Preliminary Injunction

-15-

Case No. C-07-05794MHP

**A.    Defendants Have Violated State Law By Implementing A Project That Will Result In Residential Displacement Without *First* Lawfully Adopting A Relocation Assistance Plan.**

Defendants are unlawfully displacing residents without a relocation assistance plan having been approved by the legislative bodies of defendants City and HACA.  The CRA Act and the California Department of Housing and Community Development's ("HCD") Guidelines impose a planning process which public entities must follow when displacement is or will be caused by the displacing activities of, or on behalf of, a public entity.  Govt. C. §§ 7260 *et seq.*; 25 Cal. Code Reg. ("C.C.R.") §§6000 *et seq.*

The purposes of the CRA Act are to provide equitable treatment of all affected persons, minimize the adverse impact of displacement, and ensure that displaced persons do not suffer disproportionate hardship as a result of projects designed for the benefit of the public as a whole.  *See* Govt. C. §§7260.5.  California law thus provides that *no person shall be displaced* and no phase of *any* project that will result in displacement of any person *may proceed until* the public entities fulfill *all* of the obligations of the CRA Act.  Govt. C. §7260; 25 C.C.R. §6014.

While the CRA Act and Guidelines are similar in concept to §1437p, California imposes stringent obligations for "advance" planning, services, and benefits – all of which must occur well before *any* displacement can occur *or any phase* of a project can even begin.  Chief among its planning obligations is the relocation plan.  Under California law, the relocation plan is a comprehensive planning tool to assist the local legislative body in deciding whether the project that will result in displacement may go forward at all.  Thus, a public entity must prepare a relocation plan at the earliest stage of a project, and well before the commencement of *any* actions which will cause displacement.  Govt. C. §7261(a).  HCD's corresponding regulation requires preparation of the plan "[a]s soon as possible following the initiation of negotiations and *prior to proceeding with any phase of a project or other activity that will result in displacement* . . ." 25 C.C.R. § 6038; *see also* 25 C.C.R. §6010 (emphasis added).

Pursuant to the terms of the DDA executed July 17, 007 by the City, DHA and HACA, the Arroyo Vista Redevelopment Project clearly would and has resulted in displacement.  The City

Notice Of Motion And Memorandum Of Points Of Authorities In Support Of
Plaintiffs' Motion For Temporary Restraining Order And Order To Show Cause Re Preliminary Injunction

-16-

Case No. C-07-05794MHP

committed funds to relocate residents as part of its obligation under the DDA; HACA committed to provide 150 Section 8 vouchers to relocate the residents. Greif PI Decl, DE 12, ¶3, Ex. 2 at 50-51 (§§3.3, 3.4, 4.1, 4.2). At a minimum, then, the City and HACA were required to adopt a relocation plan as soon as possible after entering into the DDA and prior to displacing residents. The relocation plan is required to contain sufficient information to enable the legislative bodies of the displacing public entities to decide, based on the human and monetary costs of relocation, whether disposition should go forward at all. See 25 C.C.R. §6038.

The procedural requirements of the CRA Act and Guidelines ensure that all persons who will be displaced *and the community* will be given an opportunity and encouraged to "fully and meaningfully" participate in reviewing the plan and monitoring the relocation program. *See* 25 C.C.R. §6012 (emphasis added). Accordingly, a proposed plan must first be made available for comment to residents and others, and then submitted to the local legislative body for public review. If approved, a copy of the final plan also must be provided to HCD. 25 C.C.R. §6012, 6038.

Defendants City and DHA violated the CRA Act and regulations by failing to prepare, distribute or approve a plan at all, thus depriving the residents and their communities of any opportunity to participate in and review the plan, and their own legislative bodies of the *authority* to decide whether displacement of Arroyo Vista residents may proceed. Community participation and local government approval includes the communities of Dublin and the County of Alameda. Residents of those communities have an interest in the underlying purposes of the CRA Act, including the "economic and social well-being of their community." The Dublin community would have an interest in the Council's commitment of $1.5 million to relocate residents of its communities. Families on the County's waiting list for Section 8 vouchers would have an interest in the effect on HACA's waiting list of committing 150 vouchers to Arroyo Vista residents.[18]   HACA's Administrative Plan provides for priorities on its wait list, such as for persons with disabilities, persons over 62 years of age, and victims of domestic violence. Grief Supp. PI Decl., DE 37 ¶ 2, Ex. 13 at

---

[18] PHA's must select participants from their waiting lists in accordance with the admission policies of the PHA's Section 8 Program Administrative Plan. *See Ressler v. Pierce*, 692 F.2d 1212, 1218 (1982); *see also* 24 C.F.R. §982.204(a).

