1  BAY AREA LEGAL AID
   LISA S. GREIF (State Bar No. 214537)
2  NAOMI YOUNG (State Bar No. 105041)
   PHILLIP R. MORGAN (State Bar No. 99979)
3  405 14th Street, 11th Floor
   Oakland, California 94612
4  Telephone: 510-663-4744
   Facsimile: 510-663-4740
5  Email: lgreif@baylegal.org
          nyoung@baylegal.org
6         pmorgan@baylegal.org

7  THE CALIFORNIA AFFORDABLE HOUSING LAW
   PROJECT OF THE PUBLIC INTEREST LAW PROJECT
8  DEBORAH COLLINS (State Bar No. 154532)
   MICHAEL RAWSON (State Bar No. 95868)
9  CRAIG CASTELLANET (State Bar No. 176054)
   449 15th Street, Suite 301
10 Oakland, California 94612
   Telephone: 510-891-9794, ext. 156
11 Facsimile: 510-891-9727
   Email: dcollins@pilpca.org
12        mrawson@pilpca.org
          ccastellanet@pilpca.org
13
   Attorneys for Petitioners ARROYO VISTA TENANTS ASSOCIATION, et al.    **E-FILED**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARROYO VISTA TENANTS ASSOCIATION, RHENAE KEYES, ANDRES ARROYO, DARLENE BROWN, ELISE VEAL<br><br>          Petitioner/Plaintiff,<br><br>     vs.<br><br>CITY OF DUBLIN; DUBLIN HOUSING AUTHORITY; HOUSING AUTHORITY OF ALAMEDA COUNTY; and DOES 1 through 20, inclusive,<br>          Respondents.<br><br>SCS DEVELOPMENT COMPANY, dba Citation Homes Central, a California Corporation; EDEN HOUSING, INC., a California Nonprofit, and DOES 21 through 50,<br><br>          Real Parties in Interest. | CASE NO. C 07-05794 MHP<br><br>DECLARATION OF DARLYN ANDERSON IN SUPPORT OF PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION<br><br>Temporary Restraining Order<br>Hearing Date:<br>Time:<br><br>Preliminary Injunction<br>Hearing Date:<br>Time:<br><br>Courtroom: 15, 18th Floor<br>Judge: Honorable Marilyn Hall Patel |

Declaration of Darlyn Anderson in Support of Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction

CASE NO. C 07-05794 MHP

I, Darlyn Anderson, hereby declare:

1. I submit this declaration in support of Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction, and if called as a witness in this matter, I could and would testify competently to the facts set forth herein.

2. I was a lawful tenant and lived at Arroyo Vista in Dublin, California in Unit No. 8 for 7 years. I moved out on December 10, 2007. While I lived at Arroyo Vista I developed significant disabilities that have impacted my health and made it difficult for me to get around. I often use a scooter or walk with a cane if my energy is good enough for that. I live on a fixed income of Social Security Disability. I currently live at 265 Myers Court, San Leandro, California.

3. I first heard about Arroyo Vista being closed down in the spring of 2007 when my neighbors starting talking about it and telling me that we would all have to move out. I also read the newsletters Dublin Housing Authority (DHA) sent all the tenants which told me that everyone would get a voucher to move out by November 2008.

4. All the talk of moving made me nervous, so I began calling the office and speaking to either Margie or Carol. During summer of 2007 I called the DHA office and spoke to Carol to ask what was happening and Carol told me that the sale was approved and that they were tearing Arroyo Vista down. I was told by either Carol or Margie that I should hurry up and apply at the Grove in Dublin because only so many apartments were available. On this advice I went and looked at the Grove but I was told they were not accepting Section 8 at that time.

5. I went to a meeting held at City Hall, which I believe was in June 2007, where people from Overland, Pacific and Cutler (OPC) and the Housing Authority of the County of Alameda (HACA) told us about offering assistance with moving. They said that tenants would get a rental truck paid for and moving expenses reimbursed according to the number of rooms we were moving. They also mentioned that the security deposit and first or last months rent would be paid and that we would be reimbursed for the credit checks.

6. I met with Mary Rizzo-Shuman of HACA in August or September for a voucher briefing. I was told by Mary Rizzo-Shuman that I needed to put in 30-day notice to move and that if I wanted more time to move I would have to ask for it. I asked several times for extra time

because HACA rejected the first couple of apartments I tried to rent even though they were really nice.

