Greif Declaration – Index of Exhibits

| Exhibit # | Document Description | Bates Number |
|---|---|---|
| 1 | December 18, 2007 Letter from Bay Area Legal Aid to Dublin City Council | 1 |
| 2 | January 30, 2008 Letter from Bay Area Legal Aid/California Affordable Housing Law Project to HUD | 6 |
| 3 | January 2008 Draft Relocation Plan (Excerpt Without Attachments) | 13 |
| 4 | March 14, 2008 Bay Area Legal Aid/California Affordable Housing Law Project Comments to Relocation Plan (Excerpt Without Attachments) | 103 |
| 5 | April 8, 2008 Goldfarb & Lipman Letter Responding to March 14, 2008 Comments from Bay Area Legal Aid | 127 |
| 6 | April 15, 2008 DHA Commission Agenda Packet (Excerpt) | 138 |
| 7 | May 23, 2008 City of Dublin Public Hearing Notice Continuing the Hearing on the FONSI | 299 |
| 8 | May 27, 2008 Letter from Bay Area Legal Aid/California Affordable Housing Law Project to HUD (Excerpt Without Attachments) | 301 |
| 9 | May 28, 2008 Notice of FONSI and Notice of Intent to Request Approval of Property Disposition from City of Dublin | 312 |
| 10 | June 3, 2008 DHA Commission Agenda Packet | 314 |
| 11 | June 3, 2008 Letter from Bay Area Legal Aid/California Affordable Housing Law Project to DHA Commission | 334 |
| 12 | June 3, 2008 Relocation Plan Comment Letters from Residents to DHA Commission | 346 |
| 13 | June 3, 2008 City Council Agenda Statement Re: Environmental Assesment/FONSI (Excerpt) | 351 |
| 14 | HUD Resident Characteristics Report, 9/07 | 359 |
| 15 | U.S. Census Information: Profile of General Demographic Characteristics, City of Dublin | 366 |
| 16 | DHA 5 Year and Annual Plan, 2007 | 369 |
| 17 | U.S. Census Information: Profile of General Demographic Characteristics, Census Tract 4502 | 411 |

DECLARATION OF LISA S. GREIF
IN SUPPORT OF PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER
AND PRELIMINARY INJUNCTION

EXHIBIT 1

0001

Ramón P. Arias
Executive Director



# BAY AREA LEGAL AID

### WORKING TOGETHER FOR JUSTICE

December 18, 2007

VIA FACSIMILE (925) 833-6651

Carolyn Parkinson
City Clerk
City of Dublin
100 Civic Plaza
Dublin, CA 94568

Re:     City Council Meeting: December 18, 2007
        Agenda Item 4.9: Predevelopment Loan to Eden Housing, Inc. for the
        Arroyo Vista Project

Dear Ms. Parkinson,

    Attached is a letter we would like distributed to all members of the City Council at the meeting scheduled for tonight. If you have any questions, please feel free to call me at 510-663-4744, ext. 5211. Thank you in advance for your attention to this matter.

Sincerely,

Lisa Greif
Staff Attorney

Alameda County Regional Office
405 14th Street, 11th Floor
Oakland, CA 94612

Phone: 510.663.4744
Toll Free: 800.551.5554
Fax: 510.663.4740

www.baylegal.org

LSC

Serving the counties of Alameda, Contra Costa, Marin, Napa, San Francisco, San Mateo, and Santa Clara



Ramón P. Arias
Executive Director

**BAY AREA LEGAL AID**

WORKING TOGETHER FOR JUSTICE

December 18, 2007

VIA FACSIMILE (925) 833-6651

Mayor Janet Lockhart
Members of the Dublin City Council
City Clerk
City of Dublin
100 Civic Plaza
Dublin, CA 94568

> Re:    City Council Meeting: December 18, 2007
>        Agenda Item 4.9: Predevelopment Loan to Eden Housing, Inc. for the Arroyo Vista
>        Project

Dear Mayor Lockhart, Members of the City Council, and City Clerk:

We represent Rhenae Keyes, Andres Arroyo, Darlene Brown and Elise Veal, low-income tenants who currently reside in the Arroyo Vista public housing development operated by the Dublin Housing Authority (DHA). We also represent the Arroyo Vista Tenants Association. On behalf of our clients, we urge the City Council to deny approval of the proposed Predevelopment Loan to Eden Housing, Inc. of $325,000 in connection with the Arroyo Vista Project.

As you know, Arroyo Vista is a federally-subsidized public housing development operated by the Dublin Housing Authority that may not be lawfully disposed of or demolished without prior approval by the U.S. Department of Housing and Urban Development (HUD). 42 U.S.C. §1437p; 24 C.F.R. §§970 *et seq.* DHA submitted an incomplete disposition application to HUD in August 2007. HUD has not approved that application. Moreover, HUD cannot approve a disposition application where the applicant fails to comply with the disposition statute and regulations. *See* 24 C.F.R. §970.4. The regulations expressly prohibit the acquisition, rehabilitation, conversion, lease, repair, and construction activities, *or the commitment of HUD or local funds to such activities,* until HUD approval is received. *Id.* Likewise, the regulations forbid any transaction on a disposition without prior written approval of HUD. 24 C.F.R. §970.7(a).

The proposed "Predevelopment Loan" to Eden Housing, Inc. amounts to an "advance" of a $1.5 million construction loan commitment the City made in approving the Development Agreement in July 2007. Our clients have initiated a lawsuit seeking to set aside that Development Agreement as premature and unlawful. Counsel for the housing authorities have argued, in essence, that the Development Agreement is not premature because it is "conditioned" on HUD approval. In other words, if HUD denies the application as our clients have

Alameda County Regional Office
405 14th Street, 11th Floor
Oakland, CA 94612

Phone: 510.663.4744
Toll Free: 800.551.5554
Fax: 510.663.4740

www.baylegal.org

December 18, 2007

urged, the City and housing authorities will have no obligation under the Development Agreement. Yet, the agenda item before you requires a loan advance of $325,000 to Eden Housing, Inc. – not as a construction loan -- but to pay for environmental review costs that were to be borne by the developers. If the HUD application for disposition is not approved as we have urged this loan would be "forgiven" by the City. Therefore, the City, rather than the developers, will bear the cost of the environmental review on a project that may not be built. For these reasons, if approved, this $325,000 "advance" conflicts with the terms of the Development Agreement, as well as the federal disposition statute and regulations.

For these reasons, we request that the Council reject staff's recommendation and deny the requested loan. In the event that the Council votes to approve the loan, we request that staff identify, during the public hearing, the source of funds that will be used for the $325,000 proposed "advance."

Finally, we respectfully request that the City Council reconsider disposition and demolition of Arroyo Vista. The demolition of 150 lower income homes and the displacement of its diverse population from Dublin is certainly not in the best interest of the residents. It also is not in the best interest of the City to eliminate critically needed affordable housing and ignore its obligations to affirmatively further fair housing opportunities in its community.

Sincerely,

BAY AREA LEGAL AID
Phillip Morgan
Lisa Greif
Naomi Young

THE CALIFORNIA AFFORDABLE HOUSING LAW
PROJECT OF THE PUBLIC INTEREST LAW PROJECT
Craig Castellanet
Deborah Collins
Mike Rawson

JOB STATUS REPORT

```
TIME : 12/18/2007 16:26
NAME : BAY AREA LEGAL AID
FAX# : 510-663-4740
TEL# :
```

| DATE,TIME | 12/18  16:25 |
| FAX NO./NAME | 919258336651 |
| DURATION | 00:00:59 |
| PAGE(S) | 04 |
| | COVER SHEET |
| RESULT | OK |
| MODE | STANDARD |
| | ECM |

405 14th Street, 11th Floor, Oakland, CA  94612
510-663-4744, Fax 510-663-4740

**BAY AREA
LEGAL AID**

# Fax

| **To:** | Carolyn Parkinson | **From:** | Lisa S. Greif |
| **Of:** | City Clerk of the City of Dublin | **Of:** | Bay Area Legal Aid |
| **Fax:** | (925) 833-6651 | **Phone:** | 510-250-5211 (direct line) |
| **Phone:** | (925) 833-6650 | **Pages:** | 4 (including cover) |
| **Re:** | City Council Meeting:  December 18, 2007  Agenda Item 4.9:  Predevelopment Loan to Eden Housing, Inc. for the Arroyo Vista Project | **Date:** | December 18, 2007 |

☐ Urgent      ☐ For Review      ☐ Please Comment      ☐ Please Reply      ☐ Please Recycle

PLEASE DO ONE OR MORE OF THE FOLLOWING:

**_X__** Please deliver immediately to the Recipient.

**___** Please request the Recipient to telephone the Sender immediately upon receipt and review.

DECLARATION OF LISA S. GREIF
IN SUPPORT OF PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER
AND PRELIMINARY INJUNCTION

EXHIBIT 2



# The Public Interest Law Project

The Public Interest Law Project and
California Affordable Housing Law Project
449 – 15th Street, Suite 301
Oakland, CA 94612

Phone  (510) 891-9794
Fax     (510) 891-9727
www.pilpca.org

Michael Rawson
*Co-Director*
Extension 145
mrawson@pilpca.org

Stephen Ronfeldt
*Co-Director*
Extension 127
sronfeldt@pilpca.org

Deborah Collins
*Managing Attorney*
Extension 156
dcollins@pilpca.org

Craig Castellanet
*Staff Attorney*
Extension 132
ccastellanet@pilpca.org

Angie Schwartz
*Staff Attorney*
Extension 125
aschwartz@pilpca.org

Elizabeth Graber
*Legal Assistant*
Extension 110
egraber@pilpca.org

George Feltz
*Administrator*
Extension 101
gfeltz@pilpca.org

January 30, 2008
(Via Electronic Mail)

Ainars Rodins
U.S. Department of Housing and Urban Development
Special Applications Center
77 W. Jackson Blvd., Room 2401
Chicago, IL 60604-3507
Ainars.Rodins@hud.gov

**[Additional Addressees listed on Page 6]**

RE:   Disposition Application for Arroyo Vista, CA142001
         Dublin, California

Dear Messrs. Rodin, Blom, Smith and Sneller and Ms. Kendrick:

I am one of the attorneys of record for plaintiffs *Arroyo Vista Tenants Association, et al. v. City of Dublin, Dublin Housing Authority, Housing Authority of Alameda County, et al.*, U.S. Dist. Court, N.D. Cal., Case No. C-07-05794 MHP, and submit this letter on behalf of my clients to request that HUD promptly disapprove the above Application for Disposition of Arroyo Vista (Application).  As my co-counsel have informed several of you in previous correspondence and communications, we represent four lower residents of Arroyo Vista public housing located in Dublin, California.  We also represent Arroyo Vista Tenants Association.

We have filed a motion for preliminary injunction in the above case on behalf of our clients seeking a court order to, among other things, enjoin defendants City, DHA, and HACA from unlawfully implementing a disposition and development agreement that was approved and executed on or about July 17, 2007 by the City, DHA, and HACA -- without prior HUD approval, and to enjoin defendants from displacing residents of Arroyo Vista – in the absence of any approval of an application for disposition by HUD and in the absence of an approved  relocation plan required under federal law and state law.  A copy of our notice of motion, motion, and memorandum of points and authorities is enclosed.  We urge you to review the motion and memorandum as it sets forth the legal and factual reasons why defendants in this case are acting *entirely outside of the law* to dispose of Arroyo Vista and displace all residents of Arroyo Vista – without prior approval or even review by HUD of an application for disposition.

0007

Ainars Rodins, et al.
Page 2
January 30, 2008

HUD does not have a complete application for disposition regarding Arroyo Vista before
it. It lacks documentation of environmental review and a relocation plan. Thus, HUD
does not have the discretion to approve an incomplete application. 42 U.S.C. §1437p(a);
24 C.F.R. §970.7, 970.17. Further, nothing in 42 U.S.C. §1437p authorizes HUD to hold
an *incomplete* application in abeyance while the PHA proceeds to *carry out* the very
disposition and displacement that it *proposes* in its application – all without HUD review
or approval of that application. And, as outlined below, that is precisely what DHA has
done.

Moreover, HUD must disapprove an application if, among other reasons, the Secretary
determines that "any certification made by the public housing agency . . . is clearly
inconsistent with information and data available to the Secretary or information or data
requested by the Secretary." 42 U.S.C. §1437p(b); 24 C.F.R. §970.29. The Dublin
Housing Authority (DHA) made certifications in its Application that are unequivocally
inconsistent with the Answer defendants themselves filed with the Court in this case, the
Declarations signed under penalty of perjury of residents and former residents of Arroyo
Vista, and supporting documentary evidence enclosed with this letter.

DHA's certifications in the Application are inconsistent with the following documented
facts:

- DHA certified it would comply with both the federal and state relocation
  assistance laws applicable to its proposed disposition project, and
  specifically certified that it would prepare a comprehensive relocation plan
  that would be presented to residents for comment and submitted to the
  local government for approval *before* any displacement occurred. Not
  only has DHA not prepared a relocation plan for submission to HUD,
  rendering its Application incomplete, it has not *prepared* a relocation plan
  for *comment* by residents, *review by HUD*, or *review and approval* by
  local government. And it admits these facts in its Answer to the Petition
  for Writ of Mandate (copies enclosed). Moreover, it also admits that it has
  relocated residents of Arroyo Vista – with no relocation plan and no
  notices mandated by state *or* federal law that must *precede* any
  displacement. 42 U.S.C.§1437p.

- DHA certified in its application that 12 households that had moved by
  August 2007 had moved "voluntarily"; DHA had not required any
  residents to move and would not require any residents to move before it
  issues a 90-day notice. The declarations of eight residents of Arroyo
  Vista, including a former resident that was unlawfully displaced (Gretta
  Evans) demonstrate very clearly that any moves from Arroyo Vista have
  been anything but voluntary. Residents have been pressured, frightened,
  misinformed, and cajoled into moving. Moreover, state law does not

recognize "voluntary" relocations at all. *Any* resident that has "moved" since July 2006 – when defendants admit that they initiated negotiations with Eden Housing, Inc. and Citation Central Homes to sell the property -- is considered to be a "displaced person" under California law and may *not* be relocated prior to the adoption of a relocation plan by the local legislative body and the issuance of all requisite relocation notices.

- DHA certified in its application that it would provide reasonable accommodations to all residents that have disabilities. Not only has DHA not provided reasonable accommodations to residents, they have threatened to "vacate" at least one resident with disabilities who resides in a fully accessible unit at Arroyo Vista – for 23 years -- if he does not move out in 2008. And, they have failed to even inform him of any relocation rights he may have. *See* Costello Declaration. DHA's "relocation consultant" also refused assistance to a resident being forced to move when she asked for help with a prospective landlord that had unlawfully told her he would not permit accessible features to be installed in the prospective unit to accommodate her disability, and another that discriminated against her on familial grounds. Though this impeded her ability to use a Section 8 voucher at all and she asked for help, she was refused necessary counseling and assistance and told all she would get was a referral. *See* Veal Declaration. Another resident that would have accepted a Section 8 voucher and moved was unilaterally down-sized from a 4-bedroom home to a 2-bedroom voucher with *no* relocation plan or notice *authorizing* her to be denied comparable housing. When she asked for a reasonable accommodation and offered medical documentation of the disabilities in her family, HACA refused even to accept the documentation. *See* Keyes Declaration.

- DHA certified in its application that it would provide comparable housing, including Section 8 vouchers to all residents. *But see* the Declarations of Carolyn Evans, Gretta Evans, Rhenae Keyes, and Elise Veal. Gretta Evans was displaced without a Section 8 voucher, comparable replacement housing payment, and is suffering a $300/month rent increase as a result of DHA's unlawful activities. Rhenae Keyes and Elise Veal were simply unable to use Section 8 vouchers as a result of DHA's failure to provide necessary counseling regarding the Section 8 program, unit sizes for which the family was eligible, and differing rules and HAP standards in other jurisdictions.

- DHA certified in its application that HACA would apply to HUD for 150 "replacement" Section 8 vouchers – apparently to replace the Section 8 vouchers that HACA has been unlawfully issuing to persons that are being unlawfully displaced. Defendants admit now that HACA will not apply

Ainars Rodins, et al.
Page 4
January 30, 2008

for "replacement" vouchers until after HUD approves the disposition, and
that since the property will have been long since vacated, HUD will likely
not replace those vouchers. Thus, it admits that there are and may be
insufficient vouchers to accommodate 150 families. *See* Greif Decl. Ex. 5.
Moreover, by pushing families that were already on HACA's Section 8
waiting list to the back of the line so that it can issue 'their' vouchers to
Arroyo Vista residents that it is unlawfully displacing, HACA has violated
the priorities of its own PHA Plan.

- DHA certified in its application that it would provide "actual and
  reasonable relocation expenses" to residents it displaces. It has refused to
  provide "actual and reasonable" moving expenses, security deposits, credit
  checks, and has held half of moving expenses hostage to guarantee a
  resident (or the resident's family) vacates the Arroyo Vista unit. See
  Gretta Evans, Elise Veal, Carolyn Evans Declarations.

- DHA certified in its application that it would provide benefits under 42
  U.S.C. §5304(d) [Section 104(d)], if applicable. The disposition and
  development agreement (Greif Decl. Ex. 2) shows that Eden "will apply"
  for CDBG and HOME funds, triggering an obligation to plan for, budget
  for, and provide notice of residents rights' to relocation assistance under
  Section 104(d). No planning, no budget, no notice, and no relocation
  benefits required under Section 104(d) have been provided to residents.

- DHA certified in its application that it would not displace any residents
  prior to issuing the 90-day notice mandated by 42 U.S.C. §1437p. That
  notice requires it to inform residents in writing of HUD's decision and of
  the relocation benefits the residents will receive. Defendants have
  misrepresented to residents in a series of meetings that disposition of
  Arroyo Vista *will* occur; it *will* occur in November 2008 (based on a
  timetable it proposed to HUD and HUD has not yet approved), and that
  HUD *will* approve the application for disposition. If the residents don't
  move now, they have been told they will "see the bulldozers coming," and
  they have been told there may not be enough Section 8 vouchers or
  Section 8 units to accommodate their needs. *See* Keyes and Sanders
  Declarations.

- DHA certified in its Application that it does not anticipate HUD approval
  before August 2008, and that it will issue 90-day notices only after
  receiving that approval. Yet, it has told residents they *must move by or
  before August 2008. See* Sanders Declaration. Thus, it has informed
  residents that it will require them to move without a 90-day notice or
  without the benefit of the 90 days that the notice guarantees. In fact,

Ainars Rodins, et al.
Page 5
January 30, 2008

because DHA is displacing residents before *any* HUD approval at all, there will be no residents left to whom to issue the 90-day notice.

DHA has unlawfully displaced 33 Arroyo Vista residents as of December 2007. *See* Greif Decl. Ex. 7. It has done so without any authority from HUD, without any relocation plan approved by HUD or local government to guide the process, without providing notices or benefits approved by HUD or the local government, including any notices required by 42 U.S.C. §§1437p, 5304(d), and California Govt. C. §7260 *et seq.* It has blatantly usurped HUD's authority to review and approve or disapprove the Application, and has put HUD in the untenable position of *reviewing* a "done deal".

For these reasons, we respectfully request that HUD promptly disapprove the Disposition Application for Arroyo Vista, CA142001 that was received by HUD on or about August 15, 2007. It is clear that HUD has no discretion to approve an *incomplete* Application, and that it must disapprove an Application where it has information and data that demonstrates "inconsistencies" in a PHA's certifications. The enclosed Motion, Answer, Verified Petition for Writ of Mandate, and Declarations of Arroyo, Brown, Costello, Carolyn Evans, Gretta Evans, Keyes, Sanders, and Veal, together with the Declaration of Lisa Grief and accompanying documentary evidence, all part of the court record in this action, amply demonstrate that DHA's Application must be disapproved. We further respectfully request that HUD act promptly to disapprove the Application before more families are unlawfully displaced from their homes and their neighborhood -- where many of them have resided for years, if not decades.

Indeed, in many respects Arroyo Vista should be hailed by HUD, DHA, and the local community as one of the more successful and stable public housing developments in the country. It is a community of tremendous diversity – racially and ethnically, where families with children co-exist with seniors, and many persons with disabilities have accessible and affordable single-family homes near public transportation on small cul-de-sacs. Many of these families and individuals have resided in harmony at Arroyo Vista in a decent, safe, sanitary and affordable home for decades. It is clearly *not* in their best interests or the interests of the community to destroy the very diversity that makes Arroyo Vista so unique.

We look forward to your prompt response.

Very truly yours,

Deborah Collins
Attorney for Plaintiffs

**0011**

Ainars Rodins, et al.
Page 6
January 30, 2008


Additional Addressees:

Dominique Blom
Deputy Assistant Secretary
Office of Public Housing Investments
U.S. Department of Housing and Urban Development
451 7th Street S.W.
Washington, D.C. 20410
Dominique.Blum@hud.gov

Kim Kendrick
Fair Housing and Equal Opportunity
U.S. Department of Housing and Urban Development
451 7th Street S.W.
Washington, D.C. 20410
Kim.Kendrick@hud.gov

W. Jay Smith
Regional Relocation Specialist
U.S. Dept. of Housing and Urban Development
Office of Community Planning and Development
450 Golden Gate Avenue, 9th Floor
San Francisco, CA  94102-3448
Jay_Smith@hud.gov

Stephen Schneller
Public Housing Division
U.S. Dept. of Housing and Urban Development
Office of Community Planning and Development
450 Golden Gate Avenue, 9th Floor
San Francisco, CA  94102-3448
Stephen.Schneller@hud.gov

cc:  Craig Castellanet and Michael Rawson, CAHLP/PILP
     Lisa Greif, Naomi Young, Phil Morgan, Bay Area Legal Aid
     Catherine Bishop, Navneet Grewal, National Housing Law Project

0012

DECLARATION OF LISA S. GREIF
IN SUPPORT OF PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER
AND PRELIMINARY INJUNCTION

EXHIBIT 3                                    **0013**

## Lisa Greif

| | |
|---|---|
| **From:** | Juliet E. Cox [jcox@goldfarblipman.com] |
| **Sent:** | Wednesday, February 13, 2008 12:38 PM |
| **To:** | Lisa Greif |
| **Subject:** | Arroyo Vista Draft Relocation Plan |

**Attachments:** Arroyo Vista Draft Relocation Plan.pdf

Lisa:

The draft relocation plan for the proposed redevelopment of the Arroyo Vista project is now available for review and public comment. As you have requested, I have attached here a copy of the plan for you to review on your clients' behalf. Your individual clients will also receive notice mailed to their homes that the draft plan is ready for review. Copies of the plan will be available upon request at the Arroyo Vista office, and will also be available for review at City Hall and the Dublin Public Library. Copies are also available through DHA's, the City's, and OPC's web sites.

