DECLARATION OF LISA S. GREIF
IN SUPPORT OF PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER
AND PRELIMINARY INJUNCTION

EXHIBIT 7

DECLARATION OF LISA S. GREIF
IN SUPPORT OF PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER
AND PRELIMINARY INJUNCTION

EXHIBIT 12

5-3-08

Yo Guadalupe Aguilera numero 7
Vivo enel Apartamento de Arroy
no me quiero mover de la Razón de que
Vista Por la queda Cerca del trabajo
me queda Cerca del trabajo
y Tambien tengo las posibidudes
de Pagar la renta y de la
escuela Para mi nieeto le Atude
Muchas Gracias por le Atude

Guadalupe Aguilera


a 3 de Junio de 2008

Yo martha Gutierrez Mi Apartamento
es el Numero H/07 y Yo NO me quiero
mover de aqui Porque Yo estoy muy agusto
to aqui y yo quisiera. que ojala que
NO setumbaran Las Casas Porque mi
hija esta muy Cerca la escuela.
y Poreso yo estoy Pensado mucho en
la movida.
Yo

Martha. C.

0347

Mr. Carl Wilder
Apt 131
6700 Dougherty Rd
Dublin, CA 94568-3158

I first first moved into
arroya vista in the fall of
1983, when I awoke from a
coma. I couldn't walk, talk,
or do much.

So I spent the last 25 years
trying to recover 50% solutions. arroya
vista has been my home. I
know no other. I love my little
house.

Thank you
Cd W.

Dear To Whom It May Concern

     I am writing this letter to let you know I am a resident in the Dublin Housing Low Income and I don't want to move from my home because I am a single parent of four children and they enjoy living here they have their schools and their doctor and family in this area. We have lived have been here since 1991 and we are happy in the area and we don't want to move. There are not a lot of places out there were I can afford on a monthly plan like what I am paying here. I want a safe place for me and my kids to grow up and study in good schools that I know the people and where my kids do because it is not easy for me to move to place to place when I have my parents around close to take of them too.

                        Sincerely yours

                        Maria Guadalupe
                        Apt.28

¡Hola! Mi nombre es Rosa Y. Rizo y tengo un hijo, se llama Angel y vivemos en arroyo vista. Donde vivemos muy agusto. Donde me gustaria seguir vivendo porque yo trabajo en Dublin y mi hijo va ala escuela, cual se me hace muy bien esa escuela para el y donde ya se acustumbro. Say una madre soltera cual no podria pagar la renta de otro lugar, por eso estoy aqui de vajos ingresos. Se me aria muy dificil se me muevo para cubrir mis gastos. Gracias de atemano.

ATte.

Rosa Y. Rizo

# 145

0349

Dublin, CA May 28 08

To whom it may concern;

This is To certify that I Andres
Arroyo and my family hed lived in
Arroyo Vista Housing Project for 22
years, I'm an Mexican American
I and my family loved living in this
place and all my children went to
Local Schools and I as a disabled
person I've got the benefit of having
any Drs, for me and my wife very
close by in Plesanton, the food stores
are very close the Church too so I'd
Like to keep this place intact for the
enjoinment of my Family

Sincerly

Ancha Arroyo

.

.

.

.

DECLARATION OF LISA S. GREIF
IN SUPPORT OF PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER
AND PRELIMINARY INJUNCTION

EXHIBIT 13

0351



**CITY CLERK**

File # ☐ 6 0 0 - 6 0
                    400-20
**AGENDA STATEMENT**
**CITY COUNCIL MEETING DATE: June 3, 2008**

| | |
|---|---|
| **SUBJECT:** | **PUBLIC HEARING:** PA 07-028 Arroyo Vista – Environmental Assessment/Finding of No Significant Impact (FONSI) for the Arroyo Vista Project.<br>*Report prepared by Erica Fraser, Senior Planner* |
| **ATTACHMENTS:** | 1) Mailed Notice of Continuation of June 3, 2008 public hearing<br>2) Notice of Finding of No Significant Impact and Notice of Intent to Request Approval of Property Disposition, dated May 28, 2008.<br>3) Environmental Assessment. |
| **RECOMMENDATION:** | 1) Receive Staff Presentation;<br>2) Open public hearing;<br>3) Take testimony from the public;<br>4) Close public hearing; and<br>5) Continue item to July 15, 2008. |

**PROJECT DESCRIPTION:**

Arroyo Vista is a 150 unit detached affordable housing project which is owned by the Dublin Housing Authority (DHA) and managed by the Alameda County Housing Authority under contract. The housing complex was constructed over 20 years ago. The complex has design problems which have created ongoing building maintenance problems, as well as sewer and water main problems. The City has begun the process of reviewing the redevelopment of the existing site with a new residential development which will contain 378 dwelling units, community building, childcare facility and related improvements.

Before the new development can be constructed, the United States Department of Housing and Urban Development (HUD) must approve the disposition (sale) of the property to the private parties (Eden Housing and Citation Homes) the DHA has selected to develop the project. The City is required to analyze the environmental impacts of the disposition of the property and the proposed project under the National Environmental Policy Act (NEPA) and to submit its determination to HUD before HUD can approve the disposition.

*Background*

The process of environmental review for the Arroyo Vista Project will be two-fold. Since a part of the project requires a Disposition Application to be submitted to the HUD, a review under NEPA is required.

---

**COPIES TO:** In House Distribution
File

**ITEM NO.** 6.5

0352

Additionally, if the project proceeds forward, a review under the California Environmental Quality Act (CEQA) will be required for any development proposal. Each of these two reviews has special notification requirements. At this point in the process, the City is the responsible entity for preparation of the environmental review under NEPA. The City has prepared an Environmental Assessment (Attachment 3) and intends to adopt a Finding of No Significant Impact (FONSI).

*Noticing:*

On May 4, 2008, Staff published a notice in the newspaper indicating that a public hearing would be held on June 3, 2008 to discuss the FONSI under NEPA for the proposed Arroyo Vista project. Although this type of Notice is not required by law under NEPA, the City followed a practice similar to what is done when the City evaluates environmental issues on projects under the California Environmental Quality Act (CEQA). In addition, having a hearing early in the process provides additional opportunities for public comment.

The Notice was mailed to all residents of Arroyo Vista, property owners and occupants within 300 feet of Arroyo Vista and other interested parties. The Notice stated that written comments must be submitted by 5pm on June 2, 2008. However, because federal regulations require that the 30-day comment period commence upon publication of the FONSI, the deadline for submission of written comments needed to be extended.

Therefore, on May 23, 2008, Staff mailed a Notice (and published a Notice on May 25th) continuing the June 3, 2008 discussion to July 15, 2008 (Attachment 1). This extension will allow the public the opportunity to submit written comments on the FONSI for 30 days after its publication, as required under NEPA. As with any continued public hearing, the public still has the opportunity to comment at both hearings. The purpose of the continuation is that any Council action would take place at the July 15th hearing and not on June 3rd.

The "Notice of Finding of No Significant Impact and Notice of Intent to Request Approval of Property Disposition," (Attachment 2) was published and mailed on May 28, 2008, and starts the 30-day comment period required under NEPA. All comments related to the FONSI prepared for the Arroyo Vista project must be received within that 30-day period, which ends on June 27, 2008. The City will only consider comments on the FONSI received on or before that date.

In addition to identifying the 30 day comment period, Attachment 2 serves a second purpose in that it is required by HUD regulations to provide notice that the City will authorize DHA to submit a request to HUD to dispose of the Arroyo Vista property. DHA has requested the City include the notice regarding disposition as part of the Notice of the FONSI.

All comments related to the FONSI must be submitted in writing to the City of Dublin Community Development Department by June 27, 2008. All comments related to the Request for Approval of the Disposition (sale) of the Property must be submitted to HUD as specified in the notice.

Members of the public may address the Council on the FONSI at tonight's meeting and those comments will be included as part of the Environmental Review Record under NEPA.

0353

The July 15, 2008 meeting will provide an opportunity for the public to provide <u>general comments on the proposed project</u> prior to the City taking action on the FONSI. The Council will not take testimony regarding the FONSI or the request for approval of the disposition on July 15, 2008.

**RECOMMENDATION:**

Staff recommends that the City Council: 1) Receive Staff presentation; 2) Open public hearing; 3) Take testimony from the public; 4) Close public hearing; and 5) Continue item to July 15, 2008.

0354



# CITY OF DUBLIN

*10-84*

100 Civic Plaza, Dublin, California 94568          Website: http://www.ci.dublin.ca.us

**City of Dublin**
**City Council Public Hearing Notice**
<u>**July 15, 2008 7:00P.M.**</u>
<u>**Arroyo Vista Project**</u>
**And**
**Continuation of June 3, 2008 Public Hearing**

**PROJECT:**          PA 07-028 Arroyo Vista

**PROJECT DESCRIPTION:**          The property known as Arroyo Vista is owned by the Dublin Housing Authority (DHA). The DHA has applied to the federal Department of Housing and Urban Renewal (HUD) for approval to dispose of (sell) the Arroyo Vista property to Eden Housing and Citation Homes for their development of a project which would include the demolition of the existing 150 dwelling unit public housing project and the construction of a new residential development.

The new development would include 378 new dwelling units with 130 affordable apartments, 50 affordable senior apartments, 141 for-sale attached dwelling units and 57 for-sale detached dwelling units. A new childcare facility, community building, recreation areas, hardscape and landscaping will also be constructed on the site.

The City is required to make a determination under the National Environmental Policy Act (NEPA) before HUD can act on DHA's application to sell the property. The City has prepared a Finding of No Significant Impact (FONSI) pursuant to NEPA, determining that the project will not constitute an action significantly affecting the quality of the human environment. Accordingly, the City of Dublin has decided not to prepare an Environmental Impact Statement under the National Environmental Policy Act of 1969.

Prior to construction of the Arroyo Vista project, entitlements are required to be obtained by the Applicants from the City of Dublin. These entitlements include Stage 1/Stage 2 Planned Development Rezone, Tentative Map, General Plan Amendment and Site Development Review. Review of environmental impacts associated with the City approvals will be conducted pursuant to the California Environmental Quality Act (CEQA).

**LOCATION:**          6700 Dougherty Road (APN 941-0007-001-07)

The public hearing before the City of Dublin City Council originally scheduled for **Tuesday, June 3, 2008 at 7:00 p.m.** in the City Council Chambers, 100 Civic Plaza, Dublin **has been continued to Tuesday, July 15, 2008, 7:00 p.m.** in the City Council Chambers, 100 Civic Plaza, Dublin.

**PUBLIC COMMENT:**

The City Council will consider the Finding of No Significant Impact (FONSI) at the July 15, 2008 meeting and will consider authorizing the City Manager to sign the FONSI and authorize the Dublin Housing Authority (DHA) to submit a request to the Department of Housing and Urban Development for disposition of the property to Eden Housing and Citation Homes.

A legally required separate notice, entitled "Notice of Finding of No Significant Impact and Notice of Intent to Request Approval of Property Disposition," will be sent to you on May 28, 2008, beginning a 30-day comment period on the FONSI and the request for approval of property disposition. Any comments on the FONSI or the request for approval of property disposition **must be submitted during the 30-day comment period.**

The public hearing is an opportunity for the public to provide general comments to the City Council on project. The City Council will not receive comments on the FONSI or the disposition of the site during the public hearing on July 15. All comments on the FONSI must be submitted during the 30 day comment period. For further information, please call the City of Dublin Community Development Department at (925) 833-6610.

---

Mary Jo Wilson, AICP
Planning Manager

Dated: May 23, 2008

---

Area Code (925) · City Manager 833-6650 · City Council 833-6650 · Personnel 833-6605 · Economic Development 833-6650
Finance 833-6640 · Public Works/Engineering 833-6630 · Parks & Community Services 833-6645 · Police 833-6670
Planning/Code Enforcement 833-6610 · Building Inspection 833-6620 · Fire Prevention Bureau 833-6606

6/3/08 n.l

ATTACHMENT 1

0355

2 of 4

**NOTICE OF FINDING OF NO SIGNIFICANT IMPACT
AND NOTICE OF INTENT TO REQUEST APPROVAL OF PROPERTY DISPOSITION**

May 28, 2008

City of Dublin

100 Civic Plaza

Dublin, CA 94568

925-833-6610

**These Notices shall satisfy two separate but related procedural requirements for activities to be undertaken by the City of Dublin as Responsible Entity and the Dublin Housing Authority.**

<u>REQUEST FOR APPROVAL OF PROPERTY DISPOSITION</u>

On or about July 16, 2008 the City of Dublin will authorize the Dublin Housing Authority to submit a request to the San Francisco Field Office of the U.S. Department of Housing and Urban Development (HUD) for approval of property disposition under Section 18 of the U.S. Housing Act of 1937, as amended, to undertake a project known as Arroyo Vista Redevelopment for the purpose of redeveloping an existing public housing project and expanding the number of dwelling units, subject to approval of the project by the City. The project proposes relocating the residents of the existing Arroyo Vista public housing, demolishing the improvements, and redeveloping the site with up to 180 affordable rental units, up to 198 for-sale units, including up to 14 affordable units, as well as a child care center, a community building/management office and recreational open space. The project's improvements are proposed to be financed with a variety of sources including low income housing tax credit equity, local funds, state funds, HUD Section 202 funds, Affordable Housing Program funds, commercial loans and private equity. The project is located at 6700 Dougherty Road in Dublin.

<u>FINDING OF NO SIGNIFICANT IMPACT</u>

The City of Dublin has determined that the project will have no significant impact on the human environment. Therefore, an Environmental Impact Statement under the National Environmental Policy Act of 1969 (NEPA) is not required. Additional project information is contained in the Environmental Review Record (ERR) on file at the City of Dublin Community Development Department, 100 Civic Plaza, Dublin, CA 94568 and may be examined or copied weekdays, except holidays, **8:00 AM to 5:00 PM.**

<u>PUBLIC COMMENTS</u>

Any individual, group, or agency may submit written comments on the ERR to the City of Dublin Community Development Department. All comments received by **June 27, 2008** will be

**0356**

**ATTACHMENT 2**

considered by the City of Dublin prior to authorizing submission of a request for approval of property disposition. **Comments should specify which Notice they are addressing.**

## ENVIRONMENTAL CERTIFICATION

The City of Dublin certifies to HUD that Richard Ambrose in his capacity as City Manager consents to accept the jurisdiction of the Federal Courts if an action is brought to enforce responsibilities in relation to the environmental review process and that these responsibilities have been satisfied. HUD's acceptance of the certification satisfies its responsibilities under NEPA and related laws and authorities and allows the Dublin Housing Authority to dispose of property.

## OBJECTIONS TO DISPOSITION ACTION

HUD will accept objections to its approval and the City of Dublin's certification for a period of fifteen days following the anticipated submission date or its actual receipt of the request (whichever is later) only if they are on one of the following bases: (a) the certification was not executed by the Certifying Officer of the City of Dublin; (b) the City of Dublin has omitted a step or failed to make a decision or finding required by HUD regulations at 24 CFR Part 58; (c) the grant recipient or other participants in the development process have committed funds, incurred costs or undertaken activities not authorized by 24 CFR Part 58 before approval by HUD; or (d) another Federal agency acting pursuant to 40 CFR Part 1504 has submitted a written finding that the project is unsatisfactory from the standpoint of environmental quality. Objections must be prepared and submitted in accordance with the required procedures (24 CFR Part 58, Sec. 58.76) and shall be addressed to HUD at 600 Harrison Street, Third Floor, San Francisco, CA 94107-1300. Potential objectors should contact HUD to verify the actual last day of the objection period.

Richard Ambrose, City Manager

4 of 4

# Attachment 3 – Environmental Assessment

The Environmental Assessment document is bound under
separate cover.

Copies of the Environmental Assessment are available at
the City of Dublin Community Development Department
for review

0358

DECLARATION OF LISA S. GREIF
IN SUPPORT OF PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER
AND PRELIMINARY INJUNCTION

EXHIBIT 14                                           0359

### Resident Characteristics Report
#### As of September 30, 2007

Program type : Public Housing

Level of Information : Housing Agency within State and County (CA and 001)

Effective Dates Included : June 01, 2006 through September 30, 2007

Download in Excel     Print Page     Back to Report

*NOTE: Percentages in each area may not total 100 percent due to rounding.*

**Units Information**

| HA | ACC Units | 50058 Required | 50058 Received |
|---|---|---|---|
| CA001 | 3,812 | 1,045 | 569 |
| CA142 - DUBLIN | 150 | 126 | 124 |

0360

Resident Characteristics Report

| Income Information |
|---|

**Distribution of Average Annual Income as a % of 50058 Received**

| HA | Extremely Low Income, Below 30% of Median | | Very Low Income, 50% of Median | | Low Income, 80% of Median | | Above Low Income, 81% + of the Median | | Geo-Coded Income Data Not Available in PIC Data Systems | |
|---|---|---|---|---|---|---|---|---|---|---|
| | Count | Percent | Count | Percent | Count | Percent | Count | Percent | Count | Percent |
| CA001 | 391 | 69 | 115 | 20 | 51 | 9 | 12 | 2 | 0 | 0 |
| CA142 - DUBLIN | 80 | 65 | 30 | 24 | 10 | 8 | 4 | 3 | 0 | 0 |

**Average Annual Income ($)**

| HA | Average Annual Income |
|---|---|
| CA001 | 20,653 |
| CA142 - DUBLIN | 21,021 |

**Distribution of Annual Income as a % of 50058 Received**

| HA | $ 0 | $1 - $5,000 | $5,000 - $10,000 | $10,001 - $15,000 | $15,001 - $20,000 | $20,001 - $25,000 | Above $25,000 |
|---|---|---|---|---|---|---|---|
| CA001 | 2 | 3 | 13 | 27 | 18 | 10 | 27 |
| CA142 - DUBLIN | 4 | 5 | 16 | 19 | 13 | 12 | 31 |

**Distribution of Source of Income as a % of 50058 Received**    ** *Some families have multiple sources of income* **

| HA | With any wages | With any Welfare | With any SSI/SS/Pension | With any other Income | With No Income |
|---|---|---|---|---|---|
| CA001 | 48 | 16 | 55 | 20 | 2 |
| CA142 - DUBLIN | 57 | 15 | 41 | 29 | 4 |

Resident Characteristics Report

TTP/Family Type Information

**Distribution of Total Tenant Payment as a % of 50058 Received**

| HA | $0 | $1 - $25 | $26 - $50 | $51 - $100 | $101 - $200 | $201 - $350 | $351 - $500 | $501 and Above |
|---|---|---|---|---|---|---|---|---|
| CA001 | 0 | 0 | 4 | 2 | 11 | 31 | 20 | 33 |
| CA142 - DUBLIN | 0 | 0 | 7 | 1 | 11 | 28 | 16 | 36 |

**Average Monthly TTP ($)**

| HA | Average Monthly TTP |
|---|---|
| CA001 | 487 |
| CA142 - DUBLIN | 491 |

**Distribution of Family Type as a % of 50058 Received**

| HA | Elderly, No Children, Non-Disabled | | Elderly, with Children, Non-Disabled | | Non-elderly, No Children, Non-Disabled | | Non-elderly, with Children, Non-Disabled | | Elderly, No Children, Disabled | | Elderly, with Children, Disabled | | Non-elderly, No Children, Disabled | | Non-elderly, with Children, Disabled | | Female Headed Household with Children | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Count | Percent | Count | Percent | Count | Percent | Count | Percent | Count | Percent | Count | Percent | Count | Percent | Count | Percent | Count | Percent |
| CA001 | 122 | 21 | 12 | 2 | 58 | 10 | 221 | 39 | 60 | 11 | 7 | 1 | 51 | 9 | 38 | 7 | 200 | 35 |
| CA142 - DUBLIN | 4 | 3 | 1 | 1 | 18 | 15 | 62 | 50 | 5 | 4 | 3 | 2 | 19 | 15 | 12 | 10 | 60 | 48 |

**Average TTP by Family Type ($)**

| HA | Elderly, No Children, Non-Disabled | Elderly, with Children, Non-Disabled | Non-elderly, No Children, Non-Disabled | Non-elderly, with Children, Non-Disabled | Elderly, No Children, Disabled | Elderly, with Children, Disabled | Non-elderly, No Children, Disabled | Non-elderly, with Children, Disabled | Female Headed Household with Children |
|---|---|---|---|---|---|---|---|---|---|
| CA001 | 340 | 639 | 653 | 589 | 335 | 741 | 357 | 435 | 531 |
| CA142 - DUBLIN | 402 | 1,541 | 518 | 528 | 358 | 1,094 | 290 | 426 | 511 |

Resident Characteristics Report

Family Race/Ethnicity Information

### Distribution by Head of Household's Race as a % of 50058 Received

| HA | White Only | Black/African American Only | American Indian Or Alaska Native Only | Asian Only | Native Hawaiin/Other Pacific Islander Only | White, American Indian/Alaska Native Only | White, Black/African American Only | White, Asian Only | Any Other Combination |
|---|---|---|---|---|---|---|---|---|---|
| CA001 | 46 | 24 | 1 | 25 | 3 | 0 | 0 | 0 | 0 |
| CA142 - DUBLIN | 52 | 28 | 1 | 15 | 4 | 0 | 0 | 0 | 0 |

### Distribution by Head of Household's Ethnicity as a % of 50058 Received

| HA | Hispanic or Latino | Non - Hispanic or Latino |
|---|---|---|
| CA001 | 21 | 79 |
| CA142 - DUBLIN | 21 | 79 |

Resident Characteristics Report

**Household Information**

**Distribution by Household Members Age as a % of Total Number of Household Members**

| HA | 0 - 5 | | 6 - 17 | | 18 - 50 | | 51 - 61 | | 62 - 82 | | 83+ | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Count | Percent | Count | Percent | Count | Percent | Count | Percent | Count | Percent | Count | Percent |
| CA001 | 120 | 7 | 502 | 31 | 599 | 37 | 125 | 8 | 215 | 13 | 46 | 3 |
| CA142 - DUBLIN | 36 | 10 | 134 | 36 | 155 | 42 | 27 | 7 | 18 | 5 | 1 | 0 |

**Distribution by Household Size as a % of 50058 Received**

| HA | 1 person | 2 persons | 3 persons | 4 persons | 5 persons | 6 persons | 7 persons | 8 persons | 9 persons | 10+ persons |
|---|---|---|---|---|---|---|---|---|---|---|
| CA001 | 29 | 21 | 18 | 14 | 12 | 4 | 2 | 1 | 0 | 0 |
| CA142 - DUBLIN | 19 | 27 | 23 | 13 | 13 | 3 | 2 | 2 | 0 | 0 |

**Total Household Members and Average Household Size**

| HA | Total Number of Household Members | Average Household Size | Total Number of Households |
|---|---|---|---|
| CA001 | 1,607 | 2.8 | 569 |
| CA142 - DUBLIN | 371 | 3 | 124 |

**Distribution by Number of Bedrooms as a % of 50058 Received**

| HA | 0 Bedrooms | 1 Bedroom | 2 Bedrooms | 3 Bedrooms | 4 Bedrooms | 5+ Bedrooms |
|---|---|---|---|---|---|---|
| CA001 | 8 | 24 | 28 | 30 | 12 | 0 |
| CA142 - DUBLIN | 0 | 9 | 50 | 23 | 19 | 0 |

Resident Characteristics Report

| Length of Stay Information | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|

| Distribution by Length of Stay as a % of 50058 Received (currently assisted families) | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| HA | Less than 1 year | | 1 to 2 years | | 2 to 5 years | | 5 to 10 years | | 10 to 20 years | | Over 20 years | |
| | Count | Percent | Count | Percent | Count | Percent | Count | Percent | Count | Percent | Count | Percent |
| CA001 | 41 | 7 | 51 | 9 | 141 | 25 | 152 | 27 | 137 | 24 | 47 | 8 |
| CA142 - DUBLIN | 8 | 6 | 18 | 13 | 34 | 27 | 24 | 19 | 28 | 23 | 14 | 11 |

DECLARATION OF LISA S. GREIF
IN SUPPORT OF PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER
AND PRELIMINARY INJUNCTION

EXHIBIT 15

U.S. Census Bureau
American FactFinder

## DP-1. Profile of General Demographic Characteristics: 2000
Data Set: Census 2000 Summary File 1 (SF 1) 100-Percent Data
Geographic Area: **Dublin city, California**

NOTE: For information on confidentiality protection, nonsampling error, definitions, and count corrections see http://factfinder.census.gov/home/en/datanotes/expsf1u.htm.

