1  BAY AREA LEGAL AID
   LISA S. GREIF (State Bar No. 214537)
2  NAOMI YOUNG (State Bar No. 105041)
   PHILLIP R. MORGAN (State Bar No. 99979)
3  405 14th Street, 11th Floor
   Oakland, California 94612
4  Telephone: 510-663-4744
   Facsimile: 510-663-4740
5  Email: lgreif@baylegal.org
           nyoung@baylegal.org
6          pmorgan@baylegal.org

7  THE CALIFORNIA AFFORDABLE HOUSING LAW
   PROJECT OF THE PUBLIC INTEREST LAW PROJECT
8  DEBORAH COLLINS (State Bar No. 154532)
   MICHAEL RAWSON (State Bar No. 95868)
9  CRAIG CASTELLANET (State Bar No. 176054)
   449 15th Street, Suite 301
10 Oakland, California 94612
   Telephone: 510-891-9794, ext. 156
11 Facsimile: 510-891-9727
   Email: dcollins@pilpca.org
12         mrawson@pilpca.org
           ccastellanet@pilpca.org
13
   Attorneys for Petitioners ARROYO VISTA TENANTS ASSOCIATION, et al.   **E-FILED**
14

15                  UNITED STATES DISTRICT COURT

16                  NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| 17  ARROYO VISTA TENANTS ASSOCIATION, RHENAE KEYES, ANDRES ARROYO, DARLENE BROWN, ELISE VEAL<br><br>19          Petitioner/Plaintiff,<br><br>20   vs.<br><br>21  CITY OF DUBLIN; DUBLIN HOUSING AUTHORITY; HOUSING AUTHORITY OF ALAMEDA COUNTY; and DOES 1 through 20, inclusive,<br>              Respondents.<br><br>25  SCS DEVELOPMENT COMPANY, dba Citation Homes Central, a California Corporation; EDEN HOUSING, INC., a California Nonprofit, and DOES 21 through 50<br>27          Real Parties in Interest. | CASE NO. C 07-05794 MHP<br><br>DECLARATION OF ANTONE TUCKER IN SUPPORT OF PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION<br><br>Temporary Restraining Order<br>Hearing Date:<br>Time:<br><br>Preliminary Injunction<br>Hearing Date:<br>Time:<br><br>Courtroom: 15, 18th Floor<br>Judge: Honorable Marilyn Hall Patel |

28
Declaration of Antone Tucker in Support of Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction

CASE NO. C 07-05794 MHP

I, Antone Tucker, hereby declare:

1. I submit this declaration and if called as a witness in this matter, I could and would testify competently to the facts set forth herein.

2. I live at Arroyo Vista in Dublin, California in Unit No. 86. I am the adult son of Gretta Evans. My mother also lived at Arroyo Vista, in Unit No. 22, until January 12, 2008.

3. My unit has four rooms (2 bedrooms, dining room, living room), as well as a kitchen and laundry room. There is also a storage room.

4. I attended a May 2008 meeting where David Richman spoke about moving expenses. It is my understanding based on that meeting that moving expenses include money for rental of a storage space. However, the Notice of Eligibility that I received on or about May 2, 2008 states that I am only entitled to a fixed moving payment of $1175 which is for four rooms.

5. Last fall, a couple of women whom I believe worked for Overland Pacific & Cutler ("OPC") came to my house to "assess" my family's needs because we were going to "have to move." They spent about five to seven minutes "assessing" my needs. I told them that I had been out of work since May of last year, and need to spend my time looking for a job.

6. OPC has provided me some relocation services which have not been very helpful. I have been driven to see rental units in San Leandro, Pleasanton, Dublin, San Ramon, Hayward, and Fremont. I selected the rental units that I went to see from a referral list provided to me by OPC. Some of the units were in good condition but the rent was too expensive – they exceeded the $1,525.00 HACA rent payment standard. Other, more affordable units were in poor condition – the outsides were run down and the insides were not decent or sanitary. Many units had carpets which were old and stained and many of the appliances were in a poor state of repair. I visited one unit that John Morris told me that OPC had not inspected and he agreed that it was not in decent condition. Many did not even accept Section 8 vouchers. In May, I applied for an apartment unit in Dublin that was in nice condition. I was unable to get this apartment because, in addition to the credit check fee, the landlord wanted an additional 600.00 deposit to hold the unit while they were processing my application. OPC would not provide this money.

