1  LEE C. ROSENTHAL, State Bar #58778
   lrosenthal@goldfarblipman.com
2  ROBERT C. MILLS, State Bar #158097
   rmills@goldfarblipman.com
3  JULIET E. COX, State Bar #214401
   jcox@goldfarblipman.com
4  GOLDFARB & LIPMAN LLP
   1300 Clay Street, Ninth Floor
5  Oakland, California 94612
   Telephone:  (510) 836-6336
6  Facsimile:  (510) 836-1035

7  Attorneys for Defendants and Respondents and for
   Real Parties in Interest DUBLIN HOUSING
8  AUTHORITY; HOUSING AUTHORITY OF THE
   COUNTY OF ALAMEDA; SCS DEVELOPMENT
9  COMPANY; and EDEN HOUSING, INC.

10 JOSEPH M. QUINN, State Bar #171898
   jquinn@meyersnave.com
11 ARIANA MOHIT, State Bar #211407
   amohit@meyersnave.com
12 MEYERS, NAVE, RIBACK, SILVER & WILSON
   575 Market Street, Suite 2600
13 San Francisco, California 94105
   Telephone: (415) 421-3711
14 Facsimile: (415) 421-3767

15 Attorneys for Defendant and Respondent
   CITY OF DUBLIN

17                    UNITED STATES DISTRICT COURT

18                   NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| 19  ARROYO VISTA TENANTS ASS'N *et al.*, | Case No.: 3:07-cv-05794-MHP |
| 20         Plaintiffs and Petitioners, | **MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO RENEWED MOTION FOR PRELIMINARY INJUNCTION** |
| 21  v. | |
| 22  CITY OF DUBLIN *et al.*, | Date:       June 20, 2008 |
| 23         Defendants and Respondents, | Time:       10:00 a.m. Location:   Courtroom 15, United States District Court, Northern District of California, 450 Golden Gate Avenue, San Francisco, California 94102 |
| 24  SCS DEVELOPMENT COMPANY *et al.* | |
| 25         Real Parties in Interest. | |

This request for interim relief is Plaintiffs' and Petitioners' second in this action. Because Plaintiffs rest their present application (their "Renewed PI Motion") in part on the evidence and argument they submitted in support of their first application (*see* Renewed PI Motion [Docket Entry, "DE," 70], 3:10-15), Defendants and Respondents likewise refer this Court to Defendants' evidence and arguments submitted in opposition to that initial motion (*see* DE 26–29-5) rather than repeating those arguments here. In addition, on behalf of all Defendants, the Dublin Housing Authority submits additional argument for this Court's consideration.

I.   THE REQUESTED RELIEF WOULD BE HARMFUL AS WELL AS UNNECESSARY.

As shown below as well as in Defendants' opposition to Plaintiffs' earlier motion, Defendants have committed themselves to complying with all laws pertaining to Arroyo Vista's disposition. Defendants have told tenants repeatedly that they need not move now. To avoid "pressuring" any tenant, Defendants have contacted, and assisted, only those tenants who have requested assistance. This Court need not enjoin Defendants to continue following the law.

In any event, Plaintiffs have a simple solution, entirely within their own power, to their concerns about moving too early from Arroyo Vista or about the benefits that they will receive if they do move: Do not move now. So long as HUD has not approved the disposition and DHA has not given them a notice requiring them to move, tenants need no help from this Court to remain Arroyo Vista residents.

Moreover, an injunction of the type Plaintiffs seem to contemplate would harm Plaintiffs' neighbors. If this Court were to grant Plaintiffs' request, DHA might have to cease providing relocation assistance to all Arroyo Vista tenants, including Plaintiffs. This outcome would cause significant hardship to tenants, several of whom are in the process of moving. (*See*, *e.g.*, Smith Decl. [DE 85], 2:9-18.) Moreover, the injunction Plaintiffs seek would not allay their anxiety over Arroyo Vista's proposed redevelopment, because it would not cause DHA to withdraw its disposition application or to repudiate the commitment it made to redevelopment when it filed the application. Plaintiffs' request would harm the Arroyo Vista community.