Notice Of Motion And Memorandum Of Points Of Authorities In Support Of
Plaintiffs' Motion For Temporary Restraining Order And Order To Show Cause Re Preliminary Injunction

-17-

Case No. C-07-05794MHP

303, §12.3.  It does not provide a preference for Arroyo Vista residents over others on the list.  *Id.*

Thus, members of the Dublin and County of Alameda communities must be given the opportunity for

public participation, and the City and HACA legislative bodies are required to approve and monitor

the City and HACA's roles in a project that causes displacement.

Defendants' failure to comply with planning and public participation requirements violates

the Act and undermines its fundamental purposes, and  the City and DHA must therefore be

prohibited from proceeding with *any phase of a project or other activity* which will result in the

displacement of any person *until* "[a] relocation plan meeting the requirements of section 6038 has

been prepared."  25 C.C.R. § 6010 (emphasis added).

### B.    Defendants Have Violated The CRA Act and Guidelines By Displacing Residents Without Requisite Notice, Services, and Relocation Benefits.

Defendants continue to displace Arroyo Vista residents without the relocation benefits

mandated by state law.  Under the CRA Act, a "displaced person" is entitled to an array of relocation

services.  *See Garcia v. Anthony*, 211 Cal.App.3d 467, 474 (1989).  Government Code §

7260(c)(1)(A)(ii) of the CRA Act defines a displaced person as:

> Any person who moves from real property, or who moves his or her personal property
> from real property . . . [a]s a direct result of the . . . the displacing activity as the public
> entity may prescribe under a program or project undertaken by a public entity, of real
> property on which the person is a residential tenant . . . if the public entity determines
> that the displacement is permanent.  (Emphasis added.)

*See also* 25 C.C.R. §6008(f).  In determining eligibility for relocation benefits, the "crucial issue" is the

"causal connection" between the displacing activity and the displacement which will result there from.

*Peter Kiewit Sons' Co. v. Richmond Redevelopment Agency* 178 Cal.App.3d 435, 444 (1986).  The

displacing activity here is the disposition of Arroyo Vista, pursuant to a DDA entered into by public

entities, which calls for and has resulted in residents moving and being pressured to move.

Accordingly, all residents that occupied Arroyo Vista at least as far back as July 2006 are

"displaced persons" within the meaning of the CRA Act, including any person who moved as the

result of inducement or encouragement by the public entity.  *See* 25 C.C.R. § 6034(a).  As such, they

were and are entitled to a host of *pre*-displacement advisory services.  They also must receive a series

Notice Of Motion And Memorandum Of Points Of Authorities In Support Of
Plaintiffs' Motion For Temporary Restraining Order And Order To Show Cause Re Preliminary Injunction

-18-

Case No. C-07-05794MHP

of notices containing specified information.  25 C.C.R. §§6038, 6040, 6046, 6086, 6154 (requiring notices related to relocation plans, an advisory program, benefits, comparable replacement housing; *notices must be translated into the language understood by the resident*).  No "displaced person" can be displaced, as they have been here, without the full measure of relocation benefits provided for under the CRA Act, including: comparable replacement housing as defined in 25 C.C.R. §6008(c); "last resort" housing where comparable housing is unavailable; reasonable moving expenses, including direct and other costs such as utility charges (25 C.C.R. §§6090, 6098); and losses of tangible personal property (25 C.C.R. §6092).

As discussed in Argument I.B.3, residents have not been offered adequate advisory services or assistance in locating a new home and comparable replacement housing as defined by state law, including a replacement housing payment of up to 42 months to ensure affordability of a replacement home.  Gretta Evans was denied a replacement housing payment altogether, and thus, was denied a comparable replacement unit.  Gretta Evans Decl., DE 19, ¶¶8-15, 17-19.  The replacement housing payment formula applied to plaintiff Veal was not based on the differential between her existing and replacement rent as required by state law, also resulting in denial of a comparable replacement unit.  Veal Decl., DE 17, ¶¶4-18, 20, Exs. 1-6. And no one was informed of all the moving expenses required by state law, or all of the relocation benefits required by federal law.  *See* Veal Decl. Ex. 2.