7. A friend of mine began driving me around as I looked for apartments. I found a couple of apartments, but HACA refused to approve them because they were too expensive. I began to get really nervous because I thought I would never find a place to move to and other tenants around me were moving out. This was all very frustrating because each time I found a place there was a problem and I had to start back at square one. At one point I was even hospitalized because the stress of trying to find something in such a hurry gave me chest pains. My doctor said I was under too much pressure and that it was affecting my heart.

8. In the end I don't think I got all the money that was owed to me. John Morris of OPC was the person I worked with. After HACA had rejected the first couple of apartments I found, I called John Morris because I could not continue to look and not find something that would be acceptable to me and HACA because my health was suffering with all the uncertainty. Mr. Morris gave me a list of referrals and then he told me that he would tell HACA to approve the latest apartment I had found so that I could move.

9. This whole process was difficult for me because I feel that I was told one thing in the beginning and then when I actually moved I was told and got something different. While I was supplied by DHA and OPC with reimbursement forms for my moving expenses, I did not get reimbursed the full amount of my moving expenses. Specifically, I did not get reimbursement for the full security deposit I paid on my current apartment. The landlord wanted $3000 because my credit score was low. I asked John Morris if they would cover the entire deposit and he said no that was too much. In the end OPC paid me $2000 and I borrowed the rest, $1000, from a friend. Also, even though I found several apartments and had to do credit checks for each one I only got a total of about $70 reimbursed for credit checks and had to pay the others out of my own pocket. The total cost of the credit checks was approximately $350-$420. OPC did not pay for the rental of the moving truck nor did they pay for the packing expenses. I paid for the packing myself because I did not want anyone I did not know moving my things. On or about February 12, 2008 I received a letter from DHA telling me that a Relocation Plan was prepared

by Overland Pacific and Cutler (OPC) and that I could review a copy or get it on-line. I did not receive a copy of the Plan itself.

10. I am currently paying $221 per month in rent. This is an increase from my rent of $190 at Arroyo Vista. Further, I am responsible for paying the water, gas, and garbage bills at my new home. I was not responsible for these bills when I lived at Arroyo Vista. DHA is providing me with quarterly replacement housing payments of $800 to compensate for the additional monthly costs associated with my relocation. These payments will expire after 42 months, however. At that time, I will have to cover the additional moving and other relocation costs on my own. I have returned to school in an attempt to gain skills that will make me competitive for a job that will allow me to pay for these additional costs in the future.

11. On or about June 2, 2008 I spoke with Lisa Greif of Bay Area Legal Aid, counsel for the Arroyo Vista Tenants Association. Ms. Greif told me that DHA also sent out a letter to residents dated April 22, 2008 announcing a series of meetings it would hold in May 2008 with residents to answer questions about the draft Relocation Plan. I told her that I never received this April 22nd letter or any other letter after the one I got in February. I never received a copy of the draft Relocation Plan from DHA.

12. I understand from counsel for the Arroyo Vista Tenants Association that DHA approved the draft Relocation Plan at a public hearing on June 3, 2008. I never received a notice from DHA or OPC telling me that there would be a second public hearing to adopt a Relocation Plan after the one on April 15, 2008, and the letter I received in February did not tell me the time or where the April 15th meeting would be held.

13. This was an extremely frustrating and stressful time since I thought that I had to move as soon as possible. Margie who worked in the office at Arroyo Vista kept asking me when I was moving and if I had found a place. Everywhere I looked people were moving and it felt like I had to get out immediately because if I did not then the housing authority would kick me out or move me someplace that would be awful.

14. Even though my new location is acceptable for me because I am closer to family, I feel I was forced to move in a hurry and under such stress. The whole experience was bad for my

1  health and I hated feeling pressured to move out of Arroyo Vista, especially since I later learned
2  we did not have to move right away.
3
4  I declare under penalty of perjury that the foregoing is true and correct and that this
5  declaration was executed at _____Dublin_____, California on ____June 11, 2008____.
6
7
8                                           /s/ Daryln Anderson
                                            Darlyn Anderson
9
10 I hereby attest that I have on file all holograph signatures for any signatures indicated by
11 a "conformed" signature (/s/) within this efiled document.
12 Dated: June 11, 2008        /s/ Lisa S. Greif_____
13                                            Lisa S. Greif
                                             Attorney for Plaintiffs
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28