The Dublin Housing Authority's Board of Commissioners will receive and consider public comments on the draft plan at a special meeting on Tuesday, April 15, 2008, at 6:00 p.m. in the City Council chambers at the Dublin City Hall. If you wish the Board to consider any written comments on the plan in advance of the hearing, please submit them to me on or before Friday, March 14. Although any member of the public may comment orally or in writing at the April 15 meeting, comments delivered only on that date may be too late to permit meaningful consideration by the Board.

**Juliet E. Cox**
Goldfarb & Lipman LLP
1300 Clay Street, Ninth Floor
Oakland, CA 94612
(510) 836-6336 (voice)
(510) 836-1035 (fax)
jcox@goldfarblipman.com

GOLDFARB & LIPMAN LLP

IRS CIRCULAR 230 DISCLOSURE: To ensure compliance with requirements imposed by the I
unless expressly stated otherwise, any federal tax advice or analysis contained in t
intended or written to be used, and cannot be used, for the purpose of (i) avoiding
promoting, marketing or recommending to another party any transaction or matter addr

This transmission is intended only for the use of the addressee and may contain info
disclosure under applicable law.  If you are not the intended recipient, or the empl
intended recipient, you are hereby notified that any dissemination, distribution or
received this e-mail communication in error, please immediately notify the sender by
sender by telephone at (510) 836-6336.  Thank you.

**0014**



# Relocation Plan

### For

# 'ARROYO VISTA'
# DEVELOPMENT PROJECT

### Prepared For

**The**
**Dublin Housing Authority**
**22941 Atherton Street**
**Hayward, CA   94541-6633**

**by**

**OVERLAND, PACIFIC & CUTLER, INC.**
**7901 OAKPORT STREET, SUITE 4800**
**OAKLAND, CA  94621-2015**
**PHONE:  (877) 972-8908**

**January, 2008**

# TABLE OF CONTENTS

INTRODUCTION.................................................................................................... 3

A.   GENERAL DEMOGRAPHIC AND HOUSING CHARACTERISTICS................. 9

B.   ASSESSMENT OF NEEDS ............................................................. 11

C.   REPLACEMENT HOUSING RESOURCES ....................................... 15

D.   CONCURRENT RESIDENTIAL DISPLACEMENT ........................... 16

E.   TEMPORARY HOUSING .............................................................. 16

F.   BUSINESS DISPLACEMENT............................................................ 16

G.   PROGRAM ASSURANCES AND STANDARDS .............................. 17

H.   RELOCATION ASSISTANCE PROGRAM........................................ 18

I.   CITIZEN PARTICIPATION/PLAN REVIEW ...................................... 19

J.   RELOCATION BENEFIT CATEGORIES ........................................... 22

K.   PAYMENT OF RELOCATION BENEFITS......................................... 29

L.   RELOCATION TAX CONSEQUENCES ........................................... 30

M.   APPEALS POLICY.......................................................................... 30

N.   EVICTION POLICY ........................................................................ 31

O.   PROJECTED DATES OF DISPLACEMENT ..................................... 32

P.   ESTIMATED RELOCATION COSTS................................................ 32

## TABLE OF ATTACHMENTS

## INTRODUCTION

The City of Dublin was incorporated February 01, 1982 as a General Law city and has grown in population to approximately forty-two thousand (42,000) residents today. The City encompasses fourteen (i.e., 14.01) square miles and provides a full range of municipal services – including police and fire protective services – and has its own school district, the Dublin Unified School District (Kindergarten to Grade XII), with an enrolment of approximately five thousand (5,000+/-) students.

The Dublin Housing Authority (DHA) owns only one public housing project: the Arroyo Vista complex located at 6700 Dougherty Road. Arroyo Vista was originally developed by the Pleasanton Housing Authority in a then-unincorporated area of Alameda County, before the incorporation of the City of Dublin. At the time of Dublin's incorporation, Arroyo Vista was included within the City's limits. The Authority operates no other housing authority programs.

As the Dublin Housing Authority has no employees, in 1986 the DHA contracted with the Alameda County Housing Authority (HACA) to manage Arroyo Vista. HACA staff handles all management and operational tasks, as well as prepares the various reports and plans required by the United States' Department of Housing and Urban Development (HUD).

The DHA Board of Commissioners is comprised of the five (5) Council Members of the City of Dublin and two (2) 'Tenant Commissioners'; one (1) of whom is required to be over the age of 62. The Commission holds its meetings at 6:00 PM on the first Tuesday of every month, in the Chambers of the Dublin City Council.

### The Existing and Proposed Projects

The Arroyo Vista project is located on approximately twenty-two decimal nine acres (22.9 ac.) on Dougherty Road in Dublin. The project site is bounded, generally, by Ventura Drive at its intersection with Dougherty Road on the north; Dougherty Road on the east; Monterey Drive at its intersection with Dougherty Road on the south; and, the rear property lines of the property on the west sides of Monterey Drive; South and North Mariposa; and, Ventura Drive on the west.

See **Figures 1, 2 and 3**, below, for the Regional and Site specific location and Aerial View of the project site.



**Figure 1: Regional Project Location**



**Figure 2: Project Site Location**

**Figure 3:  Project Site Location – Aerial View**

The property is currently developed with one hundred fifty (150) public housing units, including a Housing Authority property management office and a children's day care center operated by 'Kidango, Inc.', a non-profit corporation based in Fremont.

For some time now, the DHA has been giving consideration to either the rehabilitation of the Arroyo Vista housing project or, alternatively, the clearance and redevelopment of the site.  These considerations have been driven by the continuing cuts in HUD operating subsidies and Capital Funds that are used to subsidize the operation of Arroyo Vista.

Several consultants were retained to develop a list of rehabilitation work items and subsequent cost estimates.  'CM Pros' analyzed and prepared cost projections for the residential and community building repairs; 'PERMCO Engineering & Management' provided the same service in regard to the pavement and streets; and 'MCE Corporation' analyzed the project landscaping.  In parallel, the Dublin Housing Authority issued a Request for Qualifications (RFQ) for developers interested in proposing redevelopment of the site; the Commission's objective being to have the rehabilitation costs and possible sources of funding *and* development proposals and associated costs from potential developers in order to select the most viable approach.

In its April, 2006 edition of the 'Arroyo Vista Newsletter', management staff had reported to the project residents that eight (8) submittals had been received in response to the Authority's RFQ for possible redevelopment of Arroyo Vista.  It was noted that an evaluation panel had reviewed and scored the submittals and narrowed the eight (8) submittals received down to three (3).  Staff further indicated that a meeting with the Resident Council and two (2) meetings with the Arroyo Vista residents were going to be held to describe the "top three".  Those meetings were subsequently held and questions in respect of the project were raised by the tenants and addressed.

In its May, 2006 edition of the Newsletter, the management staff reiterated that the Housing Commission had not yet made a decision in regard to either the rehabilitation or the prospective redevelopment of Arroyo Vista.  By that same Newsletter, the residents of Arroyo Vista were advised that, at the June 20, 2006 Commission meeting, staff would be presenting an analysis of the estimated total rehabilitation costs and potential sources of funding.

The Newsletter also provided that the Commission had stated that any redevelopment would be contingent upon the Housing Authority receiving Section 8 Housing Choice Vouchers so that Arroyo Vista residents would have affordable housing available to them in the event they (the residents) had to move.

It was also noted that residents had asked many questions about the likelihood of total redevelopment and how the Section 8 housing program worked.  At their meeting with residents, the Housing Authority staff had distributed written summaries of the "top three" development proposals and there were general questions about all three, as well as questions about individual submittals.  The evaluation panel had developed a list of questions that were to be submitted to the "top three" redevelopment "finalists" and the tenant's questions were to be added to the list.

The questions were to be submitted to the development teams before the end of May as the panel expected to interview the "finalist" proponents in late June, so that a recommendation could be made to the Housing Commission at its meeting in late July, 2006.  (**NOTE**:  Copies of 'Arroyo Vista' Newsletters respecting redevelopment may be found at '**ATTACHMENT 1**')

At the meeting of the DHA Commission held June 20, 2006, staff described the rehabilitation work that was needed; the estimated cost to do so (i.e, approximately $20 million); and, the possible, though limited sources of funding for such an undertaking (i.e., approximately $10 million).

0020

As sufficient sources of funding could not be identified to undertake the rehabilitation of the development, at its meeting held July 24, 2006, the Housing Commission interviewed two (2) prospective development teams and, as a consequence, it was decided to proceed with the total redevelopment of the property.    The development entity selected for recommendation was a joint-venture of 'SCS Development Company, dba Citation Homes Central' (a California Corporation) and, 'Eden Housing, Inc.', (a California not-for-profit housing development corporation).

Subsequently, the City of Dublin, the DHA, the HACA, and the developers, Eden Housing, Inc. and, Citation Homes, Central entered into an 'Exclusive Negotiating Rights Agreement' which outlined the general provisions of the proposed development and obligated the parties to use best efforts to negotiate with one another to develop and execute a binding Disposition and Development Agreement (DDA).  The DDA would specify the details of the project and the conditions pursuant to which the ownership of the property would be transferred.

On July 17, 2007, both the Dublin Housing Authority and the Dublin City Council approved a DDA by and between the parties referenced above; which DDA was further considered by the HACA at its meeting held July 25, 2007 and also adopted thereby.

The new project, as contemplated in the DDA, involves razing all improvements on the property and developing a mixed-income residential project of up to four hundred five (405) dwelling units, comprising two hundred ten (210) market rate homes for sale; sixteen (16) homes for sale, affordable to lower income households; one hundred twenty-nine (129) affordable rental units for families; and a fifty (50) unit development which will be designated for "senior" households. As the project has been refined since the approval of the DDA, it currently consists of three hundred seventy-eight (378) units, comprising one hundred ninety-eight (198) homes for sale, fourteen (14) of which will be affordable to low income households; one hundred thirty (130) affordable rental units for families; and fifty (50) affordable rental units for seniors.

The new development will represent a net increase in total housing units of two hundred twenty-eight (228), which includes a net increase of forty-four (44) units of housing affordable to lower-income households, from one hundred fifty (150) to one hundred ninety-four (194); fourteen (14) of which will be affordable purchase opportunities.

**Displacement of Residential Tenants**

Public Agencies domiciled in the state of California and doing projects such as the Arroyo Vista redevelopment are required, in the event of resultant residential and/or significant commercial/business displacement, to comply with State of California rules and regulations pertaining to the prospective displacement of residents and businesses.

This relocation assistance may involve not only financial assistance for meeting new replacement housing costs – either with a Section 8 Voucher for qualifying households or for a period of forty-two (42) months for over-income households – but, also, assistance in the actual move from the displacement site to that of the replacement accommodation. The day care center on site will also be assisted in its relocation pursuant to the same rules and regulations, though somewhat differing requirements and benefits apply.

This Relocation Plan provides the results of a needs assessment survey; a housing resource analysis; and, details of the displacing Agency's proposed relocation Program. The Plan also sets forth policies and procedures necessary to conform with statutes and regulations of the California Relocation Assistance Law, California Government Code Section 7260 et seq (the "CRAL") and, the California Relocation Assistance and Real Property Acquisition Guidelines, Title 25, California Code of Regulations, Chapter 6, Section 6000 et seq. (the "Guidelines") for both residential and commercial displacement.

Pursuant to federal regulations governing the disposition of public housing projects (24 CFR 970), the Uniform Relocation Act does not apply to the disposition of Arroyo Vista. However, in accordance with 24 CFR 970.21, the Dublin Housing Authority must offer each family displaced comparable housing. Such comparable housing may include tenant based assistance such as Section 8 vouchers, project based assistance or occupancy in a unit operated or assisted by a public housing authority at a rental rate paid by the family that is comparable to the rental rate applicable to the unit from which the family is vacated. In addition, the Dublin Housing Authority is required to notify each family of the proposed displacement at least 90 days prior to the displacement date. The residents are entitled to payment of actual and reasonable relocation expenses and are eligible to receive advisory services.

Overland, Pacific & Cutler, Inc. (OPC) – a consulting firm specializing in providing relocation assistance consulting services to public agencies – has prepared this Relocation Plan with the assistance of the Alameda County and Dublin Housing Authorities, and will provide further, on-going relocation consulting services to give effect to the tenant displacement. The philosophy expressed in this Plan is to provide a quality program of relocation; personalized and responsive to each household's specific needs.

No mandatory displacement activities will take place prior to the required reviews, and approval of this Plan.

## A.    GENERAL DEMOGRAPHIC AND HOUSING CHARACTERISTICS

The year 2000 Decennial Census reported the population of the city of Dublin being, as at April 01 of that year, twenty nine thousand nine hundred seventy three (29,973) persons. Since the reporting of the U.S. census in 2000, the population of Dublin has grown, as at November, 2006, to forty one thousand nine hundred seven (41,907) residents; an increase in population of eleven thousand nine hundred thirty four (11,934) persons or, thirty nine decimal eight two percent (39.82%) over the seven (7) years that the figures were reported (on average, 5.69%/annum).

The Arroyo Vista housing development – the subject of this Plan – is within Census Tract No. 4502 of the city of Dublin. The following Table provides comparative data, respecting racial and ethnic groupings as reported by respondents from the city of Dublin, generally, and from Census Tract No. 4502 in particular.

| US Census Bureau – Decennial Census (2000) | Dublin city, California | | Census Tract 4502 | |
|---|---|---|---|---|
| **RACE** | **Number** | **Percent** | **Number** | **Percent** |
| Total: | 29,973 | 100.0 | 4,726 | 100.0 |
| White alone | 20,793 | 69.4 | 3,482 | 73.7 |
| Black or African American alone | 3,024 | 10.1 | 200 | 4.2 |
| American Indian and Alaska Native alone | 220 | 0.8 | 32 | 0.7 |
| Asian alone | 3,101 | 10.3 | 560 | 11.8 |
| Native Hawaiian and Other Pacific Islander alone | 95 | 0.2 | 5 | 0.1 |
| Some other race alone | 1,576 | 5.3 | 213 | 4.5 |
| Two or more races: | 1,164 | 3.9 | 234 | 5.0 |
| Two races including Some other race | 396 | | 104 | |
| Two races excluding Some other race, and three or more races | 768 | | 130 | |
| Hispanic or Latino (of any race) | Of 'Total': 4,059 | 13.5 | Of 'Total': 545 | 11.5 |

*Source: U.S. Census Bureau – Census 2000 Summary Files*

The year 2000 Decennial Census also provided data in respect of housing occupancy and form of tenure and residential occupants by race. The following Table provides housing occupancy by form of tenure and racial status for Dublin vs. Census Tract 4502.

| US Census Bureau – Decennial Census (2000) | Dublin city, California | | Census Tract 4502 | |
| --- | --- | --- | --- | --- |
| GENERAL HOUSING CHARACTERISTICS | Number | Percent | Number | % |
| OCCUPANCY STATUS | | | | |
| Total Housing Units | 9,872 | 100.0 | 2,303 | 100.0 |
| Occupied housing units | 9,325 | 94.5 | 2,204 | 95.7 |
| Vacant housing units | 547 | 5.5 | 99 | 4.3 |
| TENURE | | | | |
| Occupied housing units | 9,325 | 100.0 | 2,204 | 100.0 |
| Owner-occupied housing units | 6,049 | 64.9 | 765 | 34.7 |
| Renter-occupied housing units | 3,276 | 35.1 | 1,439 | 65.3 |

| VACANCY STATUS | | | | |
| --- | --- | --- | --- | --- |
| Vacant housing units | 547 | 100.0 | 99 | 100.0 |
| For rent | 288 | 52.7 | 63 | 63.6 |
| For sale only | 40 | 7.3 | 0 | 0.0 |
| Rented or sold but, not occupied | 66 | 12.1 | 5 | 5.1 |
| For seasonal, recreational, or occasional use | 36 | 6.6 | 21 | 21.2 |
| For migratory workers | 0 | 0.0 | 0 | 0.0 |
| Other vacant | 117 | 21.4 | 10 | 10.1 |
| RACE OF HOUSEHOLDER | | | | |
| Occupied housing units | 9,325 | 100.0 | 2,204 | 100.0 |
| White | 7489 | 80.3 | 1,737 | 78.8 |
| Black or African American | 269 | 2.9 | 91 | 4.1 |
| American Indian and Alaska Native | 53 | 0.6 | 11 | 0.5 |
| Asian | 932 | 10.0 | 230 | 10.4 |
| Native Hawaiian and Other Pacific Islander | 23 | 0.2 | 2 | 0.1 |
| Some other race | 274 | 2.9 | 65 | 2.9 |
| Two or more races | 285 | 3.1 | 68 | 3.1 |

The median annual income of the nine thousand three hundred thirty-two (9,332) households in the city of Dublin in the Decennial Census year of 2000 was seventy-seven thousand two hundred eighty-three dollars ($77,283.). Within the same cohort of two thousand two hundred one (2,201) households in Census Tract 4502, the median annual household income in 2000 was sixty-eight thousand five hundred sixty dollars ($68,560.); eighty-eight decimal seven one percent (88.71%) of the median annual household income for the city of Dublin, at large.

The following Table breaks down the city and Census Tract income into comparative categories generally above and below the income levels at which the majority of households and families can be found.

| US Census Bureau – Decennial Census (2000) Income Distribution of Households and Families for City of Dublin and, Census Tract No. 4502 | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Income Distribution | Total Households | | | | Total Family Households | | | | Total Non-family Households | | | |
| | Number | | Percentage | | Number | | Percentage | | Number | | Percentage | |
| | City | Tract | City | Tract | City | Tract | City | Tract | City | Tract | City | Tract |
| $0. - $24,999. | 723 | 172 | 7.7 | 7.8 | 416 | 69 | 6.3 | 5.9 | 347 | 103 | 12.5 | 10.0 |
| $25,000. - $49,999. | 1,576 | 516 | 16.9 | 23.4 | 995 | 252 | 15.2 | 21.5 | 640 | 277 | 23.1 | 26.8 |
| $50,000. - $149,999. | 6,012 | 1,395 | 64.4 | 63.4 | 4,322 | 739 | 66.0 | 63.2 | 1,626 | 643 | 58.7 | 62.4 |
| $150,000. - $199,999. | 711 | 93 | 7.6 | 4.2 | 562 | 93 | 8.6 | 7.9 | 116 | 0 | 4.2 | 0.0 |
| $200,000. or more | 310 | 25 | 3.4 | 1.2 | 266 | 17 | 3.9 | 1.5 | 42 | 8 | 1.5 | 0.8 |
| Totals | 9,332 | 2,201 | 100.0 | 100.0 | 6,561 | 1,170 | 100.0 | 100.0 | 2,771 | 1,031 | 100.0 | 100.0 |

*Source: U.S. Census Bureau – Census 2000 Summary Files*

## B.    ASSESSMENT OF NEEDS

To obtain resident information necessary for the preparation of this Plan, Consultant staff sent a letter, dated September 21, 2007, to every household at Arroyo Vista indicating that individual, on-site interviews of the prospective displacee households were to be conducted to establish need. On-site interviews with households were conducted during the period October 05th through October 29th, 2007.

There were one hundred forty-seven (147) *households* within the development including approximately forty-five (45) households which have taken advantage of the availability of Section 8 Housing Choice Vouchers and have already moved.

**0025**

However, for a variety of reasons – including absence during working hours; no response to cards left requesting that tenants contact the consultant's office for appointments; and, several who declined to be interviewed – consultant staff were only successful in contacting, directly, one hundred eighteen (118) tenant households which provided information sufficient to establish the housing need amongst the resident households and establish the most accurate estimate of relocation costs. In those cases in which households declined to provide income information, consultant staff used existing rent and information provided by the HACA as an indicator and developed estimated income figures by extrapolation. As the project moves forward, accurate information and documentation will be necessary to determine individual relocation budgets for displaced households.

## Units - Current

As noted generally, above, of the one hundred fifty (150) total *units* on-site, there were only three (3) units vacant, with the remaining one hundred forty-seven (147) units occupied by DHA tenant households numbering some four hundred forty-two (442) persons; averaging three (3.0) persons per household and ranging in occupancy density from one (1) to eight (8) persons per household. As to the units themselves, and of the total one hundred forty seven (147) which were occupied, fifteen (15) households were in one (1)-bedroom units; eighty one (81) households were in units having two (2) bedrooms; twenty nine (29) households were in three (3)-bedroom dwellings; and, twenty two (22) households had four (4) bedroom units. Household size is known for all displacee households and the comparison between units occupied – by bedroom count – and, those needed, is shown at 'Attachment 2'.

## Unit Allocation

Based upon the occupancy standards of the HACA as they apply to establishing the size of the replacement household by bedroom count, there is potentially some "over-housing" to be addressed. Further, there are five (5) households which are, in fact, "over-income" and do not qualify for Section 8 housing at all. These latter five households may, however, be entitled to 'Rental Assistance Payments (RAP)' to offset any shortfall between their ability-to-pay or current rent and open-market rents, over a period of forty-two (42) months, and moving assistance to relocate. Any anomalies will be addressed during the relocation process.

Essentially, a single-person household or 'Head' of household is eligible to occupy one (1) bedroom. The introduction of a spouse or domestic partner would not alter that one-bedroom-count.

If, however, a single-person household required the services of an 'aide', that aide – as approved by the HACA – would be entitled to their own, separate bedroom. Under all other circumstances, every two (2) persons are assigned a separate bedroom; any "odd-numbered" person would also be entitled to a separate bedroom. Save for single-persons and, those requiring 'aides', each bedroom shall be(come) occupied by two (2) persons before the family becomes otherwise eligible for an additional bedroom.