| Subject | Number | Percent |
|---|---|---|
| **Total population** | 29,973 | 100.0 |
| | | . |
| **SEX AND AGE** | | |
| Male | 15,782 | 52.7 |
| Female | 14,191 | 47.3 |
| | | |
| Under 5 years | 1,758 | 5.9 |
| 5 to 9 years | 1,844 | 6.2 |
| 10 to 14 years | 1,780 | 5.9 |
| 15 to 19 years | 1,673 | 5.6 |
| 20 to 24 years | 2,024 | 6.8 |
| 25 to 34 years | 6,410 | 21.4 |
| 35 to 44 years | 6,823 | 22.8 |
| 45 to 54 years | 4,267 | 14.2 |
| 55 to 59 years | 1,238 | 4.1 |
| 60 to 64 years | 775 | 2.6 |
| 65 to 74 years | 923 | 3.1 |
| 75 to 84 years | 388 | 1.2 |
| 85 years and over | 90 | 0.3 |
| | | |
| Median age (years) | 34.3 | (X) |
| | | |
| 18 years and over | 23,691 | 79.0 |
| Male | 12,536 | 41.8 |
| Female | 11,155 | 37.2 |
| 21 years and over | 22,531 | 75.2 |
| 62 years and over | 1,812 | 6.0 |
| 65 years and over | 1,381 | 4.6 |
| Male | 618 | 2.1 |
| Female | 763 | 2.5 |
| | | |
| **RACE** | | |
| One race | 28,809 | 96.1 |
| White | 20,793 | 69.4 |
| Black or African American | 3,024 | 10.1 |
| American Indian and Alaska Native | 220 | 0.7 |
| Asian | 3,101 | 10.3 |
| Asian Indian | 672 | 2.2 |
| Chinese | 823 | 2.7 |
| Filipino | 770 | 2.6 |
| Japanese | 194 | 0.6 |
| Korean | 148 | 0.5 |
| Vietnamese | 170 | 0.6 |
| Other Asian [1] | 328 | 1.1 |
| Native Hawaiian and Other Pacific Islander | 95 | 0.3 |
| Native Hawaiian | 33 | 0.1 |
| Guamanian or Chamorro | 25 | 0.1 |
| Samoan | 6 | 0.0 |
| Other Pacific Islander [2] | 31 | 0.1 |
| Some other race | 1,576 | 5.3 |
| Two or more races | 1,164 | 3.9 |
| | | |
| *Race alone or in combination with one or more other races [3]* | | |
| White | 21,800 | 72.7 |
| Black or African American | 3,161 | 10.5 |
| American Indian and Alaska Native | 431 | 1.4 |
| Asian | 3,628 | 12.1 |

0367

| Subject | Number | Percent |
|---|---|---|
| Native Hawaiian and Other Pacific Islander | 222 | 0.7 |
| Some other race | 2,007 | 8.7 |
| | | |
| **HISPANIC OR LATINO AND RACE** | | |
| **Total population** | 29,973 | 100.0 |
| Hispanic or Latino (of any race) | 4,059 | 13.5 |
| Mexican | 1,878 | 6.3 |
| Puerto Rican | 89 | 0.3 |
| Cuban | 47 | 0.2 |
| Other Hispanic or Latino | 2,045 | 6.8 |
| Not Hispanic or Latino | 25,914 | 86.5 |
| White alone | 18,669 | 52.3 |
| | | |
| **RELATIONSHIP** | | |
| **Total population** | 29,973 | 100.0 |
| In households | 24,681 | 82.3 |
| Householder | 9,325 | 31.1 |
| Spouse | 5,310 | 17.7 |
| Child | 7,454 | 24.9 |
| Own child under 18 years | 5,875 | 19.6 |
| Other relatives | 1,086 | 3.6 |
| Under 18 years | 306 | 1.0 |
| Nonrelatives | 1,508 | 5.0 |
| Unmarried partner | 625 | 2.1 |
| In group quarters | 5,292 | 17.7 |
| Institutionalized population | 5,262 | 17.6 |
| Noninstitutionalized population | 30 | 0.1 |
| | | |
| **HOUSEHOLDS BY TYPE** | | |
| **Total households** | 9,325 | 100.0 |
| Family households (families) | 6,505 | 69.8 |
| With own children under 18 years | 3,301 | 35.4 |
| Married-couple family | 5,310 | 56.9 |
| With own children under 18 years | 2,624 | 28.1 |
| Female householder, no husband present | 852 | 9.1 |
| With own children under 18 years | 505 | 5.4 |
| Nonfamily households | 2,820 | 30.2 |
| Householder living alone | 1,987 | 21.3 |
| Householder 65 years and over | 262 | 2.8 |
| | | |
| Households with individuals under 18 years | 3,519 | 37.7 |
| Households with individuals 65 years and over | 1,041 | 11.2 |
| | | |
| Average household size | 2.65 | (X) |
| Average family size | 3.13 | (X) |
| | | |
| **HOUSING OCCUPANCY** | | |
| **Total housing units** | 9,872 | 100.0 |
| Occupied housing units | 9,325 | 94.5 |
| Vacant housing units | 547 | 5.5 |
| For seasonal, recreational, or occasional use | 38 | 0.4 |
| | | |
| Homeowner vacancy rate (percent) | 0.7 | (X) |
| Rental vacancy rate (percent) | 8.1 | (X) |
| | | |
| **HOUSING TENURE** | | |
| **Occupied housing units** | 9,325 | 100.0 |
| Owner-occupied housing units | 6,049 | 64.9 |
| Renter-occupied housing units | 3,276 | 35.1 |
| | | |
| Average household size of owner-occupied unit | 2.80 | (X) |
| Average household size of renter-occupied unit | 2.37 | (X) |

(X) Not applicable
[1] Other Asian alone, or two or more Asian categories.
[2] Other Pacific Islander alone, or two or more Native Hawaiian and Other Pacific Islander categories.
[3] In combination with one or more other races listed. The six numbers may add to more than the total population and the six percentages may add to more than 100 percent because individuals may report more than one race.
Source: U.S. Census Bureau, Census 2000 Summary File 1, Matrices P1, P3, P4, P8, P9, P12, P13, P,17, P18, P19, P20, P23, P27, P28, P33, PCT5, PCT8, PCT11, PCT15, H1, H3, H4, H5, H11, and H12.

*0368*

# City of Dublin City Council Public Hearing Notice
## July 15, 2008 7:00P.M.
## Arroyo Vista Project &
## Continuation of June 3, 2008 Public Hearing

**PROJECT:** PA 07-028 Arroyo Vista
**LOCATION:** 6700 Dougherty Road (APN 941-0007-001-07)

**PROJECT DESCRIPTION:** The property known as Arroyo Vista is owned by the Dublin Housing Authority (DHA). The DHA has applied to the federal Department of Housing and Urban Renewal (HUD) for approval to dispose of (sell) the Arroyo Vista property to Eden Housing and Citation Homes for their development of a project which would include the demolition of the existing 150 dwelling unit public housing project and the construction of a new residential development.

The new development would include 378 new dwelling units with 130 affordable apartments, 50 affordable senior apartments, 141 for-sale attached dwelling units and 57 for-sale detached dwelling units. A new childcare facility, community building, recreation areas, hardscape and landscaping will also be constructed on the site.

The City is required to make a determination under the National Environmental Policy Act (NEPA) before HUD can act on DHA's application to sell the property. The City has prepared a Finding of No Significant Impact (FONSI) pursuant to NEPA, determining that the project will not constitute an action significantly affecting the quality of the human environment. Accordingly, the City of Dublin has decided not to prepare an Environmental Impact Statement under the National Environmental Policy Act of 1969.

Prior to construction of the Arroyo Vista project, entitlements are required to be obtained by the Applicants from the City of Dublin. These entitlements include Stage 1/Stage 2 Planned Development Rezone, Tentative Map, General Plan Amendment and Site Development Review. Review of environmental impacts associated with the City approvals will be conducted pursuant to the California Environmental Quality Act (CEQA).

The public hearing before the City of Dublin City Council originally scheduled for **Tuesday, June 3, 2008 at 7:00 p.m.** in the City Council Chambers, 100 Civic Plaza, Dublin **has been continued to Tuesday, July 15, 2008, 7:00 p.m.** in the City Council Chambers, 100 Civic Plaza, Dublin.

**PUBLIC COMMENT:** The City Council will consider the Finding of No Significant Impact (FONSI) at the July 15, 2008 meeting and will consider authorizing the City Manager to sign the FONSI and authorize the Dublin Housing Authority (DHA) to submit a request to the Department of Housing and Urban Development for disposition of the property to Eden Housing and Citation Homes.

A legally required separate notice, entitled "Notice of Finding of No Significant Impact and Notice of Intent to Request Approval of Property Disposition," will be sent to you on May 28, 2008, beginning a 30-day comment period on the FONSI and the request for approval of property disposition. Any comments on the FONSI or the request for approval of property disposition must be submitted during the 30-day comment period.

The public hearing is an opportunity for the public to provide general comments to the City Council on project. The City Council will not receive comments on the FONSI or the disposition of the site during the public hearing on July 15. All comments on the FONSI must be submitted during the 30 day comment period. For ~~further information, please call the City of Dublin Community Development Department at (925) 833-6610.~~

Mary Jo Wilson, AICP
Planning Manager

DATE: May 23, 2008

DECLARATION OF LISA S. GREIF
IN SUPPORT OF PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER
AND PRELIMINARY INJUNCTION

EXHIBIT 8

0301

Ramón P. Arias
Executive Director

 **BAY AREA LEGAL AID**

**WORKING TOGETHER FOR JUSTICE**

May 27, 2008

VIA EMAIL

Dominique Blom
Deputy Assistant Secretary
Office of Public Housing Investments
U.S. Department of Housing and Urban Development
451 7th Street S.W.
Washington, D.C. 20410
Dominique.Blom@hud.gov

[See additional addresses listed on Page 10]

RE:    Disposition Application for Arroyo Vista, CA142001
       Dublin, California

Dear Ms. Blom, Mr. Rodins, Mr. Smith, Mr. Reizes, Mr. Schneller and Ms. Kendrick:

On behalf of our clients, plaintiffs in *Arroyo Vista Tenants Association, et al. v. City of Dublin, et al.*, U.S. Dist. Court, N.D. Cal., Case No. C-07-05794 MHP, I am writing to again request that HUD promptly disapprove the above Application for Disposition of Arroyo Vista (Application). Along with my co-counsel, we represent the Arroyo Vista Tenants Association and four individual residents of the property. Our clients also request that HUD require the Dublin Housing Authority to fully occupy and operate the Arroyo Vista property. We have previously provided comment on this disposition application by letters of November 2, 2007, December 20, 2007, and January 30, 2008, which we incorporate herein by reference.

We write now to detail reasons why the Secretary must *now* deny the Application by the Dublin Housing Authority (DHA). First, the Secretary *must disapprove* an application if the Secretary determines that "any certification made by the public housing agency . . . is clearly inconsistent with information and data available to the Secretary or information or data requested by the Secretary." 42 U.S.C. §1437p(b)(1); 24 C.F.R. § 970.29. DHA has made *numerous* certifications in its Application that are unequivocally inconsistent with the Answer filed by DHA in Court, the Declarations signed under penalty of perjury of residents and former residents of Arroyo Vista, the Draft Relocation Plan, and other supporting documentary evidence we provide. As detailed herein, the Application should be denied for this reason.

Alameda County Regional Office
405 14th Street, 11th Floor
Oakland, CA 94612

Phone: 510.663.4744
Toll Free: 800.551.5554
Fax: 510.663.4740

www.baylegal.org

LSC    Serving the counties of Alameda, Contra Costa, Marin, Napa, San Francisco, San Mateo, and Santa Clara

In addition, the Secretary *must disapprove* any application that "was not developed in consultation with - (A) residents who will be affected by the proposed demolition or disposition; [and] (B) each resident advisory board and resident council ... affected by the proposed demolition or disposition ...." 42 U.S.C. §1437p(b)(2); 24 C.F.R. §970.9. DHA readily admits in its Application that it failed to develop its disposition Application in consultation with the recognized resident council for the Arroyo Vista, in violation of this obligation, also compelling HUD's denial of the Application.

While the Secretary must disapprove the Application according to the mandates of §1437p(b), the Application has a number of other substantive defects which also compel its denial. The justification for sale of the property below market rate is not supported by the appraisal of the property, so that DHA must provide such information. DHA unlawfully entered into a contract for sale of the property prior to obtaining HUD approval. The relocation activities described in the Application fail to meet statutory requirements to accommodate persons with disabilities, and have caused unlawful displacement of residents. The proposed disposition will have an adverse impact on classes of persons protected by the Fair Housing Act. These are each independent reasons the Secretary should disapprove the Application.

In light of these circumstances, any further delay by HUD in denying the Arroyo Vista Application is not justified. More than nine months after submission of the application, it remains incomplete, unlawful displacement continues to harm innocent residents, Section 8 vouchers are being improperly used in the relocation, and safe, decent, and affordable public housing is lying vacant. For these reasons, HUD should *act now* to disapprove the Arroyo Vista Application for disposition.

## I.    Certifications By DHA In Its Application Are Clearly Inconsistent With Information Available To HUD.

The Secretary must disapprove the Arroyo Vista Application since we have provided information that is clearly inconsistent with certifications made by DHA. 42 U.S.C. §1437p(b)(1); 24 C.F.R. § 970.29. The following facts document numerous actions DHA has taken that are inconsistent certifications in the Application.

### DHA Is Relocating Residents Contrary To Certifications in Its Application.

DHA certified in its application that it would not displace any residents prior to issuing the 90-day notice mandated by 42 U.S.C. §1437p. *See* Application, Section 5, Line 13. The 90-day notice requires DHA to inform residents in writing of HUD's decision and of the relocation benefits the residents will receive. Of course, HUD has not yet reached any decision on the Arroyo Vista Application, since it is incomplete, for lack of a relocation plan, among other things. DHA has misrepresented to residents in a series of meetings that disposition of Arroyo Vista *will* occur, it *will* occur in November 2008, and that HUD *will* approve the application for disposition. The residents have been told that if they do not move, they will "see the bulldozers coming," and they have been told there may not be enough Section 8 vouchers or Section 8 units to accommodate their needs. *See* Declarations of Keys and Sanders (all Declarations referenced

herein were submitted with our January 30, 2008 letter). By unlawfully relocating residents without such notice, DHA has failed to act consistently with the certification in its application.

DHA certified in its application that 12 households had moved "voluntarily" by August 2007, and that it would not require any residents to move before it issues a 90-day notice. *See* Application Section 5, line 13, and August 14, 2007, cover letter, p. 1. As of April 15, 2008, the relocation consultant for DHA represented that it has relocated 60 households. The declarations of eight Arroyo Vista residents submitted to HUD with our January 30, 2008 letter demonstrate that these moves from Arroyo Vista have been anything but voluntary. In particular, the Secretary must carefully consider the situation of Gretta Evans, a former resident that was unlawfully displaced owing DHA's actions to inform her that the property will be demolished, and her fear of a relapse of homelessness. *See* Declaration of Gretta Evans. Ms. Evans had a horrendous displacement, leaving her home at Arroyo Vista without any assistance from DHA, including no Section 8 voucher, to live in a rural community far removed from Dublin, solely to find affordable rent. As all eight Declarations show, the residents have been pressured, frightened, misinformed, and cajoled into moving. The information available to the Secretary is overwhelming that DHA is not merely engaging in "voluntary" relocations, as certified.

Moreover, California law does not recognize "voluntary" relocations at all. *See* Cal. Gov't Code §§ 7260 *et seq.*, Memo In Support of Motion For Preliminary Injunction, p. 18-21, submitted with our January 30, 2008 letter. *Any* resident that has "moved" since July 2006 – when defendants admit that they initiated negotiations with Eden Housing, Inc. and Citation Central Homes to sell the property – is considered to be a "displaced person" under California law. DHA certifies in its Application that it will provide assistance required by the California Relocation Law (CRL). *See* Application, Section 7, Line 7, *and see* Answer, ¶ 72, and Disposition and Development Agreement for Arroyo Vista, Greif Declaration, Exhibit 2, at p. 21, both submitted with our January 30, 2008 letter. According to the California Relocation Assistance Act (CRAA), residents *may not* be relocated prior to the adoption of a relocation plan by the local legislative body and the issuance of all requisite relocation notices. DHA's certification regarding "voluntary" moves is contrary to permissible activity pursuant to the CRAA.

DHA certified in its Application that it does not anticipate HUD approval before August 2008, and that it will issue 90-day notices only after receiving that approval. See Application, Section 5, Line 13. Yet, it has told residents they *must move by or before August 2008*. *See* Sanders Declaration. Thus, it has informed residents that it will require them to move without a 90-day notice or without the benefit of the 90 days that the notice guarantees. In fact, because DHA is displacing residents before *any* HUD approval at all, there could be few if any residents left to whom to issue the 90-day notice.

### DHA Is Failing To Provide Relocation Counsel Services

DHA certified in its application that it would provide thirteen separate types of housing counseling services, the vast majority of which have not been provided, including:

- Conduct in-depth field interview with resident; document rent, income, family composition, relocation needs and special requirements; explain process rights and benefits
- Search for and document comparable units for each household; provide referrals; arrange for transportation to view replacement units,
- Work with potential landlords, educating them as to the benefits of Section 8 Vouchers
- Prepare letter of eligibility for each household and obtain authorization of relocation assistance from Housing Authority
- Determine amount of relocation benefits, including moving payments, rent differential payments, if any, and re-establishment payments.
- Secure and process an advance claim to assist with the move and a final claim incorporating all costs.

Application, Section 7, Line 2. None of these services were provided to residents providing the Declarations submitted with our January 30, 2008 letter. DHA's contractor, Overland Pacific and Culter (OPC), has refused to provide "actual and reasonable" moving expenses, security deposits, credit checks, and has held half of moving expenses hostage to guarantee a resident (or the resident's family) vacates the Arroyo Vista unit. *See* Declarations of Gretta Evans, Elise Veal, Carolyn Evans. In particular, the extensive search by Elise Veal demonstrates this failure. Ms. Veal's particular needs were not determined by OPC (¶ 7), no search for replacement housing was done (¶¶ 7, 9), no transportation was provided (¶¶ 11, 15), OPC directly refused to work with landlords and failed to facilitate the use of Section 8 (¶7, 15). The services certified in the Application are systematically being denied to the residents, causing moves such as Ms. Evans' to inadequate housing that is in no way comparable.

DHA Has Failed to Provide Comparable Replacement Housing

Through this inadequate relocation assistance, DHA has failed to provide comparable replacement housing, owing to the lack of housing in Dublin that is available to Section 8 voucher holders. Nevertheless, DHA certified in its application that it would provide comparable housing, including Section 8 vouchers to all residents. *See* Application, Section 7, Lines 2 and 3. *But see* the Declarations of Carolyn Evans, Gretta Evans, Rhenae Keyes, and Elise Veal. Gretta Evans was displaced without a Section 8 voucher, or a comparable replacement housing payment required under state law, and is suffering a $300/month rent increase as a result of DHA's unlawful activities. Rhenae Keyes and Elise Veal were simply unable to use Section 8 vouchers as a result of DHA's failure to provide necessary counseling regarding the Section 8 program, unit sizes for which the family was eligible, and differing rules and HAP standards in other jurisdictions. DHA's failure to provide comparable replacement housing is contrary to its certifications in the Application.

DHA Continues to Unlawfully Relocate Residents Without An Adopted Relocation Plan

DHA certified it would comply with both the federal and state relocation assistance laws applicable to its proposed disposition project. *See* Application at Section 7, Line 7. Furthermore, as explained above, DHA is obligated to prepare a comprehensive relocation plan

that would be presented to residents for comment and submitted to the local government for approval *before* any displacement occurs. Not only has DHA not adopted a relocation plan for submission to HUD, rendering its Application incomplete, it has accelerated its relocation of the residents without a plan, displacing 60 families as of April 15, 2008. DHA admits it has not adopted a relocation plan in its Answer to the Petition for Writ of Mandate, provided with our January 30, 2008 letter. Moreover, it also admits that it has relocated residents of Arroyo Vista – with no relocation plan and no notices mandated by state *or* federal law that must *precede* any displacement.

### The Draft Relocation Plan Is Inconsistent With Its Application

DHA certifies that it will provide security deposits equal to two times the amount of monthly rent, and credit check fees for three credit reporting agencies. Application, Section 7, Line 7. Using a 2-bedroom unit at HUD FMRs of $1250/month rent, DHA further specifically represented to HUD that it would provide $2500 per household for security deposits and $75 for each of three applications ($225 per household) for credit checks. *Id.* On April 15, 2008, DHA held a hearing on a Draft Relocation Plan that is inconsistent with the information provided in the Application. The Draft Relocation Plan proposes to cap security deposits at *one-month's rent* based on HACA's maximum monthly rent standards for Alameda County and Dublin/Pleasanton. *See* Draft Relocation Plan, attached as Exhibit A. Likewise, despite the fact that it also is typical for Section 8 tenants to have to apply for multiple units and pay multiple credit check fees (that often exceed $75) before a landlord accepts their voucher, a "one-time" credit check cost of $75 is unreasonable. A failure to pay for "actual credit check fees and security deposits" does not minimize the hardship of displacement, and particularly not for public housing residents with minimal income and resources to cover such costs. *See* Declaration of Darlyn Anderson, included as Exhibit B, and Declaration of Gretta Evans, included with our January 30, 2008 letter. DHA's failure to provide the relocation assistance certified in its Application is a substantial inconsistency that requires the Secretary to deny the Application.

**II.    DHA Has Failed To Involve Residents In Development Of The Application, As Required By 42 U.S.C. § 1437p(b).**

In our prior correspondence of November 2 and December 20, 2007, we have detailed DHA's failure to adequately consult the residents of Arroyo Vista, as required by Section 18. 42 U.S.C. § 1437p(b)(2). In its November 20, 2007 letter to our office, HUD stated that it was requesting clarification by way of additional information from DHA regarding resident involvement. If additional information was provided and considered by HUD, such information should be provided to the residents so that HUD can avoid making an arbitrary decision without hearing from other involved parties. Pursuant to the Freedom of Information Act, we hereby request a copy of any additional information received by HUD in response to its request for such information. Our client Rhenae Keyes, the last President of the recognized resident council for Arroyo Vista, has not been contacted by HUD to verify whether or not any statements by DHA are accurate. Moreover, we provided further information in our letter of December 20, 2007, in the form of Exhibits to the letter of correspondence between Ms. Keyes and DHA

acknowledging that the resident association existed at the same time DHA was developing its disposition Application.

With respect to resident participation, the Application both (1) acknowledges that the Arroyo Vista Residents Council is a recognized by DHA, pursuant to 24 C.F.R. Part 964, and (2) admits that this recognized tenant association was not consulted. Application Section 8, Line 1. The Arroyo Vista Residents Council is an "established eligible organization" within the meaning of 24 C.F.R. § 970.9 that must be consulted prior to disposition. DHA conveniently claims that the resident organization which opposed the disposition of the property "disbanded," however DHA failed to take any action pursuant to 24 C.F.R. Part 964 to document that the resident council no longer exists. To the contrary, the resident council continues to operate, despite DHA's opposition, as evidenced by its participation in the litigation referenced herein. In our prior letters, we provide evidence that the mere provision of newsletters and one-way presentations does not satisfy DHA's obligation to "consult" residents in the "development" of the disposition application. However, there is no doubt and no additional information needed to determine that the Arroyo Vista Residents Council was not consulted. DHA's admission that this recognized resident council was not consulted requires the Secretary to disapprove the application. 42 U.S.C. § 1437p(b)(2).

**III.    The Disposition Application Should Be Denied For Failure to Comply With Substantive Provisions of 42 U.S.C. § 1437p(a).**

The Appraisal Provided Does Not Justify The Sales Price Below Market Value

As part of a proper disposition Application, DHA must certify that the "net proceeds" of the disposition will first be used to retire outstanding obligations for the property, which do not exist here, or for the provision of low-income housing or to benefit the residents of the public housing agency. 42 U.S.C. § 1437p(a)(5). The Application purports to justify the sale at below market value due to the need for a mixed finance development. Application Section 6, Line 1. However, at the time of the Application, there has been no Appraisal completed for the property to determine whether this assertion is accurate. On October 28, 2007, DHA obtained an appraisal for the property that indicates there is a tremendous amount of equity in the property for which Section 6 of the Application does not account. We are unaware of any amendment to the Application to reference the determination of the appraisal, and hereby request any such information pursuant to the Freedom of Information Act. The Secretary should not approve an Application that fails to contain an accounting required by law, demonstrating that the equity in the property is being used for the provision of affordable housing.