Declaration of Antone Tucker in Support of Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction

1

CASE NO. C 07-05794 MHP

7. I believe that the draft Relocation Plan is bad. The residents' concerns were not listened to and our needs were not taken into account when the plan was prepared. There is not enough money allocated to cover our moving expenses. The lists of possible replacement housing have not been appropriate, because many of the listings did not accept Section 8 vouchers or were in a poor condition. Overall, my experience in trying to find a home to move to has been a horrid experience.

8. On April 15, 2008, I attended a public hearing of the DHA Commission at which the Commission was considering adoption of a draft Relocation Plan. Like other residents, I urged the Commission to reject the draft Plan because it does not address the needs of Arroyo Vista residents. During that meeting, Mayor Janet Lockhart, who is also the Chairperson of the Commission told residents that their relocation was only going to be temporary because everyone would have a right to return to the new units. After the hearing, I sent the Mayor a letter questioning how she could mislead the residents that way when the agreement that the Commission already entered into does not guarantee anyone a right to return to Arroyo Vista. A true and correct copy of my letter to Mayor Lockhart dated May 30, 2008, is attached hereto as Exhibit 1.

9. On or about May 2, 2008, I received an Informational Statement for Families and Individuals and a Notice of Eligibility and Conditional Entitlement from OPC. True and correct copies of the notices I received are attached hereto as Exhibits 2 and 3 respectively.

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed at Dublin, California on June 6, 2008

/s/ Antone Tucker
    Antone Tucker

I hereby attest that I have on file all holograph signatures for any signatures indicated by a "conformed" signature (/s/) within this efiled document.

Dated: June 10, 2008    /s/ Lisa S. Greif_____
    Lisa S. Greif
    Attorney for Plaintiffs

Declaration of Antone Tucker in Support of Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction

DECLARATION OF ANTONE TUCKER
IN SUPPORT OF PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER
AND PRELIMINARY INJUNCTION

EXHIBIT 1

Antone Tucker
6700 Dougherty Rd, # 86
Dublin, CA 94568

May 30, 2008

Mayor Janet Lockhart
Office of the Mayor
100 Civic Plaza
Dublin, CA 94568

Dear Mayor Lockhart,

As you know, I have been a Dublin resident, living at Arroyo Vista, for several years. Over the last year, I have witnessed my family members and neighbors at Arroyo Vista leave the property out of the uncertainty and fear of being displaced. I listened to statements you made at the April 15, 2008 hearing on the relocation plan, and did not understand why you said that we have a "right to return" to Arroyo Vista after it is rebuilt. Whatever rights to return we have are stated in the Disposition and Development Agreement (Agreement) between the City, Housing Authority and the two developers. To better to understand my rights to return, I asked my lawyers to look over the Agreement and explain these rights.

With the help of my lawyers, I am now writing to tell you that current Arroyo Vista residents <u>do not have a right to return</u> to the new development. Rather than a right to return, the Agreement only allows us to "apply" to return to the new development. The Agreement states that prior residents may be admitted "subject to screening and selection criteria." (Section 9.2.) The screening written into the agreement does not provide us even a fair chance to return to the new development, much less the right to return. The Agreement allows for the developer to restrict prior residents' admission through screening criteria, occupancy standards, rent policies, lease provisions and other management practices.

First, the Agreement has very troubling language when it describes the screening criteria that will be used when we 'apply' to return:

> Eligibility for Prior Residents will require that household members demonstrate a continuing commitment to be law-abiding and lease compliant and to meet behavioral standards which would be expected in the private rental market; ...

(Section 4.2(c)(2).) The implication here that residents will break the law or misbehave is insulting to me. These words say to me that residents lack the moral character required in the private rental market, an assumption that is based on false stereotypes and prejudices about public housing residents. According to this rule, the developer could reject any former Arroyo Vista resident based on the developer's bias about what that particular person or family member may do in the future. This is a huge loophole that could be used to find any Arroyo Vista resident unfit to return. I ask that you read this honestly and no longer repeat that there is a right return.