Goldfarb &
Lipman LLP
1300 Clay Street
Ninth Floor
Oakland
California
94612
510 836-6336
510 836-1035 FAX

II. **PLAINTIFFS DO NOT DEMONSTRATE ANY LIKELIHOOD OF SUCCESS UNDER THE UNITED STATES HOUSING ACT.**

According to this Court's May 22, 2008, Memorandum and Order, the United States Housing Act gives Plaintiffs personally enforceable rights "to receive notification that [Arroyo Vista] will be demolished, and necessarily, to be told that HUD has approved [DHA's] application," and "to receive an offer of comparable housing, payment of actual and reasonable relocation expenses, and necessary counseling," before they must vacate their Arroyo Vista residences to make way for redevelopment. (Memorandum and Order, May 22, 2008 [DE 68], 19:27-20:3.) Plaintiffs fail to demonstrate, however, either that Defendants have violated any of these rights or that they intend to do so. This Court need not enjoin actions that Defendants have never taken and will not take.

A. **No Plaintiff Has Relocated Without Receiving the Notice and Assistance Described in 42 U.S.C. Section 1437p(a)(4).**

Plaintiffs do not claim that Defendants have required any Plaintiff to move without providing notice and relocation benefits, let alone that DHA has completed disposition of Arroyo Vista without giving them these forms of assistance. Instead, all Plaintiffs continue to allege that they remain residents at Arroyo Vista. (First Amended Petition [DE 55-1], 4:6-8, 27; 5:3-5; 5:18-20; 6:5-7.) For this reason alone, Defendants cannot have deprived Plaintiffs of their rights to receive notice and relocation assistance before being forced to move in order to accommodate Arroyo Vista's disposition.

B. **Defendants Have Not Demanded or Required That Any Tenant Move.**

Approximately sixty families other than Plaintiffs' have moved away from Arroyo Vista since August 2007, all of them voluntarily. Plaintiffs dismiss this characterization of these families' choices as "myth," yet Plaintiffs present *no evidence whatsoever* that DHA has given any Arroyo Vista family any form of notice requiring them to move out of their home. Moreover, no such evidence exists, because DHA has not demanded possession of any Arroyo Vista resident's unit or evicted any resident since 2006. (2d Rizzo-Shuman Decl., 2:22-24.)

In fact, Plaintiffs themselves present evidence that families who have moved away since August 2007 have done so because they chose to move rather than to continue living at Arroyo

Vista.[1] Despite her litany of complaints, Gretta Evans admits not only that she chose her new home in Patterson herself, with no input from DHA or its relocation consultant, but also that she committed to renting it even though she understood that she could remain in her Arroyo Vista residence if she preferred to. (Evans Decl. [DE 19], 5:28-6:7.) Melisa Callender chose a new home that "fit my needs," not because anyone at DHA demanded that she do so but because she "felt" that she should take an acceptable replacement residence as soon as one became available. (Callender Decl. [DE 74], 1:17-18.) Darlyn Anderson states frankly that her new home is "acceptable for me because I am closer to family." (Anderson Decl. [DE 72], 3:27.) Plaintiffs' speculation that some people may have moved due to actions by Defendants giving those people a reasonable understanding that they had no present choice is unfounded, and provides no basis for this Court to restrain Defendants' actions.

**C.    Defendants Have Not Pressured Tenants to Move.**

And further, Plaintiffs themselves present ample evidence that DHA has not pressured, coerced, or threatened families who have elected for now to remain at Arroyo Vista to change their minds and move:

- Because she is not interested in moving now, Liz Rigney has not contacted OPC for information about her potential eligibility for relocation assistance. She also has received no contact from OPC except for postcards, and she believes—accurately—that this lack of contact is because OPC has focused its efforts on people who are presently interested in moving rather than on people like her who are not. (Rigney Decl. [DE 84], 2:1-7; *see also* 2d Richman Decl., 4:21-5:2.)

- Celia Arroyo and her husband, Plaintiff Andres Arroyo, resisted all efforts by OPC to contact them for an informational interview. (A. Arroyo Decl. [DE 13], 2:16-28; Morris Decl. [DE 28], 23:9-13; Laverde Decl. [DE 28], 28:19-29:7.) Ms. Arroyo has attended a public meeting regarding the relocation plan, but has never

---

[1] The majority of the approximately sixty households that have moved are not participants, either as plaintiffs or as witnesses, in this action. Most likely, though, the people who have moved and whose declarations Plaintiffs have chosen to submit to this Court are those who are least, not most, satisfied with their moves.

asked for or received any personalized eligibility information from OPC. (C. Arroyo Decl. [DE 73], 1:19-2:12; *see also* 2d Richman Decl., 4:21-5:2.)