Any notices or relocation assistance offers that were issued prior to adoption of a plan are invalid because they were never authorized by an approved relocation plan.  The tail cannot wag the dog.  Because the residents could not measure any notices against an approved relocation plan, they could not and still cannot make informed decisions about whether, when, or where to move.

## III.    PLAINTIFFS ARE LIKELY TO PREVAIL ON THEIR FEDERAL AND STATE FAIR HOUSING CLAIMS

Defendants' unlawful actions to dispose of Arroyo Vista discriminate against African Americans, Latinos and families with children in violation of federal and state fair housing laws because the disposition has a pronounced disproportionate effect on members of those protected groups.  Persons residing in and eligible to reside in Arroyo Vista, persons on the waiting list for

Notice Of Motion And Memorandum Of Points Of Authorities In Support Of
Plaintiffs' Motion For Temporary Restraining Order And Order To Show Cause Re Preliminary Injunction

-19-

Case No. C-07-05794MHP

Arroyo Vista, and persons in the community eligible to live in Arroyo Vista are all disproportionately persons of color or families with children as compared with the general population in the surrounding community.  This disparate impact together with the illegality of the disposition violates both the federal Fair Housing Act, 42 U.S.C. § 3601 *et seq.*, and California's Fair Employment and Housing Act (FEHA), Cal. Govt. Code § 12955 *et seq.*

### A.  Defendants' Unlawful Actions Have a Discriminatory Impact on Persons of Color and Families with Children in Violation of the Fair Housing Act

A showing of discriminatory effect on protected classes establishes a prima facie case of illegal discrimination under the Fair Housing Act.  *See Keith v. Volpe*, 858 F.2d 467, 482 (9th Cir. 1988), *cert. denied*, 493 U.S. 813 (1989); *Pfaff v. Department of Hous. & Urban Dev.*, 88 F.3d 739, 745-46 (9th Cir. 1996).[19]  There are two types of discriminatory effect (or "discriminatory impact").  *Metropolitan Hous. Dev. Corp. v. Village of Arlington Heights*, 558 F.2d 1283, 1290 (7th Cir. 1977); *Keith v. Volpe*, 618 F. Supp. 1132, 1150-51 (C.D. Cal. 1985).  First, discriminatory effect is shown when an outwardly neutral policy or action produces a significantly *adverse or disproportionate impact* on a group of persons protected by the fair housing laws.  *Gamble v. City of Escondido*, 104 F.3d. 300, 306-07 (9th Cir. 1996); *Keith* at 1150-51.

Second, a plaintiff may establish *ultimate discriminatory effect* by demonstrating "the effect which the decision had on the community involved; if it perpetuates segregation and thereby prevents * * * association [with the protected class]...."  *Keith* at 1150-51, quoting *Arlington Heights.*[20]  Either type of discrimination gives rise to a violation of the Fair Housing Act.  *See Keith v. Volpe*, 858 F.2d 467 at 484.  Here, plaintiffs establish both adverse and ultimate effect.

### 1.    Defendants' Actions Have an Adverse and Disproportionate Impact.

---

[19]  "Effect, not motivation, is the touchstone because thoughtless housing practice can be as unfair to minority rights as a willful scheme."  *Smith v. Anchor Bldg.. Corp.*, 536 F.2d 231, 233 (8th Cir. 1976).

[20] As the Supreme Court has recognized, conduct that has the necessary and foreseeable consequence of perpetuating discrimination can be as deleterious as purposeful discrimination in frustrating the national goals behind the Fair Housing Act.  *Trafficante v. Metropolitan Life Ins. Co.*, 409 U.S. 205, 211 (1972).