## Disabilities/Handicaps

There are a total of seventeen (17) persons within sixteen (16) households (i.e, eleven percent [10.88%] of all households) who are qualified as physically or mentally disabled to some degree; of these 17 persons, twelve (12) – or seventy one percent (70.59%) – are 'Heads' of households between the ages of forty-two and eighty years, with a median age of fifty-one (51) years. One elderly person – eighty years of age – is part of the adult disabled cohort (5.88%) however, is not a 'Head' of household. Four (4) persons, representing approximately twenty-four percent of this group (23.53%), are 'Youths' between the ages of twelve and eighteen years, with a median age of sixteen years.

## Elderly

Of the total147 households, eighteen (18) – or twelve percent (12.24%) – are 'Elderly' to the extent that at least one household member – though, not necessarily the 'Head' of household – is over the age of sixty-two years.

Of the eighteen persons/households in this age category, fifteen (15) – or eighty-three percent (83.33%) of the group – are 'Heads' of households and, in some cases, single-person households; and three (3) – at seventeen percent (16.66%) – are 'Spouses'. Attached, are two tables showing some of the household characteristics and needs and the housing resources available at this writing. (See: '**Attachment 2**')

Sections 50079.5 and 50105 of the Health and Safety Code direct the State Department of Housing & Community Development (HCD) to publish the annual income limits issued by the Federal Department of Housing and Urban Development (HUD). Accordingly, HCD has filed with the Office of Administrative Law, amendments to Section 6932 of Title 25 of the California Code of Regulations. The amendments contain the 2007 HUD income limits, prepared by HCD pursuant to Health and Safety Code Section 50093. '**Attachment 3**' outlines the most current income limits for the Extremely-Low, Very-Low, Lower and Moderate income categories for Alameda County as adopted by the State of California Department of Housing & Community Development (HCD) on April 18, 2007.

**Project Site Demographics**

There are presently four hundred forty-two (442) persons; averaging three (3.0) persons per household, ranging in occupancy density from one (1) to eight (8) persons per household, residing within the Project site.  Fifteen (15) households were in one (1)-bedroom units; eighty one (81) households were in units having two (2) bedrooms; twenty nine (29) households were in three (3)-bedroom dwellings; and, twenty two (22) households had four (4) bedroom units.  Income information and household size has been determined both during interviews and from information provided by the HACA and extrapolated from rent data provided by the HACA.  **Table 1.**, below, breaks down the household universe of Arroyo Vista, by income category, for Alameda County relative to the standards of the federal Department of Housing and Urban Development (HUD) for 2007.  (See: '**Attachment 3**').

| Table 1: Income Levels of Residential Households | | | | |
|---|---|---|---|---|
| **Extremely Low** | **Very Low** | **Lower** | **Moderate** | **Insufficient Data** |
| 86 | 29 | 16 | 2 | 15 |

Monthly rents for Arroyo Vista residents average two hundred thirty-two dollars ($232.00) per month for one (1)-bedroom units; three hundred eighty-two dollars ($382.00) per month for two (2)-bedroom apartments; four hundred sixty-five dollars ($465.00) per month for three (3)-bedroom accommodation; and, five hundred fifty-three dollars ($553.00) per month for four (4)-bedroom dwellings.  The Project is further subsidized by HUD.

**Locational Needs and Preferences**

All relocation will be accomplished off-site.  To maintain appropriate affordability levels, all eligible residents will receive a Section 8 Housing Choice Voucher from HACA.  Residents have the option – pursuant to the "portability" aspect of the Housing Choice Voucher program – to "port out" from Dublin to wherever the household chooses to live within the United States where a Section 8 program operates.

For the specific purposes of relocation, residents were queried by Consultant staff as to needs and housing preferences.  Relocation activities will consider individual household needs to be close to public transportation, employment, churches, schools, public/social services and agencies, recreational services, parks, community centers, and shopping.

Those households which are identified as having members who have disabilities will receive special consideration for accessibility, if necessary, and perhaps proximity to particular medical facilities. A substantial number (approximately 15%) of the households expressed a desire – both during the interviews and at public meetings – to move outside the Dublin area. Many households requested to remain in the "tri-city" area, while some households expressed a specific need to remain in Dublin. A sample of the residential interview form can be found at '**Attachment 4**'.

Beyond the English language, other tenants have reported that the language first used in the home is Spanish, Farsi, Punjabi, Chinese and Tagalog. Relocation information and assistance will be provided in the primary language of the occupants as necessary in order to insure that all displacees obtain a complete understanding of the relocation program and their eligibility for benefits.

## C.    REPLACEMENT HOUSING RESOURCES

The displacement of the existing households will be first and foremost through the issuance of Section 8 Vouchers; which method should provide households with greater flexibility in regard to relocating virtually anywhere within the Authority's jurisdiction – or, outside the area entirely, if they (the household[s]) should choose – and, yet, still retain their rent-geared-to-income position.

A Section 8 resource study was conducted in early November 2007 to identify available comparable, decent, safe, and sanitary units within Dublin and the adjoining communities in the County. Referrals will be made both to income-restricted dwellings and open market housing if the latter is the choice of displacee households.

The survey identified thirty-two (32) replacement housing resources within Dublin and the general 'Tri-city' area (i.e., Dublin, Pleasanton and Livermore) and regionally, two hundred twenty-four (224) replacement housing resources within Hayward, Castro Valley, San Leandro, Fremont, Concord, Richmond, San Pablo and Stockton, based upon the needs expressed during the interview process. The survey also identified four hundred fifty-eight (458) Section 8 units available in Oakland. It should be noted that, as at this writing, approximately forty-five (45) of the 147 households have either already relocated voluntarily from Arroyo Vista or will have done so within the following week. (See: '**ATTACHMENT 2 – Residential Relocation Resources (For Rent).**'

0029

Adequate replacement housing will be identified for each household before mandatory displacement can occur for that individual household.

To assist households in identifying additional replacement homes that meet their individual needs, the Housing Authority has increased the Section 8 payment standard for the cities of Dublin and Pleasanton, with the approval of HUD, to one hundred twenty percent (120%) of the HUD Fair Market Rent (FMR) and has established a schedule that exceeds the payment standards throughout the rest of Alameda County. Those payment standards are discussed further in Section 'J. **RELOCATION BENEFIT CATEGORIES**', below.

## D.    CONCURRENT RESIDENTIAL DISPLACEMENT

There are no projects now, or planned in the immediate future, which will impact negatively upon the efforts and ability of the Authority in relocating the displaced households from the site of the Project. This analysis includes the current activities of the Oakland Housing Authority and the displacement of the 'Tassafaronga Village' households. As a result of Arroyo Vista's long lead-time and implementation schedule, combined with the distance between the two projects, impact upon the housing market and the residents will be minimized.

## E.    TEMPORARY HOUSING

No need for temporary housing is anticipated due to the adequacy of permanent replacement units. Should such a need arise, the DHA will respond appropriately and in conformance with all applicable laws and requirements.

## F.    BUSINESS DISPLACEMENT

As noted previously, the site of the Arroyo Vista housing project is also occupied by a children's day care center operated by, and under the direction of 'Kidango, Inc.', of Fremont, California. Kidango is a private, nonprofit agency providing a variety of services to children and families in Alameda, Santa Clara, and San Francisco Counties; they operate some forty (40) centers in eight (8) cities, including Dublin, Fremont, Hayward, Livermore, Newark, San Francisco, San Jose and Union City. Their services are for children from birth to twelve years of age, as determined by the license of each site; the facility at Arroyo Vista is for children ages three to five years of age with a total capacity of thirty two (32).

The hours of operation are from 7:00 AM to 6:00 PM and each site is licensed by Community Care Licensing.   While there is no specific requirement under California Guidelines mandating that alternate relocation sites be made available to commercial occupants at the time of displacement, the Authority is committed to making every reasonable effort to satisfactorily relocate the business.  This Relocation Plan outlines the requirements for reestablishing the commercial tenant at their selected replacement site and describes the advisory services and moving assistance benefits that will be provided by the Housing Authority.

## G.    PROGRAM ASSURANCES AND STANDARDS

Funds to permanently relocate all the households are available and adequate to the task. Services will be provided to ensure that displacement does not result in different or separate treatment of households based on race, nationality, color, religion, national origin, sex, marital status, familial status, disability or any other basis protected by the federal Fair Housing Amendments Act, the Americans with Disabilities Act, Title VI of the Civil Rights Act of 1964, Title VII of the Civil Rights Act of 1964, Title VIII of the Civil Rights Act of 1968, the California Fair Employment & Housing Act, and the Unruh Act, as well as any arbitrary or unlawful discrimination.

No one will be required to move without at least ninety (90)-days notice and unless comparable replacement housing can be located.  Comparable housing includes standards such as:

- decent, safe, and sanitary (as defined in 6008[d] of the Guidelines);

- comparable as to the number of bedrooms, living space, and type and quality of construction of the acquired unit, but not lesser in rooms or living space than necessary to accommodate the displaced household pursuant to the Housing Authority's and HUD's occupancy standards;

- in an area that does not have unreasonable environmental conditions;

- not generally less desirable than the acquired unit with respect to location to schools, employment, health and medical facilities, and other public and commercial facilities and services;

- within the financial means of the displaced household as defined in section 6008, subdivision (5) of the Guidelines; and,

**0031**

- The relocation program to be implemented by the Housing Authority conforms to the standards and provisions set forth in Government Code section 7260 et seq., the Guidelines, and all other applicable regulations and requirements.

## H.    RELOCATION ASSISTANCE PROGRAM

A relocation representative from Overland, Pacific & Cutler, Inc., will be available to assist any displaced household having questions in regard to relocation and/or assistance in relocating. Consultant staff may be contacted by calling, **877.972.8908**, during the hours of 8:00 a.m. to 5:00 p.m., Monday through Friday. Consultant staff is available by appointment at Arroyo Vista, during and after office hours, seven (7) days a week either in the home of the household or at a site office that has been established. The Consultant offices are located at:

> 7901 Oakport Street, Suite 4800
> Oakland, CA   94621-2089

A comprehensive relocation assistance program, with both technical and advisory assistance, will be provided to the households being displaced. Close contact will be maintained with each household. In addition to distribution of informational brochures (See: **'Attachment 5'**), specific activities will:

1. Fully inform eligible project occupants of the nature of, and procedures for, obtaining relocation assistance and benefits;

2. Determine the needs of each residential displacee eligible for assistance;

3. Provide an adequate number of referrals – which, pursuant to the Guidelines requires a minimum of three (3) – to comparable, decent, safe and sanitary housing units within a reasonable time prior to displacement, and assure that no residential occupant is required to move without a minimum of 90 days written notice to vacate;

4. Provide current, and continually updated information concerning replacement housing opportunities;

5. Provide special assistance in the form of referrals to governmental and social service agencies, if needed.

0032

Referral agencies may include, but not necessarily be limited to, the Department of Public and Social Services (DPSS) for income maintenance or food stamps, Medi-Cal, Employment Development Department, Alameda County Health and Human Services Department, and Child and Adult Protective Services.

6.  Provide assistance that does not result in different or separate treatment due to race, color, religion, national origin, sex, sexual orientation, marital status or other arbitrary circumstances;

7.  Supply information concerning federal and state housing programs and other governmental programs providing assistance to displaced persons;

8.  Assist each eligible person to complete applications for benefits;

9.  Make relocation benefit payments in accordance with State of California Guidelines, including the provisions of the Last Resort Housing sections, where applicable;

10. Inform all persons subject to displacement of the Authority's policies with regard to eviction and property management; and,

11. Establish, and maintain a formal grievance procedure for use by displaced persons seeking administrative review of Authority decisions with respect to relocation assistance.

On-going meetings with residents, including one-on-one meetings between the residents and the Consultant staff will be necessary to relocate residents with a minimum of disruption. The Consultant's relocation staff will be available to offer advisory service and assistance, including providing transportation to view prospective replacement homes, as necessary.


I.     **CITIZEN PARTICIPATION/PLAN REVIEW**

To promote this process, the Housing Authority and Overland, Pacific & Cutler, Inc. (OPC) held several community meetings, along with workshops which focused on the development of the Relocation Plan, the relocation process itself, and the benefits pertaining thereto.

The first "inter-active" community meeting was held April 24th, 2007, at the Dublin City Hall. This meeting included presentations by Eden Housing and Citation Homes regarding their experience in working with communities; developing affordable housing; and, the proposed concept for the Arroyo Vista site.

A redacted copy (Addressee's name removed) of the Dublin Housing Authority's 'General Information Notice (GIN)', dated April 12, 2007, providing general information regarding relocation and advising of the meeting of April 24th, 2007, is appended herewith as '**ATTACHMENT 6**'.

At the meeting, OPC provided an overview of the relocation process, including an overview of the prospective relocation "time-line"; the Relocation Plan; the interview process; a summary of potential relocation benefits; OPC contact information; and a reminder that no household was being displaced at that time nor should anyone necessarily move at that time and, in any event, households would receive, at a minimum, a Ninety (90)-Day-Notice-to-Vacate and that the anticipated period for moving would be the Fall of 2008.

A question-and-answer session was also held and, the above notwithstanding, many residents at the meeting expressed a desire to move as soon as possible. Staff again advised residents that they should not move at that time, however, in the event the then proposed Disposition and Development Agreement (DDA) for redevelopment of the Arroyo Vista site was approved by the Housing Commission, then any household wishing to move early in the process would be accommodated through the provision of all advisory and financial assistance afforded pursuant to all applicable rules and regulations. Following the first meeting, individual meetings were held with the "over-income" households to address any questions or concerns they might have had along with discussing their prospective relocation benefits.

Following the first set of meetings in April, further meetings were held May 16, 2007 and June 06, 2007, at Dublin City Hall, titled: 'Family Stability and Home Linkage Program Orientation' and, 'Introduction to Family Stability and Section 8 Rental and Homeownership', respectively, at which were presented new concepts, including additional information regarding the Section 8 program.

The 'Tri Valley Housing Opportunities Center' provided information regarding family self-sufficiency; one-on-one financial education counseling; financial "literacy" classes; budget and credit counseling; and various other City-sponsored programs which allow for self-sufficiency through stable housing and savings opportunities.

A copy of the Notice of the May 16, 2007 meeting and representative "hand-outs" provided by the Tri Valley Housing Opportunities Center and the Housing Authority are appended, herewith, at '**ATTACHMENT 7**'. Again, question and answer sessions were held and, at the meeting, some residents completed an Orientation Questionnaire to assist in assessing their current situation and housing goals.

Many residents' concerns were addressed in the meetings while some were deferred until the preparation of the Relocation Plan. Other concerns will be addressed individually through the one-on-one advisory assistance that will be provided to each household.

This Plan will be made available to all households and the general public for a mandatory thirty (30) day period of review. Comments in respect of this Plan will be included as a Plan addendum prior to submission for approval and adoption by the Dublin Housing Authority. Section 6012 (Citizen Participation) of the California Code of Regulations, Title 25, Chapter 6, will be adhered to in both the spirit and letter of the law by the Authority in implementing the Relocation Program.

The Dublin Housing Authority will provide the following:

1. Full and timely access to documents relevant to the relocation program;

2. The provision of the technical assistance necessary to interpret elements of the Relocation Plan and other pertinent materials;

3. Copies of this Plan shall be available for review within 30 days prior to final approval by the Authority. The Authority will receive comments from displacees, and other interested persons regarding this Relocation Plan;

4. A general notice of this Plan shall be provided to all displacees of the proposed project. This Plan shall be made available for circulation for information and review by interested citizen groups, state and county agencies, and persons affected by the project;

5. The right to submit written or oral comments and objections, including the right to submit written comments regarding the Relocation Plan and to have these comments attached to the Plan when it is forwarded to the Commission for final approval;

6. Upon receipt of public comments, the Plan will be reviewed to ensure that it is feasible and complies with applicable, locally-adopted rules and regulations governing relocation; and,

7. Upon completion of all reviews, the Plan will be presented for adoption by the Authority.

## J.    RELOCATION BENEFIT CATEGORIES

Relocation benefits will be provided in accordance with the provisions of US Code Title 42, Chapter 61, the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970 (the "URA"), as amended, and the State of California Relocation Law, Government Code Section 7260 et. seq., Title 25, Chapter 6, Relocation Assistance and Real Property Acquisition Guidelines; other pertinent HUD regulations and the Authority's own rules pertaining thereto. Benefits will be paid to eligible displaced persons upon submission of required claim forms and documentation in accordance with Authority-approved procedures. Specific eligibility requirements and benefit plans will be detailed on an individual basis with all displacees. In the course of personal interviews and follow-up visits, each displacee will be counseled as to available options and the consequences of any choice with respect to financial assistance.

Chapter 6, of Title 25 of the California Code of Regulations contains the relocation regulations published by the California Department of Housing and Community Development (HCD) that apply to state and local agencies. Section 6008(g) defines a "dwelling" as: '. . . *the place of permanent or customary and usual abode of a person . . . . which is either considered to be real property under State law or cannot be moved without substantial damage or unreasonable cost.*' Additionally, '6008(g) states: "A second home shall be considered to be a dwelling only for the purposes of establishing eligibility for payment for moving and related expenses (as provided in '6090 Actual Reasonable Moving Expenses).

Pursuant to this definition of dwelling, both primary residents and any "part-time" residents are entitled to the moving expenses detailed in '6090 as long as they meet the eligibility requirements of '6034. Part-time residents are not entitled to rental assistance payments.

In order to alleviate hardships for tenants who must pay "move-in costs" (such as credit report fees and security deposits), the Authority will provide up to seventy five dollars ($75.00) for credit checks and a maximum of one months' security deposit based upon the maximum monthly rent payment standards as approved by Housing Authority and outlined in the following Section: **'Section 8 Eligible Households'**.

Requests for such advance payments will be expeditiously processed to help avoid the loss of desirable and appropriate replacement housing. In addition, the Housing Authority will refund security deposits paid by tenants when they moved into Arroyo Vista, even though there may be tenant-caused damage to the unit, as long as all personal belongings are removed and, the unit is swept clean.

**a.    Residential Moving Expense Payments**

Households will be eligible to receive a payment for moving expenses. Payments will be made based upon either a fixed room-count schedule or an invoice for actual reasonable moving expenses from a licensed professional mover.

  1)    Fixed Payment - A fixed payment for moving expenses based on the number of rooms containing furniture or other personal property to be moved. The fixed moving payment will be based upon the most recent Federal Highway Administration schedules maintained by the California Department of Transportation (See: **'Fixed Payment Moving Schedule' – included in 'Attachment 5'**).

- Or -

  2)    Actual Reasonable Moving Expense Payments - The displaced household may elect to have a licensed, professional mover perform the move; if so, the Authority will arrange for and pay the actual cost of the move up to 50 miles and all reasonable charges for packing, unpacking, insurance, and utility connection charges. The payment will be made directly to the mover by the Authority.

**b.    Rental Assistance/Down-payment Assistance**

Permanently displaced households which are residential tenants and who have established residency within the Project site for a minimum of ninety (90) days prior to the "initiation of negotiations" will be eligible for both Rental Assistance and Moving Expenses Payments. Initiation of negotiations for the purposes of this project is April 11, 2007; the effective date of the Exclusive Negotiating Rights Agreement among the City of Dublin, the Dublin Housing Authority, the Alameda County Housing Authority and the development entities SCS Development Company, dba Citation Homes Central and Eden Housing, Inc.

### i)      Section 8 Eligible Households

As residents of public housing, on-going rental assistance will be provided pursuant to the provisions of the Section 8 Housing Choice Voucher program of the federal Department of Housing and Urban Development (HUD).   The Section 8 voucher program provides for a household to continue paying thirty percent (30%) of the household adjusted income – with some program-specific exceptions – for their monthly, housing rental costs.

With the wide disparity in pricing of replacement accommodation and the Housing Authority's desire to meet the individual needs of each household, the "schedule method" will be used – in combination with the Section 8 payment standards – to establish maximum, acceptable comparable rents.  Inasmuch as the relocation process will span an approximately one (1)-year period, and the housing resource study has shown an availability of replacement housing in all categories, the "schedule method" also eliminates disparities between displacee households due to the timing of their referrals.   When the comparative method is not feasible – as is the case in this instance – the displacing entity may establish a schedule of reasonable acquisition costs of "comparable replacement" units based on a current analysis of the housing market.

The monthly maximum rent schedule used by the Alameda County and Dublin Housing Authorities is per the following Table:

| Monthly Rent Standards - Maximum | | |
|---|---|---|
| Bedroom Count | Alameda County (including utilities) | Dublin/Pleasanton (including utilities) |
| One | $1,250.00 | $1,255.00 |
| Two | $1,525.00 | $1,486.00 |
| Three | $2,000.00 | $2,016.00 |
| Four | $2,400.00 | $2,496.00 |

A household may receive this rent *only* if, *without* such assistance *and*, in the displacing Agency's determination, they (the household) *cannot* lease a comparable home or apartment at a lesser cost.  If the household does not *need* such a rent, they will not be eligible to receive such.  If a household qualifies for such a rental assistance payment, the household's share of monthly rent, plus utilities, must not exceed forty percent (40%) of adjusted monthly income (per HUD standards), with the Agency paying the difference between 30% and 40% for a period of 42 months.

For example, if a household desires to move to an area serviced by the Housing Authority of Alameda County, where a sufficient number of three-bedroom dwellings are available with utilities for $1600 per month, there will be no need to provide additional rental assistance.

Although the rental assistance payment (RAP) is based on a forty-two (42) month calculation, the actual payment will be made in only four (4) installments; the first being paid at the time of move-in to the replacement dwelling and the next three (3) payments will be made quarterly. At the end of twelve months, the entire rental assistance payment will have been disbursed to the displacee household.

## ii)    "Over-income Households

Households which are "over-income" for the limits of the Section 8 Housing Choice Voucher program will be provided rental assistance payments based upon the monthly financial housing need, over a forty two (42) month period, consistent with Section 6104 of the Guidelines. Section 6120 of the Guidelines states that if comparable replacement housing is not available to a relocatee (whether because of actual availability, condition or, affordability), the Authority must either terminate the project or provide comparable replacement housing (called 'Last Resort Housing') using the Authority's funds.