Furthermore, the Application itself must contain the justification for sale below market value; this central information cannot come in some later communication with HUD that is not subject to public comment and review. As detailed in Section II above, there must be resident consultation in the development of the Application, as they are a primary stakeholder for the use of the property. Omission of the key information regarding the use of funds derived from the sale of the property is a central omission that denies the residents opportunity to participate in the decision regarding the equity in the property.

Page 7                                                                         May 27, 2008

<u>DHA Unlawfully Entered Into A Contract For Sale of Arroyo Vista</u>

As detailed in our prior letters, DHA entered into a contract for sale of Arroyo Vista in its
Disposition and Development Agreement (DDA), directly prohibited by 24 C.F.R. §§ 970.7,
970.25. This contract requires DHA to convey the property to Citation Homes and Eden
Housing on a set time line following steps DHA has contractually guaranteed. DDA § 2.7.
Although a later section does acknowledge that conveyance is subject to HUD approval, § 12.1,
DHA has already exercised its discretion with respect to all the terms and conditions of the sale.
Furthermore, in the event HUD does not approve the disposition application, the sale is not
canceled. Instead, DHA must continue to "diligently pursue HUD approval" as required for sale
"until all disposition requirements ... are satisfied." §§ 4.1, 6.1(a). There is no provision for
HUD disapproval. The impropriety of this action is imbedded in HUD's own Application form.
At Section 5, Line 13 of the Application DHA is forced to enter incorrect information in the
Application that it would enter into a sales contract "90 days" after approval of disposition, when
in fact it must admit that it already entered into a sales contract but "the Disposition Application
form would not allow us to insert "0" in this field. The Secretary should not approve this
blatantly improper Application that is based on actions directly contrary to its regulations.
Rather, HUD should *act now* to deny the application in accordance with the law, and avoid
interference with our clients' efforts to set aside the improper DDA.

<u>DHA Has Failed to Provide Reasonable Accommodations to Residents With Disabilities</u>

Federal regulations require that the Application include a relocation plan that specifically
addresses the relocation of persons with disabilities. 24 C.F.R. § 970.7(a)(6). DHA's
Application is deficient since it fails to include a plan to provide reasonable accommodations to
all residents that have disabilities. Not only has DHA not provided reasonable accommodations
to residents, they have threatened to "vacate" at least one resident with disabilities who resides in
a fully accessible unit at Arroyo Vista – for 23 years -- if he does not move out in 2008. And,
they have failed to even inform him of any relocation rights he may have. *See* Costello
Declaration. DHA's "relocation consultant" also refused assistance to a resident being forced to
move when she asked for help with a prospective landlord that had unlawfully told her he would
not permit accessible features to be installed in the prospective unit to accommodate her
disability, and another that discriminated against her on familial grounds. Though this impeded
her ability to use a Section 8 voucher at all and she asked for help, she was refused necessary
counseling and assistance and told all she would get was a referral. *See* Veal Declaration.
Another resident that would have accepted a Section 8 voucher and moved was unilaterally
down-sized from a 4-bedroom home to a 2-bedroom voucher with *no* relocation plan or notice
*authorizing* her to be denied comparable housing. When she asked for a reasonable
accommodation and offered medical documentation of the disabilities in her family, HACA
refused even to accept the documentation. *See* Keyes Declaration.

Moreover, state law (with which DHA certified it would comply) requires a displacing
entity to conduct a detailed survey and analysis of resident needs, including special needs of
persons with disabilities, and to identify housing resources available to meet those needs in
relocating such residents. DHA's Draft Relocation Plan while it identifies the number of "units"
at Arroyo Vista that are accessible to persons with disabilities, does not identify or analyze the

**0308**

special needs of residents that occupy those units and will be relocated. Moreover, it utterly fails to identify *any* housing resources that are available to meet the special needs of this disadvantaged population.

> ### DHA's Application Will Have A Discriminatory Effect and Fails to Affirmatively Further Fair Housing

As detailed in our prior letters, the proposed disposition of Arroyo Vista will remove from the City of Dublin a vibrant diverse community inclusive of African American, Latino, and Asian American families. HUD's only response in this regard is that it will request that DHA "carry out" the disposition in a manner that does not violate fair housing laws. As we responded in our December 20, 2007 letter, it is the removal of deeply subsidized housing units inherent in the Application and DHA/OPC's steering of most of Arroyo Vista's long-term residents to Oakland, as is done in DHA's yet "draft" relocation plan, that causes discrimination and fails to affirmatively further fair housing opportunities.

A review of the Draft Relocation Plan, and particularly, DHA's identification of the units purportedly "available" as adequate "resources" to relocate all of the displaced residents of Arroyo Vista demonstrates that DHA is not affirmatively furthering fair housing opportunities. Residents that have lived in a very diverse neighborhood within a suburban City that is largely white are being referred primarily to communities with minority and poverty concentration without regard to the residents' strong desire to remain in Dublin where many of them have lived and raised their children for decades. The Secretary should deny the Application based on the discriminatory effect of the Application and the Draft Relocation Plan on protected classes, and DHA's failure to affirmatively further fair housing opportunities. Attached to this letter as Exhibit C are our written comments submitted on March 14, 2008. On April 8, 2008 DHA responded to the written comment. *See* Exhibit D.

DHA also has failed to affirmatively further fair housing opportunities by depriving residents that speak different languages of the Draft Relocation Plan in their native language despite a request from the DHA Board of Commissioners that the Draft Relocation Plan be made available to all residents in their native language. *See* April 22, 2008 letter from DHA attached as Exhibit E and response of Rhenae Keyes on May 6, 2008 attached as Exhibit F. Failure to even provide residents with the Draft Relocation Plan for their review has an inherently discriminatory effect on residents on the basis of ethnicity. It also demonstrates DHA's failure to provide residents that it proposes to be relocated with "all necessary counseling".

## IV.    HUD Must Deny DHA's Application Without Further Delay

More than nine months after its August 14, 2007 submission, DHA has yet to complete its Application for disposition of Arroyo Vista. DHA has yet to complete the required relocation plan, while by its own admission, their consultant continues to relocate families, now having displaced over 60 households. Moreover, DHA has yet to hold a hearing for the required environmental review. As acknowledged by HUD's November 20, 2007 letter, without these required elements, HUD has no discretion to approve an incomplete application. 42 U.S.C. §1437p(a); 24 C.F.R. §970.7, 970.17. Further, nothing in 42 U.S.C. §1437p authorizes HUD to

hold an *incomplete* application in abeyance while the PHA proceeds to carry out the very disposition and displacement that it *proposes* in its application – all without HUD review or approval of that application.

Furthermore, by improperly relocating Arroyo Vista residents utilizing its stock of Section 8 vouchers, the Housing Authority of the County of Alameda (HACA) is taking actions in violation of its administrative plan to relocate residents. DHA also has refused to permit units to be re-occupied as they become vacant, in violation of its obligation to operate Arroyo Vista. 24 C.F.R. § 970.25. There is no provision in law permitting DHA to submit a *partial* application to HUD and then engage in *de facto* demolition by vacating the units over a nine month period while incomplete plans for disposition are completed. DHA should not be encouraged or rewarded for its improper activities. As outlined above, DHA's actions both require the Secretary's disapproval, and the Application itself is fatally flawed. In the face of the harm to all the residents, it serves no purpose to delay disapproval of the Arroyo Vista Disposition Application.

## V.    CONCLUSION

HUD's refusal to communicate with Arroyo Vista residents through their counsel is a substantial detriment to HUD's review. In late January and early February 2008, we spoke with staff of the Special Applications Center, requesting a meeting with Ainars Rodins, which was tentatively scheduled for February 15, 2008. We were subsequently contacted by David Reizes of HUD's Office of Litigation, who requested that all communication with HUD be limited to his office. Mr. Reizes subsequently informed us that the meeting with Mr. Rodins was cancelled, and we have been effectively foreclosed from conveying our concerns to program staff except through written communication. HUD has offered no authority for limiting public comment and access to public officials regarding a proposed disposition in this fashion. We ask that HUD reconsider this position, and meet with Arroyo Visa residents and their counsel to avoid further misunderstanding and to ensure that the appropriate divisions of HUD adequately understand the inconsistencies in DHA's certifications.

To date, we have received no response to our letters of December 20, 2007 and January 30, 2008. Rather, we were verbally informed by Mr. Reizes that the information we have provided will be included in the "administrative record." We look forward to your written response by June 8, 2008 to this request to deny the Arroyo Vista Application.

Very truly yours,

Lisa Greif
Attorney for Plaintiffs

Page 10                                                              May 27, 2008

Additional Addressees:

Ainars Rodins
U.S. Department of Housing and Urban Development
Special Applications Center
77 W. Jackson Blvd., Room 2401
Chicago, IL 60604-3507
Ainars.Rodins@hud.gov

Kim Kendrick
Fair Housing and Equal Opportunity
U.S. Department of Housing and Urban Development
451 7th Street S.W.
Washington, D.C. 20410
Kim.Kendrick@hud.gov

David M. Reizes, Esq.
Trial Attorney
Office of Litigation
Office of General Counsel
U.S. Department of Housing & Urban Development
451 7th St. S.W.
Washington, D.C. 20410
David.M.Reizes@hud.gov

W. Jay Smith
Regional Relocation Specialist
U.S. Dept. of Housing and Urban Development
Office of Community Planning and Development
450 Golden Gate Avenue, 9th Floor
San Francisco, CA 94102-3448
Jay_Smith@hud.gov

Stephen Schneller
Public Housing Division
U.S. Dept. of Housing and Urban Development
Office of Community Planning and Development
450 Golden Gate Avenue, 9th Floor
San Francisco, CA 94102-3448
Stephen.Schneller@hud.gov

cc: Deborah Collins, Craig Castellanet and Michael Rawson, CAHLP/PILP
    Naomi Young and Phil Morgan, Bay Area Legal Aid
    Catherine Bishop, Navneet Grewal, National Housing Law Project

DECLARATION OF LISA S. GREIF
IN SUPPORT OF PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER
AND PRELIMINARY INJUNCTION

EXHIBIT 9

0312

# CITY OF DUBLIN

100 Civic Plaza, Dublin, California 94568                    Website: http://www.ci.dublin.ca.us

## NOTICE OF FINDING OF NO SIGNIFICANT IMPACT
## AND NOTICE OF INTENT TO REQUEST APPROVAL OF PROPERTY DISPOSITION

**These Notices shall satisfy two separate but related procedural requirements for activities to be undertaken by the City of Dublin as Responsible Entity and the Dublin Housing Authority.**

### REQUEST FOR APPROVAL OF PROPERTY DISPOSITION

On or about July 16, 2008 the City of Dublin will authorize the Dublin Housing Authority to submit a request to the San Francisco Field Office of the U.S. Department of Housing and Urban Development (HUD) for approval of property disposition under Section 18 of the U.S. Housing Act of 1937, as amended, to undertake a project known as Arroyo Vista Redevelopment for the purpose of redeveloping an existing public housing project and expanding the number of dwelling units, subject to approval of the project by the City. The project proposes relocating the residents of the existing Arroyo Vista public housing, demolishing the improvements, and redeveloping the site with up to 180 affordable rental units, up to 198 for-sale units, including up to 14 affordable units, as well as a child care center, a community building/management office and recreational open space. The project's improvements are proposed to be financed with a variety of sources including low income housing tax credit equity, local funds, state funds, HUD Section 202 funds, Affordable Housing Program funds, commercial loans and private equity. The project is located at 6700 Dougherty Road in Dublin.

### FINDING OF NO SIGNIFICANT IMPACT

The City of Dublin has determined that the project will have no significant impact on the human environment. Therefore, an Environmental Impact Statement under the National Environmental Policy Act of 1969 (NEPA) is not required. Additional project information is contained in the Environmental Review Record (ERR) on file at the City of Dublin Community Development Department, 100 Civic Plaza, Dublin, CA 94568 and may be examined or copied weekdays, except holidays, **8:00 a.m. to 5:00 p.m.**

### PUBLIC COMMENTS

Any individual, group, or agency may submit written comments on the ERR to the City of Dublin Community Development Department. All comments received by **June 27, 2008** will be considered by the City of Dublin prior to authorizing submission of a request for approval of property disposition. **Comments should specify which Notice they are addressing.**

### ENVIRONMENTAL CERTIFICATION

The City of Dublin certifies to HUD that Richard Ambrose in his capacity as City Manager consents to accept the jurisdiction of the Federal Courts if an action is brought to enforce responsibilities in relation to the environmental review process and that these responsibilities have been satisfied. HUD's acceptance of the certification satisfies its responsibilities under NEPA and related laws and authorities and allows the Dublin Housing Authority to dispose of property.

### OBJECTIONS TO DISPOSITION ACTION

HUD will accept objections to its approval and the City of Dublin's certification for a period of fifteen days following the anticipated submission date or its actual receipt of the request (whichever is later) only if they are on one of the following bases: (a) the certification was not executed by the Certifying Officer of the City of Dublin; (b) the City of Dublin has omitted a step or failed to make a decision or finding required by HUD regulations at 24 CFR Part 58; (c) the grant recipient or other participants in the development process have committed funds, incurred costs or undertaken activities not authorized by 24 CFR Part 58 before approval by HUD; or (d) another Federal agency acting pursuant to 40 CFR Part 1504 has submitted a written finding that the project is unsatisfactory from the standpoint of environmental quality. Objections must be prepared and submitted in accordance with the required procedures (24 CFR Part 58, Sec. 58.76) and shall be addressed to HUD at 600 Harrison Street, Third Floor, San Francisco, CA 94107-1300. Potential objectors should contact HUD to verify the actual last day of the objection period.

Richard Ambrose, City Manager

Dated: May 28, 2008

Area Code (925) · City Manager 833-6650 · City Council 833-6650 · Personnel 833-6605 · Economic Development 833-6650
Finance 833-6640 · Public Works/Engineering 833-6630 · Parks & Community Services 833-6645 · Police 833-6670
Planning/Code Enforcement 833-6610 · Building Inspection 833-6620 · Fire Prevention Bureau 833-6606

0313

DECLARATION OF LISA S. GREIF
IN SUPPORT OF PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER
AND PRELIMINARY INJUNCTION

EXHIBIT 10                                    **0314**



Respond To:
**Arroyo Vista Office** ☐
6700 Dougherty Rd. #151
Dublin, CA 94568
(925) 828-3132



# DUBLIN HOUSING AUTHORITY

**Administrative Office** ☒
22941 Atherton Street
Hayward, CA 94541
(510) 538-8876

**Meeting Date**                          **June 3, 2008**

**REGULAR MEETING**              **City Council Chambers**
**Dublin Civic Center**
**100 Civic Plaza**
**Dublin, CA 94568**
**6:00 p.m.**

The public is welcome at all Housing Commission meetings. If you wish to speak on a matter on the Agenda, please obtain a card from the Housing Commission Secretary and give your name, comments and/or questions. If you wish to speak on a matter not on the Agenda, please wait until the Chair calls for Public Comments. Please be brief and limit your comments to the specific subject under discussion. **NOTE:** Only matters within the Housing Commission's jurisdiction may be addressed. Time limitations shall be at the discretion of the Housing Commission Chair.

AMERICANS WITH DISABILITIES: In compliance with the Americans with Disabilities Act, if special assistance to participate in this meeting is needed, please contact the Housing Authority office at (510) 727-8511. Notification at least 48 hours prior to the meeting will enable the Housing Authority to make reasonable arrangements.

## CALL TO ORDER / ROLL CALL

## APPROVAL OF MINUTES OF THE MAY 6, 2008 MEETING

### NEW BUSINESS                                                                              **PAGE**

1.  Resolution reappointing Tenant Commissioners Ramona          ACTION          5
    Frydendal and Dwayne Thomas

2.  Resolution Approving Arroyo Vista Draft Relocation Plan        ACTION          7
    *Continued from April 15, 2008*

## TENANT ACTIVITY REPORTS

1.  Arroyo Vista Operations Report (April 2008)          INFORMATION          19
2.  Kidango Report (April 2008)                               INFORMATION
    *Report will be distributed at meeting*

## PUBLIC COMMENTS
On matters not on the agenda

## ADJOURNMENT

0315

# MINUTES
## May 6, 2008

Respond To:

**DUBLIN HOUSING AUTHORITY**

Arroyo Vista Office ☐
6700 Dougherty Rd. #151
Dublin, CA 94568
(925) 828-3132

Administrative Office ☒
22941 Atherton Street
Hayward, CA 94541
(510) 538-8876

## MINUTES OF THE DUBLIN HOUSING AUTHORITY
## HOUSING COMMISSION MEETING OF
## May 6, 2008

### CALL TO ORDER/ROLLCALL

A **REGULAR** meeting of the Dublin Housing Authority was held on May 6, 2008. The meeting was called to order by Chairperson Lockhart at 6:00 p.m. at the Dublin Civic Center. The following commissioners were present at the meeting:

| | | |
|---|---|---|
| Ramona Frydendal | Tony Oravetz | Dwayne Thomas |
| Kasie Hildenbrand | Tim Sbranti | |
| Janet Lockhart | Kate Ann Scholz | |

Christine Gouig, executive director, staffed the Commission meeting.

### APPROVAL OF MINUTES OF THE APRIL 1, 2008 AND APRIL 15, 2008 MEETINGS

Cmr. Sbranti moved to approve the minutes of the Housing Commission meetings held on April 1, 2008 and April 15, 2008. The motion was seconded by Cmr. Scholz. Unanimous.

### NEW BUSINESS

| 1. | Amendments to bond documents for Park Sierra project to substitute a new credit enhancer | ACTION |
|---|---|---|

Christine Gouig presented the staff report. The Commission issued multifamily mortgage revenue bonds in 1998 for a project called Park Sierra at Iron Horse Trail. Shea Co., Inc is the project owner. Initially, KBC Bank N.V. provided credit enhancement for the bonds. However, the owner now wishes to substitute in Freddie Mac. Certain bond documents must be amended in order to reflect the name of the credit enhancer and to add other operational changes required by Freddie Mac.

Cmr. Scholz moved to approve the amendments to the bond documents. The motion was seconded by Cmr. Hildenbrand. Unanimous.

### TENANT ACTIVITY REPORTS

Reports received with no comments from the Commission.

### PUBLIC COMMENTS
None.

### ADJOURNMENT
There being no further business, Chairperson Lockhart adjourned the meeting at 6:10 p.m.

_____    _____    _____    _____
Christine Gouig         Date       Janet Lockhart          Date
Executive Director/Secretary       Chairperson

0317

# NEW BUSINESS
## June 3, 2008

# DUBLIN HOUSING AUTHORITY

## AGENDA STATEMENT

Meeting: June 3, 2008

| | |
|---|---|
| Subject: | Reappointment of Tenant Commissioners  Ramona Frydendal and Dwayne Thomas |
| Exhibits Attached: | Resolution 07-08 |
| Recommendation: | Adopt the Resolution |
| Financial Statement: | None |

### BACKGROUND

The Housing Commission is comprised of five Commissioners who are members of the Dublin City Council and two Tenant Commissioners who are residents of Arroyo Vista.

Arroyo Vista residents Ramona Frydendal and Dwayne Thomas are the current Tenant Commissioners, however, their terms expired on May 31, 2008.

Ms. Frydendal and Mr. Thomas each have expressed a desire to be reappointed to another term.  The bylaws stipulate that Tenant Commissioners must be residents of Arroyo Vista and that one of the Tenant Commissioners must be over 62 years of age.  Ms. Frydendal and Mr. Thomas meet one or more of the requirements for these positions and are eligible to serve another term.

Staff recommends that your Commission adopt the resolution to reappoint Ms. Frydendal and Mr. Thomas to serve as the Housing Commission's Tenant Commissioners.  Once appointed, they will take office immediately and participate in the June meeting.

**0319**

# DUBLIN HOUSING AUTHORITY

## RESOLUTION NO. 07-08

## APPOINTMENT OF DUBLIN HOUSING AUTHORITY'S
## TENANT COMMISSIONERS

**WHEREAS,** the Housing Commission is comprised of five Commissioners who are members of Dublin's City Council and two Commissioners who are tenants of Arroyo Vista; and

**WHEREAS,** the terms of Tenant Commissioners Ramona Frydendal and Dwayne Thomas expired on May 31, 2008; and

**WHEREAS,** Ms. Frydendal and Mr. Thomas each have expressed a desire to be reappointed to serve another term as a Tenant Commissioner; and

**WHEREAS,** Ms. Frydendal and Mr. Thomas meet the requirements and are eligible to serve on the Housing Commission as Tenant Commissioners; and

**WHEREAS,** the Housing Commission wishes to reappoint Ms. Frydendal and Mr. Thomas to the Tenant Commissioner positions;

**NOW, THEREFORE, BE IT RESOLVED** that the Housing Commission approves appointment of Ramona Frydendal and Dwayne Thomas to serve as the Tenant Commissioners of the Dublin Housing Authority, with immediate effect.

**PASSED, APPROVED AND ADOPTED** by the Commissioners of the Dublin Housing Authority on June 3, 2008 by the following vote:

**AYES:**

**NAYS:**

**ABSTAIN:**

**EXCUSED:**

**ABSENT:**

Attest:

_____

Janet Lockhart
Chairperson

_____
Christine Gouig
Executive Director/Secretary

**Approved:  June 3, 2008**

0320

6

# DUBLIN HOUSING AUTHORITY

## AGENDA STATEMENT

Meeting: June 3, 2008

| | |
|---|---|
| Subject: | Draft Relocation Plan for Arroyo Vista |
| Exhibits Attached: | Meeting Invitation Letter to Residents; Memorandum from Goldfarb & Lipman |
| Recommendation: | Adopt the Resolution Approving the Relocation Plan |
| Financial Statement: | $3.1 million as committed in the Disposition and Development Agreement (DDA) |

## BACKGROUND

On April 15, 2008, your Commission considered adoption of the draft Relocation Plan ("draft Plan") for Arroyo Vista. After hearing from a number of residents and their legal representatives you directed that staff mail the draft Plan (excluding attachments) to the residents remaining at Arroyo Vista and conduct meetings with those who sign up. You indicated that interpreters should be available at the meetings and that the draft Plan should be translated if necessary. You asked that the draft Plan be brought back at your regular meeting of June 3, after the meetings had occurred.

## DISCUSSION AND ANALYSIS

### Summary of Meetings

Staff and Overland Pacific & Cutler (OPC), the Housing Authority's relocation consultant, scheduled eight meetings at Arroyo Vista, four in the late afternoon and four in the early evening in order to accommodate a variety of schedules. The attached meeting invitation shows the dates of the meetings and the translation services available at each. The invitation was mailed on April 22 to the 93 Arroyo Vista residents. In addition, the May newsletter contained a brief summary of your meeting on April 15 and the fact that additional meetings on the draft Plan were going to be held at Arroyo Vista.

Sixteen residents signed up for the meetings; 24 residents actually attended as some dropped in without prior sign-ups. There were two meetings with no attendees. An attorney from either Bay Area Legal Aid or the Public Interest Law Project also attended each meeting. Interpretation was requested and provided in Tagalog for one family, Farsi for one family and Spanish for four families. At the meeting one of the four asked for a copy of the draft Plan in Spanish and the other Spanish-speakers indicated they, too, would like a copy. The draft Plan was translated and copies mailed last week. At the

meeting of May 21 the Tagalog speaker asked for a translated copy. That translation should be available next week.

At the meetings staff and OPC explained the process of developing the draft Plan; the relocation benefits including advisory assistance, Section 8 vouchers and financial assistance; the noticing process from the Notice of Eligibility to the 150 Day Notice and the timing; the grievance/appeal process; and the eviction policy. Numerous questions were answered at each session clarifying both misconceptions and remaining questions.

### Summary Responses to Public Comments from April 15, 2008 Meeting
There were a number of comments made at your April 15th meeting where you considered adoption of the draft Plan. A summary of the comments and staff responses is shown below.

*1-Comment*:  Some residents of Arroyo Vista indicated they did not wish to move from the project as their medical providers, employment and children's schools are nearby.

*Response*:  Staff understands that some residents wish to remain at Arroyo Vista. However, the Commission began reviewing the possibility of substantial rehabilitation or redevelopment in 2003, culminating in a decision in 2006 to redevelop and authorization to file a disposition application in 2007. One purpose of the relocation assistance that DHA has provided and will provide in accordance with the draft Plan will be to assist residents in staying near medical providers, schools, and job sites that are important to them.

*2-Comment*:  Concern was expressed about the general nature of the draft Plan and the fact that it was not translated into other languages.

*Response*:  Neither state relocation guidelines nor federal regulations require that a relocation plan contain a detailed listing of each household's needs and benefits. Instead, a plan is to describe the overall housing needs of the residents to be relocated, the availability of comparable replacement housing and the nature of financial and advisory benefits that will be provided.