Income requirements could also stop current Arroyo Vista residents from returning. The rents in the replacement project are much higher than the rents charged at Arroyo Vista now, up to $1307 per month. Lower income individuals often do not have the credit histories or other traditional measures of financial eligibility necessary to compete in the private rental market. According to the Agreement, the developer could impose minimum income restrictions that could exclude residents, even though they might otherwise qualify. Most returning residents would only be able to afford the new rents with a Section 8 voucher, but there is no assurance at all in the Agreement that residents will be able to use the voucher in the new development.

I understand the replacement project will eliminate dozens of two and four bedroom units, in favor of increasing the number of one bedroom units, 50 of these are restricted for seniors. Families now living in a two bedroom unit might find no two bedroom units left to accommodate them. This would exclude families based on the family size allowed. There are also going to be about 20 less units for lower income families overall. When relocation started there were only 13 seniors living at Arroyo Vista, so individuals or families who are not seniors will not be able to return because they do not qualify for the senior units.

Only after residents pass the screening test do we get a preference over other applicants who did not live at Arroyo Vista before. (Section 9.3.) This small preference does not give us any right to return, especially with all the screening standards, higher rents, smaller units, and other barriers that are not even decided by the developer yet. Also, the Agreement even has a provision to waive the requirement to build the affordable units at the same time as the market rate ones, put in place by the inclusionary zoning rules. (Sections 4.3, 8.19.) To me it looks like the Agreement makes our return to the community very difficult.

I urge you to take a closer look at the Agreement. Upon further consideration, I believe that you will find, as I have, that rather than providing Dublin residents a right to return to their community, the Agreement is adverse to Arroyo Vista residents who want to return. I urge you not to proceed with this flawed Agreement. As written, the Agreement provides that Arroyo Vista residents <u>do not have a right to return</u>. It is essential that any redevelopment of Arroyo Vista be done in a way that protects the interests of current Arroyo Vista residents.

I welcome your comments and look forward to future opportunities to speak with you regarding the Arroyo Vista development.

Sincerely,

Antone Tucker

cc: Dublin Housing Authority Commissioners

DECLARATION OF ANTONE TUCKER
IN SUPPORT OF PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER
AND PRELIMINARY INJUNCTION

EXHIBIT 2

## Informational Statement for Families and Individuals

I.   General Information
II.  Assistance In Locating A Replacement Dwelling
III. Moving Benefits
IV.  Section 8 Tenants
V.   Qualification For And Filing Of Relocation Claims
VI.  Evictions
VII. Appeal Procedures – Grievance
VIII. Tax Status Of Relocation Benefits
IX.  Additional Information And Assistance Available

## I. GENERAL INFORMATION

As you are aware, the Dublin Housing Authority (referred to as the "Displacing Agency") has made the determination to dispose of the Arroyo Vista public housing complex, which you currently occupy. As the project schedule proceeds, it will be necessary for you to move from your dwelling. You will be notified in a timely manner as to the date by which you must move.

Please read this information as it will be helpful to you in determining your eligibility and the amount of relocation benefits you may receive under the federal and/or state law. We recommend you save this Informational Statement for reference.

The Displacing Agency has retained the professional firm of Overland, Pacific & Cutler, Inc. (OPC) to provide relocation assistance to you. The firm is available to explain the program and benefits. Their address and telephone number is:

**Overland, Pacific & Cutler, Inc.**
7901 Oakport Street, Suite 4800
Oakland, CA 94621
Phone 510.638.3081

Spanish speaking representatives are available. **Si necesita esta información en español, por favor llame a su representante.**

**PLEASE DO NOT MOVE PREMATURELY. THIS IS NOT A NOTICE TO VACATE YOUR DWELLING.** However, if you desire to move sooner than required, you must contact your representative with Overland, Pacific & Cutler, Inc., so you will not jeopardize any benefits. This is a general informational brochure only, and is not intended to give a detailed description of either the law or regulations pertaining to the Displacing Agency's Relocation Assistance Program.

**Please continue to pay your rent to the Displacing Agency, otherwise you may be evicted and jeopardize the relocation benefits you may be entitled to receive.**

## II. ASSISTANCE IN LOCATING A REPLACEMENT DWELLING

The Displacing Agency, through its representatives, will assist you in locating a comparable replacement dwelling by providing referrals to appropriate and available housing units. You are encouraged to actively seek such housing yourself.