- Because she is not interested in moving now, Kimberly Hill has not taken any steps to relocate from Arroyo Vista. She has received no overtures from OPC except possibly for a flyer with contact information,[2] but she has not contacted them. (Hill Decl. [DE 81], 1:23-2:21; *see also* 2d Richman Decl., 4:21-5:2.)

- Carata DeRamous agreed to an interview with an OPC representative during preparation of the relocation plan, and asked OPC to send her lists of rental housing. (DeRamous Decl. [DE 77], 1:11-24.) She has never, however, attended any Section 8 briefing (2d Rizzo-Shuman Decl., 2:17-21), and has never asked OPC for personalized eligibility counseling (2d Richman Decl., 4:21-27). She has stopped searching for replacement housing (DeRamous Decl. [DE 77], 1:25-26), and no one has contacted her to suggest, let alone insist, that she start again (2d Richman Decl., 4:21-27).

- Maria Garcia expresses uncertainty regarding her family's relocation options, blaming this uncertainty on OPC's failure to reach out to her with such information. (Garcia Decl. [DE 79], 1:11-14, 1:28-2:7.) But Ms. Garcia has never asked OPC for any advice or counseling regarding relocation (2d Richman Decl., 4:21-27) or HACA for any advice or counseling regarding the Section 8 program (2d Rizzo-Shuman Decl., 2:17-21).

Ironically, several of Plaintiffs and their supporters complain that DHA and OPC have not done enough to explain the relocation process to them or to assist them in finding

---

[2] Ms. Hill also characterizes the contents of that flyer as conditioning any meeting with OPC on her delivery of a "30 day notice to vacate." (Hill Decl. [DE 81], 2:18-20.) Ms. Hill does not attach any such flyer to her declaration, however; and neither OPC nor any Respondent has ever distributed any flyer with such a statement. (Gouig Decl. [DE 28], 10:26-11:4; *see also id.* at 9:26-28 [describing General Information Notice posted on residents' doors], General Information Notice [DE 29-5, Exh. I].)

4
POINTS AND AUTHORITIES AGAINST RENEWED MOTION FOR PRELIMINARY INJUNCTION (3:07-cv-05794 MHP)
1460\03\569944.3

replacement housing.[3] (*See, e.g.*, 2d Veal Decl. [DE 87], 3:2-8:18, Smith Decl. [DE 85], 1:23-2:18.) Yet at the same time that Plaintiffs' brief characterizes DHA's aid as insufficient, it also characterizes even this allegedly insufficient aid as improper "pressure" or "coercion" to move. (*Compare* Renewed PI Motion [DE 70], 10:20-11:3, *with id.*, 10:6-13.) In Plaintiffs' view, Defendants must refrain from pushing people to relocate, but must push relocation assistance on people who do not want it. Defendants urge this Court to reject Plaintiffs' "heads, I win; tails, you lose" proposition.

### D.  Defendants Have Told Tenants They Do Not Have to Move.

Finally, and as Plaintiffs acknowledge, Defendants have stated clearly and repeatedly that no Arroyo Vista resident must move now.[4] Plaintiffs' counsel, Lisa Greif, attended several recent public meetings convened to provide information to tenants about DHA's draft relocation plan, and confirms that OPC's consultant told attendees "that while some residents have chosen to move no one was being asked to move yet." (2d Greif Decl. [DE 80], 1:15-16; *see also* Amador Decl. [DE 71], 4:16 [describing the same May 13 meeting]; 2d Keyes Decl. [DE 82], 2:22-23 [describing the same May 13 meeting]; 2d Veal Decl. [DE 87], 8:24-25 [describing a similar May 22 meeting].) Plaintiffs' prior motion conceded that Defendants had not actually asked any tenant to move (Motion for Preliminary Injunction [DE 11], at 12 n.5), and included examples of numerous Arroyo Vista tenant newsletters, all stating that tenants *did not* need to move. (*See* Greif Decl. [DE 12], Exh. 7, at 000214; *id.* Exh. 11, at 000261, 000263, 000265, 000270, 000273.) The personalized informational and eligibility notices that Antone Tucker and Elise Veal have presented to this Court—which are identical in form to those received by other tenants who have seriously explored relocation—state clearly that they do not instruct the recipients to