Notice Of Motion And Memorandum Of Points Of Authorities In Support Of
Plaintiffs' Motion For Temporary Restraining Order And Order To Show Cause Re Preliminary Injunction

-20-

Case No. C-07-05794MHP

Defendants' actions to dispose of Arroyo Vista have a disparate impact on African Americans and Latino/Hispanics.   In *Keith*, the City of Hawthorne refused to approve the development of replacement housing for low income residents displaced by the construction of a freeway.  618 F.Supp. at 1148-49.  The district court held that a prima facie showing of adverse impact was present because a majority of the displaced low income residents were black and Latino.  *Id.*  Here, as of September 30, 2007, *after* defendants began their disposition actions, 28% of Arroyo Vista residents were African American and 21% were Latino/Hispanic.  Greif TRO Decl. ¶20, Ex. 14 at 363.  While not quite a majority of the residents, when compared to the population of Dublin, the effect of disposition of Arroyo Vista on African Americans and Latinos is vastly disproportionate to the effect on whites.   African Americans are only 10% and Latino/Hispanics are only 13.5% of the population of Dublin.  Greif TRO Decl. ¶21, Ex. 15 at 367-68.  Accordingly, the disposition has twice the adverse impact on African Americans and 1.5 times the impact on Latino/Hispanics. *See Keith*, 858 F.2d at 483-484.

*Charleston Housing Authority v. USDA*, 419 F.3d 729 (8th Cir. 2005) considered a challenge to the Charleston, Missouri Housing Authority's (CHA) effort to vacate and demolish a 50 unit affordable housing.  The district court had issued a judgment enjoining the disposition based on evidence demonstrating a discriminatory effect on African Americans.  *Owens v. Charleston Hous. Auth.*, 336 F.Supp. 2d 934, 943 (E.D. Mo. 2004).  The Eighth Circuit affirmed, finding that CHA's plan had a disparate impact on minorities.  419  F.3d. at 742.  The plaintiffs produced evidence, as do plaintiffs here, that a disproportionate number of the residents were minorities.  They also demonstrated that a disproportionate number of the households eligible to live in the complex were African-American (*Id.* at 741)[21], just as plaintiffs here have shown that a disproportionate number of households on the DHA waiting list are African American (48% vs. 30.7% non-minority).  Greif TRO Decl. ¶22, Ex. 16 at 376.

---

[21] "The Tenant's proof established a disproportionate impact upon the minority class members whether we examine the relevant waiting list population, the income-eligible population, or the actual Charleston Apartment Tenants."  419  F.3d. at 741.

Notice Of Motion And Memorandum Of Points Of Authorities In Support Of
Plaintiffs' Motion For Temporary Restraining Order And Order To Show Cause Re Preliminary Injunction

-21-

Case No. C-07-05794MHP

Defendants' actions also have a disparate impact on familial status. As of September 30, 2007, 62% of Arroyo Vista households were families with minor children. (Greif TRO Decl. ¶20, Ex. 14 at ___), compared to Dublin as a whole where only 35.4% of the households included minor children. Greif TRO Decl. ¶21, Ex. 15 at 368. In addition, 89.1% of families on DHA's waiting list have children. *Id.* at ¶22, Ex. 16 at 376.

### 2. Defendants' Actions Perpetuate Segregation.

The district court in *Keith v. Volpe* found Hawthorne's refusal to approve replacement housing for persons displaced by a freeway also created the second type of discriminatory effect because the ultimate effect was to prevent low-income minority displacees from continuing to reside in the city. *618 F. Supp.* at 1148-49, 1151. *Id.* The same is true in the instant matter. Arroyo Vista lies in Census Tract 4502 in Dublin where the total African American population is only *4.2%* as compared to 28% of the residents of Arroyo Vista. Greif TRO Decl. ¶23, Ex. 17 at 412; Greif TRO Decl. ¶20, Ex. 14 at 363. And the total Hispanic/Latino Census tract population is 11.5% as compared to 21% of the residents in the complex. Greif TRO Decl. ¶23, Ex. 17 at 413; Greif TRO Decl. ¶20, Ex. 14 at 363. Indeed, Gretta Evans has already moved to Patterson, California. Gretta Evans PI Decl., DE 15, ¶¶2, 19.