Last Resort Housing payments are authorized by statute if affordable, comparable replacement housing cannot be found for the displaced tenant households; that is to say, housing at a cost not greater than thirty percent (30%) of the household's average monthly income. Any supplemental increment beyond $5,250.00 may be paid in installments or, in a lump sum at the discretion of the Authority. This type of situation is likely to develop among low-income families and/or in housing environments wherein project area rents are particularly low vs. rents elsewhere within the community. A combination of factors – which would include, in relation, the income levels of project site tenants; project site rents; and a potentially high cost of replacement rent – may create the need for Last Resort Housing payments.

During the implementation of this project, if it is revealed there is a lack of comparable replacement housing either in number, or based upon affordability, there will be a need to provide Last Resort Housing Payments or alternative solutions pursuant to the Guidelines. In addition, the households may opt to apply up to the full amount of the rental assistance payment to which they are entitled toward the *purchase* of a replacement dwelling. Based upon the monthly housing need over a forty two (42) month period, the Table following shows how monthly need is determined.

| Monthly Housing Need Calculation | | |
|---|---|---|
| 1. Old Rent | $500 | Old Rent plus Utility Allowance |
| Or | | |
| 2. Ability to Pay | $445 | 30% of the Gross Household Income* |
| 3. Lesser of lines 1 or 2 | **$445** | |
| **Subtracted From:** | | |
| 4. Actual New Rent | $550 | Actual New Rent including Utility Allowance |
| or | | |
| 5. Comparable Rent | $575 | Determined by Agency; includes Utility Allowance |
| 6. Lesser of lines 4 or 5 | **$550** | |
| **7. Yields Monthly Need:** | **$105** | Subtract line 3 from line 6 |
| **8. Rental Assistance** | **$ 4,410** | **Multiply line 7 by 42 months** |

If a household chooses to purchase a replacement home rather than rent, the household will have the right to request a lump sum disbursement of the entire Rental Assistance Payment to which they are entitled. This lump sum disbursement will be deposited directly into the purchase escrow with the proviso that, in the event the escrow does not close, the full amount of the disbursement will be returned to the Authority for further, future disbursement to the household.

**c.    Commercial Moving Expense Payments**

Relocation benefits will be provided to commercial tenant occupants pursuant to State of California Relocation law and guidelines.

Commercial occupants are considered eligible for relocation assistance and benefits if they lawfully occupied the subject property on the date of 'Initiation of Negotiations'; previously established, above, as being April 11, 2007. An eligible commercial tenant may receive a payment for actual reasonable and necessary moving and related expenses to cover the cost of moving their personal property from the site of the project to the selected replacement site.

There are two (2) options:

(A)     A payment for actual reasonable and necessary moving and related expenses;

Or,

(B)     A fixed payment not to exceed twenty thousand dollars ($20,000.00).

**Payment for Actual Reasonable and Necessary Moving and Related Expenses**

This payment may include the following:

a)     Transportation of persons and property from the present location to the replacement location (transportation costs are limited to a distance of fifty (50) miles);

b)     Packing, crating, uncrating and, unpacking personal property;

c)     Disconnecting, dismantling, removing, reassembling, and installing relocated and substitute machinery, equipment and, other personal property. This includes connection to utilities available nearby, and modifications necessary to adapt such property to the replacement structure, or to the utilities, or to adapt the utilities to the personal property;

d)     Storage of personal property generally for up to twelve (12) months, at the Agency's discretion;

e)     Insurance of personal property while in storage or transit at the replacement value of property lost, stolen or damaged (though not through the fault or negligence of the displaced person) in the process of moving;

f)     Subject to certain limitations, any license, permit or certification required by the displaced business, to the extent that the cost is necessary for reestablishment at the replacement location;

g)     Subject to certain limitations, reasonable and pre-authorized professional services, including architects', attorneys', engineers' fees and consultants' charges necessary for:

(1) planning the move of the personal property; (2) moving the personal property; or, (3) installing the relocated personal property at the replacement location;

h)    Subject to certain limitations, the purchase and installation of substitute personal property limited to the lesser of: (1) the estimated cost to move the item to the replacement location; or, (2) the replacement cost, less any proceeds from it's sale;

i)    Subject to certain limitations, modifying the machinery, equipment or other personal property to adapt it to the replacement location or to utilities available at the replacement location or, modifying the power supply;

j)    Actual direct losses of tangible personal property resulting from moving, or discontinuing a business or non-profit organization, not-to-exceed the lesser of:

a.  the fair market value of the property for continued use at its location prior to displacement; or,

b.  an amount equal to the reasonable expenses that would have been required to relocate the property, as determined by the Agency, subject to certain limitations; actual and reasonable expenses incurred in searching for a replacement business location, not-to-exceed one thousand dollars ($1,000.)

k)    Actual and reasonable expenses necessary to reestablish a displaced small business at its new location, not-to-exceed ten thousand dollars ($10,000.). Examples of expenses that may be considered for reimbursement include advertising, redecoration and, certain increased costs of operation at the new location.

**Fixed Payment in Lieu of a Payment for Actual Reasonable Moving and Related Expenses**

The amount of this payment shall be based on the average, annual net earnings of the business. The payment to an eligible business may not be less than one thousand dollars ($1,000.), or more than twenty thousand dollars ($20,000.).

To qualify for this payment, a displaced business:

A)  Cannot be a part of a commercial enterprise having *at least three* (3) *other* establishments which are *not* being displaced by the Agency as part of this project, and which are under the same ownership and engaged in the same, or similar business activities; and,

B)  Must not be able to relocate without substantial loss of patronage; and,

C)  Must have contributed at least thirty three percent (33%) of the owner's total gross income during each of the two (2) taxation years *prior to* displacement, or meet specific earnings criteria.

## K.    PAYMENT OF RELOCATION BENEFITS

No household will be displaced until comparable housing is located as defined above and in Section 6008, subdivisions (c) and (d) of the Guidelines.

The Authority's staff will inspect all replacement units to which referrals are made to verify that they meet no less than the standards of decent, safe, and sanitary as defined in Section 6008, subdivision (d) of the Guidelines.

However, no household will be denied moving benefits if it chooses to move to a replacement unit which does not meet the standards of decent, safe, and sanitary housing, however, for displacees relocated to Section 8 authorized units, 'Housing Quality Standards (HQS)' of the Federal Department of Housing and Urban Development (HUD) will apply.

Claims and supporting documentation for relocation benefits must be filed with the Authority within eighteen (18) months from the date the claimant vacates the Arroyo Vista property.  The procedure for the preparation and filing of claims and the processing and delivery of payments will be as follows:

1.  Claimants will provide all necessary documentation to substantiate eligibility for assistance.

2.  Assistance amounts will be determined in accordance with the provisions of California Relocation Law.

**0043**

3. Required claim forms will be prepared by the Authority's relocation consultant in conjunction with claimants.

4. The Authority will review and approve claims for payment or request additional information.

5. The Authority will issue benefit checks which will be available at Authority offices for retrieval, unless circumstances dictate otherwise.

6. Final payments will be issued after confirmation that the Arroyo Vista unit has been completely vacated and actual residency at the replacement unit is verified.

7. Receipts of payment will be obtained and maintained in the relocation case file.

## L.    RELOCATION TAX CONSEQUENCES

In general, relocation payments are not considered income for the purpose of the Internal Revenue Code of 1986, or the Personal Income Tax Law, Part 10 of the Revenue and Taxation Code.

The above statement on tax consequences is not intended to be provision of tax advice by the Authority, its Agents, Consultants or Assigns.  Displacees are encouraged to consult with their own independent tax advisors concerning the tax consequences of relocation payments.

## M.    APPEALS POLICY

The Authority's Grievance Policy will follow the standards described in Article 5, Section 6150 et seq., Title 25, Chapter 6, State of California, Department of Housing and Community Development (H&CD) Program guidelines.

Briefly stated, displacees will have the right to request administrative review when there is a perceived grievance regarding any of their rights to relocation and relocation assistance, as to:

1.    eligibility;

2.    the amount of payment;

**0044**

3.    the failure to provide comparable replacement housing referrals; or,

4.    the Authority's property management practices.

Requests for review will be directed first to:

Alameda County Housing Authority,
Att'n:  Manager, Housing Assistance and
Property Management Department,
22941 Atherton Street
Hayward, CA  94541-6633

A copy of the 'Conventional Public Housing Grievance Procedure for the Housing Authority of The County of Alameda' is appended, herewith, as **'ATTACHMENT 9'**; and, appended as **'ATTACHMENT 10'** is an extract of the Alameda County Housing Authority's 'Section 8 Program Administrative Plan, November 14, 2007', Section **'35. INFORMAL HEARINGS'** procedure.

The entire 'Section 8 Program Administrative Plan', is available on-line at: http://www.haca.net/haca/pdf/adminplan.pdf.

## N.    EVICTION POLICY

Under the State of California guidelines, eviction by the Authority is permissible only as a last alternative.  With the exception of persons considered to be in unlawful occupancy, a displaced person's eviction does not affect eligibility for relocation assistance and benefits. Relocation records must be documented to reflect the specific circumstances surrounding an eviction.

Eviction by the Authority may be undertaken only for one or more of the following reasons:

1.    Failure to pay rent, except in those cases where the failure to pay is due to the Authority's failure to keep the premises in habitable condition; is the result of harassment or retaliatory action; or, is the result of discontinuation or substantial interruption of services beyond the control of the Authority;

2.    Performance of a dangerous or illegal act in the unit by the tenant, their guests or invitees or, any combination thereof;

**0045**

3.     Material breach of the rental agreement and failure to correct breach within thirty (30) days of notice;

4.     Maintenance of a nuisance and failure to abate within a reasonable time following notice;

5.     Refusal to accept one of a reasonable number of offers of replacement dwellings; or,

6.     A requirement under State or local law or emergency circumstances that cannot be prevented by reasonable efforts on the part of the Authority.

## O.   PROJECTED DATES OF DISPLACEMENT

Households will receive a minimum of a One Hundred Fifty (150)-Day Notice before they are required to move, followed later by the statutorily-required Ninety (90)-Day Notice to Vacate. Relocation is anticipated to be completed for all households within the last quarter of 2008.

## P.   ESTIMATED RELOCATION COSTS

To fund the relocation, the DHA anticipates using available funds from the Authority's 'Local Fund', the City of Dublin and Citation Homes, in addition to Section 8 Vouchers provided by the Housing Authority of The County of Alameda.   The commitment of these funds is contained in the approved Disposition and Development Agreement, executed by the parties, thereto.  The Authority will make the necessary relocation funds available, on a timely basis, to ensure the successful completion of the project.  Any and all such required financial assistance will be provided.

The budget estimate for the relocation benefits for the Arroyo Vista project is:

<div align="center">

**Two Million Eight Hundred Thousand Dollars**
**($2,800,000.)**

**(Remainder of page intentionally left blank)**

</div>

## TABLE OF ATTACHMENTS

**Attachment 1:**    'Arroyo Vista' Newsletters

**Attachment 2:**    Table of Household Characteristics and Needs and
Current Units vis. Required Units vis. Available Units

**Attachment 3:**    HUD Annual Income Limitations – Alameda County

**Attachment 4:**    Sample Residential Interview Form

**Attachment 5:**    Informational Statement for Families and Individuals

**Attachment 6:**    General Information Notice (GIN) – April 12, 2007

**Attachment 7:**    Informational Meetings and, Representative
Notice and, "Hand-outs"

**Attachment 8:**    Sample Interview Form – Businesses,
Non-profit Organizations and Farms

**Attachment 9:**    Informational Statement for Businesses,
Non-profit Organizations and Farms

**Attachment 10:**    Housing Authority of Alameda County –
Conventional Public Housing Grievance Procedure

**Attachment 11:**    Housing Authority of Alameda County –
Section 8 Program Administrative Plan
EXTRACT:  Section '35. INFORMAL HEARINGS'

**0047**

33

# ATTACHMENT 1

**Sample Arroyo Vista Newsletters**

**Follow Immediately Hereafter**

**(Remainder of page intentionally left blank)**

**0048**

# ARROYO VISTA NEWSLETTER
## May, 2006
### Special Update on Redevelopment

In the April newsletter we explained that eight submittals were received in response to the Authority's Request for Qualifications for possible redevelopment of Arroyo Vista. An evaluation panel reviewed and scored the submittals and narrowed the eight down to three. In the April newsletter we also indicated that a meeting with the Resident Council and two meetings with Arroyo Vista residents were going to be held to describe these "top three." Those meetings have occurred and we wanted to describe what was discussed and the questions raised by residents.



### But First...

It is important to remember that the Housing Commission has not yet made a decision about redeveloping Arroyo Vista. The Commission may decide to rehabilitate the existing project instead. At the June 20 Commission meeting staff will present an analysis of the estimated total rehabilitation costs and potential sources of funding. The Commission will likely decide at that time whether to proceed with rehabilitation or redevelop the property.

### And Furthermore...

The Housing Commission has stated that any redevelopment is contingent on the Housing Authority obtaining from HUD Section 8 vouchers so that Arroyo Vista residents will have affordable housing if they have to move. Competition for such vouchers is keen and it is not known if the Authority would be successful in obtaining them. *For this reason in particular it is difficult to predict if and when redevelopment will occur.*

### Questions from Residents

Residents had many questions about the likelihood of redevelopment occurring and if so, when it would happen. There were also many questions about the Section 8 program and how it works. The Housing Authority is working on a list of *Frequently Asked Questions* (FAQ) that will address these questions. The FAQ will be distributed to all Arroyo Vista households. However, we want to make clear now that *all households will be assisted in relocation, *Section 8 vouchers can be used in any city where a housing authority operates a Section 8 program, *the vouchers will not expire, *families can keep their vouchers as long as they remain eligible for the Section 8 program, and * there is not a 60-day limit on finding relocation housing.

### Questions for Developers Asked by Residents

The Housing Authority distributed written summaries of the "top three" submittals and discussed them with residents. There were general questions asked about all three as well as questions specific to individual submittals.

Page 1 of 2

# ARROYO VISTA NEWSLETTER

## May, 2006

## Special Update on Redevelopment

The evaluation panel developed its list of questions that it will send out to the developers before the end of May. The questions posed by residents will be added to the panel's list. The panel expects to interview developers in late June so it can make a recommendation to the Housing Commission in late July.

Below are the residents' questions that the top three developers will be asked to respond to:

1. Will there be a washer/dryer hook-up in each apartment?

2. If there is a hook-up in each apartment, will you also provide the washer and dryer or does the tenant provide the washer and dryer?

3. Is there a laundry room in addition to washers and dryers in the apartments?

4. What percentage of units will be for the disabled?

5. Will the apartments have air conditioning?

6. Will any part of the development be gated or secured in some way?

7. There are currently more 4-bedroom homes than you propose to build. How do you plan to address the needs of large families? Are you open to building more 4-bedroom units?

8. Describe the types of social service programs you will provide.

9. List the project amenities (e.g., will there be a computer lab, pool, etc.)

10. Are there any opportunities for residents to be employed, either during construction or in property management after the project is built?

11. How can you assist with relocation? Will you assist residents to move back to Arroyo Vista after the project is built?

12. Will residents be able to wash their cars at Arroyo Vista?

13. Some residents earn between 60%-80% of the median income, which makes them over-income for the Low Income Housing Tax Credit program. Are you willing to set aside some units for non-tax credit residents and, if so, how many?

### And Finally...

THANK YOU to all residents who attended the meetings. The Housing Authority will have more meetings as new information becomes available. The Housing Commission wants to be sure that all residents are informed as things progress and have the opportunity to ask questions. In the meantime, watch for the *Frequently Asked Questions* that should be distributed within the next two weeks.

**Arroyo Vista**
**6700 Dougherty Road, #151**
**Dublin, CA 94568**
**Phone (925) 828-3132**
**Eddie Ortiz, Manager**

0050

# ARROYO VISTA NEWSLETTER
## July, 2006
## Special Update on Redevelopment

In previous newsletters and at meetings we've explained that the Dublin Housing Commission was looking at the costs of rehabilitating Arroyo Vista as well as the possibility of demolishing the project and redeveloping the property. At its meeting on July 24, the Commission decided to redevelop the property and chose a developer team, Eden Housing and Citation Homes.

### Two Meetings

At its June 20 meeting the Housing Commission heard a report from staff on the potential *rehabilitation* of Arroyo Vista. Staff described the rehabilitation work that was needed, the estimated cost and possible sources of financing. Staff reported that the full cost of rehabilitation was about $20 million but only $10 million in sources could be identified.

At its July 24 meeting the Housing Commission interviewed two developer teams for *redevelopment*: 1) Eden Housing and Citation Homes and 2) Mid-peninsula Housing Coalition, Sun Valley Land Development Co. and R.W. Hertel. These were the top scoring two teams (out of eight) that responded in March to the Housing Authority's Request for Qualifications.

### Two Decisions

Both developer teams indicated that redevelopment was feasible and that sufficient financing sources were available. On the other hand, there were not enough resources to accomplish the rehabilitation. After considering all the

information and after both the Commission and the residents asked questions of the developers the Commission made two decisions: 1) to redevelop the property and 2) to select Eden Housing, a non-profit corporation based in Hayward, and Citation Homes, a for-profit developer with offices in Santa Clara, as the development team. Their proposal is *very preliminary* at this time but, in general, Eden estimates it would build 179 rental units (29 more than the 150 units now at Arroyo Vista) and Citation estimates it would build 216 for-sale homes, 15 of which would be affordable.

### But Remember...

No resident should worry about having to move right away or wonder if they will be able to afford new housing. The Housing Commission has stated that redevelopment is contingent on the Housing Authority obtaining from HUD Section 8 vouchers so that Arroyo Vista residents will have affordable housing when they have to move. Competition for such vouchers is keen and we do not know if the Authority will be successful in obtaining them. *For this reason in particular it is difficult to predict if and when redevelopment will occur—it could take a couple of years.*

### And Finally...

The Housing Authority and the Eden Housing/Citation Homes developer team will have more meetings with residents as new information becomes available. Notice of these meetings will be provided.

Page 1 of 2

# ARROYO VISTA NEWSLETTER

## July, 2006

## Special Update on Redevelopment

### ARROYO VISTA REDEVELOPMENT: FREQUENTLY ASKED QUESTIONS

**What is a Section 8 Housing Choice Voucher?** A Section 8 Housing Choice Voucher is a federal subsidy that allows eligible families to rent in the private market and pay approximately 30% to 40% of their income toward rent. The local housing authority pays the remainder of the rent directly to the landlord.

**How soon will Vouchers be given to Arroyo Vista residents?** Vouchers are not currently available. However, now that the Housing Commission has decided to move forward with redeveloping Arroyo Vista, the Housing Authority will prepare an application HUD for 150 Vouchers, enough for every eligible family at Arroyo Vista. Redevelopment will not occur unless there are Vouchers for all eligible families. It will likely take a year or more to obtain HUD approval.

**Where can I use my Section 8 Voucher?** Vouchers can be used to rent apartments, duplexes, condominiums, and single family homes in any city in the U.S. covered by a housing authority. For example, a Voucher can be used in Hayward, Castro Valley, Dublin, Pleasanton, San Ramon, or Livermore or far away, including out of state.

**Will I get help in finding a new home and with moving?** Yes, relocation assistance will be given so that families will be successful in finding a rental unit. The Alameda County Housing Authority, as well as every other housing authority operating a Section 8 program, provides listings of owners who are willing to rent to persons with a Voucher. Our rental listing can be found on the Internet at www.haca.net (click on Landlord Listings). In addition, we will pay for your reasonable moving costs.

**How much would my rent be under the Voucher program?** Section 8 participants generally pay about 30% of their total household income for rent. Assuming your income remains unchanged when you get a Voucher, your rent will be about the same as what you currently pay to live at Arroyo Vista.

**Can I use my Voucher to move back to the new rental units at Arroyo Vista?** Yes.

**Is there a time limit on finding a new home?** Because this project involves relocation, the normal time limits for searching for a rental unit (generally 60 to 120 days) would not apply. However, you would want to be moved by the time the demolition is ready to start.

**Are there time limits on the Section 8 Voucher program?** Current program rules allow you to continue to receive Voucher assistance as long as you are income-eligible and as long as you fulfill the program obligations established by HUD. You will lose your Voucher assistance when your income rises to the point that your portion of the rent matches or exceeds the full amount of the rent.

**Do landlords do background checks and what if I have poor credit history?** Landlords are encouraged to screen prospective tenants under the Section 8 program. If contacted, the Dublin Housing Authority would respond to questions regarding the timeliness of an Arroyo Vista resident's rent payment history and other questions about fulfilling lease obligations. When you moved into Arroyo Vista, a similar background check was conducted by the Housing Authority. If you have poor credit, you may have to explain your personal situation to the prospective landlord.

**What happens if my income or family composition changes after I get a Voucher?** Like now, whenever your income changes or you have a change in family composition (persons moving in or out of your household) you are required to report the change to the local housing authority administering your Voucher. A determination would then be made if and when a change in rent is required.

**The developer proposed that 51 units would remain occupied during construction. Which units are these?** That was only a PROPOSAL and we do not know if this will happen. More studies and planning are required before we know.

0052



## Arroyo Vista

6700 Dougherty Rd.
Dublin, CA 94568
Phone: (925) 828-3132

### November 2006

**Dublin Housing Authority**
**Arroyo Vista Staff**

*Eddie Ortiz*
**Dublin Area Manager**

*Carol Alves*
**Administrative Services**

**Maintenance Staff**
*Lee Alejandro*
*Manny Gutierrez*
*Charles Hughes*

**Office Hours**

**Monday - Friday**
8:30am - 3:00pm

**Saturday & Sunday**
Closed

**Important Numbers**
Office: (925) 828-3132
Fax: (925) 828-5450

## Happy Thanksgiving

Thanksgiving is a traditional American holiday that most ethnic groups and religions can celebrate. Families gather together to give thanks for the blessings they have received during the year and create happy memories for the years to come. This is a special time to remember loved ones near and far.