Likewise, neither state relocation guidelines nor federal regulations require that a relocation plan be translated into other languages. However, they do require that interpretation be provided if needed, and OPC has, from the beginning, assigned a Spanish-speaking staff to the Arroyo Vista project and will provide interpreters in other languages if necessary. In addition, as described above, staff and OPC conducted eight meetings at Arroyo Vista to explain the draft Plan, and interpretation in Spanish, Farsi and Tagalog was provided although at the meeting the Farsi and Tagalog households indicated that they had no problem understanding the presentation in English.

*3-Comment*:  Some speakers expressed dissatisfaction with the services of OPC, indicating the services did not meet the needs specific to their household and that OPC needed to provide more services than a list of available housing. Others indicated they

believed it would be difficult to find landlords who would accept a Section 8 voucher, especially for those with special needs. Some wanted additional information about the Section 8 program and how it works in Alameda County and other counties and how the moving expenses are calculated.

*Response*: To date, relocation services have been provided on a "requested" basis and all moves have been voluntary. Many residents were calling OPC requesting a "list of referrals" with no other request for services. Just prior to your April 15th meeting, it was decided that no household would receive just referrals and that any household that requested advisory assistance must receive a Notice of Eligibility and the Informational Brochure and attend the Section 8 orientation session. In this way, the household will have a better understanding of the tools available to them for their move.

OPC continues to provide referrals based upon the individual needs of a household; provide transportation to view potential replacement homes; assist in the completion of rental applications; explain to landlords the benefits of the Section 8 program and introduce them to the Housing Authority staff; process claims for advances, security deposits, credit checks and moving (or arranging for movers to assist those households that require special assistance); and answer numerous questions.

To date, about 60 households have moved from Arroyo Vista. The majority have remained in Dublin and the Tri-Valley area, including several households with special needs.

At tonight's meeting David Richman from OPC will give a presentation on the draft Plan, similar to the one he gave at the recent resident meetings.

*4-Comment*: A few speakers questioned the need to give a 30-day notice to move and were worried whether they would be forced to move when the 30 days expired, even though they hadn't found a replacement home.

*Response*: Staff has requested that residents give a 30-day notice to allow us sufficient time to verify income and household size and to issue the Section 8 voucher. We have stated many times that the notice can be extended if a resident does not locate a replacement home within this timeframe or rescinded if a resident changes his/her mind, and indeed 10 households have requested and been granted extensions or rescissions. To avoid confusion we have re-named the notice as "Housing Choice Voucher Request Form."

*5-Comment*: An attorney with the California Affordable Housing Law Project disagreed with the response to comments she submitted, as prepared by Goldfarb & Lipman, regarding the purpose and timing of a relocation plan in relation to a disposition application. She further stated that the survey that was conducted did not adequately assess the needs of the residents.

**0323**

9

*Response*: See attached memorandum from Juliet Cox, counsel from Goldfarb & Lipman.

*6-Comment*: An attorney with the Public Interest Law Project stated that the draft Plan was not made available to all residents and requests for copies were not accommodated. He recommended having the draft Plan translated into other languages. He stated his belief that the draft Plan must be adopted by the City of Dublin and the Alameda County Housing Authority and said that he didn't have enough time to review the revised grievance procedure.

*Response*: The draft Plan was available on the websites of the City of Dublin, OPC and the Alameda County Housing Authority (Dublin link), and was physically placed in the offices of Arroyo Vista (on-site), the Alameda County Housing Authority, the City of Dublin (city manager's office) and the Dublin Library. Some residents reviewed the draft Plan at the Arroyo Vista office and copies of the pages they requested were made at the time of review. Complete copies of the draft Plan were later made and mailed to them.

See the attached memorandum from Juliet Cox that addresses the rest of Comment 6.

*7-Comment*: An attorney with Bay Area Legal Aid stated that there were discrepancies between the information in the draft Plan and the information provided in the disposition application that was submitted to HUD, particularly in reference to credit checks and security deposits. She suggested that the draft Plan should clearly outline the relocation benefits that are provided.

*Response*: There is no discrepancy. The disposition application describes the <u>assumptions</u> used in calculating the relocation budget. It assumes three credit checks per household at $25 each for a total of $75 per household. Multiplying that by the 148 Arroyo Vista households equals $11,100. This does not mean, as the speaker indicated, that every household is entitled to three credit checks for an unlimited number of units. Likewise, the security deposit budget line item was calculated by assuming a monthly rent of $1,250 multiplied by two months ($2,500) and then by 148 households, for a total of $370,000. This does not mean that a resident is entitled to $1,250 or $2,500; it is merely a method for developing the budget. Pursuant to the draft Plan, residents would be eligible for a security deposit up to one month's rent. The exact amount they receive would, obviously, depend on their rent. Note that neither the state relocation guidelines nor federal relocation law requires that <u>any</u> security deposit or credit check fee be paid; the Housing Authority is providing assistance beyond what is called for.

With respect to the relocation benefits to be provided, staff and OPC believe that the draft Plan clearly describes the services that will be provided and no additional language is required.

### Recommendation
Staff and representatives from OPC and Goldfarb & Lipman believe that the draft Plan complies with all applicable state and federal requirements and presents a clear

**0324**

delineation of the relocation benefits to be provided.  Staff recommends that your Commission adopt the resolution approving the draft Plan.



**Respond To:**

Arroyo Vista Office ☐
6700 Dougherty Rd. #151
Dublin, CA 94568
(925) 828-3132

# DUBLIN HOUSING AUTHORITY

**Administrative Office** ☒
22941 Atherton Street
Hayward, CA 94541
(510) 538-8876

April 22, 2008

Name
Address
City, State, Zip

Dear Name:

On April 15, 2008 the Dublin Housing Authority Commission held a meeting to consider the draft Relocation Plan for Arroyo Vista. After hearing from several speakers, the Commission asked that additional meetings be held with residents at Arroyo Vista. The purpose of the meetings is to explain the draft Relocation Plan and the Section 8 Voucher program. The agenda of each meeting will be the same, so if you plan to attend you only have to come to one.

Eight meetings are scheduled. On each of the days shown below there will be one meeting at 4 PM and another at 7 PM. In addition, there will be translation services available as indicated below. The meetings will be held at Arroyo Vista.

| Day | Date | Time | Language Translation Available |
|-----|------|------|-------------------------------|
| Tuesday | May 13 | 4 PM and 7 PM | Informacion en Español estara disponible en esta reunion |
| Wednesday | May 14 | 4 PM and 7 PM | اطلاعات داده شده در این جلسه به زبان فارسی در اختیار شما خواهد بود. |
| Wednesday | May 21 | 4 PM and 7 PM | Ang impormasyon sa Tagalog ay maaring matanggap sa araw ng miting |
| Thursday | May 22 | 4 PM and 7 PM | |

**To attend a meeting, please call the office at Arroyo Vista at 925-828-3132 or sign-up in the office.** We want to keep the number of residents at each meeting to around 10 so everyone can have their questions addressed.

If you need a copy of the draft Relocation Plan translated into one of the above three languages, please call David Richman, the Housing Authority's relocation consultant, at 1-877-972-8908 (toll free) by April 30.

The Housing Commission will again consider the draft Plan at its regular meeting of June 3.

Very truly yours,

Christine Gouig
Executive Director

**0326**

12

goldfarb
lipman
attorneys

1300 Clay Street, Ninth Floor
Oakland, California 94612
510 836-6336

M David Kroot
Lee C. Rosenthal
John T. Nagle
Polly V. Marshall
Lynn Hutchins
Karen M. Tiedemann
Thomas H. Webber
John T. Haygood
Dianne Jackson McLean
Michelle D. Brewer
Jennifer K. Bell
Robert C. Mills
Isabel L. Brown
James T. Diamond, Jr.
Margaret F. Jung
Heather J. Gould
William F. DiCamillo
Juliet E. Cox
Erica Williams Orcharton
Amy DeVaudreuil
Barbara E. Kautz
Luis A. Rodriguez
Xochitl Marquez
Rafel Yaquian

May 28, 2008

memorandum

To

Board of Commissioners, Dublin Housing Authority

From

Juliet E. Cox

RE

At the Dublin Housing Authority (DHA) Commission's meeting on April 15,
2008, attorneys representing some Arroyo Vista tenants raised several concerns
regarding the legal adequacy of the draft Relocation Plan ("draft Plan") for
Arroyo Vista's redevelopment. We disagree with those attorneys regarding those
concerns. In our view, neither state nor federal law bars adoption by the DHA
Commission of the draft Plan as the final relocation plan for Arroyo Vista.

**Timeliness and Scope of the Relocation Plan**

Both the California relocation assistance law and the United States Housing Act
require preparation of a relocation plan before DHA may demand that any tenant
move to make way for Arroyo Vista's redevelopment. The plan must address
relocation needs and methods for those persons who will receive assistance, or
who are or may be subject to mandatory displacement. The plan need not address
hypothetical needs for assistance that may have existed among persons who no
longer live at Arroyo Vista, having moved away without encouragement or
assistance from DHA and for reasons unrelated to Arroyo Vista's potential
redevelopment.

Beginning after adoption of the exclusive negotiating rights agreement (ENRA) in
April 2007, DHA announced that relocation assistance would be available to
tenants who elected to move in anticipation of Arroyo Vista's potential
redevelopment. Although DHA has not yet demanded that any tenant move, some
tenants have left Arroyo Vista since April 2007 in anticipation of Arroyo Vista's
redevelopment, and have received relocation assistance. Because the draft Plan
before the Commission addresses relocation needs and methods for all persons
who live or have lived at Arroyo Vista since adoption of the ENRA in April 2007,
and because these persons are all persons potentially subject to mandatory
displacement, or potentially eligible for relocation assistance, the draft Plan's
scope and timing satisfy the requirements of both state and federal law.

Facsimile
510 836-1035
San Francisco
415 788-6336
Los Angeles
213 627-6336
San Diego
619 239-6336
Goldfarb & Lipman LLP

0327

May 28, 2008
Page 2

**Translation of the Relocation Plan**

At the Commission's April 15 meeting, counsel for some tenants asserted that DHA had provided inadequate opportunities for public comment on the draft Plan because DHA had not made the draft Plan available in any language other than English. Although state and federal law may require translation, where necessary, of individualized benefit determinations and relocation notices, neither state nor federal law requires translation of a public agency's entire relocation plan. Regardless, following the Commission's meeting, and at the Commission's direction, DHA staff invited tenants to request translations of the plan. No tenant made any such request within the established timeframe, but tenants did request copies of the Plan in Spanish and Tagalog at two of the eight meetings scheduled to discuss the draft Plan. Those copies are being provided.

**Grievance Procedure**

Counsel for some tenants also stated to the Commission that the grievance procedure included in the draft Plan did not comply with the requirements of either state or federal law. Following the Commission's meeting, however, neither DHA staff nor DHA counsel have received any further critique of the grievance procedure. Furthermore, DHA staff and counsel drafted the grievance procedure to follow closely the requirements in the California Relocation Assistance Law and Guidelines. If the Commission adopts and follows the grievance procedure set forth in the draft Plan, the Commission will comply with all applicable law.

**Detail in the Plan**

According to counsel for some tenants, the relocation plan should list every category of expense that DHA may reimburse for residential tenants who move due to Arroyo Vista's redevelopment. This level of detail is unnecessary. Rather, the relocation plan must include a description of the payments that DHA will make, which this draft Plan includes.

**Compliance With Federal HCD Act**

The relocation plan need not comply with the requirements of the federal Housing and Community Development (HCD) Act. That statute sets forth criteria for the relocation plan that must accompany an application to the federal government for certain types of grant funding. No participant in the redevelopment project has applied for or received such funding for the project. For this reason, no law requires that DHA adopt a relocation plan that would satisfy the HCD Act.

**Adoption of the Plan by Other Public Agencies**

The Relocation Assistance Law and Guidelines require the public agency that will order "that acquired property be vacated . . . for public use" to prepare and adopt a relocation plan. (25 Cal. Code Regs. §§ 6008, 6038.) In this case, that public entity is DHA, because DHA will require tenants to vacate Arroyo Vista if HUD approves Arroyo Vista's redevelopment. Although the City of Dublin and the Housing Authority of the County of Alameda ("HACA") will contribute funding to the redevelopment project, they will not be the public agencies directly causing

May 28, 2008
Page 3

the tenants' relocation. For this reason, the Relocation Assistance Law and Guidelines do not require the City or HACA also to adopt the draft Plan.

JEC:jec

**0329**

**DUBLIN HOUSING AUTHORITY**

**RESOLUTION NO. 05-08**

**APPROVING THE RELOCATION PLAN FOR THE
ARROYO VISTA DEVELOPMENT PROJECT**

**WHEREAS**, the Dublin Housing Authority ("Authority") is the owner of that certain property know as Arroyo Vista containing 150 public housing units and one child care center; and

**WHEREAS**, the Authority has determined that the Arroyo Vista housing units are obsolete and no longer provide decent safe and sanitary housing for the residents and that rehabilitation of the Arroyo Vista development is financially infeasible; and

**WHEREAS**, the Authority has determined that disposition of the Arroyo Vista property to a private developer for the purposes of demolishing the existing units and constructing approximately 378 new residential units, including 194 affordable housing units, will best meet the needs of the community and ensure that decent, safe and sanitary affordable housing is provided to the residents of Dublin; and

**WHEREAS**, the Authority has submitted an application to the United States Department of Housing and Urban Development ("HUD") to approve the disposition of the Arroyo Vista property, which if approved will result in the displacement of the residents of Arroyo Vista; and

**WHEREAS**, the Authority, pursuant to Government Code Section 7261 and 25 Code of Regulations Section 6038 ("Guidelines"), has prepared a Relocation Plan for the Arroyo Vista Development Project ("Relocation Plan"), that reviews the relocation needs of the households and child care business to be displaced and the available resources for displaced households and the child care business; and

**WHEREAS**, the Authority has determined that fair and reasonable relocation payments will be provided to eligible persons as required by the Guidelines (See Section J of the Relocation Plan); and

**WHEREAS**, the Authority has determined that a relocation assistance program offering the services required by the Guidelines will be established for the displaced households and the child care business (See Sections H and J of the Relocation Plan); and

**WHEREAS**, the Authority has determined that all eligible persons will be adequately informed of the assistance, benefits, policies, practices and procedures, including the grievance procedures, required pursuant to the Guidelines and the Relocation Plan (See Sections H and M of the Relocation Plan); and

**WHEREAS**, the Authority has determined that based upon a recent survey and analysis of both the housing needs of the households to be displaced and the available replacement housing and considering competing demands for that housing, comparable replacement housing will be available within a reasonable period of time prior to displacement, sufficient in number, size and cost for the eligible persons who require such housing (See Sections B, C and D of the Relocation Plan); and

**WHEREAS,** the Authority has determined that adequate provisions have been made to provide orderly, timely and efficient relocation of eligible persons to comparable replacement housing available without regard to race, color, religion, sex, marital status or national origin with a minimum of hardship to those affected (See in particular Sections G, H, J and K of the Relocation Plan); and

**WHEREAS,** the Authority has determined that the Relocation Plan meets the requirements of 25 Code of Regulations Section 6038; and

**WHEREAS,** the Authority has determined, based on the information in the Relocation Plan, the staff report attached hereto as well as the additional supporting documents that the relocation of the residents and child care business from Arroyo Vista is feasible; and

**WHEREAS,** notice of the availability of the Relocation Plan was sent by first class mail to all eligible households on February 12, 2008 and to the child care business on February 13, 2008; and

**WHEREAS,** the Relocation Plan has been available to the public since February 13, 2008;

**NOW, THEREFORE BE IT RESOLVED,** that the Housing Commission hereby finds that based on the information contained in the Relocation Plan, the staff report attached hereto as well as additional supporting documents provided by staff, relocation of the households and child care business located at Arroyo Vista is feasible.

**BE IT FURTHER RESOLVED,** the Housing Commission hereby approves the Relocation Plan and authorizes staff to proceed with the mandatory relocation of the eligible households and the child care business upon receipt of approval of the disposition of the Arroyo Vista project from HUD; notwithstanding that staff is not precluded from continuing to assist eligible households with voluntary relocation prior to approval of the disposition of the Arroyo Vista project from HUD.

**PASSED, APPROVED AND ADOPTED** by the Commissioners of the Dublin Housing Authority, this _____ day of _____, 2008, by the following vote:

AYES:

NOES:

ABSTAIN:

ABSENT:

_____
Janet Lockhart, Chairperson

ATTEST:

_____
Christine Gouig, Executive Director/Secretary

**Approved:** _____

0331

17

# TENANT ACTIVITY
# REPORTS
## April 2008

## ARROYO VISTA OPERATIONS REPORT
April 30, 2008

**TENANT ACCOUNTS**
**Current Month Active Tenant**
Account Charges:

| | | | |
|---|---|---|---|
| Rental | | $ | 36,312 |
| Maintenance | | | 0 |
| Other: | | | 480 |
| Total Account Charges | | $ | 36,792 |
| Total Collection | | $ | 35,312 |

Collection Percentages:

| | | |
|---|---|---|
| To Rental Charges | | 97% |
| To Total Charges | | 96% |

| | # of Accounts | | |
|---|---|---|---|
| **Current Accounts Receivable:** | | | |
| Rent | 24 | $ | 8,777 |
| Maintenance | 0 | | 0 |
| Other: Prepays, Late fees, & Other Charges | 49 | | (317) |
| TOTAL | | $ | 8,460 |

| | | | |
|---|---|---|---|
| **Vacated Accounts Receivable:** | | | |
| Rent | 13 | $ | 19,563 |
| Maintenance | 17 | | 15,535 |
| Other | 50 | | 7,339 |
| TOTAL | | $ | 42,437 |

| | | |
|---|---|---|
| **Total Accounts Receivable (Current & Vacated)** | $ | 50,897 |
| **Allowance for Doubtful Accounts** | $ | (40,186) |

| VACANCIES | No. of Units | Avg. No. of Days Vacant |
|---|---|---|
| Vacant beginning of month | 56 | |
| Move-Outs during month | 1 | |
| Move-Ins during month | 0 | |
| Transfer Move-Outs during month | 0 | |
| Transfer Move-Ins during month | 0 | |
| Vacant end of month | 57 | |
| Average rolling Vacancy (incl. previous month) | | |

**LEGAL ACTION**

| | |
|---|---|
| No. of 14-day notices served | 16 |
| No. of 30-day notices served | 0 |
| Evictions in Progress | 0 |

**APPLICATIONS FOR HOUSING**

| | | |
|---|---|---|
| Total pre-applications as of | 03/31/08 | 221 |
| Pre-applications taken this month | | 0 |
| Pre-applications canceled this month | | 0 |
| No. of applications housed | | 0 |
| Total pre-applications end of month | | 221 |

DECLARATION OF LISA S. GREIF
IN SUPPORT OF PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER
AND PRELIMINARY INJUNCTION

EXHIBIT 11



Ramón P. Arias
Executive Director

**BAY AREA LEGAL AID**

WORKING TOGETHER FOR JUSTICE

June 3, 2008 (via Facsimile, Email and Hand Delivery)

Mayor Janet Lockhart and
DHA Commissioners
City of Dublin
22941 Atherton Street
Hayward, CA 94541

Re: DHA Commission Review of Draft Arroyo Vista Relocation Plan, Comments for June 3, 2008
Meeting

Dear Mayor Lockhart and DHA Commissioners:

`On behalf of our clients Arroyo Vista Tenants Association, Rhenae Keyes, Darlene Brown, Andres Arroyo and Elise Veal we submit this letter as supplemental comments to our letter of March 14, 2008 and the public comments made at the April 15, 2008 DHA Commission (Commission) hearing at which the Draft Relocation Plan for Arroyo Vista was considered for approval.

As you know, after hearing from 17 tenants and their attorneys, representatives from Overland Pacific and Cutler (OPC) and Dublin Housing Authority (DHA) and Alameda County Housing Authority (HACA) staff, the Commission decided on April 15, 2008 to table consideration of the Draft Relocation Plan. The 16 written comments from residents and 17 speakers at the Commission hearing raised many issues with the Draft Plan, including but not limited to the desire of residents to remain in the Dublin area, the need for more extensive advisory and benefits assistance from OPC, concerns regarding the adequacy of security deposit and credit check reimbursement, difficulty finding comparable housing with a Section 8 voucher, and general confusion about a Draft Plan that was not even made available to many of the residents prior to the April 15th public hearing.

In light of the expressed problems with the Draft Plan, we urged the Commission to cease displacement of residents and reject the Draft Plan because it is clearly not responsive to tenants' needs and does not comply with the relocation assistance obligations of the City, DHA, and HACA. The Commission postponed further consideration of the Draft Plan to June 3, 2008, and instructed staff to distribute the Draft Plan to all residents and in the native language of non-English speaking residents, and to address the many concerns and questions raised at the April meeting.. Although staff and representatives of OPC conducted group meetings concerning the Draft Plan in May at which residents again raised their concerns with the Draft Plan, DHA has made no further changes to the Draft Plan. Staff also failed to make the Draft Plan available in other languages. Therefore, we reiterate and incorporate the written and verbal objections to the Draft Plan and

Alameda County Regional Office
405 14th Street, 11th Floor
Oakland, CA 94612

Phone: 510.663.4744
Toll Free: 800.551.5554
Fax: 510.663.4740

www.baylegal.org

LSC

again urge the DHA Commission to reject the Draft Plan. It does not comply with state law.

Inadequate Public Comment Opportunity for Residents

One of the issues raised at the April 15th hearing was that the Draft Plan had not been made available to residents to actually read – either in English or in their native language. We had commented on this deficiency in our written comments, and residents made comments at the hearing about the confusing nature of the plan and the relocation process and requested that material be made available in residents' primary language. Commissioner Sbranti specifically requested that the needs of limited-English speaking residents be addressed through the provision of a translated Draft Plan.

In response to the comments at the public hearing, OPC and DHA agreed to provide each tenant with a copy of the Draft Plan and to meet with residents to address their many questions about the Draft Plan and the Section 8 Voucher Program. An English-only version of the Draft Plan was then sent along with a letter in English -- on April 22, 2008 -- to residents informing them of eight group meetings to be held at Arroyo Vista in May. As you can see from the copy of the letter attached hereto as Exhibit A the letter was written in English with no alternative language translation. Thus, the April 22 letter notified residents *in English only* that any tenants needing the plan translated into one of three offered languages -- Spanish, Farsi or Tagalog -- should call OPC by April 30 to request a translated Draft Plan. As pointed out in the May 6, 2008 letter from Rhenae Keyes to Christine Gouig, even the "notice" that residents must request a translated version of the Draft Plan by April 22, 2008 was not translated. (A copy of Ms. Keyes' May 6, 2008 letter is attached as Exhibit B.) Ms. Keyes received no response to this letter from Christine Gouig.

During the resident meetings we attended with the residents, residents again asked OPC and DHA representatives to provide the Draft Plan in other languages. While oral translation was provided at some of the meetings held with tenants, this is not a substitute to having the complete plan in a primary written language, and did not give non-English speaking residents an opportunity to read and review it prior to those meetings as Commissioner Sbranti requested at the April hearing. Several tenants reported at the April meetings that they had called OPC to request translation of the Draft Plan but received no return call and no Draft Plan translated into their language either at or before the May meetings. When this objection arose at the May meetings, Mr. Richman of OPC stated that no tenant called before the April 30 deadline, and therefore, no translated plans were provided prior to or at the tenants meetings. When residents objected to the Enlgish-only April 22nd letter and staff's failure to have the Draft Plan translated and made available for residents *to read,* Mr. Richman advised that the decision of whether the Draft Plan would be translated is for DHA to make.

Given the scope and complexity of the Draft Plan and the implications to residents if they are and/or have been required to move, it is imperative and required by law that they have all the information necessary to make informed relocation decisions that best fit the needs of their families. Not having a Draft Plan at all and/or in their native language prior to the resident meetings or before the Commission considers adoption of the Draft Plan, deprives residents of Arroyo Vista an opportunity to evaluate or make meaningful comments to the Draft Plan. The Agenda Statement to the June 3rd hearing now indicates that the Draft Plan will be translated only into Spanish and Tagalog. As of the date of this letter, however, it is not clear if even the Spanish and Tagalog-English speaking residents received translated plans. Additionally, while DHA and OPC reported that the March notice advising residents of the availability of the Draft Plan and been sent to all residents previously

relocated, we are aware of at least two former residents that received no notice of the availability of the Plan or a copy of the Draft Plan.