When a suitable replacement dwelling unit has been found, the Displacing Agency will carry out an inspection and advise you as to whether the dwelling unit meets the Housing Quality Standards. A decent, safe and sanitary housing unit provides adequate space for its occupants, proper weatherproofing and sound heating, electrical and plumbing systems. Your new dwelling must pass inspection prior to entering into a rental agreement and before relocation assistance payments can be authorized.

## III. MOVING BENEFITS

If you must move as a result of displacement by the Displacing Agency, you will receive a payment to assist in moving your personal property. The actual, reasonable and necessary expenses for moving your household belongings may be determined based on the following methods:

- A <u>Fixed Moving Payment</u> based on the number of rooms you occupy (see below); **or**
- A payment for your <u>Actual Reasonable Moving and Related Expenses</u> based on at least two written estimates and receipted bills; **or**
- A combination of both.

For example, you may choose to move yourself and receive a payment based on the Fixed Moving Schedule shown below, plus contract with a professional mover to transport large items that require special handling. In this case there may be an adjustment in the number of rooms which qualify under the Fixed Moving Schedule.

A. **Fixed Moving Payment**

A Fixed Moving Payment is based upon the number of rooms you occupy and whether or not you own your furniture. The payment is based upon a schedule approved by the Displacing Agency, and ranges, for example, from $400.00 for one furnished room to $2,150.00 for eight rooms in an unfurnished dwelling. (For details see the table below.) Your relocation representative will inform you of the amount you are eligible to receive if you choose this type of payment.

| FIXED MOVING SCHEDULE - CALIFORNIA ||||
|---|---|---|---|
| Occupant owns furniture || Occupant does NOT own furniture ||
| 1 room | $625.00 | 1 room | $400.00 |
| 2 rooms | $800.00 | each additional room | $65.00 |
| 3 rooms | $1,000.00 | | |
| 4 rooms | $1,175.00 | | |
| 5 rooms | $1,425.00 | | |
| 6 rooms | $1,650.00 | | |
| 7 rooms | $1,900.00 | | |
| 8 rooms | $2,150.00 | | |
| each additional room | $225.00 | | |

If you select a Fixed Moving Payment, you will be responsible for arranging for your own move and the Displacing Agency will assume no liability for any loss or damage of your personal property. A Fixed Moving Payment also includes utility hook-up, credit check and other related moving fees.

B. **Actual Moving Expense (Professional Move)**
If you wish to engage the services of a licensed commercial mover and have the Displacing Agency pay the bill, you may claim the ACTUAL cost of moving your personal property up to 50 miles. Your relocation representative will inform you of the number of competitive moving bids (if any) which may be required, and assist you in developing a scope of services for Displacing Agency approval.

## IV. SECTION 8 TENANTS

When you do move, you may be eligible to use your Section 8 eligibility at a replacement. As outlined above, you will be provided counseling and other advisory services along with moving benefits.

A. **Rental Assistance**
If you qualify, and comparable rentals are not available within the Housing Authority's payment standard for your replacement housing needs, and there is a difference between your current rent and your new rent at a replacement dwelling, you may be eligible to receive a gap differential, called a rental assistance payment, paid to you based on a 42-month period. You will be required to provide your relocation representative with monthly rent verification prior to the determination of your eligibility for this payment.

- OR -

B. **Downpayment Assistance**

If you qualify, and wish to purchase a home as a replacement dwelling, you can apply up to the total amount of your rental assistance payment towards the downpayment and non-recurring incidental expenses. Your relocation representative will clarify procedures necessary to apply for this payment.

## V. QUALIFICATION FOR AND FILING OF RELOCATION CLAIMS

To qualify for Replacement Housing Assistance, you must rent and occupy or purchase and occupy a comparable replacement unit **within twelve (12) months from the date you move from the displacement dwelling.**

All claims for relocation benefits must be filed with the Displacing Agency **within eighteen (18) months** from the date on which you move.

## VI. EVICTIONS

Any person who occupies the real property and is in lawful occupancy is presumed to be entitled to relocation benefits. Except for the causes of eviction set forth below, no person lawfully occupying property to be disposed of by the Displacing Agency will be required to move without having been provided with at least 90 days written notice from the Agency. Eviction will be undertaken only in the event of one or more of the following reasons:

- Failure to pay rent; except in those cases where the failure to pay is due to the Agency's failure to keep the premises in habitable condition, is the result of harassment or retaliatory action or is the result of discontinuation or substantial interruption of services;
- Performance of dangerous illegal act(s) in the unit;
- Material breach of the rental agreement and failure to correct the breach within 30 days of notice;
- Maintenance of a nuisance and failure to abate within a reasonable time following notice;
- Refusal to accept one of a reasonable number of offers of replacement dwellings; or
- The eviction is required by State or local law and cannot be prevented by reasonable efforts on the part of the public entity.