---

[3] The facts belie Plaintiffs' allegation that Defendants have made "little effort" to meet tenants' desires to remain in Dublin or Pleasanton: Approximately *two thirds* of the sixty households who have voluntarily relocated to date have relocated within Dublin, Pleasanton, or San Ramon. (2d Richman Decl., 5:3-6.) In addition, between March 2007 and June 2008, the number of Section 8 units in Dublin nearly doubled, from 101 to 188. (2d Rizzo-Shuman Decl., 2:25-27.)

[4] Plaintiffs allege that the Arroyo Vista Tenants Association has also communicated with tenants regarding the redevelopment proposal and the prospects for tenant relocation. (First Amended Petition [DE 55-1], 26:18-21.) They do not, however, inform this Court as to the nature of any information—or misinformation—AVTA may have distributed.

Goldfarb &
Lipman LLP
1300 Clay Street
Ninth Floor
Oakland
California
94612
510 836-6336
510 836-1035 FAX

move immediately. (Tucker Decl. [DE 86], Exhs. 1, 2; Veal Decl. [DE 17], Exhs. 2, 3.) Plaintiffs have identified no notice, publication, or document by any Defendant that states otherwise, because none exists. (Gouig Decl. [DE 28], 10:26-11:4; 2d Rizzo-Shuman Decl., 2:23-24.)

Plaintiffs' own evidence refutes, rather than supports, their assertion that Defendants have coerced or threatened their neighbors into moving. At most, Plaintiffs' evidence shows that many Arroyo Vista residents are understandably anxious about the possibility that they may have to move in the near future, and that some of them have stoutly resisted efforts by DHA and OPC to quell this anxiety. (*See*, *e.g.*, C. Arroyo Decl. [DE 73], 1:24-25 [describing the "message *I received*," at the meeting also described by Lisa Greif, Jacqueline Amador, and Rhenae Keyes, in terms directly contrary to those other witnesses' description of David Richman's statements] [emphasis added]; Rigney Decl. [DE 84], 2:1-7; Hill Decl. [DE 81], 1:23-2:21; Garcia Decl. [DE 79], 1:11-14, 1:28-2:7.) Defendants ask this Court to deny Plaintiffs' request for an injunction.

E. **Plaintiffs Lack Standing to Assert Other Persons' Rights to Notice and Relocation Assistance.**

In any event, Plaintiffs have no standing to enforce their neighbors' personal rights. *See Lierboe v. State Farm Mut. Auto. Ins. Co.*, 350 F.3d 1018, 1022 (9th Cir. 2003) (holding that a plaintiff who had not suffered a particular injury could not sue her insurer on behalf of others who had allegedly suffered that injury). Were this Court to permit Plaintiffs to maintain this action on their neighbors' behalf, this Court would find itself asked to adjudicate whether or not strangers to this action felt themselves aggrieved by having moved away from Arroyo Vista before HUD had approved Arroyo Vista's disposition; whether those strangers considered their replacement housing "comparable"; whether they believed they had received full and adequate reimbursement or payment for relocation expenses; and whether they believed that they had received all "necessary" relocation counseling. Further, Plaintiffs have not proposed to allege a class action conforming to Rule 23 of the Federal Rules of Civil Procedure; and in any event, such a class action would fail, not least because Plaintiffs plead specifically that their households are *not* among the households that have already relocated, allegedly without receiving required assistance. Fed R. Civ. Proc., Rule 23(a)(3), (4) (requiring that a class representative actually be

Goldfarb & Lipman LLP
1300 Clay Street
Ninth Floor
Oakland
California
94612
510 836-6336
510 836-1035 FAX

representative of the proposed class); *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974) ("Moreover, if none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class."); *Lierboe*, 350 F.3d at 1022-23. Plaintiffs' suggestion that others have suffered injury is no basis for this Court to grant interim relief.