### 3. No Governmental Interest Justifies Defendants' Illegal Conduct.

Once a plaintiff has shown a discriminatory effect, the burden shifts to the defendant to demonstrate a non-discriminatory basis for its actions. *Budnick v. Town of Carefree,* 518 F.3d 1109, 1118 (9th Cir. 2008). In this case, Defendants' actions violate federal and state laws. Consequently, by definition there is no governmental interest, compelling or otherwise, that can license Defendants' actions. *Metropolitan Housing Development*, 558 F.2d 1283 at 1293.

### B. Defendants' Unlawful Actions Have a Discriminatory Impact on Persons of Color and Families with Children in Violation of California's Fair Employment and Housing Act (FEHA)

FEHA protections are at least as broad and may afford no fewer rights and remedies as the federal Fair Housing Act. Cal. Gov't. Code § 12955.6; *Konig v. Fair Employment & Housing Com.,* 28 Cal.4th 743, 749. Section 12955 of FEHA declares that it is illegal to make housing

Notice Of Motion And Memorandum Of Points Of Authorities In Support Of
Plaintiffs' Motion For Temporary Restraining Order And Order To Show Cause Re Preliminary Injunction

-22-

Case No. C-07-05794MHP

unavailable, including through land use decisions, because of race, national origin or familial status.  See §12955, subd. (k) and subd. (l).

A violation of the FEHA also can be established by demonstrating a discriminatory effect on a protected class.  Cal. Govt. Code § 12955.8(b); *Sisemore v. Master Financial, Inc.*, 151 Cal.App.4[th] 1386, 1418-20 (2007) (recognizing that federal case law on disparate impact is applicable to FEHA).  Accordingly, because plaintiffs establish a violation of the federal Fair Housing Act prohibition of disability discrimination, they also establish a violation of FEHA's protections of African American, Latinos and families.

## III.    PLAINTIFFS WILL CONTINUE TO SUFFER IRREPARABLE INJURY UNLESS DEFENDANTS ARE RESTRAINED BY THIS COURT, AND THE BALANCE OF HARDSHIP TIPS DECIDEDLY IN PLAINTIFFS' FAVOR.

### A.    Plaintiffs Will Be Irreparably Harmed Unless Defendants are Enjoined from Depriving Residents of Their Rights to Notice and Relocation Assistance and from Unlawfully Implementing the DDA.

Defendants' continued relocation and threatened relocation of residents without a plan, notice and relocation assistance, constitutes unlawful displacement and causes irreparable harm -- the loss of plaintiffs' deeply affordable homes and a community in which many of them have lived for decades – all when they may *never* have to move if HUD disapproves the Application.[22]  Undeterred by this Court's Order or plaintiffs' request that defendants cease their unlawful relocation activities, DHA authorized "mandatory displacement" to commence immediately if HUD approves the Application and "voluntary" displacement to *continue* pending such approval.

The loss of one's home is unquestionably irreparable injury.  *See e.g.*, *Brown v. Artery Organization*, 654 F.Supp. 1106, 1118-1119 (D.D.C. 1987); *Johnson v. United States Department of Agriculture*, 734 F.2d 774 (11th Cir. 1984).  The threatened loss of a public housing subsidy and

---

[22] Indeed, HUD is required to "disapprove" an application where a PHA's certification that it "will" provide the requisite 90-day notice and relocation assistance is inconsistent with the data available to HUD.  §1437p(b)(1).  *Id.*  HUD may well disapprove DHA's Application as plaintiffs have requested. *See* Greif TRO Decl. ¶¶8, 14, Exs. 2, 8.

Notice Of Motion And Memorandum Of Points Of Authorities In Support Of
Plaintiffs' Motion For Temporary Restraining Order And Order To Show Cause Re Preliminary Injunction

-23-

Case No. C-07-05794MHP

deprivation of relocation benefits poses irreparable harm: protracted homelessness and even being forced to move to another community. *See Mitchell v. U.S. Dept. of Housing & Urban Development*, 569 F.Supp. 701, 704-705 (N.D.Cal. 1983). Finally, the attendant psychological injury of being forced from their homes and the community where many have lived for decades is irreparable. *See e.g.*, *Chalk v. US. District Court*, 840 F.2d 701, 709 (9th Cir. 1988) and cases cited therein. Furthermore, irreparable injury is generally presumed from the fact of discrimination in violation of the Fair Housing Act. *See Silver Sage Partners, Ltd. v. City of Desert Hot Springs*, 251 F.3d 814, 827 (9th Cir. 2001).