## REDEVELOPMENT UPDATE

The Dublin Housing Commission held its regular meeting on Tuesday October 3rd and discussed a possible amendment to the Annual and Five-Year PHA Plans to add the disposition and redevelopment of Arroyo Vista to the Plans. HUD regulations require a 45-day comment period before a significant amendment such as this can be approved. The comment period is now open. The Commission will consider final adoption of the amendment at a public hearing to be held on Tuesday November 21st at 6 PM in the City Council Chambers at Dublin City Hall. Everyone is welcome to attend this hearing. If you would like to submit written comments before then, please address them to:

Executive Director, Dublin Housing Authority
6700 Dougherty Road, #151
Dublin, CA 94568

**0053**

39



# Arroyo Vista

6700 Dougherty Rd.
Dublin, CA 94568
Phone: (925) 828-3132

*December 2006*

## Dublin Housing Authority Arroyo Vista Staff

**Maggie Newman**
Dublin Area Manager

**Carol Alves**
Administrative Services

**Maintenance Staff**
*Lee Alejandro*
*Manny Gutierrez*
*Charles Hughes*

### Office Hours
Monday - Friday
8:30am – 3:00pm

Saturday & Sunday
Closed

### Important Numbers
Office: (925) 828-3132
Fax: (925) 828-5450

## Redevelopment Update

The Dublin Housing Commission held a special meeting on November 21st to conduct a public hearing on an amendment to the Housing Authority's Annual and Five-Year PHA Plans to add the disposition and redevelopment of Arroyo Vista to the Plans. This public hearing was noticed in the *Tri-Valley Herald* as well as in the November 2006 Arroyo Vista Newsletter.

After closing the public hearing the Commission approved the amendment to the Plans. The Commission reviewed the comments from the Resident Advisory Board in considering its approval. The amended Plans will now be sent to the U.S. Department of Housing and Urban Development (HUD).

At the meeting the Commission also authorized staff to submit an application to HUD for the disposition of the project to the developer team. Staff is scheduling that application for submission in January. However, before HUD will approve the application the environmental review must be completed. City of Dublin staff estimates the environmental review will take six-eight months; thus, we will not know until summer-fall of 2007 whether or not HUD approves our disposition application.

In addition, the Commission has stated several times that it will seek Section 8 Housing Choice Vouchers for relocation of residents. That application has not yet been submitted to HUD so no one should feel they have to find a place to move now. There are many approvals required before the redevelopment can begin, including the disposition application mentioned above. The Housing Authority will hire a relocation specialist to help you with relocation at the appropriate time and will give you plenty of notice.



# *Arroyo Vista*

6700 Dougherty Rd.
Dublin, CA 94568
Phone: (925) 828-3132

## January 2007

### Dublin Housing Authority Arroyo Vista Staff

*Margie Newman*
**Dublin Area Manager**

*Carol Alves*
**Administrative Services**

**Maintenance Staff**
*Lee Alejandro*
*Manny Gutierrez*
*Charles Hughes*

### Office Hours
**Monday – Friday**
8:30am – 3:00pm

**Saturday & Sunday**
Closed

### Important Numbers
Office: (925) 828-3132
Fax: (925) 828-5450

## *Dear Residents,*

As the new manager of Arroyo Vista, I wish you all a very Merry Christmas and Happy, Prosperous, safe New Year. My goal for Arroyo Vista is to make this a desirable, safe place to live. I thank you all in advance for your help in making this possible. Your support is necessary in developing an efficiently run community. I am counting on you.

I hope to meet each of you soon,
Margie Newman
Dublin Area Manager

## Commission Actions

The Dublin Housing Authority Commission met in a special meeting on December 19. One item on their agenda was a discussion about asking the Alameda County Housing Authority for Section 8 Vouchers to be used for relocation of Arroyo Vista residents to allow the redevelopment to proceed. The two Housing Authorities have agreed to discuss the provision of such vouchers, and staff is to report back in January with an update on the matter.
The Commission also authorized the award of a bid to MJB Pipeline to make some necessary sewer and road repairs.

0055



## February 2007

### Arroyo Vista

6700 Dougherty Rd.
Dublin, CA 94568
Phone: (925) 828-3132

### Dublin Housing Authority
### Arroyo Vista Staff

*Margie Newman*
**Dublin Area Manager**

*Carol Alves*
**Administrative Services**

**Maintenance Staff**
*Lee Alejandro*
*Manny Gutierrez*
*Charles Hughes*

**Office Hours**
Monday - Friday
8:30am - 3:00pm

Saturday & Sunday
Closed

### Important Numbers

Office: (925) 828-3132
Fax: (925) 828-5450

## REDEVELOPMENT UPDATE

The Housing Commission held its monthly meeting on January 16. The Commission authorized staff to issue a Request for Proposals to hire a relocation consultant. The consultant will assist Arroyo Vista residents with their relocation needs when the time comes to move. Staff hopes to receive proposals from qualified consultants and bring a recommendation for selection of a consultant back to the Commission at its March meeting.

In the January 2007 newsletter it was noted that the Commission had authorized its staff to discuss with the Alameda County Housing Authority the County Housing Authority providing Section 8 Vouchers for the relocation of Arroyo Vista residents. Those discussions are continuing and staff hopes to finalize them in February.

Do not feel that you have to start looking for a place to move right now. The Housing Authority has not yet submitted the Disposition Application to HUD and the redevelopment cannot proceed until HUD has received and approved the Application. As the Application has not been submitted, staff does not know exactly when it will be approved, it will likely not be before the end of the year.

As the redevelopment is some time in the future, it is important that Arroyo Vista residents be safe and secure in the meantime. This means that certain road repairs to fill pot-holes, sewer repairs, and some landscaping will be done. In addition, vacant units will be fixed up and re-rented, at least until it doesn't make sense to do so. This will avoid eye-sores that lend themselves to vandalism.

The Housing Authority will continue to use this newsletter to communicate on-going matters regarding the redevelopment.



## *Arroyo Vista*

6700 Dougherty Rd.
Dublin, CA 94568
Phone: (925) 828-3132

**Dublin Housing Authority
Arroyo Vista Staff**

*Margie Newman*
**Dublin Area Manager**

*Carol Alves*
**Administrative Services**

**Maintenance Staff**
*Lee Alejandro
Manny Gutierrez
Charles Hughes*

**Office Hours**
Monday - Friday
8:30am - 3:00pm

Saturday & Sunday
Closed

**Closed Every Other Friday**

**Important Numbers**

Office: (925) 828-3132
Fax: (925) 828-5450



# REDEVELOPMENT UPDATE

The Dublin Housing Authority Commission held its regular meeting on March 6 at the Dublin Civic Center. The Commission approved Housing Authority staff's recommendation to retain Overland, Pacific & Cutler as the relocation consultant for the redevelopment of Arroyo Vista.

Overland, Pacific & Cutler (OPC) is based in Oakland. It has provided relocation and property acquisition services to local, state and federal agencies for over 25 years. In our immediate geographic area it has done work for San Francisco, Pleasanton, Union City, Oakland, Richmond, San Jose, Hayward and Fremont. Outside the Bay Area, it has done work for Sacramento, Mendocino, Fairfield, and Redding among others. Housing Authority staff checked references for OPC and they were excellent.

Overland,Pacific & Cutler will meet individually with each household, conduct meetings and workshop with residents, develop a relocation plan, help residents find replacement housing, process claims for moving expenses and work with potential landlords. Arroyo Vista residents should feel assured that they will receive the assistance they need in finding appropriate replacement housing.

We anticipate that we will have an informational meeting in late April or early May to introduce the people from OPC and have them describe their services. You will receive a separate notice for this meeting.

Do not move or feel you have to start looking for a new home. The Housing Authority has not yet submitted the application to HUD that will allow for the redevelopment. We anticipate it will be submitted in April. However, the environmental review document, which must also be submitted to HUD, will likely not be submitted until the end of the year. HUD needs the environmental document before it can approve the redevelopment application Therefore, HUD approval of the redevelopment is not likely to occur until 2008.



# Arroyo Vista

6700 Dougherty Rd.
Dublin, CA 94568
Phone: (925) 828-3132

*May 2007*

## Dublin Housing Authority Arroyo Vista Staff

*Margie Newman*
**Dublin Area Manager**

*Carol Alves*
**Administrative Services**

**Maintenance Staff**
*Lee Alejandro*
*Manny Gutierrez*
*Charles Hughes*

**Office Hours**
Monday - Friday
8:30am - 3:00pm

**Saturday & Sunday**
Closed

**Closed Every Other Friday**

**Important Numbers**
Office: (925) 828-3132
Fax: (925) 828-5450

## REDEVELOPMENT UPDATE

The Dublin Housing Authority Commission held its regular meeting on April 3 at the Dublin Civic Center. The Commission approved the Exclusive Negotiating Rights Agreement (ENRA) with Eden Housing and Citation Homes, the developers that will redevelop Arroyo Vista. The ENRA included several provisions, but key is the provision that the Alameda County Housing Authority will provide up to 150 vouchers for relocation. With this commitment from the Alameda County Housing Authority we don't need relocation vouchers from HUD.

The Dublin Housing Authority plans to submit the application for redevelopment to HUD in May. HUD cannot approve the application until the environmental review is complete, which won't be until the end of the year. We will use this newsletter to keep you informed as to the status of the application.

On April 24 the Housing Authority held two meetings at the Dublin Civic Center to discuss the redevelopment and introduce the relocation consultants to residents. Those attending met the developers and heard about their proposed plans. They also learned about the relocation process from the Housing Authority's consultants. Hopefully, you were able to attend one of those meetings. If not, that is OK—additional meetings will be held, either in a group setting or individually. In the meantime, if you have any questions about relocation please call either Teresa Laverde or John Morris at 877-972-8908 (toll free).

And on another subject... Each year, the Dublin Housing Authority awards a $500 scholarship to a student attending or planning to attend a community college, college, university, trade school or vocational school. If you are a post-high school student with a grade point average (GPA) of at least 2.5, or know of one who lives at Arroyo Vista, please consider applying. Application forms and Program Guidelines are available at the office.



# June 2007

## *Arroyo Vista*

6700 Dougherty Rd.
Dublin, CA 94568
Phone: (925) 828-3132

### Dublin Housing Authority Arroyo Vista Staff

*Margie Newman*
**Dublin Area Manager**

*Carol Alves*
**Administrative Services**

**Maintenance Staff**
*Lee Alejandro*
*Manny Gutierrez*
*Charles Hughes*

**Office Hours**
Monday - Friday
8:30am - 3:00pm

Saturday & Sunday
Closed

**Closed Every Other Friday**

**Important Numbers**
Office: (925) 828-3132
Fax: (925) 828-5450

## REDEVELOPMENT UPDATE

In April all of you received the General Information Notice about the redevelopment of Arroyo Vista and the relocation that will be required. The Notice announced two meetings for April 24 that would be held to discuss the project. Some of you were able to attend those meetings. Representatives of the developers, Eden Housing and Citation Homes were present and described their plans for the project. They presented a slide show and pictures of the proposed layout of the new units and community building. Representatives of the relocation consultant retained by the Housing Authority, Overland Pacific & Cutler, also were present. They described the relocation process and answered a number of questions about timing and relocation benefits. Staff from the Housing Authority were present to answer questions about Section 8 Housing Choice Vouchers

At the meeting Housing Authority staff said there would be a meeting on May 23 to discuss the Section 8 homeownership program. THIS MEETING HAS BEEN CHANGED TO JUNE 6. The meeting is called: Introduction to Family Stability and Section 8 Rental and Homeownership, and will include information on the Section 8 program (both rental and homeownership) and ways of improving your credit to prepare for homeownership or renting in the private market. The meeting will take place at Dublin City Hall in the Regional Meeting Room from 6-8 PM. Watch for the flyer in the mail that announces this meeting.

Do not feel you have to move or begin looking for a new home now. Beginning next year, the relocation consultant will meet with each family individually to ascertain their relocation needs and explain the assistance that is available. In the meantime, if you have any questions about relocation, please call Overland Pacific & Cutler at 877-972-8908 (toll free) and ask for either Teresa Laverde or John Morris.



## Arroyo Vista

July 2007

6700 Dougherty Rd.
Dublin, CA 94568
Phone: (925) 828-3132



**Dublin Housing Authority
Arroyo Vista Staff**

*Margie Newman*
**Dublin Area Manager**

*Carol Alves*
**Administrative Services**

**Maintenance Staff**
*Lee Alejandro
Manny Gutierrez
Charles Hughes*

**Office Hours**
Monday - Friday
8:30am - 3:00pm

**Saturday & Sunday**
Closed

**Closed Every Other Friday**

**Important Numbers**
Office: (925) 828-3132
Fax: (925) 828-5450



## REDEVELOPMENT UPDATE

We had a great turn out at the meeting held at Dublin City Hall on June 6! Thank you to everyone who attended. A lot of information was covered at the meeting:

- The application to HUD to sell the property will be submitted in June. It will take about one year before it is approved.
- The property cannot be demolished until AFTER the application is approved.
- YOU DO NOT HAVE TO MOVE NOW. We anticipate starting relocation activities early next year.
- If you WANT to move before next year, you can.
- The Section 8 vouchers for all eligible households are available after July 25 (let's say, August 1).
- We have Section 8 vouchers for all eligible households—we will not "run out" if you decide to move next year instead of now.
- Housing Authority staff and the Housing Authority's relocation consultant will begin holding small group meetings (about 5 families at a time) at Arroyo Vista to more fully explain the Section 8 program and relocation benefits. We will contact you to schedule your meeting.

At the June 6th meeting a variety of benefits were described including payment of moving assistance, Section 8 voucher program rules, classes and counseling from the Tri Valley Housing Opportunities Center and inclusionary home ownership opportunities in the City of Dublin. You will hear more about all of these during the relocation process.

In the meantime, for questions please call the following:

| | |
|---|---|
| Homeownership/Credit Counseling: | Jorge Ramirez 925-373-3930 |
| Relocation: | John Morris/Teresa Laverde 877-972-8908 (toll free) |
| Section 8 Voucher Rules: | Mary Rizzo Shuman 510-727-8570 |
| Section 8 Homeownership: | Betsy Safine 510-727-8585 |

0060



# Arroyo Vista

6700 Dougherty Rd.
Dublin, CA 94568
Phone: (925) 828-3132

August 2007

## Dublin Housing Authority Arroyo Vista Staff

*Margie Newman*
**Dublin Area Manager**

*Carol Alves*
**Administrative Services**

**Maintenance Staff**
*Lee Alejandro*
*Manny Gutierrez*
*Charles Hughes*

**Office Hours**
**Monday - Friday**
8:30am - 3:00pm

**Saturday & Sunday**
Closed

**Closed Every Other Friday**

**Important Numbers**
Office: (925) 828-3132
Fax: (925) 828-5450

## REDEVELOPMENT UPDATE

On July 17 the Dublin Housing Authority Commission approved the Disposition and Development Agreement (DDA) with the City of Dublin and the Alameda County Housing Authority, and the project developers, Eden Housing and Citation Homes. The Agreement commits each party to certain actions; for example, the Alameda County Housing Authority agrees to provide up to 150 Section 8 vouchers for relocation, Eden Housing will build 179 affordable housing units, Citation will build up to 226 for-sale homes, etc. The City of Dublin also approved the DDA on July 17. The Alameda County Housing Authority will consider it on July 25 after which all parties can sign it.

Approval of the DDA is a major milestone in the redevelopment of Arroyo Vista.

Predevelopment activities are now underway. The environmental review is being done and you may have noticed consultants at Arroyo Vista doing testing and surveying. The Housing Authority will not fill the apartments that become vacant as residents move out and the vacant units will be boarded up.

The Housing Authority has stated many times that the redevelopment process is lengthy and that YOU DO NOT HAVE TO MOVE NOW. We anticipate starting relocation activities early next year so that everyone can be moved by November 2008. However, if you WANT to move before next year, you can.

Housing Authority staff and the Housing Authority's relocation consultant have been holding small group meetings at Arroyo Vista to more fully explain the Section 8 program and relocation benefits. IF YOU WOULD LIKE TO ATTEND THESE MEETINGS PLEASE SIGN UP AT THE OFFICE.

In the meantime, for questions please call the following:

| | |
|---|---|
| Homeownership/Credit Counseling: | Jorge Ramirez (925)-373-3930 |
| Relocation: | John Morris/Teresa Laverde (877)-972-8908 (toll free) |
| Section 8 Voucher Rules: | Mary Rizzo-Shuman (510)-727-8570 |
| Section 8 Homeownership: | Betsy Safine (510)-727-8585 |



# *Arroyo Vista*

6700 Dougherty Rd.
Dublin, CA 94568
Phone: (925) 828-3132

October 2007

**Dublin Housing Authority
Arroyo Vista Staff**

*Margie Newman*
**Dublin Area Manager**

*Carol Alves*
**Administrative Services**

**Maintenance Staff**
*Lee Alejandro*
*Manny Gutierrez*

**Office Hours**
Monday - Friday
8:30am - 3:00pm

Saturday & Sunday
Closed

**Closed Every Other Friday**

**Important Numbers**

Office: (925) 828-3132
Fax: (925) 828-5450

## WISHING YOU A HAPPY HALLOWEEN

It's a time for ghost and goblins to appear again and the staff would like to wish everyone a safe and happy Halloween. If you are out and about on this spooky night, please observe some safety rules.

• Drive carefully, sometimes in all of the excitement, small creatures of the night forget to look both ways before crossing a street or parking lot.
• Parents of "trick or treaters" should always accompany their children.
• Costumes with reflective material are a good idea to make them visible in the early evening.
• Please check your children's "bag of goodies" for tampered packages or unwrapped items and discard anything that looks suspicious.
• If you decorate with Jack-o-Lanterns, please avoid using candles as this is a fire hazard.
• Please respect the privacy of your neighbors who do not participate in Halloween and only knock on doors during the posted hours for trick-or-treating.

0062



## REDEVELOPMENT UPDATE

The Dublin Housing Commission did not meet in the month of September so there is no Commission action to report on. Residents continue to move from Arroyo Vista and we have heard that many are very pleased with their new homes. Next week staff will bid out the contract for boarding up the homes as residents continue to move out. We expect the Commission to award that contract at its October meeting. **Note that the October meeting has been moved to October 16, same time and place.**

In the last newsletter we told you that we have submitted the Disposition Application to HUD. HUD has told us that the Application is under review.

Please report to the office any suspicious activity you may notice at the boarded up units, including graffiti. We need your help to make sure Arroyo Vista remains a safe place to live during the transition.

## Your Birthstone and Flower for October

Opal (Hope, Innocence, Purity). Opals are made up of a non-crystalline form of the mineral silica. The flowers for October are Calendula and Cosmos.

## Parmesan Pork Chops

• 8 pork chops • 1 cup seasoned bread crumbs • 3 Tbsp. grated Parmesan cheese • ½ tsp. salt • ¼ tsp. pepper • 1 egg • 2 Tbsp. milk • ½ Tbsp. butter

Combine bread crumbs, Parmesan cheese, salt and pepper. Beat egg and milk in flat dish. Dip chops in crumbs, then egg mixture, then again in crumbs. Melt butter in baking dish. Place chops in dish. Bake at 325° for one hour, turning after 30 minutes.

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|  | 1 Rent Is Due | 2 | 3 | 4 | 5 Office Closed | 6 |
| 7 | 8 Columbus Day | 9 | 10 | 11 | 12 | 13 |
| 14 | 15 | 16 National Boss Day Commission Mtg | 17 | 18 | 19 Office Closed | 20 |
| 21 | 22 | 23 | 24 | 25 | 26 | 27 |
| 28 | 29 | 30 | 31 Halloween | | OCTOBER | |



# *Arroyo Vista*

6700 Dougherty Rd.
Dublin, CA 94568
Phone: (925) 828-3132

November 2007

**Dublin Housing Authority
Arroyo Vista Staff**

*Margie Newman*
**Dublin Area Manager**

*Carol Alves*
**Administrative Services**

**Maintenance Staff**
*Lee Alejandro*
*Manny Gutierrez*

**Office Hours**
Monday - Friday
8:30am - 3:00pm

Saturday & Sunday
Closed

**Closed Every Other Friday**

**Important Numbers**

Office: (925) 828-3132
Fax: (925) 828-5450

## REDEVELOPMENT UPDATE

Eden Housing and Citation Homes, the developer for Arroyo Vista, have been busy developing the design plans for the redevelopment of Arroyo Vista to submit to the City of Dublin Planning Department. They plan to host a meeting before the end of the year to discuss the plans and answer questions that residents may have about the new project. Watch for an announcement of this meeting.

Your neighbors are continuing to move. As of mid-October the Alameda County Housing Authority has issued Section 8 vouchers to 24 families and the Dublin Housing Authority has provided relocation benefits to those families. A private contractor has been awarded the contract for boarding up the vacant units. On that subject, if you notice any problems with the boarded up units such as graffiti or break-ins, please report them to Margie or Carol at the office. We need your help to assure that Arroyo Vista community remains safe during the relocation period.

The Housing Authority has stated many times that the redevelopment process is lengthy and that **YOU DO NOT NEED TO MOVE NOW.** We anticipate starting relocation activities early next year so that everyone can be moved by November 2008. Housing Authority staff and the relocation consultants have been holding small group meetings at Arroyo Vista to fully explain the Section 8 program and relocation benefits. **IF YOU WOULD LIKE TO ATTEND THESE MEETINGS PLEASE SIGN UP AT THE OFFICE.**

For questions, please call:

Homeownership/Credit Counseling: Jorge Ramirez
925-373-3930

Relocation: John Morris/Teresa Laverde
877-972-8908

Section 8 Voucher Rules: Mary Rizzo-Shuman
510-727-8570

Section 8 Homeownership: Betsy Safine
510-727-8585



# HAPPY HOLIDAYS
## DECEMBER 2007



6700 Dougherty Rd.
Dublin, CA 94568
Phone: (925) 828-3132



**Dublin Housing Authority**
**Arroyo Vista Staff**

*Margie Newman*
**Dublin Area Manager**

*Carol Alves*
**Administrative Services**

**Maintenance Staff**
*Lee Alejandro*
*Manny Gutierrez*

**Office Hours**
Monday – Friday
8:30am - 3:00pm

Saturday & Sunday
Closed

**Closed Every Other Friday**

**Important Numbers**

Office: (925) 828-3132
Fax: (925) 828-5450



# REDEVELOPMENT UPDATE

The Dublin Housing Commission held its regular meeting on November 6 and authorized a contract with the Alameda County Sheriff's Department for security services at Arroyo Vista. The Commission and staff were concerned that as residents move out the vacant units may become targets for vandalism, theft and squatters. It is very important that residents at Arroyo Vista feel safe as other residents move out. The Commission allocated sufficient funds to pay a full time deputy sheriff. The deputy will initially cover the evening hours, after the Housing Authority's office has closed. The coverage time may be adjusted as needed. Police Chief Thuman is preparing the contract we hope to have the contract executed and a deputy in place by the end of the year.