What is clear is that these residents have not had sufficient time to read the Draft Plan in their native languages or to review and comment on the plan before the Commission votes on approval and Farsi-speaking residents have been deprived altogether of notice and a Draft Plan in their language. A Draft Relocation Plan must be made available to residents at least 30 days prior to a public hearing on the Draft Plan to permit public comment. Because of staff's failure to comply with the Commission's instructions, we urge the Commission to again reject the Draft Plan to permit these tenants the required 30-day comment period. We further urge the Commission to instruct staff to provide *all notices* and the Draft Plan in all known native languages. As attorneys for the Arroyo Vista Tenants Association, we also request that all translated notices and translations of the Draft Plan be made available to Lisa Greif of Bay Area Legal Aid at the same time such notices and translations of the Draft Plan are distributed to non-English speaking residents.

Security Deposit and Credit Check Issues

The budget assumption that a landlord asks for only one month security deposit is entirely unrealistic given the fact that, under state resident law, landlords can and do require a deposit of up to two times the monthly rent for an unfurnished home (and up to three times the rent for a furnished home). Staff readily acknowledged in the Application for Disposition submitted to HUD in August 2007 that landlords charge up to two times the monthly rent, and therefore, budgeted and committed – for purposes of the HUD Application – to providing security deposits of up to $2500. Moreover, we are aware that in some instances, residents that have already relocated were provided with the full security deposit necessary for them to relocate. Allocating only one month's rent as a security deposit for the remaining residents in an apparent attempt to "cut relocation costs" creates a financial hardship for residents and will impede their ability to relocate in the event HUD approves the Application, especially those who require larger units. There are only 16 one-bedroom units, many of which were occupied by senior tenants who have already been relocated. The remaining tenants are in the 78 2-bedroom units or 56 3- and 4-bedroom units. This means that these tenants will be paying significantly more for security deposits than are budgeted in the Draft Plan. Practically this means that tenants will be faced with a significant out-of-pocket expense when they find a unit comparable to their Arroyo Vista home. More likely, it means that these low-income families will be unable to relocate altogether. Thus, even if approved, disposition cannot be completed until all residents have actually been relocated. Finally, both state and federal law mandate that relocation of residents must be uniform, fair, equitable and non-discriminatory. Depriving residents of equal notice, advisory assistance, and relocation benefits conflicts with these requirements.

With respect to credit check fees, as the public comments indicate it is unrealistic that residents will even be offered, much less lease, the first unit they find. An arbitrary "cap" on reimbursement of only up to $75 in credit check fees is not reimbursement of the actual and reasonable cost of relocating residents. Relocation benefits must be provided that minimize the hardship to families that have been and/or may be displaced, and the actual and reasonable cost of relocation must be borne by the displacing entities, not the displaced residents. Since families are experiencing difficulty in finding comparable replacement housing and are expending more that $75 on credit checks, we urge the Commission to instruct staff to revise the Draft Plan to provide that the

actual and reasonable credit check fees and security deposits will be made available to all residents that have been and/or will be relocated.

## Inadequate Needs and Resources Assessment

Staff response to comments at the hearing state that the DHA recognizes many tenants wish to remain in the Dublin area because they need to be near their medical providers, schools, jobs, and families. The written and oral comments from residents clearly demonstrate it is the desire of *most*, not "some" residents as characterized by the staff Agenda Statement, to remain in the Tri-Valley area. OPC staff further stated at the April hearing that most residents that have already been relocated were relocated to San Ramon. According to the Agenda Statement, DHA has and will continue to provide assistance for residents that desire to relocate in Dublin and the Tri-Valley area. This is contrary to the draft plan which states that OPC has purportedly identified only 32 replacement housing units in the Tri-Valley area. OPC also stated at the April hearing that 60 households have already been relocated, and according to OPC, most of them were relocated within the Tri-Valley area. Yet, there are not enough "replacement" units identified in the Draft Plan even to meet the locational needs of previously relocated residents much less the remaining residents. Thus, it remains entirely unclear how DHA intends to meet the locational needs of the remaining residents who desire and need to remain in the Tri-Valley area. The lack of comparable housing in Dublin and the Tri-Valley area – that is not restricted to seniors, *will* accept Section 8 vouchers, and is accessible to persons and families with disabilities must be comprehensively addressed before a Relocation Plan can be approved. Clearly, since OPC and DHA have purportedly relocated 60 households – most of them to San Ramon – information is readily available to staff to evaluate and identify the size and type of homes to which residents have already relocated; whether those "replacement" homes accepted Section 8, are restricted to seniors, and/or are fully accessible homes for persons with disabilities; rent levels; security deposits and credit check fees that were actually charged; and the like. A discussion of this information in the Draft Plan will enable both the residents and the Commission to better evaluate whether replacement homes are and will be available to meet the locational needs and desires of remaining residents.

The Draft Relocation Plan is intended to reflect the specific and detailed needs of all the tenants who will be displaced. During the residents meetings held with OPC staff, David Richman urged tenants who had not met with OPC or who had met with OPC but wanted to meet again to give OPC more information to do so as soon as possible. Thus, OPC readily acknowledges that its purported "survey" of resident needs is incomplete. Because it still does not have a complete assessment of each families needs, any Draft Plan on how to *meet* those needs is necessarily deficient. Thus, the Draft Plan as currently written is incomplete and must be rejected.

## Fair Housing Opportunities and Non-Discrimination

Residents further commented that they do not want to move to Oakland. Moving to Oakland for residents that now live in a diverse neighborhood with good schools and public services – many of whom have resided and raised their families in Dublin for decades -- is unacceptable. It will deprive residents of the benefit of residing in a diverse neighborhood near family, friends, schools, jobs, and medical and service providers. It also deprives Dublin of the rich diversity of the Arroyo Vista population. And, a Draft Plan that primarily identifies Oakland as where a majority of "replacement units" will purportedly be made available (albeit without any survey or inspection of those units)

deprives Arroyo Vista residents of fair housing opportunities. It appears to steer residents with children, families of color and different ethnicities to an urban environment with high crime rates, poor schools, and minority and poverty concentration. Moreover, families are being steered to Oakland without *any* locational analysis of the Arroyo Vista neighborhood or any replacement neighborhood -- as is required by state law. Moreover, Oakland is exactly the location most residents have indicated they do not wish to move. Indeed, many of them moved to Dublin in the first place to provide their children with fair housing opportunities, safety, better jobs, and a good education. Ignoring these resident preferences and fair housing rights, the Draft Plan continues to identify a majority of purported replacement units in Oakland. Because residents have made clear that this does not address their needs and desires, relocation must be non-discriminatory, and the Commission has obligations to affirmatively further fair housing opportunities for *all of its residents*, the Draft Plan must be rejected.

It also is entirely inaccurate for the Commission to "assume" and/or "mislead" residents into believing that they are only being temporarily relocated and will have the opportunity to return to the "new" Arroyo Vista. The Disposition and Development Agreement already approved by the Commission plainly calls for fewer units to accommodate large families (49 will be restricted to seniors), rents that will *not* be affordable to most families residing at Arroyo Vista (many over $1300 per month), and undisclosed "behaviorial" eligibility criteria. See a copy of a letter to the Mayor from Antone Tucker explaining the "eligibility" restrictions of the DDA was submitted separately. The Draft Plan is further deficient for its failure to permit residents to return to the property. The circumstances under which former residents have rights to return to the property are not included in the Draft Plan, but rather are only addressed in the Disposition and Development Agreement (DDA) between the City, Housing Authority, Citation Homes and Eden Housing. The DDA provides that prior residents may be admitted "subject to screening and selection criteria." (DDA § 9.2.) This screening criteria includes onerous language providing that "Eligibility for Prior Residents will require that household members demonstrate a continuing commitment to be law-abiding and lease compliant and to meet behavioral standards which would be expected in the private rental market;..." (DDA § 4.2(c)(2)). Any preference under the DDA occurs only after residents pass this screening criteria, allowing an unspecified preference over applicants who were not prior residents. This small preference does give any right return, given all the screening standards, higher rents, restrictions based on occupancy standards. (DDA § 9.2.) The DDA fails to provide any right to return.

It does a serious disservice to the residents and the community to inaccurately advise them that their moves are "only temporary" and all will be welcome back to Dublin. While that may be the Commission's understanding and intent, it is not what the DDA or the Draft Plan provide.

<u>Advisory Services and Assistance.</u>

Residents also have made clear in their comments that OPC has failed to provide advisory services and assistance beyond referral lists of apartments only. Since a Draft Relocation Plan was not even made available until March 2008, residents were not even informed of services that *should* have been available before any displacement was permitted to occur. Contrary to OPC's statements at the April hearing that it has assisted residents by driving them to inspect replacement homes, many residents submitted declarations to the Court denying that OPC has provided even a modicum of

services to residents. Indeed, residents that were denied fair housing opportunities by prospective landlords and sought OPC assistance were told that OPC would "only" provide them with referrals. Residents with disabilities in need of accessible homes have been offered *no assistance* in locating accessible homes and/or ensuring that non-accessible homes will be made accessible. Indeed, the Draft Plan is utterly silent as to the specific services and assistance available to persons with disabilities. The provision of "just referrals" as acknowledged in the Agenda Statement (pg. 9) is completely inadequate. Likewise, the directive that each household will receive a Notice of Eligibility and be required to attend a Section 8 orientation is not explained in the Draft Plan. And, of course, the Agenda Statement, another English-only 'notice', does not suffice to meet Relocation Plan requirements. The Draft Plan should be rejected for failure to address all advisory services that will be made available to all residents.

Moving Expenses and Payment Standard Issues

Other issues not adequately addressed and revised in response to public comments include confusion about the replacement housing payment and the housing payment standards from other jurisdictions if a tenant leaves HACA's service area. Tenants continue to express concerns that they will not be able to find adequate housing for their family size, and cannot even conduct an adequate search for a new home when they are not informed of the income restrictions and HAP standards of other jurisdictions – jurisdictions to which they are being *referred* by OPC. Yet, no revisions or amendments to the Draft Plan have been made to address these fundamental concerns. Therefore, the Commission should reject the Plan as drafted for failure to provide and analyze this information for residents that are *expected* to use Section 8 vouchers as a key component of their relocation "package".

Tenants also expressed concern in their comments and during the resident meetings that the moving expenses offered are inadequate to cover the actual and reasonable cost of moving. Moreover, they must be fully paid in advance to enable families to actually relocate. In fact, state law requires DHA to advance moving expenses for lower income residents when requested. Residents also questioned the limitation of payment for specific rooms which does not account for other areas in their homes in the moving expense calculation. During one of the May meetings, Mr. Richman was asked whether a tenant's storage shed would count as "a room" for purposes of calculating the per-room moving reimbursement. He responded that it would. This is an example of the different information that tenants have received since only those tenants at that meeting now have that information. If the storage units will count as a room, the Draft Plan must so specify. It also must delineate the full list of actual versus fixed moving expenses available to residents or the residents are deprived of the opportunity to "elect" between the two options. Since the Draft Plan does not reflect this or any other revision, its adoption will result in relocation policies and procedures that are not fair, uniform and equitable.

Finally, we urge the Commission to provide the full 30-day comment period to those residents who need, and will presumably receive, a translated plan. And to those that were already relocated without benefit of any Plan. Without sufficient time to review and comment on the plan these residents have been denied a meaningful opportunity to participate in and contribute to a decision which will have a drastic impact on their lives. Because of the outstanding deficiencies and unaddressed resident comments, we again urge DHA to reject the Draft Plan. Despite all of these comments both written and oral expressing concerns and problems with the relocation plan as drafted

no changes were made to the plan to address any of these issues. Rather, a series of meetings at which OPC mainly summarized what is in the Draft Plan occurred. Those meetings did *not* result in "listening" to the residents' concerns or "responding" to the many deficiencies of the Draft Plan.

      For all of these reasons and the reasons set forth in all comments previously provided, we urge the Commission to reject the Draft Relocation Plan.

Sincerely,

BAY AREA LEGAL AID
Lisa Greif
Naomi Young

THE CALIFORNIA AFFORDABLE HOUSING LAW PROJECT OF THE
PUBLIC INTEREST LAW PROJECT
Deborah Collins
Mike Rawson
Craig Castellanet

cc: via facsimile and Hand Delivery

DHA Commissioners,
Janet Lockhart
Tim Sbranti
Kasie Hildenbrand
Tony Oravetz
Kate Ann Scholz
Ramona Frydendal
Dwayne Thomas
Via email:

Juliet Cox
Goldfarb & Lipman
1300 Clay Street, Ninth Floor
Oakland, CA 94612
jcox@goldfarblipman.com

Ariana Mohit
Meyers, Nave, Riback, Silver & Wilson
575 Market Street, Suite 2600
San Francisco, CA 94105
amohit@meyersnave.com

0341

# EXHIBIT A

0342

FROM : VICTOR M. ARROYO              FAX NO. : 9253615762              Apr. 27 2008 08:49PM P1



# DUBLIN HOUSING AUTHORITY

Arroyo Vista Office ☐
6700 Dougherty Rd. #151
Dublin, CA 94568
(925) 828-3132

Administrative Office ☒
22941 Atherton Street
Hayward, CA 94541
(510) 538-8876

April 22, 2008

*TO: LISA*

Andres Arroyo
6700 Dougherty Road #61
Dublin, CA  94568

Dear Mr. Arroyo:

On April 15, 2008 the Dublin Housing Authority Commission held a meeting to consider the draft Relocation Plan for Arroyo Vista. After hearing from several speakers, the Commission asked that additional meetings be held with residents at Arroyo Vista. The purpose of the meetings is to explain the draft Relocation Plan and the Section 8 Voucher program. The agenda of each meeting will be the same, so if you plan to attend you only have to come to one.

Eight meetings are scheduled. On each of the days shown below there will be one meeting at 4 PM and another at 7 PM. In addition, there will be translation services available as indicated below. The meetings will be held at Arroyo Vista.

| Day | Date | Time | Language Translation Available |
|---|---|---|---|
| Tuesday | May 13 | 4 PM and 7 PM | Informacion en Español estara disponible en esta reunion |
| Wednesday | May 14 | 4 PM and 7 PM | اطلاعات داده شده در این جلسه به زبان فارسی در اختیار شما خواهد بود. |
| Wednesday | May 21 | 4 PM and 7 PM | Ang impormasyon sa Tagalog ay maaring matanggap sa araw ng miting |
| Thursday | May 22 | 4 PM and 7 PM | |

**To attend a meeting, please call the office at Arroyo Vista at 925-828-3132 or sign-up in the office.** We want to keep the number of residents at each meeting to around 10 so everyone can have their questions addressed.

If you need a copy of the draft Relocation Plan translated into one of the above three languages, please call David Richman, the Housing Authority's relocation consultant, at 1-877-972-8908 (toll free) by April 30.

The Housing Commission will again consider the draft Plan at its regular meeting of June 3.

Very truly yours,

Christine Gouig
Executive Director

0343

# EXHIBIT B

0344

May 6, 2008

Christine Gouig                     David Richman
Executive Director                  Overland Pacific and Cutler
Dublin Housing Authority            7901 Oakport Street, Suite 4800
22941 Atherton Street               Oakland, CA  94621-8908
Hayward, CA  94541

Re: April 22, 2008 Letter to Arroyo Vista Tenants

Dear Ms. Gouig and Mr. Richman

On behalf of the Arroyo Vista Tenants Association I am writing to express my concerns about
the April 22, 2008 letter you sent to all residents at Arroyo Vista informing us of the series of
meetings scheduled in May 2008 to discuss the relocation plan and the Section 8 program.
While I appreciate that the comments by residents at the Dublin Housing Commission meeting
on April 15 prompted these follow-up meetings as a way to address the on going questions
residents have regarding the relocation plan, I feel the letter does not adequately address the
needs of the limited-English speaking tenants.

First, while the letter states that the relocation plan is available in the three languages listed it
only gives this information in English. This is not helpful to those tenants whose primary
language is not English. Second, the letter requires that tenants must call David Richman by
April 30 to request a translated relocation plan. This deadline was just one week after the letter
was sent and again was only in English.

As Commissioner Sbranti stated during the Commission meeting the relocation plan needs to be
made available to all residents in their primary language. Several residents have called OPC to
request a copy of the Relocation Plan in their primary language (Spanish, Tagalog or Farsi) but
they have not received the translated plan or even a call back from the OPC staff member they
were referred to. In the case of Mr. Arroyo, his son called Teresa Leverde and left her several
messages requesting the relocation plan in Spanish. As of this date he has received neither a call
back from Ms. Laverde nor a copy of the plan in Spanish. The other tenants who called for
translated plans also received no call back from OPC. These tenants whose primary language is
not English should be given a translated plan as soon as possible so that they have adequate time
to review it before the DHA Commission meeting in June.

In an effort to fully inform the residents of Arroyo Vista of their rights and benefits under the
draft relocation plan I request that you send another letter which addresses the concerns I have
raised above. Thank you.

Sincerely,

Rhenae Keyes
Chair, Arroyo Vista Tenants Association

**0345**

DECLARATION OF LISA S. GREIF
IN SUPPORT OF PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER
AND PRELIMINARY INJUNCTION

EXHIBIT 16

# PHA Plans

Streamlined 5-Year/Annual
Version

**U.S. Department of Housing and
Urban Development**
Office of Public and Indian Housing

OMB No. 2577-0226
(exp 08/31/2009)

This information collection is authorized by Section 511 of the Quality Housing and Work Responsibility Act, which added a new section 5A to the U.S. Housing Act of 1937 that introduced 5-year and annual PHA Plans. The full PHA plan provides a ready source for interested parties to locate basic PHA policies, rules, and requirements concerning the PHA's operations, programs, and services, and informs HUD, families served by the PHA, and members of the public of the PHA's mission and strategies for serving the needs of low-income and very low-income families. This form allows eligible PHAs to make a streamlined annual Plan submission to HUD consistent with HUD's efforts to provide regulatory relief to certain PHAs. Public reporting burden for this information collection is estimated to average 11.7 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. HUD may not collect this information and respondents are not required to complete this form, unless it displays a currently valid OMB Control Number.

Privacy Act Notice. The United States Department of Housing and Urban Development, Federal Housing Administration, is authorized to solicit the information requested in this form by virtue of Title 12, U.S. Code, Section 1701 et seq., and regulations promulgated thereunder at Title 12, Code of Federal Regulations. Information in PHA plans is publicly available.

# Streamlined 5-Year Plan for Fiscal Years 2005 - 2009
# Streamlined Annual Plan for Fiscal Year 2007

**NOTE: This PHA Plan template (HUD-50075-SA) is to be completed in accordance with instructions contained in previous Notices PIH 99-33 (HA), 99-51 (HA), 2000-22 (HA), 2000-36 (HA), 2000-43 (HA), 2001-4 (HA), 2001-26 (HA), 2003-7 (HA), and any related notices HUD may subsequently issue. Full reporting for each component listed in the streamlined Annual Plan submitted with the 5-year plan is required.**

PHA Name: Dublin Housing Authority       5-Year Plan for Fiscal Years: 2005 - 2009        Annual Plan for FY 2006
HA Code: CA142

# Streamlined Five-Year PHA Plan
## Agency Identification

**PHA Name:** Dublin Housing Authority        **PHA Number:** CA142

## PHA Fiscal Year Beginning: (mm/yyyy) 07/2007

## PHA Programs Administered:
☐ Public Housing and Section 8      ☐ Section 8 Only      ☒ Public Housing Only
Number of public housing units:           Number of S8 units:           Number of public housing units:
Number of S8 units:

☐ PHA Consortia: (check box if submitting a joint PHA Plan and complete table)

| Participating PHAs | PHA Code | Program(s) Included in the Consortium | Programs Not in the Consortium | # of Units Each Program |
|---|---|---|---|---|
| Participating PHA 1: | | | | |
| Participating PHA 2: | | | | |
| Participating PHA 3: | | | | |

## Public Access to Information
**Information regarding any activities outlined in this plan can be obtained by contacting: (select all that apply)**
☐ Main administrative office of the PHA
☒ PHA development management offices
☐ PHA local offices

## Display Locations For PHA Plans and Supporting Documents
The PHA Plans and attachments (if any) are available for public inspection at: (select all that apply)
☐ Main administrative office of the PHA
☒ PHA development management offices
☐ PHA local offices
☐ Main administrative office of the local government
☐ Main administrative office of the County government
☐ Main administrative office of the State government
☐ Public library
☐ PHA website
☐ Other (list below)

PHA Plan Supporting Documents are available for inspection at: (select all that apply)
☐ Main business office of the PHA
☒ PHA development management offices

0371

PHA Name: Dublin Housing Authority       5-Year Plan for Fiscal Years:  2005 - -2009              Annual Plan for FY 2006
HA Code: CA142

☐     Other (list below)

# Streamlined Five-Year PHA Plan
## PHA FISCAL YEARS 2005 - 2009
[24 CFR Part 903.12]

## A. Mission

State the PHA's mission for serving the needs of low-income, very low income, and extremely low-income families
in the PHA's jurisdiction. (select one of the choices below)

☐     The mission of the PHA is the same as that of the Department of Housing and Urban
        Development:  To promote adequate and affordable housing, economic opportunity and a
        suitable living environment free from discrimination.

☒     The PHA's mission is: (state mission here)
The mission of the Dublin Housing Authority is to provide an affordable housing resource, free
from discrimination, for extremely low income, very low income, and low income families in the
Dublin community.  This housing, in combination with other resources, should create economic
opportunity and encourage self-sufficiency.

## B. Goals

The goals and objectives listed below are derived from HUD's strategic Goals and Objectives and those emphasized
in recent legislation. PHAs may select any of these goals and objectives as their own, or identify other goals and/or
objectives. Whether selecting the HUD-suggested objectives or their own, **PHAs ARE STRONGLY
ENCOURAGED TO IDENTIFY QUANTIFIABLE MEASURES OF SUCCESS IN REACHING THEIR
OBJECTIVES OVER THE COURSE OF THE 5 YEARS.**  (Quantifiable measures would include targets such
as: numbers of families served or PHAS scores achieved.) PHAs should identify these measures in the spaces to the
right of or below the stated objectives.

**HUD Strategic Goal:  Increase the availability of decent, safe, and affordable housing.**

☒     PHA Goal:  Expand the supply of assisted housing
        Objectives:
        ☐     Apply for additional rental vouchers:
        ☐     Reduce public housing vacancies:
        ☒     Leverage private or other public funds to create additional housing opportunities:
        ☒     Acquire or build units or developments
        ☐     Other (list below)

☒     PHA Goal:  Improve the quality of assisted housing
        Objectives:
        ☒     Improve public housing management: (PHAS score) Achieve a score of 90 or
higher.
        ☐     Improve voucher management: (SEMAP score)
        ☐     Increase customer satisfaction:
        ☐     Concentrate on efforts to improve specific management functions:
               (list; e.g., public housing finance; voucher unit inspections)
        ☐     Renovate or modernize public housing units:

0372

PHA Name: Dublin Housing Authority      5-Year Plan for Fiscal Years: 2005 - 2009      Annual Plan for FY 2006
HA Code: CA142

    ☒ Demolish or dispose of obsolete public housing:
    ☐ Provide replacement public housing:
    ☐ Provide replacement vouchers:
    ☐ Other: (list below)

☐ PHA Goal: Increase assisted housing choices
Objectives:
    ☐ Provide voucher mobility counseling:
    ☐ Conduct outreach efforts to potential voucher landlords
    ☐ Increase voucher payment standards
    ☐ Implement voucher homeownership program:
    ☐ Implement public housing or other homeownership programs:
    ☐ Implement public housing site-based waiting lists:
    ☐ Convert public housing to vouchers:
    ☐ Other: (list below)

**HUD Strategic Goal: Improve community quality of life and economic vitality**

☒ PHA Goal: Provide an improved living environment
Objectives:
    ☐ Implement measures to deconcentrate poverty by bringing higher income public housing households into lower income developments: Continue use of rent ranges in tenant selection.
    ☒ Implement measures to promote income mixing in public housing by assuring access for lower income families into higher income developments:
    ☒ Implement public housing security improvements: Continue working with Dublin Police Department and tenants on crime reduction activities.
    ☐ Designate developments or buildings for particular resident groups (elderly, persons with disabilities)
    ☐ Other: (list below)

**HUD Strategic Goal: Promote self-sufficiency and asset development of families and individuals**

☒ PHA Goal: Promote self-sufficiency and asset development of assisted households
Objectives:
    ☒ Increase the number and percentage of employed persons in assisted families: Continue admission preference for working families.
    ☒ Provide or attract supportive services to improve assistance recipients' employability: Encourage tenant use of on-site child care resource.
    ☐ Provide or attract supportive services to increase independence for the elderly or families with disabilities.
    ☐ Other: (list below)

0373

## HUD Strategic Goal: Ensure Equal Opportunity in Housing for all Americans

☒   PHA Goal: Ensure equal opportunity and affirmatively further fair housing
Objectives:
    ☒    Undertake affirmative measures to ensure access to assisted housing regardless of race, color, religion national origin, sex, familial status, and disability: Review wait list procedures and outreach.
    ☒    Undertake affirmative measures to provide a suitable living environment for families living in assisted housing, regardless of race, color, religion national origin, sex, familial status, and disability: Analyze wait list statistics and tenant demographics to identify any targeted marketing needs.
    ☐    Undertake affirmative measures to ensure accessible housing to persons with all varieties of disabilities regardless of unit size required:
    ☐    Other: (list below)

## Other PHA Goals and Objectives: (list below)

DHA has incorporated the applicable provisions of the Violence Against Women and Department of Justice Reauthorization Act of 2005 (Pub. L. 109-162) (VAWA) into its Admissions and Continued Occupancy Policy (ACOP). DHA's goals, objectives and policies to enable DHA to serve the needs of child and adult victims of domestic violence, dating violence and stalking, as defined in VAWA, are stated in the applicable sections of its ACOP

# Streamlined Annual PHA Plan
## PHA Fiscal Year 2007
[24 CFR Part 903.12(b)]

### Table of Contents

Provide the following table of contents for the streamlined Annual Plan submitted with the Five-Year Plan, including all streamlined plan components, and additional requirements, together with the list of supporting documents available for public inspection.