## VII. APPEAL PROCEDURES - GRIEVANCE

Any person aggrieved by a determination as to eligibility for a relocation payment, or the amount of a payment, may have his/her claim reviewed or reconsidered in accordance with the Displacing Agency's appeals procedure. Details on appeal procedures are available upon request from the Displacing Agency.

## VIII. TAX STATUS OF RELOCATION BENEFITS

California Government Code Section 7269 indicates no relocation payment received shall be considered as income for the purposes of the Personal Income Tax Law, Part 10 (commencing with Section 170 01) of

Division 2 of the Revenue and Taxation Code, or the Bank and Corporation Tax Law, Part 11 (commencing with Section 23001) of Division 2 of the Revenue and Taxation Code. Furthermore, federal regulations (49 CFR Part 24, Section 24.209) also indicate that no payment received under this part (Part 24) shall be considered as income for the purpose of the Internal Revenue Code of 1954, which has been redesignated as the Internal Revenue Code of 1986. The preceding statement is not tendered as legal advice in regard to tax consequences, and displacees should consult with their own tax advisor or legal counsel to determine the current status of such payments.

## IX. ADDITIONAL INFORMATION AND ASSISTANCE AVAILABLE

Those responsible for providing you with relocation assistance hope to assist you in every way possible to minimize the hardships involved in relocating to a new home. Your cooperation will be helpful and greatly appreciated. If you have any questions at any time during the process, please do not hesitate to contact your relocation representative at 510.638.3081.

DECLARATION OF ANTONE TUCKER
IN SUPPORT OF PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER
AND PRELIMINARY INJUNCTION

EXHIBIT 3


### Notice of Eligibility and Conditional Entitlement

May 2, 2008

Antone Tucker
6700 Dougherty Rd. #86
Dublin, CA 94568

Dear Mr. Tucker:

As you are aware, the Dublin Housing Authority (the "Displacing Agency") has made the determination to dispose of the Arroyo Vista public housing complex, which you currently occupy at 6700 Dougherty Rd., Dublin, CA. As the eligible occupant of the property, you may be entitled to certain benefits under the Displacing Agency's Relocation Assistance Program. These benefits are briefly outlined below and are discussed in further detail in the Informational Statement which was provided to you.

**You will be given a written notice at least 90 days before you will be required to move from your property.** As the occupant of the property on the date of the agreement with the developer, you are entitled to the following benefits:

1. **RELOCATION ADVISORY ASSISTANCE:** provided by Overland, Pacific & Cutler, Inc. (OPC), a professional firm hired by the Displacing Agency to provide relocation assistance to you, such as referrals to replacement housing, counseling from financial literacy and homeownership experts and help with filing for benefits. OPC will help you through the process of finding, securing and moving into a new dwelling.

2. **MOVING EXPENSES:** You may select one of following payments:

    A. A <u>Fixed Moving Payment</u> based on the number of rooms you occupy (from Informational Statement). Your entitlement under this option for 4 rooms is $1175.00; **or**
    B. A payment for your <u>Actual Reasonable Moving and Related Expenses</u> based on at least two written estimates and receipted bills; **or**
    C. A combination of both.

3. **SECURITY DEPOSIT AND CREDIT CHECKS:** Although not required, the Displacing Agency may pay the cost of a security deposit up to $1525.00 required to rent a replacement dwelling unit under the Section 8 Housing Choice Voucher Program, and the Displacing Agency may also cover required credit check fees up to $75.00 per household.

4. **REPLACEMENT HOUSING ASSISTANCE:** You have been living in subsidized public housing owned by the Dublin Housing Authority. Your replacement housing will be housing that is privately owned but you will be issued a Section 8 Housing Choice Voucher by the Alameda County Housing Authority to subsidize your rent. A Section 8 subsidy may be adjusted periodically to reflect your current income and market rents. Section 8 assistance continues as long as you remain eligible for the program.