### III. PLAINTIFFS DO NOT DEMONSTRATE ANY LIKELIHOOD OF SUCCESS UNDER THE CALIFORNIA RELOCATION ASSISTANCE LAW.

As set forth in Defendants' prior briefing, formation of the Disposition and Development Agreement (the "DDA") for Arroyo Vista's redevelopment before preparation of a relocation plan did not violate the California Relocation Assistance Law. (Opposition to PI Motion [DE 26], 10:1-11:19.) Similarly, provision of relocation assistance to tenants who chose to move before completion of the relocation plan was not and is not unlawful. (*Id.*, 18:1-19:9.) And the Relocation Assistance Law does not forbid implementation of project steps that do not require tenants to move, such as land-use planning or environmental review, before a relocation plan is complete. (*Id.*, 10:1-21.)

Plaintiffs" contention that the City and HACA also must adopt a relocation plan is false. The Relocation Assistance Law and Guidelines require the public agency that will order "that acquired property be vacated . . . for public use" to prepare and adopt a relocation plan. 25 Cal. Code Regs. §§ 6008, 6038 (DE 22-5, at 9, 23). In this case, that public entity is DHA, because DHA will require tenants to vacate Arroyo Vista if HUD approves Arroyo Vista's redevelopment. Although the City of Dublin and HACA will contribute funding to the redevelopment project, they will not be the public agencies directly causing the tenants' relocation. For this reason, the Relocation Assistance Law and Guidelines do not require the City or HACA to adopt a plan.

Moreover, as noted above, Defendants' alleged failure to adopt a valid relocation plan[5] or to provide adequate relocation assistance has not harmed any Plaintiff, because no Plaintiff has

---

[5] The relocation plan adopted by DHA on June 3 complies with the Relocation Assistance Law.

moved. Persons who moved before approval of the DDA (none of whom are Plaintiffs) were not eligible for any relocation assistance. (Opposition to PI Motion [DE 26], 22:16-24:2.) Any person who has moved since then, and who believes him- or herself entitled to more relocation assistance from DHA, may file a grievance. 25 Cal. Code Regs. §§ 6150–6176 (DE 22-5, at 85-99). Meanwhile, however, Defendants urge this Court not to enjoin provision of further assistance to people who are presently seeking it—including to Plaintiffs themselves. (*See*, *e.g.*, 2d Veal Decl. [DE 87], 6:9-7:1; *see also* Tucker Decl. [DE 86], 1:16-27.)

### IV. PLAINTIFFS DO NOT DEMONSTRATE ANY LIKELIHOOD OF SUCCESS UNDER ANY FAIR HOUSING LAW.

Plaintiffs' fair housing claims do not rest on allegations that any Defendant has done anything to discriminate expressly among Arroyo Vista's tenants or potential tenants on the basis of those persons' race or family status. Instead, Plaintiffs allege that DHA and HACA have taken "acts" that have a "discriminatory effect" on "African Americans and persons of Hispanic descent" and a "discriminatory effect on families with minor children." (First Amended Petition [DE 55-1], 26:3-13, 28:15-24.) The *sole* factual basis for this claim is the unremarkable assertion that persons of color and families with children are more likely than the general population in Dublin to be eligible for, and to receive, DHA's and HACA's affordable housing services. (*Id.*, 2:8-15, 25:6-23, 27:18-28:7; Renewed PI Motion [DE 70], 21:8-13.)

This claim is fundamentally illogical. Were Plaintiffs' theory correct, *every* action by DHA and HACA would have a discriminatory effect, because *every* action would affect proportionally more people of color and families with children than a similar act by an organization serving or governing fewer people of color or families with children. *English Woods Civic Ass'n v. Cincinnati Metro. Housing Auth.*, 2004 U.S. Dist. LEXIS 26389 (S.D. Ohio 2004); *Darst-Webbe Tenant Ass'n Bd. v. Saint Louis Housing Auth.*, 299 F.Supp. 2d 952, 957-58 (E.D. Mo. 2004) (ruling that plaintiffs had failed to prove disparate impact resulting from housing authority's redevelopment decision simply by proving that housing authority's tenants, or even potentially eligible low-income population in city at large, were disproportionately members of protected classes). In fact, however, "[t]he correct inquiry is whether the policy in

Goldfarb & Lipman LLP
1300 Clay Street
Ninth Floor
Oakland
California
94612
510 836-6336
510 836-1035 FAX

question had a disproportionate impact on the minorities *in the total group to which the policy was applied.*" *Betsey v. Turtle Creek Assocs.*, 736 F.2d 983, 987 (4th Cir. 1984) (emphasis added) (holding that a trial court must evaluate a claim of disparate impact resulting from a decision to convert one building in a multi-unit complex to "adults only" by examining the effect of that policy on persons living in that building).