AVTA's mission to protect Arroyo Vista residents against these harms has been frustrated by defendants' unlawful activities. Supp. Keyes Decl., DE 20, ¶¶5-9. Without a preliminary injunction, plaintiffs, AVTA, and the community are deprived of the benefit of careful analyses of the Application by HUD. Money cannot repair this damage, and the impact will only increase in light of DHA's refusal to stop the displacements.

The Court must also consider the public interest when assessing the hardships. *Department of Parks & Rec. for the State of California v. Bazaar Del Mundo, Inc.*, 448 F.3d 1118, 1124 (9th Cir. 2006). In this regard, disposition and demolition of Arroyo Vista will destroy the *only* public housing in Dublin, and the loss of housing poses the greatest harm in communities which do not have a significant amount of low-income housing. *Mitchell v. U.S. Dept of Housing & Urban Development*, 569 F.Supp. at 704-705. Contrary to defendants' claims that injunctive relief will "harm" plaintiffs' neighbors by depriving them of relocation assistance (*see* Opp. To Motion for Preliminary Injunction, DE 26 at 25), a preliminary injunction will ensure that *if* Arroyo Vista residents ultimately have to move, they will be afforded all of the relocation protections the law requires.

### B.    The Balance of Hardships Tips Sharply in Plaintiffs' Favor

The hardship to plaintiffs far outweighs any hardship to defendants from the order requested in plaintiffs' motion. Any delay in disposing of Arroyo Vista is no hardship because defendants have no authority to dispose of it. "[I]t is a far more severe hardship for someone to be displaced from his or her home without assistance and without the certainty of knowing where to move." *Price v. City of*

Notice Of Motion And Memorandum Of Points Of Authorities In Support Of
Plaintiffs' Motion For Temporary Restraining Order And Order To Show Cause Re Preliminary Injunction

-24-

Case No. C-07-05794MHP

*Stockton*, 390 F.3d at 1105, 1116 (9th Cir. 2004) [affirming preliminary injunction requiring City to provide relocation assistance to all persons previously displaced].    Defendants' supposition that restraining their illegal relocation efforts would harm residents who they have enticed to seek premature relocation assistance improperly asks this Court to give weight to their illegal conduct. *See* Opp. To Motion for Preliminary Injunction, DE 26 at 25.

V.    **THE COURT SHOULD ISSUE THE PRELIMINARY INJUNCTION WITHOUT BOND.**

This Court has the discretion to issue a preliminary injunction without requiring plaintiffs to post bond. *California ex rel. Van de Kamp v. Tahoe Regional Planning Agency*, 766 F.2d 998 (9th Cir. 1985).    Exercise of that discretion is particularly appropriate where, as here, an action is brought by indigent plaintiffs. *Orantes-Hernandez v. Smith*, 541 F.Supp. 351 (C.D. Cal. 1982).    The individual plaintiffs are all public housing residents, many of whom receive public assistance, and are unable to post even nominal security.    ATVA is an unincorporated association of residents and former residents without resources. *See* Supp. Keyes Decl. ¶3 (DE 20).    Alternatively, only a nominal bond should be imposed as in *Price v. City of Stockton*, 390 F.3d 1105, 1118 (9th Cir. 2004).

<u>CONCLUSION</u>

Plaintiffs respectfully request that the Court issue a temporary restraining order and preliminary injunction providing the relief requested in the accompanying proposed order.

Dated:  June 17, 2008                    Respectfully Submitted:


                    By: <u>/s/ Lisa S. Greif</u>
                         BAY AREA LEGAL AID
                         Lisa S. Greif
                         Phillip R. Morgan
                         Naomi Young

                         CALIFORNIA AFFORDABLE HOUSING
                         LAW PROJECT OF THE PUBLIC INTEREST
                         LAW PROJECT
                         Deborah Collins
                         Michael Rawson
                         Craig Castellanet

Notice Of Motion And Memorandum Of Points Of Authorities In Support Of
Plaintiffs' Motion For Temporary Restraining Order And Order To Show Cause Re Preliminary Injunction

-25-

Case No. C-07-05794MHP