In addition, the Commission approved a contract with Bryan Pullman Construction to board up the vacant units. The contract calls for completion of each board up within 48 hours of notice.

Back in September, Overland Pacific & Cutler, our relocation consultant, began work on the Relocation Plan. We anticipate that a Draft Plan will be ready for review in December or January.

Residents continue to move voluntarily from Arroyo Vista. To date, 33 households have moved. As we have from the beginning of this process, we remind residents that you are not required to move now but if you want to move we will assist you. We anticipate starting relocation activities early next year so that everyone can be moved by November 2008.

Housing Authority staff has been holding small group meetings at Arroyo Vista to more fully explain the Section 8 program. IF YOU WOULD LIKE TO ATTEND ONE OF THESE MEETINGS PLEASE SIGN UP AT THE OFFICE. In addition, Overland Pacific & Cutler is conducting interviews with each household to determine relocation needs. You have already received a letter informing you of the interviews. If you haven't already done so, please contact Overland at the phone number below to schedule an interview.

## For questions, please call:

Homeownership/Credit Counseling: Jorge Ramirez
925-373-3930

Relocation:      John Morris/Teresa Laverde
877-972-8908

Section 8 Voucher Rules:   Mary Rizzo-Shuman
510-727-8570

Section 8 Homeownership:   Betsy Safine
510-727-8585

_DUBLIN HOUSING AUTHORITY – 'ARROYO VISTA' PROJECT_

# ATTACHMENT 2
## Tables of Household Characteristics and Needs
## And
## Current Units vs. Required Units vs. Available Units

### ARROYO VISTA
### HOUSEHOLD CHARACTERISTICS AND NEEDS

| Households | Number of Occupants | Number of Children | Number of Persons with Disabilities | Number of Elderly Persons (Age 62+) | Average Occupancy per unit | Special Language Needs |
|---|---|---|---|---|---|---|
| One Hundred Forty Seven Residential Tenancies | 442 | 191 (159 of whom are of school-age) | 17 (4 of whom are children) | 18 (17 of whom are "Heads of Household") | 3.0 | 4 Spanish 4 Farsi 2 Punjabi 1 Chinese 1 Tagalog |

### ARROYO VISTA
### CURRENT UNITS VS. REQUIRED UNITS VS. AVAILABLE UNITS

| Units by Bedroom Count – Current and Required | | | Units by Bedroom Count Available by Geographic Area | | | | | Total Units Available – Tri-Valley, Alameda County, and Oakland |
|---|---|---|---|---|---|---|---|---|
| Units by Bedroom Count | Current Units (Arroyo Vista) | Required Units* | Tri-Valley Area | Alameda County (Other) | Available Tri-Valley Section 8 Units (Seniors) | Available Section 8 Units (Alameda County) | Available Section 8 Units (Oakland) | |
| One-bedroom | 15 | 38 | 1 | 11 | 4 | 10 | 71 | 97 |
| Two-bedroom | 81 | 82 | 8 | 32 | 1 | 42 | 204 | 287 |
| Three-bedroom | 29 | 26 | 12 | 41 | 0 | 58 | 140 | 251 |
| Four-bedroom | 22 | 1 | 5 | 13 | 0 | 15 | 43 | 76 |
| Five-bedroom | 0 | 0 | 0 | 2 | 0 | 0 | 0 | 2 |
| Six (+) Bedroom | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 1 |
| All Units | 147 | 147 | 27 | 99 | 5 | 125 | 458 | 714 |

\* Required units reflect that number of units required for the project, and can be reduced by the number of households/bedrooms already relocated to date. The required need is to be fulfilled over an approximate nine (9)-month period of displacement. As noted in the text at '**Unit Allocation**', p. 12, data both obtained by Consultant staff and, provided to, and reviewed by OPC indicated that some households may be "over-housed" (i.e., more bedrooms currently allocated than required) and, that five (5) households may be "over-income" and not eligible for Section 8 housing assistance. All ostensible anomalies as to eligibility for low-income housing assistance will be addressed during the relocation implementation process.

0066

*DUBLIN HOUSING AUTHORITY – 'ARROYO VISTA' PROJECT*

# ATTACHMENT 3

# HUD ANNUAL INCOME LIMITATIONS
## ALAMEDA COUNTY

The following figures are approved by the U. S. Department of Housing and Urban Development (H.U.D.) for use in the **County of Alameda** to define and determine housing eligibility by income level.

| HUD ANNUAL INCOME LIMITS BY CATEGORY – ALAMEDA COUNTY (2007) AREA FOUR PERSON MEDIAN: $83,800. | | | | | |
|---|---|---|---|---|---|
| Family Size | Extremely Low Annual Income | Very Low Annual Income | Lower Annual Income | Median Annual Income | Moderate Annual Income |
| One Person | $17,600. | $29,350. | $46,350. | $58,700. | $70,400. |
| Two Person | $20,100. | $33,500. | $53,000. | $67,000. | $80,500. |
| Three Person | $22,650. | $37,700. | $59,600. | $75,400. | $90,500. |
| Four Person | $25,150. | $41,900. | $66,250. | **$83,800.** | $100,600. |
| Five Person | $27,150. | $45,250. | $71,550. | $90,500. | $108,600. |
| Six Person | $29,150. | $48,600. | $76,850. | $97,200. | $116,700. |
| Seven Person | $31,200. | $51,950. | $82,150. | $103,900. | $124,700. |
| Eight Person | $33,200. | $55,300. | $87,450. | $110,600. | $132,800. |

Figures are per the Department of Housing and Community Development (California), Division of Housing Policy Development, **April 18, 2007**

# ATTACHMENT 4
## Sample Residential Interview Form
## follows immediately hereafter


**(Remainder of page intentionally left blank)**

CASE # ____-____-____-____                                    FUNDING SOURCE: _____

## OVERLAND, PACIFIC & CUTLER, INC. - RESIDENTIAL INTERVIEW FORM

Interview Date: _____     Site Move-In: _____     Initiation of Negotiations: _____     Interviewer: _____

---

Head of Household _____

Address: _____ #_____

_____

Site Telephone # _____ Work/Cell # _____

Fax # _____ Email _____

Social Security Number : _____

**DISPLACEMENT STATISTICS**

**Dwelling Type** _____ Approx. Sq.Ft. _____

Approximate Age of Unit: _____ yrs. _____

# Bedrooms _____ # Bathrooms _____ # Rooms _____ □ Laundry Fac.

□ Garage  □ Carport  □ Pets: If so, describe _____

**Mobile Home**: Size: _____ ft x _____ ft

Year: _____ Model: _____ Pad Rent: $ _____

**OCCUPANCY / FINANCIAL INFORMATION**

**Occupancy Status**:   □ **Own**        □ **Rent**

Condition of unit : □ Excellent  □ Good  □ Fair  □ Poor

Home business? _____ Description _____

Do you rent out any rooms in the dwelling? □Yes  □ No
If so, names: _____
If so, is person or persons considered part of household? □Yes  □No

**Owners**: □ Mortgage  □ Own Clear

Monthly Payment: Principal $ _____

    Loan Balance(s) as of _____ : $ _____
    Loan Type: □Fixed  □Variable  Annual % Rate _____
    Loan Type: □Fixed  □Variable  Annual % Rate _____
    Original Date(s) of Current Loan(s) : _____
    Rem. Loan Term _____ Months   Rem. Loan Term _____ Months
**Renters**: □ Total Monthly Rent:$ _____ Landlord _____
□ Written Agreement Date _____
□ M/M  □ Lease  □ Vacant/No Contact
□ Unit Furnished  □ Unit Unfurnished  □ Security Deposit? $ _____
If Sect.8, Total Tenant Rent. $ _____
Caseworker: _____
Telephone #: _____

---

**OTHER:**

**ETHNICITY:**
□ White   □ Asian
□ Hispanic/Latino
□ African American
□ Other _____

**PRIMARY LANGUAGE:**
□ English   □ Spanish
□ Other: _____

**SPECIALIZED NEEDS:**

□ AFDC / TANF, Pension SS, SSI

□ Other Public Assistance (ask for Entitlement Letter)

□ Elderly Household

□ Handicapped Household:

Describe: _____
_____

Need Barrier-Free: Yes □ No □

Own Car? Yes □   No □

□ Need access to public transportation?

Describe mode: _____

□ Need to live near medical facilities? Describe location:
_____
_____

□ Other Special needs or services requested:
Describe: _____
_____

---

**Monthly Utilities:**
**Which** _____

**Gas**: □ Tenant  □ Owner
**Electricity**: □ Tenant  □ Owner  **Water**: □ Tenant  □ Owner
**Other**: _____

**Appliances Owned by Tenant:**
□ Stove  □ Refrigerator  □ W/D
□ Other _____

Are all occupants planning to move at the same time, and to the same replacement dwelling?
□ Yes  □ No

Please explain:
_____
_____
_____
_____
_____

---

| HOUSEHOLD MEMBERS | SEX | AGE | move-in | INCOME | RELATIONSHIP/ EMPLOYER/SCHOOL |
|---|---|---|---|---|---|
| 1 | M  F | | | | |
| 2 | M  F | | | | |
| 3 | M  F | | | | |
| 4 | M  F | | | | |

55

# ATTACHMENT 5

 **Informational Statement for Families and Individual**

As you are aware, the Dublin Housing Authority (referred to as the "Displacing Agency") has made the determination to dispose of the Arroyo Vista public housing complex, which you currently occupy. As the project schedule proceeds, it will be necessary for you to move from your dwelling. You will be notified in a timely manner as to the date by which you must move.

Please read this information as it will be helpful to you in determining your eligibility and the amount of relocation benefits you may receive under the federal and/or state law. We recommend you save this Informational Statement for reference.

The Displacing Agency has retained the professional firm of Overland, Pacific & Cutler, Inc. (OPC) to provide relocation assistance to you. The firm is available to explain the program and benefits. Their address and telephone number is:

<div align="center">

**Overland, Pacific & Cutler, Inc.**
**7901 Oakport Street, Suite 4800**
**Oakland, CA 94621-2089**
**Phone 877.972.8908**

</div>

Spanish speaking representatives are available. Si necesita esta información en español, por favor llame a su representante.

**PLEASE DO NOT MOVE PREMATURELY. THIS IS NOT A NOTICE TO VACATE YOUR DWELLING.** However, if you desire to move sooner than required, you must contact your representative with Overland, Pacific & Cutler, Inc., so you will not jeopardize any benefits. This is a general informational brochure only, and is not intended to give a detailed description of either the law or regulations pertaining to the Displacing Agency's Relocation Assistance Program.

**Please continue to pay your rent to the Displacing Agency, otherwise you may be evicted and jeopardize the relocation benefits you may be entitled to receive.**

## II.     ASSISTANCE IN LOCATING A REPLACEMENT DWELLING

The Displacing Agency, through its representatives, will assist you in locating a comparable replacement dwelling by providing referrals to appropriate and available housing units. You are encouraged to actively seek such housing yourself.

When a suitable replacement dwelling unit has been found, the Displacing Agency will carry out an inspection and advise you as to whether the dwelling unit meets the Housing Quality Standards. A decent, safe and sanitary housing unit provides adequate space for its occupants, proper weatherproofing and sound heating, electrical and plumbing systems. Your new dwelling must pass inspection prior to entering into a rental agreement and before relocation assistance payments can be authorized.

### III.    MOVING BENEFITS

If you must move as a result of displacement by the Displacing Agency, you will receive a payment to assist in moving your personal property. The actual, reasonable and necessary expenses for moving your household belongings may be determined based on the following methods:

- A Fixed Moving Payment based on the number of rooms you occupy (see below); **or**,

- A payment for your Actual Reasonable Moving and Related Expenses based on at least two written estimates and receipted bills; **or**,

- A combination of both.

For example, you may choose to move yourself and receive a payment based on the Fixed Moving Schedule shown below, plus contract with a professional mover to transport large items that require special handling. In this case there may be an adjustment in the number of rooms which qualify under the Fixed Moving Schedule.

### A.    **Fixed Moving Payment**

A Fixed Moving Payment is based upon the number of rooms you occupy and whether or not you own your furniture. The payment is based upon a schedule approved by the Displacing Agency, and ranges, for example, from $400.00 for one furnished room to $2,150.00 for eight rooms in an unfurnished dwelling. (For details see the table below.) Your relocation representative will inform you of the amount you are eligible to receive if you choose this type of payment.

| FIXED MOVING SCHEDULE - CALIFORNIA | | | |
|---|---|---|---|
| **Occupant owns furniture** | | **Occupant does NOT own furniture** | |
| 1 room | $625.00 | 1 room | $400.00 |
| 2 rooms | $800.00 | each additional room | $65.00 |
| 3 rooms | $1,000.00 | | |
| 4 rooms | $1,175.00 | | |
| 5 rooms | $1,425.00 | | |
| 6 rooms | $1,650.00 | | |
| 7 rooms | $1,900.00 | | |
| 8 rooms | $2,150.00 | | |
| each additional room | $225.00 | | |

If you select a Fixed Moving Payment, you will be responsible for arranging for your own move and the Displacing Agency will assume no liability for any loss or damage of your personal property. A Fixed Moving Payment also includes utility hook-up, credit check and other related moving fees.

B.    **Actual Moving Expense (Professional Move)**

If you wish to engage the services of a licensed commercial mover and have the Displacing Agency pay the bill, you may claim the ACTUAL cost of moving your personal property up to 50 miles. Your relocation representative will inform you of the number of competitive moving bids (if any) which may be required, and assist you in developing a scope of services for Displacing Agency approval.


## IV. SECTION 8 TENANTS

When you do move, you may be eligible to use your Section 8 eligibility at a replacement. As outlined above, you will be provided counseling and other advisory services along with moving benefits.

A.    **Rental Assistance**
If you qualify, and comparable rentals are not available within the Housing Authority's payment standard for your replacement housing needs, and there is a difference between your current rent and your new rent at a replacement dwelling, you may be eligible to receive a gap differential, called a rental assistance payment, paid to you based on a 42-month period. You will be required to provide your relocation representative with monthly rent verification prior to the determination of your eligibility for this payment.

- OR -

B.    **Downpayment Assistance**
If you qualify, and wish to purchase a home as a replacement dwelling, you can apply up to the total amount of your rental assistance payment towards the downpayment and non-recurring incidental expenses. Your relocation representative will clarify procedures necessary to apply for this payment.


## V.    QUALIFICATION FOR AND FILING OF RELOCATION CLAIMS

To qualify for Replacement Housing Assistance, you must rent and occupy or purchase and occupy a comparable replacement unit **within twelve (12) months from the date you move from the displacement dwelling.** All claims for relocation benefits must be filed with the Displacing Agency **within eighteen (18) months** from the date on which you move.


## VI.    EVICTIONS

Any person who occupies the real property and is in lawful occupancy is presumed to be entitled to relocation benefits. Except for the causes of eviction set forth below, no person lawfully occupying property to be disposed of by the Displacing Agency will be required to move without having been provided with at least 90 days written notice from the Agency. Eviction will be undertaken only in the event of one or more of the following reasons:

- Failure to pay rent; except in those cases where the failure to pay is due to the Agency's failure to keep the premises in habitable condition, is the result of harassment or retaliatory action or is the result of discontinuation or substantial interruption of services;

- Performance of dangerous illegal act(s) in the unit;

0072

- Material breach of the rental agreement and failure to correct the breach within 30 days of notice;

- Maintenance of a nuisance and failure to abate within a reasonable time following notice;

- Refusal to accept one of a reasonable number of offers of replacement dwellings; or,

- The eviction is required by State or local law and cannot be prevented by reasonable efforts on the part of the public entity.

## VII.    APPEAL PROCEDURES - GRIEVANCE

Any person aggrieved by a determination as to eligibility for a relocation payment, or the amount of a payment, may have his/her claim reviewed or reconsidered in accordance with the Displacing Agency's appeals procedure.  Details on appeal procedures are available upon request from the Displacing Agency.

## VIII.    TAX STATUS OF RELOCATION BENEFITS

California Government Code Section 7269 indicates no relocation payment received shall be considered as income for the purposes of the Personal Income Tax Law, Part 10 (commencing with Section 170 01) of Division 2 of the Revenue and Taxation Code, or the Bank and Corporation Tax Law, Part 11 (commencing with Section 23001) of Division 2 of the Revenue and Taxation Code. Furthermore, federal regulations (49 CFR Part 24, Section 24.209) also indicate that no payment received under this part (Part 24) shall be considered as income for the purpose of the Internal Revenue Code of 1954, which has been redesignated as the Internal Revenue Code of 1986. The preceding statement is not tendered as legal advice in regard to tax consequences, and displacees should consult with their own tax advisor or legal counsel to determine the current status of such payments.

## IX.    ADDITIONAL INFORMATION AND ASSISTANCE AVAILABLE

Those responsible for providing you with relocation assistance hope to assist you in every way possible to minimize the hardships involved in relocating to a new home.  Your cooperation will be helpful and greatly appreciated.  If you have any questions at any time during the process, please do not hesitate to contact your relocation representative at 877.972.8908.

November, 2007

# ATTACHMENT 6

'General Information Notice'
**April 12, 2007**
**follows immediately hereafter**

(Remainder of page intentionally left blank)



DUBLIN HOUSING AUTHORITY
ADMINISTRATIVE OFFICE
2 7941 Atherton Street
Hayward, CA 94541
Phone: (510) 538-8876
Fax (510) 727-8554
TDD (510) 727-8551
Website: www.haca.net

April 12, 2007

6700 Dougherty Road
Dublin, CA 94568

## GENERAL INFORMATION NOTICE

Dear Tenant:

The Dublin Housing Authority ("Housing Authority") intends to redevelop the property known as Arroyo Vista ("Property"). The Housing Authority will sell the Property to a developer team that will demolish all structures and build new housing. The redevelopment of the Property will involve demolition of the building where you live.

The Housing Authority originally received governmental funds for the development of the Property. This notice is to inform you of your rights under State and federal law with respect to relocation. You will receive a minimum of 90 days notice before you must vacate the Property.

This notice is to inform you of your relocation rights. If we proceed with disposition of the Property and you are displaced as a result, you may be eligible for certain relocation assistance under the federal law.

**DO NOT MOVE! This is not a notice to vacate the premises, nor a notice of relocation eligibility.** You should continue to pay your monthly rent to the Housing Authority, because failure to pay rent and meet other obligations as a tenant may cause loss of tenancy (and loss of any relocation assistance that would otherwise be available if the Housing Authority ultimately seeks to relocate you). In addition, please contact the relocation consultant listed below before you make any moving plans. Moving could cause you to lose relocation assistance that would otherwise be available if the Housing Authority ultimately seeks to relocate you.

If you are required to permanently relocate, and you are eligible for relocation assistance, you will be given advisory services, including referrals to replacement housing, and at least 90 days written notice of the date that you are required to move. You may also be eligible for moving expenses and financial assistance to help you obtain replacement housing.

You will be notified of your eligibility for relocation assistance, the details of the available assistance, and the timing of relocation as soon as the Housing Authority finalizes redevelopment plans.

Should any other persons move into your unit with you after you receive this notice, then your assistance may be reduced.

0075

An **informational meeting** has been scheduled with all residents of the Property to be held in the **Regional Meeting Room** at the **Dublin Civic Center** on **Tuesday April 24, 2007**. The Civic Center address is **100 Civic Plaza**, Dublin (this is the City Hall building next to the Dublin Library). For your convenience we have scheduled two meetings, one at **2:00 p.m.** and the other at **6:30 p.m.**, to answer your questions regarding the Housing Authority's plans to redevelop the Property. We will cover the same information at both meetings so it is not necessary that you attend both.

Again, this is not a notice to vacate and does not establish eligibility for relocation payments or other relocation assistance. This letter is important and should be retained. As part of the planning process, the Dublin Housing Authority has retained the services of **Overland, Pacific & Cutler, Inc.** (OPC), an experienced relocation consultant. If you have any questions regarding relocation, please contact:

**Teresa R. Laverde or John Morris of OPC at (877) 972-8908 (toll-free)**

Sincerely,

Christine Gouig
Executive Director
Dublin Housing Authority

Cc:    Tom Makin
       David Richman
       Mary Rizzo Shuman

# ATTACHMENT 7

**INFORMATIONAL MEETINGS**
**AND**
**REPRESENTATIVE "HAND-OUTS"**

**follow immediately hereafter**

**(Remainder of Page Intentionally Left Blank)**

0077

Tri-Valley Housing Opportunity Center



Family Stability and Home Linkage Program
*Orientation*

Wednesday May, 16 2007 6:00-7:00 p.m.
City of Dublin Library Community room
200 Civic Plaza
Dublin, CA  94568

Learn about our Services:
✓ One-On-One Financial Education Counseling
✓ Financial Literacy Classes
✓ Budget and Credit Counseling
✓ Achieve Self-Sufficiency through stable
   employment, housing, and savings
✓ Assist qualified mortgage ready participants
   achieve homeownership
✓ City Programs

Register Online:
Space is limited please, register in advance
www.tvhoc.org
(925) 373-3930
We do not offer childcare.