### A.    ANNUAL STREAMLINED PHA PLAN COMPONENTS

☒  1. Housing Needs
☒  2. Financial Resources
☒  3. Policies on Eligibility, Selection and Admissions
☒  4. Rent Determination Policies
☒  5. Capital Improvements Needs
☒  6. Demolition and Disposition
☐  7. Homeownership
☒  8. Civil Rights Certifications (included with PHA Certifications of Compliance)
☒  9. Additional Information
    a.  PHA Progress on Meeting 5-Year Mission and Goals
    b.  Criteria for Substantial Deviations and Significant Amendments
    c.  Other Information Requested by HUD
        i.  Resident Advisory Board Membership and Consultation Process
        ii.  Resident Membership on the PHA Governing Board
        iii.  PHA Statement of Consistency with Consolidated Plan
        iv.  (Reserved)
☐  10. Project-Based Voucher Program
☒  11. Supporting Documents Available for Review
☒  12. FY 20__ Capital Fund Program and Capital Fund Program Replacement Housing Factor, Annual Statement/Performance and Evaluation Report
☒  13. Capital Fund Program 5-Year Action Plan
☐  14. Other (List below, providing name for each item)

### B.    SEPARATE HARD COPY SUBMISSIONS TO LOCAL HUD FIELD OFFICE

**Form HUD-50077,** *PHA Certifications of Compliance with the PHA Plans and Related Regulations: Board Resolution to Accompany the Standard Annual, Standard Five-Year, and Streamlined Five-Year/Annual Plans;*
*Certification by State or Local Official of PHA Plan Consistency with Consolidated Plan.*
For PHAs APPLYING FOR CAPITAL FUND PROGRAM (CFP) GRANTS:
**Form HUD-50070,** *Certification for a Drug-Free Workplace;*
**Form HUD-50071,** *Certification of Payments to Influence Federal Transactions;*
**Form SF-LLL & SF-LLLa,** *Disclosure of Lobbying Activities.*

0375

## Executive Summary (optional)
[903.7(r)]. If desired, provide a brief overview of the contents of the streamlined 5-Year/Annual Plan.

## 1. Statement of Housing Needs [24 CFR Part 903.12 (b), 903.7(a)]

### A. Housing Needs of Families on the Public Housing and Section 8 Tenant- Based Assistance Waiting Lists
State the housing needs of the families on the PHA's waiting list/s. **Complete one table for each type of PHA-wide waiting list administered by the PHA.** PHAs may provide separate tables for site-based or sub-jurisdictional public housing waiting lists at their option.

| Housing Needs of Families on the PHA's Waiting Lists | | | |
|---|---|---|---|
| Waiting list type: (select one) ☐ Section 8 tenant-based assistance ☒ Public Housing ☐ Combined Section 8 and Public Housing ☐ Public Housing Site-Based or sub-jurisdictional waiting list (optional) If used, identify which development/subjurisdiction: | # of families | % of total families | Annual Turnover |
| Waiting list total | 267 | | |
| Extremely low income <=30% AMI | 197 | 73.8 | |
| Very low income (>30% but <=50% AMI) | 63 | 23.6 | |
| Low income (>50% but <80% AMI) | 7 | 2.6 | |
| Families with children | 238 | 89.1 | |
| Elderly families | 10 | 3.7 | |
| Families with Disabilities | 42 | 15.7 | |
| Race/ethnicity - White | 82 | 30.7 | |
| Race/ethnicity - Black | 129 | 48.3 | |
| Race/ethnicity – Native American | 4 | 1.5 | |
| Race/ethnicity - Asian | 34 | 12.7 | |
| Race/ethnicity - Hispanic | 18 | 6.8 | |
| | | | |
| Characteristics by Bedroom Size (Public Housing Only) | | | |
| 1BR | 25 | 9.4 | |
| 2 BR | 119 | 44.6 | |
| 3 BR | 25 | 9.4 | |
| 4 BR | 98 | 36.6 | |
| 5 BR | N/A | | |
| 5+ BR | N/A | | |

0376

PHA Name: Dublin Housing Authority       5-Year Plan for Fiscal Years: 2005 – 2009       Annual Plan for FY 2006
HA Code: CA142

| Housing Needs of Families on the PHA's Waiting Lists |
| --- |
| Is the waiting list closed (select one)? ☐ No ☒ Yes |
| If yes: |
|     How long has it been closed (# of months)? 11 |
|     Does the PHA expect to reopen the list in the PHA Plan year? ☒ No ☐ Yes |
|     Does the PHA permit specific categories of families onto the waiting list, even if generally closed? ☐ No ☒ Yes |

## B. Strategy for Addressing Needs

Provide a brief description of the PHA's strategy for addressing the housing needs of families on the PHA's public housing and Section 8 waiting lists **IN THE UPCOMING YEAR**, and the Agency's reasons for choosing this strategy.

### (1) Strategies

**Need: Shortage of affordable housing for all eligible populations**

**Strategy 1. Maximize the number of affordable units available to the PHA within its current resources by:**
Select all that apply

☒ Employ effective maintenance and management policies to minimize the number of public housing units off-line

☒ Reduce turnover time for vacated public housing units

☒ Reduce time to renovate public housing units

☐ Seek replacement of public housing units lost to the inventory through mixed finance development

☐ Seek replacement of public housing units lost to the inventory through section 8 replacement housing resources

☐ Maintain or increase section 8 lease-up rates by establishing payment standards that will enable families to rent throughout the jurisdiction

☐ Undertake measures to ensure access to affordable housing among families assisted by the PHA, regardless of unit size required

☐ Maintain or increase section 8 lease-up rates by marketing the program to owners, particularly those outside of areas of minority and poverty concentration

☐ Maintain or increase section 8 lease-up rates by effectively screening Section 8 applicants to increase owner acceptance of program

☒ Participate in the Consolidated Plan development process to ensure coordination with broader community strategies

☐ Other (list below)

**Strategy 2: Increase the number of affordable housing units by:**
Select all that apply

☐ Apply for additional section 8 units should they become available

☐ Leverage affordable housing resources in the community through the creation of mixed - finance housing

☒ Pursue housing resources other than public housing or Section 8 tenant-based assistance.

0377

PHA Name: Dublin Housing Authority          5-Year Plan for Fiscal Years: 2005 - 2009          Annual Plan for FY 2006
HA Code: CA142

☒     Other: (list below)
Begin the process to replace 150 public housing units with 26 ownership units and 179
affordable tax-credit rental units, 50 of which are to be designated for the elderly. The developer
will apply to HUD for Section 202 funding in order to target the 50 elderly units to extremely
low-income seniors. Fifteen of the 26 ownership units are to be affordable. This is an increase
of 44 affordable units.

### Need: Specific Family Types: Families at or below 30% of median

**Strategy 1: Target available assistance to families at or below 30 % of AMI**
Select all that apply

☐     Exceed HUD federal targeting requirements for families at or below 30% of AMI in
       public housing
☐     Exceed HUD federal targeting requirements for families at or below 30% of AMI in
       tenant-based section 8 assistance
☐     Employ admissions preferences aimed at families with economic hardships
☒     Adopt rent policies to support and encourage work
☐     Other: (list below)

### Need: Specific Family Types: Families at or below 50% of median

**Strategy 1: Target available assistance to families at or below 50% of AMI**
Select all that apply

☒     Employ admissions preferences aimed at families who are working
☒     Adopt rent policies to support and encourage work
☐     Other: (list below)

### Need: Specific Family Types: The Elderly

**Strategy 1: Target available assistance to the elderly:**
Select all that apply

☐     Seek designation of public housing for the elderly
☐     Apply for special-purpose vouchers targeted to the elderly, should they become available
☐     Other: (list below)

### Need: Specific Family Types: Families with Disabilities

**Strategy 1: Target available assistance to Families with Disabilities:**
Select all that apply

☐     Seek designation of public housing for families with disabilities
☐     Carry out the modifications needed in public housing based on the section 504 Needs
       Assessment for Public Housing
☐     Apply for special-purpose vouchers targeted to families with disabilities, should they

**0378**

PHA Name: Dublin Housing Authority        5-Year Plan for Fiscal Years: 2005 - 2009        Annual Plan for FY 2006
HA Code: CA142

become available

☐ Affirmatively market to local non-profit agencies that assist families with disabilities
☐ Other: (list below)

**Need:  Specific Family Types:  Races or ethnicities with disproportionate housing needs**

**Strategy 1:  Increase awareness of PHA resources among families of races and ethnicities with disproportionate needs:**
Select if applicable

☐ Affirmatively market to races/ethnicities shown to have disproportionate housing needs
☐ Other: (list below)

**Strategy 2:  Conduct activities to affirmatively further fair housing**
Select all that apply

☐ Counsel section 8 tenants as to location of units outside of areas of poverty or minority concentration and assist them to locate those units
☐ Market the section 8 program to owners outside of areas of poverty /minority concentrations
☐ Other: (list below)

**Other Housing Needs & Strategies: (list needs and strategies below)**

**(2)  Reasons for Selecting Strategies**
Of the factors listed below, select all that influenced the PHA's selection of the strategies it will pursue:

☒ Funding constraints
☒ Staffing constraints
☒ Limited availability of sites for assisted housing
☒ Extent to which particular housing needs are met by other organizations in the community
☒ Evidence of housing needs as demonstrated in the Consolidated Plan and other information available to the PHA
☒ Influence of the housing market on PHA programs
☐ Community priorities regarding housing assistance
☐ Results of consultation with local or state government
☒ Results of consultation with residents and the Resident Advisory Board
☐ Results of consultation with advocacy groups
☐ Other:  (list below)

## 2.  Statement of Financial Resources
[24 CFR Part 903.12 (b), 903.7 (c)]
List on the following table the financial resources that are anticipated to be available to the PHA for the support of Federal public housing and tenant-based Section 8 assistance programs administered by the PHA during the Plan year.  Note:  the table assumes that Federal public housing or tenant based Section 8 assistance grant funds are

---

PHA Name: Dublin Housing Authority     5-Year Plan for Fiscal Years:  2005 - 2009            Annual Plan for FY 2006
HA Code: CA142

expended on eligible purposes; therefore, uses of these funds need not be stated.  For other funds, indicate the use
for those funds as one of the following categories: public housing operations, public housing capital improvements,
public housing safety/security, public housing supportive services, Section 8 tenant-based assistance, Section 8
supportive services or other.

| Financial Resources: Planned Sources and Uses | | |
|---|---|---|
| Sources | Planned $ | Planned Uses |
| 1.  Federal Grants (FY 2007 grants) | | |
| a)   Public Housing Operating Fund | 212,244 | PHA Operations |
| b)   Public Housing Capital Fund | 255,000 | PHA Capital Improvements |
| c)   HOPE VI Revitalization | | |
| d)   HOPE VI Demolition | | |
| e)   Annual Contributions for Section 8 Tenant-Based Assistance | | |
| f)   Resident Opportunity and Self-Sufficiency Grants | | |
| g)   Community Development Block Grant | | |
| h)   HOME | | |
| Other Federal Grants (list below) | | |
| | | |
| 2.  Prior Year Federal Grants (unobligated funds only) (list below) | | |
| | | |
| | | |
| | | |
| 3.  Public Housing Dwelling Rental Income | 693,792 | PHA Operations |
| | | |
| | | |
| 4.  Other income (list below) | | |
| Investment: | 45,525 | PHA Operations |
| Miscellaneous: | 20,000 | PHA Operations |
| 4.  Non-federal sources (list below) | | |
| | | |
| | | |
| | | |
| Total resources | 1,226,561 | |

## 3.  PHA Policies Governing Eligibility, Selection, and Admissions
[24 CFR Part 903.12 (b), 903.7 (b)]

## A.  Public Housing
Exemptions: PHAs that do not administer public housing are not required to complete subcomponent 3A.

### (1) Eligibility

a. When does the PHA verify eligibility for admission to public housing? (select all that apply)
☒      When families are within a certain number of being offered a unit: (5)

0380

PHA Name: Dublin Housing Authority        5-Year Plan for Fiscal Years:  2005 - 2009        Annual Plan for FY 2006
HA Code: CA142

☒  When families are within a certain time of being offered a unit: (1 month)
☐  Other: (describe)

b. Which non-income (screening) factors does the PHA use to establish eligibility for admission
   to public housing (select all that apply)?
☒  Criminal or Drug-related activity
☒  Rental history
☒  Housekeeping
☐  Other (describe)

c. ☒ Yes ☐ No:  Does the PHA request criminal records from local law enforcement agencies
                    for screening purposes?
d. ☒ Yes ☐ No:  Does the PHA request criminal records from State law enforcement agencies
                    for screening purposes?
e. ☐ Yes ☒ No:  Does the PHA access FBI criminal records from the FBI for screening
                    purposes? (either directly or through an NCIC-authorized source)

(2)Waiting List Organization

a. Which methods does the PHA plan to use to organize its public housing waiting list (select all
   that apply)
☒  Community-wide list
☐  Sub-jurisdictional lists
☐  Site-based waiting lists
☐  Other (describe)

b.  Where may interested persons apply for admission to public housing?
☐  PHA main administrative office
☒  PHA development site management office
☒  Other (list below)
May also be mailed to a post-office box.

c.  Site-Based Waiting Lists-Previous Year

   1.  Has the PHA operated one or more site-based waiting lists in the previous year?  If yes,
       complete the following table; if not skip to d.

**Site-Based Waiting Lists**

0381

PHA Name: Dublin Housing Authority       5-Year Plan for Fiscal Years: 2005 - 2009       Annual Plan for FY 2006
HA Code: CA142

| Development Information: (Name, number, location) | Date Initiated | Initial mix of Racial, Ethnic or Disability Demographics | Current mix of Racial, Ethnic or Disability Demographics since Initiation of SBWL | Percent change between initial and current mix of Racial, Ethnic, or Disability demographics |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |

2.  What is the number of site based waiting list developments to which families may apply at one time? ___

3.  How many unit offers may an applicant turn down before being removed from the site-based waiting list? ___

4.  ☐ Yes ☐ No: Is the PHA the subject of any pending fair housing complaint by HUD or any court order or settlement agreement? If yes, describe the order, agreement or complaint and describe how use of a site-based waiting list will not violate or be inconsistent with the order, agreement or complaint below:

d.  Site-Based Waiting Lists – Coming Year

If the PHA plans to operate one or more site-based waiting lists in the coming year, answer each of the following questions; if not, skip to subsection (3) **Assignment**

1.  How many site-based waiting lists will the PHA operate in the coming year?

2.  ☐ Yes ☐ No: Are any or all of the PHA's site-based waiting lists new for the upcoming year (that is, they are not part of a previously-HUD-approved site based waiting list plan)?
    If yes, how many lists?

3.  ☐ Yes ☐ No: May families be on more than one list simultaneously
    If yes, how many lists?

4.  Where can interested persons obtain more information about and sign up to be on the site-based waiting lists (select all that apply)?
    ☐      PHA main administrative office
    ☐      All PHA development management offices
    ☐      Management offices at developments with site-based waiting lists
    ☐      At the development to which they would like to apply
    ☐      Other (list below)

**(3) Assignment**

**0382**

a. How many vacant unit choices are applicants ordinarily given before they fall to the bottom of or are removed from the waiting list? (select one)

☐ One
☒ Two
☐ Three or More

b. ☒ Yes ☐ No: Is this policy consistent across all waiting list types?

c. If answer to b is no, list variations for any other than the primary public housing waiting list/s for the PHA:

## (4) Admissions Preferences

a. Income targeting:
☐ Yes ☒ No: Does the PHA plan to exceed the federal targeting requirements by targeting more than 40% of all new admissions to public housing to families at or below 30% of median area income?

b. Transfer policies:
In what circumstances will transfers take precedence over new admissions? (list below)

☒ Emergencies
☒ Over-housed
☒ Under-housed
☒ Medical justification
☒ Administrative reasons determined by the PHA (e.g., to permit modernization work)
☐ Resident choice: (state circumstances below)
☐ Other: (list below)

c. Preferences
1. ☒ Yes ☐ No:    Has the PHA established preferences for admission to public housing (other than date and time of application)? (If "no" is selected, skip to subsection **(5) Occupancy**)

2. Which of the following admission preferences does the PHA plan to employ in the coming year? (select all that apply from either former Federal preferences or other preferences)

Former Federal preferences:
☒ Involuntary Displacement (Disaster, Government Action, Action of Housing Owner, Inaccessibility, Property Disposition)
☐ Victims of domestic violence
☐ Substandard housing
☐ Homelessness
☐ High rent burden (rent is > 50 percent of income)

Other preferences: (select below)
☒ Working families and those unable to work because of age or disability

PHA Name: Dublin Housing Authority    5-Year Plan for Fiscal Years: 2005 - 2009    Annual Plan for FY 2006
HA Code: CA142

☒ Veterans and veterans' families
☒ Residents who live and/or work in the jurisdiction
☒ Those enrolled currently in educational, training, or upward mobility programs
☐ Households that contribute to meeting income goals (broad range of incomes)
☐ Households that contribute to meeting income requirements (targeting)
☐ Those previously enrolled in educational, training, or upward mobility programs
☐ Victims of reprisals or hate crimes
☒ Other preference(s) (list below)

    1.  Section 8 voucher holders displaced from federally-declared disaster areas and not currently living in standard, permanent replacement housing, or public housing residents displaced from federally-declared disaster areas and not currently living in standard, permanent replacement housing;
    2.  Other Displaced Families;
    3.  Families.

3. If the PHA will employ admissions preferences, please prioritize by placing a "1" in the space that represents your first priority, a "2" in the box representing your second priority, and so on. If you give equal weight to one or more of these choices (either through an absolute hierarchy or through a point system), place the same number next to each. That means you can use "1" more than once, "2" more than once, etc.

☐ Date and Time

Former Federal preferences:
☐ Involuntary Displacement (Disaster, Government Action, Action of Housing Owner, Inaccessibility, Property Disposition)
☐ Victims of domestic violence
☐ Substandard housing
☐ Homelessness
☐ High rent burden

Other preferences (select all that apply)
☐ Working families and those unable to work because of age or disability
☐ Veterans and veterans' families
☐ Residents who live and/or work in the jurisdiction
☐ Those enrolled currently in educational, training, or upward mobility programs
☐ Households that contribute to meeting income goals (broad range of incomes)
☐ Households that contribute to meeting income requirements (targeting)
☐ Those previously enrolled in educational, training, or upward mobility programs
☐ Victims of reprisals or hate crimes
☒ Other preference(s) (list below)

    1.  Applicants are assigned preference points as follows:
        a.  Section 8 voucher holders displaced from federally-declared disaster areas and not currently living in standard, permanent replacement housing, or public housing residents displaced from federally-declared disaster areas and not currently living in standard, permanent replacement housing = 60 points
        b.  Other Displaced Families = 40 points;

0384

        c.   Family, Elderly and/or Disabled Preference = 8 points (applied once only);

        d.   Residency Preference = 4 points;

        e.   Veteran's Preference = 2.points; and

        f.   Working or Educational Preference = 1 point;

2.  Applicants are ranked from those with the highest number of preference points to those with the lowest number of preference points (0 min.).

3.  Applicants with a higher number of preference points are offered assistance before those with fewer preference points.

4.  Ties among applicants who have the same number of preference points are broken using their "tiebreaker" lottery number.

5.  An applicant with the same number of preference points and a lower lottery "tiebreaker" number will be offered assistance before an applicant with a higher tiebreaker number.

4.  Relationship of preferences to income targeting requirements:

☐    The PHA applies preferences within income tiers

☒    Not applicable:  the pool of applicant families ensures that the PHA will meet income targeting requirements

## (5) Occupancy

a. What reference materials can applicants and residents use to obtain information about the rules of occupancy of public housing (select all that apply)

☒    The PHA-resident lease

☒    The PHA's Admissions and (Continued) Occupancy Policy

☐    PHA briefing seminars or written materials

☐    Other source (list)

b. How often must residents notify the PHA of changes in family composition? (select all that apply)

☐    At an annual reexamination and lease renewal

☒    Any time family composition changes

☐    At family request for revision

☐    Other (list)

## (6) Deconcentration and Income Mixing

a. ☐ Yes ☒ No:   Does the PHA have any general occupancy (family) public housing developments covered by the deconcentration rule?  If no, this section is complete.  If yes, continue to the next question.

b. ☐ Yes ☐ No:   Do any of these covered developments have average incomes above or below 85% to 115% of the average incomes of all such developments?  If no, this section is complete.  If yes, list these developments on the following table:

| Deconcentration Policy for Covered Developments |
| --- |

PHA Name: Dublin Housing Authority     5-Year Plan for Fiscal Years: 2005 - 2009     Annual Plan for FY 2006
HA Code: CA142

| Development Name | Number of Units | Explanation (if any) [see step 4 at §903.2(c)(1)(iv)] | Deconcentration policy (if no explanation) [see step 5 at §903.2(c)(1)(v)] |
|---|---|---|---|
| | | | |
| | | | |
| | | | |

## B. Section 8

Exemptions: PHAs that do not administer section 8 are not required to complete sub-component 3B. **Unless otherwise specified, all questions in this section apply only to the tenant-based section 8 assistance program (vouchers, and until completely merged into the voucher program, certificates).**

### (1) Eligibility

a.  What is the extent of screening conducted by the PHA? (select all that apply)
    ☐   Criminal or drug-related activity only to the extent required by law or regulation
    ☐   Criminal and drug-related activity, more extensively than required by law or regulation
    ☐   More general screening than criminal and drug-related activity (list factors):
    ☐   Other (list below)

b. ☐ Yes ☐ No: Does the PHA request criminal records from local law enforcement agencies for screening purposes?

c. ☐ Yes ☐ No: Does the PHA request criminal records from State law enforcement agencies for screening purposes?

d. ☐ Yes ☐ No: Does the PHA access FBI criminal records from the FBI for screening purposes? (either directly or through an NCIC-authorized source)

e.  Indicate what kinds of information you share with prospective landlords? (select all that apply)
    ☐   Criminal or drug-related activity
    ☐   Other (describe below)

### (2) Waiting List Organization

a.  With which of the following program waiting lists is the section 8 tenant-based assistance waiting list merged? (select all that apply)
    ☐   None
    ☐   Federal public housing
    ☐   Federal moderate rehabilitation
    ☐   Federal project-based certificate program
    ☐   Other federal or local program (list below)

b.  Where may interested persons apply for admission to section 8 tenant-based assistance? (select all that apply)
    ☐   PHA main administrative office

0386

PHA Name: Dublin Housing Authority      5-Year Plan for Fiscal Years: 2005 - 2009      Annual Plan for FY 2006
HA Code: CA142

☐    Other (list below)

**(3) Search Time**

a. ☐ Yes ☐ No: Does the PHA give extensions on standard 60-day period to search for a
                       unit?
If yes, state circumstances below:

**(4) Admissions Preferences**

a. Income targeting

☐ Yes ☐ No:    Does the PHA plan to exceed the federal targeting requirements by targeting
                       more than 75% of all new admissions to the section 8 program to families at
                       or below 30% of median area income?
b. Preferences
1. ☐ Yes ☐ No:    Has the PHA established preferences for admission to section 8 tenant-
                       based assistance? (other than date and time of application) (if no, skip to
                       subcomponent **(5) Special purpose section 8 assistance programs**)

2. Which of the following admission preferences does the PHA plan to employ in the coming
year? (select all that apply from either former Federal preferences or other preferences)

Former Federal preferences
☐    Involuntary Displacement (Disaster, Government Action, Action of Housing Owner,
       Inaccessibility, Property Disposition)
☐    Victims of domestic violence
☐    Substandard housing
☐    Homelessness
☐    High rent burden (rent is > 50 percent of income)

Other preferences (select all that apply)
☐    Working families and those unable to work because of age or disability
☐    Veterans and veterans' families
☐    Residents who live and/or work in your jurisdiction
☐    Those enrolled currently in educational, training, or upward mobility programs
☐    Households that contribute to meeting income goals (broad range of incomes)
☐    Households that contribute to meeting income requirements (targeting)
☐    Those previously enrolled in educational, training, or upward mobility programs
☐    Victims of reprisals or hate crimes
☐    Other preference(s) (list below)

3. If the PHA will employ admissions preferences, please prioritize by placing a "1" in the space
that represents your first priority, a "2" in the box representing your second priority, and so on.
If you give equal weight to one or more of these choices (either through an absolute hierarchy or
through a point system), place the same number next to each. That means you can use "1" more

PHA Name: Dublin Housing Authority    5-Year Plan for Fiscal Years: 2005 - 2009    Annual Plan for FY 2006
HA Code: CA142

than once, "2" more than once, etc.