For long term financial stability, it is in your family's best interest to find a rental within the Housing Authority's subsidy limits (called the "payment standard") for your replacement housing needs. If this is not possible because comparable rentals are not available and there is a difference between your current rent and your new rent at a replacement dwelling, you may under certain circumstances, be eligible to receive a gap differential, called a "rental assistance payment", paid to you based on a 42-month period.

A study was completed to determine the cost of a comparable replacement dwelling most nearly representative of your current dwelling, household needs and occupancy standards. This study indicated a cost for comparable replacement dwellings to have a monthly rent and estimated utilities of $1525.00. These factors are being used to calculate your maximum rental assistance payment as follows:

|   |                                                       | Dublin & Pleasanton | Alameda County |
|---|-------------------------------------------------------|---------------------|----------------|
| 1 | Comparable Rent + Utilities                           | $1525.00            | $1525.00       |
| 2 | Section 8 Payment Standard                            | $1486.00            | ($1363.00)     |
| 3 | Difference (Line 1 minus Line 2)                      | $39.00              | $162.00        |
| 4 | **Computation of Payment (Line 3 times 42 months)**   | $1638.00            | $6804.00       |

Although the rental assistance payment is based on 42 months, the payment will actually be made to you in four installments. The first installment will be paid at the time you move to the replacement dwelling and then the next three will be paid, one every three months. At the end of 12 months the rental assistance payment will have been paid in full.

**You may receive this adjustment only if without such assistance, in the Displacing Agency's determination, you cannot lease a comparable home or apartment. If you do not need an adjustment in order to lease a comparable home or apartment, you will not be eligible to receive such an adjustment. If you qualify for a rental assistance payment, your family's rent share plus utilities must not exceed 40% of your adjusted monthly income.**

If you decide to rent and occupy a comparable replacement dwelling that rents for **less than** the comparable identified in the study, your rental assistance payment will be based on the actual cost of your replacement dwelling. If you decide to rent and occupy a comparable replacement dwelling that rents for **more than** the comparable identified in the study, your rental assistance payment will be limited to the amount of the comparable dwelling.

To be eligible for the replacement housing assistance described above, you must rent and occupy or purchase and occupy a decent, safe and sanitary replacement dwelling **within 12 months**, as well as file claims for replacement housing and moving payments **within 18 months**, from the date you move from your displacement dwelling. **Failure to occupy the replacement dwelling or to submit claims within the above time limits could result in loss of moving and/or replacement housing assistance.**

As part of our advisory services, we will provide referrals to available replacement units on the market in your area, which accept Section 8 tenants. Please notify us if you identify a unit that you would be interested in securing as a replacement home.

If you need any assistance or transportation to identify replacement housing, please contact the relocation consultant identified below.

You do not have to accept any dwelling referred to you by the Displacing Agency. You may choose your own replacement unit, but to qualify for Section 8 and the rental assistance payments the dwelling must first be inspected by the Housing Authority to assure that it meets the Housing Quality Standards. For this reason, **DO NOT MOVE** from your home and **DO NOT CONTRACT** to rent or purchase a replacement dwelling without first contacting your relocation consultant and the Housing Authority. The Housing Quality Standards inspection is **not** a substitute for a professional housing inspection.

You **must** continue to pay your portion of the rent to the Displacing Agency for the period of your tenancy. Failure to pay rent may reduce the replacement housing assistance which you are eligible to receive.

The Relocation Assistance Program is very complex. It is important that you carefully read and understand the matters explained in this Notice and in the Informational Statement that was provided to you. You may appeal in writing to the Displacing Agency the determination of eligibility or the amount of your relocation benefits.

If at any time you have questions or need assistance, please contact your OPC relocation consultant:

**John Morris**
**Overland, Pacific & Cutler, Inc.**
**7901 Oakport Street, Suite 4800**
**Oakland, CA 94621**
**Phone 510.638.3081**

Sincerely,

David J. Richman
Regional Director
Overland, Pacific & Cutler, Inc.

| ACKNOWLEDGMENT ||
|---|---|
| I was personally contacted by the Relocation Consultant for the Displacing Agency. I have been given a copy of this Notice and I have had the available services and entitlements explained to me. I have been advised that the Relocation Consultant will be available to assist me if any questions arise or assistance is needed. ||
| Signature: | Date: |
| Signature: | Date: |
| Signature: | Date: |
| Signature: | Date: |

**Note: must be signed by all adult household members**