In this case, the impact of Arroyo Vista's redevelopment, if approved by HUD, will be exactly the same on all Arroyo Vista households, regardless of race, ethnicity, or family composition. Regardless of its members' ages or ethnicities, each family will receive relocation assistance and comparable replacement housing. 42 U.S.C. § 1437p(a)(4). Further, any "disparity" in the impact of Defendants' decision to redevelop Arroyo Vista is *exactly the same* as the "disparity" in impact that would result if this Court ordered Defendants to continue operating Arroyo Vista with inadequate funds: Either way, using Plaintiffs' figures, 28% of those affected by Defendants' acts would be African American and 21% would be "Latino/Hispanic." (Renewed PI Motion [DE 70], 21:6-10.) Stopping this project will not give DHA more operating funds, and it will not remedy the segregation of poverty in Dublin.

Moreover, Plaintiffs present absolutely no evidence tending to support their bald assertion that Arroyo Vista's redevelopment will "perpetuate segregation." (Renewed PI Motion [DE 70], 22:6.) They make no allegations and offer no proof that relocation of Arroyo Vista's tenants into other affordable housing, using Section 8 vouchers where necessary to ensure affordability, will result in further segregation, either in Dublin or in any other community to which those tenants might move.[6] They make no allegations and offer no proof that the larger, mixed-income housing development that will succeed Arroyo Vista if HUD approves the Revitalization Plan will be more, rather than less, segregated than Arroyo Vista or than Dublin as

---

[6] For example, Plaintiffs offer no evidence from which this Court might conclude that Gretta Evans's move from Dublin to Patterson increased segregation to any statistically significant degree. (*See* Renewed PI Motion [DE 70], 22:15-16.) According to the City of Patterson's Web site, however, African Americans are less than 2% of Patterson's population. (*See* http://www.ci.patterson.ca.us/Default.aspx?pi=29&ni=38, visited June 19, 2008).

a whole. In short, Plaintiffs' fair housing claims offer no ground for this Court to restrain "implementation" of the Arroyo Vista DDA once HUD approves it.

### V. THE REQUESTED RELIEF IS UNENFORCEABLY VAGUE.

As with their prior motion, Plaintiffs' renewed motion requests, in vague terms, relief that would reach far beyond the allegations of their First Amended Petition and far beyond the evidence. Plaintiffs ask this Court to enjoin Defendants' "encouraging, pressuring, or coercing" tenants to move. But rather than describing specific actions or statements that Defendants might take or avoid, these words describe how tenants *perceive* Defendants' actions and statements. Moreover, even as they ask this Court to prohibit "encouraging" tenants to move, Plaintiffs insist simultaneously that Defendants should provide more, not less, relocation assistance. Plaintiffs' proposed injunction would offer Defendants absolutely no guidance in responding to inquiries by anxious tenants, and no meaningful limit by which this Court might measure Defendants' compliance.

Similarly, and as with their prior motion, Plaintiffs do not identify any activities that would be forbidden if this Court enjoined "implementation" of the DDA. Defendants have already committed in the DDA that they will not proceed with disposition and redevelopment of Arroyo Vista unless HUD approves, but they identify no legal barrier to Defendants' continued planning for that process. Defendants ask this Court to deny Plaintiffs' far-reaching request.

### VI. CONCLUSION

Defendants ask this Court to deny in its entirety Plaintiffs' motion for interim relief.

DATED: June 19, 2008                GOLDFARB & LIPMAN LLP

By: /s/ Juliet E. Cox
JULIET E. COX
Attorneys for Defendants and Respondents and for Real Parties in Interest DUBLIN HOUSING AUTHORITY; HOUSING AUTHORITY OF THE COUNTY OF ALAMEDA; SCS DEVELOPMENT COMPANY; and EDEN HOUSING, INC.

Goldfarb & Lipman LLP
1300 Clay Street
Ninth Floor
Oakland
California
94612
510 836-6336
510 836-1035 FAX