0078



Tri-Valley Housing Opportunity Center
20-A South L Street, Livermore CA 94550
(925) 373-3038    www.tvhoc.org

# TVHOC Housing Opportunities
# And
# Family Stability and Home Linkage Programs

PROGRAM PROCESS

| TVHOC ORIENTATION | → | *ONE-ON-ONE COUNSELING SESSION | → | EDUCATIONAL PROGRAMS | → | TVHOC HOUSING SERVICES |
|---|---|---|---|---|---|---|

**TVHOC ORIENTATION**

• Overview of TVHOC Programs and Services:

-One-on-One Counseling and Case management

-TVHOC Stepping Stones or Fast Track Programs

-Financial Education Program

-Life Skills and Workforce Development Programs

-Individual Development Accounts

-Tax Preparation Services

-Homebuyer Workshop Certificate Program

-City Down Payment Assistance and Affordable Housing Programs

-Affordable Rental Directory and General Housing Information

**ONE-ON-ONE COUNSELING SESSION**

• Individualized Spending Plan

• Review Credit Report

• Credit Counseling Referral (if applicable)

• Develop Individual Action Plan

• Affordable Housing Programs Linkage (if applicable)

• Tri-Valley Region Housing Interest List

• Home Linkage Documentation Package Creation (Renter or Homebuyer)

• Schedule Follow-up One-on-One Counseling Sessions

• Educational Program Determination:
-Stepping Stones: Financial Education
-Fast Track: Homebuyer Workshop

**EDUCATIONAL PROGRAMS**

**\*\*Stepping Stones**
10 Hour Financial Education Program
(5) 2-Hour Workshops

1. Banking and Loan Basics
2. Establishing Banking and Knowing Your Money
3. Savings and Knowing Your Rights
4. Establishing Credit and Proper Use of Credit
5. Personal Loans and Homeownership

**\*\*Fast Track**
9 Hour Homebuyer Certificate Program
(2) 4-Hour Workshops

Part I
-Are You Ready to Buy a Home?
-Managing Your Money
-Understanding Credit

Part II
-Getting a Mortgage Loan
-Shopping for a Home
-Keeping Your Home
-Predatory Lending

**\*\*PARTICIPATION IN AN EDUCATIONAL PROGRAM IS DETERMINED BY A COUNSELOR AT THE ONE -ON-ONE COUNSELING SESSION**

**TVHOC HOUSING SERVICES**

• Creation of Home Linkage Documentation Package (Renter or Homebuyer, if applicable)

• Affordable Housing application assistance (if applicable)

• Preferred Lender and Vendor resources

*Counselors will monitor and track the progress of each client throughout the process

 

Education is the Key to Homeownership

# Change the Date!

## ARROYO VISTA TENANTS!!! MARK YOUR CALENDARS!!!

The Date for the "**Getting Ready for Section 8**" workshop has changed.

New Date/Location: June 6th @ 6PM @ Dublin City Hall.

## Please join us and find out how you'll benefit

- Section 8 Rental Vouchers — use them anywhere!
  - Family Stability & Home Linkage Programs
    - Improve Your Credit
      - Section 8 Homeownership Option
  - City of Dublin Down Payment Assistance

For more information call Betsy Safine @ (510) 727-8585



*Plus one family will win a door prize



# TRI-VALLEY HOUSING OPPORTUNITY CENTER

## ORIENTATION QUESTIONNAIRE

NAME: _____

ADDRESS: _____

CITY: _____    ZIP: _____

PHONE: _____    EMAIL: _____

EMPLOYER: _____

EMPLOYMENT LOCATION: (CIRCLE) DUBLIN    SAN RAMON    DANVILLE    PLEASANTON    LIVERMORE    OTHER

BIRTHDAY:    MONTH: _____    DATE: _____    YEAR: _____

HOUSEHOLD SIZE:  1    2    3    4    5    6+        # OF DEPENDANTS:  1    2    3    4    5    6+

YEARLY GROSS HOUSEHOLD INCOME (BEFORE TAXES ARE DEDUCTED):  (CIRCLE)

$0 - $17,000        $17,001 - $30,000        $30,001 - $50,000

$50,001 - $65,000        $65,001 - $80,000        $80,001 OR ABOVE

MARITAL STATUS: (CIRCLE)    MARRIED        DIVORCED        UNMARRIED        SEPARATED        WIDOWED

ETHNICITY: _____

CITIZENSHIP: (CIRCLE)        U.S. CITIZEN        PERMANENT RESIDENT        NON-RESIDENT/ALIEN

PREFERRED LANGUAGE: _____

ARE YOU A FIRST TIME HOMEBUYER? (CIRCLE)        YES        NO

ARE YOU A VETERAN: (CIRCLE)        YES        NO

CURRENT HOUSING SITUATION: (CIRCLE)        RENT        OWN        LIVE W/FAMILY

WHAT ARE YOUR HOUSING GOALS?: (PLEASE LIST) _____

_____

0081

Housing Authority of the County of Alameda (HACA)
Section 8 Housing Choice Voucher Program



It's all about choice.

### You choose where you want to live:

- Find a new rental in Dublin or in any of the other ten cities or unincorporated areas in HACA's jurisdiction, or
- Move to any other city, county or state when you choose to transfer (Portability).
- You will be offered the opportunity to move back to the new development with your voucher.

### You choose what type of housing you want:

- Single-family home, townhouse or apartment?
- What is important to you (close to schools, a garage, a pool, etc.)?

### How you use your voucher:

- HACA will be your new Housing Authority and will be issuing your voucher.
- If you want to transfer to a unit outside of HACA jurisdiction, HACA staff will prepare your Portability Packet and will send it to the housing authority that has jurisdiction for where you want to relocate.
- If you stay within HACA jurisdiction, you will be assigned a Housing Specialist who is your contact person at HACA.
- Your voucher size depends on the number of people in your family.
- Your rent share will be affordable (usually 30% of your adjusted monthly income minus an allowance for utilities).
- You find a new home (you will have help from the relocation team for this) and you and the property owner complete a Request for Tenancy Approval (RTA). The RTA states how much rent the property owner is asking, what utilities you are responsible for paying and when the unit will be available for inspection.
- HACA staff will inspect your new home to make sure it meets Housing Quality Standards.
- You and the property owner agree upon a move in date (after the inspection passes) and you sign a lease with the property owner and move in. HACA will then begin a Housing Assistance Payments Contract (HAPC) with the property owner on your behalf.
- You continue to be responsible for certifying your eligibility every year. You must report income and family composition changes to HACA and abide by Section 8 Family Responsibilities.

# ATTACHMENT 8

**Sample Interview Form – 'Businesses,
Non-profit Organizations and Farms'
follows immediately hereafter**

**(Remainder of Page Intentionally Left Blank)**

# OVERLAND, PACIFIC & CUTLER, INC. - BUSINESS INTERVIEW FORM

CASE ID: _____          PROJECT:_____ Funding:_____

AGENCY: _____          CONSULTANT: _____

Parcel #: _____ County: _____  State / Federal  Project #: _____

| OCCUPANT INFORMATION | MAJOR EVENTS: |
|---|---|

Claimant: _____          Site Move-In: _____

Address: _____          First Offer: _____

_____          Initial Interview: _____

          IPR/F&E Walkthrough: _____

Site Owner: _____          Years Established: _____

| | NAME | TITLE | PHONE |
|---|---|---|---|
| CONTACT 1: | _____ | _____ | ( ) |
| CONTACT 2: | _____ | _____ | ( ) |
| Email: | | | ( ) Fax |

Mailing Address (if different than above): _____

| OWNERSHIP TYPE: | ☐ Sole Proprietorship | ☐ Partnership | ☐ Corporation | ☐ Non-Profit/Type: |
|---|---|---|---|---|

| OCCUPANCY STATUS: | ☐ Rent | ☐ Lease | ☐ Mortgage | ☐ Own (Clear) | ☐ Vacant | ☐ No Contact |
|---|---|---|---|---|---|---|

| ETHNICITY: | ☐ White | ☐ Hispanic | ☐ Black | ☐ Asian | ☐ Other: _____ |
|---|---|---|---|---|---|

| PRIMARY LANGUAGE: | ☐ English | ☐ Spanish | ☐ Other: _____ |
|---|---|---|

## BUSINESS INFORMATION

Business Description/Product or Service:   ☐ Office ☐ Retail ☐ Manufacturing ☐ Warehouse ☐ Service ☐ Other:

Special Features:
Parking:
Zoning:
Clearance/ Height:

Loading/Docks/Cranes/Access:

Hazardous Materials/Disposal/Emissions/Handling/Storage/UST:

| Special Permits? | ☐ Yes | ☐ No | Any leased equipment on site? |
|---|---|---|---|
| Special Utilites ? | ☐ Yes | ☐ No | |
| Outside Specialists Required? | ☐ Yes | ☐ No | |

Est. Value of Property to be moved: $

Obsolete or Equipment can't be moved?  /describe  ☐ Yes ☐ No

Inventory List Available? Yes / No

Multiple Businesses on Site?   ☐ Yes ☐ No

Sub-Leasing to Others?   ☐ Yes ☐ No

Other Locations?  Where:   ☐ Yes ☐ No

Franchise?   ☐ Yes ☐ No

Customer Source/area:

Relocate Business:   ☐ Yes ☐ No

Monthly Occupancy Payment:   $

Terms: _____

Options: _____

Number of Employees: FT: _____ PT: _____

Annual Gross Sales:   $ _____

Annual Net Income:   $ _____

Federal ID #

Office/Retail sq.ft.: _____

Whse/Shop sq.ft.: _____

Open Yard sq.ft.: _____

Est. time to move:   Best time:

Est. time to locate repl. Site?

Advance $$ needed?   ☐ Yes ☐ No

BM-11 (1/05)

0084

**Significant Improvements/Equipment/Machinery:**

**Replacement Property Requirements   Area/Facility Preference and size / Access/disabilities:**

**Comments:**

**Certification:**

I (We) certify that all of the information on this survey is true and correct to the best of my (our) knowledge. The information contained herein shall be treated confidentially to the extent allowed by law.

Respondent(s): _____     Date: _____

_____     Date: _____

Interviewer: _____     Date: _____

BM-11 (1/05)

# ATTACHMENT 9

## INFORMATIONAL STATEMENT FOR BUSINESSES, NONPROFIT ORGANIZATIONS AND FARMS

### *Introduction*

As you are aware, the Dublin Housing Authority (referred to as the "Displacing Agency") has made the determination to dispose of the Arroyo Vista public housing complex, where you currently conduct your business. As the project schedule proceeds, it will require you to move and relocate your business. You will be notified in a timely manner as to the date by which you must move.

Please read this information as it will be helpful to you in determining your eligibility and the amount of your relocation benefits under the federal and/or state law. We suggest you save this informational statement for reference.

This is not a notice to move. It is important that you do not move before you learn what you must do to receive relocation payments and other assistance to which you may be entitled. The Agency has retained the services of Overland, Pacific & Cutler, Inc. (OPC), a qualified professional relocation firm, to assist you. The firm is available to explain the program and benefits. Their address and telephone number is:

 **Overland, Pacific & Cutler, Inc.**
**7901 Oakport Street, Suite 4800**
**Oakland, California 94621**
**Telephone:  (877) 972-8908**

Spanish speaking representatives are available. Si necesita esta información en Español, por favor llame a su representante.

## Summary of Relocation Assistance

As an eligible displaced person, you will be offered appropriate financial and advisory assistance to help you relocate, including:

A.      Payment for your moving expenses. You will receive either:

- A Payment for Actual Reasonable Moving and Related Expenses, or
- A Fixed Payment In Lieu of a Payment for Actual Moving and Related Expenses

B.      Referrals to suitable replacement locations.

C.      Other help to reestablish your business and minimize the impact of the move including help in preparing claim forms to request relocation payments.

If you disagree with the Agency's decision as to your right to a relocation payment, or the amount of the payment, you may appeal that decision.

## SOME GENERAL QUESTIONS

**How will I know I am eligible for relocation assistance?**

Ordinarily, eligibility begins on the date the owner of the property receives the Agency's initial written offer to purchase it. Therefore, you should not move before that date. If you do, you may not be eligible for relocation assistance.

**How Will the Agency Know How Much Help I Need?**

You will be contacted at an early date and personally interviewed by a representative of the Agency to determine your needs and preferences for a replacement location and other services. The interviewer will ask questions about such matters as your space requirements. It is to your advantage to provide the information so that the Agency, through its relocation consultant, can assist you in moving with a minimum of hardship. The information you give will be kept in confidence.

**How Soon Will I Have to Move?**

Every reasonable effort will be made to provide you with sufficient time to find and reestablish your business in a suitable replacement location. If possible, a mutually agreeable date for the move will be worked out. Unless there is an urgent need for the property (e.g., your occupancy would present a health or safety emergency), you will not be required to move without at least 90 days advance written notice. It is important, however, that you keep in close contact with the Agency so that you are aware of the time schedule for carrying out the project and the approximate date by which you will have to move.

**I Own The Property; Will I Be Paid For It Before I Have To Move?**

If you reach a voluntary agreement to sell your property to the Agency, you will not be required to move before you receive the agreed purchase price. If the property is acquired through an eminent domain proceeding, you cannot be required to move before the estimated fair market value of the property has been deposited with the court. (You should be able to withdraw this amount immediately, less any amounts necessary to pay off any mortgage or other liens on the property and to resolve any special ownership problems. Withdrawal of your share of the money will not affect your right to seek additional compensation for your property).

**Will I Have To Pay Rent To The Agency Before I Move?**

You may be required to pay a fair rent to the Agency for the period between the acquisition of your property and the date that you move. Your rent and the terms of your tenancy will be generally the same as in the prior arrangement.

**How Will I Find A Replacement Location?**

The Agency will provide you with current and continuing information on available replacement locations that meet your needs. The Agency may also provide you with the names of real estate agents and brokers who can assist you in finding the type of replacement location you require. While the Agency will assist you in obtaining a suitable replacement location, you should take an active role in finding and relocating to a location of your choice. No one knows your needs better than you. You will want a facility that provides sufficient space for your planned activities. You will also want to ensure that there are no zoning or other requirements which will unduly restrict your planned operations. Ask the Agency to explain which kind of moving costs are eligible for repayment and which are not eligible. That will enable you to carry out your move in the most advantageous manner.

0087

**What Other Assistance will be Available to Help Me?**

In addition to help in finding a suitable replacement location, other assistance, as necessary, will be provided by the Agency. This includes information on Federal, State, and local programs that may be of help in reestablishing a business. For example, the Small Business Administration (SBA) provides managerial and technical assistance to some businesses. There may also be a government grant or loan program which can help you reestablish your business. The Agency will assist you in applying for help available from government agencies. The range of services depends on the needs of the business being displaced. You should ask the Agency representative to tell you about the specific services that will be available to you.

**I Have A Replacement Location And Want To Move. What Should I Do?**

Before you make any arrangements to move, notify the Agency, in writing, of your intention to move. This should be done at least 30 days before the date you begin your move. The Agency will discuss the move with you and advise you of the relocation payment(s) for which you may be eligible, the requirements to be met, and how to obtain a payment.

**I Plan To Discontinue My Business Rather Than Move. What Should I Do?**

If you have decided to discontinue your business rather than reestablish, you may still be eligible to receive a payment. Contact the Agency and discuss your decision to discontinue your business. You will be informed of the payment, if any, for which you may be eligible, the requirements to be met, and how to obtain your payment.

**What Kinds of Payments For Moving Expenses Will I Receive?**

Every business is entitled to a relocation payment to cover the reasonable cost of moving. You may choose either:

A.   A **Payment for Actual Reasonable Moving and Related Expenses,** or
B.   A **Fixed Payment In Lieu of Moving and Related Expenses** (if you meet the eligibility requirements).

**What is Payment for Actual Reasonable Moving and Related Expenses?**

If you choose a Payment for Actual Reasonable Moving and Related Expenses, you may claim the cost of:

A.   Transportation of personal property from your present location to the replacement location. (Generally, transportation costs are limited to a distance of 50 miles. If you plan to move beyond 50 miles, discuss your planned move with the Agency.)

B.   Packing, crating, uncrating, and unpacking personal property.

C.   Disconnecting, dismantling, removing, reassembling, and installing relocated and substitute machinery, equipment and other personal property. This includes connection to utilities available nearby and modifications necessary to adapt such property to the replacement structure or to the utilities or to adapt the utilities to the personal property. This includes alterations to the replacement structure required to reinstall machinery, equipment or other personal property

D.   Storage of personal property for a reasonable period of time, if required, at the Agency's discretion.

E.   Insurance of personal property in connection with the move and required storage and the replacement value of property lost, stolen, or damaged in the process of moving where insurance is not readily available.

F.   Any license, permit or certification required by the displaced business, to the extent that the cost is (1) necessary to its reestablishment at the replacement location and (2) does not exceed the cost for the remaining useful life of the existing license, permit, or certification.

G.   Reasonable and <u>preauthorized</u> professional services, including architects, attorneys, and engineer's fees, and consultant's charges, necessary for (1) planning the move of the personal property, (2) moving the personal property, or (3) installing the relocated personal property at the replacement location.

H.   Re-lettering signs, printing replacement stationery made obsolete by the move and customer notifications.

0088

I.    The reasonable cost incurred in attempting to sell an item that is not relocated.

J.    Actual direct loss of personal property. This payment provides compensation for property that is neither moved nor promptly replaced with a "substitute item" at the replacement location. Payment is limited to the lesser of: (1) the estimated cost of moving the property or (2) the fair market value of the property for its continued use at the old location, less any proceeds from its sale. To be eligible, you must make a good faith effort to sell the property, unless the Agency determines that such effort is not necessary.

K.    Purchase and installation of substitute personal property. Payment will be limited to the lesser of: (1) the estimated cost to move the item to the replacement location, or (2) the actual cost of the substitute item delivered and installed at the replacement location, less any proceeds from its sale or its trade-in value. It is important to discuss your plans with the Agency before you proceed.

L.    Searching for a replacement location. This payment may not exceed $1,000.00 and may cover costs for:

- Transportation expenses
- Time spent searching for a replacement location, based on a reasonable salary or earnings
- Reasonable fees paid to real estate agents or brokers to find a replacement location (not fees related to the purchase of a site)
- Meals and lodging away from home

The Agency representative will explain all eligible moving costs, as well as, those which are not eligible. You must be able to account for all costs that you incur; so keep all your receipts. The Agency will inform you of the documentation needed to support your claim.

You may minimize the amount of documentation needed to support your claim, if you elect to "self-move" your property. Payment for self-move is based on the amount of an acceptable low bid or estimate obtained by the Agency. If you self-move, you may move your personal property using your own employees and equipment or a commercial mover. If you and the Agency cannot agree on an acceptable amount to cover the cost of the "self-move," you will have to submit full documentation in support of your claim.

You may elect to pay your moving costs yourself and be reimbursed by the Agency or, if you prefer, you may have the Agency pay the mover directly. In either case, let the Agency know before you move. Select your mover with care. The Agency representative can help you select a reliable and reputable mover.

When a payment for "actual direct loss of personal property" or "substitute personal property" is made for an item, the estimated cost of moving the item may be based on the lowest acceptable bid or estimate obtained by the Agency. If not sold or traded-in, the item must remain at the old location and ownership of the item must be transferred to the Agency before you may receive the payment.

## What are Reestablishment Expenses?

A small business, farm or non-profit organization may be eligible to receive a payment of up to $10,000 for expenses actually incurred in relocating and reestablishing such operation at a replacement site.

Eligible expenses must be reasonable and necessary, as determined by the Agency. They may include but are not limited to the following:

A.    Repairs or improvements to the replacement real property as required by federal, state or local law, code or ordinance.

B.    Modifications to the replacement property to accommodate the business operation or make replacement structures suitable for conducting the business.

C.    Construction and Installation costs for exterior signage to advertise the business.

D.    Provision of utilities from right-of-way to improvements on the replacement site.

0089

E.   Redecoration or replacement of soiled or worn surfaces at the replacement site, such as paint, paneling or carpeting.

F.   Licenses, fees, and permits where not paid as part of moving expenses.

G.   Feasibility surveys, soil testing and marketing studies.

H.   Advertising of replacement location.

I.   Professional services in connection with the purchase or lease of a replacement site.

J.   Estimated increased costs of operation during the first 2 years at the replacement site, for such items as:

    1. Lease or rental charges
    2. Personal or real property taxes
    3. Insurance premiums, and
    4. Utility charges (excluding Impact fees)

K.   Impact fees or one-time assessments for anticipated heavy utility usage.

L.   Other items that the Agency considers essential to the reestablishment of the business.

### What Expenses Are *Not* Eligible for Reestablishment Payment?

The following is a non-exclusive listing of reestablishment expenditures not considered to be reasonable, necessary or otherwise eligible:

A.   Purchase of capital assets, such as, office furniture, filing cabinets, machinery or trade fixtures.

B.   Purchase of manufacturing materials, production supplies, product inventory, or other items used in the normal course of the business operation.

C.   Interior or exterior refurbishment at the replacement site, except as otherwise provided for under the business reestablishment payment.

D.   Interest costs associated with any relocation expense or the purchase of replacement property.

E.   Payment to a part-time business in the home which does not contribute materially to the household income.

### What is Fixed Payment In Lieu Of A Payment For Actual Reasonable Moving And Related Expenses?

A Fixed Payment In Lieu Of a Payment for Actual Reasonable Moving and Related Expenses to a business or farm operation is based on the average annual net earnings of the business or farm operation. The payment to an eligible business or farm operation may not be less than $1,000.00, nor more than $20,000.00. The nonprofit organization may be eligible for a payment from $1,000.00 to $20,000.00 subject to the following:

A displaced nonprofit organization may choose a fixed payment as stated above if the Agency determines that it cannot be relocated without a substantial loss of existing patronage (membership or clientele.) A nonprofit organization is assumed to meet this test, unless the Agency demonstrates otherwise. Any payment in excess of $1,000.00 must be supported with financial statements for the two 12 month periods prior to displacement. The amount to be used for the payment is the average of the last two (2) years annual net earnings. Documentation required may be income tax returns, certified financial statements and accounting records or other similar evidence acceptable to the Agency.

0090

To qualify for an In-Lieu payment:

A.   A displaced **business**:

   1.   Must own or rent personal property which must be moved in connection with the displacement and for which an expense would be incurred in such move, and the business vacates or relocates from its displacement site.

   2.   Must be unable to relocate without a substantial loss of existing patronage.

   3.   Must not be part of a commercial enterprise having more than three other establishments which are not being acquired by the Agency, and which are engaged in the same or similar business activities.