☐    Date and Time

Former Federal preferences:
☐    Involuntary Displacement (Disaster, Government Action, Action of Housing Owner, Inaccessibility, Property Disposition)
☐    Victims of domestic violence
☐    Substandard housing
☐    Homelessness
☐    High rent burden

Other preferences (select all that apply)
☐    Working families and those unable to work because of age or disability
☐    Veterans and veterans' families
☐    Residents who live and/or work in your jurisdiction
☐    Those enrolled currently in educational, training, or upward mobility programs
☐    Households that contribute to meeting income goals (broad range of incomes)
☐    Households that contribute to meeting income requirements (targeting)
☐    Those previously enrolled in educational, training, or upward mobility programs
☐    Victims of reprisals or hate crimes
☐    Other preference(s) (list below)

4. Among applicants on the waiting list with equal preference status, how are applicants selected? (select one)
☐    Date and time of application
☐    Drawing (lottery) or other random choice technique

5. If the PHA plans to employ preferences for "residents who live and/or work in the jurisdiction" (select one)
☐    This preference has previously been reviewed and approved by HUD
☐    The PHA requests approval for this preference through this PHA Plan

6. Relationship of preferences to income targeting requirements: (select one)
☐    The PHA applies preferences within income tiers
☐    Not applicable: the pool of applicant families ensures that the PHA will meet income targeting requirements

## (5)  Special Purpose Section 8 Assistance Programs

a. In which documents or other reference materials are the policies governing eligibility, selection, and admissions to any special-purpose section 8 program administered by the PHA contained? (select all that apply)
☐    The Section 8 Administrative Plan
☐    Briefing sessions and written materials
☐    Other (list below)

0388

b.  How does the PHA announce the availability of any special-purpose section 8 programs to
the public?

☐    Through published notices
☐    Other (list below)


## 4.  PHA Rent Determination Policies
[24 CFR Part 903.12(b), 903.7(d)]


## A.  Public Housing

Exemptions:  PHAs that do not administer public housing are not required to complete sub-component 4A.

### (1)  Income Based Rent Policies

Describe the PHA's income based rent setting policy/ies for public housing using, including discretionary (that is,
not required by statute or regulation) income disregards and exclusions, in the appropriate spaces below.

a.  Use of discretionary policies: (select one of the following two)

☒    The PHA will <u>not employ</u> any discretionary rent-setting policies for income-based rent in
public housing.  Income-based rents are set at the higher of 30% of adjusted monthly
income, 10% of unadjusted monthly income, the welfare rent, or minimum rent (less
HUD mandatory deductions and exclusions).  (If selected, skip to sub-component (2))
☐    The PHA <u>employs</u> discretionary policies for determining income-based rent (If selected,
continue to question b.)

b.  Minimum Rent

1. What amount best reflects the PHA's minimum rent? (select one)
☐        $0
☐        $1-$25
☒        $26-$50

2. ☐ Yes ☒ No: Has the PHA adopted any discretionary minimum rent hardship exemption
policies?

3. If yes to question 2, list these policies below:

c.  Rents set at less than 30% of adjusted income

1. ☐ Yes ☒ No:    Does the PHA plan to charge rents at a fixed amount or
percentage less than 30% of adjusted income?

2. If yes to above, list the amounts or percentages charged and the circumstances under which
these will be used below:

0389

d. Which of the discretionary (optional) deductions and/or exclusions policies does the PHA plan to employ (select all that apply)

☐     For the earned income of a previously unemployed household member
☐     For increases in earned income
☐     Fixed amount (other than general rent-setting policy)
             If yes, state amount/s and circumstances below:

☐     Fixed percentage (other than general rent-setting policy)
             If yes, state percentage/s and circumstances below:

☐     For household heads
☐     For other family members
☐     For transportation expenses
☐     For the non-reimbursed medical expenses of non-disabled or non-elderly families
☐     Other (describe below)

e. Ceiling rents

1. Do you have ceiling rents? (rents set at a level lower than 30% of adjusted income) (select one)

☐     Yes for all developments
☐     Yes but only for some developments
☒     No

2. For which kinds of developments are ceiling rents in place? (select all that apply)

☐     For all developments
☐     For all general occupancy developments (not elderly or disabled or elderly only)
☐     For specified general occupancy developments
☐     For certain parts of developments; e.g., the high-rise portion
☐     For certain size units; e.g., larger bedroom sizes
☐     Other (list below)

3. Select the space or spaces that best describe how you arrive at ceiling rents (select all that apply)

☐     Market comparability study
☐     Fair market rents (FMR)
☐     95th percentile rents
☐     75 percent of operating costs
☐     100 percent of operating costs for general occupancy (family) developments
☐     Operating costs plus debt service
☐     The "rental value" of the unit

0390

PHA Name: Dublin Housing Authority          5-Year Plan for Fiscal Years: 2005 - 2009          Annual Plan for FY 2006
HA Code: CA142

☐      Other (list below)

f. Rent re-determinations:

1. Between income reexaminations, how often must tenants report changes in income or family composition to the PHA such that the changes result in an adjustment to rent? (select all that apply)

☐      Never
☐      At family option
☐      Any time the family experiences an income increase
☐      Any time a family experiences an income increase above a threshold amount or percentage: (if selected, specify threshold)_____
☒      Other (list below)
        Any time that there is a change in family composition or an increase in income following an interim reexamination that has decreased rent.

g. ☒ Yes ☐ No: Does the PHA plan to implement individual savings accounts for residents (ISAs) as an alternative to the required 12 month disallowance of earned income and phasing in of rent increases in the next year?

## (2) Flat Rents

a. In setting the market-based flat rents, what sources of information did the PHA use to establish comparability? (select all that apply.)
☒      The section 8 rent reasonableness study of comparable housing
☒      Survey of rents listed in local newspaper
☒      Survey of similar unassisted units in the neighborhood
☐      Other (list/describe below)

## B. Section 8 Tenant-Based Assistance
Exemptions: PHAs that do not administer Section 8 tenant-based assistance are not required to complete sub-component 4B. Unless otherwise specified, all questions in this section apply only to the tenant-based section 8 assistance program (vouchers, and until completely merged into the voucher program, certificates).

## (1) Payment Standards
Describe the voucher payment standards and policies.

a. What is the PHA's payment standard? (select the category that best describes your standard)
☐      At or above 90% but below 100% of FMR
☐      100% of FMR
☐      Above 100% but at or below 110% of FMR
☐      Above 110% of FMR (if HUD approved; describe circumstances below)

b. If the payment standard is lower than FMR, why has the PHA selected this standard? (select all that apply)

0391

PHA Name: Dublin Housing Authority    5-Year Plan for Fiscal Years: 2005 - 2009    Annual Plan for FY 2006
HA Code: CA142

☐ FMRs are adequate to ensure success among assisted families in the PHA's segment of the FMR area
☐ The PHA has chosen to serve additional families by lowering the payment standard
☐ Reflects market or submarket
☐ Other (list below)

c. If the payment standard is higher than FMR, why has the PHA chosen this level? (select all that apply)
☐ FMRs are not adequate to ensure success among assisted families in the PHA's segment of the FMR area
☐ Reflects market or submarket
☐ To increase housing options for families
☐ Other (list below)

d. How often are payment standards reevaluated for adequacy? (select one)
☐ Annually
☐ Other (list below)

e. What factors will the PHA consider in its assessment of the adequacy of its payment standard? (select all that apply)
☐ Success rates of assisted families
☐ Rent burdens of assisted families
☐ Other (list below)

### (2) Minimum Rent

a. What amount best reflects the PHA's minimum rent? (select one)
☐ $0
☐ $1-$25
☐ $26-$50

b. ☐ Yes ☐ No: Has the PHA adopted any discretionary minimum rent hardship exemption policies? (if yes, list below)

## 5. Capital Improvement Needs
[24 CFR Part 903.12(b), 903.7 (g)]
Exemptions from Component 5: Section 8 only PHAs are not required to complete this component and may skip to Component 6.

## A. Capital Fund Activities
Exemptions from sub-component 5A: PHAs that will not participate in the Capital Fund Program may skip to component 5B. All other PHAs must complete 5A as instructed.

### (1) Capital Fund Program

0392

a. ☒ Yes ☐ No    Does the PHA plan to participate in the Capital Fund Program in the upcoming year? If yes, complete items 12 and 13 of this template (Capital Fund Program tables). If no, skip to B.

b. ☐ Yes ☒ No:    Does the PHA propose to use any portion of its CFP funds to repay debt incurred to finance capital improvements? If so, the PHA must identify in its annual and 5-year capital plans the development(s) where such improvements will be made and show both how the proceeds of the financing will be used and the amount of the annual payments required to service the debt. (Note that separate HUD approval is required for such financing activities.).

## B. HOPE VI and Public Housing Development and Replacement Activities (Non-Capital Fund)

Applicability of sub-component 5B: All PHAs administering public housing. Identify any approved HOPE VI and/or public housing development or replacement activities not described in the Capital Fund Program Annual Statement.

### (1) Hope VI Revitalization

a. ☐ Yes ☒ No:    Has the PHA received a HOPE VI revitalization grant? (if no, skip to next component; if yes, provide responses to questions on chart below for each grant, copying and completing as many times as necessary)

b.             Status of HOPE VI revitalization grant (complete one set of questions for each grant)
Development name:
Development (project) number:
Status of grant: (select the statement that best describes the current status)
☐    Revitalization Plan under development
☐    Revitalization Plan submitted, pending approval
☐    Revitalization Plan approved
☐    Activities pursuant to an approved Revitalization Plan underway

c. ☐ Yes ☒ No:    Does the PHA plan to apply for a HOPE VI Revitalization grant in the Plan year? If yes, list development name/s below:

d. ☐ Yes ☒ No:    Will the PHA be engaging in any mixed-finance development activities for public housing in the Plan year? If yes, list developments or activities below:

e. ☒ Yes ☐ No:    Will the PHA be conducting any other public housing development or replacement activities not discussed in the Capital Fund Program Annual Statement? If yes, list developments or activities below:

PHA Name: Dublin Housing Authority      5-Year Plan for Fiscal Years:  2005 - 2009          Annual Plan for FY 2006
HA Code: CA142

## 6. Demolition and Disposition

[24 CFR Part 903.12(b), 903.7 (h)]

Applicability of component 6:  Section 8 only PHAs are not required to complete this section.

a. ☒ Yes ☐ No:    Does the PHA plan to conduct any demolition or disposition activities
(pursuant to section 18 or 24 (Hope VI)of the U.S. Housing Act of 1937
(42 U.S.C. 1437p) or Section 202/Section 33 (Mandatory Conversion) in
the plan Fiscal Year?  (If "No", skip to component 7; if "yes", complete
one activity description for each development on the following chart.)

| Demolition/Disposition Activity Description |
| --- |
| 1a. Development name: Arroyo Vista |
| 1b. Development (project) number: CA39-P142-001 |
| 2. Activity type:  Demolition ☐<br>Disposition ☒ |
| 3. Application status (select one)<br>    Approved ☐<br>    Submitted, pending approval ☐<br>    Planned application ☒ |
| 4. Date application approved, submitted, or planned for submission:  (04/01/07) |
| 5. Number of units affected: 150 |
| 6.  Coverage of action (select one)<br>☐ Part of the development<br>☒ Total development |
| 7.  Timeline for activity:<br>    a. Actual or projected start date of activity: (04/01/07)<br>    b. Projected end date of activity: (11/30/08) |

## 7.  Section 8 Tenant Based Assistance--Section 8(y) Homeownership Program

[24 CFR Part 903.12(b), 903.7(k)(1)(i)]

(1) ☐ Yes ☐ No:    Does the PHA plan to administer a Section 8 Homeownership program
pursuant to Section 8(y) of the U.S.H.A. of 1937, as implemented by 24
CFR part 982 ? (If "No", skip to the next component; if "yes", complete
each program description below (copy and complete questions for each
program identified.)

### (2) Program Description

a.  Size of Program
☐ Yes ☐ No:    Will the PHA limit the number of families participating in the Section 8
homeownership option?

If the answer to the question above was yes, what is the maximum number

of participants this fiscal year?___

b.  PHA-established eligibility criteria
☐ Yes ☐ No:    Will the PHA's program have eligibility criteria for participation in its
Section 8 Homeownership Option program in addition to HUD criteria?
If yes, list criteria below:

c.  What actions will the PHA undertake to implement the program this year (list)?

### (3) Capacity of the PHA to Administer a Section 8 Homeownership Program

The PHA has demonstrated its capacity to administer the program by (select all that apply):
a. ☐ Establishing a minimum homeowner down payment requirement of at least 3 percent of
purchase price and requiring that at least 1 percent of the purchase price comes from the family's
resources.
b. ☐ Requiring that financing for purchase of a home under its Section 8 homeownership will
be provided, insured or guaranteed by the state or Federal government; comply with secondary
mortgage market underwriting requirements; or comply with generally accepted private sector
underwriting standards.
c. ☐ Partnering with a qualified agency or agencies to administer the program (list name(s) and
years of experience below).
d. ☐ Demonstrating that it has other relevant experience (list experience below).

## 8.  Civil Rights Certifications
[24 CFR Part 903.12 (b), 903.7 (o)]

Civil rights certifications are included in the *PHA Plan Certifications of Compliance with the
PHA Plans and Related Regulations: Board Resolution to Accompany the Standard Annual,
Standard Five-Year, and Streamlined Five-Year/Annual Plans*, which is submitted to the Field
Office in hard copy—see Table of Contents.

## 9.  Additional Information
[24 CFR Part 903.12 (b), 903.7 (r)]

### A.  PHA Progress in Meeting the Mission and Goals Described in the 5-Year Plan
*(Provide a statement of the PHA's progress against the goals and objectives established in the previous
5-Year Plan for the period FY 2000 - 2004*

**HUD Strategic Goal: Increase the availability of decent, safe and affordable housing.**

**PHA Goal: Expand the supply of assisted housing.**
Objective: Leverage private or other public funds to create additional housing.
Because of a new financing authority created by California State Association of Counties,

0395

developers have generally turned to this financing authority rather than cities or other public entities. Therefore, there were no opportunities to issue tax exempt bonds during this time period.

**PHA Goal: Improve the quality of assisted housing.**
Objective: Improve public housing management by maintaining a total PHAS score above 90. The Housing Authority's PHAS scores during the time period are shown below.

2000-83.1%
2001-88%
2002-88%
2003-85%
2004-85%

The primary point loss in the PHAS scoring resulted from vacant unit turnover and problems resulting from the third party inspections. While the goal was not met, the scores meet a level of standard.

Objective: Increase customer satisfaction by conducting a biannual random customer survey. During this time period, HUD implemented a resident satisfaction component as a part of the PHAS system and conducted random mailings to the Housing Authority's public housing tenants which provided feedback on customer satisfaction.

Objective: Renovate or modernize public housing units by efforts to replace 20 roofs and renovate bathrooms in 50 units. During the time period, the Housing Authority completed the re-roofing, nine bathroom remodels and individual unit renovations and miscellaneous additional repairs.

**HUD Strategic Goal:  Improve community quality of life and economic vitality.**

**PHA Goal: Provide an improved living environment.**
Objective: Implement measures to deconcentrate poverty by bringing higher income public housing households into lower income developments;
The Housing Authority used rent ranges as one of the criteria in selecting tenants for occupancy.

Objective: Implement public housing security improvements. The Housing Authority completed replacement of the exterior project lighting with higher intensity and lower energy lighting.

Objective: Designate developments or buildings for particular resident groups (elderly, persons with disabilities): After reviewing the regulatory requirements to designate units as elderly or for persons with disabilities, staff determined that it was not feasible to meet the threshold requirement that there be a showing of sufficient housing for disabled families in the community. Practically speaking, the units are generally occupied by elderly and disabled persons.

**PHA Goal: Promote self-sufficiency and asset development of families and individuals.**

0396

Objective: Provide or attract services to improve assistance recipient's employability. The Housing Authority worked with Kidango to encourage the use of the child care center by Arroyo Vista residents through marketing and recruitment.

**PHA Goal: Ensure Equal Opportunity in Housing for all Americans**
Objective: Undertake affirmative measures to ensure access to assisted housing regardless of race, color, religion, national origin, sex, familial status and disability by reviewing all marketing materials and wait list procedures to ensure no adverse impact on any particular groups. The Housing Authority routinely reviews the demographics of applicants and program participants to determine if they are represented in the numbers expected based on the demographics of the City of Dublin's population and the program eligibility requirements. Wait list openings, in particular, were carefully planned to ensure that all groups were informed of the opening and community based organizations were solicited to provide services to groups least likely to apply. In addition, the Housing Authority expanded its non-English language services both in the languages clients were most likely to use and through the use of outside resources for the less common non-English languages.

Objective: Undertake affirmative measures to provide a suitable living environment for families living in assisted housing, regardless of race, color, religion, national origin, sex, familial status and disability by developing plans to address any problems/issues uncovered in the review of marketing materials assist clients in addressing discrimination complaints through referrals to fair housing organizations.
Housing Authority staff ensures that all clients are aware of their fair housing rights by posting materials in the lobby and including fair housing information in Housing Authority documents and in the Housing Authority calendar. The Housing Authority also works closely with fair housing organizations to investigate and address any discrimination complaints.

Objective: Undertake affirmative measures to ensure accessible housing to persons with all varieties of disabilities regardless of unit size required by completing accessible renovations of at least 5% of the public housing units.
The Housing Authority completed accessible renovations of 5% of the public housing units as planned and modified policies to ensure that all program clients were aware of their right to request a reasonable accommodation to access the Authority's programs.

## B. Criteria for Substantial Deviations and Significant Amendments

### (1) Amendment and Deviation Definitions
24 CFR Part 903.7(r)
PHAs are required to define and adopt their own standards of substantial deviation from the 5-year Plan and Significant Amendment to the Annual Plan. The definition of significant amendment is important because it defines when the PHA will subject a change to the policies or activities described in the Annual Plan to full public hearing and HUD review before implementation.

a. Substantial Deviation from the 5-Year Plan:
   • Changes to eligibility for admission policies;

PHA Name: Dublin Housing Authority          5-Year Plan for Fiscal Years:  2005 - 2009          Annual Plan for FY 2006
HA Code: CA142

- Any change with regard to demolition or disposition, designation, homeownership programs, or conversion activities.

b.  Significant Amendment or Modification to the Annual Plan:
   - Changes to eligibility for admission policies;
   - Any change with regard to demolition or disposition, designation, homeownership programs, or conversion activities.

## C.  Other Information
[24 CFR Part 903.13, 903.15]

### (1) Resident Advisory Board Recommendations

a. ☒ Yes ☐ No: Did the PHA receive any comments on the PHA Plan from the
            Resident Advisory Board/s?
If yes, provide the comments below:

**Dublin Housing Authority**
**Resident Advisory Board Meeting**
**March 26, 2007, 1:00 P.M.**
**Summary**

| Resident Advisory Board Members Present: | Staff Present: |
|---|---|
| Suzanne Robinson | Ron Dion, Deputy Director for Programs |
| Loy Costello | Mary Rizzo-Shuman, Leasing & Property Services Mgnr |
|  | Margie Newman, Arroyo Vista Manager |
| **Resident Advisory Board Members Absent:** |  |
| Shawn Costello |  |
| Carolyn Evans |  |

Mr. Dion began the meeting by stating that the DHA PHA Plan describes the basic policies, and rules and requirements concerning DHA operations, programs, and services..  The 5-Yr. and Annual Plans must be updated and submitted to HUD each year.  Mr. Dion stated that the purpose of today's meeting was to seek the Resident Advisory Board's (RAB's) input.

Copies of the updated Plans had been distributed to the RAB last week along with a summary of changes from last year's amended Plans entitled "PHA Plan Substantive Changes".  Mr. Dion highlighted the main changes to the Plans set forth in the PHA Plan Substantive Changes document.  These include:
- Adding that DHA has incorporated the applicable provision of the Violence Against Women Act into its Admission and Continued Occupancy Policy (ACOP);
- Adding "Changes to eligibility for admission policies"; and "Any change with regard to demolition or disposition, designation, homeownership programs, or conversion activities" as substantial deviations from the 5-Yr. Plan; and
- Adding that the PHA will be conducting other public housing development or replacement activities not discussed in the Capital Fund Program Annual Statement, namely, submission of a Disposition Application to dispose of the site to a developer team that will demolish the public housing and rebuild affordable and market-rate housing.

The RAB had various questions concerning the timing of, and process for, the disposition and redevelopment of

0398

Arroyo Vista, and when Section 8 Vouchers would be made available to them. Staff provided the requested information to the RAB's satisfaction. The RAB provided no input regarding the 5-Yr. and Annual Plans.

The meeting adjourned at 1:45 P.M..

b. In what manner did the PHA address those comments? (select all that apply)

☒ Considered comments, and determined that no changes to the PHA Plan were necessary.

☐ The PHA changed portions of the PHA Plan in response to comments
List changes below:

☐ Other: (list below)

## (2) Resident Membership on PHA Governing Board

The governing board of each PHA is required to have at least one member who is directly assisted by the PHA, unless the PHA meets certain exemption criteria. Regulations governing the resident board member are found at 24 CFR Part 964, Subpart E.

a. Does the PHA governing board include at least one member who is directly assisted by the PHA this year?

☒ Yes ☐ No:

If yes, complete the following:

Name of Resident Member of the PHA Governing Board:
- Laurianne Behrens, Tenant Commissioner
- Ramona Frydendal, Sr. Tenant Commissioner

Method of Selection:

☒ Appointment

**The term of appointment is (include the date term expires): Two-year term expiring 5/31/08**

☐ Election by Residents (if checked, complete next section--Description of Resident Election Process)

## Description of Resident Election Process

Nomination of candidates for place on the ballot: (select all that apply)

☐ Candidates were nominated by resident and assisted family organizations
☐ Candidates could be nominated by any adult recipient of PHA assistance
☐ Self-nomination: Candidates registered with the PHA and requested a place on ballot
☐ Other: (describe)

Eligible candidates: (select one)

☐ Any recipient of PHA assistance

☐  Any head of household receiving PHA assistance
☐  Any adult recipient of PHA assistance
☐  Any adult member of a resident or assisted family organization
☐  Other (list)

Eligible voters: (select all that apply)
☐  All adult recipients of PHA assistance (public housing and section 8 tenant-based assistance)
☐  Representatives of all PHA resident and assisted family organizations
☐  Other (list)

b. If the PHA governing board does not have at least one member who is directly assisted by the PHA, why not?

☐  The PHA is located in a State that requires the members of a governing board to be salaried and serve on a full time basis
☐  The PHA has less than 300 public housing units, has provided reasonable notice to the resident advisory board of the opportunity to serve on the governing board, and has not been notified by any resident of their interest to participate in the Board.
☐  Other (explain):

Date of next term expiration of a governing board member:

Name and title of appointing official(s) for governing board (indicate appointing official for the next available position):   City Council of the City of Dublin

### (3) PHA Statement of Consistency with the Consolidated Plan
[24 CFR Part 903.15]
For each applicable Consolidated Plan, make the following statement (copy questions as many times as necessary).