   4.   Must not be operated at a displacement dwelling/site solely for the purpose of renting such dwelling/site to others.

   5.   Must have contributed materially to the income of the displaced person during the two (2) taxable years prior to displacement.

B.   A displaced **nonprofit organization** (1) must be unable to relocate without a substantial loss of its existing patronage; and, (2) must not be part of an enterprise having more than three other establishments which are not being acquired by the Agency.

C.   A displaced **farm operation** must meet certain minimum income requirements.

The average annual net earnings of a business or farm operation are one-half of its net earnings before Federal, State, or local income taxes during the two (2) taxable years immediately prior to the taxable year in which it was displaced. If not in business for a full two years prior to displacement, the net earnings shall be based on the actual period of operation at the acquired site projected to an annual rate. Average net earnings may be based on a different period of time when the Agency determines it to be more equitable. Net earnings include any compensation paid to the owners of the business, a spouse or dependents. The displaced person shall furnish the Agency proof of net earnings through income tax returns, certified financial statements, or other reasonable evidence which the Agency determines is satisfactory.

The Agency will inform you as to your eligibility for this payment and the documentation you must submit to support your claim. Remember, when you elect to take this payment you are not entitled to reimbursement for any other moving expenses.

### I Own An Outdoor Advertising Display. What Relocation Payment Will I Receive?
As the owner of an outdoor advertising display, you are eligible for a 'Relocation Payment For Actual Reasonable Moving And Related Expenses'. You are not eligible to receive a 'Payment In Lieu Of A Payment For Actual Reasonable Moving And Related Expenses'.

If you choose not to relocate or replace the sign, the payment for "direct loss of personal property" would be the lesser of: (1) the depreciated reproduction cost of the sign, as estimated by the Agency, less the proceeds from its sale, or (2) the estimated cost of moving the sign without temporary storage. The Agency will inform you as to the exact costs that may be reimbursed.

### How do I File a Claim for a Relocation Payment?
You must file a claim for a relocation payment. The Agency will provide you with the required claim forms, assist you in completing them, and explain the type of documentation that you must submit in order to receive your relocation payments. If you must pay any relocation expenses before you move (e.g., because you must provide a security deposit if you lease your new location), discuss your financial needs with the Agency. You may be able to obtain an advance payment. An advance payment may be placed in "escrow" to ensure that the move will be completed on a timely basis.

0091

If you are a tenant, you must file your claim within 18 months after the date you move. If you own the property, you must file within 18 months after the date you move, or the date you receive the final acquisition payment, whichever is later. However, it is to your advantage to file as soon as possible after you move. The sooner you submit your claim, the sooner it can be processed and paid. If you are unable to file your claim within 18 months, the Agency may extend this period.

You will be paid promptly after you file an acceptable claim. If there is any question regarding your right to a relocation payment or the amount of the payment, you will be notified, in writing, of the problem and the action you may take to resolve the matter.

### Appeals

If you disagree with the Agency's decision as to your right to a relocation payment or the amount of payment, you may appeal the decision to the Agency. The Agency will inform you of its appeal procedures. At a minimum, you will have 18 months to file your appeal with the Agency. Your appeal must be in writing. However, if you need help, the Agency will assist you in preparing your appeal. If you are not satisfied with the final appeal decision, you may seek review of the matter by the courts.

### Tax Status of Relocation Benefits

Relocation benefit payments are not considered as income for the purpose of the Internal Revenue Code of 1986 or the Personal Income Tax Law, Part 10 (commencing with Section 17001) of Division 2 of the Revenue and Taxation Code, or the Bank and Corporation Tax law, Part 11 (commencing with Section 23001) of Division 2 of the Revenue and Taxation Code. The preceding statement is not tendered as legal advice in regard to tax consequences, and displacees should consult with their own tax advisor or legal counsel to determine the current status of such payments.

### Lawful Presence Requirement

Pursuant to the Public Law 105-117 of 11-21-97, in order to be eligible to receive non-residential relocation benefits in federally-funded relocation projects, the owner of a sole proprietorship and all owners of a partnership must provide information regarding their lawful presence in the United States, and a for-profit or a non-profit corporation must certify that it is authorized to conduct business in the United States. Sole proprietorships or partnerships with owners who are not lawfully present in the United States, or who decline to provide this information, may be denied relocation benefits. Relocation benefits will be prorated to reflect the number of owners with certified lawful presence in the US.

### Additional Information

If you have further questions after reading this brochure, contact Overland, Pacific & Cutler, Inc. and discuss your concerns with your relocation representative. You may wish to read the California Relocation Assistance Act regulations which describe the relocation process in more detail.

November, 2007

# ATTACHMENT 10

# HOUSING AUTHORITY OF ALAMEDA COUNTY

### Conventional Public Housing Grievance Procedure

## SECTION 1.    PURPOSE AND SCOPE

The purpose of this grievance procedure is to assure that tenants are afforded an opportunity for a hearing if the tenant disputes, within a reasonable time, any Housing Authority action or failure to act involving the tenant's lease or Housing Authority regulations which adversely affect the individual tenant's rights, duties, welfare or status.  This grievance procedure is incorporated in the dwelling lease and is a part thereof.

## SECTION 2.    APPLICABILITY

(a)    This grievance procedure is applicable to all individual grievances as defined in Section 3 between the tenant and the Authority, except that this procedure shall not apply to any grievance concerning an eviction or termination of tenancy based upon a tenant's creation or maintenance of a threat to the health or safety of other tenants or Housing Authority employees.

(b)    This grievance procedure shall not be applicable to disputes between tenants not involving the Authority or to class grievances, nor is this procedure intended to be a forum for initiating or negotiating policy changes between a group or groups of tenants and the Authority's Housing Commission.

## SECTION 3.    DEFINITIONS

For the purpose of this procedure, the following definitions are applicable:

(a)    "Grievance" shall mean any dispute which a tenant may have with respect to the Authority's action or failure to act in accordance with the individual tenant's lease or Authority regulations which adversely affect the individual tenant's rights, duties, welfare, or status.

(b)    "Complainant" shall mean any tenant whose grievance is presented to the Authority in accordance with Sections 4 and 5.

(c)    "Elements of due process" shall mean an eviction action or a termination of tenancy in a State or local court in which the following procedural safeguards are required:

    1.    Adequate notice to the tenant of the grounds for terminating the tenancy and for eviction;

    2.    Right of the tenant to be represented by counsel;

0093

3.  Opportunity for the tenant to refute the evidence presented by the PHA including the right to confront and cross-examine witnesses and to present any affirmative legal or equitable defense which the tenant may have; and,

4.  A decision on the merits.

(d)  "Authority" and "Housing Authority" shall mean the Housing Authority of Alameda County.

(e)  "Hearing Officer" shall mean a person selected in accordance with Section 5 of this procedure to hear grievances and render a decision with respect thereto.

(f)  "Hearing Panel" shall mean a panel selected in accordance with Section 5 of this procedure to hear grievances and render a decision with respect thereto.

(g)  "Tenant" shall mean the adult person (or persons) (other than a live-in aide):

1.  Who resides in the unit, and who executed the lease with the PHA as lessee of the dwelling unit, or, if no such person now resides in the unit,

2.  Who resides in the unit, and who is the remaining head of household of the tenant family residing in the dwelling unit.

(h)  "Resident organization" includes a resident management corporation.


# SECTION 4.    INFORMAL SETTLEMENT OF GRIEVANCES

(a)  Any grievance shall be personally presented either orally or in writing (telephone calls will not be accepted), to the Authority main office so that the grievance may be discussed informally and settled without a hearing. The grievance must be presented within seven (7) working days of the Authority's act or failure to act, which is the basis of the grievance.

(b)  A written summary of such discussion shall be prepared within ten (10) working days of the meeting, and one copy shall be given to the tenant and one copy shall be retained in the Authority's tenant file.  The summary shall specify:

1.  The names of the participants;

2.  Date(s) of the meeting(s);

3.  The nature of the proposed disposition of the complaint;

4.  The specific reasons therefore; and,

5.  The procedures by which a formal hearing under Section 5 may be obtained if the complainant is not satisfied with the proposed disposition.

# SECTION 5.    PROCEDURE TO OBTAIN A HEARING

(a)  Request for Hearing.  The complainant shall submit a written request for a formal hearing to the Authority's main office within seven (7) working days after receipt of the summary of discussion pursuant to Section 4 of this procedure.  The written request shall specify:

 1.    The reasons for the grievance; and,

 2.    The action or relief sought.

(b)  Selection of Hearing Officer or Hearing Panel.  Grievances shall be presented before a hearing officer or hearing panel.  A hearing officer or hearing panel shall be selected as follows:  The hearing officer shall be an impartial, disinterested person selected jointly by the Authority and the complainant.  If the Authority and the complainant cannot agree on a hearing officer, they shall each appoint a member of a hearing panel, and the members so appointed shall select a third member.

 If the members appointed by the Authority and the complainant cannot agree on a third member, such member shall be appointed by an independent arbitration organization or by any other third party agreed upon by the Authority and the complainant.

(c)  Failure to Request a Hearing.  If the complainant does not request a hearing in accordance with this section, then the Authority's disposition under Section 4 shall become final.  Failure to request a hearing does not constitute a waiver by the complainant of his/her right thereafter to contest the Authority's action in disposing of the complaint in an appropriate judicial proceeding.

(d)  Hearing Prerequisites.  All grievances shall be personally presented either orally or in writing pursuant to the informal procedure prescribed in Section 4 as a condition precedent to a hearing under this section.  However, if the complainant shall show good cause why he/she failed to proceed in accordance with Section 4 to the hearing officer or hearing panel, the provisions of this subsection may be waived by the hearing officer or hearing panel.

(e)  Escrow Deposit.  Before a hearing is scheduled in any grievance involving the amount of rent which the Authority claims is due, the complainant shall pay to the Authority an amount equal to the amount of rent due and payable as of the first of the month preceding the month in which the act or failure to act took place.  The complainant shall thereafter deposit the same amount of the monthly rent in an escrow account monthly until the complaint is resolved by decision of the hearing officer or hearing panel.

 These requirements may be waived by the Authority in extenuating circumstances.  Unless so waived, the failure to make such payments shall not constitute a waiver of any right the complainant may have to contest the Authority's disposition of his/her grievance in any appropriate judicial proceeding.

(f)  Scheduling of Hearings.  Upon complainant's compliance with paragraphs (a), (d), and (e) of this Section, and unless there are extenuating circumstances, a hearing shall be scheduled by the hearing officer or panel for a time and place reasonably convenient to both the complainant and the Authority.

 A written notification specifying the time, place and procedures governing the hearing shall be delivered to the complainant and the appropriate Housing Authority official.

0095

(g)     Discovery. Both the complainant and the Authority have the right to discovery. This means that both parties shall have the right to review physical evidence that will be presented in the Grievance Hearing. The Authority shall notify the tenant of their right to discovery. Requests for discovery must be made in writing and shall be made no later than two (2) days prior to the scheduled Hearing. If the complainant requests discovery under the provisions of this section, the Authority must provide copies of physical evidence, at the complainant's cost, or give access to such evidence at least two working days before the Hearing. At the Hearing, neither the Authority nor the tenant shall present evidence that has not been made available through discovery.

## SECTION 6.     PROCEDURES

(a)     The hearing shall be held before a hearing officer or hearing panel, as appropriate.

(b)     The complainant shall be afforded a fair hearing providing the basic safeguards of due process which shall include:

     1.     The opportunity to examine before the hearing and, at the expense of the complainant, to copy all documents, records and regulations of the Authority that are relevant to the hearing. Any documents not so made available after request therefore by the complainant may not be relied on by the Authority at the hearing.

     2.     The right to be represented by counsel or other person chosen as his or her representative.

     3.     The right to a private haring unless the complainant requests a public hearing.

     4.     The right to present evidence and arguments in support of his or her complaint, to controvert evidence relied on by the Authority, and to confront and cross-examine all witnesses on whose testimony or information the Authority relies; and,

     5.     A decision based solely and exclusively upon the facts presented at the hearing.

(c)     The hearing officer or hearing panel may render a decision without proceeding with the hearing if the hearing officer or hearing panel determines that the issue has been previously decided in another proceeding.

(d)     If the complainant or the Authority fails to appear at the scheduled hearing, the hearing officer or hearing panel may make a determination to postpone the hearing for not to exceed five (5) working days, or may make a determination that the party has waived his/her right to a hearing.

     Both the complainant and the Authority shall be notified of the determination by the hearing officer or hearing panel. Such determination shall not constitute a waiver of any right the complainant may have to contest the Authority's disposition of the grievance in an appropriate judicial proceeding.

(e)     At the hearing, the complainant must first make a showing of an entitlement to the relief sought, and thereafter the Authority must sustain the burden of justifying the Authority's action or failure to act against which the complaint is directed.

(f)    The hearing shall be conducted informally by the hearing officer or hearing panel.  Oral or documentary evidence pertaining to the facts and issues raised by the complaint must be received without regard to admissibility under the rules of evidence applicable to judicial proceedings, with the exception of discovery provisions outlined in Section 5 (h).  The hearing officer or hearing panel shall require the Authority, the complainant, counsel and other participants or spectators to conduct themselves in an orderly fashion.

Failure to comply with the directions of the hearing officer or hearing panel to obtain order may result in exclusion from the proceedings or in a decision adverse to the interests of the disorderly party and granting of or denial of the relief sought, as appropriate.

(g)    The complainant or the Authority may arrange, in advance and at the expense of the party making the arrangement, for a tape recording of the hearing.  Any interested party may purchase a copy of such recording.

(h)    <u>Accommodation of persons with disabilities.</u>

(1)    The Authority will provide reasonable accommodation for persons with disabilities to participate in the hearing.  Reasonable accommodation may include qualified sign language interpreters, readers, accessible locations, or attendants.

(2)    If the tenant is visually impaired, any notice to the tenant, which is required under this subpart, will be in an accessible format.

## SECTION 7.    DECISION OF THE HEARING OFFICER OR HEARING PANEL

(a)    The hearing officer or hearing panel shall prepare a written decision, together with the reasons therefore, within fourteen (14) working days after the hearing is concluded.  A copy of the decision shall be sent to the complainant and the Authority who shall retain a copy of the decision in the tenant's folder.  A copy of such decision, with all names and identifying references deleted, shall also be maintained on file by the Authority and made available for inspection by a prospective complainant, his/her representative, or a hearing panel or hearing officer.

(b)    The decision of the hearing officer or hearing panel shall be binding on the Authority which shall take all actions, or refrain from any actions, necessary to carry out the decision unless the Housing Authority Housing Commission determines within twenty (20) working days, and promptly notifies the complainant of its determination, that

1.    The grievance does not concern the Authority's action or failure to act in accordance with or involving the complainant's lease or Housing Authority regulations, which adversely affect the complainant's rights, duties, welfare or status.

2.    The decision of the hearing officer or hearing panel is contrary to applicable federal, state or local law, HUD regulations or requirements of the annual contributions contract between HUD and the Authority.

(c)    A decision by the hearing officer, hearing panel or Housing Commission in favor of the Authority, or which denies the relief requested by the complainant in whole or in part shall not constitute a waiver of, nor affect in any manner whatsoever any rights the complainant may have to a trial de novo or judicial review in any judicial proceedings which may thereafter be brought in the matter.

# ATTACHMENT 11

'Housing Authority of Alameda County –
SECTION 8 PROGRAM ADMINISTRATIVE PLAN
NOVEMBER 14, 2007'

- # -

## EXTRACT

SECTION
'35. INFORMAL HEARINGS'
follows immediately hereafter

(Remainder of page intentionally left blank)

Housing Authority of the County of Alameda

Section 8 Program Administrative Plan

November 14, 2007

EXTRACT

SECTION
'35. INFORMAL HEARINGS'

## 35.   INFORMAL HEARINGS

### 35.1.   WHEN AN INFORMAL HEARING WILL BE PROVIDED

35.1.1.   HACA will give a participant family an opportunity for an informal hearing to consider whether the following decisions are in accordance with the law, HUD regulations and HACA policies:

35.1.1.1.   A determination of a family's annual or adjusted income and the use of such income to compute the housing assistance payment;

35.1.1.2.   A determination of the appropriate utility allowance, if any, for tenant-paid utilities from HACA's utility allowance schedule;

35.1.1.3.   A determination of unit size under HACA subsidy standards;

35.1.1.4.   A determination that a participant family is residing in a unit with a larger number of bedrooms than appropriate under HACA subsidy standards, or HACA's determination to deny a family's request for an exception from the standards;

35.1.1.5.   A determination to terminate assistance for a participant family because of the family's action or failure to act; and

35.1.1.6.   A determination to terminate assistance because the participant family has been absent from the assisted unit for longer than the maximum period permitted under HACA policy and HUD rules.

### 35.2.   WHEN AN INFORMAL HEARING WILL NOT BE PROVIDED

35.2.1.   HACA will not give a participant family the opportunity for an informal hearing for any of the following:

35.2.1.1.   Discretionary administrative determinations by HACA;

35.2.1.2.   General policy issues or class grievances;

35.2.1.3.   Establishment of HACA's schedule of utility allowances;

35.2.1.4.   HACA determination not to approve a family's request for an extension or suspension of a voucher term;

35.2.1.5.   HACA determination not to approve a unit or lease;

35.2.1.6.   A determination that a unit is not in compliance with HQS. (However, HACA must provide the opportunity for a hearing to a family facing termination because of a breach of HQS caused by the family);

35.2.1.7.   HACA determination that a unit is not in accord with HQS because of the family size; and

35.2.1.8.   HACA determination to exercise or not to exercise any right or remedy against an owner under a HAP contract.

### 35.3.   PROCEDURE

35.3.1.   A participant family must request an informal hearing in writing.

35.3.2.   The request must:

35.3.2.1.   state why the family disagrees with HACA's decision; and

35-1

0100

35.3.2.2.  either be delivered to HACA's front desk or postmarked no later than 14 days after the date that HACA mailed the Notice of Termination.

35.3.3. Extenuating circumstances that prevent a participant from requesting an informal hearing within 14 days of the determination letter will be taken into consideration.  The participant must provide documentation verifying the need for more time (airline tickets and travel itinerary, funeral announcement, verification of lengthy hospitalization).  The decision to provide additional time is solely at HACA's discretion.

35.3.4. After consultation with the participant about the participant's availability, HACA will schedule the requested Informal Hearing and notify the participant.

35.3.5. Hearing Documents

35.3.5.1.  Both parties have the right to 'discovery', that is, the right to review in advance any documents or other physical evidence that the other party will use in the hearing.

35.3.5.2.  If the participant invokes discovery, at least two business days prior to the hearing, HACA will mail the participant a copy of all documents that HACA will use in presenting its case at the hearing.

35.3.5.3.  HACA will always invoke discovery.  The participant (or the participant's representative) will be required to submit all information that the participant will use in presenting his or her case two business days prior to the hearing.

35.3.6. Hearing Officer

35.3.6.1.  A Hearing Officer will be designated by HACA from within HACA or from outside the agency.

35.3.6.2.  The Hearing Officer will be other than the person who made or approved the decision being appealed or a subordinate of that person.

35.3.7. Hearing

35.3.7.1.  All hearings will be audio recorded.

35.3.7.2.  The Hearing Officer is responsible for conducting the hearing according to HACA procedures and for creating an audio recording of it.

35.3.7.3.  The Hearing Officer may allow a reasonable time after the Informal Hearing for either side to submit relevant information.

35.3.7.4.  A participant family that does not comply with HACA's appointment policy will automatically lose its informal hearing

35.3.8. The Hearing Officer's decision will be based on a preponderance of the evidence:

35.3.8.1.1. presented at the hearing; as well as

35.3.8.1.2. third party verification authorized by the Hearing Officer to be submitted within a specified time period after the Informal Hearing to substantiate hearing testimony (e.g., proof of address).

35.3.8.2.  The Hearing Officer will render a decision within 10 business days of the hearing.  If third party verification is required, the Hearing

35-2

0101

Officer will render a decision within 15 business days of receipt of the verification.

35.3.8.3.    Failure of the Hearing Officer to render a decision within the stipulated time period because of extenuating circumstances shall not invalidate the decision when rendered.

35.3.8.4.    Anytime the Hearing Officer's decision is against HACA, the Executive Director will review the decision to determine if HACA is bound by the Hearing Officer's judgment.

35.3.8.4.1. HACA is not bound by a hearing decision:

35.3.8.4.1.1.    concerning a matter for which HACA is not required to provide an opportunity for an informal hearing under this Section, or that otherwise exceeds the authority of the person conducting the hearing under the HACA hearing procedures.

35.3.8.4.1.2.    contrary to HUD regulations or requirements, or otherwise contrary to Federal, State, or local law.

35.3.8.4.2. If the Executive Director determines that HACA is not bound by the Hearing Officer's decision, the Executive Director will notate the Hearing Officer's decision as 'Denied' and sign and date the denial.

35.3.8.5.    The Hearing Officer's decision (and, if applicable, the Executive Director's denial of the Hearing Officer's decision) will be mailed to the family.  As proof of service, decisions that uphold termination will be sent by certified mail.  The decision will be written so that it incorporates the requirements for a *Notice of Final Decision*.

### 35.4.    APPEAL OF HEARING OFFICER'S DECISION

35.4.1. At the Executive Director's sole discretion, a second Informal Hearing will be granted, if the participant can show:

35.4.1.1.    that the Hearing Officer's decision (or, if applicable, the Executive Director's denial of the Hearing Officer's decision) is contrary to HUD regulation or requirements, or otherwise contrary to Federal, State, or local law; or

35.4.1.2.    a significant injustice not known at the time of the first hearing.

35.4.2. To request a second hearing, the participant, or the participant's representative, must submit a written request to the Executive Director within 14 days of the date that HACA mailed the participant the informal hearing decision.  The request must either:

35.4.2.1.    state why the Hearing Officer's decision ( or, if applicable, the Executive Director's denial of the Hearing Officer's decision) is contrary to HUD regulations or requirements, or otherwise contrary to law; or

35.4.2.2.    describe the significant injustice not known at the time of the first hearing.

35.4.3. At the Executive Director's sole discretion, a rehearing may be limited to written submissions by both parties.

35-3

0102