### Consolidated Plan jurisdiction: (Alameda County HOME Consortium)

a. The PHA has taken the following steps to ensure consistency of this PHA Plan with the Consolidated Plan for the jurisdiction: (select all that apply):

☒  The PHA has based its statement of needs of families on its waiting list on the needs expressed in the Consolidated Plan/s.
☒  The PHA has participated in any consultation process organized and offered by the Consolidated Plan agency in the development of the Consolidated Plan.
☒  The PHA has consulted with the Consolidated Plan agency during the development of this PHA Plan.
☒  Activities to be undertaken by the PHA in the coming year are consistent with the initiatives contained in the Consolidated Plan. (list below)
☒  Other: (list below)

**Other:** The PHA plans to submit an application to HUD, by April1, 2007, to dispose of the entire 150 unit Arroyo Vista Project, Development Number CA39-P142-001, pursuant to Section 18 of the U.S. Housing Act of 1937.

At its July 24, 2006 meeting, the Dublin Housing Authority Board of Commissioners selected Eden Housing and Citation Homes, non-profit and for-profit developers, respectively, to redevelop Arroyo Vista as 216 ownership units (since increased to 226) and 179 affordable tax-credit rental units. Fifteen of the 26 ownership units are to be affordable; 50 of the 179 affordable tax-credit rental units are to be designated for the elderly. Eden Housing will apply to HUD for Section 202 funding in order to be able to target the 50 elderly units to extremely low-income seniors. The development is to include a computer learning center, a child-care center, tot lots, and a playground.

**b. The Consolidated Plan of the jurisdiction supports the PHA Plan with the following actions and commitments: (describe below)**

**Part I, Priority Housing Needs, of the Alameda County HOME Consortium Consolidated Plan Strategic Plan for FY 2005 – FY 2009,** lists the following priorities: **Priority:** Increase the availability of affordable rental housing for extremely low income, low income, and moderate income households. The objectives and goals to be pursued under the priority include the following:

**Five-Year Objectives: Promote the production of affordable rental housing by supporting the acquisition, rehabilitation, and new construction of units by non-profit developers. A combination of funds will be used, including federal, state, and local housing program funds.**

Priority: Assist low and moderate income first-time homebuyers. The objectives and goals to be pursued under the priority include the following:

**Five-Year Objectives: Provide** homeownership assistance through new construction of housing and down payment assistance programs.

**(4) (Reserved)**

Use this section to provide any additional information requested by HUD.

## 10. Project-Based Voucher Program

a. ☐ Yes ☐ No: Does the PHA plan to "project-base" any tenant-based Section 8 vouchers in the coming year? If yes, answer the following questions.

b. ☐ Yes ☐ No: Are there circumstances indicating that the project basing of the units, rather than tenant-basing of the same amount of assistance is an appropriate option?

0401

PHA Name: Dublin Housing Authority        5-Year Plan for Fiscal Years: 2005 - 2009        Annual Plan for FY 2006
HA Code: CA142

If yes, check which circumstances apply:

☐ Low utilization rate for vouchers due to lack of suitable rental units
☐ Access to neighborhoods outside of high poverty areas
☐ Other (describe below:)

c. Indicate the number of units and general location of units (e.g. eligible census tracts or smaller areas within eligible census tracts):

## 11. List of Supporting Documents Available for Review for Streamlined Five-Year/ Annual PHA Plans

PHAs are to indicate which documents are available for public review by placing a mark in the "Applicable & On Display" column in the appropriate rows. All listed documents must be on display if applicable to the program activities conducted by the PHA.

| List of Supporting Documents Available for Review | | |
|---|---|---|
| Applicable & On Display | Supporting Document | Related Plan Component |
| X | *PHA Certifications of Compliance with the PHA Plans and Related Regulations and Board Resolution to Accompany the Standard Annual, Standard Five-Year, and Streamlined Five-Year/Annual Plans.* | Standard 5 Year and Annual Plans; streamlined 5 Year Plans |
| X | State/Local Government Certification of Consistency with the Consolidated Plan. | 5 Year Plans |
| X | Fair Housing Documentation Supporting Fair Housing Certifications: Records reflecting that the PHA has examined its programs or proposed programs, identified any impediments to fair housing choice in those programs, addressed or is addressing those impediments in a reasonable fashion in view of the resources available, and worked or is working with local jurisdictions to implement any of the jurisdictions' initiatives to affirmatively further fair housing that require the PHA's involvement. | 5 Year and Annual Plans |
| X | Housing Needs Statement of the Consolidated Plan for the jurisdiction(s) in which the PHA is located and any additional backup data to support statement of housing needs for families on the PHA's public housing and Section 8 tenant-based waiting lists. | Annual Plan: Housing Needs |
| X | Most recent board-approved operating budget for the public housing program | Annual Plan: Financial Resources |
| X | Public Housing Admissions and (Continued) Occupancy Policy (A&O/ACOP), which includes the Tenant Selection and Assignment Plan [TSAP] and the Site-Based Waiting List Procedure. | Annual Plan: Eligibility, Selection, and Admissions Policies |

0402

PHA Name: Dublin Housing Authority    5-Year Plan for Fiscal Years: 2005 - 2009    Annual Plan for FY 2006
HA Code: CA142

| List of Supporting Documents Available for Review | | |
|---|---|---|
| Applicable & On Display | Supporting Document | Related Plan Component |
| | Any policy governing occupancy of Police Officers and Over-Income Tenants in Public Housing. ☐ Check here if included in the public housing A&O Policy. | Annual Plan: Eligibility, Selection, and Admissions Policies |
| | Section 8 Administrative Plan | Annual Plan: Eligibility, Selection, and Admissions Policies |
| X | Public housing rent determination policies, including the method for setting public housing flat rents. ☐ Check here if included in the public housing A & O Policy. | Annual Plan: Rent Determination |
| | Schedule of flat rents offered at each public housing development. ☐ Check here if included in the public housing A & O Policy. | Annual Plan: Rent Determination |
| | Section 8 rent determination (payment standard) policies (if included in plan, not necessary as a supporting document) and written analysis of Section 8 payment standard policies. ☐ Check here if included in Section 8 Administrative Plan. | Annual Plan: Rent Determination |
| X | Public housing management and maintenance policy documents, including policies for the prevention or eradication of pest infestation (including cockroach infestation). | Annual Plan: Operations and Maintenance |
| X | Results of latest Public Housing Assessment System (PHAS) Assessment (or other applicable assessment). | Annual Plan: Management and Operations |
| | Follow-up Plan to Results of the PHAS Resident Satisfaction Survey (if necessary) | Annual Plan: Operations and Maintenance and Community Service & Self-Sufficiency |
| | Results of latest Section 8 Management Assessment System (SEMAP) | Annual Plan: Management and Operations |
| | Any policies governing any Section 8 special housing types ☐ check here if included in Section 8 Administrative Plan | Annual Plan: Operations and Maintenance |
| | Consortium agreement(s). | Annual Plan: Agency Identification and Operations/ Management |
| X | Public housing grievance procedures ☐ Check here if included in the public housing A & O Policy. | Annual Plan: Grievance Procedures |
| | Section 8 informal review and hearing procedures. ☐ Check here if included in Section 8 Administrative Plan. | Annual Plan: Grievance Procedures |
| | The Capital Fund/Comprehensive Grant Program Annual Statement /Performance and Evaluation Report for any active grant year. | Annual Plan: Capital Needs |
| | Most recent CIAP Budget/Progress Report (HUD 52825) for any active CIAP grants. | Annual Plan: Capital Needs |
| | Approved HOPE VI applications or, if more recent, approved or submitted HOPE VI Revitalization Plans, or any other approved proposal for development of public housing. | Annual Plan: Capital Needs |
| | Self-evaluation, Needs Assessment and Transition Plan required by regulations implementing Section 504 of the Rehabilitation Act and the Americans with Disabilities Act. See PIH Notice 99-52 (HA). | Annual Plan: Capital Needs |
| X | Approved or submitted applications for demolition and/or disposition of public housing. | Annual Plan: Demolition and Disposition |
| | Approved or submitted applications for designation of public housing (Designated Housing Plans). | Annual Plan: Designation of Public Housing |
| | Approved or submitted assessments of reasonable revitalization of public housing and approved or submitted conversion plans prepared pursuant to section 202 of the 1996 HUD Appropriations Act, Section 22 of the US Housing Act of 1937, or Section 33 of the US Housing Act of 1937. | Annual Plan: Conversion of Public Housing |
| | Documentation for required Initial Assessment and any additional information required by HUD for Voluntary Conversion. | Annual Plan: Voluntary Conversion of Public |

04C

| Applicable & On Display | Supporting Document | Related Plan Component |
|---|---|---|
| | **List of Supporting Documents Available for Review** | |
| | | Housing |
| | Approved or submitted public housing homeownership programs/plans. | Annual Plan: Homeownership |
| | Policies governing any Section 8 Homeownership program (Section _____ of the Section 8 Administrative Plan) | Annual Plan: Homeownership |
| X | Public Housing Community Service Policy/Programs ☐ Check here if included in Public Housing A & O Policy | Annual Plan: Community Service & Self-Sufficiency |
| | Cooperative agreement between the PHA and the TANF agency and between the PHA and local employment and training service agencies. | Annual Plan: Community Service & Self-Sufficiency |
| | FSS Action Plan(s) for public housing and/or Section 8. | Annual Plan: Community Service & Self-Sufficiency |
| | Section 3 documentation required by 24 CFR Part 135, Subpart E for public housing. | Annual Plan: Community Service & Self-Sufficiency |
| | Most recent self-sufficiency (ED/SS, TOP or ROSS or other resident services grant) grant program reports for public housing. | Annual Plan: Community Service & Self-Sufficiency |
| X | Policy on Ownership of Pets in Public Housing Family Developments (as required by regulation at 24 CFR Part 960, Subpart G). ☐ Check here if included in the public housing A & O Policy. | Pet Policy |
| X | The results of the most recent fiscal year audit of the PHA conducted under the Single Audit Act as implemented by OMB Circular A-133, the results of that audit and the PHA's response to any findings. | Annual Plan: Annual Audit |
| | Consortium agreement(s), if a consortium administers PHA programs. | Joint PHA Plan for Consortia |
| | Consortia Joint PHA Plans ONLY: Certification that consortium agreement is in compliance with 24 CFR Part 943 pursuant to an opinion of counsel on file and available for inspection | Joint PHA Plan for Consortia |
| | Other supporting documents (optional). List individually. | (Specify as needed) |

0404

## 12. Capital Fund Program and Capital Fund Program Replacement Housing Factor Annual Statement/Performance and Evaluation Report

**Annual Statement/Performance and Evaluation Report**

**Capital Fund Program and Capital Fund Program Replacement Housing Factor (CFP/CFPRHF) Part I: Summary**

PHA Name: Dublin Housing Authority

Grant Type and Number
Capital Fund Program Grant No: CA39P142006
Replacement Housing Factor Grant No:

Federal FY of Grant: 2006

☐ Original Annual Statement ☐ Reserve for Disasters/ Emergencies ☒ Revised Annual Statement (revision no: 1 )
☐ Performance and Evaluation Report for Period Ending:    ☐ Final Performance and Evaluation Report

| Line | Summary by Development Account | Total Estimated Cost | | Total Actual Cost | |
|---|---|---|---|---|---|
| | | Original | Revised | Obligated | Expended |
| 1 | Total non-CFP Funds | | | | |
| 2 | 1406 Operations | $273,978 | | $273,978 | |
| 3 | 1408 Management Improvements | | | | |
| 4 | 1410 Administration | | | | |
| 5 | 1411 Audit | | | | |
| 6 | 1415 Liquidated Damages | | | | |
| 7 | 1430 Fees and Costs | | | | |
| 8 | 1440 Site Acquisition | | | | |
| 9 | 1450 Site Improvement | | | | |
| 10 | 1460 Dwelling Structures | | | | |
| 11 | 1465.1 Dwelling Equipment—Nonexpendable | | | | |
| 12 | 1470 Nondwelling Structures | | | | |
| 13 | 1475 Nondwelling Equipment | | | | |
| 14 | 1485 Demolition | | | | |
| 15 | 1490 Replacement Reserve | | | | |
| 16 | 1492 Moving to Work Demonstration | | | | |
| 17 | 1495.1 Relocation Costs | | | | |
| 18 | 1499 Development Activities | | | | |
| 19 | 1501 Collateralization or Debt Service | | | | |
| 20 | 1502 Contingency | | | | |
| 21 | Amount of Annual Grant: (sum of lines 2 – 20) | $273,978 | | $273,978 | |
| 22 | Amount of line 21 Related to LBP Activities | | | | |
| 23 | Amount of line 21 Related to Section 504 compliance | | | | |
| 24 | Amount of line 21 Related to Security – Soft Costs | | | | |
| 25 | Amount of Line 21 Related to Security – Hard Costs | | | | |
| 26 | Amount of line 21 Related to Energy Conservation Measures | | | | |

Page 36 of 41

form HUD-50075-SF (04/30/2003)

0405

**12. Capital Fund Program and Capital Fund Program Replacement Housing Factor Annual Statement/Performance and Evaluation Report**

Annual Statement/Performance and Evaluation Report
Capital Fund Program and Capital Fund Program Replacement Housing Factor (CFP/CFPRHF)
Part II: Supporting Pages

PHA Name: Dublin Housing Authority

Grant Type and Number
Capital Fund Program Grant No:
CA39P142006
Replacement Housing Factor Grant No:

Federal FY of Grant: 2006

| Development Number Name/HA-Wide Activities | General Description of Major Work Categories | Dev. Acct No. | | Quantity | Total Estimated Cost | | Total Actual Cost | | Status of Work |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | Original | Revised | Funds Obligated | Funds Expended | |
| HA-Wide | Operations | 14 | 06 | | $273,978 | | $273,978 | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |

form HUD-50075-SF (04/30/2003)

## 13. Capital Fund Program Five-Year Action Plan

**Annual Statement/Performance and Evaluation Report**
**Capital Fund Program and Capital Fund Program Replacement Housing Factor (CFP/CFPRHF)**
**Part III: Implementation Schedule**

PHA Name: Dublin Housing Authority

Grant Type and Number
Capital Fund Program No: CA39P142006
Replacement Housing Factor No:

Federal FY of Grant: 2006

| Development Number Name/HA-Wide Activities | All Fund Obligated (Quarter Ending Date) | | | All Funds Expended (Quarter Ending Date) | | | Reasons for Revised Target Dates |
|---|---|---|---|---|---|---|---|
| | Original | Revised | Actual | Original | Revised | Actual | |
| HA-Wide | 9/07 | | | 9/09 | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

form HUD-50075-SF (04/30/2003)

0407

**13.  Capital Fund Program Five-Year Action Plan**

Capital Fund Program Five-Year Action Plan
Part I: Summary

PHA Name: Dublin Housing Authority

☐ Original 5-Year Plan
☐ Revision No:

| Development Number/Name/HA-Wide | Year 1 2005 | Work Statement for Year 2 FFY Grant: PHA FY: 2006 | Work Statement for Year 3 FFY Grant: PHA FY: 2007 | Work Statement for Year 4 FFY Grant: PHA FY: 2008 | Work Statement for Year 5 FFY Grant: PHA FY: 2009 |
|---|---|---|---|---|---|
| | Annual Statement | | | | |
| HA-Wide | | $273,978 | $255,000 | $237,000 | $221,000 |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| CFP Funds Listed for 5-year planning | | | | | |
| | | | | | |
| Replacement Housing Factor Funds | | | | | |

form HUD-50075-SF (04/30/2003)

0408

13. **Capital Fund Program Five-Year Action Plan**

Capital Fund Program Five-Year Action Plan

Part II: Supporting Pages—Work Activities

| Activities for Year 1 2005 | Activities for Year: 2 FFY Grant: 2006 PHA FY: 06-07 | | | Activities for Year: 3 FFY Grant: 2007 PHA FY: 07-08 | | |
|---|---|---|---|---|---|---|
| | Development Name/Number | Major Work Categories | Estimated Cost | Development Name/Number | Major Work Categories | Estimated Cost |
| | HA-Wide | Operations/Admin | $273,978 | HA-Wide | Operations/Admin | $255,000 |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | Total CFP Estimated Cost | | $273,978 | | | $255,000 |

form **HUD-50075-SF** (04/30/2003)

**13. Capital Fund Program Five-Year Action Plan**

**Capital Fund Program Five-Year Action Plan**
**Part II: Supporting Pages—Work Activities**

| Development Name/Number | Activities for Year 4 FFY Grant: 2008 PHA FY:08-09 Major Work Categories | Estimated Cost | Development Name/Number | Activities for Year: 5 FFY Grant: 2009 PHA FY: 09-10 Major Work Categories | Estimated Cost |
|---|---|---|---|---|---|
| HA-Wide | Operations/Admin | $237,000 | HA-Wide | Operations/Admin | $221,000 |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| Total CFP Estimated Cost | | $237,000 | | | $221,000 |

form HUD-50075-SF (04/30/2003)

0410

DECLARATION OF LISA S. GREIF
IN SUPPORT OF PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER
AND PRELIMINARY INJUNCTION

EXHIBIT 17

041

**U.S. Census Bureau**

**American FactFinder**

DP-1. Profile of General Demographic Characteristics: 2000
Data Set: Census 2000 Summary File 1 (SF 1) 100-Percent Data
Geographic Area: Census Tract 4502, Alameda County, California

NOTE: For information on confidentiality protection, nonsampling error, definitions, and count corrections see
http://factfinder.census.gov/home/en/datanotes/expsf1u.htm.

| Subject | Number | Percent |
|---|---|---|
| **Total population** | 4,726 | 100.0 |
| | | |
| **SEX AND AGE** | | |
| Male | 2,316 | 49.0 |
| Female | 2,410 | 51.0 |
| | | |
| Under 5 years | 308 | 6.5 |
| 5 to 9 years | 269 | 5.7 |
| 10 to 14 years | 247 | 5.2 |
| 15 to 19 years | 241 | 5.1 |
| 20 to 24 years | 345 | 7.3 |
| 25 to 34 years | 1,327 | 28.1 |
| 35 to 44 years | 929 | 19.7 |
| 45 to 54 years | 688 | 14.6 |
| 55 to 59 years | 161 | 3.4 |
| 60 to 64 years | 77 | 1.6 |
| 65 to 74 years | 79 | 1.7 |
| 75 to 84 years | 43 | 0.9 |
| 85 years and over | 14 | 0.3 |
| | | |
| Median age (years) | 31.8 | (X) |
| | | |
| 18 years and over | 3,766 | 79.7 |
| Male | 1,817 | 38.4 |
| Female | 1,949 | 41.2 |
| 21 years and over | 3,625 | 76.7 |
| 62 years and over | 185 | 3.9 |
| 65 years and over | 136 | 2.9 |
| Male | 60 | 1.3 |
| Female | 76 | 1.6 |
| | | |
| **RACE** | | |
| One race | 4,492 | 95.0 |
| White | 3,482 | 73.7 |
| Black or African American | 200 | 4.2 |
| American Indian and Alaska Native | 32 | 0.7 |
| Asian | 560 | 11.8 |
| Asian Indian | 135 | 2.9 |
| Chinese | 135 | 2.9 |
| Filipino | 155 | 3.3 |
| Japanese | 60 | 1.3 |
| Korean | 21 | 0.4 |
| Vietnamese | 7 | 0.1 |
| Other Asian [1] | 47 | 1.0 |
| Native Hawaiian and Other Pacific Islander | 5 | 0.1 |
| Native Hawaiian | 0 | 0.0 |
| Guamanian or Chamorro | 2 | 0.0 |
| Samoan | 1 | 0.0 |
| Other Pacific Islander [2] | 2 | 0.0 |
| Some other race | 213 | 4.5 |
| Two or more races | 234 | 5.0 |
| | | |
| **Race alone or in combination with one or more other races [3]** | | |
| White | 3,683 | 77.9 |
| Black or African American | 227 | 4.8 |
| American Indian and Alaska Native | 85 | 1.8 |
| Asian | 646 | 13.7 |

0412

| Subject | Number | Percent |
|---|---|---|
| Native Hawaiian and Other Pacific Islander | 17 | 0.4 |
| Some other race | 322 | 6.8 |
| | | |
| **HISPANIC OR LATINO AND RACE** | | |
| **Total population** | **4,726** | **100.0** |
| Hispanic or Latino (of any race) | 545 | 11.5 |
| Mexican | 333 | 7.0 |
| Puerto Rican | 14 | 0.3 |
| Cuban | 9 | 0.2 |
| Other Hispanic or Latino | 189 | 4.0 |
| Not Hispanic or Latino | 4,181 | 88.5 |
| White alone | 3,235 | 68.5 |
| | | |
| **RELATIONSHIP** | | |
| **Total population** | **4,726** | **100.0** |
| In households | 4,726 | 100.0 |
| Householder | 2,204 | 46.6 |
| Spouse | 840 | 17.8 |
| Child | 1,117 | 23.6 |
| Own child under 18 years | 904 | 19.1 |
| Other relatives | 169 | 3.6 |
| Under 18 years | 48 | 1.0 |
| Nonrelatives | 396 | 8.4 |
| Unmarried partner | 184 | 3.9 |
| In group quarters | 0 | 0.0 |
| Institutionalized population | 0 | 0.0 |
| Noninstitutionalized population | 0 | 0.0 |
| | | |
| **HOUSEHOLDS BY TYPE** | | |
| **Total households** | **2,204** | **100.0** |
| Family households (families) | 1,122 | 50.9 |
| With own children under 18 years | 546 | 24.8 |
| Married-couple family | 840 | 38.1 |
| With own children under 18 years | 380 | 17.2 |
| Female householder, no husband present | 209 | 9.5 |
| With own children under 18 years | 133 | 6.0 |
| Nonfamily households | 1,082 | 49.1 |
| Householder living alone | 798 | 36.2 |
| Householder 65 years and over | 48 | 2.2 |
| | | |
| Households with individuals under 18 years | 575 | 26.1 |
| Households with individuals 65 years and over | 113 | 5.1 |
| | | |
| Average household size | 2.14 | (X) |
| Average family size | 2.89 | (X) |
| | | |
| **HOUSING OCCUPANCY** | | |
| **Total housing units** | **2,303** | **100.0** |
| Occupied housing units | 2,204 | 95.7 |
| Vacant housing units | 99 | 4.3 |
| For seasonal, recreational, or occasional use | 21 | 0.9 |
| | | |
| Homeowner vacancy rate (percent) | 0.0 | (X) |
| Rental vacancy rate (percent) | 4.2 | (X) |
| | | |
| **HOUSING TENURE** | | |
| **Occupied housing units** | **2,204** | **100.0** |
| Owner-occupied housing units | 765 | 34.7 |
| Renter-occupied housing units | 1,439 | 65.3 |
| | | |
| Average household size of owner-occupied unit | 2.32 | (X) |
| Average household size of renter-occupied unit | 2.05 | (X) |

(X) Not applicable
[1] Other Asian alone, or two or more Asian categories.
[2] Other Pacific Islander alone, or two or more Native Hawaiian and Other Pacific Islander categories.
[3] In combination with one or more other races listed. The six numbers may add to more than the total population and the six
percentages may add to more than 100 percent because individuals may report more than one race.
Source: U.S. Census Bureau, Census 2000 Summary File 1, Matrices P1, P3, P4, P8, P9, P12, P13, P,17, P18, P19, P20,
P23, P27, P28, P33, PCT5, PCT8, PCT11, PCT15, H1, H3, H4, H5, H11, and H12.

*0413*



TM-P004B. Percent of Persons Who Are Black or African American Alone: 2000
Universe: Total population
Data Set: Census 2000 Summary File 1 (SF 1) 100-Percent Data
Alameda County, California by Block Group

NOTE: For information on confidentiality protection, nonsampling error, definitions, and count corrections see http://factfinder.census.gov/home/en/datanotes/expsf1u.htm

Source: U.S. Census Bureau, Census 2000 Summary File 1, Matrices P1 and P7.

**Data Classes**

Percent

- 0.0 - 9.4
- 9.5 - 23.6
- 23.8 - 42.5
- 43.2 - 62.6
- 62.9 - 100.0

**Boundaries**

100 Census Tract

**Features**

- Major Road
- Street
- Stream/Waterbody
- Stream/Waterbody

0414

TM-P004B. Percent of Persons Who Are Black or African American Alone: 2000
Universe: Total population
Data Set: Census 2000 Summary File 1 (SF 1) 100-Percent Data
Alameda County, California by Block Group

NOTE: For information on confidentiality protection, nonsampling error, definitions, and count corrections see:
http://factfinder.census.gov/home/en/datanotes/expsf1u.htm



**Data Classes**

Percent
0.0 - 9.4
9.5 - 23.6
23.8 - 42.6
43.2 - 62.6
62.9 - 100.0

**Boundaries**
100 Census Tract

**Features**
Major Road
Street
Stream/Waterbody
Stream/Waterbody

Source: U.S. Census Bureau, Census 2000 Summary File 1, Matrices P1 and P7.

0415